**ORAL ARGUMENT NOT YET SCHEDULED**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 24-3019**

---

**UNITED STATES OF AMERICA,**
*Plaintiff-Appellee,*

**v.**

**CHARLES EDWARD LITTLEJOHN,**
*Defendant-Appellant.*

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**BRIEF FOR APPELLANT**

---

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

MATTHEW L. FARLEY
CELIA GOETZL
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500

District Court
Cr. No. 23-343 (ACR)

## <u>CERTIFICATE AS TO PARTIES, RULINGS,<br>AND RELATED CASES</u>

**A.     <u>Parties and Amici</u>:**

The parties to this appeal are defendant-appellant Charles Edward Littlejohn, and appellee, the United States of America.  There are no intervenors or *amici* in this Court or the district court.

**B.     <u>Rulings Under Review</u>:**

In this appeal, Mr. Littlejohn challenges the sentence imposed by the district court (the Honorable Ana C. Reyes).  The district court issued no published decisions in this case.

**C.     <u>Related Cases</u>:**

This case has not been before this Court previously.  Appellant is unaware of any related cases.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................i

TABLE OF AUTHORITIES............................................................................ iii

JURISDICTIONAL STATEMENT ...............................................................1

CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES .........................1

ISSUES PRESENTED FOR REVIEW ...........................................................1

STATEMENT OF THE CASE.........................................................................2

     I.    Procedural Background ..............................................................2

     II.   Factual Background ...................................................................3

     III.  The Plea Agreement...................................................................6

     IV.  Pre-Plea *In Camera* Off-The-Record Proceedings................6

     V.   The Plea Hearing .......................................................................7

     VI.  Pre-Sentencing *In Camera* Off-The-Record Proceedings.....8

     VII. Sentencing..................................................................................9

SUMMARY OF ARGUMENT........................................................................16

STANDARD OF REVIEW .............................................................................18

ARGUMENT AND AUTHORITIES ..............................................................19

     I.    MR. LITTLEJOHN'S SENTENCE WAS PROCEDURALLY
           UNREASONABLE. ...............................................................19

          A.   The District Court Erred Procedurally By Predetermining The
               Statutory Maximum Sentence Of 60 Months...................................19

          B.   The District Court Erred Procedurally By Considering Assertions
               Not Supported By The Record And Evidence Outside Of The
               Record.............................................................................................25

i

1. The District Court's Belief That Mr. Littlejohn's Offense Targeted The President To Undermine Democracy Was Not Supported By The Record Evidence...........................................25

2. The District Court's Conclusion That Mr. Littlejohn's Offense Was Comparable To Crimes Committed At The Capitol On January 6 Was Not Supported By The Evidence. .....................31

3. The District Court Erred By Accepting Extra-Judicial Views Of Members Of Congress In Arriving At Mr. Littlejohn's Sentence. ..........................................................34

C. The District Court Failed To Adequately Explain The Drastic Degree Of The Upward Variance From 18 to 60 Months. ..............38

II.   MR. LITTLEJOHN'S SENTENCE WAS SUBSTANTIVELY UNREASONABLE. .................................................................................42

A. The District Court's Concerns Cannot Bear The Weight Of Its Upward Variance. ....................................................................43

B. The Statutory Maximum Sentence Created An Unwarranted Sentencing Disparity..............................................................47

C. This Case Did Not Represent The Most Extreme Case Of Unlawful Disclosure Of Tax Records Such That The Statutory Maximum Penalty Was A Necessary Sentence....................................................52

III.  THIS CASE SHOULD BE ASSIGNED TO A DIFFERENT JUDGE FOR RESENTENCING. ...............................................................56

CONCLUSION .........................................................................................58

CERTIFICATE OF COMPLIANCE ......................................................59

ADDENDUM ...........................................................................................1a

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States*, 552 U.S. 38 (2007) ..................................................18, 31, 38

*In re Al-Nashiri*, 921 F.3d 224 (D.C. Cir. 2019) .....................................................19

*In re Murchison*, 349 U.S. 133 (1955).....................................................................19

*In re Sealed Case*, 527 F.3d 188 (D.C. Cir. 2008)............................................18, 41

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980).......................................................19

*Rita v. United* States, 551 U.S. 338 (2007)..............................................................50

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) ......................................58

*Trump v. Thompson*, 20 F.4th 10 (D.C. Cir. 2021)...................................................33

*Trump v. United States*, 603 U.S. 593 (2024)...........................................................27

*United States v. Abney*, 957 F.3d 241 (D.C. Cir. 2020)......................................19, 25

*United States v. Akhigbe*, 642 F.3d 1078 (D.C. Cir. 2011)  .............................41, 42

*United States v. Barker*, 771 F.2d 1362 (9th Cir. 1985)..............................20, 52, 56

*United States v. Boucher,* 937 F.3d 702 (6th Cir. 2019) .........................................49

*United States v. Bradley*, 628 F.3d 394 (7th Cir. 2010) .......................25, 28, 30, 31

*United States v Bradley*, 455 F.3d 453 (4th Cir. 2006) ....................................21, 22

*United States v. Brown*, 125 F.4th 1186 (D.C. Cir. 2025)........................................33

*United States v. Brown*, 816 F. App'x 240 (10th Cir. 2020) .............................19, 20

*United States v. Brown*, 892 F.3d 385 (D.C. Cir. 2018) .......................38, 40, 42, 44

*United States v. Brown*, 808 F.3d 865 (D.C. Cir. 2015) ....................................41, 42

*United States v. Brown*, 381 U.S. 437 (1965) ...........................................................36

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) ...........................................43

*United States v. Crowell*, 60 F.3d 199 (5th Cir. 1995) ...........................................22

*United States v. Daniels*, 446 F.2d 967 (6th Cir. 1971) ....................................53, 55

*United States v. De Jesus-Torres*, 64 F.4th 33 (1st Cir. 2023) ..........................24, 37

*United States v. Fry*, 851 F.3d 1329 (D.C. Cir. 2017) .............................................18

*United States v. Gates*, 84 F.4th 496 (2d Cir. 2023) ...............................................19

*United States v. Hartford*, 489 F.2d 652 (5th Cir. 1974) ........................................52

*United States v. Jenkins*, 854 F.3d 181(2d Cir. 2017) ...................43, 52, 53, 55, 56

*United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022) .................42, 43, 44, 47

*United States v. Kpodi*, 824 F.3d 122 (D.C. Cir. 2016) ..........................................25

*United States v. Lazenby*, 439 F.3d 928 (8th Cir. 2006) .........................................48

*United States v. Lemon*, 723 F.2d 922 (D.C. Cir. 1983) .........................................25

*United States v. Miller*, 35 F.4th 807 (D.C. Cir. 2022) ...........................................31

*United States v. Olhovsky*, 562 F.3d 530 (3d Cir. 2009) .........................................24

*United States v. Seabrook*, 968 F.3d 224 (2d Cir. 2020) ....................................24, 37

*United States v. Tobin*, 676 F.3d 1264 (11th Cir. 2012) ..........................................21

iv

*United States v. Webster*, 102 F.4th 471 (D.C. Cir. 2024) ......................................33

*United States v. Wolff*, 127 F.3d 84 (D.C. Cir. 1997)......................................57, 58

*United States v. Yamashiro*, 788 F.3d 1231 (9th Cir. 2015)....................................57

## STATUTES, RULES & GUIDELINES

U.S. Const. Art. I, § 9, cl. 3..........................................................................35

18 U.S.C. § 3231 ............................................................................................1

18 U.S.C. § 3553(a) ...................................... 11, 18, 43, 44, 46, 47, 48, 50

18 U.S.C. § 3661 ...........................................................................................37

18 U.S.C. § 3742 .............................................................................................1

26 U.S.C. § 6103(n) ......................................................................................3

26 U.S.C. § 7213(a)(1) .................................................................2, 6, 43, 50

28 U.S.C. § 1291 .............................................................................................1

U.S.S.G. §1B1.4..............................................................................................37

U.S.S.G. § 2H3.1............................................................................9, 10, 11, 39

U.S.S.G. § 3A1.2..............................................................................................45

U.S.S.G. § 4C1.1.............................................................................................9

## ADDITIONAL AUTHORITIES

Code of Conduct for United States Judges, Canon 1 cmt. (2000)...........................19

v

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231.  The district court pronounced the sentence on January 29, 2024, and entered the written judgment on January 31, 2024.  A timely notice of appeal having been filed on February 12, 2024, this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

Pursuant to Federal Rule of Appellate Procedure 28(f) and Circuit Rule 28(a)(5), pertinent constitutional provisions, statutes, and rules are set forth in the Addendum to this brief.

## ISSUES PRESENTED FOR REVIEW

I.      Whether the district court procedurally erred by (A) predetermining Mr. Littlejohn's statutory maximum sentence; (B) considering assertions not supported by the record and evidence outside of the record; and (C) failing to adequately explain the extreme variance to the statutory maximum from an already enhanced Guidelines range.

II.     Whether the statutory maximum sentence was substantively unreasonable because (A) the district court's justification could not bear the weight of such an extreme upward variance; (B) the sentence created an unwarranted

sentencing disparity; and (C) a statutory maximum sentence was far greater than necessary.

III.    Whether this case should be reassigned to another judge for resentencing on remand in light of the district court's predetermination of Mr. Littlejohn's sentence.

## STATEMENT OF THE CASE

### I.    Procedural Background

On September 29, 2023, Mr. Littlejohn was charged by information with one count of unauthorized disclosure of tax return information, in violation of 26 U.S.C. § 7213(a)(1).  A008-09.[1]  The case was assigned to the Honorable Ana C. Reyes, who set an arraignment and plea hearing for October 12, 2023.  A003.  Before the scheduled hearing, Judge Reyes held two unrecorded, untranscribed off-the-record *in camera* hearings with government and defense counsel.  A259-262.

