ORAL ARGUMENT NOT YET SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 24-3019

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

CHARLES EDWARD LITTLEJOHN,
*Defendant-Appellant.*

---

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

---

PUBLIC APPENDIX FOR APPELLANT -
MATERIAL UNDER SEAL IN SEPARATE SUPPLEMENT

---

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

MATTHEW L. FARLEY
CELIA GOETZL
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500

District Court
Cr. No. 23-343 (ACR)

# TABLE OF CONTENTS

Docket Entries ...................................................................................................A001

Information (ECF 1) ..........................................................................................A008

Plea Agreement (ECF 8)..................................................................................... A011

Factual Basis for Plea (ECF 9).............................................................................A029

Waiver of Indictment (ECF 11) ..........................................................................A034

Waiver of Trial by Jury (ECF 12)........................................................................A035

Transcript of Plea Hearing (October 12, 2023) (ECF 13) ...................................A036

Unopposed Motion for Leave to File Under Seal and to Redact Certain
Information in Defendant's Memorandum in Aid of Sentencing (ECF 22) ........ A068

Government's Sentencing Memorandum (ECF 23) .............................................A072

Defendant's Sentencing Memorandum (ECF 25) ...............................................A087

Defendant's Notice of Supplemental Authority (ECF 31) ..................................A123

Government's Response to Defendant's Notice of Supplemental Authority
(ECF 33)..............................................................................................................A126

Judgment (ECF 35) ............................................................................................A131

Transcript of Sentencing Hearing (January 29, 2024) (ECF 40)........................A141

Unopposed Motion to Settle and Approve Statement of Unrecorded Proceedings
(ECF 43)..............................................................................................................A258

    Attachment 1 – Statement of Unrecorded Proceedings....................................A259

    Attachment 2 – Exhibit A................................................................................A270

    Attachment 3 – Text of Proposed Order..........................................................A275

Statement of Unrecorded Proceedings (ECF 44) ........................................................ A276

Appendix A – Plea and Sentencing Correspondence ....................................... A282

Appendix B – Rule 10(c) Correspondence ...................................................... A327

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: 1:23-cr-00343-ACR-1

Case title: USA v. LITTLEJOHN

Date Filed: 09/29/2023

Assigned to: Judge Ana C. Reyes

Appeals court case number: 24-3019

### Defendant (1)

**CHARLES EDWARD LITTLEJOHN**

represented by **Lisa Manning**
SCHERTLER, ONORATO, MEAD &
SEARS, LLP
555 13th Street, N.W.
Suite 500 West
Washington, DC 20004
202-713-6714
Fax: 202-628-4177
Email: LManning@SchertlerLaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Noah Cherry**
SCHERTLER ONORATO MEAD &
SEARS
District of Columbia
555 - 13th Street, NW
Suite 500 West
Washington, DC 20004
202-675-4381
Fax: 202-628-4177
Email: ncherry@schertlerlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Celia Goetzl**
FEDERAL PUBLIC DEFENDER FOR
THE DISTRICT OF COLUMBIA
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208-7500
Fax: (202) 208-7515
Email: celia_goetzl@fd.org
*ATTORNEY TO BE NOTICED*

*Designation: Public Defender or*
*Community Defender Appointment*

## Pending Counts

26 U.S.C. 7213(a)(l); UNAUTHORIZED
DISCLOSE OF INCOME TAX RETURN -
FED. EMPLOYEE; Disclosure of Tax
Return and Return Information
(1)

## Disposition

Defendant sentenced to Sixty (60) Months
of incarceration, followed by Thirty-six (36)
Months of Supervised Release. Special
assessment imposed in the total amount of
$100.00. Defendant ordered to pay a fine in
the amount of $5,000.00.

## Highest Offense Level (Opening)

Felony

## Terminated Counts

None

## Disposition

## Highest Offense Level (Terminated)

None

## Complaints

None

## Disposition

---

## Plaintiff

**USA**

represented by **Jennifer Anne Clarke**
U.S. DEPARTMENT OF JUSTICE
Criminal Division, Public Integrity Section
1400 New York Avenue, NW
#12000
Washington, DC 20005
202-616-6067
Email: jennifer.clarke2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Jonathan Edward Jacobson**
DOJ-Crm
U.S. Department of Justice - Public Integrity
Section
1331 F St. NW
Ste 3rd Floor
Washington, DC 20004
202-934-0886
Email: jonathan.jacobson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Lauren Castaldi**
U.S. DEPARTMENT OF JUSTICE
Criminal Division
1301 New York Avenue, NW
10th Floor
Washington, DC 20530
202-305-4495
Email: lauren.castaldi@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/29/2023 | 1 | INFORMATION as to CHARLES EDWARD LITTLEJOHN (1) count(s) 1. (FORFEITURE ALLEGATION) (zltp) (Entered: 09/29/2023) |
| 09/29/2023 | 3 | NOTICE OF ATTORNEY APPEARANCE: Lisa Manning appearing for CHARLES EDWARD LITTLEJOHN (Manning, Lisa) (Entered: 09/29/2023) |
| 10/04/2023 | 4 | Unopposed MOTION for Victim Rights *(Alternative Notification)* by USA as to CHARLES EDWARD LITTLEJOHN. (Attachments: # 1 Text of Proposed Order) (Castaldi, Lauren) (Entered: 10/04/2023) |
| 10/06/2023 |  | NOTICE OF HEARING as to CHARLES EDWARD LITTLEJOHN: Arraignment and Plea Agreement Hearing set for 10/12/2023 at 3:15 PM in Courtroom 12 before Judge Ana C. Reyes. (zcdw) (Entered: 10/06/2023) |
| 10/10/2023 | 5 | ORDER granting the Government's Unopposed 4 Motion to Provide Alternative Victim Notification Pursuant to 18 U.S.C. § 3771(d)(2). See document for details. Signed by Judge Ana C. Reyes on 10/10/2023. (lcacr1) (Entered: 10/10/2023) |
| 10/12/2023 | 6 | NOTICE OF ATTORNEY APPEARANCE Jennifer Anne Clarke appearing for USA. (Clarke, Jennifer) (Entered: 10/12/2023) |
| 10/12/2023 |  | Minute Entry for proceedings held before Judge Ana C. Reyes: Plea Agreement Hearing as to CHARLES EDWARD LITTLEJOHN held on 10/12/2023. Plea of Guilty entered by CHARLES EDWARD LITTLEJOHN on Count 1. Defendant referred to the Probation Office for Presentence Investigation. Sentencing set for 1/29/2024 at 10:00 AM in Courtroom 12- In Person before Judge Ana C. Reyes. Bond Status of Defendant: Placed on personal recognizance; appeared in person. Court Reporter: Jeff Hook. Defense Attorney: Lisa Manning. US Attorneys: Lauren Castaldi and Jennifer Clarke. Pretrial Officer: Andre Sidbury. (zcdw) (Entered: 10/15/2023) |
| 10/12/2023 | 8 | PLEA AGREEMENT as to CHARLES EDWARD LITTLEJOHN. (zcdw) (Entered: 10/15/2023) |
| 10/12/2023 | 9 | FACTUAL BASIS FOR PLEA by USA as to CHARLES EDWARD LITTLEJOHN. (zcdw) (Entered: 10/15/2023) |
| 10/12/2023 | 10 | ORDER Setting Conditions of Release as to CHARLES EDWARD LITTLEJOHN. Signed by Judge Ana C. Reyes on 10/12/2023. (Attachments: # 1 Appearance Bond) (zcdw) (Entered: 10/15/2023) |
| 10/16/2023 | 11 | WAIVER OF INDICTMENT by CHARLES EDWARD LITTLEJOHN. Signed by Judge Ana C. Reyes on 10/16/2023. (zcdw) (Entered: 10/18/2023) |

| | | |
|---|---|---|
| 10/16/2023 | 12 | WAIVER of Trial by Jury as to CHARLES EDWARD LITTLEJOHN. Approved by Judge Ana C. Reyes on 10/16/23. (zcdw) (Entered: 10/18/2023) |
| 10/23/2023 | 13 | TRANSCRIPT OF PLEA AGREEMENT HEARING in case as to CHARLES EDWARD LITTLEJOHN before Judge Ana C. Reyes held on October 12, 2023. Page Numbers: 1 - 32. Date of Issuance: October 23, 2023. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 11/13/2023. Redacted Transcript Deadline set for 11/23/2023. Release of Transcript Restriction set for 1/21/2024.(Hook, Jeff) (Entered: 10/23/2023) |
| 12/04/2023 | 14 | Unopposed MOTION for Protective Order by USA as to CHARLES EDWARD LITTLEJOHN. (Attachments: # 1 Text of Proposed Order)(Castaldi, Lauren) (Entered: 12/04/2023) |
| 12/04/2023 | 15 | ORDER granting 14 Motion for Protective Order as to CHARLES EDWARD LITTLEJOHN. See document for details. Signed by Judge Ana C. Reyes on 12/4/2023. (lcacr1) (Entered: 12/04/2023) |
| 01/03/2024 | 17 | MOTION for Forfeiture of Property *(Preliminary)* by USA as to CHARLES EDWARD LITTLEJOHN. (Attachments: # 1 Text of Proposed Order Proposed Preliminary Order of Forfeiture)(Jacobson, Jonathan) (Entered: 01/03/2024) |
| 01/05/2024 | 18 | ORDER granting 17 Motion for Forfeiture of Property as to CHARLES EDWARD LITTLEJOHN (1). See document for details. Signed by Judge Ana C. Reyes on 1/5/2024. (lcacr1) (Entered: 01/05/2024) |
| 01/12/2024 | 21 | NOTICE OF ATTORNEY APPEARANCE: Noah Cherry appearing for CHARLES EDWARD LITTLEJOHN (Cherry, Noah) (Entered: 01/12/2024) |
| 01/12/2024 | 22 | Unopposed MOTION for Leave to File *Under Seal and to Redact Certain Information* by CHARLES EDWARD LITTLEJOHN. (Attachments: # 1 Text of Proposed Order)(Cherry, Noah) (Entered: 01/12/2024) |
| 01/12/2024 | | MINUTE ORDER as to CHARLES EDWARD LITTLEJOHN (1). Upon consideration of Defendant Charles Littlejohn's 22 Unopposed Motion for Leave to File Under Seal and to Redact Certain Information in Defendant's Memorandum in Aid of Sentencing and for good cause shown, it is hereby ORDERED that Defendant Littlejohn's Motion is GRANTED. *See United States v. Hubbard*, 650 F.2d 293, 323-24 (D.C. Cir. 1980) (discussing particularized privacy interests to be weighed against public access). The attachments shall be filed under seal and Defendant is permitted to redact sensitive information. SO ORDERED. Signed by Judge Ana C. Reyes on 1/12/2024. (lcacr1) (Entered: 01/12/2024) |
| 01/16/2024 | 23 | SENTENCING MEMORANDUM by USA as to CHARLES EDWARD LITTLEJOHN (Jacobson, Jonathan) (Entered: 01/16/2024) |

| | | |
|---|---|---|
| 01/17/2024 | 25 | SENTENCING MEMORANDUM by CHARLES EDWARD LITTLEJOHN (Manning, Lisa) (Entered: 01/17/2024) |
| 01/27/2024 | 31 | NOTICE of *Supplemental Authority* by CHARLES EDWARD LITTLEJOHN (Attachments: # 1 Exhibit A - Press Release, # 2 Exhibit B - Docket, # 3 Exhibit C - Indictment, # 4 Exhibit D - Edwards Memorandum, # 5 Exhibit E - Patel Memorandum, # 6 Exhibit F - Venkata Memorandum)(Manning, Lisa) (Entered: 01/27/2024) |
| 01/28/2024 | 32 | STRICKEN PURSUANT TO COURT'S ORDER OF 1/29/2024.......NOTICE *Concerning Question Posed By Court* by USA as to CHARLES EDWARD LITTLEJOHN (Jacobson, Jonathan) Modified on 1/29/2024 (zcdw). (Entered: 01/28/2024) |
| 01/28/2024 | 33 | RESPONSE by USA as to CHARLES EDWARD LITTLEJOHN re 31 NOTICE of Supplemental Authority (Jacobson, Jonathan) Modified text to include text on 1/29/2024 (zltp). (Entered: 01/28/2024) |
| 01/29/2024 | | Minute Entry for proceedings held before Judge Ana C. Reyes: Sentencing held on 1/29/2024 as to CHARLES EDWARD LITTLEJOHN. Count 1: Defendant sentenced to Sixty (60) Months of incarceration, followed by Thirty-six (36) Months of Supervised Release. Special Assessment imposed in the total amount of $100.00. Defendant ordered to pay a fine in the amount of $5,000.00. Defendant approved to voluntarily surrender for service of sentence after 4/30/2024. The Court orally ruled that docket #32, Notice Concerning Question Posed By Court, is stricken from the record. Bond Status of Defendant: Remains on personal recognizance. Court Reporter: Christine Asif. Defense Attorneys: Lisa Manning and Noah Cherry. US Attorneys: Jonathan Jacobson and Jennifer Clarke. Probation Officer: Andre Wilson. Victim Impact Witness: Senator Rick Scott. (zcdw) Modified on 1/29/2024 (zcdw). (Entered: 01/29/2024) |
| 01/31/2024 | 35 | JUDGMENT as to CHARLES EDWARD LITTLEJOHN. Statement of Reasons Not Included. Signed by Judge Ana C. Reyes on 1/31/2024. (Attachments: # 1 Preliminary Order of Forfeiture) (zltp) (Entered: 02/09/2024) |
| 01/31/2024 | 36 | STATEMENT OF REASONS as to CHARLES EDWARD LITTLEJOHN. re 35 Judgment Access to the PDF Document is restricted per Judicial Conference Policy. Access is limited to Counsel of Record and the Court. Signed by Judge Ana C. Reyes on 1/31/2024. (zltp) (Entered: 02/09/2024) |
| 02/08/2024 | 34 | ENTERED IN ERROR.....TRANSCRIPT OF PROCEEDINGS in case as to CHARLES EDWARD LITTLEJOHN before Judge Ana C. Reyes held on 1/29/2024; Page Numbers: 1-117. Date of Issuance:2/8/24. Court Reporter Christine T. Asif, Telephone number 202-354-3247, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 2/29/2024. Redacted Transcript Deadline set for 3/10/2024. Release of Transcript Restriction set for 5/8/2024.(Asif, Christine) Modified on 5/9/2024 (zltp). (Entered: 02/08/2024) |

| 02/08/2024 | | NOTICE OF ERROR as to CHARLES EDWARD LITTLEJOHN regarding 34 Transcript. The following error(s) need correction: Entered in error and refiled as docket entry 40 . (zltp) (Entered: 05/09/2024) |
|---|---|---|
| 02/10/2024 | 37 | MOTION to Appoint Counsel *(Federal Public Defender) Under the Criminal Justice Act* by CHARLES EDWARD LITTLEJOHN. (Attachments: # 1 Text of Proposed Order) (Manning, Lisa) (Entered: 02/10/2024) |
| 02/10/2024 | | MINUTE ORDER as to CHARLES EDWARD LITTLEJOHN (1). Upon consideration of Defendant Charles Littlejohn's 37 Motion for Court-Appointed Counsel under the Criminal Justice Act and to Appoint the Office of the Federal Public Defender to Advise Him on Appeal and for good cause having been shown, it is hereby ORDERED that Defendant Littlejohn's Motion is GRANTED. The Court finds Mr. Littlejohn eligible for Court-appointed counsel under the Criminal Justice Act (18 U.S.C. § 3006A) and appoints the Office of the Federal Public Defender to represent him on appeal. SO ORDERED. Signed by Judge Ana C. Reyes on 2/10/2024. (lcacr1) (Entered: 02/10/2024) |
| 02/11/2024 | | MINUTE ORDER as to CHARLES EDWARD LITTLEJOHN (1). At the request of Mr. Littlejohn, it is ORDERED that the Court's February 10, 2024 Order is hereby AMENDED as follows. Upon consideration of Mr. Littlejohn's 37 Motion for Court-Appointed Counsel under the Criminal Justice Act and to Appoint the Office of the Federal Public Defender to Advise Him on Appeal, and for good cause having been shown, Mr. Littlejohn's Motion is GRANTED in part, insofar as the Court finds Mr. Littlejohn eligible for Court-appointed counsel under the Criminal Justice Act (18 U.S.C. § 3006A). With respect to Mr. Littlejohn's request for appointment of the Office of the Federal Public Defender to represent him on appeal, the Court defers appointment of counsel to the Court of Appeals. SO ORDERED. Signed by Judge Ana C. Reyes on 2/11/2024. (lcacr1) (Entered: 02/11/2024) |
| 02/12/2024 | 38 | NOTICE OF APPEAL - Final Judgment by CHARLES EDWARD LITTLEJOHN re 35 Judgment, 36 Statement of Reasons,. Fee Status: No Fee Paid. Parties have been notified. (Manning, Lisa) (Entered: 02/12/2024) |
| 02/14/2024 | 39 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The fee was not paid as the defendant is represented by a CJA appointed attorney as to CHARLES EDWARD LITTLEJOHN re 38 Notice of Appeal - Final Judgment. (zltp) (Entered: 02/14/2024) |
| 02/16/2024 | | USCA Case Number as to CHARLES EDWARD LITTLEJOHN 24-3019 for 38 Notice of Appeal - Final Judgment filed by CHARLES EDWARD LITTLEJOHN. (zltp) (Entered: 02/26/2024) |
| 05/09/2024 | 40 | TRANSCRIPT OF PROCEEDINGS in case as to CHARLES EDWARD LITTLEJOHN before Judge Ana C. Reyes held on 1/29/2024; Page Numbers: 1-117. Date of Issuance:5/9/2024. Court Reporter Christine T. Asif, Telephone number 2023543247, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |

| | | |
|---|---|---|
| | | Redaction Request due 5/30/2024. Redacted Transcript Deadline set for 6/9/2024. Release of Transcript Restriction set for 8/7/2024.(Asif, Christine) (Entered: 05/09/2024) |
| 07/18/2024 | 41 | NOTICE OF ATTORNEY APPEARANCE: Celia Goetzl appearing for CHARLES EDWARD LITTLEJOHN (Goetzl, Celia) (Entered: 07/18/2024) |
| 07/19/2024 | | MINUTE ORDER as to CHARLES EDWARD LITTLEJOHN (1). Upon consideration of Mr. Littlejohn's 42 Unopposed Sealed Motion to Grant Appellate Counsel Access to Sealed Portions of the Record for Purposes of Appeal, and for good cause shown, the Court hereby GRANTS the Motion. The Court further ORDERS that appellate counsel for Mr. Littlejohn and the Government shall be granted access to all sealed transcripts, proceedings, pleadings, and records in this matter. The Court further ORDERS that the United States District Court Reporter is authorized to provide a complete copy of any sealed transcript to appellate counsel for both parties. The Court further ORDERS that any previously issued sealing order shall otherwise remain in effect. SO ORDERED. Signed by Judge Ana C. Reyes on 7/19/2024. (lcacr1) (Entered: 07/19/2024) |
| 10/29/2024 | 43 | Unopposed MOTION to Settle and Approve Statement of Unrecorded Proceedings by CHARLES EDWARD LITTLEJOHN. (Attachments: # 1 Statement of Facts Statement of Unrecorded Proceedings, # 2 Exhibit A, # 3 Text of Proposed Order)(Goetzl, Celia) (Entered: 10/29/2024) |
| 10/29/2024 | | MINUTE ORDER as to CHARLES EDWARD LITTLEJOHN. The Court has reviewed Defendant's 43 Unopposed Motion to Settle and Approve Statement of Unrecorded Proceedings, and requests that defense counsel provide a word version of the filing to Chambers. Signed by Judge Ana C. Reyes on 10/29/2024. (lcacr1) (Entered: 10/29/2024) |
| 11/25/2024 | | MINUTE ORDER as to CHARLES EDWARD LITTLEJOHN. Today the Court is transmitting to all counsel the Statement of Unrecorded Proceedings via email. The Court asks that defense counsel fill in the necessary Exhibit cites and then return the document to the Court for signature. Signed by Judge Ana C. Reyes on 11/25/2024. (lcacr1) (Entered: 11/25/2024) |
| 01/08/2025 | 44 | ORDER. The Court GRANTS the parties' 43 Motion to Settle and Approve Statement of Unrecorded Proceedings. The attached Statement of Unrecorded Proceedings is hereby settled and approved to be included by the district clerk in the record on appeal under Federal Rule of Appellate Procedure 10. See Statement for details. Signed by Judge Ana C. Reyes on 1/8/2025. (lcacr1) (Entered: 01/08/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/01/2025 18:41:37 | | | |
| **PACER Login:** | Axamtx204 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cr-00343-ACR |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Criminal Number:** |
| **vs.** | ) | |
| | ) | |
| **CHARLES EDWARD LITTLEJOHN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## INFORMATION

The United States charges:

### GENERAL ALLEGATIONS

1.      From in or about 2017 until in or about 2021, Defendant **CHARLES EDWARD LITTLEJOHN** served as a contractor to Company A, a consulting firm that serviced public and private clients.

2.      During the relevant period, Defendant primarily worked on contracts Company A had obtained with the U.S. Department of the Treasury's Internal Revenue Service ("IRS"). Pursuant to 26 U.S.C. § 6103(n), returns and return information were disclosed to Defendant for purposes of tax administration.

3.      From in or about 2018 until in or about 2020, while Defendant was working on an IRS contract, he stole tax returns and return information associated with Public Official A and thousands of the nation's wealthiest people, including returns and return information dating back more than 15 years. He thereafter disclosed the tax information associated with Public Official A to News Organization 1 and the other tax information to News Organization 2. Both news organizations published numerous articles describing the tax information they obtained from the Defendant.

**A008**

<u>**COUNT ONE**</u>
**(Disclosure of Tax Return and Return Information—26 U.S.C. § 7213(a)(1))**

4.     The General Allegations of this Information are re-alleged and fully incorporated here by reference.

5.     From in or about August 2019 until in or about November 2020, in the Northern District of West Virginia and elsewhere, Defendant,

**CHARLES EDWARD LITTLEJOHN,**

a person described in 26 U.S.C. § 6103(n), did willfully disclose to any person, without authorization, any return or return information, as defined in 26 U.S.C. § 6103(b), to wit, the tax returns and return information of Public Official A and thousands of other persons.

(In violation of Title 26, United States Code, Section 7213(a)(1))

2

## TAX FORFEITURE ALLEGATION
### (28 U.S.C. § 2461(c); 26 U.S.C. § 7302)

6.    Paragraphs 1 through 5 of this Information are re-alleged and fully incorporated here by reference.

7.    Pursuant to Title 28, United States Code, Section 2461(c) and Title 26, United States Code, Section 7302, the United States gives notice to Defendant **CHARLES EDWARD LITTLEJOHN**, that in the event of his conviction for the offense charged in this Information, all property he has used in violating the provisions of the internal revenue laws is subject to forfeiture.

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice


Lauren Castaldi
Jonathan E. Jacobson
Trial Attorneys
Public Integrity Section
United States Department of Justice
1301 New York Ave. NW
Washington, DC 20530
Telephone: (202) 514-1412

3



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Criminal Number:** 1:23-cr-343 |
| vs. | ) | |
| | ) | |
| **CHARLES EDWARD LITTLEJOHN,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLEA AGREEMENT

The United States of America, by and through the undersigned attorneys for the Public Integrity Section, Criminal Division, United States Department of Justice, and Charles Edward Littlejohn (hereinafter the "defendant") enter into the following Plea Agreement:

### Charges and Statutory Penalties

1.     The defendant agrees to plead guilty to Count One of the Information.

2.     The defendant understands that Count One (26 U.S.C. § 7213(a)(1)) has the following essential elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

    a.     First, the defendant was authorized to access returns and return information for purposes of tax administration pursuant to 26 U.S.C. § 6103(n).

    b.     Second, the defendant disclosed returns or return information to any person.

    c.     Third, the disclosure by the defendant was not authorized.

    d.     Fourth, the defendant's disclosure was willful.

3.     The defendant understands that pursuant to 26 U.S.C. § 7213(a)(1), Count One carries a maximum sentence of five years of imprisonment, a fine of $5,000, a $100 special

1

**A011**

assessment, and a three-year term of supervised release, an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made.

4.     If the Court accepts the defendant's plea of guilty and the defendant fulfills each of the terms and conditions of this Plea Agreement, the United States agrees that it will not further prosecute the defendant for any crimes described in the attached factual basis or for any conduct of the defendant now known to the Public Integrity Section and to the law enforcement agents working with the Public Integrity Section on the present investigation. This agreement does not provide any limitation of liability arising out of any acts of violence.

**Factual Stipulations**

5.     The defendant agrees that the attached "Factual Basis for Plea" fairly and accurately describes the defendant's actions and involvement in the offense to which the defendant is pleading guilty. The defendant knowingly, voluntarily, and truthfully admits the facts set forth in the Factual Basis for Plea.

**Sentencing**

6.     The defendant is aware that the sentence will be imposed by the court after considering the United States Sentencing Guidelines and related Policy Statements (hereinafter "U.S.S.G." or "Sentencing Guidelines"). The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation conducted by the court's probation office, which will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise that

advisory sentence up to and including the statutory maximum sentence, or lower that advisory sentence.  The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines but is not bound to impose that sentence, that the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and that such ultimate sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence.  Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

7.      The United States reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.  Subject only to the express terms of any agreed-upon sentencing recommendations contained in this Plea Agreement, the United States further reserves the right to make any recommendation as to the quality and quantity of punishment.

8.      The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to the defendant pursuant to the advisory Sentencing Guidelines that the defendant may have received from any source is only a prediction and not a promise, and is not binding on the United States, the probation office, or the court, except as expressly provided in this Plea Agreement.

**Sentencing Guidelines Stipulations**

9.      The defendant understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the Sentencing Guidelines as set forth in the Guidelines Manual for 2021.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties stipulate to the following:

      a.      Offense Level under the Guidelines

| SENTENCING GUIDELINES CALCULATIONS | | | | | |
|---|---|---|---|---|---|
| Count 1: Unauthorized Disclosure of Tax Records (26 U.S.C. § 7213(a)(1)): | | | | | |
| Base Offense Level (U.S.S.G. § 2H3.1(a)(1)) | | | | | 9 |
| Abuse of Trust Position or Use of Special Skill (U.S.S.G. § 3B1.3) | | | | | +2 |
| Obstruction of Justice (U.S.S.G. § 3C1.1) | | | | | +2 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1(a)) | | | | | -2 |
| **Total Offense Level** | | | | | **11[1]** |
| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
| 8-14 | 10-16 | 12-18 | 18-24 | 24-30 | 27-33 |

      b.      Acceptance of Responsibility

Provided that the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the United States, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, the United States agrees that a 2-level reduction would be appropriate, pursuant to U.S.S.G § 3E1.1(a).

The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

---

[1] Amendment 821 to the Sentencing Guidelines goes into effect beginning November 1, 2023, if Congress does not act to reject the amendment by that time. The parties understand that Amendment 821 may result in a reduction of the defendant's total offense level.

i.      fails to admit a complete factual basis for the plea at the time the defendant is sentenced or at any other time;

ii.      challenges the adequacy or sufficiency of the United States' offer of proof at any time after the plea is entered;

iii.      denies involvement in the offense;

iv.      gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

v.      fails to give complete and accurate information about the defendant's financial status to the Probation Office;

vi.      obstructs or attempts to obstruct justice, prior to sentencing;

vii.      has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

viii.      fails to appear in court as required;

ix.      after signing this Plea Agreement, engages in additional criminal conduct; or

x.      attempts to withdraw the plea of guilty.

If the defendant has accepted responsibility as described above, and the defendant's offense level is sixteen (16) or greater, the United States agrees that an additional 1-level reduction would be appropriate, pursuant to § 3E1.1(b) of the Sentencing Guidelines, because the defendant has assisted authorities by providing timely notice of the defendant's intention to enter a plea of guilty,

5

**A015**

thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines Offense Level is 11.

c.    Criminal History Category

Based upon the information now available to the United States (including representations by the defense), the defendant's criminal history consists of zero points.  In accordance with the above, therefore, the defendant's Criminal History Category is I.

d.    Applicable Guideline Range

Based upon the calculations set forth above, the defendant's stipulated Sentencing Guidelines range is 8 to 14 months (the "Stipulated Guidelines Range").  In addition, the parties agree that should the Court impose a fine, at Guidelines level 11, the applicable fine range is $4,000 to $40,000. The parties agree that under the Sentencing Guidelines either party may seek a downward or upward departure from the Stipulated Guidelines Range set forth above. The government hereby provides notice that it expects to seek an upward departure pursuant to Application Note 5 of Section 2H3.1 of the Sentencing Guidelines.

**Agreement as to Sentencing Allocution**

10.    The parties further agree that a sentence within the Stipulated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a). However, the parties agree that either party may seek a variance—a sentence outside of the Stipulated Guidelines Range—and suggest that the Court consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

In support of any variance argument, the defendant agrees to provide to the United States reports, motions, and documentation of any kind on which the defendant intends to rely at sentencing not later than twenty-one days before sentencing. Any basis for sentencing with respect to which all expert reports, motions, and documentation have not been provided to the United States at least twenty-one days before sentencing shall be deemed waived.

### Court Not Bound by the Plea Agreement

11.     It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines range, or other sentencing issues. In the event that the Court considers any Guidelines adjustments, departures, or calculations different from any stipulations contained in this Plea Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in 18 U.S.C. § 3553(a), the parties reserve the right to answer any related inquiries from the Court.

### Trial Rights

12.     The defendant understands and agrees that by pleading guilty in this case the defendant agrees to waive certain rights, including the following:

    a.     the right to plead not guilty and to persist in that plea;

    b.     the right to a jury trial;

    c.     the right to be represented by counsel—and if necessary to have the court appoint counsel—at trial and at every other stage of the proceeding;

      d.      the right at trial to confront and cross-examine adverse witnesses, and to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

      e.      the right to any further discovery or disclosures of information not already provided at the time of the entry of the guilty plea, other than information required to be disclosed under Federal Rule of Criminal Procedure 32(i)(2) and exculpatory or impeachment information casting doubt upon sentencing factors.

**Venue**

13.     The defendant waives any challenge to venue in this district.

**Appeal, FOIA, and Privacy Act Waiver**

14.     The defendant is aware that the defendant has the right to challenge the defendant's sentence and guilty plea on direct appeal.  The defendant is also aware that the defendant may, in some circumstances, be able to argue that the defendant's guilty plea should be set aside, or sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255).  Knowing that, and in exchange for the promises made by the government in entering this Plea Agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, including any claim that the statutes to which the defendant pled is unconstitutional and/or that the conduct admitted as part of the factual basis does not fall within the scope of the statutes, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.  The defendant also hereby waives all rights, whether asserted directly or by a representative, to request or receive from any

**A018**

department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

      a.     Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of the defendant's sentence.

      b.     If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:

          i.     that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth above;

          ii.     challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;

          iii.     challenging a decision by the sentencing judge to impose an "upward variance," pursuant to 18 U.S.C. § 3553(a), above the final Sentencing Guidelines range determined by the Court; and

          iv.     that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

If the defendant does appeal or seek collateral relief pursuant to this subparagraph, no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph.

      15.     By signing this Plea Agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in paragraph 14 of this Plea Agreement with the defendant's

attorney.  The defendant further agrees, together with the United States, to request that the Court

enter a specific finding that the waiver of the defendant's right to appeal the sentence to be imposed

in this case was knowing and voluntary.

16.    The defendant's waiver of rights in paragraph 14 shall not apply to appeals or

challenges based on new legal principles in the United States Court of Appeals for the D.C. Circuit

or the United States Supreme Court cases decided after the date of this Plea Agreement that are

held by the United States Court of Appeals for the D.C. Circuit or the United States Supreme Court

to have retroactive effect.

**Restitution**

17.    In addition to the other penalties provided by law, the Court may, on Count One,

obligate the defendant to make restitution pursuant to pursuant to 18 U.S.C. § 3663.  The defendant

understands that restitution may be ordered by the Court to all victims of the defendant's criminal

conduct and not merely for those victims included in the count to which the defendant agrees to

plead guilty.

**Release/Detention**

18.    The defendant acknowledges that while the United States will not seek a change in

the defendant's release conditions pending sentencing, the final decision regarding the defendant's

bond status or detention will be made by the Court at the time of the defendant's plea of guilty.

Should the defendant engage in further criminal conduct or violate any conditions of release prior

to sentencing, however, the United States may move to change the defendant's conditions of

release or move to revoke the defendant's release.

**Breach of Agreement**

19.    The defendant understands and agrees that if, after entering this Plea Agreement, the defendant fails specifically to perform or to fulfill completely each and every one of the defendant's obligations under this Plea Agreement, or engages in any criminal activity prior to sentencing, the defendant will have breached this Plea Agreement.  In the event of such a breach: (a) the United States will be free from its obligations under the Plea Agreement; (b) the defendant will not have the right to withdraw the guilty plea; (c) the defendant shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the United States will be free to use against the defendant, directly and indirectly, in any criminal or civil proceeding, all statements made by the defendant and any of the information or materials provided by the defendant, including such statements, information, and materials provided pursuant to this Plea Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Plea Agreement, including the defendant's statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

20.    The defendant understands that Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn.  The defendant knowingly and voluntarily waives the rights arising under these rules.

21.    The defendant understands and agrees that the United States shall only be required to prove a breach of this Plea Agreement by a preponderance of the evidence.  The defendant

further understands and agrees that the United States need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

22.     Nothing in this Plea Agreement shall be construed to permit the defendant to commit perjury, to make false statements or declarations, to obstruct justice, or to protect the defendant from prosecution for any crimes not included within this Plea Agreement or committed by the defendant after the execution of this Plea Agreement.  The defendant understands and agrees that the United States reserves the right to prosecute the defendant for any such offenses.  The defendant further understands that any perjury, false statements or declarations, or obstruction of justice relating to the defendant's obligations under this Plea Agreement shall constitute a breach of this Agreement.  In the event of such a breach, however, the defendant will not be permitted to withdraw this guilty plea.

### Waiver of Statute of Limitations

23.     It is the defendant's intent in entering this Plea Agreement to waive all defenses based on the statute of limitations with respect to the instant charge to which the defendant is pleading guilty. It is further agreed that should any conviction following the defendant's plea of guilty pursuant to this Plea Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement (including any counts that the United States has agreed not to prosecute or to dismiss at sentencing pursuant to this Plea Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement or reinstatement of such prosecution.  It is the defendant's

intent in entering this Plea Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Plea Agreement is signed.

**Suspension or Debarment**

24.    The defendant agrees not to challenge or contest any suspension or debarment proceedings initiated as a result of his guilty plea or any of the conduct referenced in the Factual Basis for Plea.

**Forfeiture**

25.    The defendant agrees to abandon and forfeit all interests in any property which was used to commit, or to facilitate the commission of, the offense to which he is pleading guilty, pursuant to 26 U.S.C. § 7302.  Such property includes, but is not limited to:

a)    Apple iPod Nano, serial number DCYG53XQDDVX (silver);

b)    Lenovo ThinkPad X1 Carbon Gen 8 laptop computer, serial number PF-2C4MK8;

c)    Lenovo ThinkPad X201 laptop computer, serial number R9-5KB1B;

d)    IBM ThinkPad, serial number L302F9X;

e)    Western Digital external hard drive, serial number WXE208808821;

f)    Silver USB flash drive located inside the lining of a wooden leather box containing an ornamental camel;

g)    Black and red USB flash drive, with serial number BM180826162B;

h)    Proton Mail account "████████[@]protonmail.com";

i)    DigitalOcean account associated with organization ID 1736078;

j)    Apple iCloud account with Directory Services Identifier 113206212;

13

k)  Twitter account " ███████ " and;

l)  Dropbox account " ███████ [@]gmail.com."

The defendant warrants that the defendant is the sole owner of all of the property listed above, and agrees to hold the United States, its agents, and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by this Plea Agreement. The government agrees to undertake reasonable efforts to provide the defendant with copies of personal or financial material and files related to his businesses that are solely available on the Lenovo ThinkPad X1 Carbon Gen 8 laptop computer, the Apple iCloud account, and/or the Dropbox account described above.

26.  The defendant further agrees to waive all interest in any assets identified above as subject to forfeiture in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.  The defendant agrees to consent to the entry of orders of forfeiture for such property, as well as any money judgment, and waives the requirements of Rule 32.2 of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that the defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and the defendant waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

27.  The defendant agrees to fully and truthfully disclose all property used to commit, or to facilitate the commission of, the offense to which he is pleading guilty.  The defendant also agrees to take all steps necessary to pass clear title to the forfeited assets to the United States,

including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture.

28.      Except as to the circumstances described in Paragraph 14(b) of this Plea Agreement, the defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant acknowledges that all property covered by this Plea Agreement is subject to forfeiture as property facilitating illegal conduct or property involved in illegal conduct giving rise to forfeiture.

### Complete Agreement

29.      No agreements, promises, understandings, or representations have been made by the parties or their counsel—either orally, in writing, or by any other means—other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by the defendant, defense counsel, and a prosecutor for the Public Integrity Section.

30.      The defendant further understands that this Plea Agreement is binding only upon the Public Integrity Section, Criminal Division, United States Department of Justice. This Plea Agreement does not bind any other office or component of the United States Department of Justice, including the United States Attorneys' Offices, nor does it bind any state or local authorities. It

15

**A025**

also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against the defendant.

31.    By signing the Plea Agreement in the space indicated below and returning the original once it has also been signed by counsel for the defendant, the defendant acknowledges that the terms and conditions of this Plea Agreement are satisfactory.

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

By: LAUREN CASTALDI
Digitally signed by LAUREN CASTALDI
Date: 2023.10.04 16:58:50 -04'00'

Lauren Castaldi
Trial Attorney
Public Integrity Section
U.S. Department of Justice
1301 New York Ave. NW
Washington, DC 20530
(202) 514-1412

By: JONATHAN JACOBSON
Digitally signed by JONATHAN JACOBSON
Date: 2023.10.04 16:56:31 -04'00'

Jonathan E. Jacobson
Trial Attorney
Public Integrity Section
U.S. Department of Justice
1301 New York Ave. NW
Washington, DC 20530
(202) 514-1412

16

**A026**

## **DEFENDANT'S ACCEPTANCE**

I have read this Plea Agreement in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crime to which I have agreed to plead guilty, the maximum penalty for that offense and Sentencing Guideline penalties potentially applicable to that offense. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Plea Agreement freely, voluntarily, and knowingly because I am guilty of the offense to which I am pleading guilty, and I believe this Plea Agreement is in my best interest.

Date:  9/28/2023

Charles Edward Littlejohn
Defendant

17

**A027**

## **ATTORNEY'S ACKNOWLEDGMENT**

I have read each of the pages constituting this Plea Agreement, reviewed them with my client, and discussed the provisions of the Plea Agreement with my client, fully. These pages accurately and completely set forth the entire Plea Agreement. I concur in my client's desire to plead guilty as set forth in this Plea Agreement.

Date: September 28, 2023

_____
Lisa Manning
For the Defendant



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

UNITED STATES OF AMERICA,      )
                               )      **Criminal Number:**  1:23-cr-343
         vs.                   )
                               )
CHARLES EDWARD LITTLEJOHN,     )
                               )
         Defendant.            )
_____)

## FACTUAL BASIS FOR PLEA

I.    Background

1.    From 2008 to 2010, from 2012 to 2013, and from 2017 to 2021, Charles Edward Littlejohn ("Defendant") served as a contractor to Company A, a consulting firm that services public and private clients.

2.    During each of these time periods, Defendant primarily worked on contracts Company A had obtained with the U.S. Department of the Treasury's Internal Revenue Service ("IRS").

3.    During much of this time, and in particular between 2018 and 2021, Defendant was authorized, pursuant to 26 U.S.C. § 6103(n), to access vast amounts of unmasked taxpayer data, including taxpayer returns and return information, on IRS databases.

4.    Defendant received regular training about protecting taxpayer data and about the potential criminal consequences of inspecting or disclosing, without authorization, taxpayer returns and return information.

II.   Disclosure of Public Official A's Tax Returns and Return Information

5.    In or about late 2018, Defendant accessed tax return and return information for a high-ranking government official, Public Official A, and related entities and individuals. Rather

**A029**

than directly search an IRS database for Public Official A's tax return and return information, Defendant queried the database using more generalized parameters that would nevertheless collect Public Official A's tax return and return information (as well as return and return information for related entities and individuals) in the resulting data set in order to avoid detection by the IRS.

6.      On or about November 30, 2018, Defendant uploaded this data to a private website that he controlled. He elected to upload the data to a personal, private website—rather than downloading the data to a physical storage device or uploading it to a more conventional remote storage website—to avoid IRS protocols designed to detect and prevent large downloads or uploads from IRS devices or systems. That same day, Defendant used a personal computer to download the data from the private website. He then stored the data in multiple locations, including on personal data storage devices such as his Apple iPod.

7.      In or about May 2019, Defendant contacted a news organization ("News Organization 1") to discuss the possibility of giving them a copy of Public Official A's tax records. Between in or about August 2019 and in or about October 2019, Defendant, without authorization, disclosed to a journalist at News Organization 1 the tax return and return information for Public Official A (and related entities and individuals) that he had taken from an IRS database.

8.      Between in or about January 2020 and in or about Spring 2020, Defendant stole additional tax return and return information associated with Public Official A (and related entities and individuals) and supplemented his initial disclosures to News Organization 1.

9.      On or about September 27, 2020, News Organization 1 published the first of several articles that publicly disclosed information contained in Public Official A's tax returns, which News Organization 1 had obtained from Defendant.

III.    Disclosure of Thousands of Other Returns and Return Information

10.    In or about July and August 2020, Defendant accessed unmasked IRS data associated with thousands of the nation's wealthiest people, including returns and return information dating back over 15 years.

11.    Defendant thereafter uploaded this data to a private website on multiple occasions using a method similar to the one he employed in removing tax return and return information associated with Public Official A. In uploading the taxpayer returns and return information to a private website, Defendant used two virtual machines (essentially simulated versions of physical computers). In order to conceal his activities, Defendant promptly destroyed these machines after he used them to steal the data from IRS.

12.    In or about September 2020, Defendant contacted a second news organization ("News Organization 2") to discuss the possibility of giving them a copy of the data on the nation's wealthiest taxpayers that he had stolen from the IRS. Also in or about September 2020, Defendant, without authorization, anonymously provided the data to News Organization 2 by mailing it on a password-protected personal data storage device. In or about November 2020, Defendant provided the device's password to a journalist at News Organization 2.

13.    Since that time, News Organization 2 has published nearly 50 articles using the returns and return information provided by Defendant.

\*        \*        \*

14.    Defendant acknowledges that he willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation of his offenses. For example:

3

**A031**

a.  Almost all of the files in Defendant's user profile on his assigned IRS laptop computer were deleted just prior to the laptop being returned to the IRS, when Defendant ceased working on Company A's IRS contract in 2021.

b.  Similarly, Defendant destroyed the virtual machines soon after he used them to facilitate his theft of the taxpayer returns and return information from an IRS database, in one case just minutes after stealing a data set and in another case approximately two days after stealing another data set.

c.  In addition, after uploading the taxpayer returns and return information to the private website he had recently created, Defendant promptly contacted the domain registration service to cancel the private website's domain registration.

Defendant's obstructive conduct occurred prior to the start of the investigation, but was purposefully calculated, and likely, to thwart the investigation or prosecution of his offenses.

15.  Defendant acknowledges that he abused a position of trust and employed highly specialized technical skills in furthering his criminal activity.

16.  Defendant's disclosure of the tax returns and return information described above was not authorized, and was knowing and willful.

4

**A032**

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Factual Basis for Plea fully.

I have read every word of this Factual Basis for Plea. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Factual Basis for Plea, and declare under penalty of perjury that it is true and correct.

Date: _10/12/2023_

_____
Charles Edward Littlejohn
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Factual Basis for Plea and reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Factual Basis for Plea as true and accurate.

Date: _October 12, 2023_

_____
Lisa Manning
Counsel for Defendant Charles Edward Littlejohn

**A033**

AO 455 (Rev. 01/09) Waiver of an Indictment



**FILED**

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| United States of America | ) | |
| v. | ) | Case No. 1:23-cr-343 |
| Charles Edward Littlejohn | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: September 20, 2023

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Lisa Manning
*Printed name of defendant's attorney*

_____
*Judge's signature*

AVA C REYES    USDC Judge
*Judge's printed name and title*



CO 526 Rev. 5/2018

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA   )
  )
      vs.   )    Criminal Case No.: 23-cr-00343 (ACR)
  )
CHARLES EDWARD LITTLEJOHN   )
  )
  )

### WAIVER OF TRIAL BY JURY

With the consent of the United States Attorney and the approval of the Court, the defendant

waives his right to trial by jury.

_____
Defendant

_____
Counsel for Defendant

I consent:

_____
Assistant United States attorney

Approved:

_____    Date: 10 / 16 / 23

United States District Judge

**A035**

<pre>
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,
                                        Criminal Action
 4            Plaintiff,                No. 1:23-cr-0343

 5         vs.                          Washington, DC
                                        October 12, 2023
 6   CHARLES EDWARD LITTLEJOHN,
                                           3:15 p.m.
 7            Defendant.
     _____/
 8

 9           TRANSCRIPT OF PLEA AGREEMENT HEARING
             BEFORE THE HONORABLE ANA C. REYES
10              UNITED STATES DISTRICT JUDGE

11
     APPEARANCES:
12
     For the Government:    LAUREN CASTALDI
13                          JENNIFER CLARKE
                              U.S. Department of Justice
14                            Criminal Division
                              1301 New York Ave, NW, 10th Floor
15                            Washington, DC 20004

16
     For the Defendant:     LISA MANNING
17                            Schertler, Onorato, Mead & Sears
                              555 13th Street, NW, Suite 500 West
18                            Washington, DC 20004

19

20   Also Present:          ALINA HABBA, for Donald J. Trump

21

22
     Court Reporter:        JEFF HOOK
23                            Official Court Reporter
                              U.S. District & Bankruptcy Courts
24                            333 Constitution Avenue, NW
                              Room 4700-C
25                            Washington, DC 20001
</pre>

1                    **P R O C E E D I N G S**

2              **DEPUTY CLERK:**  This is criminal action 23-343,

3    United States of America v. Charles Edward Littlejohn.

4    Would the parties please come forward and identify

5    themselves for the record.

6              **MS. CASTALDI:**  Good afternoon, Your Honor.  Laura

7    Castaldi and Jennifer Clarke for the United States.

8              **THE COURT:**  Good afternoon.

9              **THE DEFENDANT:**  Good afternoon, Your Honor.

10   Charles Edward Littlejohn.

11             **MS. MANNING:**  Good afternoon, Your Honor.  Lisa

12   Manning on behalf of Mr. Littlejohn.

13             **THE COURT:**  All right.

14             **MS. MANNING:**  And, Your Honor, if I may, I have a

15   colleague with me who is pending admission before this

16   Court, he's a member in good standing of the D.C. bar.  May

17   I ask the Court if he may sit at counsel table?

18             **THE COURT:**  Of course, yes.  Yes, of course.  Who

19   is it?

20             **MS. MANNING:**  His name is Noah Cherry, and as soon

21   as he's admitted he will enter his appearance.

22             **THE COURT:**  Okay.  Hello, Mr. Cherry.

23             **MR. CHERRY:**  Hello, Your Honor.

24             **THE COURT:**  You're up in the big leagues now.  All

25   right.  Counsel, Mr. Littlejohn, I understand from your

3

1   attorney that you wish to plead guilty?

2          **THE DEFENDANT:**  Yes, Your Honor.

3          **THE COURT:**  Okay.  Could you please come up, I

4   have some questions I need to ask you.  Anything from the

5   government before I start?

6          **MS. CASTALDI:**  No, Your Honor.

7          **THE COURT:**  All right, thank you.  Mr. Littlejohn,

8   I must ask you certain questions to ensure that you

9   understand your rights, and that this plea is voluntary.  If

10  you don't understand any of my questions, please let me know

11  and I will make them clear, okay.

12         Could you please swear in the defendant,

13  Ms. White.

14         **DEPUTY CLERK:**  Yes, Your Honor.

15    Please raise your right hand.  Do you solemnly swear or

16  affirm that you will well and truly answer all questions

17  propounded to you by the Court, so help you God?

18         **THE DEFENDANT:**  I do.

19         **DEPUTY CLERK:**  Thank you.

20         **THE COURT:**  All right.  Mr. Littlejohn, because

21  I've put you under oath, if you testify falsely, you could

22  be prosecuted for perjury or for making a false statement.

23  Do you understand that?

24         **THE DEFENDANT:**  I do, Your Honor.

25         **THE COURT:**  What is your date of birth, sir?

**A038**

4

1          **THE DEFENDANT:**  It's March 14th, 1985.

2          **THE COURT:**  How far did you go in school?

3          **THE DEFENDANT:**  Bachelor's degree.

4          **THE COURT:**  From?

5          **THE DEFENDANT:**  University of North Carolina at

6     Chapel Hill.

7          **THE COURT:**  What date did you graduate?

8          **THE DEFENDANT:**  2007.

9          **THE COURT:**  Have you taken any drugs or

10    medications or anything else in the last two days that might

11    make it difficult for you to follow these Court proceedings?

12         **THE DEFENDANT:**  No, Your Honor.

13         **THE COURT:**  Okay.  Were you born in the United

14    States?

15         **THE DEFENDANT:**  Yes, Your Honor.

16         **THE COURT:**  Does counsel for either side have any

17    question as to the defendant's competence to enter a plea at

18    this time?

19         **MS. CASTALDI:**  Not from the government, Your

20    Honor.

21         **MS. MANNING:**  No, Your Honor.

22         **THE COURT:**  Your attorney tells me, sir, that

23    instead of going to trial, you wish to plead guilty to the

24    offense of unauthorized disclosure of tax returns and return

25    information under 26 U.S.C. 7213(a)(1); is that correct?

**A039**

1          **THE DEFENDANT:**  Yes, Your Honor.

2          **THE COURT:**  And, Ms. Manning, I believe that you

3     have a signature of the plea agreement in the case?

4          **MS. MANNING:**  Yes, Your Honor.

5          **THE COURT:**  Could you please show it to

6     Mr. Littlejohn.  Mr. Littlejohn, can you please check that

7     what Ms. Manning has given you is your plea agreement and

8     that that is your signature?

9          **THE DEFENDANT:**  It is, Your Honor.

10          **THE COURT:**  Did you read and understand this

11     agreement before signing it?

12          **THE DEFENDANT:**  Yes, Your Honor.

13          **THE COURT:**  And is this the agreement that you

14     wish to enter?

15          **THE DEFENDANT:**  Yes, Your Honor.

16          **THE COURT:**  Okay.  Ms. Manning, could you hand

17     that up to Ms. White, please.  All right.  Sir, I'm going to

18     go over the terms unrelated to sentencing, then I will

19     discuss the sentencing terms.  Among the non-sentencing

20     terms are that if you plead guilty, you're going to agree to

21     forfeit the property used to commit the offense, including

22     at least the 12 items listed on pages 13 to 14 of the

23     agreement.

24          Do you understand that?

25          **THE DEFENDANT:**  Yes, Your Honor.

1       **THE COURT:**  All right.  I will now go over the

2   sentencing terms.  The maximum sentence you could receive on

3   the charge of unauthorized disclosure of tax returns and

4   return information, 26 U.S.C. 7213(a)(1), is five years of

5   imprisonment, a fine of $5,000, three years of supervised

6   release, a $100 special assessment, an order of restitution,

7   and an obligation to pay any applicable interest or

8   penalties on fines or restitution not timely made.

9       Do you understand that?

10      **THE DEFENDANT:**  I do, Your Honor.

11      **THE COURT:**  Do you understand that this crime is

12   subject to certain sentencing guidelines?

13      **THE DEFENDANT:**  Yes, Your Honor.

14      **THE COURT:**  Have you discussed with your attorney

15   how they might apply in this case?

16      **THE DEFENDANT:**  Yes, Your Honor.

17      **THE COURT:**  The U.S. sentencing guidelines in this

18   case have been estimated to be between eight and 14 months

19   of imprisonment.  That range is based on the parties'

20   estimates that the guidelines offense level is 11 before any

21   new amendments to the guidelines come into effect.  In this

22   case, the parties may seek a variance or a sentence outside

23   of the stipulated guidelines range of eight to 14 months of

24   imprisonment.

25      Do you understand that I do not know today

1    precisely what guideline range your sentence might fall

2    into, and I won't know until after I've reviewed the

3    presentence report?

4              **THE DEFENDANT:**  Yes, Your Honor.

5              **THE COURT:**  Do you also understand that this

6    sentencing range is where I must start in determining your

7    sentence?

8              **THE DEFENDANT:**  Yes, Your Honor.

9              **THE COURT:**  But I don't have to end there?

10             **THE DEFENDANT:**  Yes, Your Honor.

11             **THE COURT:**  Do you understand that I can sentence

12   you anywhere within the range or above the range as long as

13   I do not exceed the statutory maximum?

14             **THE DEFENDANT:**  Yes, Your Honor.

15             **THE COURT:**  So to be absolutely clear, the

16   statutory maximum is five years and I could sentence you to

17   five years.  Do you understand that?

18             **THE DEFENDANT:**  I understand, Your Honor.

19             **THE COURT:**  In prison?

20             **THE DEFENDANT:**  Yes.

21             **THE COURT:**  Okay.  Has anybody promised you what

22   sentence I will actually give in this case?

23             **THE DEFENDANT:**  No, Your Honor.

24             **THE COURT:**  All right.  Has anyone made any

25   promises to you other than the ones that I have just

1   mentioned to you to get you to plead guilty?

2         **THE DEFENDANT:**  No, Your Honor.

3         **THE COURT:**  Have you had enough time to talk with

4   your attorney?

5         **THE DEFENDANT:**  Yes, Your Honor.

6         **THE COURT:**  And are you satisfied with her

7   services as your lawyer?

8         **THE DEFENDANT:**  Yes, Your Honor.

9         **THE COURT:**  The plea agreement also contains

10   another document which sets forth what the government would

11   have proved had this case gone to trial.

12         Ms. Manning, do you have that to show him?

13         **MS. MANNING:**  Yes, Your Honor, it is in front of

14   him.

15         **THE COURT:**  All right.  This is the statement of

16   facts.  This also appears to bear your signature, sir.  Can

17   you review that and tell me if that is in fact your

18   signature?

19         **MS. MANNING:**  Your Honor, that was an addendum

20   that we signed earlier, and I believe the Court has the

21   original copy.

22         **THE COURT:**  He doesn't have a signed copy?

23         **MS. MANNING:**  The original factual basis for the

24   plea was incorporated into the plea agreement, so we had

25   only signed the plea agreement itself with this document

1  incorporated.  And I believe the government earlier

2  submitted to chambers a signed addendum that was signing to

3  acknowledge the factual basis for the plea.

4         **THE COURT:**  Okay.  Why don't we make this easy,

5  does he have it in front of him?

6         **MS. MANNING:**  Yes.

7         **THE COURT:**  Can he sign that now?  You've reviewed

8  this, correct?

9         **THE DEFENDANT:**  Yes, Your Honor.

10         **THE COURT:**  Just give it a quick review to make

11  sure it's what you saw previously.

12         **MS. MANNING:**  Your Honor, would you like me to

13  sign it as well?

14         **THE COURT:**  Sure.  Ms. Castaldi, I think you have

15  to sign it as well.  All right.  Could you please hand that

16  to Ms. White.  Thank you.

17         All right.  Sir, you've signed the factual basis

18  for the plea.  Do you agree that the information contained

19  in this factual basis, which you have signed, did in fact

20  occur?

21         **THE DEFENDANT:**  Yes, Your Honor.

22         **THE COURT:**  Which is to say, that between or

23  around August 2019 and October 2019, you, without

24  authorization, disclosed to a journalist at a news

25  organization the tax return and return information for a

1    high-ranking government official and related entities and

2    individuals that you had taken from an IRS database.

3            Do you agree that that's what occurred?

4            **THE DEFENDANT:**  I do, Your Honor.

5            **THE COURT:**  All right.  Who was the high-ranking

6    government official?

7            **THE DEFENDANT:**  Donald J. Trump.

8            **THE COURT:**  So this was while he was in office,

9    right?

10           **THE DEFENDANT:**  Correct.

11           **THE COURT:**  And what was the news organization

12   that you gave his returns to?

13           **THE DEFENDANT:**  The New York Times.

14           **THE COURT:**  All right.  And you also have said

15   that in or about September 2020, you contacted a second news

16   organization and, without authorization, gave it a copy of

17   the data on the nation's wealthiest taxpayers that you had

18   stolen from the IRS; is that correct?

19           **THE DEFENDANT:**  That's correct, Your Honor.

20           **THE COURT:**  All right.  And what was the second

21   organization?

22           **THE DEFENDANT:**  ProPublica.

23           **THE COURT:**  And there were hundreds, if not over a

24   thousand, taxpayers that this happened to -- or that you did

25   this to?

1          **THE DEFENDANT:**  Correct, Your Honor.

2          **THE COURT:**  Okay.  Was it over a thousand, do you

3     know?

4          **THE DEFENDANT:**  Yes, Your Honor.

5          **THE COURT:**  All right.  I now want to go over the

6     rights that you are giving up by pleading guilty.  Do you

7     understand that you are not required to plead guilty, and

8     that you have a right to go to trial on the charges if you

9     want to?

10          **THE DEFENDANT:**  Yes, Your Honor.

11          **THE COURT:**  Do you understand that you are

12     pleading to an information and waiving your right to

13     prosecution by indictment?

14          **THE DEFENDANT:**  Yes, Your Honor.

15          **THE COURT:**  If you went to trial, the government

16     would have to prove you guilty beyond a reasonable doubt,

17     and they would have to convince 12 jurors to unanimously

18     convict you.  Do you understand that?

19          **THE DEFENDANT:**  Yes, Your Honor.

20          **THE COURT:**  And by unanimously, what that means is

21     12 jurors would be here.  If even one found you not guilty,

22     there would be a mistrial and you would be in -- you would

23     not be found guilty at that point.  Do you understand that?

24          **THE DEFENDANT:**  I do, Your Honor.

25          **THE COURT:**  All right.  You would have the right

1    to have your lawyer with you throughout the trial.  She

2    could make motions, make objections and cross-examine all of

3    the government's witnesses.  Do you understand?

4         **THE DEFENDANT:**  I do, Your Honor.

5         **THE COURT:**  You also would have the right to

6    present a defense and put on evidence on your behalf if you

7    wished, but you would not be required to put on any evidence

8    at all because you would be presumed innocent.  Do you

9    understand that?

10        **THE DEFENDANT:**  I do, Your Honor.

11        **THE COURT:**  In addition, you could testify if you

12   chose to, but nobody could force you to do so, because you

13   would have an absolute right to remain silent at your trial,

14   and I would instruct the jury that they could not hold that

15   against you.  Do you understand that?

16        **THE DEFENDANT:**  Yes, Your Honor.

17        **THE COURT:**  If you are found guilty at your trial,

18   you would have the right to appeal.  If you could not afford

19   a lawyer on your appeal, a lawyer would be appointed to

20   represent you.  Do you understand that?

21        **THE DEFENDANT:**  Yes, Your Honor.

22        **THE COURT:**  Do you understand that if I accept

23   your plea, there will be no trial and no appeal except in

24   the circumstances that I am about to mention?

25        **THE DEFENDANT:**  Yes, Your Honor.

1    **THE COURT:**  The only ways you could appeal or seek

2    relief from a court would be if the government appeals from

3    the sentence; if I sentenced you above the statutory

4    maximum -- which I'm telling you right now will not happen;

5    if I sentence you above the guidelines range or impose an

6    upward departure pursuant to the guidelines; if you claim

7    you had received ineffective assistance of counsel in this

8    criminal case; or if there are new legal principles from the

9    D.C. Circuit or U.S. Supreme Court decided after the date of

10    this plea agreement that the D.C. Circuit or U.S. Supreme

11    Court holds shall have a retroactive effect.  Those would be

12    the only basis to seek relief.  Do you understand that?

13    **THE DEFENDANT:**  Yes, Your Honor.

14    **THE COURT:**  So I just want to make sure you're

15    absolutely clear, if I accept this plea, as soon as I accept

16    it, there is no appeal of the guilty finding, that's it,

17    you're done?

18    **THE DEFENDANT:**  I do understand that, Your Honor.

19    **THE COURT:**  Do you understand that if I accept

20    your plea, you may be deprived of valuable civil rights such

21    as the right to vote, the right to hold certain jobs, the

22    right to serve on a jury and the right to possess any kind

23    of firearm?

24    **THE DEFENDANT:**  Yes, Your Honor.

25    **THE COURT:**  Understanding all the rights that you

1    are giving up by pleading guilty, do you still want to plead

2    guilty?

3          **THE DEFENDANT:**  I do, Your Honor.

4          **THE COURT:**  Do you have any questions about what

5    rights you're giving up or anything else connected to this

6    plea of guilty?

7          **THE DEFENDANT:**  No, Your Honor.

8          **THE COURT:**  Are you pleading guilty because you

9    are in fact guilty?

10          **THE DEFENDANT:**  Yes, Your Honor.

11          **THE COURT:**  Has anyone forced you or threatened

12    you to get you to plead guilty?

13          **THE DEFENDANT:**  No, Your Honor.

14          **THE COURT:**  Okay.  You may be seated.  Before I go

15    on to accept or not accept this plea, are there any victims

16    or their representatives here today that would like to

17    exercise their rights to be reasonably heard under the

18    Crimes Victims' Right Act?

19          **MS. HABBA:**  Yes, Your Honor.

20          **THE COURT:**  Please come up.

21          **MS. HABBA:**  Thank you, Your Honor, for the

22    opportunity to be heard.  As an attorney, I find that I

23    should probably state I am not licensed in this state, in

24    the District of Columbia.  I'm here on behalf of President

25    Trump who was a victim, as we just heard, of this atrocity.

1   This was an egregious breach --

2           **THE COURT:**  Ma'am, I'm sorry, could you just

3   introduce yourself?

4           **MS. HABBA:**  Oh, excuse me, yes.  Alina Habba.

5   This was an egregious breach by an agent of the IRS who

6   targeted the President of the United States, among others,

7   for political purposes and personal gain.  As we just heard

8   in the statement of facts read into the record, President

9   Trump's returns were turned over to the New York Times right

10  before an election.  As I also learned today, his were

11  turned over before everybody else's.

12          His returns were kept in a vault at the IRS

13  because they were so sought after.  A government agency and

14  its contractors and employees have no business stealing the

15  personal data of American citizens in reckless disregard,

16  let alone the then-sitting President.  This likely cost my

17  client thousands of votes and was all by design.  Political

18  motivation has no place in policing agencies or the justice

19  system.  That is a clear example of using the press to

20  influence and interfere with an election.  And I ask this

21  Court to send a strong message that this type of conduct

22  will not be tolerated.

23          Further, we do not believe that this is limited to

24  this individual.  He worked for Booz Allen Hamilton, a known

25  government contracted agency, which hires CIA assets and

1    most notably Edward Snowden.  This was not a one-man job.

2    There should be further investigation by the Department of

3    Justice into what other individuals and entities were a part

4    of this atrocious betrayal of public trust.  Accordingly, on

5    behalf of President Trump, I am opposing any plea deal be

6    offered to Mr. Littlejohn -- for the defendant, which in any

7    way minimizes his sentence given the severity of his

8    actions.  In the alternative, if the Court does agree to a

9    plea agreement, we are requesting the maximum sentence for

10   Mr. Littlejohn.

11        Thank you for your time, Your Honor.

12        **THE COURT:**  All right.  Well, ma'am, I'm not going

13   to sentence him today, as you know.

14        **MS. HABBA:**  I know.

15        **THE COURT:**  There will be a separate sentencing,

16   and if you wish or Mr. Trump wishes to be heard there, of

17   course he can be heard there.

18        **MS. HABBA:**  I appreciate that, Your Honor.

19        **THE COURT:**  I agree completely that people taking

20   the law into their own hands for any purpose is

21   unacceptable.  This country does not work if we take laws

22   into our own hands because we disagree with someone who is

23   in power.  Ma'am, you can be seated.

24        **MS. HABBA:**  Thank you.

25        **THE COURT:**  And everyone can be well assured that

1    there will be severe consequences to this illegal act.  You

2    know -- well, let me accept the plea, and then I have a

3    couple of thoughts.

4         Mr. Littlejohn, how do you plead on the charge of

5    unauthorized disclosure of tax returns and return

6    information under 26 U.S.C. 7213(a)(1), guilty or not

7    guilty?

8         **THE DEFENDANT:**  Guilty, Your Honor.

9         **THE COURT:**  All right.  You can be seated, sir.  I

10   am satisfied that the defendant understands his rights and

11   what he is waiving in agreeing to plead guilty.  I find that

12   this waiver of the right to appeal his sentence, as

13   explained in the plea agreement and here today, was knowing

14   and voluntary.  I find that he is entering his plea

15   voluntarily.  I find that there is a factual basis for the

16   plea.

17        With respect to the statement that we just heard,

18   I see no basis not to accept his plea.  Accepting his plea

19   does not mean that if others are found to have participated,

20   they won't also be processed as the DOJ feels is

21   appropriate.  So I therefore accept defendant's plea and

22   find him guilty of unauthorized disclosure of tax returns

23   and return information, 26 U.S.C. 7213(a)(1).

24        A written presentence report will be prepared by

25   the probation office to assist me in sentencing.  You will

1    be asked to give information for the report, and your

2    attorney may be present if you wish.  You may read the

3    report before the sentencing hearing, and you and your

4    attorney will have an opportunity to speak at the sentencing

5    hearing.

6              Do you understand all that, sir?

7              **THE DEFENDANT:**  I do, Your Honor.

8              **THE COURT:**  All right.  So ironically, when I went

9    and looked at the history of the privacy of IRS reports, I

10   came across a decision by my colleague and good friend,

11   Judge McFadden.  And it was Committee on Ways and Means,

12   U.S. House of Representatives vs. U.S. Department of the

13   Treasury, including -- Mr. Trump was associated in that case

14   as a -- well, he was associated with the case, because the

15   case concerned whether or not his tax returns could be

16   disclosed by the Committee on Ways and Means.  And the case

17   cite is 575 F.Supp.3d 53, D.D.C. 2021.

18             Congress first levied an income tax in 1862, and

19   that was at the height of the civil war.  At that time, the

20   returns were public, and they were often actually posted at

21   various places.  As everyone can imagine, there was swift

22   pushback on that law, and the law ended up lapsing.  And we

23   didn't get back to an income tax until the 16th Amendment to

24   the Constitution.  And since then, there have been various

25   tax laws and various amendments to those tax laws dealing

1    with taxpayer privacy.

2           The tax reform law that we are dealing with today

3    was passed in 1976.  Interestingly enough it was passed,

4    because earlier, members of the Nixon White House had

5    obtained IRS records, including tax returns, for many of

6    Nixon's -- President Nixon's political opponents.  The House

7    Judiciary Committee heard evidence that President Nixon

8    himself had improperly accessed IRS tax returns, and the

9    House committee proposed an article of impeachment alleging

10   that President Nixon had violated the constitutional rights

11   of taxpayers.  And Congress addressed these concerns in the

12   Tax Reform Act of 1976 which established a comprehensive

13   statutory scheme for disclosing tax records.  And in

14   general, tax records, absent limited exceptions, shall be

15   confidential.  And as we have seen today, unauthorized

16   disclosure of tax returns is a felony punishable by up to

17   five years in prison.

18          Now, the Committee on Ways and Means ultimately

19   got permission to disclose -- or it was found that they

20   could, by the courts, disclose his tax returns, and his tax

21   returns -- President Trump's tax returns were legally

22   disclosed from his 2015 to 2020 tax returns.  This is how we

23   do things in this country.  We have laws.  We have people

24   who might disagree how those laws should be interpreted, and

25   when they disagree they come to a court.  And a court

1    decides how to interpret that law and what is permitted and

2    what is not permitted.

3         When we have people, for whatever reason, take the

4    law into their own hands, society doesn't function

5    correctly.  And it's not up to any individual person to

6    decide what law they want to violate or what law they want

7    to follow.  And it doesn't matter who the person is who is

8    the victim of the crime.  It doesn't matter what anyone

9    might believe about that person or not believe about that

10   person.  Every single taxpayer -- and not just Mr. Trump,

11   but the thousand other people's tax returns who you

12   disclosed to news organizations with the expectation that

13   they would be made public had a statutory right to privacy

14   in their tax returns.

15        And this isn't something that the country has done

16   on a whim.  It's important that there be privacy in tax

17   returns, because otherwise people are less likely to be

18   honest with the IRS.  And then that makes the IRS's job that

19   much more difficult to get the information it needs to

20   process taxes, taxes that we all use for society to

21   function.

22        I cannot overstate how troubled I am by what

23   occurred.  And you will have a sentencing, and I will review

24   the government's submissions for that sentencing.  I will

25   review your submission for that sentencing.  If you would

1    like to talk at that sentencing, you're obviously more than

2    welcome to do so, and I will listen very carefully to you.

3    But make no mistake, this was not acceptable.  And if

4    there's anyone out there telling you it was acceptable

5    because the end justifies the mean and they think the end

6    was appropriate, they are wrong.

7         All right, thank you everyone.  Government, anyone

8    want anything further?  All right.  Actually, I need a

9    sentencing date I'm told.  How much time do you all need?  I

10   think we usually take 90 days, right, Ms. White?

11        **DEPUTY CLERK:**  Yes, Your Honor.

12        **MS. CASTALDI:**  Whatever's available for the Court

13   is good for the government, Your Honor.

14        **THE COURT:**  Okay.  Where are we at 90 days?

15        **DEPUTY CLERK:**  That takes us to January 9th, Your

16   Honor, but we're in trial.  I'm looking for the next

17   available date.  January 23rd.

18        **THE COURT:**  How does January 23rd look for

19   everyone?

20        **MS. CASTALDI:**  Good for the government, Your

21   Honor.

22        **MS. MANNING:**  Your Honor, may I briefly approach?

23        **THE COURT:**  Uh-huh.  Oh, you want to approach

24   here?

25        **MS. MANNING:**  Yes.

1      (Discussion off the record)

2           **THE COURT:**  All right.  What's the next week look

3    like, Ms. White?

4           **DEPUTY CLERK:**  January 29th or 30th, Your Honor.

5           **THE COURT:**  Do either of those work?

6           **MS. MANNING:**  Yes, Your Honor, either date.

7           **MS. CASTALDI:**  Yes, Your Honor.

8           **THE COURT:**  All right.  Why don't we do -- what

9    day of the week is the 29th?

10          **DEPUTY CLERK:**  The 29th is a Monday, Your Honor.

11          **THE COURT:**  All right.  Why don't we do 10:00 a.m.

12   on January 29th.  And then I have a pretrial services

13   report, and I understand that you all have agreed on bond

14   conditions that I have here?

15          **MS. CASTALDI:**  Yes, Your Honor.

16          **MS. MANNING:**  I --

17          **MS. CASTALDI:**  Under the plea agreement, Your

18   Honor, the parties have agreed not to alter the current

19   status quo of the defendant's --

20          **THE COURT:**  Okay.  Well, here's the recommendation

21   I have from probation, and let me know if there's anything

22   that you all disagree with:  Not obtain a passport or other

23   international travel document; surrender all passports to

24   pretrial services; stay within the D.C. area; report as soon

25   as possible to pretrial services any contact with law

1    enforcement personnel, including arrest, questioning or

2    traffic stops; obtain permission from the Court for any

3    travel outside of the continental United States; do not

4    possess firearms; verify your address with pretrial services

5    immediately or by tomorrow; report to pretrial services as

6    directed; avoid all contact, directly or indirectly, with

7    any person who is or may be a victim or witness in the

8    investigation or prosecution.

9            Anything there that's problematic?

10        **MS. CASTALDI:**  No, Your Honor.

11        **MS. MANNING:**  Your Honor, may we approach again,

12    sorry?

13      (Discussion off the record)

14        **THE COURT:**  All right.  One sort of caveat on the

15    no contact with witnesses is, of course, Mr. Littlejohn can

16    speak with close friends and his family.  Is that

17    acceptable?

18        **MS. MANNING:**  Yes.  Thank you, Your Honor.

19        **THE COURT:**  All right.  Anything else that we need

20    to discuss today?

21        **MS. CASTALDI:**  Your Honor, two quick things.

22    First -- and I apologize if I missed it, I wanted to make

23    sure it was clear on the record that the defendant is aware

24    of his right to be charged by indictment and is waiving that

25    right.

1          **THE COURT:**  Oh, I thought we waived that.  Sir, do

2     you understand that you are -- have a right to be charged by

3     indictment, and that you are waiving that right -- or you

4     have waived that right?

5          **THE DEFENDANT:**  I do, Your Honor.

6          **THE COURT:**  Okay.

7          **MS. CASTALDI:**  The other small thing, Your Honor,

8     is the plea agreement, in the terms of forfeiture, includes

9     a few personal identifiers that include contact information.

10    We would request the permission to redact those three

11    identifiers on the public record.

12         **THE COURT:**  Yeah, and I saw those redactions,

13    that's -- motion granted.

14         **MS. CASTALDI:**  Thank you, Your Honor.

15         **THE COURT:**  Okay.  Anything else, anybody?

16         **MS. MANNING:**  No, Your Honor.

17         **THE COURT:**  Ms. White, anything?

18         **DEPUTY CLERK:**  No, Your Honor.

19         **THE COURT:**  Okay.  Thank you, everyone.

20         (Proceedings adjourned at 3:42 p.m.)

21

22

23

24

25

1                          **C E R T I F I C A T E**

2

3                    I, **Jeff M. Hook, Official Court Reporter,**

4        certify that the foregoing is a true and correct transcript

5        of the record of proceedings in the above-entitled matter.

6

7

8

9        _October 23, 2023_              _____

10              **DATE**                        **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEPUTY CLERK:
**[8]** 2/1 3/13
3/18 21/10
21/14 22/3
22/9 24/17
MR. CHERRY:
**[1]** 2/22
MS. CASTALDI:
**[12]** 2/5 3/5
4/18 21/11
21/19 22/6
22/14 22/16
23/9 23/20
24/6 24/13
MS. HABBA: **[6]**
14/18 14/20
15/3 16/13
16/17 16/23
MS. MANNING:
**[17]** 2/10
2/13 2/19 4/20
5/3 8/12 8/18
8/22 9/5 9/11
21/21 21/24
22/5 22/15
23/10 23/17
24/15
THE COURT:
**[90]**
THE DEFENDANT:
**[57]**

**$**
**$100 [1]** 6/6
**$5,000 [1]** 6/5

**0**
**0343 [1]** 1/4

**1**
**10:00 a.m [1]**
22/11
**10th [1]** 1/14
**11 [1]** 6/20
**12 [4]** 1/5
5/22 11/17
11/21
**13 [1]** 5/22
**1301 [1]** 1/14
**13th [1]** 1/17
**14 [3]** 5/22
6/18 6/23
**14th [1]** 4/1
**16th [1]** 18/23
**1862 [1]** 18/18
**1976 [2]** 19/3
19/12

**1985 [1]** 4/1
**1:23-cr-0343
[1]** 1/4

**2**
**20001 [1]** 1/25
**20004 [2]** 1/15
1/18
**2007 [1]** 4/8
**2015 [1]** 19/22
**2019 [2]** 9/23
9/23
**2020 [2]** 10/15
19/22
**2021 [1]** 18/17
**2023 [1]** 1/5
**23-343 [1]** 2/2
**23rd [2]** 21/17
21/18
**26 [4]** 4/25
6/4 17/6 17/23
**29th [4]** 22/4
22/9 22/10
22/12

**3**
**30th [1]** 22/4
**333 [1]** 1/24
**343 [1]** 2/2
**3:15 [1]** 1/6
**3:42 p.m [1]**
24/20

**4**
**4700-C [1]**
1/24

**5**
**500 [1]** 1/17
**53 [1]** 18/17
**555 [1]** 1/17
**575 [1]** 18/17

**7**
**7213 [4]** 4/25
6/4 17/6 17/23

**9**
**90 [2]** 21/10
21/14
**9th [1]** 21/15

**A**
**a.m [1]** 22/11
**above [4]** 7/12
13/3 13/5 25/5
**above-entitled
[1]** 25/5
**absent [1]**

19/14
**absolute [1]**
12/13
**absolutely [2]**
7/15 13/15
**accept [9]**
12/22 13/15
13/15 13/19
14/15 14/15
17/2 17/18
17/21
**acceptable [3]**
21/3 21/4
23/17
**Accepting [1]**
17/18
**accessed [1]**
19/8
**Accordingly [1]**
16/4
**acknowledge [1]**
9/3
**across [1]**
18/10
**act [3]** 14/18
17/1 19/12
**action [2]** 1/3
2/2
**actions [1]**
16/8
**actually [3]**
7/22 18/20
21/8
**addendum [2]**
8/19 9/2
**addition [1]**
12/11
**address [1]**
23/4
**addressed [1]**
19/11
**adjourned [1]**
24/20
**admission [1]**
2/15
**admitted [1]**
2/21
**affirm [1]**
3/16
**afford [1]**
12/18
**afternoon [4]**
2/6 2/8 2/9
2/11
**again [1]**
23/11
**against [1]**
12/15

**agencies [1]**
15/18
**agency [2]**
15/13 15/25
**agent [1]** 15/5
**agree [5]** 5/20
9/18 10/3 16/8
16/19
**agreed [2]**
22/13 22/18
**agreeing [1]**
17/11
**agreement [14]**
1/9 5/3 5/7
5/11 5/13 5/23
8/9 8/24 8/25
13/10 16/9
17/13 22/17
24/8
**ALINA [2]** 1/20
15/4
**alleging [1]**
19/9
**Allen [1]**
15/24
**alone [1]**
15/16
**alter [1]**
22/18
**alternative [1]**
16/8
**Amendment [1]**
18/23
**amendments [2]**
6/21 18/25
**AMERICA [2]**
1/3 2/3
**American [1]**
15/15
**among [2]** 5/19
15/6
**ANA [1]** 1/9
**apologize [1]**
23/22
**appeal [6]**
12/18 12/19
12/23 13/1
13/16 17/12
**appeals [1]**
13/2
**appearance [1]**
2/21
**APPEARANCES [1]**
1/11
**appears [1]**
8/16
**applicable [1]**
6/7

**apply [1]** 6/15
**appointed [1]**
12/19
**appreciate [1]**
16/18
**approach [3]**
21/22 21/23
23/11
**appropriate [2]**
17/21 21/6
**area [1]** 22/24
**around [1]**
9/23
**arrest [1]**
23/1
**article [1]**
19/9
**assessment [1]**
6/6
**assets [1]**
15/25
**assist [1]**
17/25
**assistance [1]**
13/7
**associated [2]**
18/13 18/14
**assured [1]**
16/25
**atrocious [1]**
16/4
**atrocity [1]**
14/25
**attorney [7]**
3/1 4/22 6/14
8/4 14/22 18/2
18/4
**August [1]**
9/23
**August 2019 [1]**
9/23
**authorization
[2]** 9/24
10/16
**available [2]**
21/12 21/17
**Ave [1]** 1/14
**Avenue [1]**
1/24
**avoid [1]** 23/6
**aware [1]**
23/23

**B**
**Bachelor's [1]**
4/3
**back [1]** 18/23
**Bankruptcy [1]**
1/23

**B**

bar [1]    2/16
based [1]    6/19
basis [7]    8/23
9/3 9/17 9/19
13/12 17/15
17/18
bear [1]    8/16
behalf [4]
2/12 12/6
14/24 16/5
betrayal [1]
16/4
beyond [1]
11/16
big [1]    2/24
birth [1]    3/25
bond [1]    22/13
Booz [1]    15/24
born [1]    4/13
breach [2]
15/1 15/5
briefly [1]
21/22
business [1]
15/14

**C**

came [1]    18/10
can [10]    5/6
7/11 8/16 9/7
16/17 16/23
16/25 17/9
18/21 23/15
carefully [1]
21/2
Carolina [1]
4/5
case [11]    5/3
6/15 6/18 6/22
7/22 8/11 13/8
18/13 18/14
18/15 18/16
CASTALDI [3]
1/12 2/7 9/14
caveat [1]
23/14
certain [3]
3/8 6/12 13/21
certify [1]
25/4
chambers [1]
9/2
Chapel [1]    4/6
charge [2]    6/3
17/4
charged [2]
23/24 24/2

charges [1]
11/8
CHARLES [3]
1/6 2/3 2/10
check [1]    5/6
Cherry [2]
2/20 2/22
chose [1]
12/12
CIA [1]    15/25
Circuit [2]
13/9 13/10
circumstances
[1]    12/24
cite [1]    18/17
citizens [1]
15/15
civil [2]
13/20 18/19
claim [1]    13/6
CLARKE [2]
1/13 2/7
clear [5]    3/11
7/15 13/15
15/19 23/23
client [1]
15/17
close [1]
23/16
colleague [2]
2/15 18/10
COLUMBIA [2]
1/1 14/24
commit [1]
5/21
committee [5]
18/11 18/16
19/7 19/9
19/18
competence [1]
4/17
completely [1]
16/19
comprehensive
[1]    19/12
concerned [1]
18/15
concerns [1]
19/11
conditions [1]
22/14
conduct [1]
15/21
confidential
[1]    19/15
Congress [2]
18/18 19/11
connected [1]

14/5
consequences
[1]    17/1
Constitution
[2]    1/24
18/24
constitutional
[1]    19/10
contact [4]
22/25 23/6
23/15 24/9
contacted [1]
10/15
contained [1]
9/18
contains [1]
8/9
continental [1]
23/3
contracted [1]
15/25
contractors [1]
15/14
convict [1]
11/18
convince [1]
11/17
copy [3]    8/21
8/22 10/16
correctly [1]
20/5
cost [1]    15/16
counsel [4]
2/17 2/25 4/16
13/7
country [3]
16/21 19/23
20/15
couple [1]
17/3
course [4]
2/18 2/18
16/17 23/15
court [18]    1/1
1/22 1/23 2/16
2/17 3/17 4/11
8/20 13/2 13/9
13/11 15/21
16/8 19/25
19/25 21/12
23/2 25/3
courts [2]
1/23 19/20
cr [1]    1/4
crime [2]    6/11
20/8
Crimes [1]
14/18

criminal [4]
1/3 1/14 2/2
13/8
cross [1]    12/2
cross-examine
[1]    12/2
current [1]
22/18

**D**

D.C [4]    2/16
13/9 13/10
22/24
D.D.C [1]
18/17
data [2]    10/17
15/15
database [1]
10/2
date [7]    3/25
4/7 13/9 21/9
21/17 22/6
25/10
day [1]    22/9
days [3]    4/10
21/10 21/14
DC [4]    1/5
1/15 1/18 1/25
deal [1]    16/5
dealing [2]
18/25 19/2
decide [1]
20/6
decided [1]
13/9
decides [1]
20/1
decision [1]
18/10
defendant [6]
1/7 1/16 3/12
16/6 17/10
23/23
defendant's [3]
4/17 17/21
22/19
defense [1]
12/6
degree [1]    4/3
Department [3]
1/13 16/2
18/12
departure [1]
13/6
deprived [1]
13/20
design [1]
15/17
determining [1]
7/6

difficult [2]
4/11 20/19
directed [1]
23/6
directly [1]
23/6
disagree [4]
16/22 19/24
19/25 22/22
disclose [2]
19/19 19/20
disclosed [4]
9/24 18/16
19/22 20/12
disclosing [1]
19/13
disclosure [5]
4/24 6/3 17/5
17/22 19/16
discuss [2]
5/19 23/20
discussed [1]
6/14
Discussion [2]
22/1 23/13
disregard [1]
15/15
DISTRICT [5]
1/1 1/1 1/10
1/23 14/24
Division [1]
1/14
document [3]
8/10 8/25
22/23
DOJ [1]    17/20
Donald [2]
1/20 10/7
done [2]    13/17
20/15
doubt [1]
11/16
drugs [1]    4/9

**E**

earlier [3]
8/20 9/1 19/4
easy [1]    9/4
EDWARD [4]    1/6
2/3 2/10 16/1
effect [2]
6/21 13/11
egregious [2]
15/1 15/5
eight [2]    6/18
6/23
either [3]
4/16 22/5 22/6
election [2]

**E**

election... [2]
15/10 15/20
else [4]   4/10
14/5 23/19
24/15
else's [1]
15/11
employees [1]
15/14
end [3]   7/9
21/5 21/5
ended [1]
18/22
enforcement [1]
23/1
enough [2]   8/3
19/3
ensure [1]   3/8
enter [3]   2/21
4/17 5/14
entering [1]
17/14
entities [2]
10/1 16/3
entitled [1]
25/5
established [1]
19/12
estimated [1]
6/18
estimates [1]
6/20
even [1]   11/21
everybody [1]
15/11
everyone [5]
16/25 18/21
21/7 21/19
24/19
evidence [3]
12/6 12/7 19/7
examine [1]
12/2
example [1]
15/19
exceed [1]
7/13
except [1]
12/23
exceptions [1]
19/14
excuse [1]
15/4
exercise [1]
14/17
expectation [1]
20/12

**F**

explained [1]
17/13

F.Supp.3d [1]
18/17
fact [3]   8/17
9/19 14/9
facts [2]   8/16
15/8
factual [5]
8/23 9/3 9/17
9/19 17/15
fall [1]   7/1
false [1]   3/22
falsely [1]
3/21
family [1]
23/16
far [1]   4/2
feels [1]
17/20
felony [1]
19/16
few [1]   24/9
find [5]   14/22
17/11 17/14
17/15 17/22
finding [1]
13/16
fine [1]   6/5
fines [1]   6/8
firearm [1]
13/23
firearms [1]
23/4
first [2]
18/18 23/22
five [4]   6/4
7/16 7/17
19/17
Floor [1]   1/14
follow [2]
4/11 20/7
For the
Defendant [1]
1/16
force [1]
12/12
forced [1]
14/11
foregoing [1]
25/4
forfeit [1]
5/21
forfeiture [1]
24/8
forth [1]   8/10
forward [1]

2/4
found [5]
11/21 11/23
12/17 17/19
19/19
friend [1]
18/10
friends [1]
23/16
front [2]   8/13
9/5
function [2]
20/4 20/21
further [3]
15/23 16/2
21/8

**G**

gain [1]   15/7
gave [2]   10/12
10/16
general [1]
19/14
given [2]   5/7
16/7
giving [3]
11/6 14/1 14/5
God [1]   3/17
good [8]   2/6
2/8 2/9 2/11
2/16 18/10
21/13 21/20
government [14]
1/12 3/5 4/19
8/10 9/1 10/1
10/6 11/15
13/2 15/13
15/25 21/7
21/13 21/20
government's
[2]   12/3
20/24
graduate [1]
4/7
granted [1]
24/13
guideline [1]
7/1
guidelines [7]
6/12 6/17 6/20
6/21 6/23 13/5
13/6
guilty [22]
3/1 4/23 5/20
8/1 11/16 11/7
11/16 11/21
11/23 12/17
13/16 14/1
14/2 14/6 14/8

14/9 14/12
17/6 17/7 17/8
17/11 17/22

**H**

HABBA [2]   1/20
15/4
Hamilton [1]
15/24
hand [3]   3/15
5/16 9/15
hands [3]
16/20 16/22
20/4
happen [1]
13/4
happened [1]
10/24
heard [8]
14/17 14/22
14/25 15/7
16/16 16/17
17/17 19/7
hearing [3]
1/9 18/3 18/5
height [1]
18/19
Hello [2]   2/22
2/23
help [1]   3/17
here's [1]
22/20
high [2]   10/1
10/5
high-ranking
[2]   10/1 10/5
Hill [1]   4/6
himself [1]
19/8
hires [1]
15/25
history [1]
18/9
hold [2]   12/14
13/21
holds [1]
13/11
honest [1]
20/18
Honor [82]
HONORABLE [1]
1/9
HOOK [3]   1/22
25/3 25/10
House [4]
18/12 19/4
19/6 19/9
huh [1]   21/23
hundreds [1]

10/23

**I**

identifiers [2]
24/9 24/11
identify [1]
2/4
illegal [1]
17/1
imagine [1]
18/21
immediately [1]
23/5
impeachment [1]
19/9
important [1]
20/16
impose [1]
13/5
imprisonment
[3]   6/5 6/19
6/24
improperly [1]
19/8
include [1]
24/9
includes [1]
24/8
including [4]
5/21 18/13
19/5 23/1
income [2]
18/18 18/23
incorporated
[2]   8/24 9/1
indictment [3]
11/13 23/24
24/3
indirectly [1]
23/6
individual [2]
15/24 20/5
individuals [2]
10/2 16/3
ineffective [1]
13/7
influence [1]
15/20
information
[10]   4/25 6/4
9/18 9/25
11/12 17/6
17/23 18/1
20/19 24/9
innocent [1]
12/8
instead [1]
4/3
instruct [1]

**I**

**instruct... [1]**
12/14
**interest [1]**
6/7
**Interestingly**
**[1]** 19/3
**interfere [1]**
15/20
**international**
**[1]** 22/23
**interpret [1]**
20/1
**interpreted [1]**
19/24
**into [8]** 6/21
7/2 8/24 15/8
16/3 16/20
16/22 20/4
**introduce [1]**
15/3
**investigation**
**[2]** 16/2 23/8
**ironically [1]**
18/8
**IRS [8]** 10/2
10/18 15/5
15/12 18/9
19/5 19/8
20/18
**IRS's [1]**
20/18
**items [1]** 5/22

**J**

**January [5]**
21/15 21/17
21/18 22/4
22/12
**January 23rd**
**[2]** 21/17
21/18
**January 29th**
**[2]** 22/4
22/12
**January 9th [1]**
21/15
**JEFF [3]** 1/22
25/3 25/10
**JENNIFER [2]**
1/13 2/7
**job [2]** 16/1
20/18
**jobs [1]** 13/21
**journalist [1]**
9/24
**JUDGE [2]** 1/10
18/11

**Judiciary [1]**
19/7
**jurors [2]**
11/17 11/21
**jury [2]** 12/14
13/22
**justice [3]**
1/13 15/18
16/3
**justifies [1]**
21/5

**K**

**kept [1]** 15/12
**kind [1]** 13/22
**knowing [1]**
17/13
**known [1]**
15/24

**L**

**lapsing [1]**
18/22
**last [1]** 4/10
**Laura [1]** 2/6
**LAUREN [1]**
1/12
**law [9]** 16/20
18/22 18/22
19/2 20/1 20/4
20/6 20/6
22/25
**laws [5]** 16/21
18/25 18/25
19/23 19/24
**lawyer [4]** 8/7
12/1 12/19
12/19
**leagues [1]**
2/24
**learned [1]**
15/10
**least [1]** 5/22
**legal [1]** 13/8
**legally [1]**
19/21
**less [1]** 20/17
**level [1]** 6/20
**levied [1]**
18/18
**licensed [1]**
14/23
**likely [2]**
15/16 20/17
**limited [1]**
15/23 19/14
**LISA [2]** 1/16
2/11
**listed [1]**

5/22
**listen [1]**
21/2
**LITTLEJOHN [13]**
1/6 2/3 2/10
2/12 2/25 3/7
3/20 5/6 5/6
16/6 16/10
17/4 23/15
**long [1]** 7/12
**look [2]** 21/18
22/2
**looked [1]**
18/9
**looking [1]**
21/16

**M**

**ma'am [3]** 15/2
16/12 16/23
**makes [1]**
20/18
**making [1]**
3/22
**man [1]** 16/1
**MANNING [6]**
1/16 2/12 5/2
5/7 5/16 8/12
**many [1]** 19/5
**March [1]** 4/1
**March 14th [1]**
4/1
**matter [3]**
20/7 20/8 25/5
**maximum [5]**
6/2 7/13 7/16
13/4 16/9
**may [11]** 2/14
2/16 2/17 6/22
13/20 14/14
18/2 18/2
21/22 23/7
23/11
**McFadden [1]**
18/11
**Mead [1]** 1/17
**mean [2]** 17/19
21/5
**means [4]**
11/20 18/11
18/16 19/18
**medications [1]**
4/10
**member [1]**
2/16
**members [1]**
19/4
**mention [1]**
12/24

**mentioned [1]**
8/1
**message [1]**
15/21
**might [5]** 4/10
6/15 7/1 19/24
20/9
**minimizes [1]**
16/7
**missed [1]**
23/22
**mistake [1]**
21/3
**mistrial [1]**
11/22
**Monday [1]**
22/10
**months [2]**
6/18 6/23
**more [2]** 20/19
21/1
**most [1]** 16/1
**motion [1]**
24/13
**motions [1]**
12/2
**motivation [1]**
15/18
**Mr. [13]** 2/12
2/22 2/25 3/7
3/20 5/6 5/6
16/6 16/16
17/4 18/13
20/10 23/15
**Mr. Cherry [1]**
2/22
**Mr. Littlejohn**
**[9]** 2/12 2/25
3/7 3/20 5/6
5/6 16/6 17/4
23/15
**Mr. Trump [3]**
16/16 18/13
20/10
**Ms. [11]** 3/13
5/2 5/7 5/16
5/17 8/12 9/14
9/16 21/10
22/3 24/17
**Ms. Castaldi**
**[1]** 9/14
**Ms. Manning [4]**
5/2 5/7 5/16
8/12
**Ms. White [6]**
3/13 5/17 9/16
21/10 22/3
24/17

**much [2]** 20/19
21/9
**must [2]** 3/8
7/6

**N**

**name [1]** 2/20
**nation's [1]**
10/17
**need [4]** 3/4
21/8 21/9
23/19
**needs [1]**
20/19
**new [5]** 1/14
6/21 10/13
13/8 15/9
**news [4]** 9/24
10/11 10/15
20/12
**next [2]** 21/16
22/2
**Nixon [3]** 19/4
19/7 19/10
**Nixon's [2]**
19/6 19/6
**Noah [1]** 2/20
**nobody [1]**
12/12
**non [1]** 5/19
**non-sentencing**
**[1]** 5/19
**North [1]** 4/5
**notably [1]**
16/1
**NW [3]** 1/14
1/17 1/24

**O**

**oath [1]** 3/21
**objections [1]**
12/2
**obligation [1]**
6/7
**obtain [2]**
22/22 23/2
**obtained [1]**
19/5
**obviously [1]**
21/1
**occur [1]** 9/20
**occurred [2]**
10/3 20/23
**October [2]**
1/5 9/23
**October 2019**
**[1]** 9/23
**off [2]** 22/1
23/13

**A064**

**O**

offense [3]
4/24 5/21 6/20
offered [1]
16/6
office [2]
10/8 17/25
official [4]
1/23 10/1 10/6
25/3
often [1]
18/20
one [3]   11/21
16/1 23/14
one-man [1]
16/1
ones [1]   7/25
only [3]   8/25
13/1 13/12
Onorato [1]
1/17
opponents [1]
19/6
opportunity [2]
14/22 18/4
opposing [1]
16/5
order [1]   6/6
organization
[4]   9/25
10/11 10/16
10/21
organizations
[1]   20/12
original [2]
8/21 8/23
others [2]
15/6 17/19
otherwise [1]
20/17
out [1]   21/4
outside [2]
6/22 23/3
over [7]   5/18
6/1 10/23 11/2
11/5 15/9
15/11
overstate [1]
20/22
own [3]   16/20
16/22 20/4

**P**

p.m [2]   1/6
24/20
pages [1]   5/22
part [1]   16/3
participated
[1]   17/19

parties [3]
2/4 6/22 22/18
parties' [1]
6/19
passed [2]
19/3 19/3
passport [1]
22/22
passports [1]
22/23
pay [1]   6/7
penalties [1]
6/8
pending [1]
2/15
people [4]
16/19 19/23
20/3 20/17
people's [1]
20/11
perjury [1]
3/22
permission [3]
19/19 23/2
24/10
permitted [2]
20/1 20/2
person [5]
20/5 20/7 20/9
20/10 23/7
personal [3]
15/7 15/15
24/9
personnel [1]
23/1
place [1]
15/18
places [1]
18/21
Plaintiff [1]
1/4
plea [28]
plead [9]   3/1
4/23 5/20 8/1
11/7 14/1
14/12 17/4
17/11
pleading [4]
11/6 11/12
14/1 14/8
please [10]
2/4 3/3 3/10
3/12 3/15 5/5
5/6 5/17 9/15
14/20
point [1]
11/23
policing [1]

15/18
political [3]
15/7 15/17
19/6
possess [2]
13/22 23/4
possible [1]
22/25
posted [1]
18/20
power [1]
16/23
precisely [1]
7/1
prepared [1]
17/24
present [3]
1/20 12/6 18/2
presentence [2]
7/3 17/24
President [9]
14/24 15/6
15/8 15/16
16/5 16/9 19/7
19/10 19/21
press [1]
15/19
presumed [1]
12/8
pretrial [5]
22/12 22/24
22/25 23/4
23/5
previously [1]
9/11
principles [1]
13/8
prison [2]
7/19 19/17
privacy [4]
18/9 19/1
20/13 20/16
probably [1]
14/23
probation [2]
17/25 22/21
problematic [1]
23/9
proceedings [3]
4/11 24/20
25/5
process [1]
20/20
processed [1]
17/20
promised [1]
7/21
promises [1]

7/25
property [1]
5/21
proposed [1]
19/9
propounded [1]
3/17
ProPublica [1]
10/22
prosecuted [1]
3/22
prosecution [2]
11/13 23/8
prove [1]
11/16
proved [1]
8/11
public [4]
16/4 18/20
20/13 24/11
punishable [1]
19/16
purpose [1]
16/20
purposes [1]
15/7
pursuant [1]
13/6
pushback [1]
18/22
put [3]   3/21
12/6 12/7

**Q**

quick [2]   9/10
23/21
quo [1]   22/19

**R**

raise [1]   3/15
range [7]   6/19
6/23 7/1 7/6
7/12 7/12 13/5
ranking [2]
10/1 10/5
read [3]   5/10
15/8 18/2
reason [1]
20/3
reasonable [1]
11/16
reasonably [1]
14/17
receive [1]
6/2
received [1]
13/7
reckless [1]
15/15

recommendation
[1]   22/20
record [7]   2/5
15/8 22/1
23/13 23/23
24/11 25/5
records [3]
19/5 19/13
19/14
redact [1]
24/10
redactions [1]
24/12
reform [2]
19/2 19/12
related [1]
10/1
release [1]
6/6
relief [2]
13/2 13/12
remain [1]
12/13
report [7]   7/3
17/24 18/1
18/3 22/13
22/24 23/5
Reporter [3]
1/22 1/23 25/3
reports [1]
18/9
represent [1]
12/20
representatives
[2]   14/16
18/12
request [1]
24/10
requesting [1]
16/9
required [2]
11/7 12/7
respect [1]
17/17
restitution [2]
6/6 6/8
retroactive [1]
13/11
return [6]
4/24 6/4 9/25
9/25 17/5
17/23
returns [19]
4/24 6/3 10/12
15/9 15/12
17/5 17/22
18/15 18/20
19/5 19/8

**R**

**returns... [8]**
19/16 19/20
19/21 19/21
19/22 20/11
20/14 20/17
**review [4]**
8/17 9/10
20/23 20/25
**reviewed [2]**
7/2 9/7
**REYES [1]**   1/9
**right [48]**
**rights [8]**   3/9
11/6 13/20
13/25 14/5
14/17 17/10
19/10
**Room [1]**   1/24

**S**

**satisfied [2]**
8/6 17/10
**saw [2]**   9/11
24/12
**scheme [1]**
19/13
**Schertler [1]**
1/17
**school [1]**   4/2
**Sears [1]**   1/17
**seated [3]**
14/14 16/23
17/9
**second [2]**
10/15 10/20
**seek [3]**   6/22
13/1 13/12
**send [1]**   15/21
**sentence [13]**
6/2 6/22 7/1
7/7 7/11 7/16
7/22 13/3 13/5
16/7 16/9
16/13 17/12
**sentenced [1]**
13/3
**sentencing [16]**
5/18 5/19
5/19 6/2 6/12
6/17 7/6 16/15
17/25 18/3
18/4 20/23
20/24 20/25
21/1 21/9
**separate [1]**
16/15
**September [1]**

10/15
**September 2020
[1]**   10/15
**serve [1]**
13/22
**services [6]**
8/7 22/12
22/24 22/25
23/4 23/5
**sets [1]**   8/10
**severe [1]**
17/1
**severity [1]**
16/7
**shall [2]**
13/11 19/14
**show [2]**   5/5
8/12
**side [1]**   4/16
**sign [3]**   9/7
9/13 9/15
**signature [4]**
5/3 5/8 8/16
8/18
**signed [6]**
8/20 8/22 8/25
9/2 9/17 9/19
**signing [2]**
5/11 9/2
**silent [1]**
12/13
**single [1]**
20/10
**sit [1]**   2/17
**sitting [1]**
15/16
**small [1]**   24/7
**Snowden [1]**
16/1
**society [2]**
20/4 20/20
**solemnly [1]**
3/15
**someone [1]**
16/22
**soon [3]**   2/20
13/15 22/24
**sorry [2]**   15/2
23/12
**sort [1]**   23/14
**sought [1]**
15/13
**speak [2]**   18/4
23/16
**special [1]**
6/6
**standing [1]**
2/16

**start [2]**   3/5
7/6
**state [2]**
14/23 14/23
**statement [4]**
3/22 8/15 15/8
17/17
**STATES [8]**   1/1
1/3 1/10 2/3
2/7 4/14 15/6
23/3
**status [1]**
22/19
**statutory [5]**
7/13 7/16 13/3
19/13 20/13
**stay [1]**   22/24
**stealing [1]**
15/14
**still [1]**   14/1
**stipulated [1]**
6/23
**stolen [1]**
10/18
**stops [1]**   23/2
**Street [1]**
1/17
**strong [1]**
15/21
**subject [1]**
6/12
**submission [1]**
20/25
**submissions [1]**
20/24
**submitted [1]**
9/2
**Suite [1]**   1/17
**supervised [1]**
6/5
**Supreme [2]**
13/9 13/10
**sure [4]**   9/11
9/14 13/14
23/23
**surrender [1]**
22/23
**swear [2]**   3/12
3/15
**swift [1]**
18/21
**system [1]**
15/19

**T**

**table [1]**   2/17
**talk [2]**   8/3
21/1
**targeted [1]**

15/6
**tax [24]**   4/24
6/3 9/25 17/5
17/22 18/15
18/18 18/23
18/25 18/25
19/2 19/5 19/8
19/12 19/13
19/14 19/16
19/20 19/20
19/21 19/22
20/11 20/14
20/16
**taxes [2]**
20/20 20/20
**taxpayer [2]**
19/1 20/10
**taxpayers [3]**
10/17 10/24
19/11
**telling [2]**
13/4 21/4
**tells [1]**   4/22
**terms [2]**   5/18
5/19 5/20 6/2
24/8
**testify [2]**
3/21 12/11
**then-sitting
[1]**   15/16
**therefore [1]**
17/21
**thought [1]**
24/1
**thoughts [1]**
17/3
**thousand [3]**
10/24 11/2
20/11
**thousands [1]**
15/17
**threatened [1]**
14/11
**three [2]**   6/5
24/10
**throughout [1]**
12/1
**timely [1]**   6/8
**Times [2]**
10/13 15/9
**today [8]**   6/25
14/16 15/10
16/13 17/13
19/2 19/15
23/20
**told [1]**   21/9
**tolerated [1]**
15/22

**tomorrow [1]**
23/5
**traffic [1]**
23/2
**transcript [2]**
1/9 25/4
**travel [2]**
22/23 23/3
**Treasury [1]**
18/13
**trial [9]**   4/23
8/11 11/8
11/15 12/1
12/13 12/17
12/23 21/16
**troubled [1]**
20/22
**true [1]**   25/4
**truly [1]**   3/16
**Trump [7]**   1/20
10/7 14/25
16/5 16/16
18/13 20/10
**Trump's [2]**
15/9 19/21
**trust [1]**   16/4
**turned [2]**
15/9 15/11
**two [2]**   4/10
23/21
**type [1]**   15/21

**U**

**U.S [7]**   1/13
1/23 6/17 13/9
13/10 18/12
18/12
**U.S.C [4]**   4/25
6/4 17/6 17/23
**Uh [1]**   21/23
**ultimately [1]**
19/18
**unacceptable
[1]**   16/21
**unanimously [2]**
11/17 11/20
**unauthorized
[5]**   4/24 6/3
17/5 17/22
19/15
**under [5]**   3/21
14/25 14/17
17/6 22/17
**understands [1]**
17/10
**UNITED [8]**   1/1
1/3 1/10 2/3
2/7 4/13 15/6
23/3

**A066**

**U**

**University [1]**
4/5

**unrelated [1]**
5/18

**up [10]** 2/24
3/3 5/17 11/6
14/1 14/5
14/20 18/22
19/16 20/5

**upward [1]**
13/6

**use [1]** 20/20

**used [1]** 5/21

**using [1]**
15/19

**usually [1]**
21/10

**V**

**valuable [1]**
13/20

**variance [1]**
6/22

**various [3]**
18/21 18/24
18/25

**vault [1]**
15/12

**verify [1]**
23/4

**victim [3]**
14/25 20/8
23/7

**victims [1]**
14/15

**Victims' [1]**
14/18

**violate [1]**
20/6

**violated [1]**
19/10

**voluntarily [1]**
17/15

**voluntary [2]**
3/9 17/14

**vote [1]** 13/21

**votes [1]**
15/17

**W**

**waived [2]**
24/1 24/4

**waiver [1]**
17/12

**waiving [4]**
11/12 17/11
23/24 24/3

**war [1]** 18/19

**Washington [4]**
1/5 1/15 1/18
1/25

**way [1]** 16/7

**ways [4]** 13/1
18/11 18/16
19/18

**wealthiest [1]**
10/17

**week [2]** 22/2
22/9

**welcome [1]**
21/2

**West [1]** 1/17

**What's [1]**
22/2

**Whatever's [1]**
21/12

**whim [1]** 20/16

**White [7]** 3/13
5/17 9/16 19/4
21/10 22/3
24/17

**wish [5]** 3/1
4/23 5/14
16/16 18/2

**wished [1]**
12/7

**wishes [1]**
16/16

**within [2]**
7/12 22/24

**without [2]**
9/23 10/16

**witness [1]**
23/7

**witnesses [2]**
12/3 23/15

**work [2]** 16/21
22/5

**worked [1]**
15/24

**written [1]**
17/24

**wrong [1]** 21/6

**Y**

**years [5]** 6/4
6/5 7/16 7/17
19/17

**York [3]** 1/14
10/13 15/9

**A067**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | ) |
| | ) |
| **CHARLES EDWARD LITTLEJOHN,** | ) |
| | ) |
| **Defendant.** | ) |

**Case No: 1:23-CR-00343-ACR**

**The Hon. Ana C. Reyes**

**Sentencing Date:  January 29, 2024**

_____

### UNOPPOSED MOTION FOR LEAVE TO FILE UNDER SEAL AND TO REDACT CERTAIN INFORMATION IN DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Charles Littlejohn, through undersigned counsel, respectfully moves this Honorable Court for leave to file under seal and to redact certain information in his memorandum in aid of sentencing and its exhibits.  Specifically, Mr. Littlejohn asks the Court permission to seal and/or redact portions of his memorandum and related exhibits containing (1) letters of support from family and friends and (2) personal and medical information related to Mr. Littlejohn's family.

As the Court is aware, Mr. Littlejohn's case has received significant public attention.  His family and friends have a legitimate interest in keeping their identities, as well as personal and medical information, private.  *See United States v. Hubbard*, 650 F.2d 293, 323-24 (D.C. Cir. 1980).  The Government does not oppose this motion.

Wherefore, Mr. Littlejohn respectfully requests that this Honorable Court grant his motion for leave to file the letters of support under seal and to redact other sensitive information.

**A068**

Respectfully submitted,


CHARLES LITTLEJOHN,
By Counsel



/s/ Noah Cherry
Lisa Manning
Noah Cherry
*Counsel for Charles Littlejohn*
Schertler Onorato Mead & Sears, LLP
13th Street, N.W.
Suite 500 West
Washington, DC 20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177

2

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of January 2024, I electronically filed a true copy of the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties.

/s/ Noah Cherry
Lisa Manning
Noah Cherry
*Counsel for Charles Littlejohn*
Schertler Onorato Mead & Sears, LLP
13th Street, N.W.
Suite 500 West
Washington, DC 20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Case No: 1:23-CR-00343-ACR** |
| v. ) | |
| ) | **The Hon. Ana C. Reyes** |
| **CHARLES EDWARD LITTLEJOHN,** ) | |
| ) | **Sentencing Date:  January 29, 2024** |
| **Defendant.** ) | |
| ) | |

## PROPOSED ORDER

Upon consideration of Charles Littlejohn's Unopposed Motion for Leave to File Under Seal and to Redact Certain Information in Defendant's Memorandum in Aid of Sentencing and for good cause having been shown, it is this _____ day of _____, 2024, hereby

ORDERED that Defendant Littlejohn's Motion is GRANTED.  The attachments shall be filed under seal and Defendant is permitted to redact sensitive information.

SO ORDERED.

_____
The Honorable Ana C. Reyes
United States District Court Judge

**A071**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Number: 1:23-cr-343 |
| v. | ) | |
| | ) | |
| CHARLES EDWARD LITTLEJOHN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Charles Edward Littlejohn is scheduled to be sentenced on January 29, 2024, at 10 a.m. The United States respectfully submits this memorandum in connection with sentencing.

## PRELIMINARY STATEMENT

Over the course of more than two years, Defendant—a consultant at the U.S. Department of the Treasury's Internal Revenue Service ("IRS")—abused his position by unlawfully disclosing thousands of Americans' federal tax returns and other private financial information to multiple news organizations. After applying to work as an IRS consultant with the intention of accessing and disclosing tax returns, Defendant weaponized his access to unmasked taxpayer data to further his own personal, political agenda, believing that he was above the law. A free press and public engagement with the media are critical to any healthy democracy, but stealing and leaking private, personal tax information strips individuals of the legal protection of their most sensitive data. Everyone is entitled to equal protection under the law. And Defendant's betrayal of the public trust merits significant punishment. For the reasons that follow, the Court should sentence Defendant to the statutory maximum of 60 months' imprisonment.

# BACKGROUND

## I.    The Defendant and His Offense[1]

Between 2008 and 2013, Defendant worked intermittently for Company A—a consulting firm that services public and private clients—principally on contracts the company had obtained with the IRS. *See* ECF No. 9 (Plea Agreement Factual Basis) ("Factual Basis") at ¶¶ 1-2. During much of this time, he was authorized, pursuant to 26 U.S.C. § 6103(n), to access vast amounts of unmasked taxpayer data, including tax returns and return information, on IRS databases. *Id.* at ¶ 3. He received regular trainings on protecting taxpayer data and about the criminal consequences of inspecting or disclosing, without authorization, tax returns and return information. *See* ECF No. 16 (Draft Presentence Investigation Report) ("PSR") at ¶ 13.

### A.    Defendant's Disclosure of Public Official A's Tax Returns and Return Information

In 2017, Defendant once again sought work with Company A, with the hope and expectation of accessing and disclosing tax returns and return information associated with Public Official A, a high-ranking government official. Factual Basis at ¶ 5; PSR at ¶ 16. Defendant viewed Public Official A as "dangerous and a threat to democracy," and he intended to obtain Public Official A's taxpayer information from the IRS and provide it to the public. PSR at ¶ 16. In or about September 2017, Company A in fact re-hired Defendant and—in February 2018—granted him access to unmasked taxpayer data. PSR at ¶ 16.

---

[1] Defendant pled guilty to making unauthorized disclosures of tax information in violation of 26 U.S.C. § 7213(a)(1). This five-year felony is the most serious offense for leaking tax information. While the applicable guideline range here is the highest possible in light of the facts, as explained in detail later in this memorandum, that range is flatly inconsistent with the gravity of the offense. An upward departure and/or upward variance to the statutory maximum of 60 months' imprisonment is warranted based on the uniquely egregious conduct here.

By late 2018, Defendant had developed a sophisticated, detailed plan to secretly download

Public Official A's tax returns and return information from a particular internal IRS database on

which he learned it was stored (the "Database"). Factual Basis at ¶ 5; PSR at ¶¶ 16-17. Rather than

directly search the Database for Public Official A's taxpayer data—which might have triggered

scrutiny or detection of his scheme—Defendant queried the database using more generalized

parameters that would nevertheless collect Public Official A's tax return and return information

(as well as return and return information for related entities and individuals) in the resulting data

set. Factual Basis at ¶ 5; PSR at ¶ 17.

The next problem Defendant faced was actually extracting the data associated with Public

Official A from the Database. Defendant learned that IRS protocols could detect and prevent large

downloads or uploads from IRS systems and devices. Factual Basis at ¶ 6; PSR at ¶¶ 17-18. But

on or about November 30, 2018, he exploited a loophole in those controls by uploading the stolen

tax return and return information to a private website that he controlled. Factual Basis at ¶ 6; PSR

at ¶¶ 17-18. He thereafter used a personal computer to download the data from that private website.

Factual Basis at ¶ 6; PSR at ¶¶ 17-18. From the original data set stored on his personal computer,

Defendant made copies and stored them on personal data storage devices such as his Apple iPod

(which, using his specialized technical skills, he had configured as a personal hard drive). Factual

Basis at ¶ 6; PSR at ¶ 18.

Approximately six months later, in or about May 2019, Defendant contacted a news

organization ("News Organization 1") to discuss potentially providing the organization with a

copy of Public Official A's tax records. Factual Basis at ¶ 7; PSR at ¶ 19.

Subsequently, between August and October 2019, Defendant disclosed Public Official A's

tax records to News Organization 1. Factual Basis at ¶ 7; PSR at ¶ 19. Defendant then stole

additional tax returns and return information associated with Public Official A (along with related individuals and entities) and provided those to News Organization 1 as well. Factual Basis at ¶ 8; PSR at ¶ 20. On or about September 27, 2020, News Organization 1 published the first of several articles that publicly disclosed information contained in Public Official A's tax returns. Factual Basis at ¶ 9; PSR at ¶ 21.

B.    Defendant's Disclosure of Thousands of Other Returns and Return Information

But leaking Public Official A's tax returns and return information did not satisfy Defendant's appetite for disclosing taxpayer data. In or about July and August 2020, Defendant accessed unmasked IRS data associated with thousands of the nation's wealthiest people, including returns and return information dating back over 15 years. Factual Basis at ¶ 10; PSR at ¶ 22. Replicating his earlier mechanism for extracting material from the Database, Defendant downloaded the relevant data and uploaded it to a private website. Factual Basis at ¶ 11; PSR at ¶ 22. In uploading the taxpayer returns and return information to a private website, Defendant used two virtual machines (essentially simulated versions of physical computers). *Id.* In order to conceal his activities, Defendant promptly destroyed these machines after he used them to steal the data from IRS. *Id.*

In or about September 2020, Defendant contacted a second news organization ("News Organization 2") and provided a reporter with a copy of the data on the nation's wealthiest taxpayers that he had stolen from the IRS. Factual Basis at ¶ 12; PSR at ¶ 23. Defendant provided the data by mailing it to News Organization 2 on a password-protected personal data storage device. *Id.* In November 2020, Defendant provided the device's password to a journalist at News Organization 2. *Id.* Beginning in or about June 2021, News Organization 2 published the first in a

series of nearly 50 articles using the return and return information Defendant had disclosed. *See* Factual Basis at ¶ 13; PSR at ¶ 23.

      C.    <u>Defendant's Efforts to Obstruct the Investigation</u>

      Throughout Defendant's scheme, he undertook efforts to obstruct and impede the investigation that he anticipated would follow the publication of the tax data he had stolen. For example, in 2021—before returning his assigned IRS laptop when he ceased working on Company A's IRS contract—Defendant deleted nearly all the files in his user profile. Factual Basis at ¶ 14(a); PSR at ¶ 24(a). Additionally, as described above, he destroyed the virtual machines he had used to facilitate his theft of taxpayer returns and return information from the Database. Factual Basis at ¶ 14(b); PSR at ¶ 24(b). Finally, after uploading returns and return information to the private website, Defendant promptly contacted the domain registration service to cancel the private website's domain registration. Factual Basis at ¶ 14(c); PSR at ¶ 24(c).

**II.**    **The Plea Agreement and the Presentence Report**

      On September 29, 2023, the United States charged Defendant pursuant to an Information with violating 26 U.S.C. § 7213(a)(1), which imposes criminal liability on IRS contractors and employees who "willfully [] disclose to any person, except as authorized in this title, any return or

return information."[2] ECF No. 1 (Information). On October 12, 2023, Defendant pled guilty to the

Information, ECF No. 8 (Plea Agreement), and admitted to an associated stipulated set of facts.

*See* Factual Basis. The Plea Agreement calculated Defendant's Total Offense Level under the U.S.

Sentencing Guidelines at 11, yielding a guideline sentencing range of 8 to 14 months. The Total

Offense Level was calculated as follows:

| SENTENCING GUIDELINES CALCULATIONS | | | | | | |
|---|---|---|---|---|---|---|
| Count 1: Unauthorized Disclosure of Tax Records (26 U.S.C. § 7213(a)(1)): | | | | | | |
| Base Offense Level (U.S.S.G. § 2H3.1(a)(1)) | | | | | | 9 |
| Abuse of Trust Position or Use of Special Skill (U.S.S.G. § 3B1.3) | | | | | | +2 |
| Obstruction of Justice (U.S.S.G. § 3C1.1) | | | | | | +2 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1(a)) | | | | | | -2 |
| **Total Offense Level** | | | | | | **11** |
| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI | |
| 8-14 | 10-16 | 12-18 | 18-24 | 24-30 | 27-33 | |

Both parties agreed, however, that Amendment 821 to the Sentencing Guidelines—which provides

a decrease of two levels for certain individuals with no criminal history—"may result in a reduction

of the defendant's total offense level." Plea Agreement at ¶ 9(a) & n.1.

In the Plea Agreement, both parties also reserved their respective rights to seek a departure

or a variance from the applicable guidelines range. *Id.* at ¶¶ 9(d), 10. In particular, the United States

---

[2] The term "return" means "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed." 26 U.S.C. § 6103(b)(1). The term "return information" means, as relevant here, "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary [of the Treasury] with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." 26 U.S.C. § 6103(b)(2)(A).

provided notice that "it expects to seek an upward departure pursuant to Application Note 5 of § 2H3.1 of the Sentencing Guidelines," *id.* at ¶ 9(d), a provision discussed in further detail below.

At the plea hearing on October 12, 2023, the Court emphasized that "people taking the law into their own hands for any purpose is unacceptable," ECF No. 13 (Plea Tr.) at 16:19-21, and that "it's not up to any individual person to decide what law they want to violate or what law they want to follow." *Id.* at 20:5-7.

On December 20, 2023, the Probation Officer issued a draft PSR. *See* PSR. The PSR is entirely consistent with the Total Offense Level calculated in the Plea Agreement except that it granted Defendant the benefit of Amendment 821, yielding a Total Offense Level of 9 and a guideline sentencing range of 4 to 10 months.

**ARGUMENT**

The applicable advisory guideline range does not capture the gravity of Defendant's offense and fails to account for the numerous aggravating factors in this case. Perhaps most centrally, Defendant's advisory guideline range does not account for the fact that he leaked thousands of individuals' and entities' tax returns. His range would be the same today if he had leaked only a single return. For the reasons that follow, a significant term of imprisonment is warranted here and the Court should sentence Defendant to a term of incarceration of 60 months, the statutory maximum.

**I.     An Upward Departure is Appropriate Under U.S.S.G. § 2H3.1, Application Note 5**

First, the Court should grant an upward departure pursuant to Application Note 5 of U.S. Sentencing Guideline § 2H3.1. As relevant here, the Application Note provides that an upward departure may be warranted when the "offense level determined under this guideline substantially understates the seriousness of the offense." U.S. Sentencing Guideline § 2H3.1, App. Note 5. The

Application Note provides two non-exhaustive examples of circumstances where such a departure would be appropriate: (A) where the offense, as relevant here, "involved personal information, means of identification, . . . or tax return information of a substantial number of individuals" and (B) where the "offense caused or risked substantial non-monetary harm (e.g., physical harm, psychological harm, or severe emotional trauma, or resulted in a substantial invasion of privacy interest) to individuals whose private or protected information was obtained." *Id.*[3]

Both examples are squarely applicable here. First, the offense, by its very nature, involved the "tax return information of a substantial number of individuals." App. Note 5(A). Indeed, as Defendant recently admitted, he disclosed tax return and return information associated with "over a thousand" individuals and entities. Plea Tr. at 11:2-4; *see also* Factual Basis at ¶¶ 10-13. This Application Note example accounts for one of the key aggravating circumstances here: the sheer volume of individuals impacted by Defendant's crime. In fact, the Court recently allowed the government to pursue an alternative means of victim notification because the "number of potential victims in this case makes it impracticable to provide all of the victims the rights provided under 18 U.S.C. § 3771(a)," the Crime Victims' Rights Act. ECF No. 5 at 1.

Second, the offense "caused or risked substantial non-monetary harm"—here, "psychological harm" and the "substantial invasion of privacy interest[s]"—to "individuals whose private or protected information was obtained." App. Note 5(B). Defendant did not merely disclose tax returns. He disclosed information that included income and taxes as well as investments, stock trades, gambling winnings, audit determinations, and many other types of financial material. One of Defendant's purposes in leaking the tax returns and return information to News Organization 2

---

[3] The Court previously ordered that the parties address whether the number of tax returns Defendant stole and disclosed can be considered at sentencing. Application Note 5(A) provides a straightforward mechanism for the Court to account for the volume of disclosed taxpayer data here.

was to catch the attention of the public with more salacious details than mere tax returns might provide. The "[s]ubstantial invasion of privacy interest[s]" was a core purpose of Defendant's disclosure scheme. The Court should therefore grant an upward departure under Application Note 5.

**II.    The 18 U.S.C. § 3553(a) Factors Justify an Upward Variance**

Additionally, an upward variance based on the 18 U.S.C. § 3553(a) factors is warranted.

A.    The Nature and Circumstances of the Offense

The scope and scale of Defendant's unlawful disclosures appear to be unparalleled in the IRS's history. There simply is no precedent for a case involving the disclosure of tax return and return information associated with "over a thousand" individuals and entities. Plea Tr. at 11:2-4; *see also* Factual Basis at ¶¶ 10-13. The immense number of victims here, as discussed above, requires an alternative means of mass victim notification through a government website. ECF No. 5 at 1. And the human impact of Defendant's crimes is enormous. Many victims have come forward, expressing anger and embarrassment about the exposure of their personal financial information. Worse, it appears that the harm may continue indefinitely: News Organization 2 has continued to publish stories using the data disclosed by Defendant even after the Plea Agreement in this case. Victims who believe their information has only been disclosed to a news organization, but not yet to the general public, have no assurance that their personal information will not be the subject of a news article tomorrow, next week, next month, or even next year. The harm arising from Defendant's crime is accordingly so extensive and ongoing that it is impossible to quantify.

A second important circumstance of the offense justifying an upward variance is that Defendant's disclosures were not the result of a single impulse or a momentary lapse in judgement. He executed his disclosure scheme over the course of *multiple years*, plotting and calculating

carefully at each step to minimize the risk of detection and maximize the impact of his disclosures. Indeed, he reorganized his entire life around this crime, reapplying to work at Company A in 2017 "with the goal of getting access to taxpayer information" for Public Official A. PSR at ¶ 16. But it was not until November 2018 that he uploaded Public Official A's tax returns and not until later the following year that he began disclosing them. PSR at ¶¶ 18-19. The disclosures of Public Official A's returns and return information continued throughout 2020. PSR at ¶ 20.[4] But as discussed above, Defendant's criminal objectives *expanded*: it wasn't until mid- and late 2020 that he accessed and disclosed the IRS data associated with thousands of individuals. PSR at ¶¶ 21-23. Defendant's extensive planning and execution over the course of multiple years renders this case unique and deserving of an upward variance.

A third aggravating circumstance justifying an upward variance here is the sophistication and complexity of Defendant's offense. The convoluted queries Defendant undertook on the Database to camouflage his true criminal purpose; his use of a private website to bypass IRS protocols designed to detect large uploads and downloads; his utilization of unconventional electronic storage devices; and his numerous efforts to conceal his scheme all justify a sentence outside the advisory guidelines range.

B.    The Seriousness of the Offense

Defendant's crime was also very serious. The IRS's mission, which is to "[p]rovide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and enforce the law with integrity and fairness to all," *The Agency, its Mission and Statutory Authority*, Internal Revenue Service, *available at* https://www.irs.gov/about-irs/the-

---

[4] Defendant's last known disclosure of Public Official A's tax returns occurred in Spring 2020, but investigators did not learn of his responsibility for these disclosures until more than three years later.

agency-its-mission-and-statutory-authority, cannot be achieved without faith that IRS employees and contractors like Defendant will safeguard citizens' private information. Defendant's crime has undermined public faith and confidence in the IRS, an institution that is critical to the effective functioning of our government.

Moreover, Defendant's offense constitutes an egregious breach of the trust placed in him by our government. The IRS provided Defendant with access to sensitive, unmasked data associated with millions of Americans. Factual Basis at ¶¶ 3-4; PSR at ¶ 13. Instead of respecting the trust that the agency (and, by extension, hundreds of millions of individuals who shared their information with it) placed in him, Defendant exploited it to advance his own private, political agenda. An upward variance is appropriate to communicate to the public that such breaches of trust will not be tolerated under a system of laws that obligates citizens to disclose their financial information to the government.

Finally, as the Court recognized during the plea hearing, *see* Plea Tr. at 16, Defendant essentially chose to take the law into his own hands: his disclosures were in fact part of a lawless, vigilante effort to circumvent the democratic process. That very process ultimately led to the legal release of Public Official A's tax returns. *See* Marianna Sotomayor et al., *House Panel Releases Trump Tax Returns in Another Setback for Former President*, Washington Post (Dec. 30, 2022). And there were countless legitimate opportunities for Defendant to address what he perceived as an unjust tax system without surreptitiously abusing the public trust for years; covering his tracks by deleting and destroying data; and hiding purloined tax returns on an iPod.

C.    <u>Defendant's History and Characteristics</u>

Defendant's history and characteristics, too, justify an upward variance. He has a loving family, he attended and graduated from college, he started a successful business, and he served as

an effective consultant at Company A. PSR at ¶¶ 50-55, 67-70, 73. Defendant was a sophisticated professional who received specialized training for years on the proper handling of tax information. Factual Basis at ¶ 4; PSR at ¶ 13. Based on his training, his personal experience, and his work, he understood the gravity of his offense. He understood the impact that it would have on his victims. But he acted anyway.

       D.      <u>The Need for General Deterrence</u>

Finally, the Court should grant an upward variance to send a message to other individuals like Defendant who have been entrusted with Americans' private taxpayer information. Individuals like Defendant, motivated by ideology or politics or economic gain, may weigh the prospect of a sentence like the one contemplated by the advisory guideline range here against the perceived benefits of disclosure. Perhaps that is what Defendant did. The Court should exercise its discretion to dissuade such calculus, compelling individuals under such circumstances to consider the likelihood of a lengthy term of incarceration.

It may well be that the sentences handed down under somewhat similar circumstances have inadequately accounted for the seriousness of ideologically motivated leaks. For example, in one recent case, an IRS analyst accused of leaking Suspicious Activity Reports (SARs) associated with a prominent attorney received a probationary sentence. *See IRS Worker Who Leaked Cohen Docs Sentenced to Five Years Probation*, Courthouse News Service, https://www.courthousenews.com/irs-worker-who-leaked-cohen-docs-sentenced-to-five-years-probation/ (Jan. 17, 2020); *United States v. John C. Fry*, Case No. 19-CR-102 (N.D. Cal.). In another, an employee of the U.S. Department of the Treasury's Financial Crimes Enforcement Network (FinCEN) was sentenced to six months in prison for leaking thousands of SARs and other materials containing sensitive personal and financial information to a reporter, purportedly because

she believed that FinCEN engaged in wrongdoing. *See Press Release: Former Senior FinCEN Employee Sentenced to Six Months in Prison for Unlawfully Disclosing Suspicious Activity Reports*, U.S. Attorney's Office for the Southern District of New York, https://www.justice.gov/usao-sdny/pr/former-senior-fincen-employee-sentenced-six-months-prison-unlawfully-disclosing (June 3, 2021); *United States v. Natalie Mayflower Sours Edwards*, Case No. 19-CR-64 (S.D.N.Y.). Although tax returns and return information enjoy stronger statutory and privacy protection than SARs, the advisory sentencing guidelines applicable here still do not adequately capture the severity of offenses like this one.

The Court may also look to similar cases involving the disclosure of classified information to journalists. For example, in one recent case, an employee of the Defense Intelligence Agency was sentenced to 30 months in prison after pleading guilty to communicating Top Secret/Sensitive Compartmented Information, primarily over the telephone, to two reporters. *See Press Release: Former DIA Analyst Sentenced for Leaking Classified Information to Journalists*, U.S. Department of Justice, https://www.justice.gov/opa/pr/former-dia-analyst-sentenced-leaking-classified-information-journalists (June 18, 2020); *United States v. Henry Kyle Frese*, Case No. 19-CR-304 (E.D. Va.). In another, a contractor with the National Security Agency was sentenced to 63 months in prison after pleading guilty to searching for, identifying, and printing a single classified intelligence report and mailing it to a news organization. *See Press Release: Federal Government Contractor Sentenced for Removing and Transmitting Classified Materials to a News Outlet*, U.S. Department of Justice, https://www.justice.gov/opa/pr/federal-government-contractor-sentenced-removing-and-transmitting-classified-materials-news (Aug. 23, 2018); *United States v. Reality Leigh Winner*, Case No. 17-CR-34 (S.D. Ga.).

At bottom, 18 U.S.C. § 3553(a)(2)(B) obligates the Court to consider the need for the sentence imposed to "afford adequate deterrence to criminal conduct" and provides a statutory vehicle for the Court to communicate an appropriate message about the seriousness of disclosing taxpayer data.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court sentence Defendant to a term of incarceration of 60 months.

Respectfully submitted,

Dated: January 16, 2024

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

BY:
/s/ Jonathan E. Jacobson
JENNIFER A. CLARKE
Deputy Chief
JONATHAN E. JACOBSON
Trial Attorney
Public Integrity Section
United States Department of Justice
1301 New York Avenue, NW
Washington, DC 20530
Telephone: (202) 514-1412

14

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of January 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to all attorneys of record.

/s/ Jonathan E. Jacobson
Jonathan E. Jacobson
Trial Attorney, Public Integrity Section
U.S. Department of Justice
1301 New York Ave. NW, 10th Fl.
Washington, DC 20530
Tel: 202-514-1412
Email: Jonathan.Jacobson@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **Case No. 1:23-cr-00343** |
| **v.** ) | |
| ) | **The Honorable Ana C. Reyes** |
| **CHARLES EDWARD LITTLEJOHN,** ) | |
| ) | **Sentencing Hearing: January 29, 2024** |
| **Defendant.** ) | |

### DEFENDANT CHARLES LITTLEJOHN'S
### MEMORANDUM IN AID OF SENTENCING

Mr. Littlejohn comes before the Court for sentencing having cooperated with the government and admitted that he stole tax records from an IRS database and provided them to the press. He committed this offense out of a deep, moral belief that the American people had a right to know the information and sharing it was the only way to effect change. He did what he thought was right at the time, but now fully acknowledges that he was wrong. Mr. Littlejohn recognizes the grave impact of his actions not only on the victims whose tax data he leaked to the media, but also on the very system that he hoped to improve. He violated a trust and stands before the Court ready to accept his punishment.

The U.S. Sentencing Commission established an applicable Guideline for this offense of 4 to 10 months, with a potential upward departure if the offense involved "tax return information of a substantial number of individuals." USSG §2H3.1, App. Note 5. Mr. Littlejohn is 38 years old, a first-time offender with a commendable past who committed this offense not for personal gain, not out of personal malice, but out of a belief that his violation of law would serve the public interest. Yet, the Government argues that his conduct requires punishment six times greater than the maximum Guideline sentence for this offense. General deterrence is only one of the statutory

sentencing factors, and cannot overwhelm the other sentencing factors to justify such an extreme sentence. The government has failed to identify a single authority that would warrant a six times upward departure for a non-violent act without any personal economic gain or motive. The defendant was wrong to violate the law even if he believed it would serve the public interest. It is also wrong for the Government to request six times the Guidelines maximum on the facts of this case.

The Court may at once take this conduct seriously while at the same time confer a just sentence. As discussed below, a Guidelines sentence with a two- to four-level upward departure, is "sufficient but not greater than necessary" to punish Mr. Littlejohn in this case.

## I.    THE PLEA AGREEMENT AND SENTENCING GUIDELINES

Mr. Littlejohn pled guilty on October 12, 2023 to one count of Unauthorized Disclosure of Income Tax Returns in violation of 26 U.S.C. § 7213(a)(1). The maximum punishment for this offense is five years imprisonment, a $5,000 fine, and the costs of prosecution. Under the terms of the written plea agreement (Dkt. 8), Mr. Littlejohn and the government have agreed to recommend certain United States Sentencing Guidelines that apply to his offense conduct. *See id.* at ¶9. The parties agreed the appropriate offense Guideline is U.S.S.G. § 2H3.1, with a base offense level of nine (9) plus a two (2) level increase under §3B1.3 for abuse of position of trust/use of a special skill and a two (2) level increase under §3C1.1 for obstruction of justice – resulting in an Adjusted Offense Level of 13. *Id.* The parties also understood that, at sentencing, the government would seek an upward departure under USSG §2H3.1, App. Note 5.

As part of the Plea Agreement, the Parties further agreed that Mr. Littlejohn would receive a two (2) level reduction for acceptance of responsibility under §3E1.1(a) and would be eligible for an additional two (2) level reduction under USSG §4C1.1 (assuming that Guideline had taken

effect prior to sentencing). *See* Draft Presentence Investigation Report ("Draft PSR"), Dkt. 16, ¶¶ 39, 84. The Presentence Report confirms that both reductions should apply and that Mr. Littlejohn's Total Offense Level is therefore 9. Mr. Littlejohn has a criminal history score of zero, which places him in Criminal History Category I, resulting in a Guideline range of four (4) to ten (10) months imprisonment (in Zone B of the Sentencing Table). *Id.*

### A.    Upward Departure Pursuant to USSG §2H3.1

Mr. Littlejohn concedes that an upward departure from the above Guideline range is appropriate in this case based on the fact that his disclosures involved "tax return information of a substantial number of individuals." USSG §2H3.1, App. Note 5. That said, any departure must be grounded in the Guidelines and reasonably justified by the conduct. Here, the government has asked the Court to depart upward and to sentence Mr. Littlejohn to the statutory maximum of 60 months—which is equivalent to a *15-level* upward departure from his actual Offense Level of 9. Such a departure ignores precedent and is not proportional to the conduct.

While the Guidelines are no longer mandatory, they "remain the starting point and the initial benchmark for sentencing, ... [and] thus continue to guide district courts in exercising their discretion by serving as the framework for sentencing[.]" *United States v. Khatallah*, 41 F.4th 608, 648 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 2667, (2023) (citing *Beckles v. United States*, 580 U.S. 256 (2017) (internal quotation marks and citation omitted)). The district court must explain the basis for its chosen sentence on the record. *Peugh v. United States*, 569 U.S. 530, 537 (2013) (citing *Gall v. United States*, 552 U.S. 38, 50 (2007). A major departure from the Guidelines should be supported by a more significant justification than a minor one. [1] *Id.*

---

[1]    In its 2023 *Primer on Departures and Variance*, the U.S. Sentencing Commission provides the following examples of upward departures and variances: *United States v. Martinez-Armestica*, 846 F.3d 436, 447 (1st Cir. 2017) (affirming variance where defendant's conduct "went beyond the ordinary conduct proscribed by the statute" to include "repeated, threatening use of firearms" and "[r]ather than simply brandishing a weapon, [defendant] pointed

Accordingly, although the Guidelines should be the starting point and the initial benchmark, district courts may impose sentences within statutory limits based on appropriate consideration of all of the relevant sentencing factors, subject to appellate review for "reasonableness." *Pepper v. United States*, 562 U.S. 476 (2011). A sentencing judge does not have unfettered discretion to depart from the applicable sentencing guidelines. *United States v. Molina*, 952 F.2d 514, 521 (D.C. Cir. 1992). A district court's "responsibility to respect the Guidelines' underlying policies of uniformity and proportionality in sentencing does not end when the court departs from the sentencing grid; indeed, that responsibility becomes more weighty because it is unguided departures that pose the greatest danger of undermining sentencing uniformity." *Id.* (citing *United States v. Jackson*, 921 F.2d 985, 989 (10th Cir.1990) (*en banc*)). Therefore, "A judge may not say: I have decided to depart, so I now throw away the guidelines." *Id.* (citing *United States v. Ferra*, 900 F.2d 1057, 1061-62 (7th Cir.1990)) (internal quotation marks omitted).

By statute, the base offense level for Unauthorized Disclosure of Income Tax Returns is 9. In Mr. Littlejohn's case, with the agreed enhancements for abuse of power and obstruction of justice and credit for acceptance of responsibility and being a zero-point offender, his total Offense Level is also 9. Draft PSR ⁋⁋ 39, 84. There is little precedent for upward departures in leak cases – even those involving thousands of records. For example, in *United States v. Edwards*, the

---

the gun directly at one of the carjacking victims, holding it against her head"); *United States v. Lente*, 759 F.3d 1149, 1164–66 (10th Cir. 2014) (affirming upward variance to: account for the multiple deaths caused by the defendant's conduct; reflect the defendant's extreme recklessness by driving with a blood alcohol level almost three times the legal limit; properly represent the defendant's criminal history; and address the defendant's continued post-conviction substance abuse and criminal conduct); *United States v. Dehghani*, 550 F.3d 716, 723 (8th Cir. 2008) (affirming upward variance because the seriousness of the defendant's conduct— obsession with child pornography; exposing his children to such pornography; physical sexual contact with a minor; threatening the judge, jail personnel, and others; and attempting to manipulate and obstruct the criminal justice system—outweighed any mitigating factors). U.S. Sentencing Comm'n, *Primer on Departures and Variance*, 38, n.224 (2023).

defendant disclosed to Buzzfeed over 50,000 highly sensitive Financial Crimes Enforcement Network documents related to then-President Trump.  Like the instant case, the records contained significant personal financial information of individuals that became the basis of an online investigative journalism series ("The FinCEN Files"). 1:19-cr-00064-GHW-1 (S.D.N.Y.).  At sentencing, the Judge stated: "I considered whether there is an appropriate basis for departure from the advisory range within the guidelines system, and while I recognize that I have the authority to depart, I do not find any other grounds warranting a departure under the guidelines." *See United States v. Edwards*, Case No. 1:19-cr-00064-GHW-1 (S.D.N.Y.), Dkt. 104 at 6.

  **B.**   **Zero-Point Offender**

  As a "Zero-Point Offender," the Guidelines provide that "[i]f the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range is in Zone A or B of the Sentencing Table, a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3), is generally appropriate." App. Note 10 to §5C1.1 (citing 28 U.S.C. § 994(j)).  While Mr. Littlejohn does not seek a probationary sentence and recognizes that an upward departure might remove him from Zone B, he asks that the Court consider the Zero-Point Offender Guideline to mitigate his sentence.

  As discussed further below, a guideline range with a two- to four-level departure is sufficient but not greater than necessary in this case.

**II.**   **THE 18 U.S.C. § 3553(a) SENTENCING FACTORS SUPPORT A SENTENCE BASED ON THE GUIDELINES.**

  Section 3553(a) requires district courts to consider the following factors in imposing sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

and (4) the need to provide restitution to any victim(s).  18 U.S.C. § 3553(a)(1)-(7).  The end result

of the analysis must be a sentence that is "sufficient, but not greater than necessary" to comply

with four purposes of federal sentencing, i.e., the need for the sentence imposed (1) to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment; (2) to

afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the

defendant; and (4) to provide the defendant with needed training, medical care, or other

correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).  For the reasons that

follow, a guidelines sentence with a two to four-level departure is "sufficient but not greater than

necessary" to serve the purposes of federal sentencing under the circumstances of this case.

### A.    Mr. Littlejohn's Personal History and Characteristics.[2]

"The punishment should fit the offender and not merely the crime." *Williams v. New York*,

337 U.S. 241, 247 (1949).

Charles Edward Littlejohn is 38 years old.  Until the instant offense, he has been a law-

abiding citizen whose life has been defined by public service, community, and devotion to his

family and friends.  The many support letters to the Court are proof of that life.  Each speaks about

the individual, personal impact that Charles Littlejohn has had on so many people through quiet

acts of kindness and grace.  "*What speaks most to his character is not the one grand gesture, but

countless small acts of thought, gestures of friendship, and time spent that, over the years, provided

healing.*"  ▮▮▮▮ Letter, attached hereto as part of Exhibit A.

The letters paint a picture of a person who, from childhood, has always acted with deep

empathy and a desire to make the world a better place.  Even after learning of Mr. Littlejohn's

---

[2]    *See generally* Draft Presentence Investigation Report, Dkt. 16.

crime, his family, friends, and former colleagues have all written about his character. As his

childhood friend, ██████████ wrote to the Court:

> *While I understand Chaz broke the law, I will still vouch for the quality of his character. Mr. Littlejohn is someone I can always count on to show up and support me both wherever I am and whoever I am. He is a person who has always valued loyalty, creativity, understanding, and empathy. Time and time again, I watched as Mr. Littlejohn showed up for the people closest to him.*

██████ Letter, attached hereto as part of Exhibit A.

A college friend, ██████████, who is now a professor of philosophy of law observed:

> *I teach my students that there is no such thing as a "good" person or a "bad" person. We are all just people who do things the law considers good or bad. But if anyone is a good person, Chaz is. I have never known him to make any big decisions with much regard for the negative consequences he might face. Those are the rare people I can say are categorically good people.*

████ Letter, attached hereto as part of Exhibit A.

### 1.    Personal Background of Charles "Chaz" Littlejohn

Charles Littlejohn ("Chaz" to his close friends) grew up St. Louis, Missouri. His parents

divorced when he was five years old and both soon remarried, leaving Mr. Littlejohn as the only

child moving back and forth between two separate families per a court-ordered schedule. While

the divorce was disruptive to young Mr. Littlejohn, he learned to adapt and formed close bonds

with his siblings – especially his younger brother and sisters. As his younger brother, ██████

, explained:

> *Even though Charles is my half brother, due to our relationship, I have always just referred to him as my brother. My entire life, I have looked up to Mr. Littlejohn.... He has a great many friends and family who love him and rely on him. He is always there when asked for help and never asks for anything in return. He has supported me my entire life and I would not be half the person I am without his tutelage.*

██████ Letter, attached hereto as part of Exhibit A.

He excelled in school and was an active member of his local church. Many of the letters

from childhood friends share examples of how, from a young age, Mr. Littlejohn went out of his

way to be a supportive and inclusive peer.  Friend ████████████ wrote about how he met Mr.

Littlejohn in the 7th grade, soon after emigrating from Romania to Missouri:

> *At a time when the language barrier made it hard for me to find friends and fit in with fellow classmates, Chaz was one of the first people to embrace me and we became friends quickly.  This friendship has lasted for over 25 years, as he is one of my two oldest friends, and I was honored that he was one of the 3 groomsmen at my wedding in 2017.*

████ Letter, attached hereto as part of Exhibit A.

Mr. Littlejohn attended college at the University of North Carolina at Chapel Hill.  Outside of his studies, Mr. Littlejohn devoted much of his time to volunteering on campus, including working to help found an organization that has evolved into a global non-profit for sustainable solutions to hunger.  Of the letters from college friends, most met Mr. Littlejohn while volunteering for this organization or at the campus social justice hub.

In 2007, Mr. Littlejohn graduated from university with a B.A. in Economics (*summa cum laude*) and a B.A. in Physics.  He immediately moved to Washington, D.C.—renting a room in a house with a group of other recent graduate.  Mr. Littlejohn has maintained friendships with his former housemates, many of whom have not only written letters of support, but are traveling to Washington to visit with Mr. Littlejohn the weekend before his sentencing.  As one friend wrote:

*We want to show him that we are here for him the way we know he would be there for us, as a loyal friend.* ████ Letter, attached hereto as part of Exhibit A.

At a time when most of his friends flocked to Washington to work on the Hill or for a passionate cause, Mr. Littlejohn chose a federal consulting role focused on the IRS.  As a college friend ████████████ shared:

> *While he was always brilliant enough to work anywhere, he is motivated by working for the public good, and he turned down more lucrative job opportunities to build a career around strengthening government capacity.  He's not just one of the most*

*informed citizens I know, but someone who is inherently excited to make government a better provider of public services.*

███████ Letter, attached hereto as part of Exhibit A.   Another college friend echoed those

sentiments:

> *I remember my initial befuddlement at Chaz choosing to work for the IRS, via a renowned consulting firm: It was, even then, a striking outlier among our friends. But what has stayed with me was his rationale. He believed, quite simply, that government should work better: that equitable education, healthcare, environmental safety, housing, and public parks — the very things we were quick to care about — depended on a functioning IRS: on taxpayer dollars, on people paying no more and no less than their fair share.*

███████ Letter, attached hereto as part of Exhibit A.

## 2.    Federal Consulting Work for the Internal Revenue Service.

But for the instant conduct, Mr. Littlejohn was a talented and devoted IRS contractor.

Despite widespread media portrayals of Mr. Littlejohn as a disgruntled, politically-jaded federal

consultant, nothing could be further from the truth.  One of his former consulting colleagues wrote

to the Court:

> *At work, Chaz was diligent, and he approached each task, no matter how mundane, with enthusiasm and pride. He devoted his time to improving public service not by delivering meandering speeches about government efficiency but by doing the hard work – brick by brick, datapoint by datapoint, he labored over obscure processes and unglamorous spreadsheets in pursuit of the perfect combination of incremental changes to make things just a little bit better for everyone. While some of his colleagues cynically completed only the basic tasks required, Chaz was passionate about connecting his work to broader themes he had studied or was reading about. And I don't know anyone that appreciated the New Carrolton Federal Building like he did. Above all, he took his pledge to do good for the public seriously, and in our time together, I never saw him act with anything but the highest standards and integrity.*

██ Letter, attached hereto as part of Exhibit A.  It is difficult to reconcile this version of Mr.

Littlejohn with the one who so flagrantly violated the law and the trust placed in him by the IRS.

Mr. Littlejohn's criminal conduct in 2019 and 2020 was the product not only of his misguided idealism but of life experience that led him to treat each day as if it were his last.

### 3. Impact of Younger Sister's Cancer Diagnosis.

Many of the letters to the Court talk about Mr. Littlejohn losing his little sister to cancer. After taking a break from consulting to start an online poker analytics business, Mr. Littlejohn returned to his job as an IRS contractor in 2012. Several months later, Mr. Littlejohn's younger sister—then a senior in high school—was diagnosed with leukemia. Despite having just moved back to Washington, Mr. Littlejohn put his own life on hold and relocated to St. Louis to be close to his sister and support his family while she underwent treatment. As his family wrote in their letter:

> During ███████ illness, he relocated to St. Louis to help care for her and other members of his family in St. Louis working remotely at all hours of the day and night so that he could support his family and fulfill his job obligations.

Family Letter, attached hereto as part of Exhibit A.

When his sister completed chemotherapy, Mr. Littlejohn moved back to Washington, only for her to relapse two months later. He then relocated back to St. Louis to again help care for his sister. When his sister needed a bone marrow transplant, Mr. Littlejohn went through the painful process of testing in hopes that he would be a match. When that was unsuccessful, he then "*recruited everyone he knew to sign up for the national registry*" and "*[a]lthough he wasn't a match for his sister, he saved a stranger's life.*" ███ Letter, attached hereto as part of Exhibit A. Over the next several months, Mr. Littlejohn watched as his little sister underwent a series of grueling procedures, including more rounds of chemotherapy, a bone marrow transplant, and multiple surgeries. During this time, Mr. Littlejohn "*spent almost every day with her in and out of the hospital…[and] the nurses and staff…remember him fondly to this day. He put his entire*

*life on hold to take care of [her].*" ████ Letter. After multiple moments of hope that she would survive, ████ contracted an antibiotic-resistant infection from her treatment and died in November 2013 at age 19. ████████████████████████

████████████████████████████

His sister's illness and death were very traumatic for Mr. Littlejohn and his family. After she passed away, Mr. Littlejohn decided to leave his consulting job and stay in St. Louis "*to help his father and stepmother cope with the loss of their youngest child, easing the pain of the empty nest that was forced upon them. His selflessness meant the world to them both.*" Family Letter, attached hereto as part of Exhibit A. Among the many small things Mr. Littlejohn did for his family during that time was a project to compile family photographs and social media posts into a program that shares a daily "████ Memory" with his father and step-mother. ████████

████████████████████████████

████████████████████████████

Two weeks after ████ death, Mr. Littlejohn learned that he was a match for an anonymous cancer patient on the registry. Over the next two years, Mr. Littlejohn successfully donated both bone marrow and T-cells to that person, and ultimately saved his life. *See* ████ Letter, attached hereto as part of Exhibit A. During that time, Mr. Littlejohn became involved with the non-profit "Be the Match," and joined his father in advocating for more research into antibiotic resistance, including an initiative to educate members of Congress on the need for additional funding. *See, e.g.* Nancy Curtis*, St. Louis Marrow Donors and Transplant Patients Come Together for the Be the Match Walk+Run This Weekend*, Sᴛ. Lᴏᴜɪs Mᴀɢᴀᴢɪɴᴇ, (Sep. 4, 2014), https://www.stlmag.com/health/st.-louis-marrow-donors-and-transplant-patients-come-together-for-the-be-the-match-walk-run-this-weekend and The Pew Charitable Trusts, *Advocates*

*gather in Washington to urge sustained funding to combat antibiotic resistance*, (Feb. 26, 2018), https://www.pewtrusts.org/en/research-and-analysis/articles/2018/02/27/meet-our-supermoms-2018, excerpts attached hereto as part of Exhibit B.

Mr. Littlejohn spent the next several years focusing on his family, community work, and his start-up business.  In late 2016, Mr. Littlejohn's grandfather suffered a debilitating stroke.  Mr. Littlejohn temporarily relocated to Delaware to care for him until his death in July 2017.  *"He did this without being asked, selfless in his devotion to family."*  Family Letter.  That same month, Mr. Littlejohn's mother ███████████████████████████ and decided it was time for him to move back to Washington so that he could have a salaried job.  He applied to two consulting firms, including for a role at his prior firm that might put him on a project to access the President's tax returns.

### 4.    Return to Washington, D.C. and IRS Consulting Job.

In the fall of 2017, Mr. Littlejohn resumed working for the consulting firm on an IRS contract (discussed below).  A year and a half later, his family received the devasting news that ███████████████████████  As he had before, Mr. Littlejohn immediately returned home to provide support.  Since then:



Family Letter, attached hereto as part of Exhibit A.

### 5.    Personal Consequences

For Mr. Littlejohn, the most difficult part of his upcoming incarceration is not the impact on himself, but the impact on those he loves.  Despite the turmoil of Mr. Littlejohn's life in 2019, that year, he met his girlfriend, ████████.  They have now been in a committed relationship for over four years and have built a life together.  She wrote to the Court:



████  Letter, attached hereto as part of Exhibit A.  Mr. Littlejohn mourns for the time he will miss with ████ and no longer being there for his family and friends.  Following his plea, Mr. Littlejohn has made the effort to visit and connect with as many of the important people in his life as he can.  And even with the stress of his upcoming sentencing, a few weeks ago, he traveled to California to care for his younger brother, who was recovering from surgery:

> *He has always checked up on me, as I've had my fair share of struggles in life. This past month, I had surgery that put me out of work for one month. Mr. Littlejohn flew out across the country and took care of me for two weeks, knowing how precious this time is. It helped me out so much and I'm very grateful to him. His support, throughout my life, is why I am here today.*

████  Letter, attached hereto as part of Exhibit A.  As Mr. Littlejohn prepares to be sentenced (and turn 40 next year), he recognizes that his conduct will have lasting consequences well beyond any term of incarceration the Court imposes.  Mr. Littlejohn's relationships with family and friends have been forever strained, his ability to start a family is now at risk, and he may not be there for his Dad.

B.      **The Nature and Circumstances of the Offense.**

Mr. Littlejohn's conduct in this case is inexcusable.  He not only broke the law, but breached the trust placed in him by the United States government and violated the privacy of thousands of taxpayers.  It is hard to understand why a man with such respect for the law and government systems would violate them so completely.  As Mr. Littlejohn's ███████████ ████████████████████████ tried to explain:

> *Chaz is a student of history and politics, but he is not inherently political….*
> *Knowing Chaz for as long as I have, I am sure this was not an easy decision for*
> *him.  He must have spent considerable time weighing historical precedent, ethics*
> *and philosophy, ends and means, processes and policy, macro themes and micro*
> *data, federalism and fairness, and all sorts of concepts and doctrines before coming*
> *to his decision. I imagine he hoped others would consume the details of the*
> *reporting and consider our country's tenuous moral moment and evaluate the*
> *merits of various tax policy proposals in a more data-driven way like he might….*

█ Letter, attached hereto as part of Exhibit A.

1.      **(Brief) Summary of the Relevant History of Taxation.**

As the Court referenced during Mr. Littlejohn's Plea Hearing, the United States first enacted an income tax in 1861, during the Civil War.  That first statute, signed into law by President Lincoln, mandated a flat tax and that citizens publicly file their returns.  After Congress repealed the wartime tax statute in 1872, the country went through several decades of debate as to whether the country should levy an income tax and, if so, how it should function.  In the early 1900s, President Taft recommended that Congress propose the 16th Amendment, which was eventually ratified in 1913 – ushering in the modern income tax system.  While the Amendment afforded Congress the "power to lay and collect taxes," it did not address whether tax records should be public.  This continued to be a matter of some debate.  While some politicians lobbied for an open system (*see, e.g.* Bennjamin Harrison: "*We are members of a great partnership, and it is the right of each to know what every other member is contributing to the partnership, and*

*what he is taking from it*."), others believed that private returns would facilitate more honest reporting of income. Ultimately, the latter group won out. But the idea of public taxes, especially for public officials, did not die.[3] Mr. Littlejohn was well-versed in this history.

### 2.    Context of Offense

*We all began to worry more and more about freedom of the press and about the [] administration's imperious attitude that the authority to determine what the American people should know rests exclusively with the government.*

Katharine Graham, *Personal History* 458 (1997).[4]

### a.    Leak of President Trump's Returns to New York Times

In 2017, two days after taking office, President Trump announced that he would continue to withhold his tax records from the public – "becoming the first president since the early 1970s to decline to release tax information." Julie Hirschfield Davis, *Trump Won't Release His Tax Returns, Top Aide Says*, N.Y. TIMES, (Jan. 22, 2017), https://www.nytimes.com/2017/01/22/us/politics/donald-trump-tax-returns. Several weeks later, the President labeled a list of major news outlets "the enemy of the American People." Michael M. Grynbaum, *Trump Calls the News Media the 'Enemy of the American People*,' N.Y. TIMES, (Feb. 17, 2017), https://www.nytimes.com/2017/02/17/business/trump-calls-the-news-media-the-enemy-of-the-people.html. For Mr. Littlejohn, an avid student of history, these events were

---

[3]    *See, e.g.* The Revenue Act of 1924. In the aftermath of the Teapot Dome scandal, President Coolidge and Treasury Secretary Andrew Mellon reluctantly agreed to the Revenue Act. The statute made available all 1924 individual and business tax records for public inspection and gave the Chair of the United States House Committee on Ways and Means the power to obtain the records of any taxpayer.
        The idea surfaced again during 1970s. After President Nixon's own tax scandal and resignation, President Ford released a 10-year summary of his tax return information to the public and the White House announced that "the President hopes this will be a model for the degree of detail on tax information that all candidates should issue to voters who they are asking to elevate them to the Presidency." James M. Naughton, *Ford Paid $94,568 in '75 Taxes*, N.Y. TIMES, (Apr. 21, 1976), https://nyti.ms/420fkl3. Every major presidential candidate since then, with one exception, has upheld the tradition of releasing their tax information to the public.
[4]    Former *Washington Post* Editor in Chief Katharine Graham recalling in her autobiography the Nixon administration's efforts to control information.

15

**A101**

alarming.  He believed it was morally wrong for the administration to withhold information that had always been shared with the American people.

By the time he resumed work as an IRS contractor in the Fall of 2017, Mr. Littlejohn was resolved that he would try to access the President's tax returns if given the opportunity.  When, by chance, in early 2018, his employer assigned him to a project that would allow such access, he began to figure out how to obtain the records through searches that would not raise any red flags. In the months leading up to Mr. Littlejohn actually obtaining the tax records, there were several events that made him feel that he did not have any other choice but to act.[5]  By the end of November 2018, Mr. Littlejohn had successfully obtained 15 years of tax records for the President.

Mr. Littlejohn did not do anything with the information for several months and remained unsure whether he would disclose it.  He considered sharing the records with several news organizations, but wanted to carefully think through the best way to get the information to the American public while at the same time making sure the records themselves would be protected. During that time, he reread the New York Times prior reporting on the President's tax records and watched a documentary that discussed the controls that the Times put in place to handle other sensitive leaked records, such as a secure data room, dedicated private computers, and a walled-off team of journalists.  *See The Family Business: Trump and Taxes* (Moxie Firecracker Films 2018).  Mr. Littlejohn resolved that if he decided to disclose the Trump tax data, he would go to the Times.

---

[5]     These events included the October 1, 2018 swearing-in of a new Commissioner of the IRS who had previously supported the President's decision to withhold his tax returns and an October 2, 2018 New York Times investigative report the tax strategy of the Trump family.  David Barstow, Susanne Craig, and Russ Buettner, *Trump Engaged in Suspect Tax Schemes as He Reaped Riches From His Father*, N.Y. TIMES, (Oct. 2, 2018), https://www.nytimes.com/interactive/2018/10/02/us/politics/donald-trump-tax-schemes-fred-trump.html.

**A102**

Then two things happened in April 2019 that made up his mind to act. On April 13, 2019, the New York Times ran an opinion piece, "Everyone's Income Taxes Should Be Public," which argued that "[d]isclosure of tax payments would make it easier to hold politicians accountable [and] also would help to reduce fraud and economic inequality." Binyamin Appelbaum, N.Y. TIMES, (Apr. 13, 2019), https://www.nytimes.com/2019/04/13/opinion/sunday/taxes-public.html. Two weeks later, Mr. Littlejohn's father was unexpectedly diagnosed ███████████ ██████████████████████████. Right after receiving that news and going to see his Dad, Mr. Littlejohn decided to approach the New York Times about leaking Trump's tax records. On May 14, 2019, Mr. Littlejohn contacted the Times tip line asking to be put in contact with the same reporters who had previously covered the President's taxes.[6] Reflecting on that day, Mr. Littlejohn wrote in his journal:

> *I remember thinking about my Dad who just a few weeks earlier had been diagnosed* ███████████ *I was thinking about my sister [] and how brief our time on earth is. If ever I found myself scared to push further I would think about everything I had done so far, everything that led up to this moment and I'd push through.*

At the same time Mr. Littlejohn began his discussions with the New York Times reporters, he began making monthly trips to St. Louis to see his father, who was preparing for ███████████ ██████████████. Between May 2019 and August 2019, Mr. Littlejohn engaged in multiple discussions, including in-person meetings, with the Times reporters about how they would handle the security of and reporting on the Trump tax records if he were to disclose them. In response to one of those meetings, one of the Times reporters wrote to Mr. Littlejohn in June 2019:

> *[I]t was great meeting you last night. That was a (really) big step, and we respect the courage it took. I hope we land on a good path forward. I completely respect your concerns and want you to feel right about any decision / decisions you make.*

---

[6]    Including a recently-published New York Times investigative piece, *Decade in the Red: Trump Tax Figures Show Over $1 Billion in Business Losses* (May 8, 2019).

*. . I can't help but reflect that it's something the three of us ended up together last night because a certain person won't disclose information that people absolutely need to see and have for decades. I appreciate you share this concern and recognize one person can make a difference.*

Based on his discussions with the reporters, Mr. Littlejohn felt that the New York Times shared his belief that the American public had a right to know the President's tax information and would responsibly report on the records he provided. Specifically, he understood that the New York Times would take similar precautions to its prior reporting on the subject – securely maintain the data, would not publish the records themselves, and would use the information solely for journalistic purposes.

In August 2019, after several months of communications, Mr. Littlejohn gave the NY Times a copy of the tax information that he stolen from the IRS database related to President Trump. Over the next year, he helped the Times analyze the tax data and stole additional tax records to supplement his initial unauthorized disclosure.

On or about September 27, 2020, the New York Times published the first of several articles that publicly disclosed information contained in President Trump's tax returns, which the defendant provided to the news organization. *See* Russ Buettner, Susanne Craig, and Mike McIntire, *Long-Concealed Records Show Trump's Chronic Losses and Years of Tax Avoidance*, N.Y. TIMES, (Sep. 27, 2020), https://www.nytimes.com/interactive/2020/09/27/us/donald-trump-taxes.html. Accompanying the lead article, N.Y. Times Editor in Chief Dean Baquet published the following note:

*We are publishing this series of reports because we believe citizens should understand as much as possible about their leaders and representatives — their priorities, their experiences and also their finances. Every president since the mid-1970s has made his tax information public. The tradition ensures that an official with the power to shake markets and change policy does not seek to benefit financially from his actions.*

*Mr. Trump, one of the wealthiest presidents in the nation's history, has broken with that practice. As a candidate and as president, Mr. Trump has said he wanted to make his tax returns public, but he has never done so. In fact, he has fought relentlessly to hide them from public view and has falsely asserted that he could not release them because he was being audited by the Internal Revenue Service.*

*...*

*Our latest findings build on our previous reporting about the president's finances. The records show a significant gap between what Mr. Trump has said to the public and what he has disclosed to federal tax authorities over many years. They also underscore why citizens would want to know about their president's finances: Mr. Trump's businesses appear to have benefited from his position, and his far-flung holdings have created potential conflicts between his own financial interests and the nation's diplomatic interests.*

Dean Baquet, N.Y. TIMES, *An Editor's Note on the Trump Tax Investigation* (Sept. 27, 2020), https://www.nytimes.com/2020/09/27/us/trump-taxes-editors-note.html.

While the Times reporters did not publish any of the underlying records and used them solely to report on the information contained therein, Mr. Littlejohn recognizes that the information published was a violation of the privacy of President Trump and other affected taxpayers. He greatly regrets the theft of these records and having disclosed them to the media.

### b.    Leak of Billionaire Tax Returns to ProPublica

While working with the New York Times on the analysis of President Trump's tax records, Mr. Littlejohn noted an anomaly in the data: earlier versions of certain IRS databases truncated numbers with large numbers of digits (for example, registering $1,230,000,000 as $230,000,000). This led Mr. Littlejohn to run queries for taxpayers with large gains and losses to try to figure out the issue with the database. After repeatedly observing tax records of ultra-high net worth taxpayers with relatively small tax payments, Mr. Littlejohn became increasingly focused on the systemic inequality. At the same time, he was reading a book about income inequality, *The Triumph of Injustice: How the Rich Dodge Taxes and How to Make Them Pay*. Emmanuel Saez and Gabriel Zucman (2019). The 2019 book set forth a systematic analysis of the U.S. tax system,

19

**A105**

concluding that for the first time in a century, billionaires almost universally paid lower effective tax rates than the average American taxpayer.  It had a profound impact on Mr. Littlejohn's worldview.  While the book suggested solutions to this inequality, Mr. Littlejohn feared that none would be achieved without robust public engagement with the topic.  He began to think about how an in-depth investigative report of the tax histories of ultra-wealthy taxpayers might be the one way to cause meaningful change to reform the tax system.

In June of 2020, Mr. Littlejohn began conducting searches to pull historic tax data on the wealthiest taxpayers.  Basing his methodology on the tax analysis used in *The Triumph of Injustice*, Mr. Littlejohn constructed a query designed to pull the top 500 taxpayers by income by year for the past 15 years.  After running the query, he stole the data set in the same manner as the President's returns, uploading the data to his personal private website but not publicly posting any of the files.  Mr. Littlejohn wrote at the time that disclosing the data to the media "*would almost certainly mean signing my life away to misery.*"  And as before, he did not immediately share the records.

Then, in late August 2020, a close family friend—a young woman in her twenties—died of cancer.  The next day, Mr. Littlejohn wrote in his journal:

> *Life is so fragile and short.  Grieving for the years she will not see the friend[s] and family that will carry her loss for the rest of their days.*
>
> *We should all try to live our lives as if we will die tomorrow.*

The following week, he contacted ProPublica.

Similar to his prior discussions with the New York Times, Mr. Littlejohn also sought assurances from ProPublica as to the security of date and use of the information for journalistic purposes.  Prior to sharing the data, he stripped bank account and other sensitive information from the records.  In September 2020, Mr. Littlejohn anonymously provided send an encrypted USB

drive to a ProPublica journalist.  In or about November 2020, he provided the device's password.

The news organization published nearly 50 articles using the returns and return information. *See*

Jesse Eisinger, Jeff Ernsthausen, and Paul Kiel, *The Secret IRS Files: Trove of Never-Before-Seen*

*Records Reveal How the Wealthiest Avoid Income Tax*, PROPUBLICA, (June 8, 2021),

https://www.propublica.org/article/the-secret-irs-files-trove-of-never-before-seen-records-reveal-

how-the-wealthiest-avoid-income-tax.

### 3.    Aftermath of Leaks

> *Privacy is something to be taken very seriously, and vigilante justice is never the*
> *answer in our republic.  Having said that, from discussions with Mr. Littlejohn, it*
> *is obvious to me that he undertook these actions not for personal enrichment or as*
> *an act of malice, but rather out of a sense of justice, however misguided. Mr.*
> *Littlejohn is not a menace to society; he is a principled, if flawed, man, who acted*
> *irrationally in the midst of what has been a trying, highly emotional time for our*
> *country.*

████████ Letter, attached hereto as part of Exhibit A.  In the months following the publication of

the ProPublica articles, Mr. Littlejohn began to realize the gravity of what he had done.  He

originally acted out of a sense of moral duty, but soon came to understand that his conduct was

morally wrong.  Instead of saving the tax system, his actions had undermined the IRS, breached

the public trust, and violated the privacy of thousands of American taxpayers.

### C.    The Need to Avoid Unwarranted Sentencing Disparities Among Similar Offenders Also Supports Two- to Four-Level Upward Departure.

In determining an appropriate but not greater than necessary sentence, 18 U.S.C. 3553

instructs the Court to look to precedent and the sentences imposed on similarly situated defendants.

The Supreme Court has explained, "Congress' basic goal in passing the Sentencing Act [and

adopting the Sentencing Guidelines] was to move the sentencing system in the direction of

increased uniformity." *United States v. Booker*, 543 U.S. 220, 253 (2005).  The breadth of case

law supports a Guidelines sentence with a two- to four-level upward departure.

1.    **Sentences Imposed in Previous 26 U.S.C. 7213 Cases Support the Requested Sentence.**

As an initial matter, the Government has rarely brought criminal charges for the unauthorized disclosure of tax records. Undersigned counsel has been able to identify only nine cases charging 26 U.S.C. 7213. While these cases admittedly involved the disclosure of far fewer tax records, many of them also involved far more egregious circumstances and more condemnable motives than are present here. These aggravating factors included unlawful disclosures for profit or in exchange for sexual favors, theft of the taxpayers' identities, and otherwise intending to use the tax information to defraud or financially harm the taxpayers. Despite these highly culpable circumstances, most of these cases resulted in probationary sentences. *See, e.g., United States v. Herndon*, 1:04-cr-00171 (W.D. Tex.) (sentencing defendant to three months of probation and 100 hours of community service for violating 18 U.S.C. 1030A, 26 U.S.C. 7213, and 26 U.S.C. 7214 by unlawfully accessing the federal income tax accounts of a woman, her sister, and her mother to trade the tax information for sexual benefits); *United States v. Johnson*, 2:07-cr-00309 (E.D. Penn.) (sentencing defendant to three years of probation for selling tax returns and other confidential information for at least 24 individuals for approximately $1,500 with the purpose of allowing the other individual to use the information in fraudulent transactions); *United States v. Washington*, 3:15-cr-00007-JJH (N.D. Ohio) (sentencing defendant to one year of probation after conviction at trial for unlawfully accessing tax information of her ex-husband and unlawfully disclosing the information to an employee of a child support agency); *United States v. Lerner*, 1:12-cr-00952-JFK (S.D.N.Y.) (sentencing defendant to three years of probation for unlawfully disclosing tax information to a non-IRS employee and applying to a private position at a company that he was auditing; the Government dismissed a count for bribery under 18 U.S.C. 207 and a second count under 26 U.S.C. 7213); *United States v. Richey*, 924 F.2d 857 (9th Cir. 1991) (affirming in a split

decision a sentence of probation for disclosing confidential tax information to a reporter about a Judge, who had recently sentenced the defendant to a term of probation in an earlier case; the defendant worked for the IRS and had previously audited the Judge's taxes and suggested to the reporter that the terms of his probation were likely done in retribution);[7] *United States v. Verburg*, 2:03-cr-00341-DB (D. Utah) (sentencing defendant to five years of probation); *United States v. Lewis*, 1:12-cr-00263-LJO-SKO (E.D. Cal.) (sentencing defendant to two years of probation).

The only sentences under 26 U.S.C. 7213 that involved prison time had highly unusual circumstances or defendants who committed additional crimes. *See United States v. Moore*, 2:90-cr-20286 (W.D. Tenn.) (sentencing defendant after conviction at trial of thirteen counts of 26 U.S.C. 7213 to nineteen months of incarceration for unlawfully obtaining the tax information of eight individuals and stealing the identity of one of the individuals to send harassing messages to a Tennessee Senator regarding, among other things, a purported Secret Service kidnapping plot); *United States v. Flowers*, 2:12-cr-00323 (E.D. Penn.) (sentencing defendant to two years of incarceration for aggravated identity theft and a concurrent four months of incarceration for one count of 26 U.S.C. 7213A, one count of 26 U.S.C. 7213, and one count of aiding and abetting mail fraud for unlawfully accessing tax records for numerous individuals, including her former landlord, and using the records to, among other things, apply for credit cards in her landlord's name).

Unlike the above cases, Mr. Littlejohn's disclosure was not self-serving.  He did not disclose the information for personal gain; nor did he intend to harm the taxpayers.  Rather, he

---

[7]    The dissent in *Richey* would have reversed because the defendant's First Amendment right to challenge the bias of the Judge and the public's First Amendment right to the information outweighed the government's interests at issue, which in the dissent's view should have invalidated the law as applied. Even stronger First Amendment interests are at issue in this case, and we ask that the Court factor in those interests when determining an appropriate sentence.

believed at the time that disclosing the information would benefit society and could bring about positive change.

### 2. Sentences Imposed in Cases Involving Comparable Non-Tax Disclosures Support the Requested Sentence.

Because of the dearth of precedent involving the unauthorized disclosure of tax records, particularly in cases involving the disclosure of a larger number of records, the Court should also look to cases where Courts have imposed sentences on similarly situated defendants for comparable, non-tax disclosures. For example, in *United States v. Fry*, Case No. 3:19-cr-00102-EMC (N.D. Cal.), the Government charged Mr. Fry with misuse of a computer, unlawful use of a social security number, and unauthorized disclosure of suspicious activity reports, all of which are five-year felonies. Mr. Fry was an Investigative Analyst for the IRS's law enforcement arm, the Criminal Investigative Division, who abused his access to confidential information and position of trust by leaking five suspicious activity reports related to Michael Cohen to a lawyer named Michael Avenatti who then leaked the information to the Washington Post. The Washington Post used the unlawfully obtained reports to publish an article titled "How Much Flowed Through Michael Cohen's Multi-Purpose Shell Company." Mr. Fry attempted to access additional reports but safeguards in FinCEN's system prevented further unlawful disclosures. Mr. Fry pled guilty to one count of unauthorized disclosure of suspicious activity reports and the Court sentenced him to 5 years of probation.

Further, *United States v. Edwards*, Case No. 1:19-cr-00064-GHW-1 (S.D.N.Y.), the Government charged Ms. Edwards with conspiracy to make thousands of unauthorized disclosures of suspicious activity reports in violation of the Bank Secrecy Act. Ms. Edwards was a senior Treasury Department official who abused her position of trust and unlawfully disclosed over 50,000 documents, including thousands of confidential reports on suspect financial transactions

**A110**

and other sensitive personal and financial information related to, among other things, Special Counsel Robert Mueller's investigation into then-President Trump and his allies, to Buzzfeed. The unlawful disclosures led to several articles by Buzzfeed, including a series of articles titled the FinCEN files.

There are several significant parallels between Ms. Edwards' and Mr. Littlejohn's motive and conduct. Like Mr. Littlejohn, Ms. Edwards disclosed tens of thousands of records to a news organization because she believed (rightly or wrongly) that the public had a right to know about what she viewed as an injustice. Also, like Mr. Littlejohn, she also believed (rightly or wrongly) that the unlawful disclosure would benefit society. When leaking the documents to the reporter, Ms. Edwards, who had significant experience in the intelligence community, applied what the Government described as "spy-style tradecraft" to avoid detection. *See United States v. Edwards*, Case No. 1:19-cr-00064-GHW-1 (S.D.N.Y.), Dkt. 104 at 26. The impact of Ms. Edwards unlawful disclosure is also similar to Mr. Littlejohn's in that it led to a series of articles involving sensitive financial information about private citizens.

In some respects, Ms. Edwards conduct was more egregious than Mr. Littlejohn's. Not only did Ms. Edwards' disclosure, and the corresponding Buzzfeed articles, invade the privacy interests of those whose records she disclosed, her disclosure also compromised ongoing law enforcement investigations, including into the financing of the terrorist organization Hezbollah. Further, when initially discovered, Ms. Edwards lied to FBI agents. These aggravating factors are not present in Mr. Littlejohn's case.

In determining an appropriate sentence, the Court in Ms. Edwards' case faced a similar sentencing framework as the Court must now apply here. The unlawful disclosure of confidential suspicious activity reports under 31 U.S.C. 5322(a), and her conspiracy to violate it, is also a five-

year felony and her sentencing guideline range was 0 to 6 months. Like Mr. Littlejohn, Ms.

Edwards' sentencing guidelines did not specifically account for the number of suspicious activity

reports she unlawfully disclosed. Nor did it account for the type of information she disclosed or

the harm her disclosure caused, like compromising ongoing criminal and anti-terrorism

investigations (a harm that is not present for Mr. Littlejohn). Despite the large number of records

Ms. Edwards unlawfully disclosed (over 50,000 internal government records, including over 2,000

suspicious activity reports) and the significant harm the disclosure caused, the Court found that a

departure was not warranted. *See United States v. Edwards*, Case No. 1:19-cr-00064-GHW-1

(S.D.N.Y.), Dkt. 104 at 6 ("I considered whether there is an appropriate basis for departure from

the advisory range within the guidelines system, and while I recognize that I have the authority to

depart, I do not find any other grounds warranting a departure under the guidelines"). While this

Court, like the Court in Edwards, has authority to depart, as explained above, the departure must

be grounded by precedent and the guidelines.

Applying this framework, the Court sentenced Ms. Edwards to six months of incarceration,

the upper end of her guideline range. Ms. Edwards' six-month sentence and Mr. Fry's

probationary sentence supports Mr. Littlejohn's requested Guidelines sentence with a two- to four-

level upward departure.

### 3.    Sentences Imposed for the Significantly More Egregious Crime of Disclosing Confidential Information Support the Requested Sentence.

Another significant area of unlawful disclosure cases involves significantly more egregious

and harmful conduct – the disclosure of confidential information. The conduct in these cases is

not commensurate with Mr. Littlejohn's conduct. While Mr. Littlejohn breached the confidences

of taxpayers, these cases involve disclosures that harm national security and put individuals' lives

at risk. Congress has appropriately codified significantly harsher criminal statutes for such

disclosures,[8] and significantly higher sentencing guidelines apply. *See* USSG 2M3.3 (base offense level of 24 or 29 if disclosure involved top secret information). However, even in the context of this significantly more egregious conduct, courts frequently sentence defendants to far below the guidelines when the defendants' motive was a feeling of moral obligation or belief that society would benefit from the disclosure.

| Name/Case No. | Guidelines | Sentence | Description of Case |
|---|---|---|---|
| *US v Albury* (0:18-cr-00067, Western District of Minnesota) | 46-57 months | 48 months' incarceration; 3 years' supervised release | In 2016, Albury, an FBI Special Agent who had previously served in Iraq, removed 70+ documents (50 of which were classified) from FBI computer systems with the intent of providing them to the media. The materials related to FBI surveillance, profiling, and informant-recruitment practices in national security investigations. At least some of the documents were in fact released to the media and ~50 more documents were found in an envelope with the reporter's name during the execution of the search warrant. The defendant used a variety of means to exfiltrate the information to avoid detection. |
| *US v Cartwright* (1:16-cr-00188, District of Columbia) | 0-6 months | Govt. requested 24 months; Pardoned prior to Sentencing | In 2017, retired Marine Corps General and Vice Chairman of the Joint Chiefs of Staff Cartwright violated his position of trust by (1) leaking highly classified information, including Top Secret/SCI information about a covert program to sabotage Iranian nuclear centrifuges, to reporters on multiple occasions and (2) lying to the FBI in an effort to conceal his crimes. He was permitted to plead guilty to lying about the offense to the FBI rather than the substantive offense. |

---

[8]    18 U.S.C. 793(e) (providing a 10-year felony for unlawful retention of national defense information); 18 U.S.C. 798 (providing a 10-year felony for unlawful disclosure of classified information).

| Name/Case No. | Guidelines | Sentence | Description of Case |
| --- | --- | --- | --- |
| *US v Frese* (1:19-cr-304, Eastern District of Virginia) | 151-188 months | 30 months' incarceration; 3 years' supervised release | Over a 17-month period from February 2018 and October 2019, Frese transmitted Top Secret and Secret information to reporters and an overseas consultant on at least 19 occasions, including running searches as requested by reporters. The Government, in a sealed addendum, detailed the actual harm that Frese's unlawful disclosure of classified information caused. |
| *US v Fondren* (1:09-cr-263, Eastern District of Virginia) | 63-78 months | 36 months' incarceration; 2 years' supervised release | In 2009, Fondren knowingly disclosed classified information to a foreign government operative for money. From approximately November 2004 to February 2008, Fondren provided classified Defense Department documents and other sensitive information. He denied the offense and was found guilty at trial. At sentencing, the Court departed downward after finding out that the classified information conveyed was not actually harmful to the US. |
| *US v. Hale* (1:19-cr-00059, Eastern District of Virginia) | 108-135 months | 45 months' incarceration; 3 years' supervised release | In 2013, Hale abused his position of trust at the National Geospatial-Intelligence Agency (NGA) by disclosing classified documents to reporters on multiple occasions. The documents that the news organization later published harmed the United States and were of sufficient interest to ISIS for the terrorist organization to further distribute two of the unlawfully leaked documents in a guidebook for its followers. |
| *US v Kim* (1:10-cr-2255, District of Columbia) | 120 months (capped by statute) | 13 months' incarceration; 1 year' supervised release | Kim was a senior advisor at the State Department who disclosed TOP SECRET/SCI information to a reporter regarding North Korean military preparedness. He admitted (1) that he did not act to expose government misconduct, (2) he did not disclose as a whistleblower, and (3) that he knew his disclosure could harm the United States or benefit North Korea. Kim also lied throughout the FBI's investigation. |

28

**A114**

| Name/Case No. | Guidelines | Sentence | Description of Case |
|---|---|---|---|
| *US v Kiriakou* (1:12-cr-127, Eastern District of Virginia) | 97-121 months | 30 months' incarceration; 3 years' supervised release | Kiriakou, a former CIA officer, disclosed classified information to journalists, including the identity of a covert agent that caused grave damage to national security and risked the personal safety of the agent. His disclosures further compromised a second covert agent and dozens of CIA officers (including covert officers of the National Clandestine Service). Kirkiakou disclosed the classified material for personal gain, including promoting his forthcoming book and securing employment. |
| *US v Leibowitz* (8:09-cr-632, District of Maryland) | 46-57 months | 20 months' incarceration; 3 years' supervised release | Leibowitz was employed as an FBI linguist, and he transmitted five documents to a blogger that contained "Secret" classified communication intelligence. The blogger published the classified intelligence on the internet, compromising the intelligence sources and methods used to gather the classified information. |
| *US v Libby* (1:05-cr-394, District of Columbia) | 30-37 months | 30 months' incarceration imposed by court but commuted by President; 2' years supervised release | Around 2003, Libby was a senior White House aide who revealed the identity of a covert CIA agent to a reporter in retribution for a critical article written by the agent's husband. The Government charged Libby with obstruction and false statements as opposed to disclosing classified information, but the Court applied a cross-reference to the substantive offense of violating the Intelligence Identities Protection Act. |

| Name/Case No. | Guidelines | Sentence | Description of Case |
| --- | --- | --- | --- |
| *US v Petraeus* (3:15-cr-47, Western District of North Carolina) | 0-6 months | 2 years' probation; $100k fine | Petraeus was a retired four-star General and CIA director. A personal acquaintance wrote a biography about him, for which he revealed eight notebooks with classified information, including the identities of covert officers, war strategy, intelligence capabilities and mechanisms, diplomatic discussions, quotes and deliberative discussions from high level National Security Council meetings, and notes of discussions with the President. Much of the information was classified at the highest level of "'Top Secret/SCI and codeword'". Petraeus also lied to FBI during the investigation. The Government charged Petraeus with unauthorized retention opposed to the more serious crime of unlawful disclosure. |
| *US v Sachtleben* (1:13-cr-00200, Southern District of Indiana) | 168-210 months | 43 months' incarceration (Consecutive term of incarceration for distribution of child pornography) | From 2010 to 2012, Sachtleben, formerly with the FBI, began disclosing information about the explosives used in terrorist plots and the FBI's analysis of such explosives to a reporter. In 2012, Sachtleben obtained classified material about a recently disrupted suicide bomb attack and provided it to the reporter. The material was classified by the FBI and other intelligence agencies. The reporter published multiple articles relying on the classified material. |
| *US v Shriver* (1:10-cr-402, Eastern District of Virginia) | 37-46 months | 48 months' incarceration; 2 years' supervised release | In exchange for $70,000 from the Chinese government, Shriver applied for positions in the foreign service and the CIA with the agreement that he would pass along classified information upon employment. Shriver met with several PRC agents on multiple occasions over the time span of three years, and he additionally smuggled money into the United States. He accepted responsibility for the crime and did not actually distribute any classified information. |

| Name/Case No. | Guidelines | Sentence | Description of Case |
|---|---|---|---|
| *US v Sterling* (1:10-cr-485, Eastern District of Virginia) | 235-293 months | 42 months' incarceration, 2 years' supervised release | A jury convicted Sterling for disclosing information about the Iranian nuclear program to the New York Times. Former National Security Advisor Dr. Condoleezza Rice said that any article about the program would endanger lives and national security by compromising one of the most important, closely held, and sensitive operations of her entire tenure as National Security Advisor. Although the White House and Dr. Rice convinced the New York Times to not publish the story, the reporter at the New York Times later disclosed the classified information in his book, *State of War*. |
| *US w Winner* (1:17-cr-34, Southern District of Georgia) | 87-108 months | 63 months' incarceration, 3 years' supervised release | Winner was an NSA contractor and former Air Force linguist who disclosed an intelligence report classified Top Secret/SCI in 2017. She also "'expressed contempt for the United States'" and claimed to hate the United States in a series of online posts. The government claimed that the disclosure caused "exceptionally grave harm to US national security". |

Mr. Littlejohn's sentence should fall well below the sentences imposed in these cases. Not only did the above cases harm national security, but as noted above, many involved lying to investigators and putting individuals' lives at risk. None of these aggravating factors is present here.

Mr. Littlejohn never lied to investigators, and he accepted responsibility for his conduct, saving the government the time and resources of trial. Mr. Littlejohn cooperated fully, including two lengthy proffers to the Department of Justice and TIGTA. As part of his cooperation, Mr. Littlejohn has turned over all relevant electronics, including disclosing the existence of electronics that the Government would never have been aware of without his cooperation. Mr. Littlejohn

**A117**

further shared ways TIGTA could better detect and deter future theft and illegal disclosure of IRS data. The obstruction enhancement in this case is based on Mr. Littlejohn's contemporaneous acts to prevent detection; he has not taken any obstructive acts since he became aware of the investigation in 2021.

In contrast to putting lives at risk, Mr. Littlejohn took steps to protect the privacy of individuals. First, Mr. Littlejohn only approached reputable news organizations – the New York Times and ProPublica – that he knew would handle the information responsibly. He then obtained repeated assurances from the organizations that they would invest significant resources to store the information securely before he transferred any of the records. Finally, Mr. Littlejohn removed bank account information from the records he transferred to ProPublica.

These differences support a sentence far below the sentences imposed in the above cases involving the disclosure of classified information.

### d.    The Purposes of Federal Sentencing.

As noted above, Congress has identified four purposes of federal sentencing that district courts must follow. The sentence must be "sufficient, but not greater than necessary" to serve those purposes. We respectfully submit that the purposes of federal sentencing would be fully served by imposition of a Guidelines sentence with a two- to four-level upward departure.

The first purpose of federal sentencing is "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The consequences of Mr. Littlejohn's conviction will extend far beyond the sentence imposed by the Court. Not only has Mr. Littlejohn been convicted of a serious felony, but one that will prohibit him from ever working again in federal consulting or similar fields. He will never be able to serve the government

in the same way again, putting an end to an otherwise promising career. The consequences on his

personal life are even more profound. As his partner, ██████████ shared:

> *Living together, I've been able to see firsthand how difficult coming to terms with*
> *his conduct has been and the monumental impact on his family and loved ones.*
> *Mr. Littlejohn sacrificed his future aspirations committing this crime and received*
> *nothing for it. He lost the ability to hold a normal job, time with his father and*
> *watching his nieces and nephew grow up, starting a family with me. The only*
> *reason he would do this is if he believed he was contributing to the greater good by*
> *providing invaluable information to the public.*
> *...*
> *He never thought of the ripple effect his conduct would create upon those he's*
> *loved, and he'll carry that weight for the rest of his life.*

██████ Letter, attached hereto as part of Exhibit A. The personal and professional consequences

of his conduct, coupled with a period of incarceration, adequately reflect the serious nature of his

crime and provides just punishment under the full circumstances of his offense and cooperation.

    The second purpose of federal sentencing is "to afford adequate deterrence to criminal

conduct." We respectfully submit that period of incarceration grounded in the guidelines and

precedent would provide adequate deterrence. First, there is no reason to believe Mr. Littlejohn is

personally at risk of breaking the law in the future. Other than the unlawful disclosures at issue in

this case, which took place during an incredibly difficult and emotional period in his life, Mr.

Littlejohn has lived a law-abiding and community-focused life. Many friends shared their belief

in Mr. Littlejohn's redemption, including longtime friend ██████████

> *I hope for a future where Chaz can rebuild his life and continue contributing*
> *positively to society, as I know he is capable. His actions, though legally wrong,*
> *were not driven by personal gain, but by a desire to do what he believed was right.*
> *It is my sincere belief that Chaz can learn from this experience and emerge as an*
> *even more valuable member of our community.*

██████ Letter, attached hereto as part of Exhibit A.

    In addition to any term of punishment this Court may impose, the highly publicized nature

of this case has already led to significant and lasting consequences for Mr. Littlejohn, his family

and friends.  It has also sent a strong message of general deterrence to the greater public.  Mr.

Littlejohn's name, photograph, and personal details have appeared in virtually every form of news

media.  Journalists have shown up at his house and published information about his family.  At

least one major news network has repeatedly aired a conspiracy theory about the case, including

multiple false claims about Mr. Littlejohn.  Comments to many of the online news articles include

violent threats against Mr. Littlejohn, including that he should be burned alive or publicly hanged.

The extent and nature of the media coverage, regardless of Court's sentence, has already sent a

strong and very public message of deterrence.[9]

The third purpose of federal sentencing is "to protect the public from further crimes of the

defendant."  We respectfully submit that neither the public nor the government require further

protection from Mr. Littlejohn.  To begin with, he will never again have access to tax records, or

any other confidential government information.    Moreover, his personal history and

characteristics, coupled with the manner in which he assisted the government's investigation,

demonstrate that Mr. Littlejohn is ordinarily a conscientious and law-abiding citizen and will not

recidivate.

As ██████ wrote to the Court:

> [I]n all my discussions with him, Charles has been upfront about what he did, clear
> that what he did was wrong, has been very concerned about and apologized for the
> harm his actions have caused others, and has not blamed others or tried to deflect
> blame in any way from himself.  I think it is very clear to Mr. Littlejohn that this is
> a pivotal moment in his life — I think, too, he recognizes that, as a result of his
> actions, his life has changed forever.

██████ Letter, attached hereto as part of Exhibit A.

---

[9]    *See* Symposium, U.S.S.C., Federal Sentencing Policy for Economic Crimes and New Technology Offenses,
Plenary Session I, "What Social Science Can Contribute to Sentencing Policy for Economic Crimes," at 22 (Oct. 12,
2000) ("One consistent finding in the deterrent literature is that the certainty rather than the severity of punishment
seems to be the most effective deterrent."), *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-
publications/research-projects-and-surveys/economic-crimes/20001012-symposium/cPlenaryI.pdf.

The fourth purpose of federal sentencing is "to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner." Mr. Littlejohn does not currently need any specific training, medical care, or treatment. That said, he is committed to use his incarceration to better himself and give back to others.

In the words of Mr. Littlejohn's best friend:

> *I acknowledge the necessity of accountability, but I am deeply concerned about the impact of his absence on his partner* ▮▮▮▮, *as well as his parents and family. I will also be selfish enough to include myself; not only is he my business partner, he is also my best friend. The weight of this situation extends far beyond Chaz and places an immense burden on those closest to him. Chaz and* ▮▮▮▮ *want to have children together, and a long prison sentence would diminish their chances of doing so. I know that Chaz has remorse for his actions and how they've impacted the victims as well as those in his own life. Your Honor, I respectfully ask you to consider Chaz's moral character, the circumstances that have shaped him and his choices, and the broader impact of your decision.*

▮▮▮▮▮▮ Letter, attached hereto as part of Exhibit A.

## III.    CONCLUSION

For the foregoing reasons and any others that may appear to the Court or that may develop at the sentencing hearing, Charles Littlejohn humbly requests that this Court impose a Guidelines sentence with a two- to four-level upward departure.

Date:  January 17, 2024

Respectfully submitted,

/s/ _____
Lisa Manning
Noah Cherry
Schertler Onorato Mead & Sears, LLP
555 13th Street, N.W.
Suite 500 West
Washington, DC  20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177
lmanning@schertlerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of January, 2024, I electronically filed a true copy of the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties.

/s/ _____
Lisa Manning
SCHERTLER ONORATO MEAD & SEARS, LLP
555 13th Street, N.W.
Suite 500 West
Washington, DC  20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177
lmanning@schertlerlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Case No: 1:23-CR-00343-ACR** |
| **v.** ) | |
| ) | **The Hon. Ana C. Reyes** |
| **CHARLES EDWARD LITTLEJOHN,** ) | |
| ) | **Sentencing Date: January 29, 2024** |
| **Defendant.** ) | |

## DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY

Charles Littlejohn, through undersigned counsel, respectfully submits notice to the Court of the recent (January 26, 2024) sentences in *United States v. Sonal Patel*, 1:19-cr-00081-RDM (D.D.C.) and *United States v. Charles K. Edwards et al.*, 1:20-cr-00066-RDM (D.D.C.), related cases involving the theft, for personal gain, of three sensitive government databases by employees of the Department of Homeland Security Office of Inspector General, and disclosure of those databases (including law enforcement files and the personal identifying information of over 200,000 federal employees) to third parties overseas. *See* DOJ Press Release, *Former Federal Employees Sentenced for Conspiracy to Steal Proprietary U.S. Government Software and Databases* (Jan. 26, 2024), attached hereto as Exhibit A. *See also U.S. v. Edwards* Docket, attached hereto as Exhibit B; *U.S. v. Edwards* Indictment, attached hereto as Exhibit C; and Government Sentencing Memoranda for Defendants Edwards, Patel, and Venkata, attached hereto as Exhibits D – F, respectively.[1]

---

[1]    Due to the recency of the Sentencing Hearings, the Judgment and Commitment Orders have not yet been entered on the case dockets.

Mr. Littlejohn respectfully submits the *Patel* and *Edwards* cases for the Court's consideration at his sentencing of the appropriate upward departure based on volume of records under USSG §2H3.1, App. Note 5 and of the need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6).

Date:  January 27, 2024                    Respectfully submitted,

                                           /s/ _____
                                           Lisa Manning
                                           Noah Cherry
                                           SCHERTLER ONORATO MEAD & SEARS, LLP
                                           555 13th Street, N.W.
                                           Suite 500 West
                                           Washington, DC 20004
                                           Telephone: (202) 628-4199
                                           Facsimile: (202) 628-4177
                                           lmanning@schertlerlaw.com

2

**A124**

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of January, 2024, I electronically filed a true copy of the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties.

/s/ _____

Lisa Manning
SCHERTLER ONORATO MEAD & SEARS, LLP
555 13th Street, N.W.
Suite 500 West
Washington, DC 20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177
lmanning@schertlerlaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Number: 1:23-cr-343 |
| v. | ) | |
| | ) | |
| CHARLES EDWARD LITTLEJOHN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## NOTICE OF SUPPLEMENTAL AUTHORITY

The United States respectfully submits this response to Defendant's notice of supplemental authority concerning a recent set of sentences in this district arising from an investigation into the theft of certain proprietary government software and databases. *See United States v. Charles Edwards and Murali Venkata*, No. 20-CR-66-RDM (D.D.C.); *United States v. Sonal Patel*, No. 19-CR-81-RDM (D.D.C.). Defendant Charles Littlejohn's leak to national media outlets of thousands of individuals' tax returns to further his own political and policy agenda bears little resemblance to the theft of proprietary government software incidentally involving employees' personally identifiable information at issue in the *Edwards*, *Patel*, and *Venkata* cases, and the Court should not rely on those cases in fashioning an appropriate sentence for Defendant.

Edwards, Patel, and Venkata engaged in a scheme to steal proprietary government software and databases containing sensitive law enforcement information and the personally identifying information of federal employees. Edwards, who had previously served as the Acting Inspector General of the Department of Homeland Security's Office of Inspector General ("DHS-OIG"), sought to develop software that he could market to Offices of Inspector General across the federal government for profit. Because—having left government—he no longer had access to DHS-OIG's

systems and because he lacked technical expertise, he enlisted the assistance of Patel (a supervisor in the Information Technology office at DHS-OIG) and Venkata (an Information Technology employee whom Patel supervised) to copy certain proprietary software and databases held by DHS-OIG to help formulate his new product. The stolen databases included personally identifiable information ("PII") associated with over 200,000 federal employees. Edwards hired software developers in India to build his commercial software product and granted them access to the stolen DHS-OIG software and databases so that they could use it as a model.

Edwards pleaded guilty to conspiracy to commit theft of government property and to defraud the United States (18 U.S.C. § 371) and to theft of government property (18 U.S.C. § 641). Patel pleaded guilty to a single count of conspiracy to commit theft of government property (18 U.S.C. § 371). Both Edwards and Patel testified against Venkata—the lowest ranking member of the conspiracy—at a trial during which Venkata was convicted of conspiracy to commit theft of government property and to defraud the United States (18 U.S.C. § 371); theft of government property (18 U.S.C. § 641); wire fraud (18 U.S.C. § 1343); and destruction of records (18 U.S.C. § 1519). On January 26, 2024, Judge Randolph D. Moss sentenced Edwards to one year and six months in prison followed by two years of supervised release; Patel to two years of probation with the first year as home incarceration and a $40,000 fine; and Venkata to four months in prison followed by two years of supervised release, with the first eight months as home incarceration.

Littlejohn's criminal activity bears almost no resemblance to the crimes committed in the DHS-OIG matter. First, Littlejohn stole thousands of individuals' tax returns and tax information for the purpose of publicizing that information in service of his own political agenda. He fully understood, indeed intended, that his disclosures would damage his victims' reputations and hoped that such reputational damage would affect our nation's political process. By contrast, although

Edwards, Patel, and Venkata granted the Indian developers access to the stolen databases containing PII, the actual identities of the individuals whose PII was provided were irrelevant: the defendants did not intend for those individuals to be unmasked or for their information to be publicized or further disseminated and there was no evidence that it in fact was. Their use of PII, although reckless, was ancillary to their scheme to develop a commercial software product and market it to government agencies. In fact, the government ultimately voluntarily dismissed an aggravated identity theft charge in the *Venkata* case in light of *Dubin v. United States*, 599 U.S. 110 (2023) (holding that the aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1), "is violated when the defendant's misuse of another person's means of identification is at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature of a billing method"). Second, as Littlejohn surely foresaw, his disclosures caused immense shame and embarrassment to, as well as risked potential physical violence for, his victims, some of whom have received threats. In the DHS-OIG case, although the conspirators exposed numerous individuals to a risk of harm such as identity theft, there was no evidence that any of the victims suffered an analogous degree of actual harm. Finally, Littlejohn—unlike Edwards or Patel—did not cooperate with the government by testifying against any co-conspirators or obtain a downward departure pursuant to U.S. Sentencing Guideline § 5K1.1; and unlike Patel or Venkata, Littlejohn was the engineer of his disclosure scheme.

For the foregoing reasons, the United States submits that the *Edwards*, *Patel*, and *Venkata* sentences should have no bearing on the Court's sentence in this matter.

Respectfully submitted,

Dated: January 28, 2024

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice


BY:
/s/ Jonathan E. Jacobson
JENNIFER A. CLARKE
Deputy Chief
JONATHAN E. JACOBSON
Trial Attorney
Public Integrity Section
United States Department of Justice
1301 New York Avenue, NW
Washington, DC 20530
Telephone: (202) 514-1412

4

**A129**

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of January 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to all attorneys of record.

/s/ Jonathan E. Jacobson
Jonathan E. Jacobson
Trial Attorney, Public Integrity Section
U.S. Department of Justice
1301 New York Ave. NW, 10th Fl.
Washington, DC 20530
Tel: 202-514-1412
Email: Jonathan.Jacobson@usdoj.gov

# UNITED STATES DISTRICT COURT

District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>CHARLES EDWARD LITTLEJOHN | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: 23-cr-343-ACR-<br>USM Number: 96530510<br><br>Lisa Manning & Noah Cherry<br>Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)   One of the Information on 10/12/2023.

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 26 USC § 7213(a)(1) | Disclosure of Tax Return and Return Information | 11/30/2020 | 1 |

The defendant is sentenced as provided in pages 2 through ____7____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

1/29/2024

Date of Imposition of Judgment

Signature of Judge

Ana C. Reyes, U. S. District Judge

Name and Title of Judge

1/31/24

Date

**A131**

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page    2    of    7

DEFENDANT:   CHARLES EDWARD LITTLEJOHN
CASE NUMBER:   23-cr-343-ACR-

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Sixty (60) Months on Count 1.

☑ The court makes the following recommendations to the Bureau of Prisons:
**The Court recommends that (1) the defendant be designated to SCP Marion, the minimum security satellite camp to USP Marion (SCP Marion, USP Marion Satellite Camp, 4500 Prison Road, Marion, IL 62959); and (2) that the defendant participate in the Federal Prisons Industries Program. Defendant has provided the Court with an address for his release residence in St. Louis, MO.**

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ ☐ a.m. ☐ p.m.  on _____

  ☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before 2 p.m. on _____

  ☐ as notified by the United States Marshal.

  ☑ as notified by the Probation or Pretrial Services Office. The defendant is approved to surrender for service of sentence after 4/30/2024.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**A132**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | Judgment—Page | 3 | of | 7 |

DEFENDANT:   CHARLES EDWARD LITTLEJOHN
CASE NUMBER:   23-cr-343-ACR-

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Thirty-six (36) Months on Count 1.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**A133**

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

| | | Judgment—Page | 4 | of | 7 |

DEFENDANT: CHARLES EDWARD LITTLEJOHN
CASE NUMBER: 23-cr-343-ACR-

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

**A134**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                Sheet 3B — Supervised Release

Judgment—Page   5   of    7

DEFENDANT:  CHARLES EDWARD LITTLEJOHN
CASE NUMBER:  23-cr-343-ACR-

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant must not engage in an occupation, business, profession, or volunteer activity that would require or enable him to access restricted information without the permission of the probation officer.

The defendant must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) he uses.

The defendant must submit his computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search. The defendant must warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition. A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. Any search will be conducted at a reasonable time and in a reasonable manner

The defendant must provide the probation officer with access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the United States Attorney's Office.

The defendant must complete 300 hours of community service. The probation officer will supervise the participation in the program by approving the program.

Pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A) and (B), the Preliminary Forfeiture Order issued on 1/5/2024 is now final and will be made a part of the sentencing and judgment.

The Probation Office shall release the presentence investigation report to all appropriate agencies, which includes the United States Probation Office in the approved district of residence, in order to execute the sentence of the Court. Treatment agencies shall return the presentence report to the Probation Office upon the defendant's completion or termination from treatment.

**A135**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page  6  of  7

DEFENDANT: CHARLES EDWARD LITTLEJOHN
CASE NUMBER: 23-cr-343-ACR-

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 5,000.00 | $ 0.00 | $ 0.00 |

☐   The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $          0.00 | $          0.00 | |

☐   Restitution amount ordered pursuant to plea agreement  $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐   the interest requirement is waived for the   ☐  fine   ☐  restitution.

☐   the interest requirement for the   ☐  fine   ☐  restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**A136**

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 5A — Criminal Monetary Penalties

Judgment—Page   7   of   7

DEFENDANT:  CHARLES EDWARD LITTLEJOHN
CASE NUMBER:  23-cr-343-ACR-

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

The financial obligations are immediately payable to the Clerk of the Court for the U.S. District Court, 333 Constitution Ave NW, Washington, DC 20001. Within 30 days of any change of address, you shall notify the Clerk of the Court of the change until such time as the financial obligation is paid in full.

The defendant must pay the balance of any fine within 90 days of this judgment

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

              Plaintiff,

v.

CHARLES EDWARD LITTLEJOHN,

              Defendant.

Case No. 1:23-cr-00343-ACR

**PRELIMINARY ORDER
OF FORFEITURE**

Based on the United States' motion for a Preliminary Order of Forfeiture; on the Information and the Plea Agreement entered into between the United States and Defendant Charles Edward Littlejohn; and on the Court having found that certain property is subject to forfeiture pursuant to 26 U.S.C. § 7302 in conjunction with 28 U.S.C. § 2461(c), and that the government has established the requisite nexus between such property and the offense to which the Defendant has been found guilty,

IT IS HEREBY ORDERED that:

1.    The United States' Motion for a Preliminary Order of Forfeiture [Docket No. 17] is **GRANTED;**

2.    The following property is forfeited to the United States pursuant to 26 U.S.C. § 7302 in conjunction with 28 U.S.C. § 2461(c):

    a.  Apple iPod Nano, serial number DCYG53XQDDVX (silver);

    b.  Lenovo ThinkPad X1 Carbon Gen 8 laptop computer, serial number PF-2C4MK8;

    c.  Lenovo ThinkPad X201 laptop computer, serial number R9-5KB1B;

    d.  IBM ThinkPad, serial number L302F9X;

**A138**

    e.   Western Digital external hard drive, serial number WXE208808821;

    f.   Silver USB flash drive located inside the lining of a wooden leather box containing an ornamental camel;

    g.   Black and red USB flash drive, with serial number BM180826162B;

    h.   Proton Mail account "██████████[@]protonmail.com";

    i.   DigitalOcean account associated with organization ID 1736078

    j.   Apple iCloud account with Directory Services Identifier 113206212;

    k.   Twitter account "██████████"; and

    l.   Dropbox account "██████████[@]gmail.com (together, "the Property");

3.      The United States may seize and maintain custody and control of the Property pending the entry of a Final Order of Forfeiture;

4.      The United States shall, pursuant to 21 U.S.C. § 853(n)(1), as incorporated by 28 U.S.C. § 2461(c), publish and give notice of this Order and its intent to dispose of the Property in such manner as the Attorney General or his designee may direct;

5.      Pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B), this Preliminary Order of Forfeiture shall become final as to the defendant at the time of sentencing, and shall be made a part of the sentence and included in the judgment;

6.      Following the Court's disposition of all petitions filed pursuant to 21 U.S.C. § 853(n)(2) or, if no petitions are filed, following the expiration of the time period specified within which to file such petitions, the United States shall have clear title to the Property and may warrant good title to any subsequent purchaser or transferee; and

7.    This Court shall retain jurisdiction to enforce this Order, and to amend it as necessary pursuant to Fed. R. Crim. P. 32.2(e).

Date: January 5, 2024

_____
ANA C. REYES
United States District Judge

1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA

2

3   UNITED STATES OF AMERICA,      ) CRIMINAL ACTION NO.:
                                    ) 23-343-ACR
4           Plaintiff,             )
        vs.                        )
5                                  )
    CHARLES EDWARD LITTLEJOHN,      ) Washington, D.C.
6                                  ) January 29, 2023
            Defendant.             ) 10:00 a.m.
7   _____)

8

                TRANSCRIPT OF SENTENCING HEARING
9            BEFORE THE HONORABLE ANA C. REYES
               UNITED STATES DISTRICT JUDGE

10

11  APPEARANCES:

12  For the Government:  Jonathan E. Jacobson, Esquire
                         Jennifer A. Clarke, Esquire
13                       U.S. Department of Justice
                         Public Integrity Section
14                       1331 F St. NW
                         Ste 3rd Floor
15                       Washington, DC 20004

16  For the Defendant:   Lisa Manning, Esquire
                         Noah Cherry, Esquire
17                       Schertler, Onorato, Mead & Sears, LLP
                         555 13th Street, N.W.
18                       Suite 500 West
                         Washington, DC 20004

19

20  Also Present:        Andre Wilson, U.S. Probation

21  Reported by:         Christine T. Asif, RPR, FCRR
                         Official Court Reporter
22                       United States District Court
                         for the District of Columbia
23                       333 Contitution Avenue, NW
                         Washington, D.C., 20001
24                       (202) 354-3247

25  Proceedings recorded by machine shorthand; transcript produced
    by computer-aided transcription

```
 1                   P R O C E E D I N G S
 2            THE CLERK:  This is criminal action 23-343, United
 3     States of America versus Charles Edward Littlejohn.
 4            Would the parties please come forward and identify
 5     themselves for the record.
 6            MR. JACOBSON:  Good morning, Your Honor.  Jonathan
 7     Jacobson for the United States.
 8            THE COURT:  Good morning, sir.
 9            MS. MANNING:  Good morning, Your Honor.  Lisa
10     Manning and Noah Cherry on behalf of Mr. Littlejohn.
11            THE COURT:  Good morning, ma'am.
12            MS. CLARKE:  Jennifer Clarke, United States as well
13     and with us at table is Cole Ashcraft with TIGTA.
14            THE COURT:  I'm sorry, I didn't grab your name.
15            MS. CLARKE:  Jennifer Clarke.
16            THE COURT:  Okay.  Good morning, ma'am.
17            MS. CLARKE:  Good morning.
18            THE COURT:  We are here for the sentencing of the
19     defendant --
20            THE CLERK:  One more, Your Honor.
21            THE COURT:  Oh.
22            MR. WILSON:  Good morning, Your Honor.  Andre Wilson
23     from probation.
24            THE COURT:  Thank you.  I'm sorry, Mr. Wilson.
25            We are here for the sentencing of the defendant
```

3

1    Charles Littlejohn, who has pled guilty to unauthorized

2    disclosure of tax returns and return information in violation

3    of Title 18, Section 7213(a)(1) of the United States Code.

4              Mr. Littlejohn, I never quite know how to start

5    sentencing proceedings, because typically I would say good

6    morning, but I know that this is not a good morning for you.

7    I know that this may well be the worst morning of your life or

8    one of them.  And I want you to know that I know that and I'm

9    sympathetic to it.  And the courtroom is packed.  You have the

10   worst seat in the house and I am sorry for that.

11             I wish more than you can possibly know that we were

12   meeting under different circumstances, because I have read the

13   29 letters from your friends and family.  And they uniformly

14   speak to a person of immense intelligence, deep caring, and

15   unwavering loyalty.  And I think anyone who has read those

16   letters knows that to call you a friend is a privilege.  And

17   I've already handled enough sentencings to know that you can

18   be an upstanding person and commit bad acts, even colossally

19   bad acts.  Unfortunately, those two things are not mutually

20   exclusive.  If they are we wouldn't be here today.

21             And I'm saying this all up front because at this

22   hearing we will be spending quite a long time dissecting your

23   failures.  And I have to do that because in this country, in

24   order to take away someone's liberty, a judge like me is

25   required, thankfully, to set forth all of the reasons for her

1   decisions.  And that is important because we require full

2   transparency, again, before taking away someone's liberty.

3         And somehow we've gotten to a point in our society

4   in which someone as intelligent and law abiding as you,

5   thought it was not only acceptable, but a moral imperative to

6   break the law to target the sitting President of the United

7   States and a thousand other Americans.  And to have the frank

8   and thorough discussion we need to have to address fully what

9   occurred, I will need to use stark and harsh language.

10  Language I won't be able to cushion to spare your feelings or

11  that of you and your friends and family.  And let me say right

12  now if I could do it differently, I would.

13        And I realize that this might not provide you with

14  much solace, but I want you to know that I have studied and

15  thought and struggled deeply about your sentence.  And there

16  have been very few days since I took your plea that I have not

17  thought about your sentence in some way.  Yesterday I brought

18  my laptop and all of my papers in here and I sat at defense

19  table.  And I sat in the seat that you're sitting in right now

20  to do my final preparation.  And I worked there in particular

21  to make it impossible for me to forget that I'm going to be

22  responsible today for taking away someone's liberty, someone

23  with friends and family who love him.  Someone who has

24  repeatedly answered the call to help others and someone whose

25  actions were guided, however misguided the thought was, by a

1       genuine belief of doing the right thing.

2               Today, however, I am of course in a different chair.

3       And my responsibility today is to the oath I took to support

4       and defend the Constitution of the United States against all

5       enemies foreign and domestic, because let me be absolutely

6       clear, what you did in targeting the sitting President of the

7       United States was an attack on our constitutional democracy.

8       And whatever the motivation, I have to punish it with a

9       firmness of purpose that such an attack demands.

10              All right.  So before we continue a housekeeping

11      matter, I want to briefly address an issue that arose last

12      week.  On January 23rd, 2024, my chambers received via email a

13      letter from the Republican members of the U.S. House of

14      Representatives Committee on Ways and Means.  I read the

15      letter the same day and via my clerk told the signatories that

16      I was carefully considering the information and thanking them

17      for their time.  The next day via email, Mr. Littlejohn's

18      counsel objected to the Court's consideration of this letter

19      and any similar letters, because the members are neither

20      parties in the case nor victims.

21              I disagree.  The Supreme Court has made clear that

22      both Congress and the Sentencing Commission have expressly

23      preserved the traditional discretion of sentencing courts to,

24      quote, conduct an inquiry broad in scope, largely unlimited,

25      either as to the kind of information they may consider or the

1    source from which it may come.  *Pepper v. U.S.* 562 U.S. 476,

2    489 to 11, *U.S. v. Tucker* 404 U.S. 443-446, 1972.

3        Also, nothing in the letter prejudices

4    Mr. Littlejohn's preparation for today's hearing.  It does not

5    contain any new information not already available and

6    indisputably properly before me in the record.  And while the

7    letter does reflect the unremarkable fact that certain members

8    of Congress feel strongly about what sentence I should impose

9    today, that fact has zero impact on me or my decision.

10       There are two side effects of the letter, I should

11   tell people about.  It reminded me that there's a Ways and

12   Means episode of the *West Wing*, which as I recalled was quite

13   good.  So I rewatched it as I unwound one night last week.  It

14   was not helpful to do that because coincidentally it starts

15   off with an outside shot of this very courthouse.  It also

16   gives me an excuse to mention that for those who are

17   interested in how we got to an income tax, including its

18   introduction during the civil war, its affects on that war's

19   outcome, I highly recommend to you a recent book by Roger

20   Lowenstein entitled:  *Ways and Means, Lincoln and His Cabinet*

21   *and the Financing of the Civil War.*  All that aside and for

22   the avoidance of any doubt, the Court has not and will not

23   base any part of its sentencing decision on the January 23rd,

24   2024 letter.

25       Turning to the materials I have reviewed.  I have

1    reviewed -- received and reviewed the presentence report and

2    sentencing recommendation from the probation department.  And

3    the following documents submitted by counsel in advance of the

4    hearing:  The plea agreement and statement of offense signed

5    by Mr. Littlejohn.  Sentencing memorandum from the government

6    and from Mr. Littlejohn, including letters and articles in

7    support.  Six victim impact statements filed under seal by the

8    government.  I am going to be reading from some of those today

9    and the government has indicated it has no objection to that.

10   I will, of course, not use any identifying information.  The

11   notice of supplemental authority by Mr. Littlejohn filed on

12   Saturday and the response by the government filed on Sunday.

13        I also want to briefly address another issue that

14   arose over the weekend.  On Saturday I emailed the parties to

15   be prepared to address today at this hearing a certain legal

16   question.  And I attached -- or my clerk attached three cases

17   for the parties to discuss at the hearing.  Yesterday, the

18   government filed a short brief addressing the question.  I

19   have not reviewed that brief because I did not authorize a

20   filing.  I made it clear in my email to be prepared to discuss

21   the issue today only.  And I'm not averse, Mr. Jacobson, to

22   reading more paper, but doing so would be unfair to Ms.

23   Manning who abided by my instructions.  I, therefore, order

24   the clerk of the Court to strike the filing, docket 32.  And,

25   Mr. Jacobson, you can of course make the arguments you made

1    there today.

2            All right.  Let me start with the presentence

3    report.  Probation filed the final presentence report and

4    sentencing recommendation in this matter on January 22nd,

5    2024.

6            To the government, does the government have any

7    objection to any of the factual determinations set forth in

8    the presentence report?

9            MR. JACOBSON:  No, we do not, Your Honor.

10           THE COURT:  Are you expecting an evidentiary hearing

11    or do you have any witnesses present in the courtroom?

12           MR. JACOBSON:  Your Honor, there are at least -- at

13    least one victim is present in the courtroom, but we're not

14    anticipating calling any witnesses at sentencing.

15           THE COURT:  All right.  Mr. Littlejohn, are you

16    fully satisfied with your attorney in this case?

17           THE DEFENDANT:  I am, Your Honor.

18           THE COURT:  As well you should be.  She has done a

19    terrific job on your behalf.

20           THE DEFENDANT:  I agree.

21           THE COURT:  Do you feel that you have had enough

22    time to talk with her about the probation department's

23    presentence report and the papers filed by the government in

24    connection with the sentencing?

25           THE DEFENDANT:  I do, Your Honor.

```
 1              THE COURT:  Ms. Manning, have you and your client
 2    read and discussed this presentence report?
 3              MS. MANNING:  We have, Your Honor.
 4              THE COURT:  Do you have any objections to the
 5    presentence report?
 6              MS. MANNING:  No, Your Honor.
 7              THE COURT:  Are there any disputed issues of fact?
 8              MS. MANNING:  No, Your Honor.
 9              THE COURT:  All right.  Could you please, Ms.
10    Manning, also confirm for the record that there are no
11    objections to paragraph 16 of the report, in particular to the
12    part that says, "In 2017 Defendant Littlejohn sought
13    employment with Company A for a third time.  He acknowledged
14    that one of the reasons he decided to reapply to Company A was
15    the possibility of being signed to a project that might allow
16    him with access to taxpayer information for then President
17    Donald Trump, who he viewed as, quote, dangerous and a threat
18    to democracy, end quote, which he could then provide to the
19    media."
20              MS. MANNING:  No objection, Your Honor.
21              THE COURT:  All right.  Thank you.
22              Hearing no objection, I will accept the factual
23    recitation in the presentence report regarding the
24    circumstances of the offense.  And, therefore, the facts as
25    stated in the presentence report will be my findings of fact
```

1    for the purpose of this sentence.

2              The presentence report lays out the probation

3    office's calculation of the initial advisory guideline range

4    that applies in this case.  This calculation was done using

5    the 2023 guidelines manual and is as follows:  Beginning with

6    the offense level, the applicable guideline in this case is

7    U.S.S.G. 2H3.1, which has a base offense level of 9.  A

8    two-level increase applies for Mr. Littlejohn's role in the

9    offense under U.S.S.G. 3B1.3, because he used in his

10   position -- he used his position of trust with Company A,

11   which provided access to IRS taxpayer data, and knowledge of

12   IRS security procedures to access unmasked taxpayer data and

13   download the data for dissemination to the public.

14             The parties have stipulated that a two-level

15   increase applies for obstruction of justice under Section

16   3C1.1 because Mr. Littlejohn willfully obstructed or impeded,

17   or attempted to obstruct or impede the administration of

18   justice with respect to the investigation, prosecution, or

19   sentencing of the instant offense of conviction, and the

20   obstructive conduct related to the defendant's offense of

21   conviction and any relevant conduct.  That brings

22   Mr. Littlejohn's adjusted offense level to 13 before two

23   additional adjustments are applied.

24             First, Mr. Littlejohn meets the criteria for an

25   adjustment under Section 4C1.1 so, therefore, a two-level

1   decrease applies.  Second, Mr. Littlejohn has clearly

2   demonstrated acceptance of responsibility for the offense.

3   Accordingly, the offense level is further decreased by two

4   levels under Section 3E1.1(a).

5         Specifically, I note that as the presentence report

6   quoting defense counsel's statement explains, quote,

7   Mr. Littlejohn has cooperated with the government's

8   investigation and agreed to plead guilty prior to the

9   expiration of the statute of limitations for the offense.  He

10  voluntarily sat for two proffers with the Department of

11  Justice Public Integrity Section and TIGTA agents, and

12  provided additional information to the government through

13  counsel.

14        Mr. Littlejohn has taken responsibility for his

15  conduct, assisted with the discovery of additional evidence,

16  and shared information with the government with the aim of

17  preventing future breaches of IRS databases.  In addition to

18  providing factual and highly technical proffers to the

19  government, Mr. Littlejohn shared with TIGTA ways in which the

20  IRS could detect and deter future thefts and illegal

21  disclosures of IRS data, end quote.  Therefore, prior to

22  considering any departures or variances Mr. Littlejohn's total

23  offense level is 9.

24        Are there any objections to the calculation of the

25  offense level, Mr. Jacobson?

```
1              MR. JACOBSON:  No, Your Honor.

2              THE COURT:  Ms. Manning?

3              MS. MANNING:  No, Your Honor.

4              THE COURT:  Turning to the applicable Criminal

5    History Category, the presentence report has found that

6    Mr. Littlejohn has a Criminal History Category of zero and,

7    therefore, is being designated in Criminal History Category I.

8              Any objections?

9              MR. JACOBSON:  No, Your Honor.

10             MS. MANNING:  No, Your Honor.

11             THE COURT:  Based on the offense level and Criminal

12   History Category I, I have just discussed, the presentence

13   report calculates the initial advisory guidelines range to be

14   four to ten months of imprisonment.

15             Having determined the applicable guidelines range

16   the next step for me is to consider departures.  The

17   government seeks a upward departure pursuant to Application

18   Note 5 of U.S.S.G. 2H3.1.  That note states that there are

19   certain examples in cases in which an upward departure may be

20   warranted.  And that can include that the offense level

21   involved personal information, means of identification,

22   confidential phone records information, or tax return

23   information of a substantial number of individuals.  And that

24   the offense caused or risked substantial non-monetary harm to

25   individuals whose private or protected information was
```

1    obtained.  Mr. Littlejohn concedes that a two- to four-level

2    upward departure is appropriate under Application Note 5,

3    Section 2H3.1 because its disclosures involved, quote, tax

4    return information of a substantial number of individuals,

5    docket 25 at 1 and 5.

6          Ms. Manning, am I correct that Mr. Littlejohn

7    concedes up to a four-level departure to offense level 13 is

8    appropriate here?

9          MS. MANNING:  Yes, Your Honor.

10          THE COURT:  All right.  That would establish a final

11    advisory guideline range of 12 to 18 months of imprisonment.

12    I will impose, as Mr. Littlejohn concedes is appropriate here,

13    a four-level upward departure from offense level 9 to offense

14    level 13 for the following reasons under Application Note 5 of

15    2H3.1.  The offense covered personal information and tax

16    return information of a substantial number of individuals,

17    over a thousand.  The offense, of course, caused or risked

18    substantial non-monetary harm and resulted in a substantial

19    invasion of privacy.

20          As one victim wrote in an impact victim statement to

21    me, quote, the information and data in one's tax filings are

22    deeply private and profoundly personal, it is not just dollars

23    and cents.  It included my home address, Social Security

24    number, driver's license number, banking and financial data,

25    and certain health data.  And not just mine, that of my wife

1    and children.

2           Our privacy was not only violated by the stealing of

3    the information and the publishing of the information, but

4    also by the unscrupulous journalist who used the information

5    to harass me and my family.  Specifically, they trespassed on

6    my property, left threatening notes on my doorstep and

7    intimidated my wife.  Cars were lined up outside of our home

8    day and night, end quote.

9           Mr. Littlejohn targeted and violated the rights of

10   victims by invading their privacy.  Those victims were

11   wealthy.  And the wealthy and poor alike are entitled to equal

12   protection of our laws, laws that guarantee Americans their

13   sensitive tax data will not be disclosed.  Indeed, when

14   accepting this position I took an oath to, quote, do equal

15   right to the poor and to the rich, end quote.  And to be sure,

16   as applied, that usually means that the poor should not be

17   treated any worse because they do not have means.  But it

18   works both ways.  The wealthy are no less entitled to privacy

19   than other Americans.  They are no less hurt by its intrusions

20   than other Americans.  And as victims they are no less

21   entitled to my consideration of their harm than other

22   Americans.

23          Therefore, following the four-level upward departure

24   from offense level 9 to offense level 13, the final advisory

25   guideline range for Criminal History Category I is 12 to 18

months, increased from 4 to 10 months in the initial advisory
guideline range.

Prior to the upward departure, the applicable
guideline range was in Zone B of the sentencing table.  Under
Zone B the minimum term of imprisonment may be satisfied by
one, a sentence of imprisonment; two, a sentence of
imprisonment that includes a term of supervised release; or
three, a sentence of probation that includes a condition or
combination of conditions that substitute for confinement.

The Court also notes, as Mr. Littlejohn argues, that
if the offense is in Zone B, Application Note 10 provides that
if the defendant received an adjustment under 4C1.1, as
Mr. Littlejohn did, then quote, a sentence other than a
sentence of imprisonment is generally appropriate, end quote.

The four-level upward departure, however, removes
the offense to Zone C as in C.  under the guidelines because
the offense is in Zone C of the sentencing table, the minimum
term may be satisfied a sentence of imprisonment, a sentence
of imprisonment that includes a term of supervised release,
provided that at least one half of the minimum term is
satisfied by imprisonment.  And that's 5C1.1(d).

Are there any objections to the guidelines framework
and its calculation?

MR. JACOBSON:  No, Your Honor.

MS. MANNING:  No, Your Honor.

1          THE COURT:  All right.  Now, 18 U.S.C. 3553 requires

2     me to consider a variety of factors including the sentencing

3     range the guidelines proscribe, which I have just discussed

4     and will discuss in more detail below, and the applicable

5     penal statutes.

6          The charge of unauthorized disclosure carries a

7     statutory maximum of five years, that is 60 months of

8     imprisonment.  As set forth above, based on the calculations,

9     the resulting final guidelines imprisonment range is 12 to 18

10    months.

11         With respect to supervised release the Court may

12    impose a term of supervised release not more than three years.

13    The guideline range for a term of supervised release is 1 to 3

14    years.  If a sentence of imprisonment of one year or less is

15    imposed a term of supervised release is optional.  Supervised

16    release is required if the Court imposes a term of

17    imprisonment of more than one year or when required by

18    statute.

19         I further note that community service may be ordered

20    as a condition of supervised release, but that under the

21    guidelines it generally should not be imposed in excess of 400

22    hours.

23         With respect to probation the defendant is eligible

24    for not less than one nor more than five years of probation.

25    Under the guidelines, if probation is imposed, the term shall

```
1    be at least one year but not more than five years if the

2    offense level is 6 or greater as it is here.

3            The statute of conviction sets a maximum fine of up

4    to $5,000, which as the PSR notes, would make the guidelines

5    range between $2,000 and $5,000 at offense level 9, but

6    following the upward departure to offense level 13 the

7    statutory fine of $5,000 becomes the guidelines range.

8            Is there any objection to that calculation of the

9    guideline range of $5,000 for the fine level for offense level

10   13.

11           MR. JACOBSON:  I'm sorry, Your Honor, I'm just

12   looking at 5B1.2.  No, there's no objection.

13           MS. MANNING:  No objection, Your Honor.

14           THE COURT:  A special assessment of $100 per count

15   is mandatory.  In determining the fine amount the Court shall

16   consider among other factors the expected cost to the

17   government of any imprisonment, supervised release, or

18   probation component of the sentence.  The presentence report

19   states that pursuant to 18 U.S.C. 3663, and the guidelines,

20   restitution shall be ordered in this case.  To date, however,

21   no restitution requests have been received from the government

22   and, therefore, my understanding is that restitution is not

23   warranted in this case.

24           Mr. Jacobson, is that correct?

25           MR. JACOBSON:  Your Honor, we have not received
```

1   requests for restitution, so I believe Your Honor is

2   correct.

3           THE COURT:  All right.  Are there any objections to

4   the statutory and guidelines framework I have described above?

5           MR. JACOBSON:  None from the government.

6           MS. MANNING:  No, Your Honor.

7           THE COURT:  Before I discuss the other sentencing

8   factors that will bear on my final decision I will at this

9   point notify the parties of the sentence the probation office

10  has recommended, taking into account the guideline range, the

11  available sentencing, and all the factors of 3553(a).  The

12  recommendation is 18 months of incarceration, three years of

13  supervised release, and a $4,000 fine.  The recommendation of

14  probation office is not based on any facts or circumstances

15  that have not already been revealed to the parties in the

16  presentence report.

17          At this point I would love -- I would like to give

18  the opportunities -- the parties an opportunity to address the

19  Court.  Mr. Jacobson.

20          MR. JACOBSON:  Thank you, Your Honor.

21          THE COURT:  Mr. Jacobson, before you start, can you

22  explain the difference please between a plea reached on an

23  information and one reached after an indictment, and how that

24  difference might account for the single felony charge that we

25  see today.

1              MR. JACOBSON:  Well, Your Honor, a plea reached on

2      an information is usually the result of a negotiated

3      resolution between the parties, whereas a plea reached after

4      an indictment, frequently is a result of an inability or

5      unwillingness on the defendant to accept responsibility before

6      indictment.

7              THE COURT:  So it's possible that the government was

8      prepared to bring a number of counts against Mr. Littlejohn,

9      had he been -- had he forced you to go to indictment, but

10     because you were able to do all of that before he pled, all we

11     see today is the one count that he agreed to.

12             MR. JACOBSON:  That's correct, Your Honor.

13             THE COURT:  All right.  And you have asked that I

14     sentence Mr. Littlejohn to the statutory maximum penalty of 60

15     months in prison, but Mr. Littlejohn has accepted

16     responsibility, he has cooperated with the government, and he

17     has shown remorse.  And typically a sentencing judge takes

18     those factors into account in reducing a sentence, so what do

19     I do?

20             MR. JACOBSON:  Well, Your Honor, if I may be heard,

21     I think that generally my -- the explanation I intended to

22     give here today would be responsive to the question Your

23     Honor's asked.

24             THE COURT:  Okay.  Well, then I also want to know

25     what charges Mr. Littlejohn would have faced had he elected to

1    proceed to trial, and whether if convicted those crimes would

2    have involved additional potential sentencing exposure.

3            MR. JACOBSON:  Your Honor, because that event never

4    came to pass, the government did not reach a determination,

5    any kind of final determination about what charges would have

6    been brought in the absence of this information.

7            THE COURT:  But what would he have been exposed to?

8            MR. JACOBSON:  That would be a function of what the

9    charges would be and because we never ultimately --

10           THE COURT:  Well, Mr. Jacobson, I'm trying to help

11   you here.

12           MR. JACOBSON:  Sure.  I understand, Your Honor.

13           THE COURT:  I'm trying to figure out what sentence

14   he was facing had he gone to trial, versus what sentence he's

15   facing today, and if the fact his cooperation has already been

16   taken into account, because instead of facing whatever

17   sentence he would have faced he is now facing the five-year

18   maximum.

19           MR. JACOBSON:  Your Honor, I think it's fair to say

20   that facing that five-year maximum is a benefit that was

21   accorded to this defendant.

22           THE COURT:  Okay.  Well, explain that to me in

23   detail, not just tell me it's a benefit.  I need some actual

24   something.

25           MR. JACOBSON:  I understand, Your Honor.

```
 1             THE COURT:  And I'll let you proceed.

 2             MR. JACOBSON:  The concern that I have, Your Honor,

 3     is I can't get into internal deliberations --

 4             THE COURT:  No, I know you can't get into internal

 5     deliberations.  But we're dealing with someone who, by your

 6     own words, pulled off the biggest heist in IRS's history.  And

 7     I think -- I need know before I make a sentencing decision,

 8     and I think the public deserves to know why we're here and

 9     he's only facing one felony count.  And I'm giving you every

10     opportunity to make it clear to the public why that happened.

11     And you can do that, I am confident, without disclosing

12     confidential work product and without disclosing your plea

13     negotiation.  And I expect and hope that you're prepared to do

14     that today.

15             MR. JACOBSON:  I am, Your Honor.

16             THE COURT:  Okay.  Go ahead.

17             MR. JACOBSON:  So, Your Honor, ultimately this 7213

18     count, this 7213(a)(1) count was the most readily provable

19     felony that covered all of the defendant's conduct.  His

20     guidelines today would be the exact same whether we had

21     charged him with a thousand counts of 7213 or whether we had

22     charged --

23             THE COURT:  But it wouldn't be the same if you had

24     charged him with other counts.  I mean, he stole government

25     data.  That's not a disclosure count.  That's different than
```

1    the disclosure count.  I mean, DOJ prosecutors can get pretty

2    creative on what kind of counts to bring.  So that's really

3    what I'm looking at here.

4    MR. JACOBSON:  The core misconduct here, though,

5    Your Honor, is the theft and the disclosure of the tax

6    returns.

7    THE COURT:  Yeah, but the one you charged him on was

8    just on disclosure.  You have separate theft counts the

9    government can bring; right?

10    MR. JACOBSON:  You're talking about 18 U.S.C. 1641?

11    THE COURT:  I'm talking about any number of things

12    I'm confident the government can bring against someone who

13    steals government property.

14    MR. JACOBSON:  Your Honor, there may have been

15    hurdles to charging a 641 theft of government property count

16    here.

17    THE COURT:  I'm sorry, are you representing to me

18    that someone can steal thousands and thousands and thousands

19    of taxpayer information and the only count that the government

20    could possibly bring is a disclosure count, because I'm

21    confident that that's not the case.  And I'm not sure why

22    you're fighting me on this, I'm trying to help you.

23    MR. JACOBSON:  No, I understand, Your Honor.  I just

24    want to be clear -- I want to both be responsive to Your

25    Honor's questions, but also not get into the determinations

1   that were made internally within the Justice Department about

2   a charging decision in this case.  I can say, Your Honor,

3   though, that it is conceivable that additional charges could

4   have been brought.  Ultimately, we never reached a

5   determination about what those charges might have been because

6   we reached a negotiated resolution with Mr. Littlejohn.  But

7   at the end --

8           THE COURT:  I'm sorry, so you're telling me that

9   when you reached your decision you didn't even bother to

10  figure out what you could have brought?  I'm sure that's not

11  the case.

12          MR. JACOBSON:  Your Honor, we did consider

13  alternative charges, but because we never reached a

14  determination, there was never a moment where it was -- where

15  a decision was made, we absolutely can bring this count, this

16  count, this count, we've conducted the research, we've made a

17  determination that these charges are viable.  We ultimately,

18  Your Honor, did not get to that point.  But the bottom line is

19  that the conduct, the core misconduct here is the disclosure

20  of the tax returns.  And whether the government could have

21  been creative or risked, you know, taken -- rolled the dice on

22  charges that might not have been at the core of the

23  misconduct, that is a difficult question, Your Honor.  I'm not

24  prepared to talk about --

25          THE COURT:  Well, I suggest at some point, sir, you

1  become prepared to talk about it.  Because I -- the fact that

2  he did what he did and he is facing one felony count, I have

3  no words for.  And what I thought you were going to tell me

4  today is something a little bit more specific than what you

5  just told me.  That would make it make a little bit more

6  sense.  Go ahead.

7         MR. JACOBSON:  I understand Your Honor's concerns.

8  But ultimately the 7213, that is the misconduct --

9         THE COURT:  Well, then we're back to my initial

10  question then, which is if that is all he's going to be

11  charged with, if that's all he could possibly have been

12  charged with, how could I possibly give him 60 months?

13         MR. JACOBSON:  Because, Your Honor, among other

14  things the guidelines directly contemplate -- your Honor did

15  recognize that the guidelines recognize an enhancement is

16  appropriate when --

17         THE COURT:  How can I vary upwards without taking

18  into account he cooperated and give him something for that?

19         MR. JACOBSON:  Your Honor, I think a variance is

20  still appropriate -- an upward variance is still appropriate

21  here looking at the volume --

22         THE COURT:  I agree an upward variance is

23  appropriate.  My question is, how can I upward vary to 60

24  months if he's cooperated, and you're giving me literally

25  nothing else to say that he got a benefit already.

1          MR. JACOBSON:  Your Honor, I can explain to you why

2     we believe this case justifies an upward variance, but at the

3     end of the day, the government's charging decision here

4     yielded this one count.  And this one count covers the full

5     extent of the defendant's misconduct.  And with a statutory

6     cap of 60 months, that gives Your Honor space to give a

7     sentence that we believe is just here.  Whether we had brought

8     a thousand counts or one count, we would be standing up here

9     seeking the same 60 months.  So, ultimately, the outcome we

10    believe would be the same, whether we had brought additional

11    counts or not, in terms of our sentencing recommendation.

12    There's space here within the statutory maximum to achieve a

13    just outcome here.

14          So Your Honor, I want to start by talking about --

15    talking about this offense.  And just backing out at a high

16    level about what happened here.  The enormous magnitude of the

17    defendant's crime is unparalleled in the history of the

18    Internal Revenue Service.

19          THE COURT:  Which might account for the reason that

20    I'm questioning why he's being charged with one felony

21    count.

22          MR. JACOBSON:  Well, Your Honor, as --

23          THE COURT:  You don't have to repeat yourself.  I'm

24    just -- go ahead.

25          MR. JACOBSON:  Over the course of two years the

1    defendant, who's an experienced and successful professional,

2    was entrusted with access to Americans' unmasked taxpayer

3    data.  He repeatedly abused that trust by stealing and

4    disclosing thousands of citizens tax returns and return

5    information.  The disclosures were intended to damage his

6    victim's reputations and through that criminal damage he

7    sought to influence an election and to reshape our nation's

8    political discourse and political process.

9            Along the way he tried to cover his tracks by

10    destroying evidence and subverting the investigation that he

11    knew would follow his disclosures.  But he was unsuccessful

12    and he stands here today having committed again one of the

13    most serious crimes in the IRS's history.

14            The harm, it's worth noting, Your Honor, is also an

15    ongoing harm.  Even after the plea in this case, as Your Honor

16    is aware, there was an article that was published by one of

17    the news organizations that contained some of the information

18    the defendant had disclosed to that news organization.  But

19    the harm wasn't even limited to the victims whose data the

20    defendant stole.  The damage was more extensive.  All

21    Americans are obligated to provide an enormous amount of

22    financial information about their private lives to the IRS, to

23    the government.  And in exchange, in turn, what we expect from

24    the government, and what we expect from the IRS, is that they

25    will secure that data.  They will protect that data.  The

1    defendant's crime undermined that faith.  It undermined that

2    trust.

3            The crime justifies a significant sentence here, a

4    sentence that communicates to the public and that individuals

5    who weaponize their privileged access to private data for

6    their own personal political agendas, and to advance those

7    agendas, will face grave and serious consequences.  A 60-month

8    sentence here would send a message that no one is above the

9    law.  Whatever --

10           THE COURT:  If I give him 60 months and nothing off

11   for cooperation, won't it also send a message that if you

12   break the law, don't cooperate with the government, because

13   just roll the dice at trial, because you're only going to get

14   the maximum any way?

15           MR. JACOBSON:  Your Honor, I want to correct a mis-

16   -- a possible misimpression from -- that might have arisen

17   from the PSR and from the defendant's statements to probation.

18   The defendant's not getting a 5K.  He's not provided

19   substantial assistance within the meaning of the guidelines.

20   His cooperation is not cooperation within the meaning of the

21   guidelines.

22           THE COURT:  But it's cooperation.  I mean, you took

23   it, you didn't say to him we don't need your help.

24           MR. JACOBSON:  That's correct, Your Honor.  But what

25   he did was to help remediate the harm he caused.  It's not as

1    though he went out and assisted the government in prosecuting

2    numerous co-conspirators.  That's not what happened here, Your

3    Honor.  What he did was he accepted responsibilities for his

4    actions and he assisted in two proffers, Your Honor, and some

5    limited assistance locating some of the USB drives.  That's

6    the cooperation here.  It's two proffers, Your Honor.  So the

7    cooperation -- I don't want the Court to be under the

8    impression that this defendant should have gotten a 5K but

9    didn't.

10           THE COURT:  No, I understand the Sentencing

11   Guidelines.  Go ahead.

12           MR. JACOBSON:  Understood, Your Honor.  I just want

13   that to be clear.  His cooperation is cooperation within

14   colloquial parlance.  It's not cooperation within the meaning

15   of the guidelines.

16           I want to briefly highlight three points here, Your

17   Honor.  First, the sheer volume of the individuals who were

18   directly impacted by the defendant's disclosures, at least

19   some of whom are here in the courtroom today.  The defendant

20   disclosed over 8,000 annual income tax returns, including

21   annual income tax returns for approximately 7,600 individuals

22   and over 600 entities.  Some of that information has already

23   been published.  But other victims have essentially no choice

24   but to sit and wait to see if embarrassing details about their

25   private financial lives and the private financial lives of

1    their family are going to be published tomorrow, next week,

2    next month, next year.  As one victim explained, there's fear

3    that the victim's tax information will be, quote, further

4    disseminated or used for additional unlawful purposes for

5    reputational attacks.

6         But the tax returns are just the tip of the iceberg

7    here, Your Honor.  The defendant also disclosed tons of

8    additional tax information that might have been associated

9    with those returns, but wasn't an actual tax return.  Taking

10   into account that additional type of information, the

11   disclosures affected approximately 18,000 individuals.

12   Affected 73,000 businesses.  Again, the magnitude of the harm

13   is immense and it's unprecedented and it justifies a 3553

14   variance, even setting aside the departure under the

15   application note that Your Honor's already imposed.  It's

16   exceptional.  It's unusual.  It's not like any other 7213 case

17   that's ever been brought.

18        The second factor I want to highlight Your Honor, is

19   the extensive planning and the careful execution of this

20   offense here.  The defendant plotted his thefts and

21   disclosures over the course of approximately two full years.

22   He learned over time to exploit IRS's -- exploit loopholes in

23   the IRS's systems.  He went back in over and over and over

24   again to seek more taxpayer information to disclose to the

25   news organizations.  He spread the data around multiple

1    different devices and to two different news organizations.

2    This case is not about a momentary lapse in judgment

3    in an otherwise law abiding life.  That's not what this case

4    is.  Instead, for years this defendant was abusing his

5    position of trust to secretly and repeatedly extract and

6    divulge personal details of the thousands of -- of thousands

7    of Americans who willingly provided that information to the

8    government.

9    A final point, Your Honor, and I think this is an

10   important point with regard to the variance, is that the

11   government's request for 60 months here is in part based on

12   general deterrence.  As I mentioned earlier, the Court should

13   take this opportunity to communicate an appropriate message

14   about the seriousness of disclosing taxpayer data.

15   The defendant's brief cited numerous 7213 cases that

16   yielded probationary sentences.  And we have two responses to

17   those cases.  First, ultimately those cases involve situations

18   that look nothing like what happened here.  You had cases

19   where an individual was disclosing a small number or even one

20   tax return for private financial gain.  I think an example

21   could be the Washington case that the defense cited, which was

22   an IRS employee looked at her ex-husband's tax return in order

23   to increase child support payments.  And that's the general

24   flavor of those 7213 cases that were cited by the defendant.

25   There is no meaningful comparison between those cases and what

1   happened here.  I think that's apparent on the face also even,

2   frankly, of the defendant's brief, which accurately

3   characterized some of the information from those cases.

4           But more fundamentally, the probation sentences in

5   the in the other 7213 cases, and some of the lighter sentences

6   in the classified information cases, reinforce rather than

7   undermine the need for a significant sentence here.  Criminal

8   activity of this kind, of the nature that's involved here, it

9   often involves sophisticated individuals who undertake their

10  disclosures after careful execution, careful planning,

11  thinking through, researching the consequences of what those

12  actions might be.  Crimes like that, Your Honor, are uniquely

13  susceptible to general deterrence.  These aren't crimes of

14  passion.  These aren't crimes that occur because a thought

15  momentarily popped is a into someone's head.  These crimes

16  take a long time to be planned out and to be executed.

17          And individuals out there who might be considering

18  similar offenses, whether for economic reasons, for

19  ideological reasons, for political reasons, they need to see

20  and they need to understand, Your Honor, that the consequences

21  will be serious, they will be substantial, and they will be

22  severe.  And the space that Your Honor has, as a result of

23  even this single charge that covers all of the conduct here,

24  the space that Your Honor has gives an opportunity for you to

25  do justice here and to recognize all of the aggravating

1    factors that I've walked through up here.  An incarceratory

2    sentence of 60 months is necessary, it's appropriate, and it's

3    the just result here, Your Honor.

4              THE COURT:  Okay.  Thank you.

5              MR. JACOBSON:  Thank you.

6              THE COURT:  All right.  I will now hear from any

7    victims who wish to speak pursuant to 18 U.S.C. 3771(a)(4).

8    Before I do that I want to remind everyone that we are in a

9    courtroom and not at a campaign rally.  And that if we verge

10   into a campaign rally I will cut it off.

11             All right.  That said, does anyone wish to speak

12   today.

13             Right here Senator Scott.  Good morning, sir.

14             SENATOR SCOTT:  Good morning.

15             Your Honor, thank you for giving me the time to

16   make -- giving me the opportunity to make these comments to

17   you in open court.  What I'm about to say means no disrespect

18   to you or the staff prosecutors in this case.

19             Your Honor, newspapers have called this a plea deal,

20   it should be called the plea deal of the century.  Mr.

21   Littlejohn abused his position of trust; stole personal

22   financial data; released that data intentionally and with

23   malice to harm Americans, including me and my family; and

24   clearly violated the law and disclosed the private tax and

25   financial information of thousands of Americans, thousands.

1         Yet today he will skip accountable for his deeds in

2 all but a single case.  He is pleading guilty to just one

3 violation out of thousands and he will be punished for just

4 one violation not thousands.

5         The United States Department of Justice acknowledges

6 that I'm a victim of Mr. Littlejohn's actions and generously

7 offered me the opportunity to give a victim impact statement.

8 Unfortunately, there are more victims of this crime than can

9 fit in the courtroom today.  Donald Trump, Elon Musk, Ken

10 Griffin, the list is long.  All attacked for political

11 purposes because they are wealthy or rich, wealthy or

12 Republican or both.  All attacked for political purposes that

13 coincide with the political desires of the Biden

14 administration.

15         But there are more victims than just those named in

16 this case.  In a broad sense every American is a victim here.

17 Why?  Because this case is part of the ongoing dangerous

18 corruption of the justice system at the federal level --

19         THE COURT:  Mr.  -- Senator.  Senator, okay.  I'm

20 not going to listen about allegations of corruption at DOJ.

21 That's not why we're here today.  So please move on if that's

22 where you're going.

23         SENATOR SCOTT:  The truth is Mr. Littlejohn is

24 getting this sweetheart deal crime because his crimes advanced

25 somebody's political agenda.  This plea deal is no further --

1    it's further proof that what's happened is -- I mean, you

2    talked about why are we only prosecuting one case, that makes

3    no sense.  There's thousands of cases here.  And if you just

4    go through this, look at what we're doing here.  I might just

5    give you an example of something else, okay, so when the

6    president's diary -- daughter's diary was -- Project Veritas

7    was going to put it out you got an FBI raid, you had an FBI

8    investigation, Justice investigation and a raid.  ProPublica

9    puts out Donald Trump's, Elon Musk, my tax returns

10   information, nothing.

11            THE COURT:  Well, I don't think they knew who it was

12   at the time.  You can't raid someone if you don't know who it

13   is.

14            SENATOR SCOTT:  Well, I -- have they done anything

15   since?

16            THE COURT:  I mean kinda.

17            SENATOR SCOTT:  ProPublica?  I mean, the bottom line

18   is I do not understand why we're talking about one case out of

19   thousands, right.  And by the way, we don't know how much --

20   who else is going to put out more information on my tax

21   returns because they have them.  Right.  Not just impacts me,

22   it impacts my kids, my grandkids, right.  And for how long?

23   Because nobody else is being held accountable.  So I think

24   it's wrong.  I hope you reject the plea deal.  And if you

25   don't, you give the maximum sentence.

1          THE COURT:  All right.  Thank you.  I can't reject

2     the plea deal, I've already accepted it.  But thank you.  And

3     thank you for coming today.  Anyone else?

4          All right.  Ms. Manning.

5          MS. MANNING:  Your Honor, Mr. Cherry will be

6     addressing the Court first on the Court's question of the per

7     se reasonableness.

8          THE COURT:  Terrific, thank you.

9          MR. CHERRY:  Good morning, Your Honor.

10         THE COURT:  Good morning Mr. Cherry.

11         MR. CHERRY:  Before going to the per se issue, I

12    just wanted to briefly address the one count in this case.  So

13    our position is that he pled guilty to exactly the crime he

14    committed.  And I know the government mentioned the

15    possibility of charging 18 U.S. Code, 641 for theft of

16    government funds.  I don't have the case law prepared for this

17    hearing, but had they charged that offense as well, we do not

18    believe it would have substantially changed the guidelines,

19    because our position is that it would be a zero loss theft.

20         THE COURT:  Okay.  Thank you.

21         MR. CHERRY:  Your Honor, in response to your

22    question over the weekend, it is not per se unreasonable to

23    charge a defendant to the statutory max after pleading guilty,

24    accepting responsibility, and cooperating.  However, we

25    believe it would be unreasonable in this case.  We cite the

1    proper analysis for the Court in our sentencing memorandum and

2    Your Honor has gone over it briefly today.  But the Court must

3    begin with the sentencing guidelines and any variance or

4    departure from the guidelines must be supported by statute,

5    precedent, and the law.  A more -- and the Supreme Court has

6    made clear that a more significant departure must be justified

7    by a more significant justification.

8         The cases the Court referenced over the weekend bear

9    no resemblance to the facts here.  First, the Supreme Court

10    explained in *Pugh*, that a guidelines sentence is presumptively

11    reasonable.  The first case that Your Honor cited, *Ortiz,*

12    involved a defendant who was convicted for operating a

13    methamphetamine lab and was sentenced below the statute --

14    below his sentencing guidelines -- or I'm sorry that the

15    statutory max fell below the statutory guidelines and was,

16    therefore, presumptively reasonable.  Next in *LePage* the

17    defendant was sentenced to the bottom half of the sentencing

18    guidelines, which happened to be statutory max.

19         The third case Your Honor cited in *Helton*, although

20    the defendant was sentenced above his sentencing guidelines,

21    there were factors that the Court took into consideration that

22    were not adequately accounted for in the guidelines.  For

23    example, the defendant had a history -- criminal history

24    points 150 percent above the high -- or the highest category

25    for criminal history.  Further, the government -- or the judge

1    observed that there was serious concerns with specific

2    deterrence and how the defendant had a long history of similar

3    offenses and was -- had constant engagement with law

4    enforcement in multiple jurisdictions.

5            These cases do not support a statutory max sentence

6    for Mr. Littlejohn.  Sentencing Mr. Littlejohn to six times

7    the upper end of his sentencing guidelines, or equivalent to a

8    15 point departure would be unreasonable.

9            THE COURT:  Well, I mean -- Ms. Manning, you're

10   going to address that I take it?

11           MS. MANNING:  Yes, Your Honor.

12           THE COURT:  Okay.  I'll wait.

13           MR. CHERRY:  The government's request for the Court

14   to sentence to the statutory max and ignore precedent is

15   telling.  We have cited dozens of cases that support

16   sentencing Mr. Littlejohn to a guidelines sentence accounting

17   for the two- to four-point departure.  A statutory Max

18   sentence would necessarily ignore the guidelines, the law, and

19   the precedent that we cite.  We trust that the Court will

20   impose a reasonable sentence in this case.

21           THE COURT:  I will impose a reasonable sentence, you

22   can be assured.

23           Ms. Manning.

24           MS. MANNING:  Ms. Manning.

25           MS. MANNING:  Good morning, Your Honor.

1          THE COURT:  Good morning, Ms. Manning.

2          MS. MANNING:  First, I wanted to thank you and your

3    colleagues for all of the time and attention that you've spent

4    on this case.

5          THE COURT:  Thank you.  She is pointing to my law

6    clerk, because he has been emailing at all hours over the

7    weekend.  You know, one of the best parts about this job is

8    you get to work with phenomenal young attorneys.  And I am

9    very, very thankful to my clerks, and Jon in particular who

10   has done Yeoman's work on this case.  And thank you for

11   recognizing him.

12         MS. MANNING:  We greatly appreciate that.  And we

13   know that there are a lot of factors that go into your

14   decision and you do not have an easy task.

15         We also wanted to thank and recognize Senator Scott

16   for appearing here and his time.  And to the other victims

17   that took the time to write letters to the Court.  And before

18   I proceed, I also wanted to recognize Mr. Littlejohn's family

19   and friends, who are here to support him in court today,

20   including his brother, his partner, and several other close

21   friends, and his partner's mother.  As the Court is aware, due

22   to health conditions, his parents were unable to travel to be

23   at the Court today.  But asked me to convey that they are -- I

24   believe they are joining by video link -- and that they are

25   very much here in spirit.  And I think his mother said that

1    she is heartbroken not to be here, but is supporting him from

2    afar.

3              Your Honor, at Mr. Littlejohn's plea hearing you, if

4    I may paraphrase, stated that this is a country of laws.  And

5    if society does not follow those laws it does not function.

6              THE COURT:  That sounds about like what I would

7    say.

8              MS. MANNING:  And I submit that that is not only

9    true when an individual like Mr. Littlejohn takes the law into

10   his own hands, but also where the government and others are

11   urging the Court to simply disregard the law, to disregard the

12   guidelines, to disregard the guidance of the United States

13   probation office, and to disregard decades of precedent.

14             THE COURT:  So, Ms. Manning, my problem, and I'll

15   just be quite frank with you, is there's just -- he targeted

16   the sitting President of the United States of America.

17             MS. MANNING:  Yes, Your Honor.

18             THE COURT:  And that is exceptional by any measure.

19   And I, you know, I don't care if he thought that President

20   Trump was the living embodiment of James Buchanan, Andrew

21   Johnson, and Herbert Hoover combined.  I don't care.  I don't

22   care how many people might have agreed with him.  He was the

23   sitting President of the United States And when you target the

24   sitting President of the United States you are targeting the

25   office.  When you target the office of the President of the

1    United States you're targeting democracy.  You're targeting

2    our constitutional system of government.  And I just disagree

3    that it is disregarding the law to suggest that that deserves

4    a maximum punishment and requires a maximum punishment in

5    order to deter anyone else from doing that.

6         MS. MANNING:  Your Honor, we do not take any issue

7    with the severity of the conduct.  The Court has already

8    recognized that Mr. Littlejohn has come forward, he has

9    accepted full responsibility.  The Court has also recognized,

10   however, his motive in this case, which however misguided, did

11   not come from a place of malice, or avarice, or any type of

12   animus.  In fact, Your Honor, I submit that this, even though

13   there has been so much political attention to this case, that

14   as you read in the many letters to this Court, he acted not

15   out of a political motivation, in terms of a partisan

16   political motivation --

17        THE COURT:  Ms. Manning, of course he did.  Ms.

18   Manning, that's just not credible.  That's just not credible.

19   I mean, I just cannot believe that the fact of who it was had

20   no bearing on why he did what he did.  I mean, if you -- if

21   I'm misguided about that and I'm just wrong about that, I

22   mean, you tell me.  But it just seems improbable to me.

23        MS. MANNING:  Your Honor, I think as we recognized

24   in our papers, and you will hear from Mr. Littlejohn, he was

25   troubled by the administration.  But I think the point I'm

1   trying to make, and maybe unsuccessfully, is there's a

2   distinction between targeting an individual -- for example, in

3   some of the precedent that we cited to the Court, there was a,

4   you know, one of the unauthorized disclosure cases in which

5   the defendant targeted a sitting judge and the unauthorized --

6   because the judge had made some unfavorable rulings in the

7   defendant's case.  And the defendant went into the system,

8   stole the records, and made an unauthorized disclosure out of

9   a personal animus.  There are other cases we have brought to

10   the Court's attention where the defendant has acted out of

11   personal gain, you know, be it financial gain, fraud.

12          And my point is that that is distinct here.  Now,

13   maybe the Court views his conduct as even, in terms of

14   motivation on a moral scale, as more serious than a crime of

15   fraud, and --

16          THE COURT:  I think the seriousness -- I mean, Ms.

17   Manning, what I just cannot get over -- to me the

18   seriousness -- and of course the thousands of people whose tax

19   information was released, of course that is serious, and of

20   course I'm going to take into account.  I'm not just saying

21   we're talking about the presidency here.  But it cannot be

22   open season on our elected officials.  It just can't be.  And

23   judges can't sit by and not do everything in their power to

24   make it crystal clear that it is not open season on our

25   elected officials.  And that's what happened.

1          MS. MANNING:  And as Your Honor pointed out earlier,

2    Mr. Littlejohn is sitting in that seat.  It is not open

3    season.  There is a clear message not only being sent by the

4    Court, but in terms of deterrence for -- take a professional

5    like Mr. Littlejohn, he graduated from college summa cum

6    laude.

7          THE COURT:  With a degree in economics and physics,

8    I mean, he's not dumb.

9          MS. MANNING:  No, he's definitely not dumb.  He has,

10   but for this case, but for the conduct in this case, has led

11   an otherwise exemplary life and I submit one that was

12   dedicated to civil service.  As you read in the letters many

13   of his college friends said, he had tons of job offers.  He

14   could have gone anywhere.  He could have made a lot more

15   money.  But instead he chose to work on an IRS contract,

16   because he so fundamentally believed in the system.  And what

17   is particularly sad about this case, among many things, is

18   that he then went and completely undermined the system that he

19   had worked for years to improve.

20          But my point to the Court here is that a sentence --

21   any sentence of incarceration, I mean, he is going to a

22   federal prison, he is going from --

23          THE COURT:  He is definitely going to a federal

24   prison.

25          MS. MANNING:  There's no question about that here.

|    |    |
|----|----|
| 1  | But in terms of the -- what we are discussing is the length of |
| 2  | the sentence.  And, Your Honor, I mean, I -- I cited in my |
| 3  | brief and I have in this large binder here, a report by the |
| 4  | Department of Justice itself, National Justice Institute that |
| 5  | talks about general deterrence.  And that talks about how for |
| 6  | a defendant like Mr. Littlejohn and any other potential |
| 7  | leakers out there, the impact is getting caught, the impact is |
| 8  | going to prison, the impact is all of the other things that |
| 9  | come with that.  At the conclusion of this hearing, he will be |
| 10 | a convicted felon. |
| 11 | THE COURT:  He's already a convicted felony. |
| 12 | MS. MANNING:  At the conclusion of sentencing. |
| 13 | THE COURT:  Sorry, go ahead. |
| 14 | MS. MANNING:  He will be a convicted felon and will |
| 15 | lose all of the rights, both legal rights and societal rights |
| 16 | that come with that status.  He will suffer very serious |
| 17 | personal consequences, both with his life, with his partner |
| 18 | and with his father, as you've read about in my papers.  And |
| 19 | he will never ever be able again to certainly access any |
| 20 | confidential data, so no risk of recidivism, but work in |
| 21 | service to the government. |
| 22 | But I guess, my point, Your Honor, is that a |
| 23 | sentence here, whether the sentence is 18 months as is |
| 24 | suggested in the recommendation by the U.S. probation office, |
| 25 | to which I ask the Court to give deference, versus the |

1    government's request of five years, A, does not have the

2    deterrent effect based on the studies submitted by the Justice

3    Department itself on this type of defendant.

4              And then in terms of the publicity of this case, I

5    mean, I checked this morning before leaving my office for

6    court, and as of this morning if you search his name, there

7    are 284 current news articles that come up in Google.  It is a

8    very publicized case.  And it will be for the rest of his

9    life.  And any other potential leaker that is thinking, you

10   know what, I feel like I have a moral obligation to make

11   information that I believe should be public, will see that.

12   They'll not only see that, but I'm sad to report that because

13   of the political or partisan nature of this case, many of

14   those articles, even on main stream news cites, have comments

15   that call for him to be executed in public and that --

16             THE COURT:  That is outrageous.

17             MS. MANNING:  -- sentence --

18             THE COURT:  I mean, everyone has lost their heads.

19   I mean, that is outrageous.

20             MS. MANNING:  And I -- you know, I regret the fact

21   that this case is -- has attracted so much noise.

22             THE COURT:  I mean, that's what happens when you

23   target the sitting President of the United States.  I mean, he

24   didn't target Jane Doe.  If he targeted Jane Doe, we all --

25   none of these people would be here.  I would be here, you

1    would be here, but that would be about -- and Mr. Jacobson

2    would be here.  But he targeted the sitting President of the

3    United States.  And when he you target the sitting President

4    of the United States, you're going to get attention.

5              And I'm sorry, Ms. Manning, I know, I know that you

6    are -- I know that these are hard things to answer.  And --

7    but go ahead.

8              MS. MANNING:  My point at the beginning, Your Honor,

9    in raising the fact that it is, from a defense perspective

10   sitting here, the government is asking the Court to throw away

11   the law, our --

12             THE COURT:  I mean, we're just going to have to

13   agree to disagree about that.  I don't think they're asking me

14   to throw away the law.  I think they're asking me to apply the

15   sentencing factors to an unprecedented crime that not only

16   targeted our constitutional system of democracy, but targeted

17   a subset of people for no other reason that they had a certain

18   characteristic and it upended their lives.  I mean, I think

19   that's what we're doing here.

20             MS. MANNING:  I understand that, Your Honor, but at

21   the same time, in addition to the constitution our system --

22   the benchmark, the bedrock of our system is a common law

23   system.  And the idea that we should throw away the standards,

24   the norms, the procedures, the laws --

25             THE COURT:  What are we throwing away?  He had his

1    due process.  He had a right to go to trial.  He has -- he has

2    excellent counsel.  He -- you know, everyone's talking today

3    I'm going to give all my reasons.  I'm not just going to say

4    here you go, here's your term and then walk out of here.  He

5    is getting far more process than any of his victims have

6    gotten.  They didn't have any process before all their

7    information was released.

8              MS. MANNING:  Yes, Your Honor.  In terms of why we

9    are here today is because my client broke the law.  There's --

10   no one disagrees about that.  He committed a crime.  And he

11   was charged with and pled guilty to the very statute that

12   proscribes that conduct.  Now, I understand that Your Honor's

13   point earlier about that he could have been charged with more

14   crimes, he could have not cooperated, and he could have not

15   pled guilty, and we could be here in a trial setting.  But as

16   my dad says, we are where we are and --

17             THE COURT:  I mean, just to be absolutely clear for

18   the record, I am not going to base any of my sentencing

19   decision on other crimes he could have been charged with, or

20   the fact that he wasn't charged with them.  The only reason

21   I'm even bringing any of that up is because of the cooperation

22   point.  And I just want to make that absolutely clear for the

23   record.

24             MS. MANNING:  Thank you, Your Honor.

25             He is here to be punished for conduct that is --

1    that is exact -- the conduct, you know, crime that he

2    committed, but conduct that is exactly what is described under

3    the statute to which he pled.

4            THE COURT:  No, agree.

5            MS. MANNING:  And in terms of referencing our great

6    legal system and common law, I submit Your Honor,

7    respectfully, that it is troubling to me that despite the

8    egregious level of the conduct, that the government is

9    arguing -- I mean, some of that seriousness has been taken

10   care of or has been accounted for by the guidelines.  And as

11   my colleague Mr. Cherry said, even post-*Booker*, under 3553(d),

12   by statute the Court -- the basis, the fundamental calculation

13   shall still be rooted in the guidelines unless there are

14   aggravating circumstances --

15           THE COURT:  Like targeting the sitting President of

16   the United States of America.

17           MS. MANNING:  And, Your Honor, we agree and we have

18   conceded that, yes, he has, as we went through the guidelines

19   calculation, there are two enhancements.  In addition to that,

20   and it's not very often that defense counsel is asking for an

21   above guidelines sentence --

22           THE COURT:  It frankly might be a first, which I

23   mean, it's a credit to you as a lawyer and it's a credit to

24   Mr. Littlejohn's acceptance and remorse and I should have said

25   that when I pointed it out.

1          MS. MANNING:  Thank you, Your Honor.  He is not

2     seeking leniency.  He is seeking fairness.  And I know that

3     you will be fair in sentencing.  But I have also spent every

4     single day since the plea hearing thinking about this case.

5     And I have read, as has Mr. Cherry, all of the cases that are

6     in this binder.  And I hope that's not -- it's not for naught,

7     some of these cases do, for example, the Edwards case, which

8     the government cited in their brief, that was also targeted at

9     President Trump.  That was also a defendant who was in a

10    position of trust, who went into databases, stole data, and

11    gave over 50,000 records to a media outlet, Buzzfeed --

12         THE COURT:  But as I recall in that case, the

13    reporters reached out to her, right.  And is this the one

14    where the reporters reached out to her, cultivated her.  She

15    had an issue that she had been trying to go through the proper

16    channels and people just weren't listening to her.  And the

17    way that the reporter got her name was because she was trying

18    to go through the proper channels, that had become public.

19    The reporter got her name and then basically convinced her in

20    a very persuasive way to break the law.

21         I mean, your client is just totally separately

22    situated.  This was -- I mean, what we haven't even talked

23    about yet is not just that your client happened to be where he

24    was and came across or realized that he had access to returns,

25    he went back to the company in order, in part, to get the

returns and to make them public.  And this was -- how much
more intentional can you get?

          MS. MANNING:  Your Honor, I don't think anybody has
ever questioned his intent.  This was not a crime of passion.
As the letters to the Court, many of his close, close family
and friends said, this must be something -- and I think you
will hear that from him -- that he agonized over for months.

          In terms of the time line of the offense, he -- he
acknowledged he readily -- he volunteered that information in
one of his over eight hours of interviews with the government.
He readily volunteered the information in terms of what was in
his mind at the time.  And that he was so troubled by what he
was seeing.  And that he felt that if -- and again, it was an
if -- he applied to several different jobs because he needed
the money -- but if he were to get in that position, and
unfortunately fate put him in that position by assigning him
to a project, you know, we wouldn't be here probably if that
hadn't happened.  But he volunteered that.

          Once he was able to steal the data, as we reviewed
in our brief, he did not act quickly, he sat on the data for
some time.  And I realize that those facts cut both ways.  On
the one hand, sometimes it's useful to argue it was a spur of
the moment decision, but no one in this case is saying that.
He agonized over this decision, as I think is apparent from
some of his journal entries at the time, that because of his

1   life circumstance he felt he had nothing to lose.  He realized
2   it would ruin his life and he felt he had nothing to lose.
3   And he made, no doubt, a -- as you described -- a colossal
4   error and committed a colossal crime.

5        And if he could, he would take it back.  I have
6   gotten to know Mr. Littlejohn pretty well over the course of
7   representing him.  And I can say he has very deep remorse.
8   That he has deep remorse for the victims.  He has deep remorse
9   for putting our system through all of this additional cost to
10  the American taxpayer.  Clearly, deep remorse to his friends
11  and family.  And deep remorse for how this will impact the
12  future that they thought that he had ahead of him.

13       And while his offense certainly involved a sitting
14  president and thousands of taxpayers, it is not entirely
15  dissimilar from the conduct of many of the, quote, ideological
16  leakers that appear in the cases in this binder.  And there
17  are cases, probably the largest tab section is Espionage Act
18  cases.  And these are people -- a United States general,
19  high-level law enforcement officers, high-level military
20  officers, who have clearances, who are disclosing information
21  that endangers national security, that blows the cover of
22  undercover agents.  And in those cases, the Court took into
23  account the personal or ideological motivation.  And in every
24  single one of those cases -- or I should say in none of those
25  cases did the Court sentence the defendant to the statutory

1    max.

2         And here I ask Your Honor to take that precedent,

3    which is the bedrock of our system, into account.  And I'm

4    sure that this is as a -- since you've taken the bench,

5    probably the most difficult process to sentence someone and

6    deprive someone of their liberty.  And now I have -- I have

7    nothing left but to put the case into your hands.  But I thank

8    you for your time, I thank you for your consideration in what

9    I trust will be a just and lawful resolution.

10        THE COURT:  Thank you, Ms. Manning.

11        Mr. Littlejohn.

12        THE DEFENDANT:  You Honor, first I'd like to thank

13   you for the time and consideration that you've given my case.

14   It means a lot to me personally and to my family.  I have a

15   statement.

16        THE COURT:  Of course.

17        THE DEFENDANT:  First and foremost, I'd like to

18   apologize to the Court, to the government, to Senator Scott,

19   and to all the individuals who have been hurt by my actions.

20   I alone am responsible for this crime and I received no

21   compensation in return for committing it.  I acted out of a

22   sincere if misguided belief that I was serving the public

23   interest.  I felt that the American people should have the

24   opportunity to see the tax returns of the sitting president

25   before they decided on how they were going to vote.  I also

1  felt that taxpayers as a whole deserved to know just how easy

2  it was for the wealthiest among us to avoid paying into our

3  system.  I believe then, as I do now, that we as a country

4  make the best decisions when we are all properly informed.  I

5  also understand in my actions, despite being driven by a

6  desire for transparency, were illegal and have caused

7  significant harm.

8          In deciding to disclose this information I was aware

9  of the potential consequences.  I did not take the burden of

10  this obligation lightly, nor did I think I was above the law.

11  I made my decision with the full knowledge that I would likely

12  end up in a courtroom to answer for my serious crime.  There

13  should be no mistaking the fact that what I did was wrong.  To

14  achieve my criminal objectives I betrayed the trust of my

15  client, my colleagues, and my firm.  I used my skills to

16  systematically violate the privacy of thousands of innocent

17  people.  My actions undermined the fragile faith that we place

18  in the impartiality of our government institutions.

19          I do not ask for mercy.  For mercy cannot rebuild

20  that trust.  I only ask for justice as it alone can help

21  restore confidence in our system.  Roman Emporer Marcus

22  Aurelius reflected in the following in his meditations:  Never

23  regard as a benefit to yourself anything which will force you

24  at some point to break your faith.  My hope in moving forward

25  from this experience is that I will be able to internalize

1    that message as I seek lawful ways to contribute to my

2    community and to our beloved country.  Thank you.

3              THE COURT:  Thank you, Mr. Littlejohn.

4              All right.  After calculating the final advisory

5    guidelines range and hearing the statements made by counsel,

6    Senator Scott, and Mr. Littlejohn, I must now consider the

7    relevant factors set out by Congress in 18 U.S.C. 3553(a),

8    ensure that I impose a sentence that is, quote, sufficient but

9    not greater than necessary to comply with the purposes, end

10   quote, of sentencing.

11             The purposes include the need for the sentence

12   imposed to reflect the seriousness of the offense, to promote

13   respect for the law, and to provide just punishment for the

14   offense.  The sentence should also deter criminal conduct,

15   protect the public future from crimes by the defendant and

16   promote rehabilitation.

17             In addition to the guidelines and policy statements

18   and the purposes of sentencing, I must also consider the

19   nature and circumstances of the offense; the history and

20   characteristics of the defendant; the kinds of sentences

21   available, including the applicable guidelines; the need to

22   avoid unwarranted sentencing disparities among defendants with

23   similar records who have also been found guilty of similar

24   conduct; and the need to provide restitution to any victims of

25   the offense; other factors -- including other factors which I

will discuss in turn later.

I have considered all of these factors when deciding what the appropriate sentence is in this case. The upward departure imposed, as conceded by Mr. Littlejohn, does not begin to adequately account for the nature of this offense. A multi-year criminal scheme targeting the sitting President of the United States and thousands of Americans. And based on each factor I'm required to consider, in the weighing of those factors I conclude that an upward variance from the 12 to 18 month final advisory guidelines determined by the upward departure to offense level 13 is necessary. And for the avoidance of doubt, I would reach the same sentence I impose today based solely on the variance and my analysis of the 3553(a) factors, regardless of whether or not the upward departure applied.

We are going to take a break until 11:25 and when we return I will explain the basis for my sentence and impose the sentence. Thank you.

(A recess was taken from 11:12 a.m. to 11:25 a.m.)

THE COURT: We are told by the press that democracy dies in darkness. Democracy also dies in lawlessness. And our democracy will surely die if our governing philosophy becomes partisan political ends justify illegal means. And today we are not presented with a pick-your-poison question, death by darkness or death by lawlessness. And that is so

because there are innumerable lawful ways -- lawful means of bringing information to light.

In the case of Mr. Trump's tax returns, he was under no legal obligation to disclose them.  None.  Certainly numerous Americans thought he should disclose them.  And those individuals had numerous lawful options in the face of his decision.  They could decide not to vote for him.  They could decide to vote for somebody else.  They could campaign against them.  They could lobby, as many did, state legislatures to change their laws on candidate eligibility.  They could lobby, as many did, congress to change the tax disclosure law.

And even assuming only the release of Mr. Trump's tax returns would suffice, his returns were made public lawfully.  The House filed litigation to release them.  The House won that litigation.  And the House lawfully released the tax returns.  The public now has lawful access to his tax returns for the years 2015 through 2020.

And all of the information needed to make the point that wealthy individuals pay a low effective tax rate is already publicly available.  To start of course the law is public.  Anyone can study the tax laws and assess how they apply in various economic scenarios.  Indeed, the White House in September 2021 released just such a study, entitled, "What is the average federal individual tax rate on the wealthiest Americans."  The study concluded that the country's wealthiest

1    400 families paid an estimated average federal income tax rate

2    of 8.2 percent for the period 2010 to 2018.  The authors used,

3    quote, publicly available statistics from the IRS statistics

4    of income division, the survey of consumer finances and *Forbes*

5    *Magazine*, end quote.

6         Now I'm not endorsing this study in any way.  I have

7    no idea if the methodology or conclusions are sound.  My point

8    instead is only that there are ways, other than disclosing the

9    tax information of over a thousand American, in flat violation

10   of the law and at substantial harm to them, to draw

11   conclusions and make policy arguments about our nation's tax

12   laws.

13        In his sentencing memo Mr. Littlejohn states that a

14   *New York Times* opinion piece entitled, "Everyone's income

15   taxes should be public," pushed him in part to leak the tax

16   returns to the press.  But that article only proves my point

17   that his conduct was not necessary.  First, because the author

18   tried to change the tax disclosure laws the right way, by

19   exercising his First Amendment right.  And second, because it

20   expressly mentioned that congressional democrats were already

21   fighting to obtain Trump's tax returns through legal means.

22   And Mr. Littlejohn now recognizes, in hindsight, that there

23   was nothing noble or moral about the nature of his offense.

24   It did not produce a single social good that could not have

25   been and hasn't now been produced in some way by lawful means.

1            The nature of this offense was an intolerable attack

2      on our constitutional democracy by declaring open season on

3      the private lives of our highest elected officials.

4      Mr. Littlejohn's targeting of a sitting President of the

5      United States as part of a three-year criminal scheme,

6      including working with the reporters to help them understand

7      the tax returns, deciding again and again and again to take

8      the law into his own hands, disclosing the tax returns of

9      thousands of individuals, violating their privacy, and making

10     them live in fear of other harms that may occur to them or

11     their families in the future supports an upward variance here.

12            I find that the guidelines range does not accurately

13     reflect the seriousness of Mr. Littlejohn's criminal conduct,

14     given the scale of victims impacted and the nature of harm

15     that has as a resulted, and could continue to result in the

16     future.  *U.S. v. Brevard*, 18 F.4th 722 at 729, D.C. Circuit

17     2021.

18            President Theodore Roosevelt stated the obvious in

19     reminding us that, quote, to announce that there must be no

20     criticism of the president, or that we are to stand by the

21     president right or wrong is not only unpatriotic and servile,

22     but it is morally treasonable to the American people, end

23     quote.

24            Mr. Littlejohn had the same First Amendment right

25     afforded to every American to criticize the president.

1    Criticism of our political leaders is not merely tolerated, it
2    is imperative to the smooth functioning of our democracy to
3    hold our elected officials accountable.  But so too is a
4    commitment by every American to ensure that every individual
5    elected to office is able to exercise the duties of that
6    office without concern of exposing herself or her family to
7    unlawful conduct and personal harm.  Without that commitment
8    our democracy also cannot function smoothly.
9         We are in a place right now where somehow a
10   substantial number of Americans find it acceptable to raid the
11   U.S. Capitol and threaten the life of the Vice President for
12   carrying out his constitutional obligation to effect the
13   peaceful transfer of power, to threaten House Republican
14   members and their spouses because they voted against a
15   particular speaker candidate, a republican at that.  One
16   lawmaker even received a credible death threat.  To make a
17   round of bomb threats to state capitols, to send them to
18   Secretaries of State and legislative offices.  Believed to be
19   a hoax, but it led to the evacuations around the country.  And
20   to send letters containing fentanyl to a election offices in a
21   handful of states this past November, among numerous,
22   numerous, numerous, numerous other examples.
23        I have no idea how we got here, but I do know two
24   things for certain, those actions did not result in physical
25   harm, Mr. Littlejohn's actions also harmed our democracy by

1    harming the office of the presidency.  And the judiciary must

2    be an unbreakable bulwark against politically-minded actors

3    targeted or threatening elected officials.

4           To target Mr. Trump was to target the office, was to

5    target democracy, that is the nature of your offense,

6    Mr. Littlejohn.  It alone would require a substantial upward

7    variance under the factor just discussed, the nature and

8    circumstances of the offense.

9           The nature of the offense is also an intolerable

10   attack on the personal lives of thousands of Americans, most

11   of whom tirelessly contribute to our society in important

12   ways, because of one person's disagreement of current tax

13   policy.  Of course, policy can and should be addressed through

14   the democratic system.

15          The government argues, and I have not heard

16   Mr. Littlejohn contest, that the scope and scale of his

17   conduct, unlawful disclosures appear to be unparalleled in the

18   IRS's history.  There simply is no precedent for a case

19   involving the disclosure of tax return information associated

20   with other a thousand individuals and entities.  That's the

21   government's memo, docket 23 at 9, and I wholeheartedly agree.

22          I have received six victim impact statements, a

23   number signed by or on behalf of numerous victims.  Some

24   excerpts, quote, Mr. Littlejohn's legal actions have caused me

25   and my family great distress.  And I have had to rearrange

1    many aspects of my personal life and information because I do

2    not know exactly who has my own personal information.  You can

3    imagine the concern if everything you did privately and

4    personally in your investments, business, and just every day

5    activities were suddenly splashed on the front page of a

6    newspaper, or available to any unscrupulous person who might

7    seek to take advantage, end quote.

8          A group of victims through their attorneys put it

9    this way:  Quote, the taxpayers have suffered reputational

10   damage.  The economic impact of this damage is difficult to

11   quantify.  The taxpayers fully comply with their federal

12   income tax obligations, however, misguided media coverage

13   predicated on unlawfully obtained confidential tax information

14   continues to enable patently false assertions about the tax

15   payer's tax compliance, end quote.

16         Another victim said, quote, as direct result we in

17   our family were threatened personally and disparaged countless

18   times in the media.  In addition, our company certainly lost

19   business and incurred reputational damage that cannot be fully

20   quantified, end quote.

21         Another, quote, our sensitive information has been

22   unlawfully disclosed.  Narratives about us have been published

23   and circulated based on that information, and we must deal

24   with the resulting backlash and unwelcome attention, and our

25   family's safety has been jeopardized.  Mr. Littlejohn took

1    very serious actions against all of his victims.  And we must

2    now manage very real threats, and mental, emotional, and

3    reputational consequences, end quote.

4            I also find it deeply concerning that as the

5    government explained in its filing, at least 152 victims have

6    tax information published, but because Mr. Littlejohn

7    unlawfully disclosed the tax return information of thousands

8    more individuals, those individuals' information could be

9    published in the future.  In other words, the scope of the

10   harm is not necessarily done or even known.  And those whose

11   information has not yet been made public have no assurance

12   they will not be made public in the future.

13           I understand that Mr. Littlejohn cooperated with the

14   government and voluntarily sat down for two proffers.  He has

15   taken responsibility for his conduct, assisted with the

16   discovery of additional evidence, and shared information to

17   help the government prevent future breaches of IRS databases.

18   But that cooperation, although a mitigating circumstance of

19   the offense, is outweighed by the other nature and

20   circumstances of the offense I have just described, and

21   remaining factors I will discuss.

22           Mr. Littlejohn's history and characteristics.

23   Mr. Littlejohn has no criminal history, and as the 29 letters

24   submitted in support of him show, he is a devoted friend, son,

25   brother, and partner who goes out of his way to help others

1    during their moments in need.  It is difficult to square these

2    characteristics, devotion, thoughtfulness, loyalty, and

3    compassion with the crime that Mr. Littlejohn committed.  Yet,

4    human beings are imperfect and I want to reiterate that

5    Mr. Littlejohn's crime, egregious as it was, does not and

6    ought not change the fundamentally good, caring person that I

7    understand him to be.

8         For example, during his sister's illness several

9    years ago his family explains how he, quote, relocated to

10   St. Louis to help care for her and other members of his

11   family, in St. Louis working remotely of all hours of the day

12   and night so that he could support his family and fulfill his

13   obligations.  And when his grandfather was ill in 2017 he

14   helped his parents care for him by relocating temporarily to

15   Delaware, looking after his grandfather while working remotely

16   to meet all of his work obligations.  He did this without

17   being asked, selfless in his devotion to family.

18        As a friend whose brother struggled with addiction

19   explains, quote, what speaks most to his character is not the

20   one grand gesture, but countless small acts of thought,

21   gestures of friendship, and the time spent over the years

22   providing healing, no one else in my life provided that

23   consistent presence.  I honestly doubt if I would have a

24   relationship with my brother today if it were not for Charles.

25        Another friend explained about Mr. Littlejohn's

commitment to public service, quote, at work Chaz was diligent
and he approached each task, no matter how mundane, with
enthusiasm and pride.  He devoted his time to improving public
service, not by delivering meandering speeches about
government efficiency, but by doing the hard work, brick by
brick, data point by data point.  He labored over obscure
processes and unglamorous spreadsheets in pursuit of the
perfect combination of incremental change to make things just
a little bit better for everyone.

And Mr. Littlejohn himself is remorseful, writing to
the Court, quote, what I actually did was use my skills to
systematically violate the privacy of thousands of innocent
people.  I abused my position of authority to accomplish this
criminal task.  And as a result many in this nation now have
further reason to question the impartiality of our
government's institutions.  He also explains, quote, I
apologize to the Court and to the government and to all the
individuals who I harmed with my selfish actions.  And he
concludes, I realize now that what I did was wrong and if I
could take it all back, I would.  But seeing as I cannot, I
will submit to your judgment and await whatever fate you feel
is most just.  And, of course, he expressed that remorse
forthrightly and forcefully here again today.

Yet, as the government argues, Mr. Littlejohn's
characteristics also support significant upward variance here.

As a sophisticated consultant, he received regular training over several years on how to protect taxpayers and the criminal consequences of inspecting or disclosing it without information.  Mr. Littlejohn knew what he was doing.  He knew it was wrong.  And, given his experience, he well knew that the harm that would result to the taxpayers.

The need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, promote respect for the law, and provide just punishment among other purposes.

Mr. Littlejohn engaged in a deliberate, complex, multiyear scheme, criminal scheme.  I find that the 12 to 18 months guideline range in this case is insufficient to deter government officials and contractors from making those same deliberate decisions to take the law into their own hands. Mr. Littlejohn did not make a snap judgment.  He made a series of calculated decisions, over two to three years, to willfully violate the law.  Most stunning, Mr. Littlejohn has admitted that he sought to work as an IRS consultant with the hope and expectation of accessing and disclosing then President Trump's tax information.  He did all this with full knowledge, given his training, of the punishment that would result.

This court cannot permit others to view this type of conduct as acceptable or justifiable or worth the trade off, no matter what their purported political or ideological

1    motivation might be.  And the Court agrees with the government

2    that the Court should exercise its discretion to dissuade such

3    calculus, compelling individuals under such circumstances to

4    consider the likelihood of a lengthy term of incarceration.

5          And returning to my earlier discussion, our current

6    political climate demands that I do everything in my power to

7    make people twice, and twice again, think before targeting our

8    elected officials.  And everything in my power includes

9    sending the strongest possible message that we are a nation of

10   laws.  That the arena for the strongest expression of our

11   political beliefs is the voting booth.  And that an

12   independent and steadfast judiciary stands ready to punish

13   anyone who puts his personal political beliefs above the law.

14         I understand that the two other purposes of

15   sentencing under 3553(a), the need to protect the public from

16   future crimes of the defendant, who in my view does pose a low

17   risk, and to rehabilitate him in the most effective manner

18   weigh against an upward variance here.  But I must balance all

19   of the relevant factors, and I view those mitigating

20   circumstances as significantly outweighed by the other

21   purposes of the sentence I have mentioned and will mention.

22         In his letter to me, and again today,

23   Mr. Littlejohn -- well, in his letter to me Mr. Littlejohn

24   explains that in 2017 he felt increasingly fearful for our

25   country.  He was sparked by the catalyst of James Comey's

1    firing in the Spring of 2017 to disclose Mr. Trump's tax

2    returns to the press.  He felt an imagined need and desire of

3    the public, which created in him an overwhelming sense of

4    obligation.  He thought it was, quote, the right thing to

5    disclose the tax information of thousands of Americans.  His

6    actions were driven by a, quote, moral framework that he had

7    constructed.

8            A friend who wrote to me explains that

9    Mr. Littlejohn, quote, is a student of history and politics,

10   but he is not inherently political.  That this was likely,

11   quote, not an easy decision for him.  And he must have spent

12   time considering historical precedent, ethics and philosophy,

13   federalism and fairness, before coming to his decision.

14           Mr. Littlejohn, I believe everything that you told

15   me.  I believe you sincerely felt a moral imperative to act as

16   you did.

17           And instead of dismissing that outright, I have

18   spent considerable time doing what your friend suggested you

19   did, considering ethics and philosophy, historic precedent,

20   and federalism and fairness, to address the salient question

21   you posed to yourself:  Do I have a moral obligation to break

22   the law in disclosing tax records.

23           Any serious discussion of that question starts with

24   Plato's *Crito*.  Now before everyone freaks out, we are not

25   going to be here today with me discussing philosophy from the

time of the Greeks to today.  We are not.  This will be very
quick.  Also, one of my clerks fears I might come off as
pretentious by discussing Plato.  I am not trying to be
pretentious.  And if I were trying to be pretentious I would
discuss instead the evolution of the market economy in the
southern colonies, like the guy at the bar in *Good Will
Hunting.*  I want instead, Mr. Littlejohn, to show you that I
have thought deeply about your motivations.  And I want to
deter others who might also feel a moral obligation to break
the law.

       To quote Hugo Adam Bedau, quote, the problem of the
individual's relation to the state and its government, its
authorities and its laws, and the appropriate response to
offensive or unjust laws has been debated since at least 399
B.C. when *Crito* argued that Socrates should flee from prison
to avoid an undeserved death penalty.  Reflected in Plato's
*Crito*, Socrates argues that the duty of the citizen is to obey
the law or persuade society that the law is wrong.  By
choosing to live in Athens, he argued, he implicitly endorsed
the laws and had to abide by them.

       Now, that proposition has been debated in the 2000
years since.  And we see it reflected in the founders' views
of the new system of government.  And as an aside, since I
have everyone's attention here, trying to defend the January
6th insurrection, numerous people have cloaked the rioters in

1    the work of our founders.  Which would be quite the surprise

2    to our founders.  Washington and Hamilton didn't exactly sit

3    back and applaud the Whiskey Rebellion.  No Washington and

4    Hamilton sent in a militia to quell it and tried dozens of

5    rioters for treason.  Which is consistent with my point about

6    obeying the law.

7            In his farewell address, George Washington put it

8    this way, quote, the constitution, which at any time exists

9    until changed by an explicit and authentic act of whole people

10   is sacredly obligatory upon all.  The very idea of the power

11   and the right of the people to establish government

12   presupposes the duty of every individual to obey the

13   established government.

14           And he and our founders were acutely concerned with

15   lawlessness and its corrosive effect on society.  To

16   paraphrase him, he continued:  All obstructions to the

17   execution of the laws, under whatever plausible character, are

18   destructive of this fundamental principle and of fatal

19   tendency.

20           Now, of course any discussion of a moral obligation

21   to break the law must address unjust laws.  And a similar

22   piece of work on that question is, of course, Martin Luther

23   King, Jr.'s, "Letter from a Birmingham Jail."  Taylor Branch

24   describes the context well in, *Parting the Waters, America in*

25   *the King Years, 1954 to 1963.*  Quickly Dr. King had been in

1  prison for taking parts in a demonstration in a segregated

2  city in violation of local law.  In the letter he responded to

3  a public claim that he was a public agitator by distinguishing

4  between just and unjust law.  Quote, I would be the first to

5  advocate obeying just laws.  One has not only a legal but a

6  moral responsibility to obey just laws.  He goes on then to

7  discuss at length unjust laws and his obligations to disobey

8  those laws.

9        And somewhere else we could have a long and

10 interesting discussion about civil disobedience and the moral

11 obligation to disobey unjust law, but this is neither the time

12 nor the place for that discussion.  It is not the time because

13 there is no credible argument that the law Mr. Littlejohn

14 broke was unjust.

15       Reasonable people can have reasonable disagreements

16 about whether tax disclosure law is sound policy.  But it

17 applies equally to everyone and it was passes by our federal

18 Congress, with those impacted by it having the right to vote

19 on it at the time of its passage.  And today, any American has

20 the First Amendment right to speak out against it and lobby

21 for its repeal.

22       It is also not the place because this is a

23 courtroom.  And my obligation is to apply the law and punish

24 those who violate it, which it bears highlighting, Dr. King

25 acknowledges.  He wrote in the Letter, quote, In no sense do I

1    advocate evading or defying the law as would the rabid

2    segregationist, that would lead to anarchy.  One who breaks an

3    unjust law must do so openly, lovingly, and with a willingness

4    to accept the penalty.

5         And, of course, none of this even touches on the

6    point that Mr. Littlejohn did not break the law in a vacuum.

7    He knew that the result of the so-called moral act would be to

8    harm thousands of others.  And any balancing of the moral

9    obligation to release tax returns to the public versus the

10   moral obligation to not harm thousands of innocent people

11   would absolutely always favor the latter.

12        But I think the point is clear.  When we break the

13   law, we hurt society.  We do not get to pick and choose what

14   laws we follow.  We may perhaps make philosophical allowances

15   for disobeying unjust laws.  But even then, those who break

16   the law must be punished.

17        The kinds of sentences available and the sentencing

18   range established by the guidelines.  I stated earlier the

19   kinds of sentences available and I will summarize them again

20   here.  The charge of unauthorized disclosure of tax returns

21   carries a statutory maximum penalty of five years of

22   imprisonment plus supervised release range of -- plus he faces

23   a supervised release range following imprisonment of not more

24   than three years.  Under that guideline the range is 1 to 3

25   years, and as noted earlier community service may be ordered

1      as a condition of supervised release.

2              I have also considered the guidelines range which we

3      determined earlier.  And we determined earlier the guidelines

4      range if we were in Zone C of the sentencing table.  And

5      neither the government nor Ms. Manning objected to any of my

6      conclusions there.  And although Mr. Littlejohn himself does

7      not seek a probationary sentence, I note for the record that

8      with respect to probation the defendant is eligible for not

9      less than one no more than five years probation.

10             The statute of conviction sets a maximum fine of

11     $5,000, which becomes the guidelines range at offense level

12     13.  And determining the fine amount, the Court shall

13     consider, among other factors, the expected cost to the

14     government of any imprisonment, supervised release, or

15     probation component of the sentence.

16             I have considered all of these kinds of sentences in

17     determining which sentence to impose here.

18             The need to avoid unwarranted sentencing

19     disparities.  In his sentencing brief Mr. Littlejohn argues

20     that, quote, the breadth of case law supports a guidelines

21     sentence with a two- to four-level upward departure.  He

22     argues that nine other cases charging violations of Section

23     7213 involve far more egregious circumstances and more

24     condemnable motives than are present here and most resulted in

25     only probationary sentences.  He also argues that the only

1    sentences under Section 7213 that involve prison time had

2    highly unusual circumstances.  And he argues that his

3    disclosure was not self-serving and he did not intend to harm

4    taxpayers.

5         True, the cases Mr. Littlejohn are different, they

6    involve different conduct and different harms.  But to put it

7    mildly this case too presents, quote, highly unusual

8    circumstances.  Mr. Littlejohn sought a job, at least in part,

9    to steal the tax returns of the sitting president of the

10   United States and provide them to the press.  He then did

11   precisely that and disclosed the information to the New York

12   Times on multiple occasions.  He then helped the reporters

13   understand the returns for their reporting.  And he later took

14   the tax returns and tax return information of thousands of the

15   country's wealthiest individuals, and provided it to

16   ProPublica.

17        Despite what Mr. Littlejohn argues, I find it

18   implausible that he did not intend to harm at least some

19   taxpayers.  Indeed, he provided the returns to the New York

20   Times and ProPublica so that they could write articles about

21   Mr. Trump and wealthy individuals.  And a sophisticated and

22   experienced consultant like Mr. Littlejohn knew what type of

23   information tax returns contained, and how its unauthorized

24   disclosure would cause considerable harm to its victim.  The

25   fact that he removed bank account and other sensitive

1    information from the data does not negate the fact that he

2    wanted the publications to publish articles, and that he

3    absolutely knew the resulting harms that would follow.

4         Further, the Court agrees with the PSR's finding

5    that during the last five fiscal years there was an

6    insufficient number of defendants similarly situated to

7    Mr. Littlejohn to draw meaningful comparisons.  Mr. Littlejohn

8    committed a highly unusual and egregious offense, one intended

9    to harm thousands of taxpayers, including again, a sitting

10   President of the United States.

11        Nor does the Court find the non-tax disclosure cases

12   cited by Mr. Littlejohn on point here.  In *United States*

13   *versus Fry* the defendant received a five-year probationary

14   sentence for leaking five suspicious activity reports, a far

15   cry from thousands of taxpayer returns.

16        Mr. Littlejohn also cites, and his counsel today

17   discussed *U.S. v. Edwards* as a case with significant

18   parallels.  There the defendant, a treasury official,

19   disclosed over 50,000 documents, including confidential

20   reports on financial transactions to Buzzfeed.  Mr. Littlejohn

21   argues that although the relevant statute was different,

22   Mr. Edwards, like him, was facing a five-year felony with

23   sentencing guidelines range of 0 to 6 months, that did not

24   specifically account for the number of suspicious activity

25   reports she unlawfully disclosed.  The Court there declined to

1    depart from the guidelines and sentenced Edwards to six months

2    incarceration.  But there are several key differences.

3         First, unlike Mr. Littlejohn, Ms. Edwards did not

4    join the government agency with an intent to unlawfully

5    disclose the records.

6         Second, there the Buzzfeed journalist cultivated the

7    defendant and turned up the pressure for her to provide the

8    leaked documents, at one point noting that, quote, he was

9    going to be fired if his editor was angry with him because he

10   didn't have the same information that his competitor had.

11   There is no evidence and Mr. Littlejohn does not contend that

12   any reporter encouraged him to violate the law or turned up

13   the pressure in any way for him to do so.

14        Third, the defendant in *Edwards* suffered from

15   several medical and mental health conditions that weighed

16   against a long sentence of incarceration.  I am unaware of any

17   that Mr. Littlejohn suffers that should impact my sentence.

18   And for those reasons, I disagree that *Edwards* is helpful

19   here.

20        I take Mr. Littlejohn's other point that when

21   defendants disclose classified information, the corresponding

22   guidelines range are significantly greater, yet defendants

23   often receive a below guidelines sentence.  But I find those

24   cases to be in a different realm.  He argues that many involve

25   lying to investigators and putting individual's lives at risk,

1    facts that are not applicable here.  True.  But that argument

2    does not account for the other aggravating factors that do

3    exist here, which I have discussed repeatedly.

4           Mr. Littlejohn also filed a notice of supplemental

5    authority regarding the sentencing of two defendants that

6    occurred just this past Friday.  In those two cases, two

7    defendants who were federal government employees pled guilty

8    in cases involving the theft of sensitive government

9    databases, including law enforcement files, and the personal

10    identifying information of over 200 federal employees to sell

11    it to third parties located overseas.  Mr. Edwards received a

12    sentence of 18 months in prison and Mr. Patel received a

13    sentence of two years probation.

14           But unlike in this case, in Edwards and in Patel,

15    the government sought downward departures because of those

16    defendants' substantial assistance in the prosecution of

17    another co-defendant and requested a sentence within the

18    guidelines range following those departures.  That is much

19    different than in this case, in which Mr. Littlejohn signed a

20    plea agreement understanding that the government expected to

21    seek an upward departure, and his cooperation, while helpful,

22    did not provide substantial assistance in the prosecution of a

23    co-defendant.  In short, the cases are different, and the

24    Court does not find that an unwarranted disparity between them

25    prevents it from imposing an upward variance.  Further, as

1   discussed earlier, the cooperation that Mr. Littlejohn did

2   provide in this case is outweighed by the other factors I have

3   discussed, including as the government has put it, the fact

4   that Mr. Littlejohn was, quote, the engineer of his disclosure

5   scheme.

6        I also want to briefly discuss other sentences I

7   have imposed in January 6th cases, which I understand are

8   quite different from your crime, Mr. Littlejohn.  But I think

9   you may find it helpful to understand my reasoning in this

10  case.

11       This past Wednesday I sentenced two individuals who

12  were in the Capitol on January 6th.  And if you were here, you

13  would know that I expressed then in no uncertain terms my fear

14  of the threat that January 6th posed and continues to pose to

15  our democracy.

16       I have so far sentenced six individuals in January 6

17  cases, none of the six were charged with a felony, none were

18  involved with the planning of insurrection, none came to D.C.

19  with the intent to riot at the Capitol.  And considering those

20  facts and the individual circumstances of each individual, I

21  did not sentence any of them to prison time, though I did

22  sentence two to home confinement.

23       I mention all of this because of my belief that your

24  actions were also a threat to our democracy.  I have reacted

25  so strongly to your case because it engenders the same fear

1    that January 6th does, that we have gotten to point in our

2    society in which otherwise law-abiding, rational people

3    believe that they have no choice but to break the law to

4    further their political agendas.  And you do not fall into the

5    category of the individuals I have sentenced so far in January

6    6 cases.  You carefully planned what you did.  You had months

7    to consider whether to carry forward with your scheme and you

8    intentionally did so.  You have caused, or have risked

9    causing, immense personal harm to over a thousand Americans.

10   Which is all to say that my January 6 cases to-date are not

11   appropriate comparators for the sentence I will hand down in

12   your case.

13        I find it necessary to impose an upward variance

14   because, one, beginning with Mr. Littlejohn seeking employment

15   with Company A in 2017, he deliberately chose to engage in a

16   Multi-year criminal scheme.  Two, he targeted and intended to

17   violate the privacy of, and harm, thousands of taxpayers.  And

18   three, he made a series of calculating decisions, over years,

19   to take the law into his own hands by targeting a sitting

20   President of the United States and thousands of Americans.

21        Having considered all the factors under Section

22   3553(a), this Court finds that the sentence I'm about to

23   impose is sufficient, but not greater than necessary, to

24   reflect the seriousness of the instant offense, to promote

25   deterrence and respect for the law, to protect the public from

1   future crimes that may be committed by the defendant, and to

2   provide just punishment.

3            Mr. Littlejohn, to quote a fictional U.S. president,

4   When you walk out of here there will be people out there,

5   perhaps a great many, who will think of you as a hero.  I just

6   don't for a moment want you thinking I will be one of them.

7            Please stand for your sentence, sir.

8            Pursuant to the Sentencing Reform Act of 1984, and

9   in consideration of provisions of 18 U.S.C. 3553, it is the

10  judgment of the Court that I sentence you, Charles Edward

11  Littlejohn, for targeting the sitting President of the United

12  States and thousands of other Americans, and for all of the

13  reasons I have stated, following the upward departure and

14  upward variance I have imposed, to the statutory maximum term

15  of 60 months of imprisonment on Count 1 and 36 months of

16  supervised release on Count 1, which shall include a condition

17  300 hours total community service to occur during the term of

18  supervised release.

19           I further sentence you to the maximum statutory fine

20  of $5,000 on Count 1.  And in addition, you are ordered to pay

21  special assessments totaling $100 in accordance with 18 U.S.C.

22  3013.  I am not ordering restitution.

23           You may be seated, sir.

24           While on supervision, you shall abide by the

25  following mandatory conditions as well as all discretionary

conditions recommended by the probation office in Part D
sentencing options, pages 19 to 21 of the presentence report,
which are imposed to establish the basic expectations for your
conduct while on supervision.

The mandatory conditions include:  You must not
commit another federal state or local crime.  You must not
unlawfully possess a controlled substance.  The mandatory drug
testing condition is suspended based on the Court's
determination that you pose a low risk of future substance
abuse.  You must cooperate in the collection of DNA as
directed by the probation officer.  You must make restitution
in accordance with 18 U.S.C. 3663 and 3663(a), or any other
statute authorizing a sentence of restitution.

You shall comply with following special conditions:
Employment volunteer restrictions:  You must not engage in an
occupation, business profession, or volunteer activity that
would require or enable you to access restricted information
without the permission of the probation officer.

Computer monitoring:  You must allow the probation
officer install computer monitoring software on any computer
as defined in 18 U.S.C. 1030(e)(1) you use.

Computer search:  You must submit your computers as
defined in 18 U.S.C. 1030(e)(1) or other electronic
communications or data storage devices or media to a search.
You must warn any other people who use these computers or

devices capable of accessing the internet, the devices may be
subject to searches pursuant to this condition.  The probation
office may conduct a search pursuant to this condition only
when reasonable suspicion exists that there's a violation of
condition of supervision and that the computer or device
contains evidence of this violation.  Any search will be
conducted at a reasonable time and in a reasonable manner.

Financial information disclosure:  You must provide
the probation officer with access to any requested financial
information and authorize the release of any financial
information.  The probation office may share financial
information with the U.S. Attorney's Office.

Fine obligation:  You must pay the balance of any
fine within 90 days of this judgement.

Community service:  As I said earlier, you must
complete 300 hours of community service, at an organization
that must be approved by your probation officer, over the
three years of supervised release.

The financial obligations are immediately payable to
the Clerk of the Court for the U.S. District Court.  Within 30
days of any change of address you shall notify the clerk of
the Court of the change until such time as the financial
obligation is paid in full.

Pursuant to Federal Rules of Criminal Procedure
32.2(b)(4)(A) and (B), the Court's Preliminary Order of

1  Forfeiture entered on January 5, 2024, is now final and shall

2  be made part of the sentence and included in the judgement.

3           The probation office shall release the presentence

4  investigation report to all appropriate agencies, which

5  includes the U.S. probation office in the approved district of

6  residence in order to execute the sentence of the Court.

7  Treatment agencies shall return the presentence report to the

8  probation office upon the defendant's completion of

9  termination from treatment.

10          Ms. Manning, I am sympathetic to Mr. Littlejohn's

11  family situation, and I'm willing to order a voluntary

12  surrender date a bit out, but I need to put a time on it.  Do

13  you have a proposal for a voluntary surrender date?

14          MS. MANNING:  Yes, Your Honor, we would propose a

15  date the week after Easter, so that Mr. Littlejohn can spend

16  it with his family.  That would be the week of April 1st.

17          THE COURT:  All right.  I will give a voluntary

18  departure date of April 30th, 2024.

19          MS. MANNING:  Your Honor, if we may, we also have a

20  requested designation.

21          THE COURT:  Yes, of course.

22          MS. MANNING:  We would request the Court recommend a

23  designation to SCP Marion, which is the closest men's federal

24  prison camp to his family's residence in St. Louis.  My

25  understanding for that is that is that the Court also has to

1    note that his release residence is within a certain distance

2    of the facility that I'm happy to provide his father's

3    address.

4         THE COURT:  Okay.  Well, why don't you provide that

5    under seal.  I don't want to announce that today.  As you

6    know, I don't have control over that, but I will make that

7    recommendation.  And I will do everything that I can to make

8    sure that happens.

9         MS. MANNING:  Thank you, Your Honor.  And as part of

10   that recommendation, and pursuant to Mr. Wilson's

11   recommendation in the presentence report we would also that

12   part of the recommendation include a referral to the Federal

13   Prison Industries Program, so that he might be employed during

14   his incarceration.

15        THE COURT:  Yes, definitely will do that.

16        Notice of appeal:  Sir, you can appeal your

17   conviction to U.S. Court of Appeals for the D.C. Circuit under

18   the narrow circumstances that were not waived in your plea

19   agreement.  Under some circumstances a defendant also has the

20   right to appeal the sentence to the D.C. Circuit.  A defendant

21   may waive that right as part of a plea agreement, however, and

22   you have entered into a plea agreement which waives some of

23   your rights to appeal the sentence itself.

24        Pursuant to 28 U.S.C. 2255, you also have the right

25   to challenge the conviction entered or sentence imposed to the

83

extent permitted by that statute and your plea agreement.  I
notice -- sorry, any notice of appeal must be filed within 14
days of the entry of judgment, or within 14 days of the filing
of a notice of appeal by the government.

If you're unable to afford the cost of an appeal,
you may request permission from the Court to file an appeal
without cost to you.  On appeal, you may also apply for
court-appointed counsel.

Mr. Littlejohn, I expect that the hardest part of
this for you is knowing the effect it has and will have on
your friends and family.  I cannot take that away.  But I can
tell you that I know firsthand that your family and friends
love you.  They are here for you today.  They will be with you
while you serve your sentence.  And they will be there for you
after you finish it.

What you did in breaking the law, and the prison
sentence I have given you, need not define your life.  You can
choose to let this chapter of your life define you as a
failure, or you can choose to let this chapter propel you to a
better version of yourself.  If you so choose, I have faith
you will be able to create options for yourself to lead a full
and productive life after you serve your sentence.  And I wish
you every luck in finding your way through this.  I say this
with all sincerity, other than your family, partner, and Ms.
Manning, no one will be rooting harder for you for that and

1    for that outcome than I will be.

2          Ms. Manning, to you and your team, I know how hard

3    you worked to avoid the result.  You and your team have done a

4    tremendous job for your client.  Unfortunately, the public

5    does not get to see most of that work.  But no doubt your

6    legal defense was a key reason why Mr. Littlejohn received a

7    plea deal of only one felony count.  And I thought your

8    sentencing memorandum was exceptionally well done.  It made

9    coming to my sentence considerably harder.  You gave me a

10   great deal to consider and researcher.  And it forced me to

11   provide a deeper, more reasoned analysis, which is undoubtedly

12   an important public benefit.

13         I have been around committed criminal defense

14   attorneys enough to know how hard tough sentences are on the

15   lawyers as well as the client.  I appreciate how deeply you

16   and your team will also feel this sentence.  For what it's

17   worth, the fact that I take a different view of the case than

18   you argued, does not make your advocacy any less impressive.

19         Are there any objections to the sentence imposed not

20   already on the record, or anything else that we should address

21   today, Mr. Jacobson?

22         MR. JACOBSON:  No, Your Honor.

23         THE COURT:  Okay.  My clerk has asked me to clarify

24   that no restitution is being ordered as a condition of

25   supervised -- oh, he doesn't want me to clarify that, he wants

1    you to clarify that.  Can you -- Mr. Jacobson, can you confirm

2    that we do not have any restitution being ordered here today?

3                MR. JACOBSON:  Yes, Your Honor.  No victims have

4    come forward requesting restitution.

5                THE COURT:  All right.  Ms. Manning, any objections

6    other than ones, of course, noted on the record?

7                MS. MANNING:  No, Your Honor.

8                THE COURT:  Thank you, everyone.  We are adjourned.

9                (The proceedings were concluded at 12:04 p.m.)


10

11               I, Christine Asif, RPR, FCRR, do hereby certify that
     the foregoing is a correct transcript from the stenographic
12   record of proceedings in the above-entitled matter.

                          _____/s/_____
13                             Christine T. Asif
                             Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

< Dates >.
April  81:18.
April 1st
  81:16.
January
  76:12.
January 22nd,
  2024.
  8:4.
January 23rd,
  2024  6:23.
January 23rd,
  2024,
  5:12.
January 5,
  2024,
  81:1.
January 6
  76:16, 77:5,
  77:10.
January 6th
  67:24, 76:7,
  76:14,
  77:1.
November,
  58:21.
September 2021
  55:23.
$100 17:14,
  78:21.
$2 17:5.
$4 18:13.
$5 17:4, 17:5,
  17:7, 17:9,
  71:11,
  78:20.
.
.
< 0 >.
0 73:23.
000 17:4, 17:5,
  17:7, 17:9,
  18:13, 28:20,
  29:11, 29:12,
  48:11, 71:11,
  73:19,
  78:20.
04 85:9.
.
.

< 1 >.
1 12:18, 13:5,
  13:15, 16:13,
  70:24, 78:15,
  78:16,
  78:20.
1(a 11:4.
1(d 15:21.
10 15:1,
  15:11.
1030(e)(1
  79:21,
  79:23.
10:00 a.m.
  1:12.
11 6:2, 54:16,
  54:19.
12 13:11,
  14:25, 16:9,
  54:9, 54:19,
  64:12,
  85:9.
13 10:22, 13:7,
  13:14, 14:24,
  17:6, 17:10,
  54:11,
  71:12.
1331 1:27.
13th 1:34.
14 83:2,
  83:3.
15 37:8.
150 36:24.
152 61:5.
16 9:11.
1641 22:10.
18 3:3, 13:11,
  14:25, 16:1,
  16:9, 17:19,
  18:12, 22:10,
  29:11, 32:7,
  35:15, 43:23,
  53:7, 54:9,
  57:16, 64:12,
  75:12, 78:9,
  78:21, 79:12,
  79:21,
  79:23.
19 79:2.
1954 68:25.

1963 68:25.
1972 6:2.
1984 78:8.
.
.
< 2 >.
2 17:12.
200 75:10.
2000 67:21.
20001 1:46.
20004 1:29,
  1:36.
2010 56:2.
2015 55:17.
2017 9:12,
  62:13, 65:24,
  66:1,
  77:15.
2018 56:2.
202 1:47.
2020 55:17.
2021 57:17.
2023 1:11,
  10:5.
2024 81:18.
21 79:2.
2255 02:24.
23 59:21.
23-343 2:2.
23-343-ACR
  1:6.
25 13:5, 54:16,
  54:19.
28 82:24.
284 44:7.
29 3:13,
  61:23.
2H3 12:18,
  13:15.
2H3.1 10:7,
  13:3.
.
.
< 3 >.
3 16:13,
  70:24.
30 80:20.
300 78:17,
  80:16.
3013 78:22.

30Lh 81:18.
32 7:24.
32.2(b)(4)(a
  80:25.
333 1:45.
354-3247
  1:47.
3553 16:1,
  29:13,
  78:9.
3553(a 18:11,
  53:7, 54:14,
  65:15,
  77:22.
3553(d 47:11.
36 78:15.
3663 17:19,
  79:12.
3663(a 79:12.
3771(a)(4
  32:7.
399 67:14.
3B1.3 10:9.
3C1.1 10:16.
3E1 11:4.
3rd 1:28.
.
.
< 4 >.
4 15:1.
400 16:21,
  56:1.
404 6:2.
443-446 6:2.
476 6:1.
489 6:2.
4C1.1 10:25,
  15:12.
.
.
< 5 >.
5 12:18, 13:2,
  13:5,
  13:14.
50 48:11,
  73:19.
500 1:35.
555 1:34.
562 6:1.
5B1 17:12.

5C1 15:21.
5K 27:18,
  28:8.
.
.
< 6 >.
6 17:2,
  73:23.
60 16:7, 19:14,
  24:12, 24:23,
  25:6, 25:9,
  27:10, 30:11,
  32:2,
  78:15.
60-month
  27:7.
600 28:21,
  28:22.
641 22:15,
  35:15.
6th 76:12.
.
.
< 7 >.
7 28:21.
7213 21:17,
  21:21, 24:0,
  29:16, 30:15,
  30:24, 31:5,
  71:23,
  72:1.
7213(a)(1 3:3,
  21:18.
722 57:16.
729 57:16.
73 29:12.
.
.
< 8 >.
8 28:20.
8.2 56:2.
.
.
< 9 >.
9 10:7, 11:23,
  13:13, 14:24,
  17:5,
  59:21.
90 80:14.
_____/s/___

_____
  85:15.
.
.
< A >.
A. 1:24.
a.m. 54:19.
abide 67:20,
  78:24.
abided 7:23.
abiding 4:4,
  30:3.
able 4:10,
  19:10, 43:19,
  49:19, 52:25,
  58:5,
  83:21.
above 16:8,
  18:4, 27:8,
  36:20, 36:24,
  47:21, 52:10,
  65:13.
above-entitled
  85:13.
absence 20:6.
absolutely 5:5,
  23:15, 46:17,
  46:22, 70:11,
  73:3.
abuse 79:10.
abused 26:3,
  32:21,
  63:13.
abusing 30:4.
accept 9:22,
  19:5, 70:4.
acceptable 4:5,
  58:10,
  64:24.
acceptance
  11:2,
  47:24.
accepted 19:15,
  28:3, 35:2,
  40:9.
accepting
  14:14,
  35:24.
access 9:16,
  10:11, 10:12,

26:2, 27:5,
  43:19, 48:24,
  55:16, 79:17,
  80:9.
accessing
  64:20,
  80:1.
accomplish
  63:13.
accordance
  78:21,
  79:12.
accorded
  20:21.
Accordingly
  11:3.
account 18:10,
  18:24, 19:18,
  20:16, 24:18,
  25:19, 29:10,
  41:20, 50:23,
  51:3, 54:5,
  72:25, 73:24,
  75:2.
accountable
  33:1, 34:23,
  58:3.
accounted
  36:22,
  47:10.
accounting
  37:16.
accurately
  31:2,
  57:12.
achieve 25:12,
  52:14.
acknowledged
  9:13, 49:9.
acknowledges
  33:5,
  69:25.
across 48:24.
Act 49:20,
  50:17, 66:15,
  68:9, 70:7,
  78:8.
acted 40:14,
  41:10,
  51:21.

ACTION 1:5,
  2:2.
actions 4:25,
  28:4, 31:12,
  33:6, 51:19,
  52:5, 52:17,
  58:24, 58:25,
  59:24, 61:1,
  63:18, 66:6,
  76:24.
activities
  60:5.
activity 31:8,
  73:14, 73:24,
  79:16.
actors 59:2.
acts 3:18,
  3:19,
  62:20.
actual 20:23,
  29:9.
actually
  63:11.
acutely
  68:14.
Adam 67:11.
addiction
  62:18.
addition 11:17,
  45:21, 47:19,
  53:17, 60:18,
  78:20.
additional
  10:23, 11:12,
  11:15, 20:2,
  23:3, 25:10,
  29:4, 29:8,
  29:10, 50:9,
  61:16.
address 4:8,
  5:11, 7:13,
  7:15, 13:23,
  18:18, 35:12,
  37:10, 66:20,
  68:7, 68:21,
  80:21, 82:3,
  84:20.
addressed
  59:13.
addressing

7:18, 35:6.
adequate
  64:8.
adequately
  36:22,
  54:5.
adjourned
  85:8.
adjusted
  10:22.
adjustment
  10:25,
  15:12.
adjustments
  10:23.
administration
  10:17, 33:14,
  40:25.
admitted
  64:18.
advance 7:3,
  27:6.
advanced
  33:24.
advantage
  60:7.
advisory 10:3,
  12:13, 13:11,
  14:24, 15:1,
  53:4,
  54:10.
advocacy
  84:18.
advocate 69:5,
  70:1.
afar 39:2.
Affected 29:11,
  29:12.
affects 6:18.
afford 64:8,
  83:5.
afforded
  57:25.
agencies 81:4,
  81:7.
agency 74:4.
agenda 33:25.
agendas 27:6,
  27:7, 77:4.
agents 11:11,

50:22.
aggravating
  31:25, 47:14,
  75:2.
agitator
  69:3.
ago 62:9.
agonized 49:7,
  49:24.
agree 8:20,
  24:22, 45:13,
  47:4, 47:17,
  59:21.
agreed 11:8,
  19:11,
  39:22.
agreement 7:4,
  75:20, 82:19,
  82:21, 82:22,
  83:1.
agrees 65:1,
  73:4.
ahead 21:16,
  24:6, 25:24,
  28:11, 43:13,
  45:7,
  50:12.
aim 11:16.
alike 14:11.
allegations
  33:20.
allow 9:15,
  79:19.
allowances
  70:14.
alone 51:20,
  52:20,
  59:6.
already 3:17,
  6:5, 18:15,
  20:15, 24:25,
  28:22, 29:15,
  35:2, 40:7,
  43:11, 55:20,
  56:20,
  84:20.
alternative
  23:13.
although 36:19,
  61:18, 71:6,

73:21.
Amendment
  56:19, 57:24,
  69:20.
America 1:5,
  2:3, 39:16,
  47:16,
  68:24.
American 33:16,
  50:10, 51:23,
  56:9, 57:22,
  57:25, 58:4,
  69:19.
Americans 4:7,
  14:12, 14:19,
  14:20, 14:22,
  26:2, 26:21,
  30:7, 32:23,
  32:25, 54:7,
  55:5, 58:10,
  59:10, 66:5,
  77:9, 77:20,
  78:12.
Americans.
  55:25.
among 17:16,
  24:13, 42:17,
  52:2, 53:22,
  58:21, 64:10,
  71:13.
amount 17:15,
  26:21,
  71:12.
ANA C. REYES
  1:17.
analysis 36:1,
  54:13,
  84:11.
anarchy 70:2.
Andre 1:39,
  2:22.
Andrew 39:20.
angry 74:9.
animus 40:12,
  41:9.
announce 57:19,
  82:5.
annual 28:20,
  28:21.
answer 45:6,

52:12.
answered
  4:24.
anticipating
  8:14.
anybody 49:3.
apologize
  51:18,
  63:17.
apparent 31:1,
  49:24.
appeal 82:16,
  82:20, 82:23,
  83:2, 83:4,
  83:5, 83:6,
  83:7.
Appeals
  82:17.
appear 50:16,
  59:17.
APPEARANCES
  1:21.
appearing
  38:16.
applaud 68:3.
applicable
  10:6, 12:4,
  12:15, 15:3,
  16:4, 53:21,
  75:1.
Application
  12:17, 13:2,
  13:14, 15:11,
  29:15.
applied 10:23,
  14:16, 49:14,
  54:15.
applies 10:4,
  10:8, 10:15,
  11:1,
  69:17.
apply 45:14,
  55:22, 69:23,
  83:7.
appreciate
  38:12,
  84:15.
approached
  63:2.
appropriate

13:2, 13:8,
13:12, 15:14,
24:16, 24:20,
24:23, 30:13,
32:2, 54:3,
67:13, 77:11,
81:4.
approved 80:17,
81:5.
approximately
28:21, 29:11,
29:21.
arena 65:10.
argue 49:22.
argued 67:15,
67:19,
84:18.
argues 15:10,
59:15, 63:24,
67:17, 71:19,
71:22, 71:25,
72:2, 72:17,
73:21,
74:24.
arguing 47:9.
argument 69:13,
75:1.
arguments 7:25,
56:11.
arisen 27:16.
arose 5:11,
7:14.
around 29:25,
58:19,
84:13.
article 26:16,
56:16.
articles 7:6,
44:7, 44:14,
72:20,
73:2.
Ashcraft
2:13.
aside 6:21,
29:14,
67:23.
Asif 1:41,
85:11,
85:16.
aspects 60:1.

assertions
60:14.
assess 55:21.
assessment
17:14.
assessments
78:21.
assigning
49:16.
assistance
27:19, 28:5,
75:16,
75:22.
assisted 11:15,
28:1, 28:4,
61:15.
associated
29:8,
59:19.
assuming
55:12.
assurance
61:11.
assured
37:22.
Athens 67:19.
attached
7:16.
attack 5:7,
5:9, 57:1,
59:10.
attacked 33:10,
33:12.
attacks 29:5.
attempted
10:17.
attention 38:3,
40:13, 41:10,
45:4, 60:24,
67:24.
Attorney 8:16,
80:12.
attorneys 38:8,
60:8,
84:14.
attracted
44:21.
Aurelius
52:22.
authentic

68:9.
author 56:17.
authorities
67:13.
authority 7:11,
63:13,
75:5.
authorize 7:19,
80:10.
authorizing
79:13.
authors 56:2.
available 6:5,
18:11, 53:21,
55:20, 56:3,
60:6, 70:17,
70:19.
avarice
40:11.
Avenue 1:45.
average 55:24,
56:1.
averse 7:21.
avoid 52:2,
53:22, 67:16,
71:18,
84:3.
avoidance 6:22,
54:12.
await 63:21.
aware 26:16,
38:21,
52:8.
away 3:24, 4:2,
4:22, 45:10,
45:14, 45:23,
45:25,
83:11.
.
.
< B >.
back 24:9,
29:23, 48:25,
50:5, 63:20,
68:3.
backing
25:15.
backlash
60:24.
bad 3:18,

3:19.
balance 65:18,
80:13.
balancing
70:8.
bank 72:25.
banking
13:24.
bar 67:6.
base 6:23,
10:7,
46:18.
Based 12:11,
16:8, 18:14,
30:11, 44:2,
54:7, 54:13,
60:23,
79:8.
basic 79:3.
basically
48:19.
basis 47:12,
54:17.
bear 18:8,
36:8.
bearing
40:20.
bears 69:24.
become 24:1,
48:18.
becomes 17:7,
54:23,
71:11.
Bedau 67:11.
bedrock 45:22,
51:3.
begin 36:3,
54:5.
Beginning 10:5,
45:8,
77:14.
behalf 2:10,
8:19,
59:23.
beings 62:4.
belief 5:1,
51:22,
76:23.
beliefs 65:11,
65:13.

believe 18:1,
    25:2, 25:7,
    25:10, 35:18,
    35:25, 38:24,
    40:19, 44:11,
    52:3, 66:14,
    66:15,
    77:3.
Believed 42:16,
    58:18.
beloved 53:2.
below 16:4,
    36:13, 36:14,
    36:15,
    74:23.
bench 51:4.
benchmark
    45:22.
benefit 20:20,
    20:23, 24:25,
    52:23,
    84:12.
best 38:7,
    52:4.
betrayed
    52:14.
better 63:9,
    83:20.
Biden 33:13.
biggest 21:6.
binder 43:3,
    48:6,
    50:16.
Birmingham
    68:23.
bit 24:4, 24:5,
    63:9,
    81:12.
blows 50:21.
bomb 58:17.
book 6:19.
booth 65:11.
bother 23:9.
bottom 23:18,
    34:17,
    36:17.
Branch 68:23.
breaches 11:17,
    61:17.
breadth

71:20.
break 4:6,
    27:12, 48:20,
    52:24, 54:16,
    66:21, 67:9,
    68:21, 70:6,
    70:12, 70:15,
    77:3.
breaking
    83:16.
breaks 70:2.
Brevard
    57:16.
brick 63:5,
    63:6.
brief 7:18,
    7:19, 30:15,
    31:2, 43:3,
    48:8, 49:20,
    71:19.
briefly 5:11,
    7:13, 28:16,
    35:12, 36:2,
    76:6.
bring 19:8,
    22:2, 22:9,
    22:12, 22:20,
    23:15.
bringing 46:21,
    55:2.
brings 10:21.
broad 5:24,
    33:16.
broke 46:9,
    69:14.
brother 38:20,
    61:25, 62:18,
    62:24.
brought 4:17,
    20:6, 23:4,
    23:10, 25:7,
    25:10, 29:17,
    41:9.
Buchanan
    39:20.
bulwark 59:2.
burden 52:9.
business 60:4,
    60:19,
    79:16.

businesses
    29:12.
Buzzfeed 48:11,
    73:20,
    74:6.
.
.
< C >.
C. 1:10, 1:46,
    15:16, 16:1,
    17:19, 22:10,
    32:7, 53:7,
    57:16, 67:15,
    76:18, 78:9,
    78:21, 79:12,
    79:21, 79:23,
    82:17, 82:20,
    82:24.
Cabinet 6:20.
calculated
    64:17.
calculates
    12:13.
calculating
    53:4,
    77:18.
calculation
    10:3, 10:4,
    11:24, 15:23,
    17:8, 47:12,
    47:19.
calculations
    16:8.
calculus
    65:3.
call 3:16,
    4:24,
    44:15.
called 32:19,
    32:20.
calling 8:14.
camp 81:24.
campaign 32:9,
    32:10,
    55:8.
candidate
    55:10,
    58:15.
cap 25:6.
capable 80:1.

Capitol 58:11,
    76:12,
    76:19.
capitols
    58:17.
care 39:19,
    39:21, 39:22,
    47:10, 62:10,
    62:14.
careful 29:19,
    31:10.
carefully 5:16,
    77:6.
caring 3:14,
    62:6.
carries 16:6,
    70:21.
carry 77:7.
carrying
    58:12.
Cars 14:7.
catalyst
    65:25.
Category 12:5,
    12:6, 12:7,
    12:12, 14:25,
    36:24,
    77:5.
caught 43:7.
cause 72:24.
caused 12:24,
    13:17, 27:25,
    52:6, 59:24,
    77:8.
causing 77:9.
cents 13:23.
century
    32:20.
certain 6:7,
    7:15, 12:19,
    13:25, 45:17,
    58:24,
    82:1.
Certainly
    43:19, 50:13,
    55:4,
    60:18.
certify
    85:11.
chair 5:2.

challenge
  82:25.
chambers
  5:12.
change 55:10,
  55:11, 56:18,
  62:6, 63:8,
  80:21,
  80:22.
changed 35:18,
  68:9.
channels 48:16,
  48:18.
chapter 83:18,
  83:19.
character
  62:19,
  68:17.
characteristic
  45:18.
characteristics
  53:20, 61:22,
  62:2,
  63:25.
characterized
  31:3.
charge 16:6,
  18:24, 31:23,
  35:23,
  70:20.
charged 21:21,
  21:22, 21:24,
  22:7, 24:11,
  24:12, 25:20,
  35:17, 46:11,
  46:13, 46:19,
  46:20,
  76:17.
charges 19:25,
  20:5, 20:9,
  23:3, 23:5,
  23:13, 23:17,
  23:22.
charging 22:15,
  23:2, 25:3,
  35:15,
  71:22.
Charles 2:3,
  3:1, 62:24,
  78:10.

CHARLES EDWARD
  1:10.
Chaz 63:1.
checked 44:5.
Cherry 1:32,
  2:10, 35:5,
  35:10, 47:11,
  48:5.
child 30:23.
children
  14:1.
choice 28:23,
  77:3.
choose 70:13,
  83:18, 83:19,
  83:20.
choosing
  67:19.
chose 42:15,
  77:15.
Christine 1:41,
  85:11,
  85:16.
Circuit 57:16,
  82:17,
  82:20.
circulated
  60:23.
circumstance
  50:1,
  61:18.
circumstances
  3:12, 9:24,
  18:14, 47:14,
  53:19, 59:8,
  61:20, 65:3,
  65:20, 71:23,
  72:2, 72:8,
  76:20, 82:18,
  82:19.
cite 35:25,
  37:19.
cited 30:15,
  30:21, 30:24,
  36:11, 36:19,
  37:15, 41:3,
  43:2, 48:8,
  73:12.
cites 44:14,
  73:16.

citizen
  67:17.
citizens
  26:4.
city 69:2.
Civil 6:18,
  6:21, 42:12,
  69:10.
claim 69:3.
clarify 84:23,
  84:25,
  85:1.
CLARKE 1:24,
  2:12, 2:15,
  2:17.
classified
  31:6,
  74:21.
clear 5:6,
  5:21, 7:20,
  21:10, 22:24,
  28:13, 36:6,
  41:24, 42:3,
  46:17, 46:22,
  70:12.
clearances
  50:20.
Clearly 11:1,
  32:24,
  50:10.
Clerk 5:15,
  7:16, 7:24,
  38:6, 80:20,
  80:21,
  84:23.
clerks 38:9,
  67:2.
client 9:1,
  46:9, 48:21,
  48:23, 52:15,
  84:4,
  84:15.
climate 65:6.
cloaked
  67:25.
close 38:20,
  49:5.
closest
  81:23.
co-conspirators

28:2.
co-defendant
  75:17,
  75:23.
Code 3:3,
  35:15.
coincide
  33:13.
coincidentally
  6:14.
Cole 2:13.
colleague
  47:11.
colleagues
  38:3,
  52:15.
collection
  79:10.
college 42:5,
  42:13.
colloquial
  28:14.
colonies
  67:6.
colossal 50:3,
  50:4.
colossally
  3:18.
Columbia
  1:44.
COLUMBIA 1:2.
combination
  15:9, 63:8.
combined
  39:21.
Comey 65:25.
coming 35:3,
  66:13,
  84:9.
comments 32:16,
  44:14.
Commission
  5:22.
commit 3:18,
  79:6.
commitment
  58:4, 58:7,
  63:1.
committed
  26:12, 35:14,

46:10, 47:2,
50:4, 62:3,
73:8, 78:1,
84:13.
Committee
5:14.
committing
51:21.
common 45:22,
47:6.
communicate
30:13.
communicates
27:4.
communications
79:24.
Community
16:19, 53:2,
70:25, 78:17,
80:15,
80:16.
Company 9:13,
9:14, 10:10,
48:25, 60:18,
77:15.
comparators
77:11.
comparison
30:25.
comparisons
73:7.
compassion
62:3.
compelling
65:3.
compensation
51:21.
competitor
74:10.
complete
80:16.
completely
42:18.
completion
81:8.
complex
64:11.
compliance
60:15.
comply 53:9,

60:11,
79:14.
component
17:18,
71:15.
Computer 79:19,
79:20, 79:22,
80:5.
computer-aided
1:50.
computers
79:22,
79:25.
conceded 47:18,
54:4.
concedes 13:1,
13:7,
13:12.
conceivable
23:3.
concern 21:2,
58:6, 60:3.
concerned
68:14.
concerning
61:4.
concerns 24:7,
37:1.
conclude
54:9.
concluded
55:25,
85:9.
concludes
63:19.
conclusion
43:9,
43:12.
conclusions
56:7, 56:11,
71:6.
condemnable
71:24.
condition 15:8,
16:20, 71:1,
78:16, 79:8,
80:2, 80:3,
80:5,
84:24.
conditions

15:9, 38:22,
74:15, 78:25,
79:1, 79:5,
79:14.
conduct 5:24,
10:20, 10:21,
11:15, 21:19,
23:19, 31:23,
40:7, 41:13,
42:10, 46:12,
46:25, 47:1,
47:2, 47:8,
50:15, 53:14,
53:24, 56:17,
57:13, 58:7,
59:17, 61:15,
64:9, 64:24,
72:6, 79:4,
80:3.
conducted
23:16,
80:7.
confidence
52:21.
confident
21:11, 22:12,
22:21.
confidential
12:22, 21:12,
43:20, 60:13,
73:19.
confinement
15:9,
76:22.
confirm 9:10,
85:1.
Congress 5:22,
6:8, 53:7,
55:11,
69:18.
congressional
56:20.
connection
8:24.
consequences
27:7, 31:11,
31:20, 43:17,
52:9, 61:3,
64:3.
consider 5:25,

12:16, 16:2,
17:16, 23:12,
53:6, 53:18,
54:8, 65:4,
71:13, 77:7,
84:10.
considerable
66:18,
72:24.
considerably
84:9.
consideration
5:18, 14:21,
36:21, 51:8,
51:13,
78:9.
considered
54:2, 71:2,
71:16,
77:21.
considering
5:16, 11:22,
31:17, 66:12,
66:19,
76:19.
consistent
62:23,
68:5.
constant
37:3.
Constitution
5:4, 45:21,
68:8.
constitutional
5:7, 40:2,
45:16, 57:2,
58:12.
constructed
66:7.
consultant
64:1, 64:19,
72:22.
consumer
56:4.
contain 6:5.
contained
26:17,
72:23.
containing
58:20.

contains
  80:6.
contemplate
  24:14.
contend
  74:11.
contest
  59:16.
context
  68:24.
continue 5:10,
  57:15.
continued
  68:16.
continues
  60:14,
  76:14.
Contitution
  1:45.
contract
  42:15.
contractors
  64:14.
contribute
  53:1,
  59:11.
control 82:6.
controlled
  79:7.
convey 38:23.
convicted 20:1,
  36:12, 43:10,
  43:11,
  43:14.
conviction
  10:19, 10:21,
  17:3, 71:10,
  82:17,
  82:25.
convinced
  48:19.
cooperate
  27:12,
  79:10.
cooperated
  11:7, 19:16,
  24:18, 24:24,
  46:14,
  61:13.
cooperating

35:24.
cooperation
  20:15, 27:11,
  27:20, 27:22,
  28:6, 28:7,
  28:13, 28:14,
  46:21, 61:18,
  75:21,
  76:1.
core 22:4,
  23:19,
  23:22.
correct 13:6,
  17:24, 18:2,
  19:12, 27:15,
  27:24,
  85:12.
corresponding
  74:21.
corrosive
  68:15.
corruption
  33:18,
  33:20.
cost 17:16,
  50:9, 71:13,
  83:5, 83:7.
counsel 5:18,
  7:3, 11:6,
  11:13, 46:2,
  47:20, 53:5,
  73:16,
  83:8.
Count 17:14,
  19:11, 21:9,
  21:18, 21:25,
  22:1, 22:15,
  22:19, 22:20,
  23:15, 23:16,
  24:2, 25:4,
  25:8, 25:21,
  35:12, 78:15,
  78:16, 78:20,
  84:7.
countless
  60:17,
  62:20.
country 3:23,
  39:4, 52:3,
  53:2, 55:25,

58:19, 65:25,
  72:15.
counts 19:8,
  21:21, 21:24,
  22:2, 22:8,
  25:8,
  25:11.
course 5:2,
  7:10, 7:25,
  13:17, 25:25,
  29:21, 40:17,
  41:18, 41:19,
  41:20, 50:6,
  51:16, 55:20,
  59:13, 63:22,
  68:20, 68:22,
  70:5, 81:21,
  85:6.
court-appointed
  83:8.
courthouse
  6:15.
courtroom 3:9,
  8:11, 8:13,
  28:19, 32:9,
  33:9, 52:12,
  69:23.
courts 5:23.
cover 26:9,
  50:21.
coverage
  60:12.
covered 13:15,
  21:19.
covers 25:4,
  31:23.
create 83:21.
created 66:3.
creative 22:2,
  23:21.
credible 40:18,
  58:16,
  69:13.
credit 47:23.
crime 25:17,
  27:1, 27:3,
  33:8, 33:24,
  35:13, 41:14,
  45:15, 46:10,
  47:1, 49:4,

50:4, 51:20,
  52:12, 62:3,
  62:5, 76:8,
  79:6.
Crimes 20:1,
  26:13, 31:12,
  31:13, 31:14,
  31:15, 33:24,
  46:14, 46:19,
  53:15, 65:16,
  78:1.
Criminal 1:5,
  2:2, 12:4,
  12:6, 12:7,
  12:11, 14:25,
  26:6, 31:7,
  36:23, 36:25,
  52:14, 53:14,
  54:6, 57:5,
  57:13, 61:23,
  63:14, 64:3,
  64:9, 64:12,
  77:16, 80:24,
  84:13.
criteria
  10:24.
Criticism
  57:20,
  58:1.
criticize
  57:25.
Crito 66:24,
  67:15,
  67:17.
cry 73:15.
crystal
  41:24.
cultivated
  48:14,
  74:6.
cum 42:5.
current 44:7,
  59:12,
  65:5.
cushion 4:10.
cut 32:10,
  49:21.
.
.
< D >.

dad 46:16.
damage 26:5,
  26:6, 26:20,
  60:10,
  60:19.
dangerous 9:17,
  33:17.
darkness 54:21,
  54:25.
data 10:11,
  10:12, 10:13,
  11:21, 13:21,
  13:24, 13:25,
  14:13, 21:25,
  26:3, 26:19,
  26:25, 27:5,
  29:25, 30:14,
  32:22, 43:20,
  48:10, 49:19,
  49:20, 63:6,
  73:1,
  79:24.
databases
  11:17, 48:10,
  61:17,
  75:9.
date 17:20,
  81:12, 81:13,
  81:15,
  81:18.
daughter
  34:6.
day 5:15, 5:17,
  14:8, 25:3,
  48:4, 60:4,
  62:11.
days 4:16,
  80:14, 80:21,
  83:3.
DC 1:29,
  1:36.
deal 32:19,
  32:20, 33:24,
  33:25, 34:24,
  35:2, 60:23,
  84:7,
  84:10.
dealing 21:5.
death 54:25,
  58:16,

67:16.
debated 67:14,
  67:21.
decades
  39:13.
decide 55:7,
  55:8.
decided 9:14,
  51:25.
deciding 52:8,
  54:2, 57:7.
decision 6:9,
  6:23, 18:8,
  21:7, 23:2,
  23:9, 23:15,
  25:3, 38:14,
  46:19, 49:23,
  49:24, 52:11,
  55:7, 66:11,
  66:13.
decisions 4:1,
  52:4, 64:15,
  64:17,
  77:18.
declaring
  57:2.
declined
  73:25.
decrease
  11:1.
decreased
  11:3.
dedicated
  42:12.
deeds 33:1.
deep 3:14,
  50:7, 50:8,
  50:10,
  50:11.
deeper 84:11.
deeply 4:15,
  13:22, 61:4,
  67:8,
  84:15.
defend 5:4,
  67:24.
defendants
  53:22, 73:6,
  74:21, 74:22,
  75:5, 75:7,

75:16.
defense 4:18,
  11:6, 30:21,
  45:9, 47:20,
  84:6,
  84:13.
deference
  43:25.
define 83:17,
  83:18.
defined 79:21,
  79:23.
definitely
  42:9, 42:23,
  82:15.
defying 70:1.
degree 42:7.
Delaware
  62:15.
deliberate
  64:11,
  64:15.
deliberately
  77:15.
deliberations
  21:3, 21:5.
delivering
  63:4.
demands 5:9,
  65:6.
Democracy 5:7,
  9:18, 40:1,
  45:16, 54:20,
  54:21, 54:22,
  57:2, 58:2,
  58:8, 58:25,
  59:5, 76:15,
  76:24.
democratic
  59:14.
democrats
  56:20.
demonstrated
  11:2.
demonstration
  69:1.
depart 74:1.
Department
  1:25, 7:2,
  8:22, 11:10,

23:1, 33:5,
  43:4, 44:3.
departure
  12:17, 12:19,
  13:2, 13:7,
  13:13, 14:23,
  15:3, 15:15,
  17:6, 29:14,
  36:4, 36:6,
  37:8, 37:17,
  54:4, 54:11,
  54:15, 71:21,
  75:21, 78:13,
  81:18.
departures
  11:22, 12:16,
  75:15,
  75:18.
deprive 51:6.
described 18:4,
  47:2, 50:3,
  61:20.
describes
  68:24.
deserved
  52:1.
deserves 21:8,
  40:3.
designated
  12:7.
designation
  81:20,
  81:23.
desire 52:6,
  66:2.
desires
  33:13.
Despite 47:7,
  52:5,
  72:17.
destroying
  26:10.
destructive
  68:18.
detail 16:4,
  20:23.
details 28:24,
  30:6.
detect 11:20.
deter 11:20,

40:5, 53:14,
  64:13,
  67:9.
determination
  20:4, 20:5,
  23:5, 23:14,
  23:17,
  79:9.
determinations
  8:7, 22:25.
determined
  12:15, 54:10,
  71:3.
determining
  17:15, 71:12,
  71:17.
deterrence
  30:12, 31:13,
  37:2, 42:4,
  43:5, 64:8,
  77:25.
deterrent
  44:2.
device 80:5.
devices 30:1,
  79:24,
  80:1.
devoted 61:24,
  63:3.
devotion 62:2,
  62:17.
diary 34:6.
dice 23:21,
  27:13.
die 54:22.
dies 54:21.
difference
  18:22,
  18:24.
differences
  74:2.
different 3:12,
  5:2, 21:25,
  30:1, 49:14,
  72:5, 72:6,
  73:21, 74:24,
  75:19, 75:23,
  76:8,
  84:17.
differently

4:12.
difficult
  23:23, 51:5,
  60:10,
  62:1.
diligent
  63:1.
direct 60:16.
directed
  79:11.
directly 24:14,
  28:18.
disagree 5:21,
  40:2, 45:13,
  74:18.
disagreement
  59:12.
disagreements
  69:15.
disagrees
  46:10.
disclose 29:24,
  52:8, 55:4,
  55:5, 66:1,
  66:5, 74:5,
  74:21.
disclosed
  14:13, 26:18,
  28:20, 29:7,
  32:24, 60:22,
  61:7, 72:11,
  73:19,
  73:25.
disclosing
  21:11, 21:12,
  26:4, 30:14,
  30:19, 50:20,
  56:8, 57:8,
  64:3, 64:20,
  66:22.
disclosure 3:2,
  16:6, 21:25,
  22:1, 22:5,
  22:8, 22:20,
  23:19, 41:4,
  41:8, 55:11,
  56:18, 59:19,
  69:16, 70:20,
  72:3, 72:24,
  73:11, 76:4,

80:8.
disclosures
  11:21, 13:3,
  26:5, 26:11,
  28:18, 29:11,
  29:21, 31:10,
  59:17.
discourse
  26:8.
discovery
  11:15,
  61:16.
discretion
  5:23, 65:2.
discretionary
  78:25.
discuss 7:17,
  7:20, 16:4,
  18:7, 54:1,
  61:21, 67:5,
  69:7, 76:6.
discussed 9:2,
  12:12, 16:3,
  59:7, 73:17,
  75:3, 76:1,
  76:3.
discussing
  43:1, 66:25,
  67:3.
discussion 4:8,
  65:5, 66:23,
  68:20, 69:10,
  69:12.
dismissing
  66:17.
disobedience
  69:10.
disobey 69:7,
  69:11.
disobeying
  70:15.
disparaged
  60:17.
disparities
  53:22,
  71:19.
disparity
  75:24.
disputed 9:7.
disregard

39:11, 39:12,
  39:13.
disregarding
  40:3.
disrespect
  32:17.
dissecting
  3:22.
disseminated
  29:4.
dissemination
  10:13.
dissimilar
  50:15.
dissuade
  65:2.
distance
  82:1.
distinct
  41:12.
distinction
  41:2.
distinguishing
  69:3.
distress
  59:25.
District 1:1,
  1:2, 1:18,
  1:43, 1:44,
  80:20,
  81:5.
division
  56:4.
divulge 30:6.
DNA 79:10.
docket 7:24,
  13:5,
  59:21.
documents 7:3,
  73:19,
  74:8.
Doe 44:24.
doing 5:1,
  7:22, 34:4,
  40:5, 45:19,
  63:5, 64:4,
  66:18.
DOJ 22:1,
  33:20.
dollars

13:22.
domestic 5:5.
Donald 9:17,
    33:9, 34:9.
done 8:18,
    10:4, 34:14,
    38:10, 61:10,
    84:3, 84:8.
doorstep
    14:6.
doubt 6:22,
    50:3, 54:12,
    62:23,
    84:5.
down 61:14,
    77:11.
download
    10:13.
downward
    75:15.
dozens 37:15,
    68:4.
draw 56:10,
    73:7.
driven 52:5,
    66:6.
driver 13:24.
drives 28:5.
drug 79:7.
due 38:21,
    46:1.
dumb 42:8,
    42:9.
during 6:18,
    62:1, 62:8,
    73:5, 78:17,
    82:13.
duties 58:5.
duty 67:17,
    68:12.
.
.
< E >.
earlier 30:12,
    42:1, 46:13,
    65:5, 70:18,
    70:25, 71:3,
    76:1,
    80:15.
Easter 81:15.

easy 38:14,
    52:1,
    66:11.
economic 31:18,
    55:22,
    60:10.
economics
    42:7.
economy 67:5.
editor 74:9.
Edward 2:3,
    78:10.
Edwards 48:7,
    73:17, 73:22,
    74:1, 74:3,
    74:14, 74:18,
    75:11,
    75:14.
effect 44:2,
    58:12, 68:15,
    83:10.
effective
    55:19,
    65:17.
effects 6:10.
efficiency
    63:5.
egregious 47:8,
    62:5, 71:23,
    73:8.
eight 49:10.
either 5:25.
elected 19:25,
    41:22, 41:25,
    57:3, 58:3,
    58:5, 59:3,
    65:8.
election 26:7,
    58:20.
electronic
    79:23.
eligibility
    55:10.
eligible 16:23,
    71:8.
Elon 33:9,
    34:9.
email 5:12,
    5:17, 7:20.
emailed 7:14.

emailing
    38:6.
embarrassing
    28:24.
embodiment
    39:20.
emotional
    61:2.
employed
    82:13.
employee
    30:22.
employees 75:7,
    75:10.
Employment
    9:13, 77:14,
    79:15.
Emporer
    52:21.
enable 60:14,
    79:17.
encouraged
    74:12.
end 9:18,
    11:21, 14:8,
    14:15, 15:14,
    23:7, 25:3,
    37:7, 52:12,
    53:9, 56:5,
    57:22, 60:7,
    60:15, 60:20,
    61:3.
endangers
    50:21.
endorsed
    67:19.
endorsing
    56:6.
ends 54:23.
enemies 5:5.
enforcement
    37:4, 50:19,
    75:9.
engage 77:15,
    79:15.
engaged
    64:11.
engagement
    37:3.
engenders

76:25.
engineer
    76:4.
enhancement
    24:15.
enhancements
    47:19.
enormous 25:16,
    26:21.
enough 3:17,
    8:21,
    84:14.
ensure 53:8,
    58:4.
entered 81:1,
    82:22,
    82:25.
enthusiasm
    63:3.
entirely
    50:14.
entities 28:22,
    59:20.
entitled 6:20,
    14:11, 14:18,
    14:21, 55:23,
    56:14.
entries
    49:25.
entrusted
    26:2.
entry 83:3.
episode 6:12.
equal 14:11,
    14:14.
equally
    69:17.
equivalent
    37:7.
error 50:4.
Espionage
    50:17.
Esquire 1:23,
    1:24, 1:31,
    1:32.
essentially
    28:23.
establish
    13:10, 68:11,
    79:3.

established
  68:13,
  70:18.
estimated
  56:1.
ethics 66:12,
  66:19.
evacuations
  58:19.
evading 70:1.
event 20:3.
Everyone 32:8,
  44:18, 46:2,
  56:14, 63:9,
  66:24, 67:24,
  69:17,
  85:8.
everything
  41:23, 60:3,
  65:6, 65:8,
  66:14,
  82:7.
evidence 11:15,
  26:10, 61:16,
  74:11,
  80:6.
evidentiary
  8:10.
evolution
  67:5.
ex-husband
  30:22.
exact 21:20,
  47:1.
exactly 35:13,
  47:2, 60:2,
  68:2.
example 30:20,
  34:5, 36:23,
  41:2, 48:7,
  62:8.
examples 12:19,
  58:22.
excellent
  46:2.
exceptional
  29:16,
  39:18.
exceptionally
  84:8.

excerpts
  59:24.
excess 16:21.
exchange
  26:23.
exclusive
  3:20.
excuse 6:16.
execute 81:6.
executed 31:16,
  44:15.
execution
  29:19, 31:10,
  68:17.
exemplary
  42:11.
exercise 58:5,
  65:2.
exercising
  56:19.
exist 75:3.
exists 68:8,
  80:4.
expect 21:13,
  26:23, 26:24,
  83:9.
expectation
  64:20.
expectations
  79:3.
expected 17:16,
  71:13,
  75:20.
expecting
  8:10.
experience
  52:25,
  64:5.
experienced
  26:1,
  72:22.
expiration
  11:9.
explain 18:22,
  20:22, 25:1,
  54:17.
explained 29:2,
  36:10, 61:5,
  62:25.
explains 11:6,

62:9, 62:19,
  63:16, 65:24,
  66:8.
explanation
  19:21.
explicit
  68:9.
exploit
  29:22.
exposed 20:7.
exposing
  58:6.
exposure
  20:2.
expressed
  63:22,
  76:13.
expression
  65:10.
expressly 5:22,
  56:20.
extensive
  26:20,
  29:19.
extent 25:5,
  83:1.
extract 30:5.
.
.
< F >.
F.4th 57:16.
face 27:7,
  31:1, 55:6.
faced 19:25,
  20:17.
faces 70:22.
facility
  82:2.
facing 20:14,
  20:15, 20:16,
  20:17, 20:20,
  21:9, 24:2,
  73:22.
fact 6:7, 6:9,
  9:7, 9:25,
  20:15, 24:1,
  40:12, 40:19,
  44:20, 45:9,
  46:20, 52:13,
  72:25, 73:1,

76:3,
  84:17.
factor 29:18,
  54:8, 59:7.
factors 16:2,
  17:16, 18:8,
  18:11, 19:18,
  32:1, 36:21,
  38:13, 45:15,
  53:7, 53:25,
  54:2, 54:9,
  54:14, 61:21,
  65:19, 71:13,
  75:2, 76:2,
  77:21.
facts 9:24,
  18:14, 36:9,
  49:21, 75:1,
  76:20.
factual 8:7,
  9:22,
  11:18.
failure
  83:19.
failures
  3:23.
fair 20:19,
  48:3.
fairness 48:2,
  66:13,
  66:20.
faith 27:1,
  52:17, 52:24,
  83:20.
fall 77:4.
false 60:14.
families 56:1,
  57:11.
family 3:13,
  4:11, 4:23,
  14:5, 29:1,
  32:23, 38:18,
  49:5, 50:11,
  51:14, 58:6,
  59:25, 60:17,
  60:25, 62:9,
  62:11, 62:12,
  62:17, 81:11,
  81:16, 81:24,
  83:11, 83:12,

83:24.
far 46:5,
   71:23, 73:14,
   76:16,
   77:5.
farewell
   68:7.
fatal 68:18.
fate 49:16,
   63:21.
father 43:18,
   82:2.
favor 70:11.
FBI 34:7.
FCRR 1:41,
   85:11.
tear 29:2,
   57:10, 76:13,
   76:25.
fearful
   65:24.
fears 67:2.
Federal 33:18,
   42:22, 42:23,
   55:24, 56:1,
   60:11, 69:17,
   75:7, 75:10,
   79:6, 80:24,
   81:23,
   82:12.
federalism
   66:13,
   66:20.
feel 6:8, 8:21,
   44:10, 63:21,
   67:9,
   84:16.
feelings
   4:10.
fell 36:15.
felon 43:10,
   43:14.
felony 18:24,
   21:9, 21:19,
   24:2, 25:20,
   43:11, 73:22,
   76:17,
   84:7.
felt 49:13,
   50:1, 50:2,

51:23, 52:1,
   65:24, 66:2,
   66:15.
fentanyl
   58:20.
few 4:16.
fictional
   78:3.
fighting 22:22,
   56:21.
figure 20:13,
   23:10.
file 83:6.
filed 7:7,
   7:11, 7:12,
   7:18, 8:3,
   8:23, 55:14,
   75:4, 83:2.
files 75:9.
filing 7:20,
   7:24, 61:5,
   83:3.
filings
   13:21.
final 4:20,
   8:3, 13:10,
   14:24, 16:9,
   18:8, 20:5,
   30:9, 53:4,
   54:10,
   81:1.
finances
   56:4.
Financial
   13:24, 26:22,
   28:25, 30:20,
   32:22, 32:25,
   41:11, 73:20,
   80:8, 80:9,
   80:10, 80:11,
   80:19,
   80:22.
Financing
   6:21.
find 57:12,
   58:10, 61:4,
   64:12, 72:17,
   73:11, 74:23,
   75:24, 76:9,
   77:13.

finding 73:4,
   83:23.
findings
   9:25.
finds 77:22.
Fine 17:3,
   17:7, 17:9,
   17:15, 18:13,
   71:10, 71:12,
   78:19, 80:13,
   80:14.
finish 83:15.
fired 74:9.
firing 66:1.
firm 52:15.
firmness 5:9.
First 10:24,
   28:17, 30:17,
   35:6, 36:9,
   36:11, 38:2,
   47:22, 51:12,
   51:17, 56:17,
   56:19, 57:24,
   69:4, 69:20,
   74:3.
firsthand
   03:13.
fiscal 73:5.
fit 33:9.
five 16:7,
   16:24, 17:1,
   44:1, 70:21,
   71:9, 73:5,
   73:14.
five-year
   20:17, 20:20,
   73:13,
   73:22.
flat 56:9.
flavor 30:24.
flee 67:15.
Floor 1:28.
follow 26:11,
   39:5, 70:14,
   73:3.
following 7:3,
   13:14, 14:23,
   17:6, 52:22,
   70:23, 75:18,
   78:13, 78:25,

79:14.
follows 10:5.
Forbes 56:4.
force 52:23.
forced 19:9,
   84:10.
forcefully
   63:23.
foregoing
   85:12.
foreign 5:5.
foremost
   51:17.
Forfeiture
   81:1.
forget 4:21.
forth 3:25,
   8:7, 16:8.
forthrightly
   63:23.
forward 2:4,
   40:8, 52:24,
   77:7, 85:4.
found 12:5,
   53:23.
founders 67:22,
   60:1, 68:2,
   68:14.
four 12:14.
four-level
   13:1, 13:7,
   13:13, 14:23,
   15:15,
   71:21.
four-point
   37:17.
fragile
   52:17.
framework
   15:22, 18:4,
   66:6.
frank 4:7,
   39:15.
frankly 31:2,
   47:22.
fraud 41:11,
   41:15.
freaks 66:24.
frequently
   19:4.

Friday 75:6.
friend 3:16,
    61:24, 62:18,
    62:25, 66:8,
    66:18.
friends 3:13,
    4:11, 4:23,
    38:19, 38:21,
    42:13, 49:6,
    50:10, 83:11,
    83:12.
friendship
    62:21.
front 3:21,
    60:5.
Fry 73:13.
fulfill
    62:12.
full 4:1, 25:4,
    29:21, 40:9,
    52:11, 64:21,
    80:23,
    83:21.
fully 4:8,
    8:16, 60:11,
    60:19.
function 20:8,
    39:5, 58:8.
functioning
    58:2.
fundamental
    47:12,
    68:18.
fundamentally
    31:4, 42:16,
    62:6.
funds 35:16.
future 11:17,
    11:20, 50:12,
    53:15, 57:11,
    57:16, 61:9,
    61:12, 61:17,
    65:16, 78:1,
    79:9.
.
.
< G >.
G. 10:7, 10:9,
    12:18.
gain 30:20,

41:11.
gave 48:11,
    84:9.
general 30:12,
    30:23, 31:13,
    43:5,
    50:18.
generally
    15:14, 16:21,
    19:21.
generously
    33:6.
genuine 5:1.
George 68:7.
gesture
    62:20.
gestures
    62:21.
getting 27:18,
    33:24, 43:7,
    46:5.
give 18:17,
    19:22, 24:12,
    24:18, 25:6,
    27:10, 33:7,
    34:5, 34:25,
    43:25, 46:3,
    81:17.
given 51:13,
    57:14, 64:5,
    64:21,
    83:17.
gives 6:16,
    25:6,
    31:24.
giving 21:9,
    24:24, 32:15,
    32:16.
Google 44:7.
gotten 4:3,
    28:8, 46:6,
    50:6, 77:1.
governing
    54:22.
grab 2:14.
graduated
    42:5.
grand 62:20.
grandfather
    62:13,

62:15.
grandkids
    34:22.
grave 27:7.
great 47:5,
    59:25, 78:5,
    84:10.
greater 17:2,
    53:9, 74:22,
    77:23.
greatly
    38:12.
Greeks 67:1.
Griffin
    33:10.
group 60:8.
guarantee
    14:12.
guess 43:22.
guidance
    39:12.
guided 4:25.
guideline 10:3,
    10:6, 13:11,
    14:25, 15:2,
    15:4, 16:13,
    17:9, 18:10,
    64:13,
    70:24.
guilty 3:1,
    11:8, 33:2,
    35:13, 35:23,
    46:11, 46:15,
    53:23,
    75:7.
guy 67:6.
.
.
< H >.
half 15:20,
    36:17.
Hamilton 68:2,
    68:4.
hand 49:22,
    77:11.
handful
    58:21.
handled 3:17.
hands 39:10,
    51:7, 57:8,

64:15,
    77:19.
happened 21:10,
    25:16, 28:2,
    30:18, 31:1,
    34:1, 36:18,
    41:25, 48:23,
    49:18.
happens 44:22,
    82:8.
happy 82:2.
harass 14:5.
hard 45:6,
    63:5, 84:2,
    84:14.
harder 83:25,
    84:9.
hardest 83:9.
harm 12:24,
    13:18, 14:21,
    26:14, 26:15,
    26:19, 27:25,
    29:12, 32:23,
    52:7, 56:10,
    57:14, 58:7,
    58:25, 61:10,
    64:6, 70:8,
    70:10, 72:3,
    72:18, 72:24,
    73:9, 77:9,
    77:17.
harmed 58:25,
    63:18.
harming 59:1.
harms 57:10,
    72:6, 73:3.
harsh 4:9.
head 31:15.
heads 44:18.
healing
    62:22.
health 13:25,
    38:22,
    74:15.
hear 32:6,
    40:24,
    49:7.
heard 19:20,
    59:15.
Hearing 3:22,

6:4, 7:4,
  7:15, 7:17,
  8:10, 9:22,
  35:17, 39:3,
  43:9, 48:4,
  53:5.
heartbroken
  39:1.
heist 21:6.
held 34:23.
help 4:24,
  20:10, 22:22,
  27:23, 27:25,
  52:20, 57:6,
  61:17, 61:25,
  62:10.
helped 62:14,
  72:12.
helpful 6:14,
  74:18, 75:21,
  76:9.
Helton 36:19.
Herbert
  39:21.
hereby 85:11.
hero 78:5.
herself 58:6.
high 25:15,
  36:24.
high-level
  50:19.
highest 36:24,
  57:3.
highlight
  28:16,
  29:18.
highlighting
  69:24.
highly 6:19,
  11:18, 72:2,
  72:7, 73:8.
hindsight
  56:22.
historic
  66:19.
historical
  66:12.
History 12:5,
  12:6, 12:7,
  12:12, 14:25,

21:6, 25:17,
  26:13, 36:23,
  36:25, 37:2,
  53:19, 59:18,
  61:22, 61:23,
  66:9.
hoax 58:19.
hold 58:3.
home 13:23,
  14:7,
  76:22.
honestly
  62:23.
HONORABLE
  1:17.
Hoover 39:21.
hope 21:13,
  34:24, 48:6,
  52:24,
  64:19.
hours 16:22,
  38:6, 49:10,
  62:11, 78:17,
  80:16.
House 3:10,
  5:13, 55:14,
  55:15, 55:22,
  58:13.
housekeeping
  5:10.
Hugo 67:11.
human 62:4.
Hunting 67:7.
hurdles
  22:15.
hurt 14:19,
  51:19,
  70:13.
.
.
< I >.
I. 12:7.
iceberg 29:6.
idea 45:23,
  56:7, 58:23,
  68:10.
identification
  12:21.
identify 2:4.
identifying

7:10,
  75:10.
ideological
  31:19, 50:15,
  50:23,
  64:25.
ignore 37:14,
  37:18.
ill 62:13.
illegal 11:20,
  52:6,
  54:23.
illness 62:8.
imagine 60:3.
imagined
  66:2.
immediately
  80:19.
immense 3:14,
  29:13,
  77:9.
impact 6:9,
  7:7, 13:20,
  33:7, 43:7,
  43:8, 50:11,
  59:22, 60:10,
  74:17.
impacted 28:18,
  57:14,
  69:18.
impacts 34:21,
  34:22.
impartiality
  52:18,
  63:15.
impede 10:17.
impeded
  10:16.
imperative 4:5,
  58:2,
  66:15.
imperfect
  62:4.
implausible
  72:18.
implicitly
  67:19.
important 4:1,
  30:10, 59:11,
  84:12.

impose 6:8,
  13:12, 16:12,
  37:20, 37:21,
  53:8, 54:12,
  54:17, 71:17,
  77:13,
  77:23.
imposed 16:15,
  16:21, 16:25,
  29:15, 53:12,
  54:4, 64:7,
  76:7, 78:14,
  79:3, 82:25,
  84:19.
imposes
  16:16.
imposing
  75:25.
impossible
  4:21.
impression
  28:8.
impressive
  84:18.
imprisonment
  12:14, 13:11,
  15:5, 15:6,
  15:7, 15:14,
  15:18, 15:19,
  15:21, 16:8,
  16:9, 16:14,
  16:17, 17:17,
  70:22, 70:23,
  71:14,
  78:15.
improbable
  40:22.
improve
  42:19.
improving
  63:3.
inability
  19:4.
incarceration
  18:12, 42:21,
  65:4, 74:2,
  74:16,
  82:14.
incarceratory
  32:1.

include 12:20,
  53:11, 78:16,
  79:5,
  82:12.
included 13:23,
  81:2.
includes 15:7,
  15:8, 15:19,
  65:8, 81:5.
including 6:17,
  7:6, 16:2,
  28:20, 32:23,
  38:20, 53:21,
  53:25, 57:6,
  73:9, 73:19,
  75:9, 76:3.
income 6:17,
  28:20, 28:21,
  56:1, 56:4,
  56:14,
  60:12.
increase 10:8,
  10:15,
  30:23.
increased
  15:1.
increasingly
  65:24.
incremental
  63:8.
incurred
  60:19.
independent
  65:12.
indicated
  7:9.
indictment
  18:23, 19:4,
  19:6, 19:9.
indisputably
  6:6.
individual
  30:19, 39:9,
  41:2, 55:24,
  58:4, 67:12,
  68:12, 74:25,
  76:20.
individuals
  12:23, 12:25,
  13:4, 13:16,

27:4, 28:17,
  28:21, 29:11,
  31:9, 31:17,
  51:19, 55:6,
  55:19, 57:9,
  59:20, 61:8,
  63:18, 65:3,
  72:15, 72:21,
  76:11, 76:16,
  77:5.
Industries
  82:13.
influence
  26:7.
informed
  52:4.
inherently
  66:10.
initial 10:3,
  12:13, 15:1,
  24:9.
innocent 52:16,
  63:12,
  70:10.
innumerable
  55:1.
inquiry 5:24.
inspecting
  64:3.
install
  79:20.
instant 10:19,
  77:24.
Instead 20:16,
  30:4, 42:15,
  56:8, 66:17,
  67:5, 67:7.
Institute
  43:4.
institutions
  52:18,
  63:16.
instructions
  7:23.
insufficient
  64:13,
  73:6.
insurrection
  67:25,
  76:18.

Integrity 1:26,
  11:11.
intelligence
  3:14.
intelligent
  4:4.
intend 72:3,
  72:18.
intended 19:21,
  26:5, 73:8,
  77:16.
intent 49:4,
  74:4,
  76:19.
intentional
  49:2.
intentionally
  32:22,
  77:8.
interest
  51:23.
interested
  6:17.
interesting
  69:10.
Internal 21:3,
  21:4,
  25:18.
internalize
  52:25.
internally
  23:1.
internet
  80:1.
interviews
  49:10.
intimidated
  14:7.
intolerable
  57:1, 59:9.
introduction
  6:18.
intrusions
  14:19.
invading
  14:10.
invasion
  13:19.
investigation
  10:18, 11:8,

26:10, 34:8,
  81:4.
investigators
  74:25.
investments
  60:4.
involve 30:17,
  71:23, 72:1,
  72:6,
  74:24.
involved 12:21,
  13:3, 20:2,
  31:8, 36:12,
  50:13,
  76:18.
involves
  31:9.
involving
  59:19,
  75:8.
IRS 10:11,
  10:12, 11:17,
  11:20, 11:21,
  21:6, 26:13,
  26:22, 26:24,
  29:22, 29:23,
  30:22, 42:15,
  56:3, 59:18,
  61:17,
  64:19.
issue 5:11,
  7:13, 7:21,
  35:11, 40:6,
  48:15.
issues 9:7.
itself 43:4,
  44:3,
  82:23.
.
.
< J >.
Jacobson 2:7,
  7:21, 7:25,
  11:25, 17:24,
  18:19, 18:21,
  20:10, 45:1,
  84:21,
  85:1.
Jail. 68:23.
James 39:20,

65:25.
Jane 44:24.
January 29
 1:11.
Jennifer 1:24,
 2:12, 2:15.
jeopardized
 60:25.
job 8:19, 38:7,
 42:13, 72:8,
 84:4.
jobs 49:14.
Johnson
 39:21.
join 74:4.
joining
 38:24.
Jon 38:9.
Jonathan 2:6.
Jonathan E.
 Jacobson
 1:23.
journal
 49:25.
journalist
 14:4, 74:6.
Jr. 68:23.
JUDGE 1:18,
 3:24, 19:17,
 36:25, 41:5,
 41:6.
judgement
 80:14,
 81:2.
judges 41:23.
judgment 30:2,
 63:21, 64:16,
 78:10,
 83:3.
judiciary 59:1,
 65:12.
jurisdictions
 37:4.
Justice 1:25,
 10:15, 10:18,
 11:11, 23:1,
 31:25, 33:5,
 33:18, 34:8,
 43:4, 44:2,
 52:20.

justifiable
 64:24.
justification
 36:7.
justified
 36:6.
justifies 25:2,
 27:3,
 29:13.
justify
 54:23.
.
.
< K >.
Ken 33:9.
key 74:2,
 84:6.
kids 34:22.
kind 5:25,
 20:5, 22:2,
 31:8.
kinda 34:16.
kinds 53:20,
 70:17, 70:19,
 71:16.
King 68:23,
 68:25,
 69:24.
knowing
 83:10.
knowledge
 10:11, 52:11,
 64:21.
known 61:10.
knows 3:16.
.
.
< L >.
lab 36:13.
labored 63:6.
Language 4:9,
 4:10.
lapse 30:2.
laptop 4:18.
large 43:3.
largely 5:24.
largest
 50:17.
last 5:11,
 6:13, 73:5.

later 54:1,
 72:13.
latter 70:11.
laude 42:6.
law-abiding
 77:2.
lawful 51:9,
 53:1, 55:1,
 55:6, 55:16,
 56:25.
lawfully 55:14,
 55:15.
lawlessness
 54:21, 54:25,
 68:15.
lawmaker
 58:16.
laws 14:12,
 39:4, 39:5,
 45:24, 55:10,
 55:21, 56:12,
 56:18, 65:10,
 67:13, 67:14,
 67:20, 68:17,
 68:21, 69:5,
 69:6, 69:7,
 69:8, 70:14,
 70:15.
lawyer 47:23.
lawyers
 84:15.
lays 10:2.
lead 70:2,
 83:21.
leaders 58:1.
leak 56:15.
leaked 74:8.
leaker 44:9.
leakers 43:7,
 50:16.
leaking
 73:14.
learned
 29:22.
least 8:12,
 8:13, 15:20,
 17:1, 28:18,
 61:5, 67:14,
 72:8,
 72:18.

leaving 44:5.
led 42:10,
 58:19.
left 14:6,
 51:7.
legal 7:15,
 43:15, 47:6,
 55:4, 56:21,
 59:24, 69:5,
 84:6.
legislative
 58:18.
legislatures
 55:9.
length 43:1,
 69:7.
lengthy 65:4.
leniency
 48:2.
Lepage 36:16.
less 14:18,
 14:19, 14:20,
 16:14, 16:24,
 71:9,
 84:18.
Letter 5:13,
 5:15, 5:18,
 6:3, 6:7,
 6:10, 6:24,
 65:22, 65:23,
 68:23, 69:2,
 69:25.
letters 3:13,
 3:16, 5:19,
 7:6, 38:17,
 40:14, 42:12,
 49:5, 58:20,
 61:23.
level 10:6,
 10:7, 10:22,
 11:3, 11:23,
 11:25, 12:11,
 12:20, 13:7,
 13:13, 13:14,
 14:24, 17:2,
 17:5, 17:6,
 17:9, 25:16,
 33:18, 47:8,
 54:11,
 71:11.

levels 11:4.
liberty 3:24,
  4:2, 4:22,
  51:6.
license
  13:24.
life 3:7, 30:3,
  42:11, 43:17,
  44:9, 50:1,
  50:2, 58:11,
  60:1, 62:22,
  83:17, 83:18,
  83:22.
light 55:2.
lighter 31:5.
lightly
  52:10.
likelihood
  65:4.
likely 52:11,
  66:10.
limitations
  11:9.
limited 26:19,
  28:5.
Lincoln 6:20.
line 23:18,
  34:17,
  49:8.
lined 14:7.
link 38:24.
Lisa 2:9.
Lisa Manning
  1:31.
list 33:10.
listen 33:20.
listening
  48:16.
literally
  24:24.
litigation
  55:14,
  55:15.
little 24:4,
  24:5, 63:9.
live 57:10,
  67:19.
lives 26:22,
  28:25, 45:18,
  57:3, 59:10,

74:25.
living 39:20.
LLP 1:33.
lobby 55:9,
  55:10,
  69:20.
local 69:2,
  79:6.
located
  75:11.
locating
  28:5.
long 3:22,
  31:16, 33:10,
  34:22, 37:2,
  69:9,
  74:16.
look 30:18,
  34:4.
looked 30:22.
looking 17:12,
  22:3, 24:21,
  62:15.
loopholes
  29:22.
lose 43:15,
  50:1, 50:2.
loss 35:19.
lost 44:18,
  60:18.
lot 38:13,
  42:14,
  51:14.
Louis 62:10,
  62:11,
  81:24.
love 4:23,
  18:17,
  83:13.
lovingly
  70:3.
low 55:19,
  65:16,
  79:9.
Lowenstein
  6:20.
loyalty 3:15,
  62:2.
luck 83:23.
Luther 68:22.

lying 74:25.
.
.
< M >.
ma'am 2:11,
  2:16.
machine 1:49.
Magazine
  56:5.
magnitude
  25:16,
  29:12.
main 44:14.
malice 32:23,
  40:11.
manage 61:2.
mandatory
  17:15, 78:25,
  79:5, 79:7.
manner 65:17,
  80:7.
Manning 2:9,
  2:10, 7:23,
  9:1, 9:10,
  12:2, 13:6,
  35:4, 37:9,
  37:23, 37:24,
  38:1, 39:14,
  40:17, 40:18,
  41:17, 45:5,
  51:10, 71:5,
  81:10, 83:25,
  84:2, 85:5.
manual 10:5.
Marcus 52:21.
Marion 81:23.
market 67:5.
Martin 68:22.
materials
  6:25.
matter 5:11,
  8:4, 63:2,
  64:25,
  85:13.
Max 35:23,
  36:15, 37:5,
  37:14,
  37:17.
max. 36:18,
  51:1.

maximum 16:7,
  17:3, 19:14,
  20:18, 20:20,
  25:12, 27:14,
  34:25, 40:4,
  70:21, 71:10,
  78:14,
  78:19.
Mead 1:33.
mean 21:24,
  22:1, 27:22,
  34:1, 34:16,
  34:17, 37:9,
  40:19, 40:20,
  40:22, 41:16,
  42:8, 42:21,
  43:2, 44:5,
  44:18, 44:19,
  44:22, 44:23,
  45:12, 45:18,
  46:17, 47:9,
  47:23, 48:21,
  48:22.
meandering
  63:4.
meaning 27:19,
  27:20,
  28:14.
meaningful
  30:25,
  73:7.
Means 5:14,
  6:12, 6:20,
  12:21, 14:16,
  14:17, 32:17,
  51:14, 54:23,
  55:1, 56:21,
  56:25.
measure
  39:18.
media 48:11,
  60:12, 60:18,
  79:24.
media. 9:19.
medical
  74:15.
meditations
  52:22.
meet 62:16.
meeting 3:12.

meets 10:24.
members 5:13,
  5:19, 6:7,
  58:14,
  62:10.
memo 56:13,
  59:21.
memorandum 7:5,
  36:1, 84:8.
men 81:23.
mental 61:2,
  74:15.
mention 6:16,
  65:21,
  76:23.
mentioned
  30:12, 35:14,
  56:20,
  65:21.
mercy 52:19.
merely 58:1.
message 27:8,
  27:11, 30:13,
  42:3, 53:1,
  65:9.
methamphetamine
  36:13.
methodology
  56:7.
mildly 72:7.
military
  50:19.
militia 68:4.
mind 49:12.
mine 13:25.
minimum 15:5,
  15:17,
  15:20.
mis- 27:15.
misconduct
  22:4, 23:19,
  23:23, 24:8,
  25:5.
misguided 4:25,
  40:10, 40:21,
  51:22,
  60:12.
misimpression
  27:16.
mistaking

52:13.
mitigating
  61:18,
  65:19.
moment 23:14,
  49:23,
  78:6.
momentarily
  31:15.
momentary
  30:2.
moments 62:1.
money 42:15,
  49:15.
monitoring
  79:19,
  79:20.
month 29:2,
  54:10.
months 12:14,
  13:11, 15:1,
  16:7, 16:10,
  18:12, 19:15,
  24:12, 24:24,
  25:6, 25:9,
  27:10, 30:11,
  32:2, 43:23,
  49:7, 64:13,
  73:23, 74:1,
  75:12, 77:6,
  78:15.
moral 4:5,
  41:14, 44:10,
  56:23, 66:6,
  66:15, 66:21,
  67:9, 68:20,
  69:6, 69:10,
  70:7, 70:8,
  70:10.
morally
  57:22.
morning 2:6,
  2:8, 2:9,
  2:11, 2:16,
  2:17, 2:22,
  3:6, 3:7,
  32:13, 32:14,
  35:9, 35:10,
  37:25, 38:1,
  44:5, 44:6.

mother 38:21,
  38:25.
motivation 5:8,
  40:15, 40:16,
  41:14, 50:23,
  65:1.
motivations
  67:8.
motive 40:10.
motives
  71:24.
move 33:21.
moving 52:24.
MR. CHERRY
  35:9, 35:11,
  35:21,
  37:13.
MR. WILSON
  2:22.
Ms 2:9, 2:17,
  7:22, 9:1,
  9:9, 12:2,
  13:6, 35:4,
  37:9, 37:23,
  37:24, 38:1,
  39:14, 40:17,
  41:16, 45:5,
  51:10, 71:5,
  74:3, 81:10,
  83:24, 84:2,
  85:5.
MS. CLARKE
  2:12, 2:15.
Multi-year
  54:6,
  77:16.
multiple 29:25,
  37:4,
  72:12.
multiyear
  64:12.
mundane 63:2.
Musk 33:9,
  34:9.
mutually
  3:19.
.
.
< N >.
name 2:14,

44:6, 48:17,
  48:19.
named 33:15.
Narratives
  60:22.
narrow 82:18.
nation 26:7,
  56:11, 63:14,
  65:9.
National 43:4,
  50:21.
nature 31:8,
  44:13, 53:19,
  54:5, 56:23,
  57:1, 57:14,
  59:5, 59:7,
  59:9,
  61:19.
naught 48:6.
necessarily
  37:18,
  61:10.
necessary 32:2,
  53:9, 54:11,
  56:17, 77:13,
  77:23.
need 4:8, 4:9,
  20:23, 21:7,
  27:23, 31:7,
  31:19, 31:20,
  53:11, 53:21,
  53:24, 62:1,
  64:7, 65:15,
  66:2, 71:18,
  81:12,
  83:17.
needed 49:14,
  55:18.
negate 73:1.
negotiated
  19:2, 23:6.
negotiation
  21:13.
neither 5:19,
  69:11,
  71:5.
New 6:5, 56:14,
  67:23, 72:11,
  72:19.
news 26:17,

26:18, 29:25,
30:1, 44:7,
44:14.
newspaper
60:6.
newspapers
32:19.
Next 5:17,
12:16, 29:1,
29:2,
36:16.
night 6:13,
14:8,
62:12.
nine 71:22.
NO. 1:5.
Noah 1:32,
2:10.
noble 56:23.
nobody 34:23.
noise 44:21.
non-monetary
12:24,
13:18.
non-tax
73:11.
None 18:5,
44:25, 50:24,
55:4, 70:5,
76:17,
76:18.
Nor 5:20,
16:24, 52:10,
69:12, 71:5,
73:11.
norms 45:24.
Note 11:5,
12:18, 13:2,
13:14, 15:11,
16:19, 29:15,
71:7, 82:1.
noted 70:25,
85:6.
notes 14:6,
15:10,
17:4.
nothing 6:3,
24:25, 27:10,
30:18, 34:10,
50:1, 50:2,

51:7,
56:23.
Notice 7:11,
75:4, 82:16,
83:2, 83:4.
notify 18:9,
80:21.
noting 26:14,
74:8.
number 12:23,
13:4, 13:16,
13:24, 19:8,
22:11, 30:19,
58:10, 59:23,
73:6,
73:24.
numerous 28:2,
30:15, 55:5,
55:6, 58:21,
58:22, 59:23,
67:25.
NW 1:27,
1:45.
.
.
< O >.
oath 5:3,
14:14.
obey 67:17,
68:12,
69:6.
obeying 68:6,
69:5.
objected 5:18,
71:5.
objection 7:9,
8:7, 9:20,
9:22, 17:8,
17:12,
17:13.
objections 9:4,
9:11, 11:24,
12:8, 15:22,
18:3, 84:19,
85:5.
objectives
52:14.
obligated
26:21.
obligation

44:10, 52:10,
55:4, 58:12,
66:4, 66:21,
67:9, 68:20,
69:11, 69:23,
70:9, 70:10,
80:13,
80:23.
obligations
60:12, 62:13,
62:16, 69:7,
80:19.
obligatory
68:10.
obscure 63:6.
observed
37:1.
obstruct
10:17.
obstructed
10:16.
obstruction
10:15.
obstructions
68:16.
obstructive
10:20.
obtain 56:21.
obtained 13:1,
60:13.
obvious
57:18.
occasions
72:12.
occupation
79:16.
occur 31:14,
57:10,
78:17.
occurred 4:9,
75:6.
offenses 31:18,
37:3.
offensive
67:14.
offered 33:7.
offers 42:13.
Office 10:3,
18:9, 18:14,
39:13, 39:25,

43:24, 44:5,
58:5, 58:6,
59:1, 59:4,
79:1, 80:3,
80:11, 80:12,
81:3, 81:5,
81:8.
officer 79:11,
79:18, 79:20,
80:9,
80:17.
officers 50:19,
50:20.
offices 58:18,
58:20.
Official 1:42,
73:18,
85:17.
officials
41:22, 41:25,
57:3, 58:3,
59:3, 64:14,
65:8.
often 31:9,
47:20,
74:23.
Okay 2:16,
19:24, 20:22,
21:16, 32:4,
33:19, 34:5,
35:20, 37:12,
82:4,
84:23.
Once 49:19.
ones 85:6.
ongoing 26:15,
33:17.
Onorato 1:33.
open 32:17,
41:22, 41:24,
42:2, 57:2.
openly 70:3.
operating
36:12.
opinion
56:14.
opportunities
18:18.
opportunity
18:18, 21:10,

30:13, 31:24,
32:16, 33:7,
51:24.
optional
16:15.
options 55:6,
79:2,
83:21.
Order 3:24,
7:23, 30:22,
40:5, 48:25,
80:25, 81:6,
81:11.
ordered 16:19,
17:20, 70:25,
78:20, 84:24,
85:2.
ordering
78:22.
organization
26:18,
80:16.
organizations
26:17, 29:25,
30:1.
Ortiz 36:11.
others 4:24,
39:10, 61:25,
64:23, 67:9,
70:8.
otherwise 30:3,
42:11,
77:2.
ought 62:6.
outcome 6:19,
25:9, 25:13,
84:1.
outlet 48:11.
outrageous
44:16,
44:19.
outright
66:17.
outside 6:15,
14:7.
outweighed
61:19, 65:20,
76:2.
overseas
75:11.

overwhelming
66:3.
own 21:6, 27:6,
39:10, 57:8,
60:2, 64:15,
77:19.
.
.
< P >.
p.m. 85:9.
packed 3:9.
page 60:5.
pages 79:2.
paid 56:1,
80:23.
paper 7:22.
papers 4:18,
8:23, 40:24,
43:18.
paragraph
9:11.
parallels
73:18.
paraphrase
39:4,
68:16.
parents 38:22,
62:14.
parlance
28:14.
Part 6:23,
9:12, 30:11,
33:17, 48:25,
56:15, 57:5,
72:8, 79:1,
81:2, 82:9,
82:12, 82:21,
83:9.
particular
4:20, 9:11,
38:9,
58:15.
particularly
42:17.
parties 2:4,
5:20, 7:14,
7:17, 10:14,
18:9, 18:15,
18:18, 19:3,
75:11.

Parting
68:24.
partisan 40:15,
44:13,
54:23.
partner 38:20,
38:21, 43:17,
61:25,
83:24.
parts 38:7,
69:1.
pass 20:4.
passage
69:19.
passes 69:17.
passion 31:14,
49:4.
past 58:21,
75:6,
76:11.
Patel 75:12,
75:14.
patently
60:14.
pay 55:19,
78:20,
80:13.
payable
80:19.
payer 60:15.
paying 52:2.
payments
30:23.
peaceful
58:13.
penal 16:5.
penalty 19:14,
67:16, 70:4,
70:21.
people 6:11,
39:22, 41:18,
44:25, 45:17,
48:16, 50:18,
51:23, 52:17,
57:22, 63:13,
65:7, 67:25,
68:9, 68:11,
69:15, 70:10,
77:2, 78:4,
79:25.

Pepper 6:1.
per 17:14,
35:6, 35:11,
35:22.
percent 36:24,
56:2.
perfect 63:8.
perhaps 70:14,
78:5.
period 56:2.
permission
79:18,
83:6.
permit 64:23.
permitted
83:1.
person 3:14,
3:18, 59:12,
60:6, 62:6.
personal 12:21,
13:15, 13:22,
27:6, 30:6,
32:21, 41:9,
41:11, 43:17,
50:23, 58:7,
59:10, 60:1,
60:2, 65:13,
75:9, 77:9.
personally
51:14, 60:4,
60:17.
perspective
45:9.
persuade
67:18.
persuasive
48:20.
phenomenal
38:8.
philosophical
70:14.
philosophy
54:22, 66:12,
66:19,
66:25.
phone 12:22.
physical
58:24.
physics 42:7.
pick 70:13.

pick-your-poiso
n 54:24.
piece 56:14,
68:22.
place 40:11,
52:17, 58:9,
69:12,
69:22.
Plaintiff
1:7.
planned 31:16,
77:6.
planning 29:19,
31:10,
76:18.
Plato 66:24,
67:3,
67:16.
plausible
68:17.
plea 4:16, 7:4,
18:22, 19:1,
19:3, 21:12,
26:15, 32:19,
32:20, 33:25,
34:24, 35:2,
39:3, 48:4,
75:20, 82:18,
82:21, 82:22,
83:1, 84:7.
plead 11:8.
pleading 33:2,
35:23.
Please 2:4,
9:9, 18:22,
33:21,
78:7.
pled 3:1,
19:10, 35:13,
46:11, 46:15,
47:3, 75:7.
plotted
29:20.
plus 70:22.
point 4:3,
18:9, 18:17,
23:18, 23:25,
30:9, 30:10,
37:8, 40:25,
41:12, 42:20,

43:22, 45:8,
46:13, 46:22,
52:24, 55:18,
56:7, 56:16,
63:6, 68:5,
70:6, 70:12,
73:12, 74:8,
74:20,
77:1.
pointed 42:1,
47:25.
pointing
38:5.
points 28:16,
36:24.
policy 53:17,
56:11, 59:13,
69:16.
political 26:8,
27:6, 31:19,
33:10, 33:12,
33:13, 33:25,
40:13, 40:15,
40:16, 44:13,
54:23, 58:1,
64:25, 65:6,
65:11, 65:13,
66:10,
77:4.
politically-min
ded 59:2.
politics
66:9.
poor 14:11,
14:15,
14:16.
popped 31:15.
pose 65:16,
76:14,
79:9.
posed 66:21,
76:14.
position 10:10,
14:14, 30:5,
32:21, 35:13,
35:19, 48:10,
49:15, 49:16,
63:13.
possess 79:7.
possibility

9:15,
35:15.
possible 19:7,
27:16,
65:9.
possibly 3:11,
22:20, 24:11,
24:12.
post-booker
47:11.
potential 20:2,
43:6, 44:9,
52:9.
power 41:23,
58:13, 65:6,
65:8,
68:10.
precedent 36:5,
37:14, 37:19,
39:13, 41:3,
51:2, 59:18,
66:12,
66:19.
precisely
72:11.
predicated
60:13.
prejudices
6:3.
Preliminary
80:25.
preparation
4:20, 6:4.
prepared 7:15,
7:20, 19:8,
21:13, 23:24,
24:1,
35:16.
presence
62:23.
Present 1:39,
8:11, 8:13,
71:24.
presented
54:24.
presentence
7:1, 8:2,
8:3, 8:8,
8:23, 9:2,
9:5, 9:23,

9:25, 10:2,
11:5, 12:5,
12:12, 17:18,
18:16, 79:2,
81:3, 81:7,
82:11.
presents
72:7.
preserved
5:23.
presidency
41:21,
59:1.
President 4:6,
5:6, 9:16,
34:6, 39:16,
39:19, 39:23,
39:24, 39:25,
44:23, 45:2,
45:3, 47:15,
48:9, 50:14,
51:24, 54:6,
57:4, 57:18,
57:20, 57:21,
57:25, 58:11,
64:20, 72:9,
73:10, 77:20,
78:3,
78:11.
press 54:20,
56:16, 66:2,
72:10.
pressure 74:7,
74:13.
presumptively
36:10,
36:16.
presupposes
68:12.
pretentious
67:3, 67:4.
pretty 22:1,
50:6.
prevent
61:17.
preventing
11:17.
prevents
75:25.
pride 63:3.

principle 68:18.

Prior 11:8, 11:21, 15:3.

Prison 19:15, 42:22, 42:24, 43:8, 67:15, 69:1, 72:1, 75:12, 76:21, 81:24, 82:13, 83:16.

privacy 13:19, 14:2, 14:10, 14:18, 52:16, 57:9, 63:12, 77:17.

private 12:25, 13:22, 26:22, 27:5, 28:25, 30:20, 32:24, 57:3.

privately 60:3.

privilege 3:16.

privileged 27:5.

probably 49:17, 50:17, 51:5.

probationary 30:16, 71:7, 71:25, 73:13.

problem 39:14, 67:11.

Procedure 80:24.

procedures 10:12, 45:24.

proceed 20:1, 21:1, 38:18.

Proceedings 1:49, 3:5, 85:9, 85:13.

process 26:8,

46:1, 46:5, 46:6, 51:5.

processes 63:7.

produce 56:24.

produced 1:49, 56:25.

product 21:12.

productive 83:22.

profession 79:16.

professional 26:1, 42:4.

proffers 11:10, 11:18, 28:4, 28:6, 61:14.

profoundly 13:22.

Program 82:13.

Project 9:15, 34:6, 49:17.

promote 53:12, 53:16, 64:9, 77:24.

proof 34:1.

propel 83:19.

proper 36:1, 48:15, 48:18.

properly 6:6, 52:4.

property 14:6, 22:13, 22:15.

proposal 81:13.

propose 81:14.

proposition 67:21.

Propublica 34:8, 34:17, 72:16, 72:20.

proscribe 16:3.

proscribes 46:12.

prosecuting 28:1, 34:2.

prosecution 10:18, 75:16, 75:22.

prosecutors 22:1, 32:18.

protect 26:25, 53:15, 64:2, 65:15, 77:25.

protected 12:25.

protection 14:12.

provable 21:18.

proves 56:16.

provide 4:13, 9:18, 26:21, 53:13, 53:24, 64:9, 72:10, 74:7, 75:22, 76:2, 78:2, 80:8, 82:2, 82:4, 84:11.

provided 10:11, 11:12, 15:20, 27:18, 30:7, 62:22, 72:15, 72:19.

provides 15:11.

providing 11:18, 62:22.

provisions 78:9.

PSR 17:4, 27:17, 73:4.

Public 1:26, 10:13, 11:11, 21:8, 21:10,

27:4, 44:11, 44:15, 48:18, 49:1, 51:22, 53:15, 55:13, 55:16, 55:21, 56:15, 61:11, 61:12, 63:1, 63:3, 65:15, 66:3, 69:3, 70:9, 77:25, 84:4, 84:12.

publications 73:2.

publicity 44:4.

publicized 44:8.

publicly 55:20, 56:3.

publish 73:2.

published 26:16, 28:23, 29:1, 60:22, 61:6, 61:9.

publishing 14:3.

Pugh 36:10.

pulled 21:6.

punish 5:8, 65:12, 69:23.

punished 33:3, 46:25, 70:16.

punishment 40:4, 53:13, 64:10, 64:22, 78:2.

purported 64:25.

purpose 5:9, 10:1.

purposes 29:4, 33:11, 33:12, 53:9, 53:11, 53:18, 64:10, 65:14, 65:21.

Pursuant 12:17,

17:19, 32:7,
  78:8, 80:2,
  80:3, 80:24,
  82:10,
  82:24.
pursuit 63:7.
pushed 56:15.
put 34:7,
  34:20, 49:16,
  51:7, 60:8,
  68:7, 72:6,
  76:3,
  81:12.
puts 34:9,
  65:13.
putting 50:9,
  74:25.
.
.
< Q >.
quantified
  60:20.
quantify
  60:11.
quell 68:4.
question 7:16,
  7:18, 19:22,
  23:23, 24:10,
  24:23, 35:6,
  35:22, 42:25,
  54:24, 63:15,
  66:20, 66:23,
  68:22.
questioned
  49:4.
questioning
  25:20.
questions
  22:25.
quick 67:2.
Quickly 49:20,
  68:25.
quite 3:4,
  3:22, 6:12,
  39:15, 68:1,
  76:8.
quoting 11:6.
.
.
< R >.

rabid 70:1.
raid 34:7,
  34:8, 34:12,
  58:10.
raising 45:9.
rally 32:9,
  32:10.
range 10:3,
  12:13, 12:15,
  13:11, 14:25,
  15:2, 15:4,
  16:3, 16:9,
  16:13, 17:5,
  17:7, 17:9,
  18:10, 53:5,
  57:12, 64:13,
  70:18, 70:22,
  70:23, 70:24,
  71:2, 71:4,
  71:11, 73:23,
  74:22,
  75:18.
rate 55:19,
  55:24,
  56:1.
rather 31:6.
rational
  77:2.
reach 20:4,
  54:12.
reached 18:22,
  18:23, 19:1,
  19:3, 23:4,
  23:6, 23:9,
  23:13, 48:13,
  48:14.
reacted
  76:24.
read 3:12,
  3:15, 5:14,
  9:2, 40:14,
  42:12, 43:18,
  48:5.
readily 21:18,
  49:9,
  49:11.
reading 7:8,
  7:22.
ready 65:12.
real 61:2.

realize 4:13,
  49:21,
  63:19.
realized 48:24,
  50:1.
really 22:2.
realm 74:24.
reapply 9:14.
rearrange
  59:25.
reason 25:19,
  45:17, 46:20,
  63:15,
  84:6.
Reasonable
  36:11, 36:16,
  37:20, 37:21,
  69:15, 80:4,
  80:7.
reasonableness
  35:7.
reasoned
  84:11.
reasoning
  76:9.
reasons 3:25,
  9:14, 13:14,
  31:18, 31:19,
  46:3, 74:18,
  78:13.
Rebellion
  68:3.
rebuild
  52:19.
recall 48:12.
recalled
  6:12.
receive
  74:23.
received 5:12,
  7:1, 15:12,
  17:21, 17:25,
  51:20, 58:16,
  59:22, 64:1,
  73:13, 75:11,
  75:12,
  84:6.
recent 6:19.
recess 54:19.
recidivism

43:20.
recitation
  9:23.
recognize
  24:15, 31:25,
  38:15,
  38:18.
recognized
  40:8, 40:9,
  40:23.
recognizes
  56:22.
recognizing
  38:11.
recommend 6:19,
  81:22.
recommendation
  7:2, 8:4,
  18:12, 18:13,
  25:11, 43:24,
  82:7, 82:10,
  82:11,
  82:12.
recommended
  18:10,
  79:1.
record 2:5,
  6:6, 9:10,
  46:18, 46:23,
  71:7, 84:20,
  85:6,
  85:13.
recorded
  1:49.
records 12:22,
  41:8, 48:11,
  53:23, 66:22,
  74:5.
reducing
  19:18.
referenced
  36:8.
referencing
  47:5.
referral
  82:12.
reflect 6:7,
  53:12, 57:13,
  64:7,
  77:24.

Reflected
    52:22, 67:16,
    67:22.
Reform 78:8.
regard 30:10,
    52:23.
regarding 9:23,
    75:5.
regardless
    54:14.
regret 44:20.
regular 64:1.
rehabilitate
    65:17.
rehabilitation
    53:16.
reinforce
    31:6.
reiterate
    62:4.
reject 34:24,
    35:1.
related
    10:20.
relation
    67:12.
relationship
    62:24.
release 15:7,
    15:19, 16:11,
    16:12, 16:13,
    16:15, 16:16,
    16:20, 17:17,
    18:13, 55:12,
    55:14, 70:9,
    70:22, 70:23,
    71:1, 71:14,
    78:16, 78:18,
    80:10, 80:18,
    81:3, 82:1.
released 32:22,
    41:19, 46:7,
    55:15,
    55:23.
relevant 10:21,
    53:7, 65:19,
    73:21.
relocated
    62:9.
relocating

62:14.
remaining
    61:21.
remediate
    27:25.
remind 32:8.
reminded
    6:11.
reminding
    57:19.
remorse 19:17,
    47:24, 50:7,
    50:8, 50:10,
    50:11,
    63:22.
remorseful
    63:10.
remotely 62:11,
    62:15.
removed
    72:25.
removes
    15:15.
repeal 69:21.
repeat 25:23.
repeatedly
    4:24, 26:3,
    30:5, 75:3.
report 7:1,
    8:3, 8:8,
    8:23, 9:2,
    9:5, 9:11,
    9:23, 9:25,
    10:2, 11:5,
    12:5, 12:13,
    17:18, 18:16,
    43:3, 44:12,
    79:2, 81:4,
    81:7,
    82:11.
Reported
    1:41.
Reporter 1:42,
    48:17, 48:19,
    74:12,
    85:17.
reporters
    48:13, 48:14,
    57:6,
    72:12.

reporting
    72:13.
reports 73:14,
    73:20,
    73:25.
Representatives
    5:14.
representing
    22:17,
    50:7.
Republican
    5:13, 33:12,
    58:13,
    58:15.
reputational
    29:5, 60:9,
    60:19,
    61:3.
reputations
    26:6.
request 30:11,
    37:13, 44:1,
    81:22,
    83:6.
requested
    75:17, 80:9,
    81:20.
requesting
    85:4.
requests 17:21,
    18:1.
require 4:1,
    59:6,
    79:17.
required 3:25,
    16:16, 16:17,
    54:8.
requires 16:1,
    40:4.
research
    23:16.
researcher
    84:10.
researching
    31:11.
resemblance
    36:9.
reshape 26:7.
residence 81:6,
    81:24,

82:1.
resolution
    19:3, 23:6,
    51:9.
respect 10:18,
    16:11, 16:23,
    53:13, 64:9,
    71:8,
    77:25.
respectfully
    47:7.
responded
    69:2.
response 7:12,
    35:21,
    67:13.
responses
    30:16.
responsibilitie
    s 28:3.
responsibility
    5:3, 11:2,
    11:14, 19:5,
    19:16, 35:24,
    40:9, 61:15,
    69:6.
responsible
    4:22,
    51:20.
responsive
    19:22,
    22:24.
rest 44:8.
restitution
    17:20, 17:21,
    17:22, 18:1,
    53:24, 78:22,
    79:11, 79:13,
    84:24, 85:2,
    85:4.
restore
    52:21.
restricted
    79:17.
restrictions
    79:15.
result 19:2,
    19:4, 31:22,
    32:3, 57:15,
    58:24, 60:16,

63:14, 64:6,
64:22, 70:7,
84:3.
resulted 13:18,
57:15,
71:24.
resulting 16:9,
60:24,
73:3.
return 3:2,
12:22, 13:4,
13:16, 26:4,
29:9, 30:20,
30:22, 51:21,
54:17, 59:19,
61:7, 72:14,
81:7.
returning
65:5.
returns 3:2,
22:6, 23:20,
26:4, 28:20,
28:21, 29:6,
29:9, 34:9,
34:21, 48:24,
49:1, 51:24,
55:3, 55:13,
55:16, 55:17,
56:16, 56:21,
57:7, 57:8,
66:2, 70:9,
70:20, 72:9,
72:13, 72:14,
72:19, 72:23,
73:15.
revealed
18:15.
Revenue
25:18.
reviewed 6:25,
7:1, 7:19,
49:19.
rewatched
6:13.
rich 14:15,
33:11.
rights 14:9,
43:15,
82:23.
riot 76:19.

rioters 67:25,
68:5.
risk 43:20,
65:17, 74:25,
79:9.
risked 12:24,
13:17, 23:21,
77:8.
Roger 6:19.
role 10:8.
roll 27:13.
rolled 23:21.
Roman 52:21.
Roosevelt
57:18.
rooted 47:13.
rooting
83:25.
round 58:17.
RPR 1:41,
85:11.
ruin 50:2.
Rules 80:24.
rulings 41:6.
.
.
< S >.
S. 1:25, 1:39,
5:13, 6:1,
6:2, 35:15,
43:24, 57:16,
58:11, 73:17,
78:3, 80:12,
80:20, 81:5,
82:17.
sacredly
68:10.
sad 42:17,
44:12.
safety 60:25.
salient
66:20.
sat 4:18, 4:19,
11:10, 49:20,
61:14.
satisfied 8:16,
15:5, 15:18,
15:21.
Saturday 7:12,
7:14.

saying 3:21,
41:20,
49:23.
says 9:12,
46:16.
scale 41:14,
57:14,
59:16.
scenarios
55:22.
scheme 54:6,
57:5, 64:12,
76:5, 77:7,
77:16.
Schertler
1:33.
scope 5:24,
59:16,
61:9.
Scott 32:13,
38:15, 51:18,
53:6.
SCP 81:23.
se 35:7, 35:11,
35:22.
seal 7:7,
82:5.
search 44:6,
79:22, 79:24,
80:3, 80:6.
searches
80:2.
Sears 1:33.
season 41:22,
41:24, 42:3,
57:2.
seat 3:10,
4:19, 42:2.
seated 78:23.
Second 11:1,
29:18, 56:19,
74:6.
Secretaries
58:18.
secretly
30:5.
Section 1:26,
3:3, 10:15,
10:25, 11:4,
11:11, 13:3,

50:17, 71:22,
72:1,
77:21.
secure 26:25.
Security 10:12,
13:23,
50:21.
seeing 49:13,
63:20.
seek 29:24,
53:1, 60:7,
71:7,
75:21.
seeking 25:9,
48:2,
77:14.
seeks 12:17.
seems 40:22.
segregated
69:1.
segregationist
70:2.
self-serving
72:3.
selfish
63:18.
selfless
62:17.
sell 75:10.
Senator 32:13,
33:19, 38:15,
51:18,
53:6.
SENATOR SCOTT
32:14, 33:23,
34:14,
34:17.
send 27:8,
27:11, 58:17,
58:20.
sending 65:9.
sense 24:6,
33:16, 34:3,
66:3,
69:25.
sensitive
14:13, 60:21,
72:25,
75:8.
sent 42:3,

68:4.
sentenced
  36:13, 36:17,
  36:20, 74:1,
  76:11, 76:16,
  77:5.
sentences
  30:16, 31:4,
  31:5, 53:20,
  70:17, 70:19,
  71:16, 71:25,
  72:1, 76:6,
  84:14.
SENTENCING
  HEARING
  1:16.
sentencings
  3:17.
separate
  22:8.
separately
  48:21.
series 64:16,
  77:18.
serious 26:13,
  27:7, 31:21,
  37:1, 41:14,
  41:19, 43:16,
  52:12, 61:1,
  66:23.
seriousness
  30:14, 41:16,
  41:18, 47:9,
  53:12, 57:13,
  64:8,
  77:24.
serve 83:14,
  83:22.
Service 16:19,
  25:18, 42:12,
  43:21, 63:1,
  63:4, 70:25,
  78:17, 80:15,
  80:16.
servile
  57:21.
serving
  51:22.
set 3:25, 8:7,
  16:8, 53:7.

sets 17:3,
  71:10.
setting 29:14,
  46:15.
several 38:20,
  49:14, 62:8,
  64:2, 74:2,
  74:15.
severe 31:22.
severity
  40:7.
shall 16:25,
  17:15, 17:20,
  47:13, 71:12,
  78:16, 78:24,
  79:14, 80:21,
  81:1, 81:3,
  81:7.
share 80:11.
shared 11:16,
  11:19,
  61:16.
sheer 28:17.
short 7:18,
  75:23.
shorthand
  1:49.
shot 6:15.
show 61:24,
  67:7.
shown 19:17.
side 6:10.
signatories
  5:15.
signed 7:4,
  9:15, 59:23,
  75:19.
significant
  27:3, 31:7,
  36:6, 36:7,
  52:7, 63:25,
  73:17.
significantly
  65:20,
  74:22.
similar 5:19,
  31:18, 37:2,
  53:23,
  68:21.
similarly

73:6.
simply 39:11,
  59:18.
sincere
  51:22.
sincerely
  66:15.
sincerity
  83:24.
single 18:24,
  31:23, 33:2,
  48:4, 50:24,
  56:24.
Sir 2:8, 23:25,
  32:13, 78:7,
  78:23,
  82:16.
sister 62:8.
sit 28:24,
  41:23,
  68:2.
sitting 4:6,
  4:19, 5:6,
  39:16, 39:23,
  39:24, 41:5,
  42:2, 44:23,
  45:2, 45:3,
  45:10, 47:15,
  50:13, 51:24,
  54:6, 57:4,
  72:9, 73:9,
  77:19,
  78:11.
situated 48:22,
  73:6.
situation
  81:11.
situations
  30:17.
Six 7:7, 37:6,
  59:22, 74:1,
  76:16,
  76:17.
skills 52:15,
  63:11.
skip 33:1.
small 30:19,
  62:20.
smooth 58:2.
smoothly

58:8.
snap 64:16.
so-called
  70:7.
Social 13:23,
  56:24.
societal
  43:15.
society 4:3,
  39:5, 59:11,
  67:18, 68:15,
  70:13,
  77:2.
Socrates 67:15,
  67:17.
software
  79:20.
solace 4:14.
solely 54:13.
somebody 33:25,
  55:8.
somehow 4:3,
  58:9.
Someone 3:24,
  4:2, 4:4,
  4:22, 4:23,
  4:24, 21:5,
  22:12, 22:18,
  31:15, 34:12,
  51:5, 51:6.
sometimes
  49:22.
somewhere
  69:9.
son 61:24.
sophisticated
  31:9, 64:1,
  72:21.
Sorry 2:14,
  2:24, 3:10,
  17:11, 22:17,
  23:8, 36:14,
  43:13, 45:5,
  83:2.
sought 9:12,
  26:7, 64:19,
  72:8,
  75:15.
sound 56:7,
  69:16.

sounds 39:6.
source 6:1.
southern
    67:6.
space 25:6,
    25:12, 31:22,
    31:24.
spare 4:10.
sparked
    65:25.
speaker
    58:15.
speaks 62:19.
special 17:14,
    78:21,
    79:14.
specific 24:4,
    37:1.
Specifically
    11:5, 14:5,
    73:24.
speeches
    63:4.
spend 81:15.
spending
    3:22.
spent 30:3,
    48:3, 62:21,
    66:11,
    66:18.
spirit 38:25.
splashed
    60:5.
spouses
    58:14.
spread 29:25.
spreadsheets
    63:7.
Spring 66:1.
spur 49:22.
square 62:1.
St. 1:27,
    62:10, 62:11,
    81:24.
staff 32:18.
stand 57:20,
    78:7.
standards
    45:23.
standing

25:8.
stands 26:12,
    65:12.
stark 4:9.
start 3:4, 8:2,
    18:21, 25:14,
    55:20.
starts 6:14,
    66:23.
State 55:9,
    58:17, 58:18,
    67:12,
    79:6.
stated 9:25,
    39:4, 57:18,
    70:18,
    78:13.
statement 7:4,
    11:6, 13:20,
    33:7,
    51:15.
statements 7:7,
    27:17, 53:5,
    53:17,
    59:22.
statistics
    56:3.
status 43:16.
statute 11:9,
    16:18, 17:3,
    36:4, 36:13,
    46:11, 47:3,
    47:12, 71:10,
    73:21, 79:13,
    83:1.
statutes
    16:5.
statutory 16:7,
    17:7, 18:4,
    19:14, 25:5,
    25:12, 35:23,
    36:15, 36:18,
    37:5, 37:14,
    37:17, 50:25,
    70:21, 78:14,
    78:19.
Ste 1:28.
steadfast
    65:12.
steal 22:18,

49:19,
    72:9.
stealing 14:2,
    26:3.
steals 22:13.
stenographic
    85:12.
step 12:16.
stipulated
    10:14.
stole 21:24,
    26:20, 32:21,
    41:8,
    48:10.
storage
    79:24.
stream 44:14.
Street 1:34.
strike 7:24.
strongest 65:9,
    65:10.
strongly 6:8,
    76:25.
struggled 4:15,
    62:18.
student 66:9.
studied 4:14.
studies 44:2.
study 55:21,
    55:23, 55:25,
    56:6.
stunning
    64:18.
subject 80:2.
submit 39:8,
    40:12, 42:11,
    47:6, 63:21,
    79:22.
submitted 7:3,
    44:2,
    61:24.
subset 45:17.
substance 79:7,
    79:9.
substantial
    12:23, 12:24,
    13:4, 13:16,
    13:18, 27:19,
    31:21, 56:10,
    58:10, 59:6,

75:16,
    75:22.
substantially
    35:18.
substitute
    15:9.
subverting
    26:10.
successful
    26:1.
suddenly
    60:5.
suffer 43:16.
suffered 60:9,
    74:14.
suffers
    74:17.
suffice
    55:13.
sufficient
    53:8,
    77:23.
suggest 23:25,
    40:3.
suggested
    43:24,
    66:18.
Suite 1:35.
summa 42:5.
summarize
    70:19.
Sunday 7:12.
Supervised
    15:7, 15:19,
    16:11, 16:12,
    16:13, 16:15,
    16:20, 17:17,
    18:13, 70:22,
    70:23, 71:1,
    71:14, 78:16,
    78:18, 80:18,
    84:25.
supervision
    78:24, 79:4,
    80:5.
supplemental
    7:11, 75:4.
support 5:3,
    7:7, 30:23,
    37:5, 37:15,

38:19, 61:24,
    62:12,
    63:25.
supported
    36:4.
supporting
    39:1.
supports 57:11,
    71:20.
Supreme 5:21,
    36:5, 36:9.
surely 54:22.
surprise
    68:1.
surrender
    81:12,
    81:13.
survey 56:4.
susceptible
    31:13.
suspended
    79:8.
suspicion
    80:4.
suspicious
    73:14,
    73:24.
sweetheart
    33:24.
sympathetic
    3:9, 81:10.
system 33:18,
    40:2, 41:7,
    42:16, 42:18,
    45:16, 45:21,
    45:22, 45:23,
    47:6, 50:9,
    51:3, 52:3,
    52:21, 59:14,
    67:23.
systematically
    52:16,
    63:12.
systems
    29:23.
.
.
< T >.
T. 1:41,
    85:16.

Lab 50:17.
table 2:13,
    4:19, 15:4,
    15:17,
    71:4.
talked 34:2,
    48:22.
talks 43:5.
target 4:6,
    39:23, 39:25,
    44:23, 44:24,
    45:3, 59:4,
    59:5.
targeted 14:9,
    39:15, 41:5,
    44:24, 45:2,
    45:16, 48:8,
    59:3,
    77:16.
targeting 5:6,
    39:24, 40:1,
    41:2, 47:15,
    54:6, 57:4,
    65:7, 77:19,
    78:11.
task 38:14,
    63:2,
    63:14.
taxes 56:15.
taxpayer 9:16,
    10:11, 10:12,
    22:19, 26:2,
    29:24, 30:14,
    50:10,
    73:15.
taxpayers
    50:14, 52:1,
    60:9, 60:11,
    64:2, 64:6,
    72:4, 72:19,
    73:9,
    77:17.
Taylor 68:23.
team 84:2,
    84:3,
    84:16.
technical
    11:18.
temporarily
    62:14.

Len 12:14.
tendency
    68:19.
term 15:5,
    15:7, 15:18,
    15:19, 15:20,
    16:12, 16:13,
    16:15, 16:16,
    16:25, 46:4,
    65:4, 78:14,
    78:17.
termination
    81:9.
terms 25:11,
    40:15, 41:13,
    42:4, 43:1,
    44:4, 46:8,
    47:5, 49:8,
    49:11,
    76:13.
Terrific 8:19,
    35:8.
testing 79:8.
thankful
    38:9.
thankfully
    3:25.
thanking
    5:16.
THE CLERK 2:2,
    2:20.
THE DEFENDANT
    8:17, 8:20,
    8:25, 51:12,
    51:17.
theft 22:5,
    22:8, 22:15,
    35:15, 35:19,
    75:8.
thefts 11:20,
    29:20.
themselves
    2:5.
Theodore
    57:18.
They'll
    44:12.
thinking 31:11,
    44:9, 48:4,
    78:6.

Third 9:13,
    36:19, 74:14,
    75:11.
thorough 4:8.
though 22:4,
    23:3, 28:1,
    40:12,
    76:21.
thoughtfulness
    62:2.
thousand 4:7,
    13:17, 21:21,
    25:8, 56:9,
    59:20,
    77:9.
thousands
    22:18, 26:4,
    30:6, 32:25,
    33:3, 33:4,
    34:3, 34:19,
    41:18, 50:14,
    52:16, 54:7,
    57:9, 59:10,
    61:7, 63:12,
    66:5, 70:8,
    70:10, 72:14,
    73:9, 73:15,
    77:17, 77:20,
    78:12.
threat 9:17,
    58:16, 76:14,
    76:24.
threaten 58:11,
    58:13.
threatened
    60:17.
threatening
    14:6, 59:3.
threats 58:17,
    61:2.
three 7:16,
    15:8, 16:12,
    18:12, 28:16,
    64:17, 70:24,
    77:18,
    80:18.
three-year
    57:5.
throw 45:10,
    45:14,

45:23.
throwing
  45:25.
TIGTA 2:13,
  11:11,
  11:19.
tip 29:6.
tirelessly
  59:11.
Title 3:3.
to-date
  77:10.
tolerated
  58:1.
tomorrow
  29:1.
tons 29:7,
  42:13.
took 4:16, 5:3,
  14:14, 27:22,
  36:21, 38:17,
  50:22, 60:25,
  72:13.
total 11:22,
  78:17.
totaling
  78:21.
totally
  48:21.
touches 70:5.
tough 84:14.
tracks 26:9.
trade 64:24.
traditional
  5:23.
training 64:1,
  64:22.
transactions
  73:20.
TRANSCRIPT
  1:16, 1:49,
  85:12.
transcription
  1:50.
transfer
  58:13.
transparency
  4:2, 52:6.
travel 38:22.
treason 68:5.

Lreasonable
  57:22.
treasury
  73:18.
treated
  14:17.
Treatment 81:7,
  81:9.
tremendous
  84:4.
trespassed
  14:5.
trial 20:1,
  20:14, 27:13,
  46:1,
  46:15.
tried 26:9,
  56:18,
  68:4.
troubled 40:25,
  49:12.
troubling
  47:7.
True 39:9,
  72:5, 75:1.
Trump 9:17,
  33:9, 34:9,
  39:20, 48:9,
  55:3, 55:12,
  56:21, 59:4,
  64:20, 66:1,
  72:21.
trust 10:10,
  26:3, 27:2,
  30:5, 32:21,
  37:19, 48:10,
  51:9, 52:14,
  52:20.
truth 33:23.
trying 20:10,
  20:13, 22:22,
  41:1, 48:15,
  48:17, 67:3,
  67:4,
  67:24.
Tucker 6:2.
turn 26:23,
  54:1.
turned 74:7,
  74:12.

Turning 6:25,
  12:4.
twice 65:7.
Two 3:19, 6:10,
  10:22, 11:3,
  11:10, 15:6,
  25:25, 28:4,
  28:6, 29:21,
  30:1, 30:16,
  47:19, 58:23,
  61:14, 64:17,
  65:14, 75:5,
  75:6, 75:13,
  76:11, 76:22,
  77:16.
two- 13:1,
  37:17,
  71:21.
two-level 10:8,
  10:14,
  10:25.
type 29:10,
  40:11, 44:3,
  64:23,
  72:22.
typically 3:5,
  19:17.
.
.
< U >.
Ultimately
  20:9, 21:17,
  23:4, 23:17,
  24:8, 25:9,
  30:17.
unable 38:22,
  83:5.
unauthorized
  3:1, 16:6,
  41:4, 41:5,
  41:8, 70:20,
  72:23.
unaware
  74:16.
unbreakable
  59:2.
uncertain
  76:13.
undercover
  50:22.

undermine
  31:7.
undermined
  27:1, 42:18,
  52:17.
understand
  20:12, 20:25,
  22:23, 24:7,
  28:10, 31:20,
  34:18, 45:20,
  46:12, 52:5,
  57:6, 61:13,
  62:7, 65:14,
  72:13, 76:7,
  76:9.
understanding
  17:22, 75:20,
  81:25.
Understood
  28:12.
undertake
  31:9.
undeserved
  67:16.
undoubtedly
  84:11.
unfair 7:22.
unfavorable
  41:6.
Unfortunately
  3:19, 33:8,
  49:16,
  84:4.
unglamorous
  63:7.
uniformly
  3:13.
uniquely
  31:12.
United 1:1,
  1:5, 1:18,
  1:43, 2:2,
  2:7, 2:12,
  3:3, 4:6,
  5:4, 5:7,
  33:5, 39:12,
  39:16, 39:23,
  39:24, 40:1,
  44:23, 45:3,
  45:4, 47:16,

50:18, 54:7,
57:5, 72:10,
73:10, 73:12,
77:20,
78:11.
unjust 67:14,
68:21, 69:4,
69:7, 69:11,
69:14, 70:3,
70:15.
unlawful 29:4,
58:7,
59:17.
unlawfully
60:13, 60:22,
61:7, 73:25,
74:4, 79:7.
unless 47:13.
unlike 74:3,
75:14.
unlimited
5:24.
unmasked 10:12,
26:2.
unparalleled
25:17,
59:17.
unpatriotic
57:21.
unprecedented
29:13,
45:15.
unreasonable
35:22, 35:25,
37:8.
unremarkable
6:7.
unscrupulous
14:4, 60:6.
unsuccessful
26:11.
unsuccessfully
41:1.
until 54:16,
68:9,
80:22.
unusual 29:16,
72:2, 72:7,
73:8.
unwarranted

53:22, 71:18,
75:24.
unwavering
3:15.
unwelcome
60:24.
unwillingness
19:5.
unwound 6:13.
upended
45:18.
upper 37:7.
upstanding
3:18.
upward 12:17,
12:19, 13:2,
13:13, 14:23,
15:3, 15:15,
17:6, 24:20,
24:22, 24:23,
25:2, 54:3,
54:9, 54:10,
54:14, 57:11,
59:6, 63:25,
65:18, 71:21,
75:21, 75:25,
77:13, 78:13,
78:14.
upwards
24:17.
urging 39:11.
USB 28:5.
useful 49:22.
using 10:4.
.
.
< V >.
v. 6:1, 6:2,
57:16,
73:17.
vacuum 70:6.
variance 24:19,
24:20, 24:22,
25:2, 29:14,
30:10, 36:3,
54:9, 54:13,
57:11, 59:7,
63:25, 65:18,
75:25, 77:13,
78:14.

variances
11:22.
variety 16:2.
various
55:22.
vary 24:17,
24:23.
verge 32:9.
Veritas 34:6.
version
83:20.
versus 2:3,
20:14, 43:25,
70:9,
73:13.
via 5:12, 5:15,
5:17.
viable 23:17.
Vice 58:11.
victim 7:7,
8:13, 13:20,
26:6, 29:2,
29:3, 33:6,
33:7, 33:16,
59:22, 60:16,
72:24.
victims 5:20,
14:10, 14:20,
26:19, 28:23,
32:7, 33:8,
33:15, 38:16,
46:5, 50:8,
53:24, 57:14,
59:23, 60:8,
61:1, 61:5,
85:3.
video 38:24.
view 64:23,
65:16, 65:19,
84:17.
viewed 9:17.
views 41:13,
67:22.
violate 52:16,
63:12, 64:18,
69:24, 74:12,
77:17.
violated 14:2,
14:9,
32:24.

violating
57:9.
violation 3:2,
33:3, 33:4,
56:9, 69:2,
80:4, 80:6.
violations
71:22.
volume 24:21,
28:17.
voluntarily
11:10,
61:14.
voluntary
81:11, 81:13,
81:17.
volunteer
79:15,
79:16.
volunteered
49:9, 49:11,
49:18.
vote 51:25,
55:7, 55:8,
69:18.
voted 58:14.
voting 65:11.
vs 1:8.
.
.
< W >.
W. 1:34.
wait 28:24,
37:12.
waive 82:21.
waived 82:18.
waives 82:22.
walk 46:4,
78:4.
walked 32:1.
wanted 35:12,
38:2, 38:15,
38:18,
73:2.
wants 84:25.
War 6:18,
6:21.
warn 79:25.
warranted
12:20,

17:23.
Washington
  1:10, 1:29,
  1:36, 1:46,
  30:21, 68:2,
  68:3, 68:7.
Waters 68:24.
Ways 5:14,
  6:11, 6:20,
  11:19, 14:18,
  49:21, 53:1,
  55:1, 56:8,
  59:12.
wealthiest
  52:2, 55:24,
  55:25,
  72:15.
wealthy 14:11,
  14:18, 33:11,
  55:19,
  72:21.
weaponize
  27:5.
Wednesday
  76:11.
week 5:12,
  6:13, 29:1,
  81:15,
  81:16.
weekend 7:14,
  35:22, 36:8,
  38:7.
weigh 65:18.
weighed
  74:15.
weighing
  54:8.
West 1:35,
  6:12.
Whatever 5:8,
  20:16, 27:9,
  63:21,
  68:17.
whereas 19:3.
Whether 20:1,
  21:20, 21:21,
  23:20, 25:7,
  25:10, 31:18,
  43:23, 54:14,
  69:16,

77:7.
Whiskey 68:3.
White 55:22.
whole 52:1,
  68:9.
wholeheartedly
  59:21.
whom 28:19,
  59:11.
wife 13:25,
  14:7.
willfully
  10:16,
  64:17.
willing
  81:11.
willingly
  30:7.
willingness
  70:3.
Wilson 1:39,
  2:22, 2:24,
  82:10.
Wing 6:12.
wish 3:11,
  32:7, 32:11,
  83:22.
Within 23:1,
  25:12, 27:19,
  27:20, 28:13,
  28:14, 75:17,
  80:14, 80:20,
  82:1, 83:2,
  83:3.
Without 21:11,
  21:12, 24:17,
  58:6, 58:7,
  62:16, 64:3,
  79:18,
  83:7.
witnesses 8:11,
  8:14.
won 55:15.
words 21:6,
  24:3, 61:9.
work 21:12,
  38:8, 38:10,
  42:15, 43:20,
  62:16, 63:1,
  63:5, 64:19,

68:1, 68:22,
  84:5.
worked 4:20,
  42:19,
  84:3.
working 57:6,
  62:11,
  62:15.
works 14:18.
worse 14:17.
worst 3:7,
  3:10.
worth 26:14,
  64:24,
  84:17.
write 38:17,
  72:20.
writing
  63:10.
wrote 13:20,
  66:8,
  69:25.
.
.
< Y >.
year 16:14,
  16:17, 17:1,
  29:2.
Years 16:7,
  16:12, 16:14,
  16:24, 17:1,
  18:12, 25:25,
  29:21, 30:4,
  42:19, 44:1,
  55:17, 62:9,
  62:21, 64:2,
  64:17, 67:22,
  68:25, 70:21,
  70:24, 70:25,
  71:9, 73:5,
  75:13, 77:18,
  80:18.
Yeoman 38:10.
Yesterday 4:17,
  7:17.
yielded 25:4,
  30:16.
York 56:14,
  72:11,
  72:19.

young 38:8.
yourself 25:23,
  52:23, 66:21,
  83:20,
  83:21.
.
.
< Z >.
zero 6:9, 12:6,
  35:19.
Zone 15:4,
  15:5, 15:11,
  15:16, 15:17,
  71:4.

A257

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **No. 23-cr-343-ACR** |
| | ) | |
| **CHARLES EDWARD LITTLEJOHN,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

### UNOPPOSED MOTION TO SETTLE AND APPROVE STATEMENT OF UNRECORDED PROCEEDINGS

Mr. Charles Edward Littlejohn, through counsel, respectfully submits to the Court for settlement and approval, pursuant to Federal Rule of Appellate Procedure 10(c), the attached agreed-upon statement of proceedings which were not recorded or transcribed in this case. In accordance with the rule, the statement was served on government counsel via email on October 4, 2024. The government's objections and significant amendments have been incorporated into the statement. Accordingly, Mr. Littlejohn respectfully requests that the Court settle and approve the attached agreed-upon statement and exhibit to be included by the district clerk in the record on appeal under Rule 10(c). A proposed order is also attached.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
CELIA GOETZL
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500

1

**A258**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 23-cr-343-ACR |
| | ) | |
| CHARLES EDWARD LITTLEJOHN, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

<u>**STATEMENT OF UNRECORDED PROCEEDINGS**</u>

On Tuesday, October 10, 2023, Judge Reyes's Courtroom Deputy emailed the parties: "The judge would like to meet with you, either in chambers or via zoom video, off the record and before Thursday. Would you be available at a time on tomorrow?" Based on the parties' responses as to their availability, the Courtroom Deputy set the meeting for Wednesday, October 11, 2023, at 2:00 p.m. in Judge Reyes's Chambers. Judge Reyes was present with her law clerk, along with government counsel, Jennifer Clarke and Lauren Castaldi, and defense counsel, Lisa Manning. Mr. Littlejohn was not present.

Judge Reyes began the meeting by explaining that she had convened counsel for the parties because she had questions about the case and Mr. Littlejohn's plea agreement. She expressed that she was perplexed as to why the government had allowed Mr. Littlejohn to plead to a single count of unauthorized disclosure of taxpayer information when he had stolen the tax records of a sitting president and thousands of other taxpayers. She asked the government whether there would be a separate, future case with additional charges and, if not, why not. The government lawyers stated that this would be the only federal criminal case against Mr. Littlejohn for the conduct described in the Information and Statement of Facts and that the government believed it was a just resolution of the case. The government lawyers also noted that requiring Mr. Littlejohn to plead to multiple

1

counts of the same offense would not change the calculation of his total offense level under the Sentencing Guidelines. Judge Reyes responded that, given the nature and extent of the conduct, she still would have expected multiple charges and a much higher possible sentence—at one point, referencing 20 years. Judge Reyes explained in strong language that she did not understand why Mr. Littlejohn, after having engaged in premeditated and repeated criminal conduct, had been allowed to plead to one count with a statutory maximum of five years. She compared Mr. Littlejohn's plea offer to those of defendants in the January 6 cases who led otherwise law-abiding lives and faced decades in prison for committing a single, brief offense.

Judge Reyes asked the government to explain why the plea agreement did not include more counts and a higher statutory maximum penalty. The government lawyers outlined the timing of their investigation and Mr. Littlejohn's cooperation, explaining that DOJ had concerns about possible statute of limitations issues had he not come forward and agreed to plead guilty. The government lawyers also noted that Mr. Littlejohn had provided an extensive proffer fully accepting responsibility and explained that, in such cases, it was within standard DOJ practice to make a one count plea offer pre-indictment in cases that would otherwise be charged as multiple counts. After hearing this information, Judge Reyes indicated that she was still troubled by the plea—again emphasizing the fact that Mr. Littlejohn had stolen the tax returns of a sitting President. She ended the meeting by suggesting that defense counsel may wish to convey to her client the court's views of his conduct, and stated that she would see the parties the following day. This meeting/hearing was neither transcribed nor recorded.

The morning of the scheduled plea hearing, October 12, 2023, at 10:57 a.m., Judge Reyes's law clerk emailed government and defense counsel stating:

> At this afternoon's plea hearing, Judge Reyes plans to ask, as part of the factual basis for the plea, who the high-ranking public official was, to name any others,

and the news organization. She will also ask for names of some of the private
individuals and the second news organization. If the parties have an issue with this
approach, please let us know, and we can schedule a phone conference to discuss
between 12:30 and 1:30 p.m. today.

In response, at 11:25 a.m., counsel for each party jointly requested "the opportunity to discuss this

matter in advance of the hearing this afternoon." The law clerk responded by email at 11:31 a.m.

that the court would "schedule a call for 1 p.m., and it will be off the record[,]" and that the

Courtroom Deputy would "circulate the dial-in information shortly." Soon thereafter, at 12:08

p.m., the Courtroom Deputy emailed a Zoom link to government and defense counsel for a

videoconference from 1:00 to 1:45 p.m.

Present at the Zoom conference were government attorneys Jennifer Clarke and Lauren

Castaldi, and defense counsel, Lisa Manning. Mr. Littlejohn was not present. Judge Reyes began

the videoconference by stating that, during the plea hearing, she planned to ask Mr. Littlejohn the

names of the victims of his crimes and she expected him to answer. Ms. Castaldi responded that

the government had concerns about this approach because the victims had a right to privacy under

the Crime Victims' Rights Act. Judge Reyes questioned the government about the applicability

of the Act in a case that was already very public. She stated that the parties would not be able to

get through the plea and sentencing without Mr. Littlejohn admitting to his conduct and who he

had harmed. Judge Reyes also stated it did not make sense for the government to be so focused

on privacy when the victims' names were all over the news, especially the fact that the media had

already reported that the crime involved a sitting President. The government lawyers responded

that the charge and privacy considerations would be the same regardless of the identity of the

victim.

Judge Reyes asked whether she would be violating the Crime Victims' Rights Act if she

asked Mr. Littlejohn to list the names of his targeted victims during the plea colloquy. Counsel

3

**A261**

for both parties responded that they each wanted to make sure that they fully complied with the Crime Victims' Rights Act. Ms. Castaldi added that, based on her conversations thus far with victims of the ProPublica leak, she understood that most of them wanted to keep the matter private and not receive any additional publicity. Judge Reyes then asked whether the "Public Official" victim, former President Donald Trump, also wanted his name withheld. She directed government counsel to add one of Mr. Trump's lawyers to the Zoom conference. The government was unable to do so, but Ms. Castaldi indicated that she would try to contact President Trump's lawyer, Alina Habba, as soon as possible, and stated that Ms. Habba planned to be present at the plea hearing. The Zoom conference was neither transcribed nor recorded.

After the Zoom hearing, government counsel contacted counsel for President Trump, Alina Habba. At 1:44 p.m., government counsel relayed to Judge Reyes's chambers in an email that Ms. Habba did not object to Mr. Trump being identified in the hearing and "also said she would like to make a brief statement at the appropriate time."

On January 10, 2024, Judge Reyes's law clerk emailed counsel for both parties:

In your sentencing briefs, Judge Reyes would like you to address whether, for sentencing purposes, the Court is legally entitled to consider the number of tax returns the Defendant stole. If the Defendant's position is that his sentence should be the same regardless of whether one or 1,000 tax returns were stolen, please provide specific support for that proposition. Judge Reyes is interested in whether she can take the number of tax returns stolen into account in considering a variance or upward departure.

On January 18, 2024, Judge Reyes's law clerk emailed counsel: "Could the parties please provide a more precise number for the number of individuals and entities whose tax returns were stolen (beyond just 'thousands')?" On January 19, 2024, government counsel, after coordinating the language of the response with defense counsel via phone and email, responded:

The Court asked us for the number of tax returns stolen by Mr. Littlejohn. Because he copied the records from an IRS database using queries that produced large

tranches of tax data (rather than pulling specific records), the answer to the exact number of returns stolen is difficult to determine. Based on the government's analysis of IRS data and material recovered through Mr. Littlejohn's cooperation, the number of individuals and entities whose annual income tax returns were stolen is approximately 8,000. That would include about 7,600 individuals and slightly over 600 entities.

26 USC § 6103(b) broadly defines "return" as "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed" and defines "return information" as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." Using these definitions, the data stolen by Mr. Littlejohn included "returns" and "return information" for approximately 18,000 individuals and 73,000 businesses whose information was, in some form, linked to the above-referenced 8,000 taxpayers.

On January 23, 2024, at 9:31 p.m., Sean Clerget, Chief Oversight Counsel for the U.S. House of Representatives Committee on Ways and Means, emailed chambers a letter from Republican members of the committee regarding Mr. Littlejohn's sentencing.  The letter is attached here as Exhibit A and publicly available.[1]

The next day, January 24, 2024, at 4:24 p.m., Judge Reyes's law clerk responded to Mr. Clerget's email:

Judge Reyes asked that I thank you for forwarding this correspondence. Please convey to the Members that Judge Reyes is carefully considering all of the information she receives concerning this matter and appreciates them taking the time to convey their unique perspective.

---

[1] https://waysandmeans.house.gov/2024/01/24/ways-means-republicans-throw-the-book-at-irs-leaker/

Further, if neither the Committee nor the parties in this case object—and please confirm there are no objections before sending—please reply to this email with the November 8, 2023 Letter (from the Committee to DOJ) and the January 17, 2024 letter (from DOJ to the Committee) referenced in the correspondence.

At 5:07 p.m., Judge Reyes's law clerk sent an email to counsel for both parties concerning victim impact statements and Mr. Littlejohn's potential prison report date. The email stated:

1. We receive the attached victim impact statement in the mail this week, which we have redacted. Do the parties have a recommendation on what to do with this letter (and other letters we may receive this week)?

2. Given the health status of Mr. Littlejohn's father, please let the Court know whether, if Mr. Littlejohn is sentenced to a term of incarceration, he would request a delay in the reporting date for when his term of incarceration would begin.

Later that evening, at 8:54 p.m., government counsel responded to Mr. Clerget's email including chambers and defense counsel, "We do not object to the Committee sharing the two letters described in your below email."

At 8:59 p.m., the government responded to the law clerk's email about the victim impact statements:

Thank you for sharing that letter – we received it as well. As to that letter and other victim impact statements we have received, we would propose filing them under seal on the docket and also redacting identifiers associated with victims who wish not to share their names. In addition, we wanted to let you know that at least one victim does intend to speak at the sentencing hearing.

The next day, on January 25, 2024, at 12:00 p.m., defense counsel replied to Mr. Clerget's email including chambers and government counsel:

On behalf of Charles Littlejohn, we respectfully object to the January 23, 2024 Letter from the Republican Members of the Committee on Ways and Means, and to any other similar submissions to the Court in this case. The Republican Members of the Committee on Ways and Means are not parties to Mr. Littlejohn's case, nor are they victims. If, as a third party, they wish to submit their views in support of the government's sentencing position, they should be required, under Local Rule 7, to move the Court for leave to file an amicus brief. Local Rule 7(2) requires that motions by amici "*shall concisely state the nature of the movant's interest; identify the party or parties supported, if any; and set forth the reasons why an amicus brief*

6

**A264**

*is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case.*" The Rule also requires the movant to first confer with each party in the case as to their position on the motion for leave to file the brief and, once filed, allow the parties 14 days to respond. Here, a third party should not be allowed to circumvent this rule by submitting argument to the Court, outside of the docket, days before sentencing, and not affording Mr. Littlejohn (or others) adequate chance to respond.

While the Court has broad discretion to consider sentencing materials properly submitted by the prosecution, defense, and probation, the Guidelines and Federal and Local Rules do not provide for consideration of advocacy and/or information submitted outside of the judicial record. *See, e.g.* FRCP 32 and Local Rule 32.2. It is improper for a third party to try to influence the Court in this way—especially where the third party is an entirely partisan group from the legislative branch that has also publicized its correspondence to the Court. *See "Ways & Means Republicans: 'Throw the Book' at IRS Leaker"* (Jan. 24,2024), available at https://waysandmeans.house.gov/ways-means-republicans-throw-the-book-at-irs-leaker/

Mr. Littlejohn should be treated like any other defendant who comes before this Court for sentencing. He pled guilty to one count of unauthorized disclosure of tax records pursuant to a pre-indictment plea agreement and is before the Court to be sentenced for that offense. The media and political interest in this case do not give license to Members of Congress, or any other third party, to try to improperly insert their political agenda into the sentencing process. There is no basis here for the Court to stray from its customary Rules and Procedures.

For these reasons, it is, respectfully, our position that the Court should disregard the January 23, 2024 Letter from the Republican Members of the House Committee on Ways and Means and any additional related submissions.

At 4:05 p.m., defense counsel responded to the law clerk's email about victim impact

statements and a prison report date:

1. We have no objection to filing the victim impact statements under seal. As that likely means that I will not receive a copy through ECF, I would ask that the government kindly email the redacted statements to me when they are filed. We also thought it prudent to bring to the Court's attention that one of the victims in the case, Kenneth Griffin, recently served Mr. Littlejohn with a deposition subpoena (attached) in his pending civil suit against the IRS and Treasury Department, and that Mr. Griffin's counsel have indicated that they may add Mr. Littlejohn as a defendant to the lawsuit. I have previously notified the government of this litigation.

2. Mr. Littlejohn greatly appreciates the Court's consideration of his father's health

7

situation.  To afford Mr. Littlejohn more time with his father, I intend to ask the Court at Sentencing to allow Mr. Littlejohn to self-report at a later date directly to the Federal Correctional Institution to which he is designated.

The next day, on January 26, 2024, at 1:08 p.m., defense counsel emailed government counsel and chambers stating that, due to serious health issues, Mr. Littlejohn's mother and stepfather would "no longer be able to travel to Washington to support Charles at sentencing or be able to update his father and stepmother on the proceedings."  Defense counsel asked whether it was "possible for the Court to set up a private videoconference link on Monday so that Charles' parents and stepparents may at least be there remotely."  Defense counsel had conferred with the government and it did not object to the request.  In response, at 1:31 p.m., Judge Reyes's law clerk responded, "We are sorry to hear that and wish [his mother] a speedy recovery.  Yes, Mr. Littlejohn's parents and stepparents may watch remotely.  There may be some technical limitations with the viewing angle of the Courtroom, but I've copied my colleague . . . who will be able to coordinate the link."

At 3:58 p.m., Judge Reyes's law clerk emailed the parties asking when the government would be filing the victim impact statements, stating, "Judge Reyes is interested in reviewing them today."  At 4:18 p.m., government counsel emailed the law clerk and chambers "the final sealed and redacted set of victim impact statements."  The government indicated that it would send the law clerk a copy of the unredacted filing *ex parte*.

At 4:24 p.m., Mr. Clerget replied to his email correspondence: "We disagree with defense counsel's objection and characterization of our letter, but we will take no further action unless the court requests it."  The defense was not privy to any further correspondence between chambers and Mr. Clerget.

Shortly thereafter, at 6:27 p.m., Judge Reyes's law clerk emailed the parties:

8

The Court has reviewed the victim impact statements filed by the Government, and Judge Reyes plans to quote from some of them at the hearing—without, of course, using any identifying information. Mr. Jacobson, please let us know if there is any objection to that.

And Ms. Manning, as the Court explained previously, Judge Reyes also plans to quote from the letters submitted on behalf of Mr. Littlejohn, again without using any identifying information.

On the afternoon of January 27, 2024, at 1:36 p.m., Judge Reyes's law clerk sent the following email to counsel for both parties:

The Judge is interested to hear your views on Monday on the following question: is it *per se* unreasonable to impose a sentence of a maximum term, outside the guidelines, to a defendant that pled guilty, cooperated with the Government, and accepts responsibility. We have identified the following outside Circuit decisions, which you should be prepared to address. If there are other cases you wish to bring to the Court's attention please have hard copies available for the Court and opposing counsel on Monday. If possible, please give opposing counsel some time with any cases in advance of the hearing.

The Judge has not made a sentencing decision and will of course hear all argument on the appropriate sentence, including the appropriate impact of Mr. Littlejohn's cooperation and acceptance of responsibility. She asked that I send this particular question in advance so that you can conduct your own legal research if you so choose.

Attached to the email were copies of *United States v. LePage*, 477 F.3d 485 (7th Cir. 2007), *United States v. Ortiz Alvarez*, 821 F. App'x 305 (5th Cir. 2020), and *United States v. Helton*, 370 F. App'x 709 (7th Cir. 2010). The government subsequently filed Government's Notice Concerning Sentencing, ECF No. 32, which purported to answer the court's question.

In response to the Government's Notice Concerning Sentencing, ECF No. 32, Judge Reyes's law clerk emailed counsel for the parties on the afternoon of January 28, 2024, at 3:28 p.m.:

With respect to the Government's Notice Concerning Sentencing, Dkt. 32, the Court did not authorize this filing. The Judge has not reviewed this brief. The Court made clear how it wanted the question answered, which was at the hearing on Monday. Ms. Manning, if you would like to respond via a filing today, you are of

course free to do so. If you would prefer instead for the Judge to not review the brief and make clear on the record tomorrow that she has not done so, please let me know that. Neither option will affect the Court's ultimate decision.

Defense counsel responded that evening, at 6:19 p.m.:

On behalf of Mr. Littlejohn, we will stick with our plan to address the Court's *per se* reasonableness question at the hearing tomorrow. We defer to the Court as to the disposition of the Government's filing. We note that if the Notice Concerning Sentencing remains on the record, we will separately ask the Government to correct one of the factual statements made in the filing.

Judge Reyes's law clerk replied at 7:01 p.m.: "The Judge won't review the filing and will order it stricken tomorrow."

On the morning of the sentencing hearing, January 29, 2024, at 6:51 a.m., defense counsel emailed chambers asking for remote access to the sentencing hearing for additional family members, including his stepmother, three siblings, and an uncle, which the court allowed.

On April 15, 2024, at 1:47 p.m., Judge Reyes's law clerk emailed counsel for both parties:

The Court understands that Mr. Littlejohn has a voluntary surrender date of May 1, 2024. The Court is sympathetic to Mr. Littlejohn's family situation. If there are extenuating circumstances that justify a later voluntary surrender date, the Court would quickly consider a motion filed by Mr. Littlejohn to push back the voluntary surrender date. If there is health information involved, Mr. Littlejohn may file the motion under seal.

On April 18, 2024, at 3:22 p.m., defense counsel responded declining the court's invitation to request a delayed report date. Defense counsel added, "If, at any point in the future, the Judge would be willing to consider a motion for a reduction in his period of incarceration and/or other sentencing alternatives, I would, of course, be happy to submit such a request to the Court." At 3:56 p.m., Judge Reyes's law clerk replied: "Judge Reyes would consider any such motion at an appropriate time. In particular, if Mr. Littlejohn would like a limited release to attend a family member's final days or funeral, the Judge would rule quickly on such a request, although we cannot guarantee what [the Bureau of Prisons] would do."

Mr. Littlejohn respectfully requests that the Court settle and approve the above statement to be included by the district clerk in the record on appeal.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
CELIA GOETZL
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500

11

**A269**

# EXHIBIT A

JASON SMITH
MISSOURI,
*CHAIRMAN*

MARK ROMAN, STAFF DIRECTOR
(202) 225–3625

RICHARD E. NEAL
MASSACHUSETTS,
*RANKING MEMBER*

BRANDON CASEY, STAFF DIRECTOR
(202) 225–4021



# U.S. House of Representatives

### COMMITTEE ON WAYS AND MEANS
### 1139 LONGWORTH HOUSE OFFICE BUILDING
### Washington, DC 20515

January 23, 2024

The Honorable Ana C. Reyes
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Washington, D.C. 20001

RE: United States v. Charles Littlejohn, 1:23-cr-00343-ACR

Dear Judge Reyes:

We write today to encourage you to sentence Mr. Charles Littlejohn above the anticipated sentencing guidelines range of 8 to 14 months and to the maximum of five years. We make this request respectfully and with complete deference for your role in deciding the appropriate sentence in this case. As the Committee on Ways and Means (Committee), which has jurisdiction over the Internal Revenue Code, our intention is to share important context related to this case that may be helpful to your decisions regarding sentencing. For years, the Committee has conducted congressional oversight of the Internal Revenue Service (IRS) related to the security of confidential taxpayer information. The Committee has questioned federal investigators and sought answers about who illegally stole and then later leaked private and confidential American taxpayer information and how the Internal Revenue Service (IRS) allowed it to happen.[1] Now that Mr. Littlejohn has been prosecuted and will be sentenced, the Committee will continue to fulfill its oversight role over the IRS in an effort to make sure it does not happen again.

But the Committee cannot accomplish this alone. As the Court knows, some of the Section 3553(a) factors it must consider are "the need for the sentence imposed . . . to reflect the seriousness of the offense [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). Individuals who may be inclined to take the law into their own hands, as Mr. Littlejohn did, must know that they will be caught *and* that they will face severe consequences. We worry that a sentence of only 8 to 14 months does not comport with the seriousness of the crimes committed and we are concerned that a sentence in that range will fail to have the deterrent effect needed to prevent such a theft and disclosure from happening again. Below we describe some of the reasons why we think this is the case.

---

[1] H. Comm. On Ways and Means Press Release, *Brady Calls for Investigation into Potentially Criminal Leak of Trump's Private Tax Info*, Sept. 28, 2020, https://waysandmeans.house.gov/brady-calls-for-investigation-into-potentially-criminal-leak-of-trumps-private-tax-info/.

The Honorable Ana C. Reyes
January 23, 2024
Page 2

First, we are concerned about the Department of Justice's (DOJ) determination to plead Mr. Littlejohn to a single count of unauthorized disclosure of taxpayer information[2] when the facts clearly warrant additional charges. Given that Mr. Littlejohn admitted to not only obstructing the DOJ's investigation, but also to making multiple distinct illegal disclosures of taxpayer information, a plea to one count of unauthorized disclosure of taxpayer information appears insufficient on its face. According to the factual proffer in support of the plea, Mr. Littlejohn admitted to committing two *separate* acts related to misappropriation of taxpayer information: stealing and disclosing private tax information associated with former President Donald J. Trump to *The New York Times*; and also stealing private tax information associated with thousands of individuals and disclosing this information to *ProPublica*.[3] Mr. Littlejohn not only admitted to committing these two separate acts, but he also acknowledged as part of his plea agreement that he obstructed the DOJ's investigation into the matter.[4]

The Committee wrote to the DOJ on November 8, 2023, seeking an explanation as to why it only charged Mr. Littlejohn with a single count.[5] Despite our concerns that Mr. Littlejohn was only charged with one count, the Committee was pleased to see that on January 16, 2024, the DOJ filed a sentencing memorandum, in which the government urges the Court to sentence Mr. Littlejohn to the statutory maximum of five years imprisonment.[6] The DOJ also provided a response to the Committee's letter on January 17, 2024. Like the DOJ, we do not believe a sentence of 8 to 14 months for the crimes committed will effectively deter similar conduct in the future. Given the seriousness of Mr. Littlejohn's crimes, we believe a sentence above the anticipated guideline range is warranted.

After initially raising concerns about the data breach that led to the leak of President Trump's confidential tax information to *The New York Times* in 2020, Members of the Committee called for transparency and an investigation following *ProPublica's* publication of taxpayer information in June 2021.[7] The Committee has worked with the Treasury Inspector General for Tax Administration (TIGTA) to learn about the progress of the investigation and to encourage them to keep pushing towards a resolution. TIGTA dedicated extensive resources to the matter in the form of both personnel and time. Their work was able to identify Mr. Littlejohn and make the prosecution and guilty plea here possible. Given how difficult it was for TIGTA to identify the culprit, it would be a shame if Mr. Littlejohn received a light sentence after stealing and disclosing an unprecedented amount of private taxpayer information.

---

[2] Plea Agreement, Oct. 12, 2023, Case No. 1:23-cr-003430ACR (ECF 8).
[3] Factual Basis for Plea, Oct. 12, 2023, Case No. 1:23-cr-003430ACR (ECF 9).
[4] *Id.*
[5] Letter from The Hon. Jason Smith, Chairman, H. Comm. on Ways and Means, et. al., to Corey R. Amundson, Chief, Public Integrity Section, Criminal Division, U.S. Dept. of Justice (Nov. 8, 2023), https://waysandmeans.house.gov/ways-and-means-republicans-demand-doj-answers-for-inadequate-charging-decisions-for-propublica-leaker/.
[6] Gov't Sentencing Memorandum, Jan. 16, 2024, Case No. 1:23-cr-003430ACR.
[7] H. Comm. On Ways and Means Press Release, *Brady, Crapo to IRS: Breach of Taxpayer Data Cannot Be Tolerated: Top Republican Tax Writers Call for Transparency, Investigation Into Leak of Confidential Tax Information, June 9, 2021*, https://waysandmeans.house.gov/brady-crapo-to-irs-breach-of-taxpayer-data-cannot-be-tolerated/.

The Honorable Ana C. Reyes
January 23, 2024
Page 3

     Mr. Littlejohn took the law into his own hands and decided he knew what was best. As you are aware, Section 6103 of the Internal Revenue Code contains a process by which Congress can obtain otherwise confidential tax information and release it under certain circumstances. Mr. Littlejohn's actions showed disdain for the rule of law and American confidence in our voluntary tax system. He acted with an apparent political motivation and perhaps with an intent to impact a Presidential election. While we wish that prosecutors had pleaded him to additional counts, you still can impose a more serious sentence than the anticipated 8-to-14-month guideline range. In our view, the seriousness of the crimes and the context surrounding them justify an upward variance. So that similar conduct is deterred in the future, we respectfully ask that you sentence Mr. Littlejohn to the maximum sentence of five years.

     Thank you for your consideration.

          Sincerely,

Jason Smith
Chairman
Committee on Ways and Means

Vern Buchanan
Member of Congress

Adrian Smith
Member of Congress

Mike Kelly
Member of Congress

David Schweikert
Member of Congress

Darin LaHood
Member of Congress

Brad R. Wenstrup, D.P.M.
Member of Congress

Jodey C. Arrington
Member of Congress

A. Drew Ferguson, IV
Member of Congress

Ron Estes
Member of Congress

Lloyd Smucker
Member of Congress

Kevin Hern
Member of Congress

**A273**

The Honorable Ana C. Reyes
January 23, 2024
Page 4

Carol D. Miller
Member of Congress

Gregory F. Murphy, M.D.
Member of Congress

David Kustoff
Member of Congress

Brian K. Fitzpatrick
Member of Congress

W. Gregory Steube
Member of Congress

Claudia Tenney
Member of Congress

Michelle Fischbach
Member of Congress

Blake D. Moore
Member of Congress

Michelle Steel
Member of Congress

Beth Van Duyne
Member of Congress

Randy Feenstra
Member of Congress

Nicole Malliotakis
Member of Congress

Mike Carey
Member of Congress

cc:    Counsel of record, United States v. Charles Littlejohn, 1:23-cr-00343-ACR

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 23-cr-343 (ACR)** |
| | ) | |
| **CHARLES EDWARD LITTLEJOHN,** | ) | |
| | ) | |
| **Defendant** | ) | |
| _____ | ) | |

## <u>ORDER</u>

Upon consideration of the Unopposed Motion to Settle and Approve Statement of

Unrecorded Proceedings, it is hereby ORDERED that the motion is GRANTED.  The Statement

of Unrecorded Proceedings is hereby settled and approved to be included by the district clerk in

the record on appeal under Federal Rule of Appellate Procedure 10.

DATE:  _____

_____
ANA C. REYES
UNITED STATES DISTRICT JUDGE

**A275**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 23-cr-343-ACR |
| | ) | |
| CHARLES EDWARD LITTLEJOHN, | ) | |
| | ) | |
| Defendant | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

### STATEMENT OF UNRECORDED PROCEEDINGS

Pursuant to Federal Rule of Appellate Procedure 10(c), the Court **SETTLES** and **APPROVES** this Statement of Unrecorded Proceedings to be included by the District Clerk in the Record on Appeal.

On October 12, 2023, Defendant Charles Edward Littlejohn pled guilty before Judge Ana C. Reyes to one count of disclosing tax return information without authorization. In the Factual Basis for Plea, Mr. Littlejohn agreed that he had stolen and disclosed to the press the tax returns of then President Donald J. Trump and thousands of the Nation's wealthiest people. Dkt. 9. On January 28, 2024, the Court sentenced Mr. Littlejohn primarily to the statutory maximum of 60 months and on January 31, the Court entered Judgment against him. Dkt. 35. On February 12, 2024, Mr. Littlejohn filed a Notice of Appeal, Dkt. 38, and the Court then transmitted the case to the Court of Appeals, Dkt. 39. His appeal is currently pending. *See* Case No. 24-3019.

At the parties' request, Judge Reyes scheduled Mr. Littlejohn's plea hearing for October 12, 2023. On October 10, 2023, Judge Reyes's Courtroom Deputy emailed the parties: "The judge would like to meet with you, either in chambers or via zoom video, off the record and before Thursday. Would you be available at a time on tomorrow?" Based on the parties' responses as to their availability, the Courtroom Deputy set the meeting for October 11, 2023, at

2:00 p.m. in Judge Reyes's Chambers.  Judge Reyes was present with her law clerk, along with

Government counsel, Jennifer Clarke and Lauren Castaldi, and Defense counsel, Lisa Manning.

Mr. Littlejohn was not present.  Judge Reyes did not ask whether any attorney objected to this

conference being held among lawyers only and in chambers, and no attorney affirmatively raised

an objection.

      Judge Reyes began the meeting by explaining that she had questions about the case and

Mr. Littlejohn's plea agreement.  She expressed that she was perplexed as to why the

Government had allowed Mr. Littlejohn to plead to a single count of unauthorized disclosure of

taxpayer information when he had stolen the tax records of a sitting president and thousands of

the Nation's wealthiest people.  She asked the Government whether there would be a separate,

future case with additional charges and, if not, why not.

      The Government lawyers stated that this would be the only federal criminal case against

Mr. Littlejohn for the conduct described in the Factual Basis for Plea and that the Government

believed it was a just resolution of the case.  The Government lawyers noted that requiring

Mr. Littlejohn to plead to multiple counts of the same offense would not change the calculation

of his total offense level under the Sentencing Guidelines.  Judge Reyes responded that, given

the nature and extent of the conduct, she still assumed the Government would have brought

multiple charges carrying a much higher possible sentence—noting some charges may carry

maximum sentences of 20 years.  Judge Reyes explained in a firm tone that she did not

understand why the Government had allowed Mr. Littlejohn, who admittedly had engaged in

premeditated and repeated criminal conduct, to plead to one count with a statutory maximum of

five years.  She compared Mr. Littlejohn's plea offer to those of defendants in the January 6

cases who faced multiple counts and potentially years in prison for trespassing on the Capital

Grounds.

Government counsel explained that the Department of Justice had concerns that the statute of limitations could run if the parties failed to reach a plea acceptable to Mr. Littlejohn. They also noted that Mr. Littlejohn had provided an extensive proffer fully accepting responsibility. In such cases, they explained that it was within standard DOJ practice to make a one count plea offer pre-indictment in cases that DOJ would otherwise charge as multiple counts. Defense counsel then explained in greater detail the extent of Mr. Littlejohn's cooperation, including that he helped the Government identify the holes in the IRS computer system that allowed him to find and download the tax information undetected.

After hearing this information, Judge Reyes indicated that she was still troubled by the plea—again emphasizing the fact that Mr. Littlejohn had stolen the tax returns of a sitting President—but that the plea hearing would proceed the next day as scheduled. Judge Reyes also stated that Mr. Littlejohn's cooperation sounded significant and that she would like to hear the full details at sentencing. She ended the meeting by suggesting that Defense counsel convey to her client the Court's views of his conduct and stating that she would see the parties the following day.

The morning of the scheduled plea hearing, October 12, 2023, at 10:57 a.m., Judge Reyes's law clerk emailed Government and defense counsel stating:

> At this afternoon's plea hearing, Judge Reyes plans to ask, as part of the factual basis for the plea, who the high-ranking public official was, to name any others, and the news organization. She will also ask for names of some of the private individuals and the second news organization. If the parties have an issue with this approach, please let us know, and we can schedule a phone conference to discuss between 12:30 and 1:30 p.m. today.

In response, at 11:25 a.m., counsel for each party jointly requested "the opportunity to discuss this matter in advance of the hearing this afternoon." The law clerk responded by email at 11:31

a.m. that the Court would "schedule a call for 1 p.m., and it will be off the record[,]" and that the Courtroom Deputy would "circulate the dial-in information shortly." Soon thereafter, at 12:08 p.m., the Courtroom Deputy emailed a Zoom link to Government and defense counsel for a videoconference from 1:00 to 1:45 p.m. Judge Reyes did not ask whether any attorney objected to the Zoom hearing proceeding without recording and among counsel only, and no attorney affirmatively raised an objection.

Present at the Zoom conference were Government attorneys Jennifer Clarke and Lauren Castaldi, and defense counsel, Lisa Manning. Judge Reyes began the videoconference by stating that, during the plea hearing, she planned to ask Mr. Littlejohn the names of the victims of his crimes and she expected him to answer. She called the meeting to ask the lawyers if there was any issue with her doing so. Ms. Castaldi responded that the Government had concerns about this approach because the victims had a right to privacy under the Crime Victims' Rights Act. Judge Reyes questioned the Government about the applicability of the Act in a case that was already public, where the names of the victims, including the former President, were already in the news. She stated that the parties would not be able to get through the plea and sentencing without Mr. Littlejohn admitting to his conduct and identifying Public Official A (*i.e.*, then President Trump). The Government lawyers responded that the charge and privacy considerations would be the same regardless of the identity of the victim.

Judge Reyes asked whether she would be violating the Crime Victims' Rights Act if she asked Mr. Littlejohn to list the names of his targeted victims during the plea colloquy. Counsel for both parties responded that they each wanted to make sure that they fully complied with the Crime Victims' Rights Act. Ms. Castaldi added that, based on her conversations thus far with victims of the ProPublica leak, she understood that most of them wanted to keep the matter

4

**A279**

private and not receive any additional publicity.

Judge Reyes then asked whether "Public Official A," then President Trump, also wanted his name withheld.  She directed Government counsel to add one of President Trump's lawyers to the Zoom conference.  The Government was unable to do so, but Ms. Castaldi indicated that she would try to contact President Trump's lawyer, Alina Habba, as soon as possible, and stated that Ms. Habba planned to be present at the plea hearing.  After the Zoom hearing, Government counsel contacted counsel for President Trump, Alina Habba.  At 1:44 p.m., Government counsel relayed to Judge Reyes's chambers in an email that Ms. Habba did not object to President Trump being identified in the hearing and "also said she would like to make a brief statement at the appropriate time."

The plea hearing proceeded as scheduled on October 12, 2023.  Judge Reyes did not ask Mr. Littlejohn for the names of any of his private citizens victims.  With the government official's attorney's acquiescence, the Court asked Mr. Littlejohn for the name of the high-ranking government official, which he provided as then-President Donald J. Trump.  Dkt. 13 at 10:5-7.  Judge Reyes accepted Mr. Littlejohn's plea and then expressed her concern about the nature of Defendant's conduct.  *See id.* at 17:9-16, 20:3-21:6.  Before recessing the hearing, she asked if counsel had anything to add; counsel for each party responded that they did not.  *Id.* at 24:12-18.

During the sentencing itself, Judge Reyes questioned the Government's charging decisions and potential sentences, Dkt. 40 at 20:13-24:6, 46:12-46:23, and noted the Defendant's cooperation, *id.* at 11:5-11:13.  Before recessing the sentencing, she asked if counsel had "any objections to the sentence imposed" and again "any objections" not already on the record; again counsel for each party responded that they did not.  *Id.* at 84:19-85:7.

The parties and Chambers also exchanged emails concerning the plea and sentencing.

These emails, including the ones quoted in here, are attached as an Appendix to this Statement.

Date: January 8, 2025

_____
ANA C. REYES
United States District Judge

# APPENDIX A

 Outlook

---

## RE: US v. Littlejohn Case no. 1:23-cr-343

**From** Chashawn White <Chashawn_White@dcd.uscourts.gov>
**Date** Tue 2023-10-10 5:58 PM
**To** Lisa Manning <LManning@schertlerlaw.com>; Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>
**Cc** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>

---

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

Thanks so much for your quick responses. I will schedule you for 2:00 PM tomorrow in judge's chambers. Chambers is located on the 4th Floor, Room 4317.

Best regards,
Chashawn

---

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Sent:** Tuesday, October 10, 2023 5:48 PM
**To:** Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>; Chashawn White <Chashawn_White@dcd.uscourts.gov>
**Cc:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** Re: US v. Littlejohn Case no. 1:23-cr-343

**CAUTION - EXTERNAL:**

Ms. White,

I can be available tomorrow any time after noon and would be happy to meet in chambers.

Lisa

## Lisa Manning

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

**A283**

LManning@SchertlerLaw.com

o +1.202.628.4199 | m +1.202.713.6714

---

**From:** Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>
**Sent:** Tuesday, October 10, 2023 5:18 PM
**To:** Chashawn White <Chashawn_White@dcd.uscourts.gov>
**Cc:** Lisa Manning <LManning@schertlerlaw.com>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** RE: US v. Littlejohn Case no. 1:23-cr-343

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you Ms. White. I can be available anytime tomorrow in chambers or on Zoom.


Lauren Castaldi
Trial Attorney
United States Department of Justice
Criminal Division | Public Integrity Section
Phone: (202) 305-4495
Cell: (202) 262-7065
Email: Lauren.Castaldi@usdoj.gov

---

**From:** Chashawn White <Chashawn_White@dcd.uscourts.gov>
**Sent:** Tuesday, October 10, 2023 5:06 PM
**To:** Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>
**Cc:** LManning@schertlerlaw.com; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; ncherry@schertlerlaw.com
**Subject:** RE: US v. Littlejohn Case no. 1:23-cr-343
**Importance:** High

Good afternoon Counsel,

The judge would like to meet with you, either in chambers or via zoom video, off the record and before Thursday. Would you be available at a time on tomorrow?


Best regards,

Chashawn D. White, Courtroom Deputy
U.S. District & Bankruptcy Courts for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001
(202) 354-3176

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**A284**

 Outlook

---

**Accepted: Courtroom 12's Zoom Meeting for USA v. Littlejohn**

---

| | |
|---|---|
| **Organizer** | Chashawn White <Chashawn_White@dcd.uscourts.gov> |
| **Meeting time** | This event occurred 11 months ago (Thu 2023-10-12 1:00 PM - 1:45 PM) |
| **Location** | https://uscourts-dcd.zoomgov.com/j/1618828323?<br>pwd=aDdjazZ1RURwZVdnRDVBY2E0dGxVZz09 |
| **My response** | Accepted |
| **Required attendees** | Chashawn White, Castaldi, Lauren (CRM), Lisa Manning, Jacobson, Jonathan (CRM), Noah Cherry |
| **Message sent** | Thu 2023-10-12 12:08 PM |

---

**A285**

RE: 1:23-cr-343, USA v. Littlejohn

Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>

Thu 2023-10-12 11:31 AM

To:Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>;Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>;Lisa Manning
<LManning@schertlerlaw.com>;Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>;Noah Cherry
<ncherry@schertlerlaw.com>
Cc:Chashawn White <Chashawn_White@dcd.uscourts.gov>

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize
> the sender and know the content is safe.

Thank you for the quick response. We will schedule a call for 1 p.m., and it will be off the record. Ms. White will
circulate the dial-in information shortly.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>
**Sent:** Thursday, October 12, 2023 11:25 AM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; LManning@schertlerlaw.com; Jacobson, Jonathan
(CRM) <Jonathan.Jacobson@usdoj.gov>; ncherry@schertlerlaw.com
**Cc:** Chashawn White <Chashawn_White@dcd.uscourts.gov>; Jonathan Ostrowsky
<Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: 1:23-cr-343, USA v. Littlejohn

 **CAUTION - EXTERNAL:**


Thank you Mr. Ostrowsky,

The parties would appreciate the opportunity to discuss this matter in advance of the hearing this afternoon. Is it
possible to schedule a call at 1pm?

Sincerely,


Lauren Castaldi
Trial Attorney
United States Department of Justice
Criminal Division | Public Integrity Section
Phone: (202) 305-4495
Cell: (202) 262-7065
Email: Lauren.Castaldi@usdoj.gov

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Thursday, October 12, 2023 10:57 AM
**To:** Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>; LManning@schertlerlaw.com; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; ncherry@schertlerlaw.com
**Cc:** Chashawn White <Chashawn_White@dcd.uscourts.gov>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** 1:23-cr-343, USA v. Littlejohn

Good morning, Counsel,

At this afternoon's plea hearing, Judge Reyes plans to ask, as part of the factual basis for the plea, who the high-ranking public official was, to name any others, and the news organization. She will also ask for names of some of the private individuals and the second news organization.  If the parties have an issue with this approach, please let us know, and we can schedule a phone conference to discuss between 12:30 and 1:30 p.m. today.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**A287**

## Re: 1:23-cr-343, USA v. Littlejohn

## Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>

Thu 2023-10-12 2:21 PM

To:Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>;Lisa Manning <LManning@schertlerlaw.com>;Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>;Noah Cherry <ncherry@schertlerlaw.com>

Cc:Chashawn White <Chashawn_White@dcd.uscourts.gov>;Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you Ms. Castaldi.

Get Outlook for iOS

---

**From:** Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>
**Sent:** Thursday, October 12, 2023 1:44:05 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; LManning@schertlerlaw.com <LManning@schertlerlaw.com>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; ncherry@schertlerlaw.com <ncherry@schertlerlaw.com>
**Cc:** Chashawn White <Chashawn_White@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>
**Subject:** RE: 1:23-cr-343, USA v. Littlejohn

**CAUTION - EXTERNAL:**

Good afternoon,

I spoke with counsel for President Trump, Alina Habba, and she does not object to him being identified in the hearing. She also said she would like to make a brief statement at the appropriate time.

Thank you.


Lauren Castaldi
Trial Attorney
United States Department of Justice
Criminal Division | Public Integrity Section
Phone: (202) 305-4495
Cell: (202) 262-7065
Email: Lauren.Castaldi@usdoj.gov


---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Thursday, October 12, 2023 10:57 AM
**To:** Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>; LManning@schertlerlaw.com; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; ncherry@schertlerlaw.com
**Cc:** Chashawn White <Chashawn_White@dcd.uscourts.gov>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** 1:23-cr-343, USA v. Littlejohn

Good morning, Counsel,

At this afternoon's plea hearing, Judge Reyes plans to ask, as part of the factual basis for the plea, who the high-ranking public official was, to name any others, and the news organization. She will also ask for names of some of the private individuals and the second news organization.  If the parties have an issue with this approach, please let us know, and we can schedule a phone conference to discuss between 12:30 and 1:30 p.m. today.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

 Outlook

---

**Re: 1:23-cr-343, USA v. Littlejohn - Question re Sentencing Memoranda**

---

**From** Lisa Manning <LManning@schertlerlaw.com>

**Date** Thu 2024-01-11 8:18 PM

**To** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>

**Cc** Noah Cherry <ncherry@schertlerlaw.com>

Jon,

Thank you for the quick response. I will file the motion first thing tomorrow.

Yes, we are comfortable with Judge Reyes reading into the record excerpts of the letters of support. We appreciate the Court's consideration of the letters and the sensitivity to the privacy of their authors.

Lisa

**Lisa Manning**

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

LManning@SchertlerLaw.com

o +1.202.628.4199 | m +1.202.713.6714

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>

**Sent:** Thursday, January 11, 2024 8:05 PM

**To:** Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>

**Cc:** Noah Cherry <ncherry@schertlerlaw.com>

**Subject:** Re: 1:23-cr-343, USA v. Littlejohn - Question re Sentencing Memoranda

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you Ms. Manning. No need for briefing, a simple motion will suffice. Please include something along the lines you note below and cite Hubbard (650 F2d 293).

The judge typically reads excerpts from letters into the record during sentencing. Would it be ok for her to read in excerpts with no identifying information?

Jon

**A290**

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Sent:** Thursday, January 11, 2024 4:49 PM
**To:** Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jonathan Ostrowsky
<Jonathan_Ostrowsky@dcd.uscourts.gov>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jacobson,
Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Cc:** Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** Re: 1:23-cr-343, USA v. Littlejohn - Question re Sentencing Memoranda

**CAUTION - EXTERNAL:**

Jon,

On behalf of Mr. Littlejohn, I will also be sure to include in my sentencing memorandum discussion of
the impact of the number of tax returns involved in the offense.

One additional question :
Given the recent escalation of violent political rhetoric and the continuing media scrutiny of Mr.
Littlejohn and his family (including online threats against Charles), several friends & family members
have expressed concerns with their names and letters of support appearing on the public docket.  To
protect their safety and privacy, I plan to file a motion for leave to file under seal the exhibit containing
letters in support of Mr. Littlejohn and to redact related information in my memo.  I have discussed the
motion with the government and they do not oppose it.

Before filing, I wanted to bring the matter to the Court's attention and also to inquire – will the Court
require briefing on this issue or will a simple motion suffice?

Many thanks,
Lisa

**Lisa Manning**
Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP
555 13th Street, N.W.
Suite 500 West
Washington, DC 20004
LManning@SchertlerLaw.com
o +1.202.628.4199 | m +1.202.713.6714

---

**From:** Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>
**Sent:** Wednesday, January 10, 2024 10:21 PM
**To:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Reyes Chambers
<Reyes_Chambers@dcd.uscourts.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Cc:** Lisa Manning <LManning@schertlerlaw.com>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** Re: 1:23-cr-343, USA v. Littlejohn - Question re Sentencing Memoranda

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize
the sender and know the content is safe.

**A291**

Understood. Thanks, Jon.


Jennifer Clarke
Public Integrity Section
U.S. Department of Justice
202-329-0518

---

**From:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Sent:** Wednesday, January 10, 2024 10:09:10 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Cc:** Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** RE: 1:23-cr-343, USA v. Littlejohn - Question re Sentencing Memoranda


Good evening, Counsel,

In your sentencing briefs, Judge Reyes would like you to address whether, for sentencing purposes, the Court is legally entitled to consider the number of tax returns the Defendant stole. If the Defendant's position is that his sentence should be the same regardless of whether one or 1,000 tax returns were stolen, please provide specific support for that proposition. Judge Reyes is interested in whether she can take the number of tax returns stolen into account in considering a variance or upward departure.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Thursday, January 4, 2024 9:38 PM
**To:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Cc:** Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** Re: 1:23-cr-343, USA v. Littlejohn - Question re Sentencing Memoranda


Thanks for checking. The 16th works well.

Best,
Jon

---

**From:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Sent:** Thursday, January 4, 2024 8:49 PM
**To:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Cc:** Lisa Manning <LManning@schertlerlaw.com>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** Re: 1:23-cr-343, USA v. Littlejohn - Question re Sentencing Memoranda

**A292**

**CAUTION - EXTERNAL:**

Thanks, Mr. Ostrowsky. We noticed that there's a holiday on the 15th. Can you confirm whether our memos are due on the 12th or the 16th? We have a soft preference for the 16th - I'm in the middle of a trial right now - but we will of course do whatever you and Judge Reyes like.

Thanks,

Jonathan

On Jan 4, 2024, at 9:44 PM, Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov> wrote:


Thank you for reaching out. In addition to submitting the papers via USB drive, please e-file the memoranda on the public docket, and also provide Chambers with courtesy hard copies of the materials.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Sent:** Thursday, January 4, 2024 7:24 PM
**To:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Cc:** Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** 1:23-cr-343, USA v. Littlejohn - Question re Sentencing Memoranda

**CAUTION - EXTERNAL:**


Mr. Ostrowsky,

When you have a moment, the government and I would appreciate guidance on the Court's Standing Order re: sentencing memoranda. In addition to submitting our respective sentencing papers to chambers via USB drive, should we also e-file our memoranda on the public docket?

Many thanks,
Lisa

**Lisa Manning**
Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP
555 13th Street, N.W.
Suite 500 West
Washington, DC 20004
LManning@SchertlerLaw.com
o +1.202.628.4199 | m +1.202.713.6714

**A293**

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

RE: United States v. Charles Littlejohn, 1:23-cr-00343-ACR

Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>

Wed 2024-01-24 4:24 PM

To:Clerget, Sean <Sean.Clerget@mail.house.gov>;Jonathan.Jacobson@usdoj.gov <Jonathan.Jacobson@usdoj.gov>;Lisa Manning <LManning@schertlerlaw.com>;Noah Cherry <ncherry@schertlerlaw.com>;Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>;Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>

Cc:Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>;Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mr. Clerget,

Judge Reyes asked that I thank you for forwarding this correspondence. Please convey to the Members that Judge Reyes is carefully considering all of the information she receives concerning this matter and appreciates them taking the time to convey their unique perspective.

Further, if neither the Committee nor the parties in this case object—and please confirm there are no objections before sending—please reply to this email with the November 8, 2023 Letter (from the Committee to DOJ) and the January 17, 2024 letter (from DOJ to the Committee) referenced in the correspondence.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Clerget, Sean <Sean.Clerget@mail.house.gov>
**Sent:** Tuesday, January 23, 2024 9:31 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Cc:** Jonathan.Jacobson@usdoj.gov; lmanning@schertlerlaw.com
**Subject:** United States v. Charles Littlejohn, 1:23-cr-00343-ACR

 **CAUTION - EXTERNAL:**

Your Honor,

Please find attached a letter from members of the U.S. House Committee on Ways and Means regarding sentencing in the matter of *United States v. Charles Littlejohn*.

Counsel for the United States and for Mr. Littlejohn are copied here.

Best,

**Sean Clerget | Chief Oversight Counsel**
Committee on Ways and Means
1139 Longworth HOB | Washington, DC 20515
☎: 202.225.3625 (O)

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

JASON SMITH
MISSOURI,
*CHAIRMAN*

MARK ROMAN, STAFF DIRECTOR
(202) 225–3625

RICHARD E. NEAL
MASSACHUSETTS,
*RANKING MEMBER*

BRANDON CASEY, STAFF DIRECTOR
(202) 225–4021



# U.S. House of Representatives

### COMMITTEE ON WAYS AND MEANS
#### 1139 LONGWORTH HOUSE OFFICE BUILDING
#### Washington, DC 20515

January 23, 2024

The Honorable Ana C. Reyes
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Washington, D.C. 20001

RE: United States v. Charles Littlejohn, 1:23-cr-00343-ACR

Dear Judge Reyes:

We write today to encourage you to sentence Mr. Charles Littlejohn above the anticipated sentencing guidelines range of 8 to 14 months and to the maximum of five years. We make this request respectfully and with complete deference for your role in deciding the appropriate sentence in this case. As the Committee on Ways and Means (Committee), which has jurisdiction over the Internal Revenue Code, our intention is to share important context related to this case that may be helpful to your decisions regarding sentencing. For years, the Committee has conducted congressional oversight of the Internal Revenue Service (IRS) related to the security of confidential taxpayer information. The Committee has questioned federal investigators and sought answers about who illegally stole and then later leaked private and confidential American taxpayer information and how the Internal Revenue Service (IRS) allowed it to happen.[1] Now that Mr. Littlejohn has been prosecuted and will be sentenced, the Committee will continue to fulfill its oversight role over the IRS in an effort to make sure it does not happen again.

But the Committee cannot accomplish this alone. As the Court knows, some of the Section 3553(a) factors it must consider are "the need for the sentence imposed . . . to reflect the seriousness of the offense [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). Individuals who may be inclined to take the law into their own hands, as Mr. Littlejohn did, must know that they will be caught **and** that they will face severe consequences. We worry that a sentence of only 8 to 14 months does not comport with the seriousness of the crimes committed and we are concerned that a sentence in that range will fail to have the deterrent effect needed to prevent such a theft and disclosure from happening again. Below we describe some of the reasons why we think this is the case.

---

[1] H. Comm. On Ways and Means Press Release, *Brady Calls for Investigation into Potentially Criminal Leak of Trump's Private Tax Info*, Sept. 28, 2020, https://waysandmeans.house.gov/brady-calls-for-investigation-into-potentially-criminal-leak-of-trumps-private-tax-info/.

**A297**

The Honorable Ana C. Reyes
January 23, 2024
Page 2

First, we are concerned about the Department of Justice's (DOJ) determination to plead Mr. Littlejohn to a single count of unauthorized disclosure of taxpayer information[2] when the facts clearly warrant additional charges. Given that Mr. Littlejohn admitted to not only obstructing the DOJ's investigation, but also to making multiple distinct illegal disclosures of taxpayer information, a plea to one count of unauthorized disclosure of taxpayer information appears insufficient on its face. According to the factual proffer in support of the plea, Mr. Littlejohn admitted to committing two *separate* acts related to misappropriation of taxpayer information: stealing and disclosing private tax information associated with former President Donald J. Trump to *The New York Times*; and also stealing private tax information associated with thousands of individuals and disclosing this information to *ProPublica*.[3] Mr. Littlejohn not only admitted to committing these two separate acts, but he also acknowledged as part of his plea agreement that he obstructed the DOJ's investigation into the matter.[4]

The Committee wrote to the DOJ on November 8, 2023, seeking an explanation as to why it only charged Mr. Littlejohn with a single count.[5] Despite our concerns that Mr. Littlejohn was only charged with one count, the Committee was pleased to see that on January 16, 2024, the DOJ filed a sentencing memorandum, in which the government urges the Court to sentence Mr. Littlejohn to the statutory maximum of five years imprisonment.[6] The DOJ also provided a response to the Committee's letter on January 17, 2024. Like the DOJ, we do not believe a sentence of 8 to 14 months for the crimes committed will effectively deter similar conduct in the future. Given the seriousness of Mr. Littlejohn's crimes, we believe a sentence above the anticipated guideline range is warranted.

After initially raising concerns about the data breach that led to the leak of President Trump's confidential tax information to *The New York Times* in 2020, Members of the Committee called for transparency and an investigation following *ProPublica's* publication of taxpayer information in June 2021.[7] The Committee has worked with the Treasury Inspector General for Tax Administration (TIGTA) to learn about the progress of the investigation and to encourage them to keep pushing towards a resolution. TIGTA dedicated extensive resources to the matter in the form of both personnel and time. Their work was able to identify Mr. Littlejohn and make the prosecution and guilty plea here possible. Given how difficult it was for TIGTA to identify the culprit, it would be a shame if Mr. Littlejohn received a light sentence after stealing and disclosing an unprecedented amount of private taxpayer information.

---

[2] Plea Agreement, Oct. 12, 2023, Case No. 1:23-cr-003430ACR (ECF 8)
[3] Factual Basis for Plea, Oct. 12, 2023, Case No. 1:23-cr-003430ACR (ECF 9).
[4] *Id.*
[5] Letter from The Hon. Jason Smith, Chairman, H. Comm. on Ways and Means, et. al., to Corey R. Amundson, Chief, Public Integrity Section, Criminal Division, U.S. Dept. of Justice (Nov. 8, 2023), https://waysandmeans.house.gov/ways-and-means-republicans-demand-doj-answers-for-inadequate-charging-decisions-for-propublica-leaker/.
[6] Gov't Sentencing Memorandum, Jan. 16, 2024, Case No. 1:23-cr-003430ACR.
[7] H. Comm. On Ways and Means Press Release, *Brady, Crapo to IRS: Breach of Taxpayer Data Cannot Be Tolerated: Top Republican Tax Writers Call for Transparency, Investigation Into Leak of Confidential Tax Information, June 9, 2021,* https://waysandmeans.house.gov/brady-crapo-to-irs-breach-of-taxpayer-data-cannot-be-tolerated/.

The Honorable Ana C. Reyes
January 23, 2024
Page 3

     Mr. Littlejohn took the law into his own hands and decided he knew what was best. As you are aware, Section 6103 of the Internal Revenue Code contains a process by which Congress can obtain otherwise confidential tax information and release it under certain circumstances. Mr. Littlejohn's actions showed disdain for the rule of law and American confidence in our voluntary tax system. He acted with an apparent political motivation and perhaps with an intent to impact a Presidential election. While we wish that prosecutors had pleaded him to additional counts, you still can impose a more serious sentence than the anticipated 8-to-14-month guideline range. In our view, the seriousness of the crimes and the context surrounding them justify an upward variance. So that similar conduct is deterred in the future, we respectfully ask that you sentence Mr. Littlejohn to the maximum sentence of five years.

     Thank you for your consideration.

          Sincerely,

| | |
|---|---|
| Jason Smith<br>Chairman<br>Committee on Ways and Means | Vern Buchanan<br>Member of Congress |
| Adrian Smith<br>Member of Congress | Mike Kelly<br>Member of Congress |
| David Schweikert<br>Member of Congress | Darin LaHood<br>Member of Congress |
| Brad R. Wenstrup, D.P.M.<br>Member of Congress | Jodey C. Arrington<br>Member of Congress |
| A. Drew Ferguson, IV<br>Member of Congress | Ron Estes<br>Member of Congress |
| Lloyd Smucker<br>Member of Congress | Kevin Hern<br>Member of Congress |

**A299**

The Honorable Ana C. Reyes
January 23, 2024
Page 4

Carol D. Miller
Member of Congress

Gregory F. Murphy, M.D.
Member of Congress

David Kustoff
Member of Congress

Brian K. Fitzpatrick
Member of Congress

W. Gregory Steube
Member of Congress

Claudia Tenney
Member of Congress

Michelle Fischbach
Member of Congress

Blake D. Moore
Member of Congress

Michelle Steel
Member of Congress

Beth Van Duyne
Member of Congress

Randy Feenstra
Member of Congress

Nicole Malliotakis
Member of Congress

Mike Carey
Member of Congress

cc:    Counsel of record, United States v. Charles Littlejohn, 1:23-cr-00343-ACR

Re: United States v. Charles Littlejohn, 1:23-cr-00343-ACR

Lisa Manning <LManning@schertlerlaw.com>

Thu 2024-01-25 12:00 PM

To:Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>;Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>;Clerget, Sean <Sean.Clerget@mail.house.gov>;Noah Cherry <ncherry@schertlerlaw.com>;Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>
Cc:Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>

Dear Mr. Ostrowsky,

On behalf of Charles Littlejohn, we respectfully object to the January 23, 2024 Letter from the Republican Members of the Committee on Ways and Means, and to any other similar submissions to the Court in this case.  The Republican Members of the Committee on Ways and Means are not parties to Mr. Littlejohn's case, nor are they victims.  If, as a third party, they wish to submit their views in support of the government's sentencing position, they should be required, under Local Rule 7, to move the Court for leave to file an amicus brief.  Local Rule 7(2) requires that motions by amici "*shall concisely state the nature of the movant's interest; identify the party or parties supported, if any; and set forth the reasons why an amicus brief is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case.*" The Rule also requires the movant to first confer with each party in the case as to their position on the motion for leave to file the brief and, once filed, allow the parties 14 days to respond.  Here, a third party should not be allowed to circumvent this rule by submitting argument to the Court, outside of the docket, days before sentencing, and not affording Mr. Littlejohn (or others) adequate chance to respond.

While the Court has broad discretion to consider sentencing materials properly submitted by the prosecution, defense, and probation, the Guidelines and Federal and Local Rules do not provide for consideration of advocacy and/or information submitted outside of the judicial record. *See, e.g.* FRCP 32 and Local Rule 32.2.  It is improper for a third party to try to influence the Court in this way—especially where the third party is an entirely partisan group from the legislative branch that has also publicized its correspondence to the Court.  *See* "*Ways & Means Republicans: 'Throw the Book' at IRS Leaker*" (Jan. 24, 2024), available at https://waysandmeans.house.gov/ways-means-republicans-throw-the-book-at-irs-leaker/

Mr. Littlejohn should be treated like any other defendant who comes before this Court for sentencing.  He pled guilty to one count of unauthorized disclosure of tax records pursuant to a pre-indictment plea agreement and is before the Court to be sentenced for that offense.  The media and political interest in this case do not give license to Members of Congress, or any other third party, to try to improperly insert their political agenda into the sentencing process.   There is no basis here for the Court to stray from its customary Rules and Procedures.

For these reasons, it is, respectfully, our position that the Court should disregard the January 23, 2024 Letter from the Republican Members of the House Committee on Ways and Means and any additional related submissions.

Sincerely,
Lisa Manning
Noah Cherry
*Counsel for Charles Littlejohn*

Lisa Manning

**A301**

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

LManning@SchertlerLaw.com

o +1.202.628.4199 | m +1.202.713.6714

---

**From:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Sent:** Wednesday, January 24, 2024 8:54 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clerget, Sean <Sean.Clerget@mail.house.gov>; Lisa Manning <LManning@schertlerlaw.com>; Noah Cherry <ncherry@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: United States v. Charles Littlejohn, 1:23-cr-00343-ACR

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Jon,

We do not object to the Committee sharing the two letters described in your below email.

Thanks,

Jonathan

Jonathan Jacobson
Trial Attorney | Public Integrity Section
Criminal Division | U.S. Department of Justice
Phone: (202) 934-0886

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Wednesday, January 24, 2024 4:24 PM
**To:** Clerget, Sean <Sean.Clerget@mail.house.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; lmanning@schertlerlaw.com; Noah Cherry <ncherry@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>
**Cc:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: United States v. Charles Littlejohn, 1:23-cr-00343-ACR

Mr. Clerget,

Judge Reyes asked that I thank you for forwarding this correspondence. Please convey to the Members that Judge Reyes is carefully considering all of the information she receives concerning this matter and appreciates them taking the time to convey their unique perspective.

Further, if neither the Committee nor the parties in this case object—and please confirm there are no objections before sending—please reply to this email with the November 8, 2023 Letter (from the Committee to DOJ) and the January 17, 2024 letter (from DOJ to the Committee) referenced in the correspondence.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Clerget, Sean <Sean.Clerget@mail.house.gov>
**Sent:** Tuesday, January 23, 2024 9:31 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Cc:** Jonathan.Jacobson@usdoj.gov; lmanning@schertlerlaw.com
**Subject:** United States v. Charles Littlejohn, 1:23-cr-00343-ACR

 **CAUTION - EXTERNAL:**


Your Honor,

Please find attached a letter from members of the U.S. House Committee on Ways and Means regarding sentencing in the matter of *United States v. Charles Littlejohn*.

Counsel for the United States and for Mr. Littlejohn are copied here.

Best,

**Sean Clerget | Chief Oversight Counsel**
Committee on Ways and Means
1139 Longworth HOB | Washington, DC 20515
☎: 202.225.3625 (O)


 **CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

## Re: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>

Fri 2024-01-26 6:40 PM

To:Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
Cc:Lisa Manning <LManning@schertlerlaw.com>;Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>;Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>;Noah Cherry <ncherry@schertlerlaw.com>

---

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

---

We do not object to that approach, Jon.

Thanks!

Jonathan

On Jan 26, 2024, at 6:27 PM, Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov> wrote:

Good evening, Counsel,

The Court has reviewed the victim impact statements filed by the Government, and Judge Reyes plans to quote from some of them at the hearing—without, of course, using any identifying information. Mr. Jacobson, please let us know if there is any objection to that.

And Ms. Manning, as the Court explained previously, Judge Reyes also plans to quote from the letters submitted on behalf of Mr. Littlejohn, again without using any identifying information.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Sent:** Friday, January 26, 2024 4:18 PM
**To:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Lisa Manning <LManning@schertlerlaw.com>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

 **CAUTION - EXTERNAL:**

Jon,

I am attaching the final sealed and redacted set of victim impact statements, which I filed on ECF just now. Certain victims wished to remain anonymous and their identifiers have been redacted in the filing. I will separately send you a copy of the unredacted filing.

Thanks,

**A304**

Jonathan

---

**From:** Jacobson, Jonathan (CRM)
**Sent:** Friday, January 26, 2024 4:04 PM
**To:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Lisa Manning <LManning@schertlerlaw.com>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

Thanks, Jon. We are filing in the next few minutes. We just received another victim impact statement a few moments ago.

Jonathan

---

**From:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Sent:** Friday, January 26, 2024 3:58 PM
**To:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Lisa Manning <LManning@schertlerlaw.com>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

Mr. Jacobson, do you have an ETA on the filing of the victim impact statements? Judge Reyes is interested in reviewing them today.

Best,
Jon

---

**From:** Jonathan Ostrowsky
**Sent:** Friday, January 26, 2024 1:56 PM
**To:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Lisa Manning <LManning@schertlerlaw.com>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

Yes, please do.

Thank you,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Sent:** Friday, January 26, 2024 1:55 PM
**To:** Lisa Manning <LManning@schertlerlaw.com>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

**CAUTION - EXTERNAL:**

**A305**

Jon,

Is the Court comfortable with us now filing the victim impact statements under seal (along with redactions)? We would also send a copy of the redacted statements to Ms. Manning.

Thank you,

Jonathan

---

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Sent:** Thursday, January 25, 2024 4:05 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** [EXTERNAL] Re: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

Mr. Ostrowsky,

Thank you for your email.  I have now had the chance to confer with Mr. Littlejohn on the additional questions posed by the Court.

1.  We have no objection to filing the victim impact statements under seal.  As that likely means that I will not receive a copy through ECF, I would ask that the government kindly email the redacted statements to me when they are filed.  We also thought it prudent to bring to the Court's attention that one of the victims in the case, Kenneth Griffin, recently served Mr. Littlejohn with a deposition subpoena (attached) in his pending civil suit against the IRS and Treasury Department, and that Mr. Griffin's counsel have indicated that they may add Mr. Littlejohn as a defendant to the lawsuit.  I have previously notified the government of this litigation.

2. Mr. Littlejohn greatly appreciates the Court's consideration of his father's health situation.  To afford Mr. Littlejohn more time with his father, I intend to ask the Court at Sentencing to allow Mr. Littlejohn to self-report at a later date directly to the Federal Correctional Institution to which he is designated.

Thank you,
Lisa

**Lisa Manning**

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

LManning@SchertlerLaw.com

o +1.202.628.4199 | m +1.202.713.6714

**A306**

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Thursday, January 25, 2024 1:50 PM
**To:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon, Counsel,

Thank you, Mr. Jacobson, for your proposal to file the victim impact statements under seal with appropriate redactions. Ms. Manning, please reply whether Defendant has any objection to that approach.

Further, in response to Ms. Manning's email regarding the Letter from Members of the Committee on Ways and Means, the Court will address that issue at the start of Monday's hearing.

Best,

Jon

**Jon Ostrowsky**

Law Clerk to Judge Ana C. Reyes

U.S. District Court for the District of Columbia

(202) 354-3350

---

**From:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Sent:** Wednesday, January 24, 2024 8:59 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

**CAUTION - EXTERNAL:**

Jon,

Thank you for sharing that letter – we received it as well. As to that letter and other victim impact statements we have received, we would propose filing them under seal on the docket and also redacting identifiers associated with victims who wish not to share their names.

**A307**

In addition, we wanted to let you know that at least one victim does intend to speak at the sentencing hearing.


Thank you,


Jonathan

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Wednesday, January 24, 2024 5:07 PM
**To:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Lisa Manning <LManning@schertlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing


Thanks very much, Mr. Jacobson. We have two other questions for the parties:


1. We received the attached victim impact statement in the mail this week, which we have redacted. Do the parties have a recommendation on what to do with this letter (and other letters we may receive this week)?


2. Given the health status of Mr. Littlejohn's father, please let the Court know whether, if Mr. Littlejohn is sentenced to a term of incarceration, he would request a delay in the reporting date for when his term of incarceration would begin.


Best,

Jon


**Jon Ostrowsky**

Law Clerk to Judge Ana C. Reyes

U.S. District Court for the District of Columbia

(202) 354-3350

---

**From:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Sent:** Friday, January 19, 2024 5:47 PM
**To:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing


**CAUTION - EXTERNAL:**

Jon,

The Court asked us for the number of tax returns stolen by Mr. Littlejohn. Because he copied the records from an IRS database using queries that produced large tranches of tax data (rather than pulling specific records), the answer to the exact number of returns stolen is difficult to determine. Based on the government's analysis of IRS data and material recovered through Mr. Littlejohn's cooperation, the number of individuals and entities whose annual income tax returns were stolen is approximately 8,000. That would include about 7,600 individuals and slightly over 600 entities.

26 USC § 6103(b) broadly defines "return" as "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed" and defines "return information" as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." Using these definitions, the data stolen by Mr. Littlejohn included "returns" and "return information" for approximately 18,000 individuals and 73,000 businesses whose information was, in some form, linked to the above-referenced 8,000 taxpayers.

Please let us know if the Court has any further questions.

Thanks,

Jonathan

Jonathan Jacobson

Trial Attorney | Public Integrity Section

Criminal Division | U.S. Department of Justice

Phone: (202) 934-0886

---

**From:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Sent:** Thursday, January 18, 2024 4:09 PM
**To:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

Thanks very much, Jonathan. Tomorrow works for the response. And we will send you the unredacted copy of the order shortly.

Best,

Jon

---

**From:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Sent:** Thursday, January 18, 2024 3:54 PM

**To:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing


**CAUTION - EXTERNAL:**


Jon,


We have conferred with defense counsel on this and are looking to get you a best estimate. Would it be acceptable if we got this to the Court tomorrow?


One other unrelated quick question: would you be able to send us an unredacted copy of the preliminary forfeiture order (ECF No. 18). We need that to serve on the service providers.


Thank you and sorry to bug you!


Jonathan

---

**From:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Sent:** Thursday, January 18, 2024 11:29 AM
**To:** Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing


Good morning, Counsel,


Could the parties please provide a more precise number for the number of individuals and entities whose tax returns were stolen (beyond just "thousands")?


Best,

Jon


**Jon Ostrowsky**

Law Clerk to Judge Ana C. Reyes

U.S. District Court for the District of Columbia

(202) 354-3350

---

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Sent:** Thursday, January 18, 2024 9:19 AM

**To:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Cc:** Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** Re: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

**CAUTION - EXTERNAL:**

Good morning, Mr. Ostrowsky.  Please let me know a convenient time to deliver the binder and USB.

Thanks,

Lisa

**Lisa Manning**

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

LManning@SchertlerLaw.com

o +1.202.628.4199 | m +1.202.713.6714

---

**From:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Sent:** Thursday, January 18, 2024 8:56 AM
**To:** Lisa Manning <LManning@schertlerlaw.com>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Cc:** Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** RE: US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thanks very much, Ms. Manning.

---

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Sent:** Thursday, January 18, 2024 12:13 AM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Cc:** Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** US v. Littlejohn - Defendant's Memorandum in Aid of Sentencing

**A311**

**CAUTION - EXTERNAL:**


Dear Chambers and Government,


Apologies for the late email.  We had some technical issues, but I believe have now successfully filed with Court both the sealed and redacted versions of our Sentencing Memorandum.  Please see attached.  I have also included below a OneDrive link to the cited authorities.


<image001.jpg>
US v. Littlejohn - Authorities


I will hand deliver the USB and hard copies to the Court tomorrow morning.


Thank you,

Lisa


**Lisa Manning**

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

LManning@SchertlerLaw.com

o +1.202.628.4199 | m +1.202.713.6714


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**A312**

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

## RE: US v. Littlejohn - Request for Videolink at Sentencing

## Chashawn White <Chashawn_White@dcd.uscourts.gov>

Mon 2024-01-29 9:42 AM

To:Lisa Manning <LManning@schertlerlaw.com>;Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
Cc:Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>;Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>;Noah
Cherry <ncherry@schertlerlaw.com>;Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize
> the sender and know the content is safe.

Ms. Manning,

Here's the joining info:
Hi there,

You are invited to a Zoom meeting.
When: Jan 29, 2024 10:00 AM Eastern Time (US and Canada)
Topic: 23cr343 - USA v. LITTLEJOHN

Please click the link below to join the meeting:
https://uscourts-dcd.zoomgov.com/j/1607443439?pwd=N095U1JBalJHaTFhOUVsZDdDOTc1Zz09
Passcode: 072001

Or iPhone one-tap :
   US: +16692545252,,1607443439#,,,,,,0#,,072001#  or +16469641167,,1607443439#,,,,,,0#,,072001#

Or Telephone:
   Dial (for higher quality, dial a number based on your current location):
      US: +1 669 254 5252  or +1 646 964 1167  or +1 646 828 7666  or +1 551 285 1373  or +1 669 216 1590  or +1
415 449 4000
Webinar ID: 160 744 3439
Passcode: 072001
      International numbers available: https://uscourts-dcd.zoomgov.com/u/aeJIj0R4Ot


Or an H.323/SIP room system:
   H.323: 161.199.138.10 (US West) or 161.199.136.10 (US East)
   Meeting ID: 160 744 3439
   Passcode: 072001
   SIP: 1607443439@sip.zoomgov.com
   Passcode: 072001

---

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Sent:** Monday, January 29, 2024 6:51 AM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Cc:** Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jacobson, Jonathan (CRM)
<Jonathan.Jacobson@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>; Chashawn White
<Chashawn_White@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** Re: US v. Littlejohn - Request for Videolink at Sentencing

**CAUTION - EXTERNAL:**

Good morning, Ms. White.

I hope you had a nice weekend. I understand that you will be coordinating the videolink for Mr. Littlejohn's family at today's Sentencing Hearing. Please see below a list of family members who would like to join the link. In addition to Mr. Littlejohn's parents, three of his siblings and his uncle have also asked if they may attend remotely.

I am also happy to send the link to them directly. Please let me know what is easiest for you.

<u>Mother & Stepparents</u>
@gmail.com
@sbcglobal.net
@gmail.com

<u>Siblings (not able to appear in person)</u>
@gmail.com
@gmail.com
@hotmail.com

<u>Uncle</u>
@icloud.com

Many thanks,
Lisa

**Lisa Manning**

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

LManning@SchertlerLaw.com

o +1.202.628.4199 | m +1.202.713.6714

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Friday, January 26, 2024 1:31 PM
**To:** Lisa Manning <LManning@schertlerlaw.com>
**Cc:** Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>; Chashawn White <Chashawn_White@dcd.uscourts.gov>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn - Request for Videolink at Sentencing

**A315**

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Manning,

We are sorry to hear that and wish Ms. ███ a speedy recovery.  Yes, Mr. Littlejohn's parents and stepparents may watch remotely. There may be some technical limitations with the viewing angle of the Courtroom, but I've copied my colleague, Chashawn White, who will be able to coordinate the link. She is out of the office this afternoon, but we will take care of it over the weekend or first thing Monday morning.


Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Sent:** Friday, January 26, 2024 1:08 PM
**To:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Cc:** Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** US v. Littlejohn - Request for Videolink at Sentencing


 **CAUTION - EXTERNAL:**


Mr. Ostrowsky,

We just learned that Charles Littlejohn's mother, ███████████ fell, broke her knee, and has had to be immobilized pending surgery.  This means that both she and her husband, ███, will no longer be able to travel to Washington to support Charles at sentencing or be able to update his father and stepmother on the proceedings.

Given this development, would it be possible for the Court to set up a private videoconference link on Monday so that Charles' parents and stepparents may at least be there remotely?   I have conferred with the government and they do not object to this request.

Many thanks,
Lisa


**Lisa Manning**

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

LManning@SchertlerLaw.com

**A316**

o +1.202.628.4199 | m +1.202.713.6714

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

## Re: United States v. Charles Littlejohn, 1:23-cr-00343-ACR

## Clerget, Sean <Sean.Clerget@mail.house.gov>

Fri 2024-01-26 4:24 PM

To:Lisa Manning <LManning@schertlerlaw.com>;Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>;Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>;Noah Cherry <ncherry@schertlerlaw.com>;Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>

Cc:Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mr. Ostrowsky,

We disagree with defense counsel's objection and characterization of our letter, but we will take no further action unless the court requests it.

Best,

**Sean Clerget | Chief Oversight Counsel**
Committee on Ways and Means
1139 Longworth HOB | Washington, DC 20515
☎: 202.225.3625 (O)

---

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Date:** Thursday, January 25, 2024 at 12:00 PM
**To:** "Jacobson, Jonathan (CRM)" <Jonathan.Jacobson@usdoj.gov>, Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>, "Clerget, Sean" <Sean.Clerget@mail.house.gov>, Noah Cherry <ncherry@schertlerlaw.com>, "Clarke, Jennifer (CRM)" <Jennifer.Clarke2@usdoj.gov>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** Re: United States v. Charles Littlejohn, 1:23-cr-00343-ACR

Dear Mr. Ostrowsky,

On behalf of Charles Littlejohn, we respectfully object to the January 23, 2024 Letter from the Republican Members of the Committee on Ways and Means, and to any other similar submissions to the Court in this case. The Republican Members of the Committee on Ways and Means are not parties to Mr. Littlejohn's case, nor are they victims. If, as a third party, they wish to submit their views in support of the government's sentencing position, they should be required, under Local Rule 7, to move the Court for leave to file an amicus brief. Local Rule 7(2) requires that motions by amici "*shall concisely state the nature of the movant's interest; identify the party or parties supported, if any; and set forth the reasons why an amicus brief is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case.*" The Rule also requires the movant to first confer with each party in the case as to their position on the motion for leave to file the brief and, once filed, allow the parties 14 days to respond. Here, a third party should not be allowed to circumvent this rule by submitting argument to the Court, outside of the docket, days before sentencing, and not affording Mr. Littlejohn (or others) adequate chance to respond.

While the Court has broad discretion to consider sentencing materials properly submitted by the prosecution, defense, and probation, the Guidelines and Federal and Local Rules do not provide for consideration of advocacy and/or information submitted outside of the judicial record. *See, e.g.* FRCP 32 and Local Rule 32.2.  It is improper for a third party to try to influence the Court in this way—especially where the third party is an entirely partisan group from the legislative branch that has also publicized its correspondence to the Court.  *See* "*Ways & Means Republicans: 'Throw the Book' at IRS Leaker*" (Jan. 24, 2024), available at https://waysandmeans.house.gov/ways-means-republicans-throw-the-book-at-irs-leaker/

Mr. Littlejohn should be treated like any other defendant who comes before this Court for sentencing.  He pled guilty to one count of unauthorized disclosure of tax records pursuant to a pre-indictment plea agreement and is before the Court to be sentenced for that offense.  The media and political interest in this case do not give license to Members of Congress, or any other third party, to try to improperly insert their political agenda into the sentencing process.   There is no basis here for the Court to stray from its customary Rules and Procedures.

For these reasons, it is, respectfully, our position that the Court should disregard the January 23, 2024 Letter from the Republican Members of the House Committee on Ways and Means and any additional related submissions.

Sincerely,
Lisa Manning
Noah Cherry
*Counsel for Charles Littlejohn*

**Lisa Manning**

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

LManning@SchertlerLaw.com

o +1.202.628.4199 | m +1.202.713.6714

---

**From:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Sent:** Wednesday, January 24, 2024 8:54 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clerget, Sean <Sean.Clerget@mail.house.gov>; Lisa Manning <LManning@schertlerlaw.com>; Noah Cherry <ncherry@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: United States v. Charles Littlejohn, 1:23-cr-00343-ACR

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Jon,

We do not object to the Committee sharing the two letters described in your below email.

Thanks,

Jonathan

Jonathan Jacobson
Trial Attorney | Public Integrity Section
Criminal Division | U.S. Department of Justice
Phone: (202) 934-0886

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Wednesday, January 24, 2024 4:24 PM
**To:** Clerget, Sean <Sean.Clerget@mail.house.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; lmanning@schertlerlaw.com; Noah Cherry <ncherry@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Castaldi, Lauren (CRM) <Lauren.Castaldi@usdoj.gov>
**Cc:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: United States v. Charles Littlejohn, 1:23-cr-00343-ACR

Mr. Clerget,

Judge Reyes asked that I thank you for forwarding this correspondence. Please convey to the Members that Judge Reyes is carefully considering all of the information she receives concerning this matter and appreciates them taking the time to convey their unique perspective.

Further, if neither the Committee nor the parties in this case object—and please confirm there are no objections before sending—please reply to this email with the November 8, 2023 Letter (from the Committee to DOJ) and the January 17, 2024 letter (from DOJ to the Committee) referenced in the correspondence.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Clerget, Sean <Sean.Clerget@mail.house.gov>
**Sent:** Tuesday, January 23, 2024 9:31 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Cc:** Jonathan.Jacobson@usdoj.gov; lmanning@schertlerlaw.com
**Subject:** United States v. Charles Littlejohn, 1:23-cr-00343-ACR

**CAUTION - EXTERNAL:**

Your Honor,

Please find attached a letter from members of the U.S. House Committee on Ways and Means regarding sentencing in the matter of *United States v. Charles Littlejohn*.

Counsel for the United States and for Mr. Littlejohn are copied here.

Best,

**Sean Clerget | Chief Oversight Counsel**
Committee on Ways and Means

**A320**

1139 Longworth HOB | Washington, DC 20515

☎: 202.225.3625 (O)

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

RE: US v. Littlejohn

Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>

Sun 2024-01-28 7:01 PM

To:Lisa Manning <LManning@schertlerlaw.com>;Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>;Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>;Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>;Noah Cherry <ncherry@schertlerlaw.com>

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you, Ms. Manning. The Judge won't review the filing and will order it stricken tomorrow.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Sent:** Sunday, January 28, 2024 6:19 PM
**To:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** Re: US v. Littlejohn

**CAUTION - EXTERNAL:**

Mr. Ostrowsky,

On behalf of Mr. Littlejohn, we will stick with our plan to address the Court's *per se* reasonableness question at the hearing tomorrow.  We defer to the Court as to the disposition of the Government's filing. We note that if the Notice Concerning Sentencing remains on the record, we will separately ask the Government to correct one of the factual statements made in the filing.

Thank you,
Lisa

**Lisa Manning**

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

**A322**

LManning@SchertlerLaw.com

o +1.202.628.4199 | m +1.202.713.6714

---

**From:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Sent:** Sunday, January 28, 2024 3:39 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Jon,

Sorry for the misunderstanding. We'll be prepared to address the judge's question at the hearing tomorrow.

Jonathan

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Sunday, January 28, 2024 3:28 PM
**To:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Lisa Manning <LManning@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Subject:** RE: US v. Littlejohn

Good afternoon, Counsel,

With respect to the Government's Notice Concerning Sentencing, Dkt. 32, the Court did not authorize this filing. The Judge has not reviewed this brief. The Court made clear how it wanted the question answered, which was at the hearing on Monday. Ms. Manning, if you would like to respond via a filing today, you are of course free to do so. If you would prefer instead for the Judge to not review the brief and make clear on the record tomorrow that she has not done so, please let me know that. Neither option will affect the Court's ultimate decision.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Saturday, January 27, 2024 1:36 PM
**To:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Lisa Manning <LManning@schertlerlaw.com>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Subject:** US v. Littlejohn

Counsel,

**A323**

The Judge is interested to hear your views on Monday on the following question:  is it *per se* unreasonable to impose a sentence of a maximum term, outside the guidelines, to a defendant that pled guilty, cooperated with the Government, and accepts responsibility.  We have identified the following outside Circuit decisions, which you should be prepared to address.  If there are other cases you wish to bring to the Court's attention please have hard copies available for the Court and opposing counsel on Monday.  If possible, please give opposing counsel some time with any cases in advance of the hearing.

The Judge has not made a sentencing decision and will of course hear all argument on the appropriate sentence, including the appropriate impact of Mr. Littlejohn's cooperation and acceptance of responsibility.  She asked that I send this particular question in advance so that you can conduct your own legal research if you so choose.

Jon

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

RE: 1:23-cr-343, USA v. LITTLEJOHN

Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>

Thu 2024-04-18 3:56 PM

To:Lisa Manning <LManning@schertlerlaw.com>;Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>;Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>;Noah Cherry <ncherry@schertlerlaw.com>
Cc:Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>;Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thank you, Ms. Manning.

Judge Reyes would consider any such motion at an appropriate time.  In particular, if Mr. Littlejohn would like a limited release to attend a family member's final days or funeral, the Judge would rule quickly on such a request, although we cannot guarantee what BOP would do.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

---

**From:** Lisa Manning <LManning@schertlerlaw.com>
**Sent:** Thursday, April 18, 2024 3:22 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** Re: 1:23-cr-343, USA v. LITTLEJOHN

 **CAUTION - EXTERNAL:**

Jon,

We greatly appreciate Judge Reyes' consideration of Mr. Littlejohn's difficult personal situation.  He is indeed faced with the heartbreaking choice of more time with his father versus, at age 39, trying to preserve some chance of rebuilding his life and, hopefully, starting his own family upon his release from federal prison.  After much discussion with his loved ones, he is committed to moving forward with his May 1 report date.

If, at any point in the future, the Judge would be willing to consider a motion for a reduction in his period of incarceration and/or other sentencing alternatives, I would, of course, be happy to submit such a request to the Court.

Thank you,
Lisa

**A325**

**Lisa Manning**

Partner | SCHERTLER, ONORATO, MEAD & SEARS, LLP

555 13th Street, N.W.

Suite 500 West

Washington, DC 20004

LManning@SchertlerLaw.com

o +1.202.628.4199 | m +1.202.713.6714

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Monday, April 15, 2024 1:47 PM
**To:** Lisa Manning <LManning@schertlerlaw.com>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Noah Cherry <ncherry@schertlerlaw.com>
**Cc:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; Jonathan Ostrowsky <Jonathan_Ostrowsky@dcd.uscourts.gov>
**Subject:** 1:23-cr-343, USA v. LITTLEJOHN

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon, Counsel,

The Court understands that Mr. Littlejohn has a voluntary surrender date of May 1, 2024.  The Court is sympathetic to Mr. Littlejohn's family situation.  If there are extenuating circumstances that justify a later voluntary surrender date, the Court would quickly consider a motion filed by Mr. Littlejohn to push back the voluntary surrender date.  If there is health information involved, Mr. Littlejohn may file the motion under seal.

Best,
Jon

**Jon Ostrowsky**
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3350

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# APPENDIX B

| **From:** | Reyes Chambers |
| **To:** | Celia Goetzl; LManning@SchertlerLaw.com; ncherry@schertlerlaw.com; Jennifer.Clarke2@usdoj.gov; jonathan.jacobson@usdoj.gov; lauren.castalci@usdoj.gov; A. J. Kramer; Winn, Connor (CRM) |
| **Subject:** | USA v. Littlejohn (23-cr-343): Statement of Unrecorded Proceedings |
| **Date:** | Tuesday, December 31, 2024 4:45:03 PM |
| **Attachments:** | Rule 10(c) Statement ACR.pdf |

Counsel:

This responds to the December 12 and 17, 2024, emails from counsel regarding the Rule 10(c) Statement.

The Court has addressed Defendant's specific objections in the attached final Statement. Generally, the Court agrees with the Government that the Court must ensure the Statement is correct and complete. That includes adding statements omitted from the first draft and citing on-the-record proceedings as necessary for the sake of completeness.

The parties are directed to provide to Chambers one PDF document that includes the final Statement and an appendix with the Chambers emails sorted chronologically by COB January 8, 2025. The parties do not need to provide one email for each email in a string; the final string containing prior emails will suffice. The Court leaves to the parties whether to include the emails concerning the Rule 10(c) Statement.

Best,

Jon Duval
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3351

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **No. 23-cr-343-ACR** |
| | ) | |
| **CHARLES EDWARD LITTLEJOHN,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

<u>**STATEMENT OF UNRECORDED PROCEEDINGS**</u>

Pursuant to Federal Rule of Appellate Procedure 10(c), the Court **SETTLES** and **APPROVES** this Statement of Unrecorded Proceedings to be included by the District Clerk in the Record on Appeal.

On October 12, 2023, Defendant Charles Edward Littlejohn pled guilty before Judge Ana C. Reyes to one count of disclosing tax return information without authorization. In the Factual Basis for Plea, Mr. Littlejohn agreed that he had stolen and disclosed to the press the tax returns of then President Donald J. Trump and thousands of the Nation's wealthiest people. Dkt. 9. On January 28, 2024, the Court sentenced Mr. Littlejohn primarily to the statutory maximum of 60 months and on January 31, the Court entered Judgment against him. Dkt. 35. On February 12, 2024, Mr. Littlejohn filed a Notice of Appeal, Dkt. 38, and the Court then transmitted the case to the Court of Appeals, Dkt. 39. His appeal is currently pending. *See* Case No. 24-3019.

At the parties' request, Judge Reyes scheduled Mr. Littlejohn's plea hearing for October 12, 2023. On October 10, 2023, Judge Reyes's Courtroom Deputy emailed the parties: "The judge would like to meet with you, either in chambers or via zoom video, off the record and before Thursday. Would you be available at a time on tomorrow?" Based on the parties' responses as to their availability, the Courtroom Deputy set the meeting for October 11, 2023, at

2:00 p.m. in Judge Reyes's Chambers.  Judge Reyes was present with her law clerk, along with

Government counsel, Jennifer Clarke and Lauren Castaldi, and Defense counsel, Lisa Manning.

Mr. Littlejohn was not present.  Judge Reyes did not ask whether any attorney objected to this

conference being held among lawyers only and in chambers, and no attorney affirmatively raised

an objection.

       Judge Reyes began the meeting by explaining that she had questions about the case and

Mr. Littlejohn's plea agreement.  She expressed that she was perplexed as to why the

Government had allowed Mr. Littlejohn to plead to a single count of unauthorized disclosure of

taxpayer information when he had stolen the tax records of a sitting president and thousands of

the Nation's wealthiest people.  She asked the Government whether there would be a separate,

future case with additional charges and, if not, why not.

       The Government lawyers stated that this would be the only federal criminal case against

Mr. Littlejohn for the conduct described in the Factual Basis for Plea and that the Government

believed it was a just resolution of the case.  The Government lawyers noted that requiring

Mr. Littlejohn to plead to multiple counts of the same offense would not change the calculation

of his total offense level under the Sentencing Guidelines.  Judge Reyes responded that, given

the nature and extent of the conduct, she still assumed the Government would have brought

multiple charges carrying a much higher possible sentence—noting some charges may carry

maximum sentences of 20 years.  Judge Reyes explained in a firm tone that she did not

understand why the Government had allowed Mr. Littlejohn, who admittedly had engaged in

premeditated and repeated criminal conduct, to plead to one count with a statutory maximum of

five years.  She compared Mr. Littlejohn's plea offer to those of defendants in the January 6

cases who faced multiple counts and potentially years in prison for trespassing on the Capital

2

**A330**

Grounds.

Government counsel explained that the Department of Justice had concerns that the statute of limitations could run if the parties failed to reach a plea acceptable to Mr. Littlejohn. They also noted that Mr. Littlejohn had provided an extensive proffer fully accepting responsibility. In such cases, they explained that it was within standard DOJ practice to make a one count plea offer pre-indictment in cases that DOJ would otherwise charge as multiple counts. Defense counsel then explained in greater detail the extent of Mr. Littlejohn's cooperation, including that he helped the Government identify the holes in the IRS computer system that allowed him to find and download the tax information undetected.

After hearing this information, Judge Reyes indicated that she was still troubled by the plea—again emphasizing the fact that Mr. Littlejohn had stolen the tax returns of a sitting President—but that the plea hearing would proceed the next day as scheduled. Judge Reyes also stated that Mr. Littlejohn's cooperation sounded significant and that she would like to hear the full details at sentencing. She ended the meeting by suggesting that Defense counsel convey to her client the Court's views of his conduct and stating that she would see the parties the following day.

The morning of the scheduled plea hearing, October 12, 2023, at 10:57 a.m., Judge Reyes's law clerk emailed Government and defense counsel stating:

> At this afternoon's plea hearing, Judge Reyes plans to ask, as part of the factual basis for the plea, who the high-ranking public official was, to name any others, and the news organization. She will also ask for names of some of the private individuals and the second news organization. If the parties have an issue with this approach, please let us know, and we can schedule a phone conference to discuss between 12:30 and 1:30 p.m. today.

In response, at 11:25 a.m., counsel for each party jointly requested "the opportunity to discuss this matter in advance of the hearing this afternoon." The law clerk responded by email at 11:31

a.m. that the Court would "schedule a call for 1 p.m., and it will be off the record[,]" and that the Courtroom Deputy would "circulate the dial-in information shortly." Soon thereafter, at 12:08 p.m., the Courtroom Deputy emailed a Zoom link to Government and defense counsel for a videoconference from 1:00 to 1:45 p.m. Judge Reyes did not ask whether any attorney objected to the Zoom hearing proceeding without recording and among counsel only, and no attorney affirmatively raised an objection.

Present at the Zoom conference were Government attorneys Jennifer Clarke and Lauren Castaldi, and defense counsel, Lisa Manning. Judge Reyes began the videoconference by stating that, during the plea hearing, she planned to ask Mr. Littlejohn the names of the victims of his crimes and she expected him to answer. She called the meeting to ask the lawyers if there was any issue with her doing so. Ms. Castaldi responded that the Government had concerns about this approach because the victims had a right to privacy under the Crime Victims' Rights Act. Judge Reyes questioned the Government about the applicability of the Act in a case that was already public, where the names of the victims, including the former President, were already in the news. She stated that the parties would not be able to get through the plea and sentencing without Mr. Littlejohn admitting to his conduct and identifying Public Official A (*i.e.*, then President Trump). The Government lawyers responded that the charge and privacy considerations would be the same regardless of the identity of the victim.

Judge Reyes asked whether she would be violating the Crime Victims' Rights Act if she asked Mr. Littlejohn to list the names of his targeted victims during the plea colloquy. Counsel for both parties responded that they each wanted to make sure that they fully complied with the Crime Victims' Rights Act. Ms. Castaldi added that, based on her conversations thus far with victims of the ProPublica leak, she understood that most of them wanted to keep the matter

4

private and not receive any additional publicity.

Judge Reyes then asked whether "Public Official A," then President Trump, also wanted his name withheld.  She directed Government counsel to add one of President Trump's lawyers to the Zoom conference.  The Government was unable to do so, but Ms. Castaldi indicated that she would try to contact President Trump's lawyer, Alina Habba, as soon as possible, and stated that Ms. Habba planned to be present at the plea hearing.  After the Zoom hearing, Government counsel contacted counsel for President Trump, Alina Habba.  At 1:44 p.m., Government counsel relayed to Judge Reyes's chambers in an email that Ms. Habba did not object to President Trump being identified in the hearing and "also said she would like to make a brief statement at the appropriate time."

The plea hearing proceeded as scheduled on October 12, 2023.  Judge Reyes did not ask Mr. Littlejohn for the names of any of his private citizens victims.  With the government official's attorney's acquiescence, the Court asked Mr. Littlejohn for the name of the high-ranking government official, which he provided as then-President Donald J. Trump.  Dkt. 13 at 10:5-7.  Judge Reyes accepted Mr. Littlejohn's plea and then expressed her concern about the nature of Defendant's conduct.  *See id.* at 17:9-16, 20:3-21:6.  Before recessing the hearing, she asked if counsel had anything to add; counsel for each party responded that they did not.  *Id.* at 24:12-18.

During the sentencing itself, Judge Reyes questioned the Government's charging decisions and potential sentences, Dkt. 40 at 20:13-24:6, 46:12-46:23, and noted the Defendant's cooperation, *id.* at 11:5-11:13.  Before recessing the sentencing, she asked if counsel had "any objections to the sentence imposed" and again "any objections" not already on the record; again counsel for each party responded that they did not.  *Id.* at 84:19-85:7.

The parties and Chambers also exchanged emails concerning the plea and sentencing.

These emails, including the ones quoted in here, are attached as an Appendix to this Statement.


Date: January 9, 2025

_____
ANA C. REYES
United States District Judge

| From: | Winn, Connor (CRM) |
|---|---|
| To: | Reyes Chambers; Celia Goetzl |
| Cc: | LManning@SchertlerLaw.com; ncherry@schertlerlaw.com; Clarke, Jennifer (CRM); Jacobson, Jonathan (CRM); A. J. Kramer |
| Subject: | RE: USA v. Littlejohn (23-cr-343): Statement of Unrecorded Proceedings |
| Date: | Tuesday, December 17, 2024 1:11:43 PM |

Dear Chambers,

The government notes here its positions on the matters discussed in Mr. Littlejohn's most recent email.

First, the government disagrees with Mr. Littlejohn's understanding of this Court's authority under Federal Rule of Appellate Procedure 10(c) and D.C. Circuit practice. In the government's view, this Court may make amendments to the statement consistent with its recollection.

> Federal Rule of Appellate Procedure 10(c) provides that once an appellant has "prepare[d] a statement of the evidence or proceedings from the best available means" and once the appellee has had an opportunity to note its objections and proposed amendments, the statement must "be submitted to the district court for settlement and approval." Fed. R. App. P. 10(c). As courts of appeals have explained, "the phrase 'settlement and approval' is generous in its scope, and nothing prohibits a court from drawing on its own memory of events in the 'settlement and approval process.' Indeed, it would be folly for a judge to close his eyes to case-related matters within his personal knowledge." *United States v. Caramadre*, 807 F.3d 359, 376 (1st Cir. 2015). Moreover, "[c]ommon sense suggests that, in the Rule 10(c) settlement and approval process, a district court must have the power to contextualize what was said." *Id.* at 377. A court may therefore "rely on its own recollection of relevant events in settling and approving a proposed Rule 10(c) statement." *Id.* at 376 (collecting authorities from several other courts of appeals).

> Although the D.C. Circuit has not addressed Rule 10(c) in this regard, its most relevant case law is in accord. In analyzing Rule 10(c)'s predecessor—the former Federal Rule of Civil Procedure 75(h) (1938)—the court of appeals affirmed that "nothing" in that predecessor "rule require[d] th[e] [district] court to certify a narrative which it believes to be inaccurate." *Clawans v. White*, 112 F.2d 189, 190 (D.C. Cir. 1940). Instead, the rule aimed to "afford ready means for the correction of errors or mistakes in the record, not to substitute the appellant's version of [events] for that of the court where they differ." *Id.* Finally, the D.C.

Circuit's Handbook of Practice and Internal Procedures 21 (Dec. 12, 2024), does not comment on whether, in "amend[ing]" a Rule 10(c) statement, a district court may only look to the appellee's "proposed amendments" or may make its own amendments.

Second, the government defers to this Court's judgment as to whether to include the contents of the emails between chambers and trial counsel in the Rule 10(c) statement's body and/or as exhibits to the Rule 10(c) statement.

Third, turning to Mr. Littlejohn's factual concerns with this Court's Rule 10(c) statement, the government states the following.

- As communicated to Mr. Littlejohn's appellate counsel in a recent counsel-only email, the government recalls that this Court did not solicit objections to the off-record proceedings and conferences that are the subjects of the Rule 10(c) statement, but the government agrees with this Court that no party ever objected to the various off-record proceedings and conferences. The government defers to this Court as to how to represent that posture accurately.

- As communicated to Mr. Littlejohn's appellate counsel in a recent counsel-only email, the government recalls that this Court did state at the October 11 pre-plea conference that it "would accept the plea the next day as scheduled." The government did not fixate on the absence of that statement when reviewing Mr. Littlejohn's original proposed Rule 10(c) statement. But the trial attorney present during that pre-plea conference concurs with this Court's recollection that such a statement was made.

    - The government understands that Ms. Castaldi (who has since left the Department of Justice) had some conversation with Ms. Manning about a potential plea to the information if the plea agreement were not accepted.

- As communicated to Mr. Littlejohn's appellate counsel in a recent counsel-only email, the government takes no position on the inclusion of recorded parts of the record in the Rule 10(c) statement. Although not necessary, if the court believes that such information is necessary to contextualize the Rule 10(c) statement, the government will defer to this Court's preference.

- The government agrees with Mr. Littlejohn that this court did ask him at his plea hearing "Who was the high-ranking government official?" and supports Mr. Littlejohn's proposed modification to the revised Rule 10(c) statement on that ground.

Finally, because it appears possible that Mr. Littlejohn may be preparing to raise a claim before the court of appeals that challenges this Court's Rule 10(c) statement, *see, e.g.*, *Caramadre*, 807 F.3d at 376, the government respectfully requests that this Court include all emails (and attachments) between itself, government counsel, and Mr. Littlejohn's counsel concerning these Rule 10(c) proceeding as exhibits to the final Rule 10(c) statement. These emails are in effect unrecorded court proceedings and should be included in any final Rule 10(c) statement prepared for the court of appeals to facilitate appellate review.

Sincerely,

Connor Winn

W. Connor Winn
U.S. Department of Justice
Attorney, Criminal Appellate Section
202-669-6551

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Thursday, December 12, 2024 8:50 PM
**To:** Winn, Connor (CRM) <William.Winn@usdoj.gov>; Goetzl, Celia (FD) <Celia_Goetzl@fd.org>
**Cc:** LManning@SchertlerLaw.com; ncherry@schertlerlaw.com; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; Kramer, A. (FD) <A._J._Kramer@fd.org>
**Subject:** [EXTERNAL] Re: USA v. Littlejohn (23-cr-343): Statement of Unrecorded Proceedings

Counsel:

The Government may respond to the Defendant's email below on or before December 18, 2024.

The Court has copied Mr. Kramer on this email and he should be copied on communications with the Court going forward. The Court assumes that Mr. Kramer is personally reviewing and approving filings and these communications from his office. If that is not the case, the Court requests that he do so going forward.

Best,

Jon Duval
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3351

**A337**

**From:** Winn, Connor (CRM) <William.Winn@usdoj.gov>
**Sent:** Thursday, December 12, 2024 2:47:59 PM
**To:** Goetzl, Celia (FD) <Celia_Goetzl@fd.org>; Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Cc:** LManning@SchertlerLaw.com <LManning@SchertlerLaw.com>; ncherry@schertlerlaw.com <ncherry@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Subject:** Re: USA v. Littlejohn (23-cr-343): Statement of Unrecorded Proceedings

<mark>CAUTION - EXTERNAL:</mark>

Dear Chambers,

The government intends to respond with its positions concerning Mr. Littlejohn's most recent email.  Undersigned appellate counsel will be handling an oral argument in the Fourth Circuit tomorrow but plans to prepare and send the government's response before Monday, December 16, 2024.

Sincerely,
Connor

---

**From:** Celia Goetzl <Celia_Goetzl@fd.org>
**Sent:** Thursday, December 12, 2024 1:04:34 PM
**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Cc:** Winn, Connor (CRM) <William.Winn@usdoj.gov>; LManning@SchertlerLaw.com <LManning@SchertlerLaw.com>; ncherry@schertlerlaw.com <ncherry@schertlerlaw.com>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>
**Subject:** [EXTERNAL] RE: USA v. Littlejohn (23-cr-343): Statement of Unrecorded Proceedings

Dear Chambers,

The emails that the Court directed defense counsel to make into exhibits and cite speak for themselves and render everything starting with "B. January 10, 2024" (p.5) unnecessary to include in the statement of unrecorded proceedings.  If the emails themselves are to be part of the record, the statement could and should simply state that other unrecorded proceedings are attached as Exhibit B.  The appellant incorporated the emails verbatim into the agreed-upon statement submitted only to avoid making chambers emails part of the public record.  If the emails are to be part of the public record, the statements about them become unnecessary and redundant.

In any event, pursuant to the Court's November 25, 2024 Minute Order, defense counsel attaches

**A338**

the emails as Exhibit B and filled in the blanks in the Word document emailed to the parties with citations to Exhibit B. The names of Mr. Littlejohn's family members and their personal email addresses have been redacted from Exhibit B to protect their privacy.

The Court has substantially and materially altered the agreed-upon facts submitted in an agreed-upon statement under Federal Rule of Appellate Procedure 10(c). The Court's authority to do so is somewhat unclear. The Handbook of Practice and Internal Procedures: United States Court of Appeals for the District of Columbia Circuit 21 (Mar. 16, 2021) provides:

> If no transcript is available, the appellant may prepare and file with the district court a statement of the evidence or proceedings from the best available means, including recollection, and serve it on the appellee. The appellee has 14 days to serve objections or proposed amendments in response. *The district court then approves the statement as submitted* or amended [by the appellee], and certifies it to this Court as the record on appeal.

(emphasis added). *See also Athridge v. Rivas*, 141 F.3d 357, 361 (D.C. Cir. 1998) ("While the appellant's decision to move for settlement of the record is discretionary, once the motion is made the district court is obligated to act in accordance with Fed. R. App. P. 10(c) and Circuit procedure."). Similarly, other case law suggests that in settling and approving a Rule 10(c) statement, the Court must

> keep in mind the underlying purpose of a transcript is to provide a complete, true and accurate record of what occurred at a proceeding. A transcript would not be framed by the submission of background information nor would it explain actions taken following the proceeding.

*Malibu Media, LLC v. Ricupero*, 2016 U.S. Dist. LEXIS 153364, at *9-10 (S.D. Ohio Nov. 4, 2016). Thus, the statement should "intentionally exclude such matters." *Id*. at *10.

Accordingly, the appellant respectfully requests that the Court settle and approve the agreed-upon statement as submitted and docketed at ECF No. 43-1.

If the Court enters the statement it provided to the parties via email on November 25, 2024, the appellant will make the following three main objections on the record.

1. The appellant will object to the language the Court added about objections to the *in camera* proceedings:
   - "No attorney objected to this conference being held among lawyers only and in Chambers" (p. 2);
   - "Without objection, this meeting was neither transcribed nor recorded" (p. 3);
   - "No attorney objected, before or after, to this conference being held among lawyers only and by Zoom without a stenographer. No attorney asked the Court to put its

questions on the record." (p.4);

- "Without objection, the Zoom conference was neither transcribed nor recorded." (p.5).

This language implies that the parties were asked whether they objected and/or offered the opportunity to object to the proceedings. Any language about the lack of objections should accurately reflect both that the Court did not ever ask the parties if there was any objection and that the parties did not proactively raise any objection, as follows:

- "Judge Reyes did not ask whether any attorney objected to this conference being held among lawyers only and in Chambers, and no attorney affirmatively raised an objection." (p. 2)
- "This meeting was neither transcribed nor recorded. Judge Reyes did not ask whether any attorney objected to it not being transcribed or recorded, and no attorney affirmatively raised an objection." (p.3)
- "Judge Reyes did not ask, before or after, whether any attorney objected to this conference being held among lawyers only and by Zoom without a court reporter, nor did she ask whether any attorney wanted the Court to put its questions on the record. No attorney affirmatively raised an objection." (p.4)
- "The Zoom conference was neither transcribed nor recorded. Judge Reyes did not ask whether any attorney objected to it not being transcribed or recorded, and no attorney affirmatively raised an objection." (p.5)

2. The appellant will object to the addition of "—but that she would accept the plea the next day as scheduled." (p.3)

Neither party recalled any such statement or indication at the October 11 chambers proceeding when the agreed-upon statement was drafted, extensively reviewed and revised, and docketed. Upon leaving the *in camera* meeting, defense counsel was uncertain whether the Court would accept the plea the next day and relayed that uncertainty to Mr. Littlejohn. Mr. Littlejohn explicitly recalls being told by defense counsel that it was uncertain whether the Court would accept the plea. Uncertainty remained after the October 12 Zoom conference. As a result of the uncertainty, defense counsel spoke with government counsel (specifically, Ms. Castaldi) on the phone on the way to the plea hearing and reached a verbal agreement with the government that Mr. Littlejohn could plead to the Information without an agreement and the government would still honor the terms of the agreement should the Court not accept the plea agreement at the scheduled plea hearing. Therefore, the appellant will request that the Court remove its change to the unrecorded record.

3. The appellant will object to the Court's addition of recorded parts of the record, including the plea and sentencing hearing, appearing on pages 1, 3, 5, and 12.

Recorded proceedings and transcripts speak for themselves. A Rule 10(c) statement is not an appropriate place for the Court to explain, justify, or contextualize its unrecorded statements or actions. The statement has nothing to do with separately *recorded* proceedings that were not before the Court at the time. Also, the Court's addition of "During the plea hearing, the Court did

not ask Mr. Littlejohn for the names of any of his victims" (p.5) is inaccurate because the Court specifically asked Mr. Littlejohn, "Who was the high-ranking government official?" (Plea Tr. at 10). Therefore, the appellant will ask that the Court remove its additions of recorded proceedings.

Respectfully,
Celia

Celia Goetzl
Assistant Federal Public Defender
625 Indiana Avenue NW, Suite 550
Washington, DC 20004
(202) 208-7500 ext. 5134

This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail. Thank you for your cooperation.

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Monday, November 25, 2024 1:30 PM
**To:** LManning@SchertlerLaw.com; ncherry@schertlerlaw.com; Celia Goetzl <Celia_Goetzl@fd.org>; Winn, Connor (CRM) <William.Winn@usdoj.gov>; Jennifer.Clarke2@usdoj.gov; jonathan.jacobson@usdoj.gov
**Subject:** USA v. Littlejohn (23-cr-343): Statement of Unrecorded Proceedings

Counsel:

Attached is a word version of the Statement of Unrecorded Proceedings. As referenced in today's Minute Order, the Court asks that defense counsel fill in the necessary Exhibit cites and return the document to the Court for signature.

Best,

Jon Duval
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3351

<mark>**CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.**</mark>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 23-cr-343-ACR** |
| | ) | |
| **CHARLES EDWARD LITTLEJOHN,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## STATEMENT OF UNRECORDED PROCEEDINGS

Pursuant to Federal Rule of Appellate Procedure 10(c), the Court **SETTLES** and

**APPROVES** this Statement of Unrecorded Proceedings to be included by the District Clerk in

the Record on Appeal.

On October 12, 2023, Defendant Charles Edward Littlejohn pled guilty before Judge Ana

C. Reyes to one count of disclosing tax return information without authorization. In the Factual

Basis for Plea, Mr. Littlejohn agreed that he had stolen and disclosed to the press the tax returns

of then President Donald J. Trump and thousands of the Nation's wealthiest people. Dkt. 9. On

January 28, 2024, the Court sentenced Mr. Littlejohn to the statutory maximum of 60 months and

on January 31, the Court entered Judgment against him. Dkt. 35.

On February 12, 2024, Mr. Littlejohn filed a Notice of Appeal, Dkt. 38, and the Court

then transmitted the case to the Court of Appeals, Dkt. 39. His appeal is currently pending. *See*

Case No. 24-3104.

**A. October 10-12, 2023**

At the parties' request, Judge Reyes scheduled Mr. Littlejohn's plea hearing for

Thursday, October 12, 2023. On Tuesday, October 10, 2023, Judge Reyes's Courtroom Deputy

emailed the parties: "The judge would like to meet with you, either in chambers or via zoom

video, off the record and before Thursday. Would you be available at a time on tomorrow?" Ex. __. Based on the parties' responses as to their availability, the Courtroom Deputy set the meeting for Wednesday, October 11, 2023, at 2:00 p.m. in Judge Reyes's Chambers. Judge Reyes was present with her law clerk, along with Government counsel, Jennifer Clarke and Lauren Castaldi, and defense counsel, Lisa Manning. Mr. Littlejohn was not present. No attorney objected to this conference being held among lawyers only and in Chambers.

Judge Reyes began the meeting by explaining that she had questions about the case and Mr. Littlejohn's plea agreement. She expressed that she was perplexed as to why the Government had allowed Mr. Littlejohn to plead to a single count of unauthorized disclosure of taxpayer information when he had stolen the tax records of a sitting president and thousands of the Nation's wealthiest people. She asked the Government whether there would be a separate, future case with additional charges and, if not, why not.

The Government lawyers stated that this would be the only federal criminal case against Mr. Littlejohn for the conduct described in the Factual Basis for Plea and that the Government believed it was a just resolution of the case. The Government lawyers noted that requiring Mr. Littlejohn to plead to multiple counts of the same offense would not change the calculation of his total offense level under the Sentencing Guidelines. Judge Reyes responded that, given the nature and extent of the conduct, she still assumed the Government would have brought multiple charges carrying a much higher possible sentence—noting some charges may carry maximum sentences of 20 years. Judge Reyes explained in a firm tone that she did not understand why the Government had allowed Mr. Littlejohn, who admittedly had engaged in premeditated and repeated criminal conduct, to plead to one count with a statutory maximum of five years. She compared Mr. Littlejohn's plea offer to those of defendants in the January 6

cases who faced multiple counts and potentially years in prison for trespassing on the Capital Grounds.

The Government lawyers explained that the Department of Justice had concerns that statute of limitations could run if the parties failed to reach a plea acceptable to Mr. Littlejohn. They also noted that Mr. Littlejohn had provided an extensive proffer fully accepting responsibility. In such cases, they explained that it was within standard DOJ practice to make a one count plea offer pre-indictment in cases that DOJ would otherwise charge as multiple counts. Defense counsel then explained in greater detail the extent of Mr. Littlejohn's cooperation, including that he helped the Government identify the holes in the IRS computer system that allowed him to find and download the tax information undetected.

After hearing this information, Judge Reyes indicated that she was still troubled by the plea—again emphasizing the fact that Mr. Littlejohn had stolen the tax returns of a sitting President—but that she would accept the plea the next day as scheduled. Judge Reyes also stated that Mr. Littlejohn's cooperation sounded significant and that she would like to hear the full details at sentencing. She ended the meeting by suggesting that defense counsel convey to her client the Court's views of his conduct and stating that she would see the parties the following day. Without objection, this meeting was neither transcribed nor recorded.

Judge Reyes expressed her concern about the nature of Defendant's conduct during his plea hearing. *See* Dkt. 13 at 20:22-21:3. During the sentencing, she questioned the Government's charging decisions and potential sentences, Dkt. 40 at 20:13-24:6, 46:12-46:23, and noted the defendant's cooperation, *id.* at 11:5-11:13.

The morning of the scheduled plea hearing, October 12, 2023, at 10:57 a.m., Judge Reyes's law clerk emailed Government and defense counsel stating:

At this afternoon's plea hearing, Judge Reyes plans to ask, as part of the factual basis for the plea, who the high-ranking public official was, to name any others, and the news organization. She will also ask for names of some of the private individuals and the second news organization. If the parties have an issue with this approach, please let us know, and we can schedule a phone conference to discuss between 12:30 and 1:30 p.m. today.

Ex. ___. In response, at 11:25 a.m., counsel for each party jointly requested "the opportunity to discuss this matter in advance of the hearing this afternoon." The law clerk responded by email at 11:31 a.m. that the Court would "schedule a call for 1 p.m., and it will be off the record[,]" and that the Courtroom Deputy would "circulate the dial-in information shortly." Soon thereafter, at 12:08 p.m., the Courtroom Deputy emailed a Zoom link to Government and defense counsel for a videoconference from 1:00 to 1:45 p.m.

Present at the Zoom conference were Government attorneys Jennifer Clarke and Lauren Castaldi, and defense counsel, Lisa Manning. Mr. Littlejohn was not present. No attorney objected, before or after, to this conference being held among lawyers only and by Zoom without a stenographer. No attorney asked the Court to put its questions on the record. Judge Reyes began the videoconference by stating that, during the plea hearing, she planned to ask Mr. Littlejohn the names of the victims of his crimes and she expected him to answer. She called the meeting to ask the lawyers if there was any issue with her doing so. Ms. Castaldi responded that the Government had concerns about this approach because the victims had a right to privacy under the Crime Victims' Rights Act. Judge Reyes questioned the Government about the applicability of the Act in a case that was already public, where the names of the victims, including the former President, were already in the news. She stated that the parties would not be able to get through the plea and sentencing without Mr. Littlejohn admitting to his conduct and identify Public Official A (*i.e.*, then President Trump). The Government lawyers responded that the charge and privacy considerations would be the same regardless of the identity of the

victim.

Judge Reyes asked whether she would be violating the Crime Victims' Rights Act if she asked Mr. Littlejohn to list the names of his targeted victims during the plea colloquy. Counsel for both parties responded that they each wanted to make sure that they fully complied with the Crime Victims' Rights Act. Ms. Castaldi added that, based on her conversations thus far with victims of the ProPublica leak, she understood that most of them wanted to keep the matter private and not receive any additional publicity. Judge Reyes then asked whether "Public Official A," then President Trump, also wanted his name withheld. She directed Government counsel to add one of President Trump's lawyers to the Zoom conference. The Government was unable to do so, but Ms. Castaldi indicated that she would try to contact President Trump's lawyer, Alina Habba, as soon as possible, and stated that Ms. Habba planned to be present at the plea hearing. Without objection, the Zoom conference was neither transcribed nor recorded.

After the Zoom hearing, Government counsel contacted counsel for President Trump, Alina Habba. At 1:44 p.m., Government counsel relayed to Judge Reyes's chambers in an email that Ms. Habba did not object to President Trump being identified in the hearing and "also said she would like to make a brief statement at the appropriate time." During the plea hearing, the Court did not ask Mr. Littlejohn for the names of any of his victims.

Judge Reyes accepted Mr. Littlejohn's plea as scheduled on October 12, 2021. Dkt. 13.

**B. January 10, 2024**

On January 10, 2024, Judge Reyes's law clerk emailed counsel for both parties:

In your sentencing briefs, Judge Reyes would like you to address whether, for sentencing purposes, the Court is legally entitled to consider the number of tax returns the Defendant stole. If the Defendant's position is that his sentence should be the same regardless of whether one or 1,000 tax returns were stolen, please provide specific support for that proposition. Judge Reyes is interested in whether she can take the number of tax returns stolen into account in considering a

variance or upward departure.

Ex. __.

**C. January 18-19, 2024**

On January 18, 2024, Judge Reyes's law clerk emailed counsel: "Could the parties please provide a more precise number for the number of individuals and entities whose tax returns were stolen (beyond just 'thousands')?"  Ex__.  On January 19, 2024, Government counsel, after coordinating the language of the response with defense counsel via phone and email, responded:

> The Court asked us for the number of tax returns stolen by Mr. Littlejohn. Because he copied the records from an IRS database using queries that produced large tranches of tax data (rather than pulling specific records), the answer to the exact number of returns stolen is difficult to determine. Based on the Government's analysis of IRS data and material recovered through Mr. Littlejohn's cooperation, the number of individuals and entities whose annual income tax returns were stolen is approximately 8,000. That would include about 7,600 individuals and slightly over 600 entities.

> 26 USC § 6103(b) broadly defines "return" as "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed" and defines "return information" as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." Using these definitions, the data stolen by Mr. Littlejohn included "returns" and "return information" for approximately 18,000 individuals and 73,000 businesses whose information was, in some form, linked to the above-referenced 8,000 taxpayers.

Ex__.

**A347**

**D. January 23-29, 2024**

    *1. Letter from House Ways and Means Committee*

On January 23, 2024, at 9:31 p.m., Sean Clerget, Chief Oversight Counsel for the U.S.

House of Representatives Committee on Ways and Means, emailed chambers a letter from

Republican members of the committee regarding Mr. Littlejohn's sentencing.  The letter is

attached here as Exhibit A and publicly available.[1]

    The next day, January 24, 2024, at 4:24 p.m., Judge Reyes's law clerk responded to Mr.

Clerget's email, copying counsel for the Government and Mr. Littlejohn:

> Judge Reyes asked that I thank you for forwarding this correspondence. Please
> convey to the Members that Judge Reyes is carefully considering all of the
> information she receives concerning this matter and appreciates them taking the
> time to convey their unique perspective.
>
> Further, if neither the Committee nor the parties in this case object—and please
> confirm there are no objections before sending—please reply to this email with
> the November 8, 2023 Letter (from the Committee to DOJ) and the January 17,
> 2024 letter (from DOJ to the Committee) referenced in the correspondence.

Ex. __

    Later that evening, at 8:54 p.m., Government counsel responded to Mr. Clerget's email

including chambers and defense counsel, "We do not object to the Committee sharing the two

letters described in your below email."  Ex. __.

    On January 25, 2024, at 12:00 p.m., defense counsel replied to Mr. Clerget's email

including chambers and Government counsel:

> On behalf of Charles Littlejohn, we respectfully object to the January 23, 2024
> Letter from the Republican Members of the Committee on Ways and Means, and
> to any other similar submissions to the Court in this case. The Republican
> Members of the Committee on Ways and Means are not parties to Mr. Littlejohn's
> case, nor are they victims. If, as a third party, they wish to submit their views in

---

[1] https://waysandmeans.house.gov/2024/01/24/ways-means-republicans-throw-the-book-at-irs-leaker/

support of the Government's sentencing position, they should be required, under Local Rule 7, to move the Court for leave to file an amicus brief. Local Rule 7(2) requires that motions by amici "*shall concisely state the nature of the movant's interest; identify the party or parties supported, if any; and set forth the reasons why an amicus brief is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case.*" The Rule also requires the movant to first confer with each party in the case as to their position on the motion for leave to file the brief and, once filed, allow the parties 14 days to respond. Here, a third party should not be allowed to circumvent this rule by submitting argument to the Court, outside of the docket, days before sentencing, and not affording Mr. Littlejohn (or others) adequate chance to respond.

While the Court has broad discretion to consider sentencing materials properly submitted by the prosecution, defense, and probation, the Guidelines and Federal and Local Rules do not provide for consideration of advocacy and/or information submitted outside of the judicial record. *See, e.g.* FRCP 32 and Local Rule 32.2. It is improper for a third party to try to influence the Court in this way—especially where the third party is an entirely partisan group from the legislative branch that has also publicized its correspondence to the Court. *See* "*Ways & Means Republicans: 'Throw the Book' at IRS Leaker*" (Jan. 24,2024), available at https://waysandmeans.house.gov/ways-means-republicans-throw-the-book-at-irs-leaker/

Mr. Littlejohn should be treated like any other defendant who comes before this Court for sentencing. He pled guilty to one count of unauthorized disclosure of tax records pursuant to a pre-indictment plea agreement and is before the Court to be sentenced for that offense. The media and political interest in this case do not give license to Members of Congress, or any other third party, to try to improperly insert their political agenda into the sentencing process. There is no basis here for the Court to stray from its customary Rules and Procedures.

For these reasons, it is, respectfully, our position that the Court should disregard the January 23, 2024 Letter from the Republican Members of the House Committee on Ways and Means and any additional related submissions.

Ex. __.

At 4:24 p.m. of January 26, 2024. Mr. Clerget replied to his email correspondence: "We disagree with defense counsel's objection and characterization of our letter, but we will take no further action unless the court requests it."  Ex. __

There was no further correspondence between Chambers and Mr. Clerget.

**A349**

      *2.  Victim Impact Statements and Prison Report Date*

At 5:07 p.m. on January 24, 2024, Judge Reyes's law clerk sent an email to counsel for

both parties concerning victim impact statements and Mr. Littlejohn's potential prison report

date.  The email stated:

> 1. We receive the attached victim impact statement in the mail this week, which
> we have redacted.  Do the parties have a recommendation on what to do with this
> letter (and other letters we may receive this week)?

> 2. Given the health status of Mr. Littlejohn's father, please let the Court know
> whether, if Mr. Littlejohn is sentenced to a term of incarceration, he would
> request a delay in the reporting date for when his term of incarceration would
> begin.

Ex__.

At 8:59 p.m., the Government responded to the law clerk's email about the victim impact

statements:

> Thank you for sharing that letter – we received it as well.  As to that letter and
> other victim impact statements we have received, we would propose filing them
> under seal on the docket and also redacting identifiers associated with victims
> who wish not to share their names.  In addition, we wanted to let you know that at
> least one victim does intend to speak at the sentencing hearing.

Ex. ___.

At 4:05 p.m. on January 25, 2024, defense counsel responded to the law clerk's email

about victim impact statements and a prison report date:

> 1.  We have no objection to filing the victim impact statements under seal. As that
> likely means that I will not receive a copy through ECF, I would ask that the
> Government kindly email the redacted statements to me when they are filed. We
> also thought it prudent to bring to the Court's attention that one of the victims
> in the case, Kenneth Griffin, recently served Mr. Littlejohn with a deposition
> subpoena (attached) in his pending civil suit against the IRS and Treasury
> Department, and that Mr. Griffin's counsel have indicated that they may add Mr.
> Littlejohn as a defendant to the lawsuit. I have previously notified the
> Government of this litigation.

> 2.  Mr. Littlejohn greatly appreciates the Court's consideration of his father's

health situation.  To afford Mr. Littlejohn more time with his father, I intend to ask the Court at Sentencing to allow Mr. Littlejohn to self-report at a later date directly to the Federal Correctional Institution to which he is designated.

Ex. __.

At 3:58 p.m., Judge Reyes's law clerk emailed the parties asking when the Government would be filing the victim impact statements, stating, "Judge Reyes is interested in reviewing them today."  At 4:18 p.m., Government counsel emailed the law clerk and chambers "the final sealed and redacted set of victim impact statements."  The Government indicated that it would send the law clerk a copy of the unredacted filing *ex parte*.

Shortly thereafter, at 6:27 p.m., Judge Reyes's law clerk emailed the parties:

The Court has reviewed the victim impact statements filed by the Government, and Judge Reyes plans to quote from some of them at the hearing—without, of course, using any identifying information. Mr. Jacobson, please let us know if there is any objection to that.

And Ms. Manning, as the Court explained previously, Judge Reyes also plans to quote from the letters submitted on behalf of Mr. Littlejohn, again without using any identifying information.

Ex. __.

3.  *Video Attendance*

On January 26, 2024, at 1:08 p.m., defense counsel emailed Government counsel and chambers stating that, due to serious health issues, Mr. Littlejohn's mother and stepfather would "no longer be able to travel to Washington to support Charles at sentencing or be able to update his father and stepmother on the proceedings."  Ex. __.  Defense counsel asked whether it was "possible for the Court to set up a private videoconference link on Monday so that Charles' parents and stepparents may at least be there remotely."  *Id.*  Defense counsel had conferred with the Government and it did not object to the request.

At 1:31 p.m., Judge Reyes's law clerk responded, "We are sorry to hear that and wish

[his mother] a speedy recovery. Yes, Mr. Littlejohn's parents and stepparents may watch remotely. There may be some technical limitations with the viewing angle of the Courtroom, but I've copied my colleague . . . who will be able to coordinate the link." Ex. __.

On the morning of the sentencing hearing, January 29, 2024, at 6:51 a.m., defense counsel emailed chambers asking for remote access to the sentencing hearing for additional family members, including his stepmother, three siblings, and an uncle, which the Court allowed. The Court granted that request and the additional family members attended. Ex. __.

### 4. Legal Question from the Court

On the afternoon of January 27, 2024, at 1:36 p.m., Judge Reyes's law clerk sent the following email to counsel for both parties:

> The Judge is interested to hear your views on Monday on the following question: is it *per se* unreasonable to impose a sentence of a maximum term, outside the guidelines, to a defendant that pled guilty, cooperated with the Government, and accepts responsibility. We have identified the following outside Circuit decisions, which you should be prepared to address. If there are other cases you wish to bring to the Court's attention please have hard copies available for the Court and opposing counsel on Monday. If possible, please give opposing counsel some time with any cases in advance of the hearing.
>
> The Judge has not made a sentencing decision and will of course hear all argument on the appropriate sentence, including the appropriate impact of Mr. Littlejohn's cooperation and acceptance of responsibility. She asked that I send this particular question in advance so that you can conduct your own legal research if you so choose.

Ex. __. Attached to the email were copies of *United States v. LePage*, 477 F.3d 485 (7th Cir. 2007), *United States v. Ortiz Alvarez*, 821 F. App'x 305 (5th Cir. 2020), and *United States v. Helton*, 370 F. App'x 709 (7th Cir. 2010). The Government subsequently filed Government's Notice Concerning Sentencing, Dkt. 32, which purported to answer the Court's question.

In response to the Government's Notice Concerning Sentencing, Judge Reyes's law clerk emailed counsel for the parties on the afternoon of January 28, 2024, at 3:28 p.m.:

> With respect to the Government's Notice Concerning Sentencing, Dkt. 32, the Court did not authorize this filing. The Judge has not reviewed this brief. The Court made clear how it wanted the question answered, which was at the hearing on Monday. Ms. Manning, if you would like to respond via a filing today, you are of course free to do so. If you would prefer instead for the Judge to not review the brief and make clear on the record tomorrow that she has not done so, please let me know that. Neither option will affect the Court's ultimate decision.

Ex. __.

defense counsel responded that evening, at 6:19 p.m.:

> On behalf of Mr. Littlejohn, we will stick with our plan to address the Court's *per se* reasonableness question at the hearing tomorrow. We defer to the Court as to the disposition of the Government's filing. We note that if the Notice Concerning Sentencing remains on the record, we will separately ask the Government to correct one of the factual statements made in the filing.

Judge Reyes's law clerk replied at 7:01 p.m.: "The Judge won't review the filing and will order it stricken tomorrow." Ex. __. The Court put this exchange on the record and struck the Government's filing during the sentencing proceedings. *See* Dkt. 40, 7:13-8:1. Both the Government and Mr. Littlejohn agreed at the sentencing proceeding that there was no *per se* bar. The Government asked for the maximum sentence while Mr. Littlejohn urged that a maximum sentence was not appropriate in this case. *Id.* at 35:21-36:7.

### E. April 15-18, 2024

On April 15, 2024, at 1:47 p.m., Judge Reyes's law clerk emailed counsel for both parties:

> The Court understands that Mr. Littlejohn has a voluntary surrender date of May 1, 2024. The Court is sympathetic to Mr. Littlejohn's family situation. If there are extenuating circumstances that justify a later voluntary surrender date, the Court would quickly consider a motion filed by Mr. Littlejohn to push back the voluntary surrender date. If there is health information involved, Mr. Littlejohn may file the motion under seal.

Ex. ___.

On April 18, 2024, at 3:22 p.m., defense counsel responded declining the court's

**A353**

invitation to request a delayed report date.  Defense counsel added, "If, at any point in the future,

the Judge would be willing to consider a motion for a reduction in his period of incarceration

and/or other sentencing alternatives, I would, of course, be happy to submit such a request to the

Court."  At 3:56 p.m., Judge Reyes's law clerk replied: "Judge Reyes would consider any such

motion at an appropriate time.  In particular, if Mr. Littlejohn would like a limited release to

attend a family member's final days or funeral, the Judge would rule quickly on such a request,

although we cannot guarantee what [the Bureau of Prisons] would do."  *Id.*

Date: November 25, 2024

                                         _____
ANA C. REYES
United States District Judge

| From: | Celia Goetzl |
|-------|--------------|
| To: | "Jacobson, Jonathan (CRM)"; Reyes Chambers; LManning@SchertlerLaw.com; ncherry@schertlerlaw.com; Winn, Connor (CRM); Clarke, Jennifer (CRM) |
| Subject: | RE: USA v. Littlejohn (23-cr-343): Motion to Settle and Approve |
| Date: | Friday, November 8, 2024 10:16:00 AM |
| Attachments: | 2023.10.10 Chambers email.pdf |
| | 2023.10.12 Chambers email - Zoom link.pdf |
| | 2023.10.12 Chambers email II.pdf |
| | 2023.10.12 Chambers email.pdf |
| | 2024.01.11 Chambers email.pdf |
| | 2024.01.24 Chambers email.pdf |
| | 2024.01.25 Chambers email.pdf |
| | 2024.01.26 Chambers email II.pdf |
| | 2024.01.26 Chambers email III.pdf |
| | 2024.01.26 Chambers email.pdf |
| | 2024.01.28 Chambers email.pdf |
| | 2024.04.18 Chambers email.pdf |

Good morning,

Attached are the emails cited (12 attachments). The defense would greatly appreciate a ruling by November 25, which is a little less than 45 days before our opening appellate brief is currently due, on January 7.

Thank you,
Celia

Celia Goetzl

Assistant Federal Public Defender

625 Indiana Avenue NW, Suite 550

Washington, DC 20004

(202) 208-7500 ext. 5134

This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail. Thank you for your cooperation.

---

**From:** Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>

**Sent:** Wednesday, November 6, 2024 2:44 PM

**To:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>; LManning@SchertlerLaw.com; ncherry@schertlerlaw.com; Celia Goetzl <Celia_Goetzl@fd.org>; Winn, Connor (CRM) <William.Winn@usdoj.gov>; Clarke, Jennifer (CRM) <Jennifer.Clarke2@usdoj.gov>

**Subject:** RE: USA v. Littlejohn (23-cr-343): Motion to Settle and Approve

Thanks, Mr. Duval. The government defers to the Court and defense counsel with regard to the timing of a decision.

I am cc'ing DOJ appellate counsel Connor Winn and DOJ attorney Jennifer Clarke (who has appeared in this matter). Lauren Castaldi left the Justice Department earlier this year.

Please let us know if you need anything further from us.

Thank you,

Jonathan

Jonathan Jacobson
Acting Deputy Director | Election Crimes Branch
Trial Attorney | Public Integrity Section
Criminal Division | U.S. Department of Justice
Phone: (202) 934-0886

---

**From:** Reyes Chambers <Reyes_Chambers@dcd.uscourts.gov>
**Sent:** Wednesday, November 6, 2024 2:02 PM
**To:** LManning@SchertlerLaw.com; ncherry@schertlerlaw.com; Goetzl, Celia (FD) <Celia_Goetzl@fd.org>; Clark, Jennifer (USAMT) <JClark1@usa.doj.gov>; Jacobson, Jonathan (CRM) <Jonathan.Jacobson@usdoj.gov>; lauren.castaldi@usdoj.gov
**Subject:** [EXTERNAL] USA v. Littlejohn (23-cr-343): Motion to Settle and Approve

Counsel:

The Court writes to ask defense counsel to provide to the Court copies of all emails that are cited in the proposed Statement of Unrecorded Proceedings included in the pending Motion to Settle and Approve. Additionally, the Court would like to know if there is a particular date by which the parties need, or would strongly prefer, the Court to have ruled on the Motion to Settle and Approve.

Best,

Jon Duval
Law Clerk to Judge Ana C. Reyes
U.S. District Court for the District of Columbia
(202) 354-3351