On October 12, 2023, Mr. Littlejohn pled guilty to the Information.  A003.  Before sentencing, the district court corresponded with government and defense counsel via email off-the-record and considered a letter received via email from members of Congress's Ways and Means Committee also off-the-record.  A263-264.

---

[1] "A__" refers to pages of the Appendix and "SA__" refers to pages of the Sealed Appendix filed with this brief.

2

On January 29, 2024, the district court sentenced Mr. Littlejohn to the statutory maximum of 60 months of imprisonment; to be followed by 36 months of supervised release with 18 discretionary conditions of supervision, including a 300-hour community service requirement; a $5,000 fine; and a $100 special assessment. A132-137.  The written judgment was entered on January 31, 2024.  A005.  Mr. Littlejohn filed a timely notice of appeal on February 12, 2024.  A006.

On October 29, 2024, under Federal Rule of Appellate Procedure 10(c), Mr. Littlejohn filed in the district court an unopposed motion to settle and approve an agreed-upon statement of the unrecorded proceedings held off-the-record in the case. A007.  On January 8, 2025, the district court settled and approved an altered version of the statement.  A007.

## II.    Factual Background

Mr. Littlejohn is committed to public service, devoted to his family and friends, and holds a sincere desire to make the world a better place.  A092.  After graduating from college, starting in 2008, he worked on-and-off at a consulting firm on government projects for the U.S. Department of Treasury and Internal Revenue Service ("IRS").  A094.  While working there from 2017 to 2021, he had access to taxpayer data on IRS databases under 26 U.S.C. § 6103(n).  A029.

3

In late 2018, after losing his little sister to leukemia, losing his grandfather to a debilitating stroke, learning his mother and father were both diagnosed with serious illnesses, Mr. Littlejohn was consumed with depression. A096-98; SA018-20. At a time of personal desperation, Mr. Littlejohn also felt concerned for the country and the devolution of its historical norms. A191-92. President Donald Trump[2] was running for reelection and was the first candidate since the early 1970s to refuse to release his tax information. A101. Mr. Littlejohn concluded that voters needed this information for the election to be free and fair.

In what Mr. Littlejohn believed to be an act of public service, he accessed IRS tax return information for President Trump, uploaded the data to a private website, and downloaded the data to personal storage devices. A029-30. He did not publicly post or publicly release the tax records. Rather, in 2019, he contacted reporters at the New York Times. Motivated by his belief that disclosing the information would serve the public interest, and only after being assured that the data would be used responsibly, Mr. Littlejohn disclosed the tax returns to a journalist. SA111; A030.

---

[2] At the time of the offense, President Trump was the sitting President of the United States. Mr. Littlejohn's conviction and sentence took place while President Trump was out of office. President Trump won reelection after Mr. Littlejohn was sentenced.

He did not act out of personal malice or for personal or economic gain and received nothing in return for the disclosure. A102-05.

Ideologically, Mr. Littlejohn believed that the U.S. tax system unfairly advantaged the ultra-wealthy while disadvantaging those with less means. A105-06. Sincerely wishing to encourage an end to the inequities in the tax system, Mr. Littlejohn accessed and retrieved tax return information for thousands of the nation's wealthiest individuals. A031. Again, he did not publicly post the information or tax records. He contacted a news organization, ProPublica, and sought assurances that the data would be used responsibly. In the fall of 2020, Mr. Littlejohn provided the data to ProPublica. A031. Mr. Littlejohn disclosed the records out of a sincere belief that an in-depth investigative report of the tax histories of the ultra-wealthy could cause meaningful change and reform the systemic inequality in the tax system.

Mr. Littlejohn soon came to realize that his conduct was morally wrong. "Instead of saving the tax system, his actions had undermined the IRS, breached the public trust, and violated the privacy of thousands of American taxpayers." A107. As the government began to investigate him, he admitted his crime, accepted full responsibility, and fully cooperated with the government to provide it with information about IRS databases that it would not have otherwise learned. A117-

5

18; SA113-14.  This included Mr. Littlejohn explaining how he had taken the tax returns and alerting the IRS to critical vulnerabilities in its systems.

## III.    The Plea Agreement

The parties negotiated a pre-indictment plea agreement, and Mr. Littlejohn agreed to plead guilty to one count of unauthorized disclosure of tax return information, in violation of 26 U.S.C. § 7213(a)(1).  A011.  Upon the filing of the Information, the court set a plea hearing for October 12, 2023.  This would be Mr. Littlejohn's first court appearance.

## IV.    Pre-Plea *In Camera* Off-The-Record Proceedings

Two days before the scheduled plea hearing, the district court's chambers scheduled an off-the-record meeting with counsel to take place in chambers before the plea hearing.  A284.  The meeting occurred on October 11, 2023.  A276-77.  Mr. Littlejohn was not present, and the meeting was neither recorded nor transcribed. A277.

At the meeting, the court "expressed she was perplexed as to why the Government had allowed Mr. Littlejohn to plead to a single count of unauthorized disclosure of taxpayer information …." A277.  "[G]iven the nature and extent of the conduct, she still assumed the Government would have brought multiple charges

carrying a much higher possible sentence—noting some charges may carry maximum sentences of 20 years." A277.

The next day—the morning of the plea hearing—chambers again emailed counsel indicating that at the plea hearing, the court "plans to ask, … who the high-ranking public official was" that was the subject of the information. A287. The court convened a second off-the-record meeting without Mr. Littlejohn present, where it discussed identifying President Trump as the victim of the charged offense. A279-80. After the meeting, the government contacted chambers confirming that President Trump did not object to being identified at the plea hearing and that his counsel, Ms. Alina Habba, wished to be heard. A280.

## V.    The Plea Hearing

Hours later, Mr. Littlejohn appeared before the court for the first time. A036. He pleaded guilty to the one count charged by information, agreeing that "between or around August 2019 and October 2019, [he], without authorization, disclosed to a journalist at a news organization the tax return and return information for a high-ranking government official and related entities and individuals that [he] had taken from an IRS database." A044-45.

President Trump's attorney, Ms. Habba, addressed the court and argued that Mr. Littlejohn's actions were "an egregious breach by an agent of the IRS who

targeted the President of the United States, among others, for political purposes and personal gain." A050. Ms. Habba encouraged the "Court to send a strong message" and asked for "the maximum sentence for Mr. Littlejohn." A050-51. The court responded: "[E]veryone can be well assured that there will be severe consequences to this illegal act." A051-52.

The court then accepted Mr. Littlejohn's guilty plea. A052. The district court again assured the courtroom that Mr. Littlejohn would be harshly punished. A055-56. Sentencing was scheduled for January 29, 2024.

## VI.    Pre-Sentencing *In Camera* Off-The-Record Proceedings

On January 10, 2024, chambers emailed counsel indicating that it intended to vary or depart upwards from Mr. Littlejohn's Guidelines range because of the number of returns involved. A292. On January 18, 2024, chambers again emailed counsel asking for the precise number of returns involved. A310.

On January 27, 2024, chambers emailed: "The Judge is interested to hear your views on Monday on the following question: is it *per se* unreasonable to impose a sentence of a maximum term, outside the guidelines, to a defendant that pled guilty, cooperated with the Government, and accepts responsibility." A324.

In the interim, the court received a letter from twenty-five members of the U.S. House of Representatives Committee on Ways and Means. The Members

8

"encourage[d]" and "ask[ed]" the court to sentence Mr. Littlejohn to the five-year statutory maximum. A295-300. The court responded to Congress that it was "carefully considering" the Members' letter. A295. Mr. Littlejohn objected to the district court considering the letter. A301.

## VII. Sentencing

Mr. Littlejohn's Presentence Investigation Report ("PSR") calculated his Guidelines range to have the same base offense level and enhancements as contemplated in the plea agreement and included a two-level downward adjustment under the newly-enacted § 4C1.1 because Mr. Littlejohn had no criminal history. SA114-15. The PSR concluded that Mr. Littlejohn's Guidelines range was, therefore, 4 to 10 months. SA122. Probation recommended a sentence of 18 months. A158.

The government asked the court to sentence Mr. Littlejohn to the statutory maximum 60 months for "the uniquely egregious conduct here." A072-73. The government argued for an upward departure under § 2H3.1, application note 5, which contemplates an upward departure based on the number of documents involved in an offense, because the Guidelines range did "not account for the fact that he leaked thousands of individuals' and entities' tax returns." A078-79.

Mr. Littlejohn asked the court to impose a Guidelines sentence that included a two- to four-level upward departure. A088. He emphasized that he fully accepted responsibility, was truly remorseful for his actions, and "committed this offense out of a deep, moral belief that the American people had a right to know the information and sharing it was the only way to effect change." A087. He explained that the tragic loss of his little sister and others close to him, as well as the impending death of his father and serious medical issues facing other family members all left him in a dark place, looking for a way to make positive change in the world. A106. And he explained his sincere attempts to accept full responsibility, mitigate any harm, and cooperate fully with the government. A117-18. Mr. Littlejohn's sentencing memorandum was supported by 29 letters from friends and family speaking to his deep sense of morality and the recent traumas in his life. SA045-104.

At sentencing on January 29, 2024, the court began by ruling that it was permitted to consider the letter from the Members of the House Ways and Means Committee but simultaneously stated that the letter "ha[d] zero impact" on its decision. A145-46.

The court concluded that the applicable Guidelines range was 4 to 10 months, and imposed a four-level upward departure under Application Note 5 of § 2H3.1 because Mr. Littlejohn "concede[d] up to a four-level departure to offense level 13

10

is appropriate here" and "[t]he offense covered personal information and tax return information of a substantial number of individuals, over a thousand" and "caused or risked substantial non-monetary harm and resulted in a substantial invasion of privacy." A153. With the upward departure, the advisory Guidelines range was 12 to 18 months' imprisonment. A154-55.[3]

The court asked the government to explain "what charges Mr. Littlejohn would have faced had he elected to proceed to trial, and whether if convicted those crimes would have involved additional potential sentencing exposure." A159-60. The government did not know or state "what charges would have been brought in the absence" of the plea agreement. A160.

The government's response frustrated the court: "But what would he have been exposed to? … I'm trying to help you here." A160. The government continued to assert that it could not discuss internal charging decisions, and the court interrupted, insisting that it needed the government to "explain that to [her] in detail." A160. The court stated, "I need to know before I make a sentencing decision, and I think the public deserves to know why we're here and he's only facing one felony count." A161.

---

[3] The court would later state, "I would reach the same sentence I impose today based solely on the variance and my analysis of the 3553(a) factors, regardless of whether or not the upward departure applied." A194.

11

The government explained that the count of conviction "was the most readily provable felony that covered all of the defendant's conduct" and "[h]is guidelines today would be the exact same whether we had charged him with a thousand counts of 7213[.]" A161. Still dissatisfied, the court opined, "But it wouldn't be the same if you had charged him with other counts. I mean, he stole government data. That's not a disclosure count. That's different than the disclosure count. I mean, DOJ prosecutors can get pretty creative on what kind of counts to bring. So that's really what I'm looking at here." A161-62.

The court continued to pepper the government, asking why more charges were not brought against Mr. Littlejohn. Some of the court's comments are excerpted here:

- "Yeah, but the one you charged him on was just on disclosure. You have separate theft counts the government can bring; right?"

- "I'm sorry, are you representing to me that someone can steal thousands and thousands and thousands of taxpayer information and the only count that the government could possibly bring is a disclosure count, because I'm confident that that's not the case. And I'm not sure why you're fighting me on this, I'm trying to help you."

- "I'm sorry, so you're telling me that when you reached your [charging] decision you didn't even bother to figure out what you could have brought? I'm sure that's not the case."

- "Well, I suggest at some point, sir, you become prepared to talk about [the charging decision]. Because I -- the fact that he did what he did and he is facing one felony count, I have no words for."

12

A162-164.

The court then asked the government to help it justify varying upwards to 60 months from 18, asking:

- "[I]f that's all he could possibly have been charged with, how could I possibly give him 60 months?"

- "How can I vary upwards without taking into account he cooperated and give him something for that?"

- "My question is, how can I upward vary to 60 months if he's cooperated, and you're giving me literally nothing else to say that he got a benefit already."

A164-65.

Despite the court's lengthy exchange with government counsel, it subsequently stated, "I am not going to base any of my sentencing decision on other crimes he could have been charged with, or the fact that he wasn't charged with them."  A186.

The government ultimately argued for the statutory maximum sentence because of "the sheer volume of the individuals who were directly impacted" and magnitude of the harm; "the extensive planning and careful execution of th[e] offense"; and the need for general deterrence.  A168-71.  The government never argued that the statutory maximum was necessary based on the identity or status of victims.

13

Following the government's allocution, the court heard from Senator Rick Scott (R-FL), whose returns were included in those sent to ProPublica. Mr. Scott asked the court to impose the statutory maximum. A172-74.

Mr. Littlejohn argued against the statutory maximum and clarified that "[s]entencing Mr. Littlejohn to six times the upper end of his sentencing guidelines, or equivalent to a 15[-]point departure would be unreasonable." A175-77. The defense reiterated the arguments in its sentencing memorandum and emphasized the "dozens of cases" cited therein "that support sentencing Mr. Littlejohn to a guidelines sentence accounting for the two- to four-point departure," arguing "[a] statutory Max sentence would necessarily ignore the guidelines, the law, and the precedent that we cite." A177; *see also* A108-17.

Mr. Littlejohn personally addressed the court and apologized for his crime. He explained that he "acted out of a sincere if misguided belief that [he] was serving the public interest," "felt that the American people should have the opportunity to see the tax returns of the sitting president before they decided on how they were going to vote," and "felt that taxpayers as a whole deserved to know just how easy it was for the wealthiest among us to avoid paying into our system." A191-92. He explained that he "believed … that we as a country make the best decisions when

14

we are all properly informed" but that his actions, "despite being driven by a desire for transparency, were illegal and have caused significant harm." A192.

The district court emphasized that, in its view, an upward variance to the statutory maximum was justified because Mr. Littlejohn "targeted the sitting President of the United States of America" and thereby "attack[ed]" "our constitutional system of democracy." A145, A197, A185. *See also* A179; A180; A181; A187; A194; A199; A213; A217. The court concluded, "our democracy will surely die if our governing philosophy becomes partisan political ends justify illegal means." A194.

According to the court, "[t]he nature of this offense was an intolerable attack on our constitutional democracy by declaring open season on the private lives of our highest elected officials." A197. Specifically, the court asserted that Mr. Littlejohn's "target[ing] Mr. Trump," "target[ing] the office" of the President, and "target[ing] democracy" was the nature of the offense and "alone would require a substantial upward variance." A199.

The court then compared Mr. Littlejohn to the mob that invaded the Capitol grounds on January 6, 2021. Noting that it had never sentenced a Capitol rioter to prison, the court said that Mr. Littlejohn's case "engenders the same fear that January 6th does." A216-17.

15

Finally, the court rejected Mr. Littlejohn's arguments about unwarranted sentencing disparities, finding there were no comparable cases or similar defendants convicted of similar crimes and, thus, no unwarranted sentencing disparities to avoid.  A211-215.

The court sentenced Mr. Littlejohn to 60 months of imprisonment, 36 months of supervised release, 300 hours of community service, and a fine of $5,000.  A132-136.

## SUMMARY OF ARGUMENT

Mr. Littlejohn's statutory maximum 60-month sentence for disclosing tax records to investigative reporters was procedurally and substantively unreasonable.

The district court predetermined to impose the statutory maximum 60-month sentence before Mr. Littlejohn's first court appearance, as evidenced by *in camera* off-the-record meetings it held before his guilty plea.  The court's premature commitment to impose the maximum sentence possible denied Mr. Littlejohn due process at sentencing.  The district court also erred procedurally by considering assertions not supported by the record and evidence outside of the record.  Specifically, the court erroneously concluded that Mr. Littlejohn targeted the President to undermine constitutional democracy, treated Mr. Littlejohn's offense as comparable to offenses committed by January 6th defendants, and accepted extra-

16

judicial views of members of Congress to arrive at Mr. Littlejohn's sentence. Furthermore, the district court erred procedurally by failing to justify the extent of the drastic upward deviation to 60 months from an already-enhanced Guidelines range of 12 to 18 months.

Each procedural error contributed to a sentence that was ultimately substantively unreasonable. Specifically, Mr. Littlejohn's sentence was substantively unreasonable because the district court's belief that he targeted President Trump and undermined democracy cannot bear the weight of the court's extreme upward variance. In addition, Mr. Littlejohn's statutory maximum sentence created unwarranted sentencing disparities between him and others convicted of similar crimes. At bottom, Mr. Littlejohn was not the *worst* offender such that a statutory maximum sentence could be justified.

Because the district court prejudged the case, conducted improper off-the-record proceedings, and was influenced by improper off-the-record political pressure, this Court should vacate Mr. Littlejohn's sentence and remand the case for resentencing before a different district court judge to preserve the appearance of fairness.

17

## STANDARD OF REVIEW

A defendant's appeal of his sentence is reviewed under the two-step process laid out by the Supreme Court in *Gall v. United States*, 552 U.S. 38, 51 (2007), "under an abuse-of-discretion standard." This Court "must first ensure that the district court committed no significant procedural error such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* Second, this Court must "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* In doing so, the court "takes into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* When the imposed sentence falls outside of the applicable Guidelines range, this Court may not apply any presumption of reasonableness. *Id.*

If a defendant fails to preserve an objection to a procedural error, that error is reviewed only for plain error. *In re Sealed Case*, 527 F.3d 188, 191-92 (D.C. Cir. 2008). The substantive reasonableness of a sentence, however, is always reviewed for abuse of discretion. *United States v. Fry*, 851 F.3d 1329, 1333 (D.C. Cir. 2017).

18

## ARGUMENT AND AUTHORITIES

I.    **MR. LITTLEJOHN'S SENTENCE WAS PROCEDURALLY UNREASONABLE.**

A.    **The District Court Erred Procedurally By Predetermining The Statutory Maximum Sentence Of 60 Months.**

"[A]n unbiased judge is essential to due process," *In re Murchison*, 349 U.S. 133, 136 (1955), and "public confidence in the integrity and independence of judges" requires jurists to "avoid even the appearance of impartiality," *In re Al-Nashiri*, 921 F.3d 224, 234 (D.C. Cir. 2019); Code of Conduct for United States Judges, Canon 1 cmt. (2000)). Indeed, the due process judicial neutrality requirement "helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law," "preserves both the appearance and reality of fairness," and "ensur[es] that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).

Thus, a sentencing judge must approach a defendant "with a clean slate and an open mind." *United States v. Abney*, 957 F.3d 241, 254 (D.C. Cir. 2020); *see also United States v. Gates*, 84 F.4th 496, 502 (2d Cir. 2023) (reviewing claim of predetermined sentence as procedural error); *United States v. Brown*, 816 F. App'x

19

240 (10th Cir. 2020) (same). The law does not permit a predetermined sentence because a sentence must be individualized to the defendant.  A "failure adequately to individualize sentences ignores the goal that punishment fit the criminal," not the crime.  *United States v Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985).  A court, therefore, errs when "the record is replete with comments suggesting that it was the … crime, rather than the culpability of each individual criminal, that led the court to impose the maximum statutory term."  *Id.*

Here, the record evidence, including *in camera* off-the-record proceedings, demonstrates that the district court was predetermined to impose the statutory maximum 60 months' incarceration before ever meeting Mr. Littlejohn, taking his plea, calculating the applicable Guidelines range, evaluating a PSR, or hearing from the parties and Mr. Littlejohn himself.

At the outset of the case, the court held a pre-plea off-the-record meeting to "express[] that she was perplexed as to why the Government had allowed Mr. Littlejohn to plead to a single count of unauthorized disclosure of taxpayer information."  A277.  According to the recreated record of these off-the-record discussions, the court "asked the Government whether there would be a separate future case with additional charges, and if not, why not."  A277.  Dissatisfied with the government's response that there would be no further prosecution, the court

20

"responded that, given the nature and extent of the conduct, she still assumed the Government would have brought multiple charges carrying a much higher possible sentence." A277. The court further stated "in a firm tone that she did not understand why the Government had allowed Mr. Littlejohn … to plead to one count with a statutory maximum of five years." A277. After the government explained that it was "standard DOJ practice to make a one count plea offer pre-indictment in cases that DOJ would otherwise charge as multiple counts … [the court] indicated that she was still troubled." A278.

Pre-plea pressure of the type the court exerted on the parties here "'depreciates the image of the trial judge' as a fair and neutral arbiter, an image 'that is necessary to public confidence in the impartial and objective administration of criminal justice'" and, thus, undermines "the integrity of the court" and "public confidence in the judicial process." *United States v. Bradley*, 455 F.3d 453, 460–61 (4th Cir. 2006) (citation omitted). A district court's participation in plea discussions also may "affect the court's actual impartiality or the appearance of impartiality at sentencing, both of which are fundamental to the integrity of that process." *United States v. Tobin*, 676 F.3d 1264, 1308 (11th Cir. 2012) (concluding that, because of court's plea involvement, defendant's "sentence must be vacated and that a different district judge must be assigned to conduct his re-sentencing"). *Accord Bradley*, 455 F.3d at

21

460–61 (judicial involvement in plea negotiations "may diminish the judge's objectivity in post-trial matters such as sentencing" and cause the defendant to "view the judge as an adversary rather than as the embodiment of his guarantee of a . . . just sentence") (cleaned up).

In *United States v. Crowell*, 60 F.3d 199 (5th Cir. 1995), the Fifth Circuit found the district court's similar pre-plea involvement in the case impacted the defendant's sentencing. The court reasoned that "the district court's comments suggested, at the very least, that it felt a sentence significantly more severe than a five-year [] sentence [in the plea offer] would be required." *Id*. at 205. These comments "create[d] the appearance of a premature commitment to a sentence of at least a certain level of severity" and warranted remand for assignment to a different district judge for resentencing. *Id*. The same is true here where, before learning anything about the case in open court on the record, the court made clear its view that the offense required no less than the statutory maximum sentence.

After the guilty plea but before sentencing, the court emailed counsel off-the-record, again expressing a commitment to impose the statutory maximum sentence. The court emailed, "[I]s it *per se* unreasonable to impose a sentence of a maximum term, outside the guidelines, to a defendant that pled guilty, cooperated with the Government, and accepts responsibility?" A323-24.

22

At sentencing, the court confirmed its predetermination of Mr. Littlejohn's sentence by resuming its pre-plea insistence that the government state that it could have brought charges exposing Mr. Littlejohn to a longer term of incarceration. A158.  When the government resisted, the court speculated: "So it's possible that the government was prepared to bring a number of counts against Mr. Littlejohn … had he forced you to go to indictment, but because you were able to do all of that before he pled, all we see today is the one count that he agreed to."  A159.  The court also pressed the government to explain "what charges Mr. Littlejohn would have faced had he elected to proceed to trial."  A159-60.  When government counsel again resisted, the court demanded to know "what would he have been exposed to? … Explain that to me in detail, not just tell me it's a benefit. I need some actual something."  A160.  The court also questioned why the government was not able to develop a theory to allow it to impose more prison time.  A161-62 ("DOJ prosecutors can get pretty creative on what kind of counts to bring. So that's really what I'm looking at here."; "I'm confident the government can bring [other charges] against someone who steals government property.").  When the government demurred, the court stated, "I'm not sure why you're fighting me on this, I'm trying to help you."  A162.  The sentencing hearing thus made clear what had before been implied:  that

23

the judge was not neutral and was advocating for the statutory maximum sentence that she predetermined before the case began.

The court's claims that it had not yet decided on a sentence, A324, and that it was not basing Mr. Littlejohn's sentence "on other crimes he could have been charged with," A186, carry no weight in light of the record. "When a sentencing court specifically disavows any reliance on a particular circumstance, a reviewing court should give credence to that disavowal absent some contradictory indication on the record," *United States v. De Jesus-Torres*, 64 F.4th 33, 40 (1st Cir. 2023). Therefore, a "district court cannot insulate its sentence from review by commenting that [something] made no difference to its determination when the record indicates that it did." *United States v. Seabrook*, 968 F.3d 224, 233-34 (2d Cir. 2020). Here, the record overwhelmingly shows that the district court decided—before ever meeting Mr. Littlejohn—to impose the statutory maximum, at least in part, because it believed he should have been charged with other crimes.

Clearly, "the court was so offended by the nature of [the] conduct that it sentenced the offense at the expense of determining an appropriate sentence for the offender." *United States v. Olhovsky*, 562 F.3d 530, 550 (3d Cir. 2009). This violated due process and this Court's expectation that a sentencing court approach a

defendant with a "clean slate and an open mind." *Abney*, 957 F.3d at 254. For this reason, remand for resentencing before a different judge is necessary.

**B.    The District Court Erred Procedurally By Considering Assertions Not Supported By The Record And Evidence Outside Of The Record.**

### 1.    The District Court's Belief That Mr. Littlejohn's Offense Targeted The President To Undermine Democracy Was Not Supported By The Record Evidence.

A sentence based on improper, mistaken, or inaccurate information is procedurally erroneous and in violation of due process. *United States v. Kpodi*, 824 F.3d 122, 126 (D.C. Cir. 2016); *United States v. Lemon*, 723 F.2d 922, 933 (D.C. Cir. 1983). "Sentencing judges necessarily have discretion to draw conclusions about the testimony given and evidence introduced at sentencing, but due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations." *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) (cleaned up). The clearly erroneous standard applies to both findings of fact and inferences drawn from findings of fact. *Kpodi*, 824 F.3d at 126.

The district court based Mr. Littlejohn's sentence on its mistaken belief that his crime was politically motivated, "targeted" a sitting President, "attacked" constitutional democracy, and was intended to cause harm to thousands of

individuals whose tax records he disclosed to investigative reporters. These findings and inferences were not supported by the record.

The court began sentencing by labeling Mr. Littlejohn a domestic terrorist and reciting its judicial oath to "defend the constitution … against all enemies foreign and domestic, because let me be absolutely clear, what you did in targeting the sitting President of the United States was an attack on our constitutional democracy." A145. Throughout sentencing, the court repeated the same, emphasizing that, in its view, Mr. Littlejohn "targeted the sitting President of the United States of America" and thereby "attack[ed]" "our constitutional system of democracy." A145, A179-80; A185; A199. *See also* A194 ("A multi-year criminal scheme targeting the sitting President of the United States and thousands of Americans."); A197 ("The nature of this offense was an intolerable attack on our constitutional democracy by declaring open season on the private lives of our highest elected officials."); A197 ("targeting of a sitting President of the United States as part of a three-year criminal scheme"); A199 ("To target Mr. Trump was to target the office, was to target democracy … ."); A213 (Mr. Littlejohn "intended to harm thousands of taxpayers, including again, a sitting President of the United States"); A217 ("by targeting a sitting President of the United States and thousands of Americans"); A187 ("Like targeting the sitting President of the United States"); A181 ("we're talking about the presidency here");

26

A179-80 ("when you target the sitting President of the United States you are targeting the office. When you target the office of the President of the United States you're targeting democracy" and "our constitutional system of government."). These assertions were clearly erroneous because they were not borne out by the facts of the case.

The substance of Mr. Littlejohn's actions was to release the sitting President's tax records, not because he was the sitting President, but because he was a presidential candidate. *See Trump v. United States*, 603 U.S. 593, 629 (2024) (explaining there are "contexts in which the President, notwithstanding the prominence of his position" acts in an "unofficial capacity" such "as a candidate for office"). As a candidate for office, President Trump was acting in an unofficial capacity, not as the President. *Id*. The practice of presidential candidates disclosing their tax records was a bi-partisan norm deemed to convey important information to the electorate. Disclosing President Trump's tax records to the press did not harm the Office of the President or President Trump personally.

Moreover, Mr. Littlejohn's motivation to release the records was not to cause any particular harm or injury to President Trump or to any democratic constitutional process; rather, it was to provide the electorate information about a candidate and therefore enhance the democratic election process. As Mr. Littlejohn stated at

sentencing, he "felt that the American people should have the opportunity to see the tax returns of the sitting president before they decided on how they were going to vote." A191. Mr. Littlejohn was motivated by ideals of truth and transparency. There was simply no evidence that he acted with any ill-will toward any particular individual or the country as a whole, and the district court's contrary findings were clearly erroneous.

Similarly, the court clearly erred in characterizing the potential and actual harm to President Trump. It likened the disclosure of tax records to a "credible death threat," "bomb threat[,]" or "letter[] containing fentanyl," and stated that every American has a commitment "to ensure that every individual elected to office is able to exercise the duties of that office without concern of exposing herself or her family to unlawful conduct and personal harm." A198. Perhaps these statements suggested a fear or concern about an increase in threats of harm to judges and other government officials, but such threats simply did not exist in this case. Any conclusion that the release of tax records threatened physical violence was clearly erroneous and should not have factored into Mr. Littlejohn's sentence. The court's reliance on such a conclusion is reason alone for resentencing. *See Bradley*, 628 F.3d at 399 ("[A] litany of inflammatory remarks can undermine the entire analysis of a sentencing judge.").

28

Releasing tax records to the press also did not otherwise *actually* harm President Trump. Although counsel for President Trump speculated that the release of his tax returns "likely cost my client thousands of votes and was all by design," there was no evidence for that claim. A050. There was similarly no evidence supporting the House Ways and Means Committee Members' assertion that Mr. Littlejohn "acted with an apparent political motivation and perhaps with an intent to impact a Presidential election." A299. Moreover, the district court made no factual finding, nor could it have, that Mr. Littlejohn's actions actually affected President Trump or impacted the election.[4] To the extent that Mr. Littlejohn violated the President's privacy in a personal capacity, the crime did not "attack" or harm the Office of the President, democracy, or the Constitution. Any contrary finding was clearly erroneous.

Mr. Littlejohn also did not "target" or try to harm any particular individual or discrete group of individuals who possessed "certain characteristics." A185. Rather, the government recognized that "he copied the records from an IRS database using queries that produced large tranches of tax data (rather than pulling specific records)." A309. *See also* A106 (search query was designed to pull the top 500 tax

---

[4] In fact, there was no evidence that there was anything unlawful or irregular in President Trump's tax records. Thus, there was no collateral consequence resulting from their release beyond the invasion of the Mr. Trump's privacy.

29

payers by year, not any particular individual tax payer). His goal was to expose inequities in the *tax system* not to spotlight individual taxpayers. He did not post data sets on the internet like Wikileaks, and he did not disclose any individual's tax data to the public at-large. Instead, he ensured the information was used only to inform stories of national public interest. Thus, the record does not demonstrate that Mr. Littlejohn had a specific partisan intent to harm individuals—regardless of their economic status.

The circumstances here are analogous to *United States v. Bradley*, 628 F.3d 394 (7th Cir. 2010), where the district court sentenced the defendant for a sex offense to over 240 months when the applicable Guidelines range was 57-71 months. *Id.* at 395. One of the reasons the district court offered for the sentence was that the victim suffered distress equivalent to death—*i.e.*, the harm to the victim. The Seventh Circuit reversed, finding that there was insufficient evidence of victim suffering of the nature supposed by the district court. The court explained that "the question here is one of degree, and nothing in the record suggests consequences of the magnitude the district court described." *Id.* at 399. The court also found that district court's "assumptions that Bradley had committed undiscovered crimes and thus was likely to commit more if released" lacked record support. *Id.*

30

Here, as in *Bradley*, the district court's view of the type or magnitude of the harm suffered by the victims as a consequence of Mr. Littlejohn's offense was not supported by the record. The district court's findings "rest[ed] on speculation rather than evidence bearing sufficient indicia of reliability" and "necessarily colored the court's view of the remaining § 3553(a) factors." *Bradley*, 628 F.3d at 401. And as in *Bradley*, it was error for the district court to base the defendant's sentence on conclusions about harm that were unsupported by the record.

It is significant procedural error for a sentencing court to base its decision on "clearly erroneous" conclusions. *Gall*, 552 U.S. at 51. A conclusion relied on at sentencing is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Miller*, 35 F.4th 807, 817 (D.C. Cir. 2022).

The absence of evidence for the district court's conclusions was plain and affected Mr. Littlejohn's substantial rights by drastically increasing his sentence. Given these circumstances, it would impact the fairness, integrity, and judicial reputation of the Court not to vacate his sentence and remand for resentencing.

**2.      The District Court's Conclusion That Mr. Littlejohn's Offense Was Comparable To Crimes Committed At The Capitol On January 6 Was Not Supported By The Evidence.**

31

The district court also relied on baseless comparisons between Mr. Littlejohn and the January 6th Capitol rioters when imposing the statutory maximum sentence. At one of its pre-plea off-the-record meetings, the court "compared Mr. Littlejohn's plea offer to those of defendants in the January 6 cases who faced multiple counts and potentially years in prison for trespassing on the Capit[o]l Grounds." A277-78. At sentencing, the court detailed the sentences it had imposed on six January 6 defendants, clarifying that it had not imposed any prison time despite "express[ing] in no uncertain terms [her] fear of the threat that January 6th posed and continues to pose to our democracy." A216. The court explained: "I mention all of this because of my belief that your actions were also a threat to our democracy. I have reacted so strongly to your case because it engenders the same fear that January 6th does, that we have gotten to point in our society in which otherwise law-abiding, rational people believe that they have no choice but to break the law to further their political agendas." A216-17. Indeed, the court expressed that Mr. Littlejohn was *more* culpable than the Capitol rioters because he "carefully planned what [he] did." A217. For this reason, the court determined that although it spared the January 6 defendants prison altogether, the necessary sentence for Mr. Littlejohn was the statutory maximum.

32

The court's comparison to January 6th defendants as a basis for Mr. Littlejohn's sentence cannot be reconciled with the facts of Mr. Littlejohn's case, and the conclusions the court drew from that comparison were clearly erroneous. This Court has written at length about the Capitol rioters, a "mob" "rampage" that "left multiple people dead, injured more than 140 people, … inflicted millions of dollars in damage to the Capitol" and "forced [elected officials] to halt their constitutional duties and flee the House and Senate chambers for safety." *Trump v. Thompson*, 20 F.4th 10, 16-17 (D.C. Cir. 2021). Rioters on January 6th showed up with weapons and wearing body armor. *United States v. Webster*, 102 F.4th 471, 477 (D.C. Cir. 2024). Flash bang grenades and tear gas were deployed as rioters fought with Capitol police to try to overturn the election results. *Id.* at 477. "At some point, the confrontation broke out into full fighting—hand to hand combat—and rioters were attacking officers with baseball bats, flagpoles, sticks, chairs, pretty much anything you can think of." *United States v. Brown*, 125 F.4th 1186, 1192 (D.C. Cir. 2025) (internal quotations omitted). "Officers later testified that their time in the Tunnel was pretty terrifying and described it as hell." *Id.*

This conduct is incomparable with Mr. Littlejohn's conduct. Mr. Littlejohn did not physically invade the center of government. Mr. Littlejohn did not put anyone in fear for their life. No one died from Mr. Littlejohn disclosing tax records.

Indeed, no one was physically harmed at all. Mr. Littlejohn accessed a number of tax records and downloaded them to a personal website. He divulged this data only after meeting with individual investigative journalists to ensure that the tax data would be secure and used responsibly, rather than posted wholesale for the world to see. The fallout of Mr. Littlejohn's actions was news articles criticizing the country's tax system. The fallout from January 6th was several deaths, hundreds of injuries, extensive property damage, and a weakened democracy.

Describing Mr. Littlejohn and the January 6th defendants as the prototypically incomparable apples and oranges would be a gross understatement. The actions of the two are so dissimilar that they are simply irrelevant to each other's sentencings and any contrary conclusion was plainly erroneous. The court's reliance on its comparison of Mr. Littlejohn and the January 6th defendants, therefore, was procedurally unreasonable.

### 3. *The District Court Erred By Accepting Extra-Judicial Views Of Members Of Congress In Arriving At Mr. Littlejohn's Sentence.*

The court also erroneously accepted for consideration the opinions of members of Congress as to the appropriate sentence in this case. The week before sentencing, the court received via email a letter from the Chief Oversight Counsel of the U.S. House Committee on Ways and Means signed by 25 members of the

34

Committee asking the court to impose the statutory maximum sentence on Mr. Littlejohn. A299. The parties also received the email and letter, but the court did not post the email or letter on the docket or make it part of the record. Counsel for Mr. Littlejohn objected by email to the court's consideration of the letter. A301.

The letter purported "to share important context related to this case" without actually doing so, and instead solely urged the court to impose the statutory maximum sentence. A297. It asked for the court's help to fulfill an "oversight role over the IRS" and expressed concern that a Guidelines sentence "will fail to have the deterrent effect needed to prevent such a theft and disclosure from happening again." A297. It also criticized the DOJ's charging decision and argued that "the facts clearly warrant additional charges." A272. It expressed that the politicians were "pleased to see" that the government asked for the statutory maximum sentence, and it baldly alleged with no factual basis that Mr. Littlejohn "acted with an apparent political motivation and perhaps with an intent to impact a Presidential election." A272-73.

The letter exerted improper influence on the court from a legislative body that was not party to the case. Members' invocation of Congress's authority in the letter to single out Mr. Littlejohn bore hallmarks of an unconstitutional bill of attainder, U.S. Const. art. I, § 9, cl. 3, which bars "legislative punishment, of any form of

35

severity, of specifically designated persons," and thereby implements "the separation

of powers, a general safeguard against legislative exercise of the judicial function,

or more simply—trial by legislature" and "reflect[s] the Framers' belief that the

Legislative Branch is not so well suited as politically independent judges and juries

to the task of ruling upon the blameworthiness, of, and levying appropriate

punishment upon, specific persons." *United States v. Brown*, 381 U.S. 437, 442-47

(1965).   Simply put, the judicial branch is supposed to be independent from

Congress.  *Id*. at 446.  The Committee infringed upon the district court's judicial

independence.

Upon receiving the letter, the court thanked the Committee for its

correspondence, "convey[ed] to the Members that [it was] carefully considering"

their letter, and sought additional information about other extra-judicial

correspondence between Congress and the DOJ.  A302.  At sentencing, the court

held that it *could* properly consider the letter and noted that it "told the signatories

that I was carefully considering the information," before claiming the letter had

"zero impact on [its] decision" and that it did "not base any part of its sentencing

decision" on the letter.  A145-46.

It was procedural error for the district court to consider the letter, which was

not filed on the record, was not submitted by any party or victim, and did not

"concern[] the background, character, and conduct," 18 U.S.C. § 3661, of Mr. Littlejohn, but merely advocated for as severe a penalty as possible under the auspices of congressional "oversight." *See also* U.S.S.G. §1B1.4 ("the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law"). The traditional discretion of sentencing courts does not, and has never, encompassed the discretion to consider a partisan request for a specific sentence from Congress outside the court record. The district court should not have accepted or ruled that it was permitted to consider the letter despite its subsequent disavowal of reliance upon it.

The court's claimed lack of reliance on the letter does not insulate its decision from review. Again, a court may not immunize its sentence from review with boilerplate disclaimers. *See supra* at 24 (citing *Seabrook*, 968 F.3d at 233-34; *De Jesus-Torres*, 64 F.4th at 40). Here, notwithstanding that at sentencing the district court proclaimed that it did not base its sentencing decision on the letter, Congress had already exerted its influence on the court. The fact that the court thanked Congress for its views, ruled that it had authority to consider them, and ultimately satisfied the Members' specific request for the maximum penalty reflects some degree of influence on the court. In this regard, Mr. Littlejohn's sentence was

37

irreparably tainted and the procedure the court followed to select it was unreasonable.

### C.   The District Court Failed To Adequately Explain The Drastic Degree Of The Upward Variance From 18 to 60 Months.

A district judge must explain why "an unusually harsh sentence is appropriate in a particular case with sufficient particularity." *Gall*, 552 U.S. at 46. The judge's justification must be "sufficiently compelling to support the degree of the variance," and "a major departure," as here, must "be supported by a more significant justification." *Id*. at 50. Therefore, in reviewing an above-Guidelines sentence, this Court "take[s] the degree of the variance into account and consider[s] the extent of a deviation from the Guidelines." *Id*. at 47. "[A]n inadequately explained and insufficiently particularized upward variance constitutes plain error" and "a procedural failing." *United States v. Brown*, 892 F.3d 385, 404, 407 (D.C. Cir. 2018).

Here, the district court did not adequately explain why its upward variance from an already-enhanced Guidelines range up to the statutory maximum was necessary. To get to a Guidelines range encompassing 60 months, the court *departed* upward by four levels from the base offense level of 9 to an enhanced offense level of 13, and then additionally *varied* upward the equivalent of 11 additional offense

38

levels.[5] This resulted in a sentence that was *five times* higher than the low end of the already-enhanced Guidelines range of 12-18 months. The court's failure to adequately justify the 11-offense-level upward variance was a plain procedural error that affected Mr. Littlejohn's substantial rights.

Although the district court gave various reasons for varying upward above the already-enhanced Guidelines range, the court failed to explain why a three- to five-fold increase above the Guidelines was necessary. The district court stated that the "[Guidelines] range d[id] not accurately reflect the seriousness of Mr. Littlejohn's conduct, given the scale of victims impacted and the nature of the harm that has as a resulted, and could continue to result in the future." A197. However, the four-level upward departure applied precisely because the offense "involved . . . tax return information of a substantial number of individuals" and "caused or risked substantial non-monetary harm (e.g., physical harm, psychological harm, or severe emotional trauma, or resulted in a substantial invasion of privacy interest) to individuals whose private or protected information was obtained." U.S.S.G. §2H3.1, comment. (n.5(A)–(B)). Thus, the court *varied* upward for the same reasons it had already *departed* upward.

---

[5] The district court departed upward four levels because Mr. Littlejohn conceded to such a departure under Application Note 5 of §2H3.1, but the court did not independently justify this degree of departure. *See* A152-55.

39

"At no point did the district court find or explain why" the initial four-level upward departure to Mr. Littlejohn's offense level "was not enough punishment for that same conduct." *Brown*, 892 F.3d at 406.  Nor did the court explain how the number of taxpayers whose records were exposed were harmed to a greater degree because there were many of them.  Instead, the court merely duplicated punishment already incorporated into the enhanced Guidelines range.  This was a plain procedural error as "an upward variance is not supposed to reduplicate punishment already meted out by the Guidelines' range itself." *Id.* at 405.

To the extent that the court concluded that Mr. Littlejohn's alleged "targeting" of the President, "intent to harm" certain individuals, and "attack" on the constitutional system of democracy warranted an additional variance of 48 months of prison from the low-end of the Guidelines range, the record evidence simply did not support these conclusions, as argued above.  *See supra* Part I.B.  More importantly, even if these had been valid reasons for a variance, the district court did not explain how the degree of variance—a sentence five times the low-end of and almost triple the high-end of an already-enhanced Guidelines range—rather than any lesser number of months was necessary in this case.

And although the court cited other reasons for its variance, such as Mr. Littlejohn's "regular training" and government consulting experience and Mr.

Littlejohn's planning over time to carry out his crime, the court also did not tie these reasons to the degree to which it varied. Rather, it offered these reasons as justifications for any variance—whether four months or 48 months—and then imposed the statutory maximum penalty it had already determined was appropriate.

The court's insufficient explanation for why the extreme degree of variance it selected was necessary to satisfy the purposes of sentencing in Mr. Littlejohn's case rendered the court's choice to impose the statutory maximum sentence was arbitrary and plainly erroneous. *United States v. Brown*, 808 F.3d 865 (D.C. Cir. 2015); *In re Sealed Case*, 527 at 192.

In similar circumstances in *United States v. Akhigbe*, 642 F.3d 1078, 1086 (D.C. Cir. 2011), this Court held that the district court plainly erred in failing to provide an adequate explanation for a sentence 12 months above the Guidelines range. In that case, as here, the district court "[d]evot[ed] most of its discussion at sentencing to its views about the severity of [the] offense" and "commented … somewhat hyperbolically about the negative consequences" of its commission. *Id*. at 1086. There, the district court provided no particular reason as to why it believed the particular degree of variance above the high-end of an otherwise applicable Guidelines range was appropriate. *Id*. Similarly, the district court here did not explain why Mr. Littlejohn's crime merited a particular degree of variance from an

already-enhanced Guidelines range. Nor did the district court suggest that it believed the Guidelines range, in general, was too low for all tax disclosure crimes. As a result, this Court "can only speculate as to why the district court believed the severity of [Mr. Littlejohn's] offense merited a [60]-month sentence." *Id.*

The district court's failure here to explain adequately the degree of the variance it imposed was prejudicial because it limits meaningful appellate review of the substantive reasonableness of the sentence, thereby seriously affecting the fairness, integrity, and public reputation of judicial proceedings. *Akhigbe*, 642 F.3d at 1087; *Brown*, 808 F.3d at 874; *Brown*, 892 F.3d at 405. It also impacts the perception of fair sentencing and leaves the public in the dark as to how the court determined that the equivalent of 11 additional offense levels above an already-enhanced offense level of 13 was necessary. *Akhigbe*, 642 F.3d at 1088. Remand for resentencing is therefore required. *Id.*

## II.    MR. LITTLEJOHN'S SENTENCE WAS SUBSTANTIVELY UNREASONABLE.

This Court "'review[s] claims of substantive unreasonableness for abuse of discretion, regardless of whether an objection on those terms was made' at sentencing." *Fry*, 851 F.3d at 1333. In doing so, the Court "take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Khatallah*, 41 F.4th 608, 645 (D.C. Cir. 2022).

42

The Court "evaluate[s] in turn whether each sentencing factor, 'as explained by the district court, can bear the weight assigned it under the totality of the circumstances in the case.'" *United States v. Jenkins*, 854 F.3d 181, 188 (2d Cir. 2017) (quoting *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008)).

Here, Mr. Littlejohn's sentence was substantively unreasonable because the reasons the district court provided for varying upward could not support a variance to the statutory maximum term of imprisonment of 60 months, and there were not otherwise § 3553(a) factors justifying the court's substantial deviation from the applicable Guidelines range. In addition, the selection of the statutory maximum sentence of 60 months created an unwarranted disparity between defendants found guilty of similar conduct and, without justification, placed this case far outside the heartland of cases as the worst of the worst.

## A. The District Court's Concerns Cannot Bear The Weight Of Its Upward Variance.

If a court has "placed more weight on the" rationale for a variance "than it [can] bear," the sentence is substantively unreasonable. *Khatallah*, 41 F.4th at 648. In *Khatallah*, certain acquitted conduct factored as relevant conduct into the Guidelines to yield a range of life plus ten years. *Khatallah*, 41 F.4th at 645. Concluding that a life sentence overestimated Khatallah's criminal conduct and culpability, the district court disregarded the acquitted conduct to impose a sentence

43

of 22 years. *Id.* at 647. This Court found the district court's sentence substantively unreasonable because it "went far lower than discounting acquitted conduct alone could support" and there was otherwise no "independent justification" for the chosen sentence. *Id.* at 647, 650. *See also United States v. Brown*, 892 F.3d at 406 (a justification for an upward variance cannot support the sentence when it is already accounted for in the Guidelines calculation). The *Khatallah* court concluded that, but for the acquitted conduct, the other § 3553(a) factors weighed in favor of a Guidelines sentence, and remand for resentencing was required. *Id.* at 649-50. The same is true here.

As in *Khatallah*, the court's drastic variance primarily relied on a single factor—its view that Mr. Littlejohn "targeted the sitting President of the United States of America" and thereby "attack[ed]" "our constitutional system of democracy." A145, A179, A185. *See also* A144, A180, A184, A187, A194, A197, A199, A205, A216, A217, A218. The court concluded that that single factor of targeting the sitting President to undermine our constitutional system of government "require[d] a maximum punishment in order to deter anyone else from doing that." A180.

For the reasons discussed above, this factor cannot bear the weight of the district court's variance from the applicable Guidelines range. And, moreover, the

44

Guidelines framework for an enhanced sentence based upon a victim's status as a government officer or employee demonstrates the unreasonableness of the district court's extreme variance. In particular, under U.S.S.G. §3A1.2, the "Official Victim" enhancement, if the victim was "a government officer or employee" and the "offense of conviction was motivated by such status," the defendant's offense level can be increased by 3 levels. The commentary further provides that "[i]f the official victim is an exceptionally high-level official, such as the President or the Vice President of the United States, an upward departure may be warranted due to the potential disruption of the government function." U.S.S.G. § 3A1.2, comment. (n.5). Adding three levels to Mr. Littlejohn's already-enhanced offense level of 13 would yield a total offense level of 16 and a Guidelines range of 21-27 months—less than 50% of the imposed 60 months. Even adding an additional three level enhancement to account solely for the President as a victim—despite that no government function was disrupted—would increase Mr. Littlejohn's offense level to 19 and correspond to a Guidelines range of 30-37 months. The district court's "further variance" above such an inflated Guidelines range was not independently justified.

More importantly, the district court did not provide an adequate independent justification for its variance to 60 months, and on the record in this case, could not have done so. The court's conclusion that a variance was necessary to "reflect the

45

seriousness of the offense, afford adequate deterrence to criminal conduct, promote respect for the law, and provide just punishment among other purposes," A204, hinged solely on the fact that President Trump was the victim of Mr. Littlejohn's conduct. But when President Trump as the victim is not factored into Mr. Littlejohn's sentence, the record evinces no other purported justification for the court's variance up to 60 months' imprisonment.

Remaining § 3553(a) factors weigh in favor of a Guidelines sentence (or a below-Guidelines sentence). As the district court found, "Mr. Littlejohn's history and characteristics," 18 U.S.C. § 3553(a)(1), show "he is a devoted friend, son, brother, and partner who goes out of his way to help others during their moments in need." A201-02. The district court found Mr. Littlejohn to possess character traits of "devotion, thoughtfulness, loyalty, and compassion." A202. The court found that "the two other purposes of sentencing under 3553(a), the need to protect the public from future crimes of the defendant, who in [its] view does pose a low risk, and to rehabilitate him in the most effective manner weigh against an upward variance here." A205. The kind of sentences available and the applicable Guidelines range, § 3553(a)(3)-(4) also weigh in favor of a Guidelines sentence. At bottom, the analysis of the § 3553(a) factors does not support the district court's variance

because each factor either supported a sentence within the Guidelines range or "was a mixed bag." *Khatallah*, 41 F.4th at 649.

Finally, the district court determined that there was no way to consider "unwarranted sentence disparities among defendants with similar records," § 3553(a)(6), because this case included the "highly unusual circumstances" of "steal[ing] the tax returns of the sitting president of the United States and provid[ing] them to the press." A212. The failure to consider this factor was a procedural error that made Mr. Littlejohn's sentence substantively unreasonable, especially since proper consideration of this factor warranted a sentence of less than sixty months imprisonment.

## B.    The Statutory Maximum Sentence Created An Unwarranted Sentencing Disparity.

The court's conclusion that there were no comparable cases to consider under § 3553(a)(6) was substantively unreasonable because it resulted in an unwarranted disparity between Mr. Littlejohn and other violators of the same statute and even other ideological leakers convicted under other statutes. Of course, no one case is ever identical to another, but Congress required that sentencing courts consider "the need to avoid unwarranted sentence disparities among defendants … who have been found guilty of *similar* conduct." § 3553(a)(6) (emphasis added). Indeed, an "extreme disparity" between sentences for similar conduct "not only fails to serve

47

the legislative intent reflected in § 3553(a)(6), but it also suggests an arbitrary level of decision-making that fails to 'promote respect for the law.'" *United States v. Lazenby*, 439 F.3d 928, 934 (8th Cir. 2006).

The district court was wrong to ignore the plethora of cases similar to Mr. Littlejohn's, some representing conduct violating the same statute, some documenting similar disclosure conduct of different financial records, and some showing disclosure of highly confidential national security secrets. *See* A108-117 (citing cases). *See, e.g., United States v. Moore*, 2:90-cr-20286 (W.D. Tenn.) (sentencing defendant after conviction at trial of thirteen counts of 26 U.S.C. § 7213 to 19 months' imprisonment for unlawfully obtaining the tax information of eight individuals and stealing the identity of one of the individuals to send harassing messages to a Tennessee Senator regarding, among other things, a purported Secret Service kidnapping plot); *United States v. Flowers*, 2:12-cr-00323 (E.D. Penn.) (sentencing defendant to two years' imprisonment for aggravated identity theft and a concurrent four months' imprisonment for one count of 26 U.S.C. § 7213A, one count of 26 U.S.C. § 7213, and one count of aiding and abetting mail fraud for unlawfully accessing tax records for numerous individuals, including her former landlord, and using the records to, among other things, apply for credit cards in her landlord's name); *United States v. Fry*, Case No. 2:19-cr-00102-EMC (N.D. Cal.)

48

(sentencing defendant to five years' probation after he used position as Investigative Analyst for the IRS's law enforcement arm to leak suspicious activity reports to The Washington Post); *United States v. Edwards*, Case No. 1:19-cr-00064-GHW-1 (S.D.N.Y.) (sentencing defendant to six months' imprisonment for conspiracy to disclose thousands of bank suspicious activity reports to a Buzzfeed journalist).[6]

In *United States v. Boucher,* 937 F.3d 702 (6th Cir. 2019), the Sixth Circuit held that a 30-day sentence for a defendant who assaulted a United States Senator was substantively unreasonable because the district court ignored the many examples of longer sentences imposed for violating "other federal assault statutes" the government had presented at sentencing. *Id.* at 713. In so ruling, the court reasoned that a "substantial variance … warranted a more careful discussion about the relationship between Boucher's sentence and the danger of unjustified disparities." *Id.* at 714. The same is true here.

Here, like in *Boucher*, the court gave an unreasonable amount of weight—that is no weight at all—to the statutory requirement to craft a sentence in light of "the

---

[6] Mr. Littlejohn also provided the court with a detailed list of those convicted of the more egregious crime of disclosing confidential information. A113-17. Of the fourteen examples Mr. Littlejohn provided, only one received a sentence comparable to Mr. Littlejohn's. In *United States v. Winner*, Case no. 1:17-cr-34 (S.D. Ga.), the defendant was an NSA contractor convicted of disclosing a classified Top Secret/SCI intelligence report which caused "exceptionally grave harm to U.S. national security." She was sentenced to 63 months' imprisonment. A117.

need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), despite that Mr. Littlejohn presented the court with dozens of examples of sentences for the same and similar conduct which all indicated that a statutory maximum sentence was drastically out of lockstep. The court disputed any similarity with other § 7213 convictions and agreed with the PSR that there was "an insufficient number of defendants similarly situated to Mr. Littlejohn to draw meaningful comparisons." A212-213. The court also declined to consider the sentences imposed in non-tax disclosure cases, A213 ("Nor does the Court find the non-tax disclosure cases cited by Mr. Littlejohn on point here."), and declined to consider cases concerning the disclosure of highly sensitive classified information because "those cases [are] in a different realm," A214.

By ignoring all sentences imposed in previous 26 U.S.C. § 7213 cases, A108-09, and finding no similarly-situated defendants and sentencing disparities to avoid, *see* A211-15, the district court fundamentally misunderstood the role of the Guidelines to "seek to embody the § 3553(a) considerations," including the need to avoid unwarranted sentencing disparities. *Rita v. United States*, 551 U.S. 338, 350 (2007). The Sentencing Commission groups similar cases and offenses by guideline to avoid unwarranted disparities. Here, the applicable guideline applies to all cases

50

involving the disclosure of private or protected information. *See* U.S.S.G. § 2H3.1. It punishes violations of multiple statutes—not just the tax statute—because they all involve the same harm—the release of private or protected information. Yet, the court ignored these sentences when imposing Mr. Littlejohn's statutory maximum sentence, the consequence of which was a substantively unreasonable sentence.

The only sentences that the court did appear to have considered in its weighing of the § 3553(a) factors are the sentences of six Capitol rioters she had personally sentenced in previous weeks. A216-17. As discussed above, this was an improper comparison. Mr. Littlejohn's conduct could not be more dissimilar to those of January 6th defendants who unlawfully entered the Capitol grounds to try and halt the certification of a presidential election. *See supra* Part I.B.2.

Ultimately, the court's conclusion that there were no comparable cases to consider under § 3553(a)(6) was substantively unreasonable because it resulted in a sentence that was simply too long given the sentences for other violators of the same statute and others convicted under analogous statutes of similar disclosure crimes. For this reason, Mr. Littlejohn's sentence should be vacated and remanded for resentencing.

### C.     This Case Did Not Represent The Most Extreme Case Of Unlawful Disclosure Of Tax Records Such That The Statutory Maximum Penalty Was A Necessary Sentence.

"[T]he length of a sentence may, with or without far reaching post-release restrictions, make it excessively punitive or needlessly harsh." *United States v. Jenkins*, 854 F.3d 181, 187 (2d Cir. 2017). When a sentence is "shockingly high" it "serve[s] no valid public purpose." *Id.* "District courts should generally reserve sentences at or near the statutory maximum for the worst offenders." *Id.* at 192.

Statutory maximums are reserved for the most culpable defendants because there is an "implied congressional mandate to frame the punishment to address the particular circumstances of the individual defendant." *Barker*, 771 F.2d at 1367. Indeed, the codification of a statutory maximum "'is an express legislative sanction … of meting out sentences substantially less than five years in prison … where there are appropriate mitigating circumstances.'" *Id.* (quoting *United States v. Hartford*, 489 F.2d 652 (5th Cir. 1974)). "From this express legislative authorization there is clearly evidenced an implied legislative will to impose a less sentence when appropriate." *Id.* (cleaned up). At bottom, a district court's considerations must involve facts that make the defendant's case *the worst of the worst* before sentencing him to the statutory maximum.

52

The district court did not explain how Mr. Littlejohn represented the worst of the worst to disclose tax information without authorization, particularly in light of his complete lack of criminal history, history of tragic personal loss, whistleblower-like motivation, early and complete acceptance of responsibility, and significant aid to and cooperation with the government.

Cases from the Sixth and Second Circuits illustrate the unreasonableness of imposing statutory maximum sentences where a defendant's case does not represent the worst of the worst. In *United States v. Daniels*, 446 F.2d 967 (6th Cir. 1971), the Sixth Circuit reversed a statutory maximum five-year sentence imposed on a conscientious objector who failed to comply with orders from the Selective Service Board. The court cited the defendant's "devout adherence to his … beliefs" and "good character." *Id.* at 968. The court explained that Congress permitted sentences below the statutory maximum and held that imposing less than the statutory maximum may be required by the facts of the case. *Id.* at 971-72. Indeed, imposing the statutory maximum in the face of legitimate mitigating circumstances "defies the United States Congress' implied legislative will to impose a lesser sentence where appropriate." *Id*.

The Second Circuit reached a similar conclusion about a 225-month sentence which neared a defendant's 240-month statutory maximum in *Jenkins*. The *Jenkins*

53

court reviewed whether "each sentencing factor, 'as explained by the district court, [could] bear the weight assigned it under the totality of the circumstances in the case.'" 854 F.3d at 188.  Despite deplorable conduct—attempting to transport thousands of depictions of child pornography transnationally, attempting to evade justice, and "demonstrat[ing] total disregard for the law"—the court concluded that Jenkins could not be sentenced as the "worst of the worst" because "he did not belong" "at the top of the range with the very worst offenders." *Id.* at 191. Specifically, the *Jenkins* court held that the overly harsh sentence failed "to account for the important differences between the sentence Jenkins" received and those who were convicted under the same statute for more culpable conduct. *Id*. at 190.

*Daniels* and *Jenkins* both support finding that Mr. Littlejohn's sentence is substantively unreasonable. Like Daniels, Mr. Littlejohn was adhering to a moral code—misguided as it was—that he was acting towards a greater good and providing transparency for the public.  Like Daniels, Mr. Littlejohn is "of good character." A202 (the court describing Mr. Littlejohn as a "fundamentally good, caring person"). And just as Daniels "followed court orders," Mr. Littlejohn cooperated with authorities to the point of identifying further weaknesses in IRS security and voluntarily handing over information of which investigators were not aware.  A117-18; SA113-14.  Like in *Daniels*, in this case, "sentencing of the Appellant to five

54

years in the penitentiary defies the United States Congress' implied legislative will to impose a lesser sentence where appropriate." *Daniels*, 446 F.2d at 972; *see also id.* ("The imprisonment of Appellant can hardly be deemed helping in reforming a young man of concededly 'good character' and 'model behavio[]r.' Imprisonment cannot serve as protection for society because the immediate release of Appellant poses no risk to society's safety.").

*Jenkins* leads to the same conclusion. Like the defendant in *Jenkins¸* Mr. Littlejohn's sentence "fail[ed] … to account for the important differences between" him and those who acted more culpably with malice or for personal gain. *Jenkins*, 854 F.3d at 191. For instance, in *United States v. Herndon*, 1:04-cr-00171 (W.D. Tex), the defendant was convicted of accessing tax information to trade it for sexual benefits and was sentenced to only 3 years' probation. In *United States v. Johnson*, 2:07-cr-003089 (E.D. Penn.), the defendant was convicted of selling tax returns of dozens of individuals to make a personal profit and was sentenced to only three years' probation. In *United States v. Washington*, 3:15-cr-00007-JJH (N.D. Ohio), the defendant was convicted of disclosing an ex-spouse's tax returns to a child support agency and was sentenced to one year of probation. *See also United States v. Richey*, 924 F.2d 857 (9th Cir. 1992) (probationary sentence for exposing a judge's tax returns as retribution for an earlier sentence).

Considering Mr. Littlejohn's sentence with those of others convicted of 26 U.S.C. § 7213, one is left with "the clear impression that the sentence[] imposed by the district court reflect[s] more its personal view of the opprobrium of the crime charged … than a careful weighing of mitigating factors and the relative levels of culpability and involvement" of Mr. Littlejohn. *Barker*, 771 F.2d at 1367. This "conclusion that the sentence is excessive is reinforced by the need to avoid unwarranted sentence disparities." *Jenkins*, 854 F.3d at 188. "While he should receive stern punishment for his crimes, the fact remains that the sentence he received fails, as required by § 3553(a)(1), to account for the important differences between the sentences" imposed for different levels of culpability. *Id.* at 190. In plain terms, the district court did not provide sufficiently compelling reasons—and the record does not otherwise contain any—that justify regarding Mr. Littlejohn as the worst of the worst and sentencing him to the most severe penalty available under § 7213. His sentence therefore was substantively unreasonable.

## III.    THIS CASE SHOULD BE ASSIGNED TO A DIFFERENT JUDGE FOR RESENTENCING.

When remanding for resentencing, this Court has the power to reassign the case to a different judge when it "may be just under the circumstances." 28 U.S.C. § 2106. The "principal" factors to consider in determining whether to reassign are:

56

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind the previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected,

(2) whether reassignment is advisable to preserve the appearance of justice, and

(3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*United States v. Wolff*, 127 F.3d 84, 88 (D.C. Cir. 1997). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *United States v. Yamashiro*, 788 F.3d 1231, 1237 (9th Cir. 2015).

Each factor here supports reassignment. First, as discussed above, the district court's views and findings about the nature of the offense were unsupported and clearly erroneous and suggested that it prejudged the case from its inception. The judge conducted improper off-the-record proceedings and was influenced by improper off-the-record political pressure that impacted her neutrality and impartiality. There is no basis for concluding that the judge will be capable of disregarding her predetermined views or the political influence on remand. In any event, at a minimum, reassignment is required to preserve the appearance of justice.

Finally, reassignment here would entail little "waste and duplication." *See id.* A new sentencing hearing must be conducted in any event because of the district

court's errors.  The record is neither extensive nor complicated, and a "resentencing is a brief event."  *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018).  A new judge would be able to expeditiously and efficiently conduct resentencing on remand, and any efficiency lost by the reassignment would be warranted by the significant "gain in preserving the appearance of fairness."  *Wolff*, 127 F.3d at 88.

## **CONCLUSION**

For the foregoing reasons, Mr. Littlejohn respectfully requests that this Court vacate his sentence and remand the case for resentencing before a different district court judge.

Respectfully submitted,

A.J. KRAMER
Federal Public Defender


_____/s/_____
Matthew L. Farley
Celia Goetzl
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500

58

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Brief was prepared in Times New Roman 14-point proportionally spaced font and contains 12,704 words in compliance with the type-volume limitations of Fed. R. App. P. 32(a)(7).

_____/s/_____
Matthew L. Farley
Assistant Federal Public Defender

# **ADDENDUM**

## **ADDENDUM**

## **TABLE OF CONTENTS**

18 U.S.C. § 3553(a) ........................................................................3a

26 U.S.C. § 7213(a)(1) ..................................................................5a

2a

**18 U.S.C. § 3553. Imposition of a sentence.**

(a) **Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)  to afford adequate deterrence to criminal conduct;

        (C)  to protect the public from further crimes of the defendant; and

        (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for—

        (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

            (i)  issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

            (ii)  that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

        (B)  in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing

3a

Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement—

    **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

4a

**26 U.S.C. § 7213. Unauthorized disclosure of information.**

**(a) Returns and return information**

**(1) Federal employees and other persons.**--It shall be unlawful for any officer or employee of the United States or any person described in section 6103(n) (or an officer or employee of any such person), or any former officer or employee, willfully to disclose to any person, except as authorized in this title, any return or return information (as defined in section 6103(b)). Any violation of this paragraph shall be a felony punishable upon conviction by a fine in any amount not exceeding $5,000, or imprisonment of not more than 5 years, or both, together with the costs of prosecution, and if such offense is committed by any officer or employee of the United States, he shall, in addition to any other punishment, be dismissed from office or discharged from employment upon conviction for such offense.