No. 24-3019
(Oral Argument Not Yet Scheduled)

# In the United States Court of Appeals for the District of Columbia Circuit

─────────────

**UNITED STATES OF AMERICA**,

**Plaintiff-Appellee**,

v.

**CHARLES EDWARD LITTLEJOHN**,

**Defendant-Appellant**.

─────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
NO. 1:23-CR-343-ACR-1 (REYES, J.)

─────────────

## APPELLEE'S BRIEF FOR THE UNITED STATES

─────────────

EDWARD P. SULLIVAN
Acting Chief

JONATHAN E. JACOBSON
Trial Attorney
Public Integrity Section

MATTHEW R. GALEOTTI
Head of the Criminal Division

W. CONNOR WINN
Appellate Attorney
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 669-6551
William.Winn@usdoj.gov

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. R. 28(a)(1), the undersigned certifies as follows:

## A. Parties and Amici

Defendant-Appellant Charles Littlejohn's opening brief lists all parties, intervenors, and amici having appeared in the district court and this Court.

## B. Rulings Under Review

Littlejohn's opening brief lists the ruling under review.

## C. Related Cases

This case has not previously been before this Court or any other court of appeals. No related cases of which counsel is aware are currently pending in this Court or any other court.

s/ W. Connor Winn

W. CONNOR WINN
U.S. Department of Justice
Criminal Division
Appellate Section

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES .......i

TABLE OF AUTHORITIES ...................................................................v

GLOSSARY ..........................................................................................xi

INTRODUCTION....................................................................................1

JURISDICTIONAL STATEMENT .........................................................2

ISSUES PRESENTED ...........................................................................2

STATEMENT OF STATUTES AND REGULATIONS ...........................3

STATEMENT OF THE CASE .................................................................3

    I.    Procedural History .................................................................3

    II.    Factual Statement .................................................................3

        A.    President Donald Trump's Tax Returns .......................3

        B.    Thousands of Other Americans' Tax Returns ..............5

        C.    The Coverup and Investigation .....................................7

    III.    Course of Proceedings .............................................................7

        A.    Pre-Plea Hearing Conferrals .........................................8

        B.    The Plea Hearing ..........................................................10

        C.    Pre-Sentencing Proceedings .........................................11

        D.    The Sentencing Hearing ...............................................14

    IV.    Ruling Under Review ..............................................................22

SUMMARY OF ARGUMENT ...............................................................22

ARGUMENT .................................................................................24

I.  Littlejohn's Sentence Is Procedurally Reasonable. ..............24

    A.  Standards of Review ..................................................24

    B.  The District Court Kept an Open Mind About
        Littlejohn's Sentence...................................................25

    C.  The District Court Understood Littlejohn's
        Offense Based on Proper Sentencing Materials..........33

        1.  The District Court Had a Reasonable View of
            the Offense. .......................................................33

        2.  The District Court Fairly Handled a
            Congressional Letter..........................................38

    D.  The District Court Adequately Explained Its
        Sentence. ...................................................................41

II. Littlejohn's Sentence Is Substantively Reasonable. ............45

    A.  Standard of Review ....................................................45

    B.  The District Court Reasonably Imposed a 60-
        Month Statutory-Maximum Prison Sentence. ...........46

    C.  Littlejohn's Counterarguments Lack Merit. ...............49

        1.  The District Court Had Good Reasons to
            Vary Upwards. ...................................................49

        2.  The District Court Weighed Possible
            Sentence Disparities. .........................................51

        3.  The District Court Permissibly Viewed This
            Crime as Worse Than Certain January 6th
            Misdemeanors. ...................................................55

4. Imposing a Statutory-Maximum Sentence Was Lawful. .......................................................56

III. Reassignment Is Unwarranted. ...........................................60

CONCLUSION ........................................................................61

CERTIFICATE OF COMPLIANCE.......................................62

STATUTORY ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Baldwin v. New York,*
    399 U.S. 66 (1970)............................................................56

*Elec. Priv. Info. Ctr. v. Internal Revenue Serv.,*
    910 F.3d 1232 (D.C. Cir. 2018) ..........................................4

*Fujisawa Pharm. Co., Ltd. v. Kapoor,*
    115 F.3d 1332 (7th Cir. 1997)............................................61

*Gall v. United States,*
    552 U.S. 38 (2007)............................... 24, 33, 44, 46, 47

*Holguin-Hernandez v. United States,*
    589 U.S. 169 (2020)..........................................................45

*In re Sealed Case,*
    527 F.3d 188 (D.C. Cir. 2008) ..........................................44

*Lake v. Rubin,*
    162 F.3d 113 (D.C. Cir. 1998) ..........................................36

*Pepper v. United States,*
    562 U.S. 476 (2011)....................................................39, 40

*Puckett v. United States,*
    556 U.S. 129 (2009)..........................................................25

*Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.,*
    468 U.S. 841 (1984)..........................................................40

*Trump v. Mazars USA, LLP,*
    591 U.S. 848 (2020)....................................................34, 35

*United States v. Akhigbe,*
    642 F.3d 1078 (D.C. Cir. 2011) ........................................44

*United States v. Alford,*
    89 F.4th 943 (D.C. Cir. 2024) ...................................... 52, 55

*United States v. Baker,*
    489 F.3d 366 (D.C. Cir. 2007) ............................................ 30

*United States v. Barker,*
    771 F.2d 1362 (9th Cir. 1985) ........................................... 58

*United States v. Bradley,*
    455 F.3d 453 (4th Cir. 2006) ............................................. 29

*United States v. Bradley,*
    628 F.3d 394 (7th Cir. 2010) ............................................. 37

*United States v. Brown,*
    381 U.S. 437 (1965) ......................................................... 40

*United States v. Brown,*
    808 F.3d 865 (D.C. Cir. 2015) ............................................ 44

*United States v. Brown,*
    857 F.3d 403 (D.C. Cir. 2017) .................................. 41, 42, 44

*United States v. Brown,*
    892 F.3d 385 (D.C. Cir. 2018) ............................................ 44

*United States v. Chemical Found.,*
    272 U.S. 1 (1926) ............................................................ 31

*United States v. Covert,*
    45 F. App'x 100 (3d Cir. 2002) .......................................... 41

*United States v. Crowell,*
    60 F.3d 199 (5th Cir. 1995) .............................................. 29

*United States v. Daniels,*
    446 F.2d 967 (6th Cir. 1971) ............................................ 58

*United States v. De Jesús-Torres*,
  64 F.4th 33 (1st Cir. 2020) ................................................... 39

*United States v. Dill*,
  799 F.3d 821 (7th Cir. 2015) ................................. 26, 27, 28

*United States v. Fogel*,
  829 F.2d 77 (D.C. Cir. 1987) ............................................. 39

*United States v. Fokker Servs. B.V.*,
  818 F.3d 733 (D.C. Cir. 2016) ......................................... 60

*United States v. Gardellini*,
  545 F.3d 1089 (D.C. Cir. 2008) .................................. 46, 58

*United States v. Gates*,
  84 F.4th 496 (2d Cir. 2023) ............................................. 27

*United States v. Greenman*,
  700 F.2d 1377 (11th Cir. 1983) ................................. 27, 33

*United States v. Hartford*,
  489 F.2d 652 (5th Cir. 1974) ........................................... 58

*United States v. Iracks*,
  106 F.4th 61 (D.C. Cir. 2024) ............................. 25, 38, 41

*United States v. Jackson*,
  848 F.3d 460 (D.C. Cir. 2017) .................................. 44, 48

*United States v. Jenkins*,
  854 F.3d 181 (2d Cir. 2017) ...................................... 58, 59

*United States v. Johnson*,
  934 F.3d 498 (6th Cir. 2019) .................................... 57, 60

*United States v. Khatallah*,
  41 F.4th 608 (D.C. Cir. 2022) .................................. 48, 51

*United States v. Khedr,*
   343 F.3d 96 (2d Cir. 2003) ................................................. 37

*United States v. Kuczora,*
   910 F.3d 904 (7th Cir. 2018) ........................................... 48

*United States v. Mattea,*
   895 F.3d 762 (D.C. Cir. 2018) ................................... 52, 55

*United States v. Miller,*
   35 F.4th 807 (D.C. Cir. 2022) ............... 25, 33, 34, 35, 47, 49, 57, 58, 59

*United States v. Muzio,*
   966 F.3d 61 (2d Cir. 2020) ............................................. 59

*United States v. Otunyo,*
   63 F.4th 948 (D.C. Cir. 2023) .................................... 52, 55

*United States v. Pless,*
   982 F.2d 1118 (7th Cir. 1992) ............................... 26, 32, 33

*United States v. Pyles,*
   862 F.3d 82 (D.C. Cir. 2017) ..................................... 26, 27

*United States v. Ransom,*
   756 F.3d 770 (D.C. Cir. 2014) ........................................ 48

*United States v. Richey,*
   924 F.2d 857 (9th Cir. 1991) ......................................... 53

*United States v. Robinson,*
   587 F.3d 1122 (D.C. Cir. 2009) ...................................... 29

*United States v. Saani,*
   794 F.3d 44 (D.C. Cir. 2015) ..................................... 42, 48

*United States v. Short,*
   597 F.2d 1122 (8th Cir. 1979) ....................................... 39

*United States v. Tristan-Madrigal,*
   601 F.3d 629 (6th Cir. 2010) ............................................................ 50

*United States v. Ventura,*
   650 F.3d 746 (D.C. Cir. 2011) ......................................................... 43

*United States v. Wade,*
   890 F.3d 629 (7th Cir. 2018) ............................................................ 45

*United States v. Williamson,*
   903 F.3d 124 (D.C. Cir. 2018) ......................................... 46, 47, 49, 51

*United States v. Wolff,*
   127 F.3d 84 (D.C. Cir. 1997) ........................................................... 60

*United States v. Zobel,*
   696 F.3d 558 (6th Cir. 2012) ........................................................... 44

*Wood v. Moss,*
   572 U.S. 744 (2014) ........................................................................ 35

**Statutes, Rules, and Constitutional Provisions**

U.S. Const. art. I, § 9, cl. 3 ................................................................ 40

U.S. Const. art. II, § 1, cl. 1 .............................................................. 35

18 U.S.C. § 3553 ................................................. 1, 17, 19, 20, 41, 42, 52

18 U.S.C. § 3771 ................................................................................ 10

26 U.S.C. § 6531 ................................................................................. 9

26 U.S.C. § 7213 ........................................................................ 1, 3, 7

D.C. Cir. R. 28 ..................................................................................... i

Fed. R. App. P. 4 ................................................................................. 2

Fed. R. Crim. P. 11 ................................................................ 7, 29, 61, 1

Fed. R. Crim. P. 32 ........................................................ 12, 27, 39, 50, 1

Fed. R. Crim. P. 52 ..................................................................... 25

U.S.S.G. § 2H3.1 ................................................................. 15, 43

U.S.S.G. § 3A1.2 ....................................................................... 50

**Other Authorities**

U.S.S.C., Judiciary Sentencing Information: FY 2019-2023, Guideline
§ 2H3.1, Criminal History Category I, Offense Level 13 ................... 53

# GLOSSARY

**Br.**        Littlejohn's Opening Brief

**JA**         Joint Appendix

**SA**         Sealed Joint Appendix

**IRS**        Internal Revenue Service

## INTRODUCTION

From 2017 to 2020, Defendant Charles Edward Littlejohn knowingly and willfully carried out a scheme to disclose federal tax returns without authorization to further his political goals. He sought out a job as a private contractor at the Internal Revenue Service (IRS) so that he could access President Donald Trump's tax returns, which he gave to the New York Times in anticipation of the 2020 presidential election. Then, to generate public pressure to raise taxes on the wealthy, Littlejohn located the tax returns of thousands of the United States' wealthiest taxpayers and illegally disclosed those returns to ProPublica. Both news organizations ran revealing articles that harmed the privacy, finances, and reputations of Littlejohn's victims, and Littlejohn attempted to conceal his crimes by destroying incriminating evidence.

In 2021, the federal government investigated, and, in 2023, Littlejohn pleaded guilty to disclosing tax returns and return information without authorization, in violation of 26 U.S.C. § 7213(a)(1). After the district court conducted a thorough sentencing hearing and balanced the sentencing factors in 18 U.S.C. § 3553(a), it imposed an upwardly variant

statutory-maximum 60-month prison term. Littlejohn now appeals, claiming that his sentence is unreasonable.

This Court should affirm. The district court carefully appraised this case's circumstances and reasonably weighed the Section 3553(a) factors as it sentenced Littlejohn. And although the court recognized the gravity of his crime throughout these proceedings, the court kept an open mind and sentenced him only after it had considered all the facts and arguments presented and had explained the sentence it imposed. Nothing about that process or Littlejohn's sentence warrants reversal.

## JURISDICTIONAL STATEMENT

Littlejohn's jurisdictional statement is correct, except that the district court's judgment was entered on February 9, 2024. JA 5; Fed. R. App. P. 4(b)(6).

## ISSUES PRESENTED

1. Whether the district court imposed a procedurally reasonable sentence.

2. Whether the district court imposed a substantively reasonable sentence.

## STATEMENT OF STATUTES AND REGULATIONS

All relevant statutes and regulations are reproduced in Littlejohn's opening brief or in the statutory addendum attached to this brief.

## STATEMENT OF THE CASE

## I.    Procedural History

With Littlejohn's consent, the government filed an information charging him with the unauthorized disclosure of tax returns and return information, in violation of 26 U.S.C. § 7213(a)(1), and Littlejohn pleaded guilty pursuant to a plea agreement. JA 8-35. The district court imposed an upwardly variant and statutory-maximum 60-month term of imprisonment and three further years of supervised release. JA 131-33.

## II.    Factual Statement

### A.    President Donald Trump's Tax Returns

For years, Littlejohn periodically worked for a consulting firm as an IRS contractor, and, in that role, could access tax returns and tax information in IRS databases. JA 29; SA 110. Littlejohn learned through training at work that taxpayer information was confidential and that willfully inspecting or disclosing that data without authorization carried "criminal consequences." JA 29; SA 110.

After President Donald Trump won the 2016 presidential election, many people sought access to his tax returns. JA 101, 103; *see Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1235 (D.C. Cir. 2018). Littlejohn, who viewed the President negatively, SA 110, believed that the American people deserved to see the President's tax returns before they "decided … how … to vote" in the 2020 presidential election—even if that meant Littlejohn needed to commit a "serious crime," JA 191-92.

In September 2017, Littlejohn thus rejoined his consulting firm with the intent, if given the chance, to find and share President Trump's tax returns with the media. SA 110. Littlejohn quickly landed on an IRS project with access to a database of confidential tax data. SA 110. And he spent months working out how to covertly search the database for the President's returns and smuggle them off the IRS's servers. SA 110-11.

In late November 2018, Littlejohn set his plan into motion. SA 111. He downloaded the President's tax returns, returns containing payer and payee information, and information on the President's businesses. SA 111. "[T]o avoid IRS protocols," Littlejohn uploaded the data to a private website and redownloaded it on digital devices at home. SA 111.

In May 2019, Littlejohn reached out to the New York Times and disclosed to that organization the tax returns and return information for President Donald Trump and related individuals and entities. SA 111. Littlejohn then spent the next year working with the New York Times to analyze that information. SA 111-12. As he did so, he stole additional tax returns and return information associated with President Trump and related individuals and entities—to "supplement" his first disclosure. SA 111. And again, Littlejohn did all this because he believed that Americans had a right to see the President's tax returns before deciding how to vote in the upcoming 2020 presidential election. JA 191.

In late September 2020, five weeks before the presidential election, the New York Times published an article that disclosed information contained in President Trump's tax returns. SA 111; JA 104-05. That news organization later published other articles based on the President's illegally disclosed tax information. SA 111; JA 104.

## B.   Thousands of Other Americans' Tax Returns

In the summer of 2020, as he worked with the New York Times, Littlejohn saw other wealthy individuals' tax returns. JA 105; SA 112. Concluding that these taxpayers needed to pay higher taxes, Littlejohn

aimed to change the federal tax system and came to believe that an "in-depth investigative report on the tax histories of [the] ultra-wealthy" might aid his cause. JA 105-06; *see* JA 191-92.

Littlejohn therefore sought out and unlawfully disclosed tax records for "thousands of the nation's wealthiest people." SA 112. He once more used his position as an IRS contractor to access the tax returns of "about 7,600 individuals and slightly over 600 entities."[1] JA 309; *see* SA 112. And he again smuggled that data off of the IRS's servers but, this time, shared the data with another news outlet, ProPublica. SA 112; JA 106.

ProPublica published nearly 50 articles based on the tax returns and information that Littlejohn shared. SA 112. The articles caused his taxpayer victims great distress, reputational harm, backlash, and unwelcome attention. JA 199-200. The victims "lost businesses," faced "real threats," and were disparaged "countless times." JA 200-01; *accord* SA 134-54. Many victims continue to fear that ProPublica may publish articles based on the information that Littlejohn shared. SA 144; JA 201.

---

[1] The parties provided this estimate based on information available to them in January 2024. JA 309.

### C. The Coverup and Investigation

Littlejohn sought to cover his tracks and thwart any investigation. JA 32; SA 112. He stopped working as an IRS contractor and deleted nearly every file on his IRS-assigned laptop. JA 32; SA 112. He destroyed digitally simulated computers that he had used to steal the tax data that he shared with ProPublica. JA 32. And he canceled the domain of the website that he had used to smuggle tax data out of the IRS. JA 32.

The Department of the Treasury and the Department of Justice nevertheless investigated and identified Littlejohn as the culprit. SA 113. Littlejohn cooperated, admitted his crime, and returned the copies of the tax data that he personally still held. SA 113-14.

## III. Course of Proceedings

In the fall of 2023, after the government filed the information, the government and Littlejohn executed a plea agreement under which he would plead guilty to disclosing without authorization tax returns and return information, in violation of 26 U.S.C. § 7213(a)(1). JA 11-33. In return, the government agreed to bring no further charges in this case and to support certain Sentencing Guidelines calculations. JA 12, 14; *see* Fed. R. Crim. P. 11(c)(1)(A)-(B). But the agreement allowed the parties to

argue for any legal sentence under Section 7213(a)—*i.e.*, 0 to 60 months' imprisonment—and stated the government's intent to seek an upward departure under the Sentencing Guidelines. JA 16.[2]

## A.    Pre-Plea Hearing Conferrals

Two days before Littlejohn's plea hearing, the district court contacted the parties and asked for an in-chambers meeting. JA 276. Without objection, the court and counsel met the next day. JA 276-77.[3]

During the meeting, the district court asked questions about this case and the parties' plea agreement. JA 277. The court expressed that it was "perplexed" by the decision to allow Littlejohn to plead guilty to one Section 7213(a) count with a 60-month statutory-maximum prison term. JA 277. The court said that it would have "assumed" that the government "would have brought multiple charges carrying a much higher possible sentence" given that Littlejohn "admittedly … engaged in premeditated and repeated criminal conduct." JA 277; JA 29-33 (plea's factual basis).

---

[2] The plea agreement permitted Littlejohn to appeal any sentence above his final guidelines range, and this appeal falls within that carveout from the plea agreement's appellate waiver. JA 18-19.

[3] The contents of any untranscribed conferrals have been settled through Federal Rule of Appellate Procedure 10(c). JA 276-81.

The court also "compared [the] plea offer to those of defendants in the January 6 cases who faced multiple counts and potentially years in prison" and asked if Littlejohn faced a "separate, future case with additional charges." JA 277-78.

In response, the government noted that Littlejohn had accepted responsibility for his crime, and the defense pointed to his cooperation, which included identifying the holes in the IRS computer system that had allowed him to steal tax data. JA 278. In those circumstances, the government explained, a one-count pre-indictment plea offer was "within standard [government] practice." JA 278. And the government informed the court that it had concerns about a possible statute-of-limitations defense absent a plea agreement, JA 278, and that more Section 7213(a) charges would not alter Littlejohn's sentencing guidelines range, JA 277.[4]

The district court, although still "troubled by the plea," indicated "that the plea hearing would proceed the next day as scheduled." JA 278.

_____

[4] The government later affirmed that Section 7213(a)'s "five-year felony" was "the most serious offense for leaking tax information." JA 73 n.1. The government's timing point, meanwhile, reflected the three-year statute of limitations for "offenses arising under the internal revenue laws," 26 U.S.C. § 6531, like Section 7213(a).

It noted that Littlejohn's "cooperation sounded significant" and advised the parties that it wanted "to hear the full details at sentencing." JA 278.

The next morning, the district court informed the parties by email that, at the plea hearing, it planned to ask Littlejohn for the names of his victims and the news organizations with which he had shared tax data. JA 278. Without objection, the court and parties had an untranscribed teleconference, and the government raised concerns about naming the victims, given their right to privacy, 18 U.S.C. § 3771(a)(8), and some victims' wish to avoid publicity, JA 278-80. At the court's request, the government contacted President Trump's personal attorney, who had no objection to the President being identified and noted her wish to speak on his behalf at the hearing. JA 280; *see* 18 U.S.C. § 3771(a)(4), (b)(2)(B).

### B.    The Plea Hearing

In his plea colloquy, Littlejohn confirmed that he had shared President Trump's tax returns with the New York Times and had shared tax data for the nation's wealthiest taxpayers with ProPublica. JA 45. Before accepting his plea, the court heard from President Trump's personal attorney, who requested "the maximum sentence" for this crime.

JA 49-51. The court answered that Littlejohn's offense would carry "severe consequences." JA 51-52.

After accepting Littlejohn's plea, the district court explained how the sentencing process would unfold. JA 52-53. The court then discussed Section 7213's roots and noted the rule of law's importance. JA 53-55. Against that backdrop, the court observed that Littlejohn's crime had undermined the victims' "statutory right to privacy in their tax returns" and that the court could not "overstate how troubled" it was by his acts. JA 55. But the court stated that Littlejohn would "have a sentencing" and that the court would review the sentencing papers and listen to his allocution "very carefully." JA 55-56.

## C.    Pre-Sentencing Proceedings

**1.**    The Probation Office drafted the PSR; found that Littlejohn had an offense level of 9, a criminal history category of I, and a guidelines range of 4-10 months' imprisonment; and observed that the case could warrant an upward departure from the 4-to-10-month guidelines range. SA 115, 121, 126, 131. Neither party objected to these recommendations.[5]

_____

[5] Littlejohn proposed some changes to the PSR's factual findings, and the Probation Office made those changes. SA 110, 128.

SA 128; JA 149. After receiving the draft PSR, the district court asked the parties to address in their sentencing briefs whether "the number of tax returns" that Littlejohn "stole" provided a basis for a variance or upward departure. JA 292-93; *see* SA 105; Fed. R. Crim. P. 32(h).[6]

**2.** A week later, the parties filed their sentencing memoranda. They agreed that the Sentencing Guidelines had failed to account for the gravity and nature of Littlejohn's offense. JA 78-85, 87-88.

For its part, the government argued that the district court should grant an upward departure or vary upwards and sentence Littlejohn to the statutory-maximum 60 months of imprisonment. JA 72, 78-85. That sentence, it explained, was necessary to punish Littlejohn's harmful, unparalleled, and willful crime against the President, thousands of others, and democratic process and also to deter those who would commit such sophisticated crimes in pursuit of political agendas. JA 80-83, 85.

Littlejohn argued for a two-to four-level upward departure and a sentence within the ensuing guidelines range—*i.e.*, 8 to 18 months'

---

[6] Littlejohn mischaracterizes this email as announcing the district court's intent to depart or vary upward from the guidelines range. Br. 8.

imprisonment, depending on the final departure. JA 121; *see* JA 78-80. He claimed that such a sentence and the collateral consequences of his crime would suffice to punish, deter, incapacitate, and rehabilitate him, JA 118-21, and would account for his background, attempts to protect the ProPublica victims' privacy, cooperation, acceptance of responsibility, and community support, JA 92-98, 117-18. He also compared his case to other unauthorized tax disclosure cases—which had "involved the disclosure of far fewer tax records," JA 108—and to non-tax cases and urged the district court to avoid sentencing disparities. JA 108-18.

**3.** After the parties filed their sentencing memoranda, the district court asked the parties several questions by email. It wanted to know the "number of individuals and entities whose tax returns were stolen"; the parties estimated that Littlejohn had stolen the returns of "7,600 individuals and slightly over 600 entities." JA 309-10. Given the government's request for a statutory-maximum sentence, *supra*, at 12, the court asked the parties to address at sentencing if it was "*per se* unreasonable to impose a sentence of a maximum term, outside the guidelines, to a defendant that ple[aded] guilty, cooperated with the Government, and accept[ed] responsibility," JA 324. However, the court

stated that it "ha[d] not made a sentencing decision" and would "hear all argument on the appropriate sentence, including the appropriate impact of … Littlejohn's cooperation and acceptance of responsibility." JA 324.

Before sentencing, the district court also sent the parties a letter that it had received from the United States House of Representatives' Committee on Ways and Means. JA 295-300. The letter urged the court to sentence Littlejohn to the maximum 60-month sentence and gave the Committee's views on why that sentence was proper. JA 297-99. Littlejohn objected to the court considering the letter, JA 301, and the court stated that it would address his objection at sentencing, JA 307.

### D.   The Sentencing Hearing

**1.**   The district court began the sentencing hearing by stating that it had read letters from Littlejohn's friends and family and heard of his good character but also intended to "dissect[]" his "failures." JA 143. The court noted that it had "thought and struggled deeply about [his] sentence." JA 144. The court then observed that Littlejohn's targeted attack on a "sitting President" amounted to "an attack on … constitutional democracy," and the court explained that it had an obligation to punish that offense with "firmness of purpose." JA 145.

The district court next addressed the materials that it had reviewed in preparation for sentencing. JA 145-48. The court determined that it had the authority to consider the letter from the House Ways and Means Committee. JA 145-46. However, "for the avoidance of any doubt," the court advised the parties that it would not "base any part" of its sentencing decision on the letter. JA 146. The court then confirmed that it had reviewed the materials that the parties had filed. JA 146-47.

After confirming that neither party objected to the revised PSR, the district court accepted the PSR's factual findings and offense-level and criminal-history-category calculations under the Sentencing Guidelines. JA 148-52. It also accepted Littlejohn's concession that it should depart upward and raise his offense level to 13 because he had disclosed tax information for many victims, caused non-monetary harm, and invaded his victims' privacy. JA 152-55; U.S.S.G. § 2H3.1, cmt. n.5. Following that departure, the court calculated a final guidelines range of 12-18 months' imprisonment and noted that the Probation Office had recommended an 18-month prison term. JA 154-55, 158.

**2.** The district court next heard from counsel and Littlejohn. As the government began arguing for a 60-month statutory-maximum

sentence, the court asked it to explain how the pre-indictment resolution had affected the charges brought and Littlejohn's sentencing exposure. JA 158-60. The court stated that "the public deserve[d] to know why" Littlejohn, who had "pulled off the biggest heist in the IRS's history," was "facing one felony count." JA 161. And it sought to give the government "every opportunity to make it clear to the public why that happened." JA 161. The court explained that it was trying "to help [the prosecutor]," JA 160, 162, and to reveal what sentence Littlejohn might have faced after trial and if his cooperation had altered the charges brought, JA 160. The government consistently stated that it did not know what sentence Littlejohn might have faced under indictment because the government had not decided what charges to bring in an indictment. JA 160, 162-64. In those circumstances, the district court asked how it could give the statutory-maximum sentence that the government sought given Littlejohn's cooperation. JA 164, 167-68; *see* JA 186 (court later declining "to base any of [its] sentencing decision on other crimes [Littlejohn] could have been charged with[] or the fact that he wasn't charged with them").

Echoing its sentencing memorandum, the government explained why a 60-month sentence was proper. It observed that Littlejohn was an

experienced professional, whose "unparalleled" and multi-year crime had abused the public trust. JA 165-66. The government argued that he had "intended to damage" reputations and, by sharing the President and 7,600 other citizens' tax returns, had "sought to influence an election and to reshape our nation's political discourse and political process." JA 166. In addition, the government pointed out that his crime was "careful" and sophisticated and had inflicted immense and ongoing harm. JA 168-69. Therefore, to punish him and to deter other people like Littlejohn from committing similar crimes in the future, the government argued that a 60-month sentence was both necessary and appropriate. JA 170; *see also* 18 U.S.C. § 3553(a)(1)-(2) (sentencing factors covered by this argument).

Defense counsel recognized that Littlejohn was "going to a federal prison" but asked the district court to defer to the Probation Office's recommendation of an 18-month prison sentence. JA 182-84. Although she acknowledged the gravity of Littlejohn's crime, she argued that his "ideological" disclosures were less blameworthy than those made with "malice[] or avarice" or those that "endanger[ed] national security." JA 180-82, 188, 190. She suggested that an 18-month guidelines prison term thus satisfied Section 3553(a)'s sentencing goals. JA 183-84, 187.

Littlejohn spoke last. He apologized for his crime and the harm that he had caused and explained that he had acted upon a "misguided belief" that his crime had served "the public interest." JA 191. He said that he had believed that the American people needed to see President Trump's tax returns "before they decided how they were going to vote" in the 2020 election and that taxpayers should know what taxes the wealthy paid. JA 191-92. And Littlejohn also admitted that he had "used [his] skills to systematically violate the privacy of thousands of innocent[s]"—knowing "the potential consequences" that might follow and that he "would likely end up in a courtroom to answer for [his] serious crime." JA 192. Acknowledging that he had harmed these people and "the fragile faith that we place in the impartiality of our government institutions," Littlejohn did "not ask for mercy"—"only … for justice." JA 192.

**3.** After hearing the parties' arguments and Littlejohn's remarks, the district court began to sentence Littlejohn. JA 193. It outlined the Section 3553(a) sentencing factors that courts must consider and affirmed that it had weighed them all. JA 193-94. And, given those factors, the court announced that it would vary upward from the guidelines range of 12-18 months' imprisonment. JA 194.

The district court first explained why the nature of Littlejohn's offense required an upward variance. 18 U.S.C. § 3553(a)(1). The court viewed his "three-year criminal scheme" as "an intolerable attack on [the United States'] constitutional democracy by declaring open season on the private lives of our highest elected officials,"—the President—and as an assault on the private lives of "thousands of individuals." JA 197. To target President Trump, the court said, "was to target the" Presidency and democracy and "alone … require[d] a substantial upward variance." JA 199. The court also agreed that Littlejohn had shared tax returns for "thousands of Americans"—a crime "unparalleled in the IRS's history," JA 199—and recognized that his disclosures had already harmed victims and left others vulnerable to future harm, JA 199-202. And it stated that none of this "produce[d] a single social good that could not have been … produced in some way by lawful means." JA 196. Therefore, despite Littlejohn's cooperation and acceptance of responsibility, the court found that the final guidelines range failed to adequately reflect the seriousness of his criminal conduct. JA 197; *see* JA 201.

The district court next found that Littlejohn's characteristics and history favored an upward variance. 18 U.S.C. § 3553(a)(1). The letters

submitted on his behalf persuaded the court that he was a "good" and "caring person." JA 202. But the court also stated that such a perception was "difficult to square" with Littlejohn's crime. JA 201-02. And the court agreed with the government that, "[a]s a sophisticated consultant" for the IRS, Littlejohn had known "what he was doing … was wrong" and had known that his crime would "harm" his victims. JA 203-04.

The district court also saw a need for an upward variance to ensure that its sentence reflected the offense's seriousness, deterred others, promoted respect for the law, and justly punished. 18 U.S.C. § 3553(a)(2). It reasoned that, "to deter government officials and contractors" like Littlejohn from "tak[ing] the law into their own hands," it needed to impose an above-guidelines sentence. JA 204. In particular, the court stated that it aimed to deter individuals from thinking "the trade off" of a politically motivated disclosure was worth the punishment that might follow. JA 204-05; *see* JA 192 (reflecting Littlejohn's considered tradeoff).

In its explanation, the district court noted the sentences available under Section 7213(a) and the Sentencing Guidelines and addressed the need to avoid unwarranted sentencing disparities. JA 210-17. The court reviewed the Section 7213 cases that Littlejohn had cited as comparators

in his sentencing brief but found them distinguishable. JA 211-13.[7] And the court distinguished this case from the many non-tax disclosure prosecutions that Littlejohn had cited because he had, in all, targeted more victims and the President, disclosed more data, acted more calculatedly, and provided less substantial assistance to the government. JA 213-15. The court also briefly stated that it saw Littlejohn's crime as more serious than the misdemeanor offenses of six January 6th defendants whom the court had recently sentenced. JA 216-17.

At bottom, the district court found an upward variance necessary for three reasons. JA 217. Littlejohn had engaged in a "[m]ulti-year criminal scheme" that began when he sought to rejoin his consulting firm. JA 217. He "made a series of calculat[ed] decisions, over years, to take the law into his own hands by targeting a sitting President … and thousands of Americans." JA 217. And "he targeted and intended to

_____

[7] The district court agreed with the PSR that the data available through the Judiciary Sentencing Information database reflected an insufficient number of defendants who: had Guideline § 2H3.1 as their primary guideline, had Littlejohn's offense level and criminal history category, and had received a prison sentence. JA 213; SA 127. The court therefore concluded that this database did not allow for good comparisons between the sentences of those defendants and Littlejohn. JA 213.

violate the privacy of, and harm, thousands of taxpayers." JA 217. The court granted that not every Section 3553(a) factor required an upward variance; for example, it refused to vary upward based on a need to rehabilitate Littlejohn or incapacitate him and protect the public. JA 205. But "[h]aving considered all the factors under Section 3553(a)," the court found "it necessary to impose an upward variance." JA 217.

"[F]or all of the[se] reasons," the district court sentenced Littlejohn to a statutory-maximum 60-month prison term, to be followed by three further years of supervised release. JA 218. No party objected. JA 225. Littlejohn now appeals his sentence.

## IV. Ruling Under Review

Littlejohn argues that his 60-month term of imprisonment is procedurally and substantively unreasonable. JA 193-218 (imposing sentence); Br. 19-58.

## SUMMARY OF ARGUMENT

Littlejohn's 60-month sentence is procedurally and substantively reasonable, and this Court should affirm the district court's judgment.

1. Littlejohn cannot show the plain or clear error necessary to render his sentence procedurally unreasonable. Before and at sentencing,

the district court followed the process necessary to sentence him fairly. The court repeatedly noted its willingness to hear more about Littlejohn and his crime and affirmed that it had not yet decided on his sentence. The court listened carefully to the arguments and evidence presented at the sentencing hearing and then drew factual conclusions with support in the record. When the time came, the court delivered a thorough sentencing explanation that analyzed Littlejohn and the relevant statutory sentencing factors. No reversible procedural error occurred.

**2.** Littlejohn likewise has not shown that the district court abused its discretion by imposing a substantively unreasonable sentence. The court recognized that Littlejohn's final guidelines range failed to account for several aspects of his egregious crime and his background, and the court found that those considerations called for varying upward to a 60-month statutory-maximum sentence. It explained how those points resonated across several statutory sentencing factors and how all the factors together favored this sentence. And, contrary to Littlejohn's suggestion, the court carefully compared his case against others and acted within its discretion throughout sentencing.

**3.** This Court should deny Littlejohn's extraordinary request for reassignment of this case to another district judge. The district court's strong feelings about Littlejohn's crime arose entirely from the facts developed below, and these proceedings thus reflect no judicial bias against Littlejohn and raise no concern that the public would view any resentencing before the same district judge as unjust.

## ARGUMENT

Appellate courts review a sentence for procedural and substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). Because Littlejohn claims that his sentence is unreasonable on both fronts, this Court looks first for a "significant procedural error" at his sentencing. *Id.* It then weighs if his sentence is substantively reasonable. *Id.* And here, Littlejohn's sentence is indeed procedurally and substantively sound.

## I. Littlejohn's Sentence Is Procedurally Reasonable.

Littlejohn contends that his sentence is procedurally unreasonable for several reasons. Br. 19-42. He forfeited most of these arguments below, and, in any event, his claims lack merit.

### A. Standards of Review

If a defendant timely makes a procedural objection to his sentence, this Court will review his related appellate claim for abuse of discretion.

*United States v. Iracks*, 106 F.4th 61, 66 (D.C. Cir. 2024). This Court will review new procedural claims for plain error, *id.*; Fed. R. Crim. P. 52(b), but will review factual findings for clear error even absent any objection below, *United States v. Miller*, 35 F.4th 807, 814 n.8 (D.C. Cir. 2022).

Littlejohn raised no procedural objection to his sentence below. JA 225. This Court therefore reviews any factual findings underlying his sentence for clear error, *Miller*, 35 F.4th at 814 n.8; *see* Part I.C.1, and his other procedural claims for plain error, *Iracks*, 106 F.4th at 66. Under plain-error review, Littlejohn must show (1) "error or defect"; (2) that is "clear or obvious"; (3) and that "affected substantial rights," *i.e.*, the "outcome." *Puckett v. United States*, 556 U.S. 129, 135 (2009). This Court then has "*discretion* to remedy" an error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* Meeting all these requirements "is difficult, 'as it should be.'" *Id.*

## B. The District Court Kept an Open Mind About Littlejohn's Sentence.

The district court always viewed Littlejohn's crime as grave, but it never "predetermined"—plainly or otherwise—the sentence he deserved. *Contra* Br. 20.

**1.** District judges must come to sentencing with an "open mind," not a blank slate. *United States v. Pless*, 982 F.2d 1118, 1129 (7th Cir. 1992). A sentencing judge will often have presided over a case before sentencing and may have developed "strong feelings," *id.* at 1129-30, and a prepared judge will have read sentencing briefs and reviewed a defendant's offense, history, and characteristics, *United States v. Dill*, 799 F.3d 821, 825 (7th Cir. 2015). As a result, the judge will often have a "preliminary idea" as to the proper sentence before a sentencing hearing and may share that view when the hearing begins; she need only keep a "mind[] open to new facts, new arguments, and new choices" at the hearing. *Id.*; *see United States v. Pyles*, 862 F.3d 82, 92 (D.C. Cir. 2017).

The district court kept such an open mind. For example, during the in-camera pre-plea conferences, the court noted that "Littlejohn's cooperation sounded significant and that [the court] would like to hear the full details at sentencing." JA 278. It affirmed at the plea hearing that he would "have a sentencing," promised to review the parties' filings, and planned to listen "very carefully" to Littlejohn's allocution. JA 55-56. Before the sentencing hearing, the court asked the parties to brief factual and legal issues, JA 291-92, 309-10, and emphasized that it "ha[d] not

made a sentencing decision" and would "hear all argument on the appropriate sentence, including the appropriate impact of … Littlejohn's cooperation and acceptance of responsibility." JA 324. At each step, then, the court continued to display an open mind to "new facts" or "arguments" that might affect the sentence it would impose. *Dill*, 799 F.3d at 825.

Indeed, the district court opened the sentencing hearing by stating that it had "thought and struggled deeply about [Littlejohn's] sentence." JA 144. The court then calculated Littlejohn's guidelines range and listened to the parties' and victims' arguments, JA 158-91, interacting with the prosecutor and defense counsel and demonstrating that it "was listening to what they were saying," *Pyles*, 862 F.3d at 92. As promised, the court heard Littlejohn's allocution. JA 191-93. Only after taking those required steps, *see* Fed. R. Crim. P. 32(i), did the court vary upward and sentence Littlejohn, JA 193-221. In other words, the court sentenced him "only after 'reviewing and considering all the pertinent evidence.'" *United States v. Gates*, 84 F.4th 496, 502 (2d Cir. 2023); *accord United States v. Greenman*, 700 F.2d 1377, 1379 (11th Cir. 1983).

**2.** Nevertheless, Littlejohn asserts that the district court was plainly predetermined to sentence him to 60 months' imprisonment. Br. 20-24. But he has shown no error, let alone plain error, of that kind.

**a.** Nothing about the district court's pre-plea conferences reveals that the court had already settled on a given sentence. *Contra* Br. 20-22. The court asked in one conference if the government could have or should have pursued more charges or charges with broader sentencing exposure and why the plea agreement allowed Littlejohn to plead guilty to one Section 7213(a) count in return for forgoing charges. JA 277-78. And the court stated that it was "perplexed" and "troubled" by that agreement, given Littlejohn's conduct. JA 277-78. But it never stated that his conduct warranted a particular sentence or that it had closed its mind as to what sentence Littlejohn deserved. JA 277-78. Rather, the court wanted to hear more, including "full details" of his cooperation "at sentencing," JA 278, which indicated that the court had an open mind to "new facts[ or] new arguments" that might arise at sentencing, *Dill*, 799 F.3d at 825.

**b.** Nor were these remarks plainly improper pre-plea pressure that shows a judicially preordained sentence. *Contra* Br. 21-23. Courts "must not participate" in "discussions" about plea negotiations. Fed. R.

Crim. P. 11(c)(1). But here, the parties had concluded their negotiations by executing a final Rule 11(c)(1)(A) plea agreement before a pre-plea conference occurred. JA 26-28, 276-78. The court's remarks at the conference then "conveyed skepticism regarding the agreement." *United States v. Robinson*, 587 F.3d 1122, 1127 (D.C. Cir. 2009). In doing so, the court was performing the judicial function of weighing whether to reject that agreement; it was not improperly participating in negotiations by "coerc[ing]" a plea or plea agreement. *Id.*; Fed. R. Crim. P. 11(c)(3), (5). Even Littlejohn's cases endorse this distinction. Br. 21-22; *compare, e.g.*, *United States v. Crowell*, 60 F.3d 199, 204 (5th Cir. 1995) (affirming that comments critiquing a final plea agreement were proper as part of a Rule 11 evaluation of the agreement), *with id.* (finding a Rule 11 error when the court, after rejecting the first agreement and before a second agreement "was in its final form," discussed the punishment necessary for the court to accept the second agreement); *see also United States v. Bradley*, 455 F.3d 453, 462-63 (4th Cir. 2006) (echoing this distinction).[8]

---

[8] The district court did nothing untoward by discussing the matter in camera. *See* Fed. R. Crim. P. 11(c)(5) (allowing the court to reject a plea agreement and take certain steps "in camera" for "good cause").

Regardless, even if the district court had applied pre-plea pressure in violation of Rule 11(c)(1), such pressure would not alone prove that the court had already set Littlejohn's sentence. Such a violation might have cast doubt on whether the court acted impartially and, if prejudicial, entitle Littlejohn to move to withdraw his guilty plea, *see United States v. Baker*, 489 F.3d 366, 370-71, 376 (D.C. Cir. 2007)—a remedy that Littlejohn does not want, Br. 25 (seeking a resentencing).

**c.** The district court's pre-sentencing communications also did not reflect a plain and preset plan to impose a 60-month sentence. Indeed, only after the government had filed a sentencing brief seeking that statutory-maximum sentence, JA 72, did the court ask if such a sentence was "*per se* unreasonable" for someone who "pled guilty, cooperated with the Government, and accept[ed] responsibility," JA 324. *Contra* Br. 22 (suggesting that the court sent the question without any prompting). That question, moreover, aimed to allow the parties to "conduct … legal research" before sentencing. JA 324. And the court even explicitly affirmed that it had "not made a sentencing decision" and would hear "argument on the appropriate sentence." JA 324. If anything, this whole exchange undercuts Littlejohn's claim of a predetermined sentence. *Cf.*

*United States v. Chemical Found.*, 272 U.S. 1, 14-15 (1926) ("[I]n the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties."). *Contra* Br. 24.

**d.** Finally, the district court's statements at sentencing did not show any plain predetermination of Littlejohn's sentence. *Supra*, at 27. *Contra* Br. 23. Even in the small part of the hearing that Littlejohn cites, Br. 23 (quoting JA 158-62), the court displayed an open mind as to his sentence. When the government explained that it had never made a final determination as to what charges it might have brought in an indictment, JA 159-61, the court replied that it "need[ed] [to] know" that information "*before* [*it*] *ma*[*de*] *a sentencing decision*," JA 161 (emphasis added).

The district court's "trying to help" statements, meanwhile, reflected an effort to have the government explain publicly why it had brought one felony count against Littlejohn—not plain predetermination. JA 160, 162. In a "packed" courtroom, JA 143, the court asked the prosecutor why a pre-indictment resolution like Littlejohn's "might account for the single felony charge," JA 158, and what charges and sentencing exposure an indictment might have brought, JA 159-60. That explanation, the court noted, would reveal if his "cooperation ha[d]

already been taken into account" in charging decisions. JA 160. Indeed, the court saw this inquiry as an "opportunity to make it clear to the public" and court why Littlejohn "fac[ed] one felony count." JA 161.

The district court's reaction to the government's response that the Section 7213 count covered the core misconduct here dispels any suggestion that the court plainly predetermined Littlejohn's sentence. Given the government's uncertainty as to what charges an indictment would have brought, the court asked "how could [it] possibly give him 60 months[']" imprisonment, as the government had requested. JA 164. The court pointed out that it needed to "tak[e] into account" that Littlejohn "cooperated" and did not see what "benefit" Littlejohn received given the government's never-made charging decisions. JA 164-65. The government responded to this concern. *Supra*, at 16-17 (answering given the Section 3553(a) factors). But the very question shows that the court had not plainly settled on what sentence it would impose here.

**3.** Without question, the district court repeatedly expressed "strong feelings," *Pless*, 982 F.2d at 1130, about Littlejohn's crime. The court consistently characterized his crime as "troubling" and warranting "severe consequences." JA 51-52, 55-56. But the court gave

Littlejohn his day at sentencing, listened to him and his counsel, and "consider[ed]" him "as an individual" with all "the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment." *Gall*, 552 U.S. at 52. "[N]othing in the record compels"—let alone plainly compels—the conclusion that the court "closed [its] mind to evidence favorable to [him] before the sentencing proceedings were concluded." *Pless*, 982 F.2d at 1130 (quoting *Greenman*, 700 F.2d at 1379).

### C. The District Court Understood Littlejohn's Offense Based on Proper Sentencing Materials.

Littlejohn next argues that the district court sentenced him based on clearly erroneous facts and extra-record materials. Br. 25-31, 34-38. Nothing like that occurred.

### 1. The District Court Had a Reasonable View of the Offense.

A sentence may not rest upon clearly erroneous factual findings. *Miller*, 35 F.4th at 817. But, given the deference paid to factfinders, this Court will not deem a finding clearly erroneous just because it "would have weighed the evidence differently." *Id.* This Court must instead have a "definite and firm conviction" that the factfinder made a mistake. *Id.* A factual finding will therefore stand if "plausible in light of the record viewed in its entirety," even if "probably wrong." *Id.* Only factual findings

that strike this Court as "wrong with the force of a five-week-old unrefrigerated dead fish" will fall under clear-error review. *Id.*

    **a.**    The district court reasonably found that Littlejohn targeted the "sitting President" and the Presidency itself. *See, e.g.*, JA 197, 199. *Contra* Br. 26-27. Littlejohn sought to find and share President Trump's tax returns and information, and he set that plan into motion only after the President's 2017 inauguration. SA 45, 110-11; Br. 27 (noting that he shared a "sitting President's tax records"). Given those facts, the court recognized "what '[a]ll others can see and understand'"—that "[t]he interest of the man" occupying the Presidency "is often 'connected with the constitutional rights of'" that office. *Trump v. Mazars USA, LLP*, 591 U.S. 848, 854, 867-68 (2020). And efforts to disclose President Trump's tax returns implicated the "close connection between the Office of the President and its occupant"; "it [was], after all, the President's information" and mattered to Littlejohn for that very reason. *Id.* at 868 (discussing President Trump's tax returns); JA 192.

    The record refutes Littlejohn's contention that he targeted President Trump, "not because he was the sitting President, but because he was a presidential candidate" in the 2020 election. Br. 27. Littlejohn

admitted that his plan to disclose President Trump's tax returns was "sparked by … James Comey's firing in the Spring of 2017," JA 205-06 (quoting SA 45), and that he held a negative view of President Trump, SA 110. His conduct then did not spring from some view about the tax information that presidential candidates should disclose, even if Littlejohn later developed such a view. JA 191, 196. Indeed, in 2017, when Littlejohn devised and set his plan into motion, President Trump was neither a candidate for the bygone 2016 election nor the far-off 2020 presidential election. These facts provided an ample basis for the district court to find that Littlejohn targeted President—not candidate—Trump. *Miller*, 35 F.4th at 817 (upholding plausible finding).

**b.** The district court, for related reasons, did not clearly err in finding that Littlejohn's crime was an "attack on our constitutional democracy." JA 197. *Contra* Br. 26-27. The President "alone composes a branch of" the constitutional democracy established in the Constitution. *Mazars*, 591 U.S. at 868; U.S. Const. art. II, § 1, cl. 1. By targeting a sitting President, then, Littlejohn took aim at a coequal branch of the federal government and the United States' constitutional democracy. *Cf. Wood v. Moss*, 572 U.S. 744, 748 (2014) ("[S]afeguarding the President is

… of overwhelming importance in our constitutional system."); JA 181 ("[I]t cannot be open season on our elected officials. It just can't be.").

As the district court found and as Littlejohn admitted, he also "undermined the fragile faith … place[d] in the impartiality of our government institutions" by releasing taxpayers' sensitive information. JA 192, 203. The scope and scale of his unlawful disclosures "appear to be unparalleled in the IRS's history," JA 199, and his targeting of the wealthy undermined the "equal protection of our laws" guaranteed to the "wealthy and poor alike," JA 154; *see Lake v. Rubin*, 162 F.3d 113, 115 (D.C. Cir. 1998) (explaining that Congress made tax information confidential to protect all taxpayers). That effect is even apparent from the victim impact statements, on which the court relied and which reflect "pronounced feeling[s] of disappointment," SA 138, and "shattered" faith and trust in the IRS's protection of sensitive tax information, SA 140.

**c.**    Nor did the district court clearly err in finding that Littlejohn targeted and intended to harm President Trump and other taxpayers. JA 154, 197-99, 204, 212. *Contra* Br. 28-30. Littlejohn searched for the President's tax returns, SA 110, and targeted the wealthy by seeking tax returns for "the top 500 taxpayers by income by year," SA 112. As a

sophisticated IRS consultant trained to protect taxpayer data, SA 110, he knew what a "serious crime" disclosing that data was, JA 192 (allocution). He knew "the potential consequences" of his disclosures and that he was "systematically violat[ing] the privacy of thousands of innocent people." JA 192 (same). And he admitted to having hoped that ProPublica and the New York Times would publish in-depth articles about President Trump and wealthy taxpayers and alter American politics at the end of the President's first term and 2020 presidential campaign. JA 105-06, 191-92; SA 111-12. The court thus supportably found that Littlejohn targeted and intended harm toward the President and taxpayers. JA 204, 212; *cf. United States v. Khedr*, 343 F.3d 96, 102 (2d Cir. 2003) ("In determining the intent with which a defendant acted, a district court is entitled to rely on circumstantial evidence and on all reasonable inferences.").[9]

**d.** Finally, the district court did not equate Littlejohn's crime with violent crimes. *Contra* Br. 28. The court noted a rise in political

_____

[9] Littlejohn argues that the district court's view as to the harms that his victims suffered rested on speculation. Br. 29-31 (citing *United States v. Bradley*, 628 F.3d 394, 401 (7th Cir. 2010) (per curiam)). But Littlejohn admitted that he systemically violated victims' privacy and "caused significant harm," JA 192, and victim-impact statements described the harm that his victims suffered or still feared, SA 137-54.

violence—*e.g.*, "credible death threat[s]" toward lawmakers, "bomb threats" directed at "state capitols," and fentanyl-bearing letters sent to election officials. JA 198. And the court observed that those crimes and Littlejohn's crime were all "harm[ful]" to "democracy" because they "targeted or threaten[ed] elected officials." JA 198-99. But the court never said that Littlejohn's crime rested on all fours with those crimes or that he threatened or used violence. *See* JA 198-99. Nor did the court ever "label[] … Littlejohn a domestic terrorist." *Contra* Br. 26.

2.  <u>The District Court Fairly Handled a Congressional Letter.</u>

The district court could have considered and relied on the letter it received from the United States House Committee on Ways and Means. But the court declined to base its sentencing decision on that letter, and Littlejohn preserved no objection claiming that the court thereafter did rely on the letter to craft its sentence. *Iracks*, 106 F.4th at 66 & n.2. Regardless, he has shown no error or prejudice. *Contra* Br. 34-38.

The district court could have relied on this letter at sentencing. The court was allowed to "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come." *Pepper v. United States*, 562 U.S. 476,

489 (2011). It only could not rely on unreliable information or information which the defendant lacked an opportunity to contest. *United States v. Fogel*, 829 F.2d 77, 90 (D.C. Cir. 1987); Fed. R. Crim. P. 32(i)(1)(B). And tellingly, Littlejohn never claims that the letter introduced unreliable information or that he lacked the chance to contest information therein. Br. 35-37. The record, after all, supported the letter's points, *compare*, JA 297-99, *with* SA 110-12, *and* JA 191-92, and Littlejohn objected to the letter when the court shared it with the parties pre-sentencing and answered its points at sentencing, JA 179-80, 185-86, 301-02 (objection).

Littlejohn has further shown no prejudice or miscarriage of justice because, although the district court read the letter before sentencing, it refused to "base any part of its sentencing decision" on the letter. JA 146. There is "no reason to doubt that the district court meant what it said." *United States v. De Jesús-Torres*, 64 F.4th 33, 40 (1st Cir. 2020); *accord Fogel*, 829 F.2d at 90-91. After stating that it would not rely on the letter, the court never returned to the letter or noted congressional interest in this case, JA 146-225, and nothing postdating the court's announcement suggests that its disclaimer was insincere, *see Fogel*, 829 F.2d at 90-91; *United States v. Short*, 597 F.2d 1122, 1124 (8th Cir. 1979) (affirming

after district court stated that its sentencing "decision was not based upon a negative reaction to [a third-party] letter").

Littlejohn instead wrongly contends that the House letter bore "hallmarks of an unconstitutional bill of attainder." Br. 35. It did not. "The proscription against bills of attainder reaches only statutes that inflict punishment on [a] specified individual or group." *Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*, 468 U.S. 841, 851 (1984); *see* U.S. Const. art. I, § 9, cl. 3 ("No Bill of Attainder … shall be *passed*." (emphasis added)). The House letter, of course, was not a congressionally enacted and presidentially endorsed law; it was correspondence from one congressional committee. JA 271. Nor did the letter inflict punishment; rather, it urged the court to inflict punishment at sentencing in line with the Judiciary's role. *United States v. Brown*, 381 U.S. 437, 443-46 (1965).

No other principle prohibited the district court from relying on sentencing materials from a non-victim third party. *Contra* Br. 36. Again, the court's sentencing inquiry is "largely unlimited" as to the sources from which information may come, *Pepper*, 562 U.S. at 489, and Littlejohn identifies no unique limitation on the ability of Congress or its members to provide information to a district court, *see* Br. 36-37; *cf,*

*United States v. Covert*, 45 F. App'x 100, 101-02 (3d Cir. 2002) (upholding district court's consideration of letters from the general public).

### D. The District Court Adequately Explained Its Sentence.

The district court did not plainly fail to explain its upwardly variant 60-month sentence. *Contra* Br. 38-42.

**1.** A district court must give reasons for the sentence that it imposes. 18 U.S.C. § 3553(c). When imposing an upwardly variant sentence, the court must also state "specific reason[s]" that the case calls for an above-guidelines sentence. *Id.* § 3553(c)(2). In doing so, the court "must draw on specific facts about the defendant's history or conduct; the demands of deterrence, public safety, rehabilitation or restitution … that are particular to that case; or some other factor listed in section 3553(a)." *United States v. Brown*, 857 F.3d 403, 405 (D.C. Cir. 2017). And the court must state why it finds his acts "more harmful or egregious than the typical case" under the Guidelines and why the Guidelines do not "fully account" for his conduct. *Iracks*, 106 F.4th at 67-68; *see Brown*, 857 F.3d at 406 ("[T]he court must cite details that are more informative and more damning … than the generic terms of the applicable Guidelines.").

The district court followed these commands. Its explanation of Littlejohn's sentence covered relevant Section 3553(a) factors and why the court was imposing this sentence. 18 U.S.C. § 3553(c); JA 193-218. The court also explained why a guidelines sentence—even after the upward departure to which Littlejohn had conceded—was inadequate. JA 194, 197, 201, 203-04, 217. In particular, it stated that the guidelines range failed to account for Littlejohn's multi-year scheme, his intent to harm the President and thousands of taxpayers' privacy, and his victims' ongoing harm. JA 197, 201, 217. Littlejohn's background and training in protecting taxpayer privacy, the court thought, also gave him unusual insight into how wrong and damaging his crime would prove. JA 203-04. And the court found that a guidelines sentence would not deter those within government from committing "political or ideological" crimes. JA 204-05; *see United States v. Saani*, 794 F.3d 44, 49 (D.C. Cir. 2015) (approving such a deterrence rationale as to government contractors). The court thus gave "specific and legitimate grounds for exceeding the Guidelines." *Brown*, 857 F.3d at 407.

**2.** Littlejohn acknowledges that the district court explained the upwardly variant sentence that it imposed. *See* Br. 39. He has not shown that the court's explanation was nonetheless plainly erroneous.

The district court's rationales addressed points not accounted for in the guidelines range or its upward departure. *Contra* Br. 39-40. For example, it departed upward because Littlejohn's crime had involved over a thousand individuals' tax returns, invaded privacy, and caused or risked non-monetary harm. JA 153; SA 177; U.S.S.G. § 2H3.1, cmt. n.5. But the court varied upward for other reasons, including Littlejohn's targeting of and intentionality in harming his specific victims, the future (not past or present) harms that his victims might face, and, of course, his multi-year scheme to target the President. JA 197, 201, 217; SA 177. Nothing about the guidelines range or upward departure addressed those points. *Compare also* Br. 40 (repeating that the record did not support some of these findings), *with United States v. Ventura*, 650 F.3d 746, 751 (D.C. Cir. 2011) (rejecting a failure-to-explain claim that only "restate[d]" objections to a sentencing court's factual findings).

The district court did not plainly need to tie these rationales to its decision to vary upward by 42 months, instead of some other amount.

*Contra* Br. 40-42. Appellate courts do not ask a district court "to do the impossible and provide detailed reasoning as to why it chose … to vary" by a set number of months. *United States v. Akhigbe*, 642 F.3d 1078, 1087 (D.C. Cir. 2011); *see United States v. Zobel*, 696 F.3d 558, 568-69 (6th Cir. 2012); *cf. Gall*, 552 U.S. at 47 (rejecting such a "mathematical approach"). District courts need only offer case-specific reasons that address why a guidelines sentence would be inadequate. *Brown*, 857 F.3d at 407. Only when a court has failed at that task—by varying upward for reasons fully covered in a guidelines range or based on far less detailed explanations than this one—has this Court found plain error. *See United States v. Brown*, 892 F.3d 385, 405-07 (D.C. Cir. 2018) (per curiam) (Guidelines fully accounted for district court's upward-variance rationales); *United States v. Brown*, 808 F.3d 865, 871-74 (D.C. Cir. 2015) (same); *Akhigbe*, 642 F.3d at 1087 (brief and generalized explanation); *In re Sealed Case*, 527 F.3d 188, 192 (D.C. Cir. 2008) (no explanation at all).

Regardless, the district court's explanation left little doubt about why it decided to vary upward to a 60-month statutory-maximum term. *See United States v. Jackson*, 848 F.3d 460, 462 (D.C. Cir. 2017). After weighing each Section 3553(a) factor, the court explained that it was

imposing that sentence because Littlejohn had "target[ed] the sitting President of the United States and thousands of other Americans" and for the other "reasons [the court had] stated." JA 218. Littlejohn, in challenging the substantive reasonableness of that 42-month variance, even acknowledges that the variance rested on some of these rationales. Br. 44-46. He thus "undermines his own argument that no explanation was given" to support an upward variance of this magnitude. *United States v. Wade*, 890 F.3d 629, 633 (7th Cir. 2018) (per curiam).

## II.  Littlejohn's Sentence Is Substantively Reasonable.

Littlejohn next argues that the district court abused its discretion by imposing a substantively unreasonable sentence. Br. 31-34, 42-56. He is wrong.

### A.  Standard of Review

A defendant preserves a substantive-reasonableness claim if he "advocat[ed] for a particular sentence" and argued that a longer sentence would be "greater than necessary." *Holguin-Hernandez v. United States*, 589 U.S. 169, 174-75 (2020). Littlejohn sought a lower sentence than he received, and this Court thus reviews the substantive reasonableness of his sentence for abuse of discretion. *Id.*

**B.    The District Court Reasonably Imposed a 60-Month Statutory-Maximum Prison Sentence.**

**1.**    In reviewing a sentence's substantive reasonableness, this Court considers "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. It asks, "[i]n light of the facts and circumstances of the offense and offender, is the sentence so unreasonably high or unreasonably low to constitute an abuse of discretion." *United States v. Williamson*, 903 F.3d 124, 136 (D.C. Cir. 2018). The district court receives due deference when weighing Section 3553(a)'s "vague, open-ended, and conflicting" factors, and each sentence rests on "its own set of facts" and a district judge's own "sentencing philosoph[y]." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). Accordingly, only in an "unusual case" will a sentence—even an above-guidelines sentence—constitute an abuse of discretion. *Williamson*, 903 F.3d at 136.

When reviewing a variant sentence, this Court ensures that the district court gave sufficiently compelling justifications for the variance. *Gall*, 552 U.S. at 50. The variance need neither rest on "extraordinary circumstances" nor show a proportional increase from a guidelines range. *Gardellini*, 545 F.3d at 1093. Indeed, to vary upward significantly,

46

including up to the statutory maximum, the court need only have engaged with the Section 3553(a) factors, articulated reasons for the variance not fully covered by the Guidelines, and made defendant-specific conclusions "within the special competence of sentencing courts." *Williamson*, 903 F.3d at 136 (upholding 96-month prison term despite 15-21 month guidelines range); *Miller*, 35 F.4th at 812-13, 818-19 (upholding maximum life sentence despite 262-327 month guidelines range); *cf. Gall*, 552 U.S. at 47-48 ("[D]eviations from the Guidelines range will always appear more extreme—in percentage terms—when the range … is low.").

2.     The district court gave strong justifications for Littlejohn's upwardly variant 60-month sentence based on its assessment of his offense, his characteristics, and concerns of general deterrence. To start, the "court distinguished this case from a typical case with the same underlying charge[]" because it caused "greater-than-usual harm," *Miller*, 35 F.4th at 818-19, for the reasons already noted, *supra*, at 42-43; JA 217. The court also aimed to punish Littlejohn's willfullness (apparent from his allocution and background) and to deter similarly stationed, ideologically driven "government officials and contractors" from viewing prison as "worth the trade off." JA 204-05; *see* JA 192. Those points were

compelling justifications for this upward variance. *Jackson*, 848 F.3d at 462 ("demonstrated willfulness"); *Saani*, 794 F.3d at 49 (deterring government contractors); *United States v. Ransom*, 756 F.3d 770, 772, 774-76 (D.C. Cir. 2014) (many victims and great harm); *United States v. Kuczora*, 910 F.3d 904, 907-08 (7th Cir. 2018) (sophisticated, multi-year scheme); *cf. United States v. Khatallah*, 41 F.4th 608, 650 (D.C. Cir. 2022) (per curiam) ("[T]hose contemplating attacks on the United States … and (most importantly) its personnel" must face "severe consequences.").

The district court thoroughly balanced these concerns with other Section 3553(a) factors—the good aspects of Littlejohn's background, the lack of a need to incapacitate or rehabilitate him, and the court's view as to any possible sentencing disparities, *infra*, at 51-55. JA 201-05, 211-17. Contrary to Littlejohn's claim, Br. 53-54, the court considered his lack of criminal history and his personal life but found them "difficult to square" with his crime, JA 201-02. The court recognized that Littlejohn had "felt a moral imperative to act as [he] did," JA 206, but it explained why that point neither favored him, JA 206-10, nor made him "a hero," JA 218. *Contra* Br. 53-54. And it found his remorse and cooperation outweighed by the other aggravating Section 3553(a) factors. JA 201, 203, 217-18.

In all, the district court "made 'the kind of defendant-specific determinations that are within the special competence of sentencing courts" and imposed a substantively reasonable sentence. *Williamson*, 903 F.3d at 136. Although the Section 3553(a) factors may not all have pointed in one direction, they collectively persuaded the court to impose a 60-month statutory-maximum sentence. That considered judgment was no abuse of discretion. *See Miller*, 35 F.4th at 819 (upholding upwardly variant and statutory-maximum sentence of life imprisonment).

## C.  Littlejohn's Counterarguments Lack Merit.

Littlejohn's counterarguments reveal no abuse of discretion.

### 1.  The District Court Had Good Reasons to Vary Upwards.

Littlejohn focuses on only one reason for the district court's upward variance—that he "targeted the sitting President of the United States"—and argues that this rationale alone cannot support that variance. Br. 44. But that framing fails to engage with the court's full rationale for varying up to a statutory-maximum 60-month prison sentence—*i.e.*, the full nature of his offense, his background, and general deterrence concerns. *Supra*, at 47-49 (noting his multi-year scheme, his intentional targeting

and harming of many taxpayers, his willful disregard for the law, and a need to deter ideologically driven government officials and contractors).

Even on its own terms, Littlejohn's targeting of President Trump merited "a substantial upward variance" from the final guidelines range. JA 199. As Littlejohn acknowledges, his final guidelines range does not account for the fact that he targeted a sitting President. Br. 45. Indeed, the stipulated guidelines calculations do not include a three-level Guideline § 3A1.2(a) official-victim adjustment. And neither party sought an upward departure under that guideline even though "the President" was a victim, U.S.S.G. § 3A1.2, cmt. n.5.[10] The district court thus reasonably chose to address that concern through an upward variance (it could not have departed upward because Littlejohn received no notice of a departure under U.S.S.G. § 3A1.2; *see* Fed. R. Crim. P. 32(h)). *United States v. Tristan-Madrigal*, 601 F.3d 629, 635 (6th Cir. 2010)

---

[10] If Littlejohn's guidelines range should have been higher than the one calculated, that harmless procedural error redounds to his benefit but changes nothing about his sentence's substantive reasonableness. The ensuing guidelines range would only have decreased the size of the upward variance that Littlejohn now challenges.

("[T]he same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance."); *see Williamson*, 903 F.3d at 135.

Littlejohn's sentence therefore has nothing in common with the substantively unreasonable sentence in *Khatallah*. *Contra* Br. 43-44, 46. A district court there sentenced a defendant to a downwardly variant 12-year prison sentence. 41 F.4th at 649. In doing so, it explained why it viewed a top-of-the-guidelines life sentence as inappropriate but never explained why the 30-year sentence at the bottom of the guidelines range was too harsh. *Id.* The ensuing "unexplained variance [was] a substantively unreasonable" one, and the Section 3553(a) factors "supported" a guidelines sentence or were "a mixed bag." *Id.* By contrast, Littlejohn's upward variance rested on many compelling justifications, with several Section 3553(a) factors favoring an upwardly variant and statutory-maximum sentence. *Supra*, at 47-49.

2.  <u>The District Court Weighed Possible Sentence Disparities.</u>

The district court weighed the need to avoid unwarranted sentencing disparities but found that this case differed from other cases in important ways. It did not abuse its discretion. *Contra* Br. 47-51.

A district court must weigh "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6). But this concern is inapposite when a court is sentencing a defendant with a criminal history or offense conduct that differs from other defendants. *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023). For example, "[w]hen an offense is uniquely serious, courts will consider the need to impose 'stiffer sentences' that 'justif[y] the risk of potential disparities.'" *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018).

Even if the sentence imposed creates "some degree of sentencing disparity," the need to avoid such disparities "is only one factor among many that district courts must balance." *United States v. Alford*, 89 F.4th 943, 954 (D.C. Cir. 2024). A court must weigh all the "vague, open-ended, and conflicting" Section 3553(a) factors. *Id.* And if it balances "competing" factors with the need to avoid unwarranted sentencing disparities, its sentence will prove reasonable even if it causes some disparity. *Id.* at 955.

**a.** The district court reasonably concluded that Littlejohn had committed a crime that differed materially from proffered comparators. *Contra* Br. 47-51. It correctly noted that a nationwide database reported

insufficient data about persons convicted of a Guideline § 2H3.1 crime and with an offense level and criminal history like Littlejohn's to draw meaningful comparisons. JA 213; SA 127.[11] As for the Section 7213(a) cases that Littlejohn cited, the court reasonably found that they involved "different conduct and … harms." JA 212. Indeed, this Section 7213(a) crime was "highly unusual": seeking a job "to steal the tax returns of the sitting [P]resident," handing over his information to a news organization and assisting with data analysis, and then disclosing tax information for thousands of the wealthiest Americans to another media outlet. JA 212. And even Littlejohn agreed that his crime was different, at least in that it involved far more victims and tax records than other Section 7213(a) crimes.[12] JA 108. In other words, and as the court had earlier recognized, Littlejohn's Section 7213(a) offense was "unparalleled." JA 199.

---

[11] *See* U.S.S.C., Judiciary Sentencing Information: FY 2019-2023, Guideline § 2H3.1, Criminal History Category I, Offense Level 13, https://jsin.ussc.gov/analytics/saw.dll?Dashboard (viewed July 8, 2025).

[12] JA 108-09; *see United States v. Washington*, 3:15-cr-7 (N.D. Ohio); *United States v. Lerner*, 1:12-cr-952 (S.D.N.Y.); *United States v. Lewis*, 1:12-cr-263 (E.D. Cal.); *United States v. Flowers*, 2:12-cr-323 (E.D. Pa.); *United States v. Johnson*, 2:07-cr-309 (E.D. Pa.); *United States v. Herndon*, 1:04-cr-171 (W.D. Tex.); *United States v. Verburg*, 2:03-cr-341 (D. Utah); *United States v. Richey*, 924 F.2d 857, 858 (9th Cir. 1991); *United States v. Moore*, 2:90-cr-20286 (W.D. Tenn.).

More broadly, the district court examined non-tax disclosure cases that Littlejohn had cited but rightly found them inapposite. JA 213-16; *see* JA 110-18. Most of these cases involved far fewer improperly disclosed records than Littlejohn's offense. JA 213 (citing *United States v. Fry*, 3:19-cr-102 (N.D. Cal.)). Some involved defendants who received downward departures for assisting the government to a much greater degree than had Littlejohn. JA 215 (citing *United States v. Patel*, 1:19-cr-81 (D.D.C.), and *United States v. Edwards, et al.*, 1:20-cr-66 (D.D.C.)). Another involved a longtime government-employee defendant who, unlike Littlejohn, suffered poor mental health and was pressured into leaking government files. JA 213-14 (discussing *United States v. Edwards*, 1:19-cr-64 (S.D.N.Y)). And all the disclosure-of-classified-information cases belonged to "a different realm" and lacked this case's "aggravating factors." JA 214-15; *see* JA 112-18 (listing cases with fewer victims, less tangible harms, and less partisan aims).

**b.** Contrary to Littlejohn's suggestion, then, the district court did not "ignore [a] plethora of cases similar to [his]," Br. 48-49, or "fail to consider" the need to avoid unwarranted sentencing disparities, Br. 47. It looked for nationwide data about offenders in Littlejohn's position and

discussed all the cases that Littlejohn cites. Br. 48-49 & n.6. However, it found that he "engaged in more egregious criminal conduct," *Otunyo*, 63 F.4th at 960, and that his "uniquely serious" Section 7213(a) unauthorized-disclosure offense demanded a "stiffer sentence," *Mattea*, 895 F.3d at 768. If the court even created a sentencing disparity here, it did not abuse its discretion by concluding that the Section 3553(a) factors, as a whole, demanded that result. JA 217 (reiterating before imposing sentence that the court had considered all the Section 3553(a) factors); *Alford*, 89 F.4th at 954.

3. The District Court Permissibly Viewed This Crime as Worse Than Certain January 6th Misdemeanors.

As it closed its comparison of Littlejohn's offense to other crimes, the district court noted that it believed that his crime was worse than the misdemeanors of six recently sentenced January 6th defendants. JA 216. The court correctly explained why Littlejohn's offense was "quite different" from those brought against such defendants. JA 216. Whereas those six January 6th misdemeanants came to the District of Columbia without an "intent to riot" or a "plann[ed] … insurrection," JA 216, Littlejohn came with a "carefully planned" crime, JA 217. His "consider[ed]" crime then harmed or risked harming "over a thousand

Americans." JA 217. And his actions—"break[ing] the law to further [a] political agenda[]"—posed "a threat to … democracy." JA 216-17.

The district court's view was no abuse of discretion. *Contra* Br. 31-34, 51. By definition, misdemeanants commit a crime that Congress itself has deemed less serious than the felony that Littlejohn committed. *Cf. Baldwin v. New York*, 399 U.S. 66, 70 (1970) (plurality opinion) (admitting "readily" that "a felony conviction is more serious than a misdemeanor conviction"). Nor, despite Littlejohn's claim, did the court equate him with some "[r]ioter[]" who "showed up with weapons and wearing body armor" to fight and "overturn the election results." Br. 33. All the court did was state that Littlejohn's "quite different" offense was extremely serious, degraded American institutions in its own way, and had proven worse than the misdemeanors of six January 6th defendants.

4.    <u>Imposing a Statutory-Maximum Sentence Was Lawful.</u>

Littlejohn wrongly implies that courts may sentence only some hypothetical "worst of the worst" to Section 7213(a)'s maximum sentence. Br. 52-56. In any event, the court reasonably viewed Littlejohn as among the "worst" of Section 7213(a) defendants.

**a.** By setting a statutory-maximum punishment for an offense, Congress limits the prison sentences that the district courts may impose. "*All* statutory maximums," however, "eliminate room for distinctions with respect to *all* individuals who deserve sentences higher than the maximum." *United States v. Johnson*, 934 F.3d 498, 501 (6th Cir. 2019). In other words, multiple defendants found guilty of the same offense may have different Section 3553(a) portfolios—with some defendants seeming "worse"—but all may ultimately warrant a statutory-maximum sentence. Congress's statutory maximum simply prevents the "worse" defendants from receiving even higher sentences. *See id.* ("A five-year range leaves much less room for appropriate distinctions than a sixty-year range.").

This Court thus rightly has never held that district courts must reserve statutory-maximum sentences for instances where every Section 3553(a) factor favors such a sentence. Rather, district courts receive "significant deference" in balancing the Section 3553(a) factors even when imposing the statutory maximum. *Miller*, 35 F.4th at 819. A court may find such a sentence necessary based on the "greater-than-usual harm" that a crime caused, the "purposes of criminal sentencing," and the need "to deter future crime." *Id.* It may impose such a sentence

even if the Section 3553(a) factors point in different ways. *Id.* In all, it must weigh "vague, open-ended, and conflicting" Section 3553(a) factors, *Gardellini*, 545 F.3d at 1093, and make a reasoned decision as to whether a defendant merits a statutory-maximum term, *Miller*, 35 F.4th at 819.

Littlejohn notably cites no authority holding that a district court must reserve a statutory-maximum sentence for a case where every Section 3553(a) factor tilts against a defendant. Br. 52-56. He offers three cases where a district court wrongly and mechanically imposed a statutory-maximum term on every person who committed a given crime. *United States v. Barker*, 771 F.2d 1362, 1366-68 (9th Cir. 1985); *United States v. Hartford*, 489 F.2d 652, 655-56 (5th Cir. 1974); *United States v. Daniels*, 446 F.2d 967, 969-71 (6th Cir. 1971). In the other case he cites, the court of appeals deemed an abuse of discretion a near-maximum sentence for a rude and obstructive first-time felon who transported his child pornography collection across the Canadian border. *United States v. Jenkins*, 854 F.3d 181, 185, 190-92 (2d Cir. 2017). That sentence reflected an abuse of discretion because it punished the defendant as if he had produced or distributed child pornography or physically abused a child instead of transporting his personal collection

of that material. *Id.* at 190-91; *see United States v. Muzio*, 966 F.3d 61, 64-65 (2d Cir. 2020) (describing *Jenkins* in this way).

**b.** As explained, the district court reasonably chose to impose a 60-month upwardly variant statutory-maximum sentence in this case. It did not abuse its "significant discretion" in imposing that sentence given the extensive and unusual harm that Littlejohn caused, his background, and the need to punish Littlejohn and deter other similarly situated individuals. *Miller*, 35 F.4th at 819; *supra*, at 47-49.

That said, even if it was proper to impose Section 7213(a)'s 60-month maximum prison term on only "the worst" unauthorized tax-disclosure defendants, the district court reasonably viewed Littlejohn in that light. The court found that his unprecedented crime "was an intolerable attack on our constitutional democracy by declaring open season on … a sitting President" and on "thousands of [wealthy] individuals" by disclosing their tax returns, "violating their privacy," and causing them grave harm. JA 197; *see* JA 154, 199-201, 204, 217. It heard Littlejohn admit that he had shared the returns with the media with an eye towards reshaping the 2020 election and tax policy. JA 191-92. And it concluded that Littlejohn's offense had posed "a threat to our

democracy." JA 216; *see Johnson*, 934 F.3d at 501 ("[T]he perspective that counts, so long as it is reasoned, is the district court's.").

## III.   Reassignment Is Unwarranted.

This Court reassigns a case "in the 'exceedingly rare circumstance' in which the district judge's conduct is 'so extreme as to display clear inability to render fair judgment.'" *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 750-51 (D.C. Cir. 2016) (citation omitted). Concerns of impartiality, the appearance of justice, and waste and duplication inform that inquiry. *See United States v. Wolff*, 127 F.3d 84, 88 (D.C. Cir. 1997). Those considerations do not favor reassignment just because a district judge has expressed opinions about a defendant's conduct based on what she learned during his case. *Fokker Servs.*, 818 F.3d at 751.

Accordingly, any resentencing should occur before the same district judge. A new district judge's need to prepare, even only for resentencing, would "entail at least some waste and duplication." *Wolff*, 127 F.3d at 89. Meanwhile, nothing about the district court's strong views and findings— born of "facts presented during the[se] proceedings"—calls its partiality into question, *Fokker Servs.*, 818 F.3d at 751, and the court followed proper procedures when it took Littlejohn's plea and sentenced him.

Indeed, the court permissibly held in camera conferences with the parties as it debated whether to reject the plea agreement, *see* Fed. R. Crim. P. 11(c)(5), and no "improper off-the-record political pressure" influenced the court at sentencing, *contra* Br. 57; *see supra*, at 38-41. Nor did the court have a closed mind about this case or misapprehend the facts—let alone in a way that would prevent it from holding a fair resentencing. *Cf. Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1339 (7th Cir. 1997) (noting that "mistake is not a ground for our ordering a case reassigned on remand—that would make the exception swallow the rule").

## CONCLUSION

This Court should affirm the district court's judgment.

Respectfully submitted,

| | |
|---|---|
| EDWARD P. SULLIVAN<br>Acting Chief | MATTHEW R. GALEOTTI<br>Head of the Criminal Division |
| JONATHAN E. JACOBSON<br>Trial Attorney<br>Public Integrity Section | /s/ W. Connor Winn<br>W. CONNOR WINN<br>Appellate Attorney<br>Criminal Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave. NW |
| July 9, 2025 | Washington, DC 20530<br>(202) 669-6551<br>William.Winn@usdoj.gov |

**CERTIFICATE OF COMPLIANCE**

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,183 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and because this brief has been prepared on a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook font.

3.     This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a) because it contains no personal data identifiers.

4.     This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security, version 10.7, which is continuously updated, and according to that program, is free of viruses.

/s/ W. Connor Winn
W. CONNOR WINN

# STATUTORY ADDENDUM

Fed. R. Crim. P. 11 ........................................................................ADD 2

Fed. R. Crim. P. 32 ......................................................................ADD 31

United States Code Annotated
  Federal Rules of Criminal Procedure for the United States District Courts (Refs & Annos)
    Title IV. Arraignment and Preparation for Trial

Federal Rules of Criminal Procedure, Rule 11

Rule 11. Pleas

Currentness

**(a) Entering a Plea.**

**(1) In General.** A defendant may plead not guilty, guilty, or (with the court's consent) nolo contendere.

**(2) Conditional Plea.** With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea.

**(3) Nolo Contendere Plea.** Before accepting a plea of nolo contendere, the court must consider the parties' views and the public interest in the effective administration of justice.

**(4) Failure to Enter a Plea.** If a defendant refuses to enter a plea or if a defendant organization fails to appear, the court must enter a plea of not guilty.

**(b) Considering and Accepting a Guilty or Nolo Contendere Plea.**

**(1) Advising and Questioning the Defendant.** Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

**(A)** the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

**(B)** the right to plead not guilty, or having already so pleaded, to persist in that plea;

**(C)** the right to a jury trial;

**(D)** the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;

ADD 2

**(E)** the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

**(F)** the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

**(G)** the nature of each charge to which the defendant is pleading;

**(H)** any maximum possible penalty, including imprisonment, fine, and term of supervised release;

**(I)** any mandatory minimum penalty;

**(J)** any applicable forfeiture;

**(K)** the court's authority to order restitution;

**(L)** the court's obligation to impose a special assessment;

**(M)** in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

**(N)** the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

**(O)** that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**(2) Ensuring That a Plea Is Voluntary.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

**(3) Determining the Factual Basis for a Plea.** Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

**(c) Plea Agreement Procedure.**

**(1) In General.** An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:

ADD 3

**(A)** not bring, or will move to dismiss, other charges;

**(B)** recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court); or

**(C)** agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

**(2) Disclosing a Plea Agreement.** The parties must disclose the plea agreement in open court when the plea is offered, unless the court for good cause allows the parties to disclose the plea agreement in camera.

**(3) Judicial Consideration of a Plea Agreement.**

**(A)** To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.

**(B)** To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.

**(4) Accepting a Plea Agreement.** If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.

**(5) Rejecting a Plea Agreement.** If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):

**(A)** inform the parties that the court rejects the plea agreement;

**(B)** advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

**(C)** advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

**(d) Withdrawing a Guilty or Nolo Contendere Plea.** A defendant may withdraw a plea of guilty or nolo contendere:

**(1)** before the court accepts the plea, for any reason or no reason; or

**(2)** after the court accepts the plea, but before it imposes sentence if:

**(A)** the court rejects a plea agreement under Rule 11(c)(5); or

**(B)** the defendant can show a fair and just reason for requesting the withdrawal.

**(e) Finality of a Guilty or Nolo Contendere Plea.** After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.

**(f) Admissibility or Inadmissibility of a Plea, Plea Discussions, and Related Statements.** The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410.

**(g) Recording the Proceedings.** The proceedings during which the defendant enters a plea must be recorded by a court reporter or by a suitable recording device. If there is a guilty plea or a nolo contendere plea, the record must include the inquiries and advice to the defendant required under Rule 11(b) and (c).

**(h) Harmless Error.** A variance from the requirements of this rule is harmless error if it does not affect substantial rights.

CREDIT(S)

(As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 22, 1974, eff. Dec. 1, 1975; July 31, 1975, Pub.L. 94-64, § 3(5)-(10), 89 Stat. 371, 372; Apr. 30, 1979, eff. Aug. 1, 1979, and Dec. 1, 1980; Apr. 28, 1982, eff. Aug. 1, 1982; Apr. 28, 1983, eff. Aug. 1, 1983; Apr. 29, 1985, eff. Aug. 1, 1985; Mar. 9, 1987, eff. Aug. 1, 1987; Nov. 18, 1988, Pub.L. 100-690, Title VII, § 7076, 102 Stat. 4406; Apr. 25, 1989, eff. Dec. 1, 1989; Apr. 26, 1999, eff. Dec. 1, 1999; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 16, 2013, eff. Dec. 1, 2013.)

## ADVISORY COMMITTEE NOTES
### 1944 Adoption

1. This rule is substantially a restatement of existing law and practice, 18 U.S.C. § 564 (Standing mute); Fogus v. United States, 34 F.2d 97, C.C.A.4th, (duty of court to ascertain that plea of guilty is intelligently and voluntarily made).

2. The plea of nolo contendere has always existed in the Federal courts. Hudson v. United States, 47 S.Ct. 127, 272 U.S. 451, 71 L.Ed. 347; United States v. Norris, 50 S.Ct. 424, 281 U.S. 619, 74 L.Ed. 1076. The use of the plea is recognized by the Probation Act, 18 U.S.C. former (now § 3651) 724. While at times criticized as theoretically lacking in logical basis, experience has shown that it performs a useful function from a practical standpoint.

### 1966 Amendments

The great majority of all defendants against whom indictments or informations are filed in the federal courts plead guilty. Only a comparatively small number go to trial. See United States Attorneys Statistical Report, Fiscal Year 1964, p. 1. The fairness and adequacy of the procedures on acceptance of pleas of guilty are of vital importance in according equal justice to all in the federal courts.

ADD.5

Three changes are made in the second sentence. The first change makes it clear that before accepting either a plea of guilty or nolo contendere the court must determine that the plea is made voluntarily with understanding of the nature of the charge. The second change expressly requires the court to address the defendant personally in the course of determining that the plea is made voluntarily and with understanding of the nature of the charge. The reported cases reflect some confusion over this matter. Compare *United States v. Diggs*, 304 F.2d 929 (6th Cir.1962); *Domenica v. United States*, 292 F.2d 483 (1st Cir.1961); *Gundlach v. United States*, 262 F.2d 72 (4th Cir.1958), cert. den., 360 U.S. 904 (1959); and *Julian v. United States*, 236 F.2d 155 (6th Cir.1956), which contain the implication that personal interrogation of the defendant is the better practice even when he is represented by counsel, with *Meeks v. United States*, 298 F.2d 204 (5th Cir.1962); *Nunley v. United States*, 294 F.2d 579 (10th Cir.1961), cert. den., 368 U.S. 991 (1962); and *United States v. Von der Heide*, 169 F.Supp. 560 (D.D.C.1959).

The third change in the second sentence adds the words "and the consequences of his plea" to state what clearly is the law. See, e.g., *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948); *Kerchevel v. United States*, 274 U.S. 220, 223 (1927); *Munich v. United States*, 337 F.2d 356 (9th Cir.1964); *Pilkington v. United States*, 315 F.2d 204 (4th Cir.1963); *Smith v. United States*, 324 F.2d 436 (D.C.Cir.1963); but cf. *Marvel v. United States*, 335 F.2d 101 (5th Cir.1964).

A new sentence is added at the end of the rule to impose a duty on the court in cases where the defendant pleads guilty to satisfy itself that there is a factual basis for the plea before entering judgment. The court should satisfy itself, by inquiry of the defendant or the attorney for the government, or by examining the presentence report, or otherwise, that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty. Such inquiry should, e.g., protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge. For a similar requirement see Mich.Stat.Ann. § 28.1058 (1954); Mich.Sup.Ct.Rule 35A; *In re Valle*, 364 Mich. 471, 110 N.W.2d 673 (1961); *People v. Barrows*, 358 Mich. 267, 99 N.W.2d 347 (1959); *People v. Bumpus*, 355 Mich. 374, 94 N.W.2d 854 (1959); *People v. Coates*, 337 Mich. 56, 59 N.W.2d 83 (1953). See also *Stinson v. United States*, 316 F.2d 554 (5th Cir.1963). The normal consequence of a determination that there is not a factual basis for the plea would be for the court to set aside the plea and enter a plea of not guilty.

For a variety of reasons it is desirable in some cases to permit entry of judgment upon a plea of nolo contendere without inquiry into the factual basis for the plea. The new third sentence is not, therefore, made applicable to pleas of nolo contendere. It is not intended by this omission to reflect any view upon the effect of a plea nolo contendere in relation to a plea of guilty. That problem has been dealt with by the courts. See e.g. *Lott v. United States*, 367 U.S. 421, 426 (1961).

### 1974 Amendments

The amendments to rule 11 are designed to achieve two principal objectives:

(1) Subdivision (c) prescribes the advice which the court must give to insure that the defendant who pleads guilty has made an informed plea.

(2) Subdivision (e) provides a plea agreement procedure designed to give recognition to the propriety of plea discussions; to bring the existence of a plea agreement out into the open in court; and to provide methods for court acceptance or rejection of a plea agreement.

Other less basic changes are also made. The changes are discussed in the order in which they appear in the rule.

Subdivision (b) retains the requirement that the defendant obtain the consent of the court in order to plead nolo contendere. It adds that the court shall, in deciding whether to accept the plea, consider the view of the prosecution and of the defense and also the larger public interest in the administration of criminal justice.

Although the plea of nolo contendere has long existed in the federal courts, *Hudson v. United States*, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347 (1926), the desirability of the plea has been a subject of disagreement. Compare Lane-Reticker, Nolo Contendere in North Carolina, 34 N.C.L.Rev. 280, 290-291 (1956), with Note, The Nature and Consequences of the Plea of Nolo Contendere, 33 Neb.L.Rev. 428, 434 (1954), favoring the plea. The American Bar Association Project on Standards for Criminal Justice takes the position that "the case for the nolo plea is not strong enough to justify a minimum standard supporting its use," but because "use of the plea contributes in some degree to the avoidance of unnecessary trials" it does not proscribe use of the plea. ABA, Standards Relating to Pleas of Guilty § 1.1(a) Commentary at 16 (Approved Draft, 1968).

A plea of nolo contendere is, for purposes of punishment, the same as the plea of guilty. See discussion of the history of the nolo plea in *North Carolina v. Alford*, 400 U.S. 25, 35-36 n. 8, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Note, The Nature and Consequences of the Plea of Nolo Contendere, 33 Neb.L.Rev. 428, 430 (1954). A judgment upon the plea is a conviction and may be used to apply multiple offender statutes. Lenvin and Meyers, *Nolo Contendere: Its Nature and Implications, 51 Yale L.J. 1255, 1265 (1942)*. Unlike a plea of guilty, however, it cannot be used against a defendant as an admission in a subsequent criminal or civil case. 4 Wigmore § 1066(4), at 58 (3d ed. 1940, Supp.1970); *Rules of Evidence for United States Courts and Magistrates, rule 803(22)* (Nov. 1971). See Lenvin and Meyers, *Nolo Contendere: Its Nature and Implications, 51 Yale L.J. 1255 (1942)*; ABA Standards Relating to Pleas of Guilty §§ 1.1(a) and (b), Commentary at 15-18 (Approved Draft, 1968).

The factors considered relevant by particular courts in determining whether to permit the plea of nolo contendere vary. Compare *United States v. Bagliore*, 182 F.Supp. 714, 716 (E.D.N.Y.1960), where the view is taken that the plea should be rejected unless a compelling reason for acceptance is established, with *United States v. Jones*, 119 F.Supp. 288, 290 (S.D.Cal.1954), where the view is taken that the plea should be accepted in the absence of a compelling reason to the contrary.

A defendant who desires to plead nolo contendere will commonly want to avoid pleading guilty because the plea of guilty can be introduced as an admission in subsequent civil litigation. The prosecution may oppose the plea of nolo contendere because it wants a definite resolution of the defendant's guilty or innocence either for correctional purposes or for reasons of subsequent litigation. ABA Standards Relating to Pleas of Guilty § 1.1(b) Commentary at 16-18 (Approved Draft, 1968). Under subdivision (b) of the new rule the balancing of the interests is left to the trial judge, who is mandated to take into account the larger public interest in the effective administration of justice.

Subdivision (c) prescribes the advice which the court must give to the defendant as a prerequisite to the acceptance of a plea of guilty. The former rule required that the court determine that the plea was made with "understanding of the nature of the charge and the consequences of the plea." The amendment identifies more specifically what must be explained to the defendant and also codifies, in the rule, the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which held that a defendant must be apprised of the fact that he relinquishes certain constitutional rights by pleading guilty.

Subdivision (c) retains the requirement that the court address the defendant personally. See *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). There is also an amendment to rule 43 to make clear that a defendant must be in court at the time of the plea.

Subdivision (c)(1) retains the current requirement that the court determine that the defendant understands the nature of the charge. This is a common requirement. See ABA Standards Relating to Pleas of Guilty § 1.4(a) (Approved Draft, 1968); Illinois Supreme Court Rule 402(a)(1) (1970), Ill.Rev.Stat.1973, ch. 110A, § 402(a)(1). The method by which the defendant's understanding of the nature of the charge is determined may vary from case to case, depending on the complexity of the circumstances and the particular defendant. In some cases, a judge may do this by reading the indictment and by explaining the elements of the offense to the defendants. Thompson, The Judge's Responsibility on a Plea of Guilty, 62 W.Va.L.Rev. 213, 220 (1960); Resolution of Judges of U.S. District Court for D.C., June 24, 1959.

ADD. 7

Former rule 11 required the court to inform the defendant of the "consequences of the plea." Subdivision (c)(2) changes this and requires instead that the court inform the defendant of and determine that he understands "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered." The objective is to insure that a defendant knows what minimum sentence the judge **must** impose and what maximum sentence the judge **may** impose. This information is usually readily ascertainable from the face of the statute defining the crime, and thus it is feasible for the judge to know specifically what to tell the defendant. Giving this advice tells a defendant the shortest mandatory sentence and also the longest possible sentence for the offense to which he is pleading guilty.

It has been suggested that it is desirable to inform a defendant of additional consequences which might follow from his plea of guilty. *Durant v. United States*, 410 F.2d 689 (1st Cir.1969), held that a defendant must be informed of his ineligibility for parole. *Trujillo v. United States*, 377 F.2d 266 (5th Cir.1967), cert. denied 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967), held that advice about eligibility for parole is not required. It has been suggested that a defendant be advised that a jury might find him guilty only of a lesser included offense. C. Wright, Federal Practice and Procedure: Criminal § 173 at 374 (1969). See contra *Dorrough v. United States*, 385 F.2d 887 (5th Cir.1967). The ABA Standards Relating to Pleas of Guilty § 1.4(c)(iii) (Approved Draft, 1968) recommend that the defendant be informed that he may be subject to additional punishment if the offense charged is one for which a different or additional punishment is authorized by reason of the defendant's previous conviction.

Under the rule the judge is not required to inform a defendant about these matters, though a judge is free to do so if he feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant. Currently, certain consequences of a plea of guilty, such as parole eligibility, may be so complicated that it is not feasible to expect a judge to clearly advise the defendant. For example, the judge may impose a sentence under 18 U.S.C. § 4202 making the defendant eligible for parole when he has served one third of the judicially imposed maximum; or, under 18 U.S.C. § 4208(a)(1), making parole eligibility after a specified period of time less than one third of the maximum; or, under 18 U.S.C. § 4208(a)(2), leaving eligibility to the discretion of the parole board. At the time the judge is required to advise the defendant of the consequences of his plea, the judge will usually not have seen the presentence report and thus will have no basis for giving a defendant any very realistic advice as to when he might be eligible for parole. Similar complications exist with regard to other, particularly collateral, consequences of a plea of guilty in a given case.

Subdivisions (c)(3) and (4) specify the constitutional rights that the defendant waives by a plea of guilty or nolo contendere. These subdivisions are designed to satisfy the requirements of understanding waiver set forth in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Subdivision (c)(3) is intended to require that the judge inform the defendant and determine that he understands that he waives his fifth amendment rights. The rule takes the position that the defendant's right not to incriminate himself is best explained in terms of his right to plead not guilty and to persist in that plea if it has already been made. This is language identical to that adopted in Illinois for the same purpose. See Illinois Supreme Court Rule 402(a)(3) (1970), Ill.Rev.Stat.1973, ch. 110A, § 402(a)(3).

Subdivision (c)(4) assumes that a defendant's right to have his guilt proved beyond a reasonable doubt and the right to confront his accusers are best explained by indicating that the right to trial is waived. Specifying that there will be no future trial of any kind makes this fact clear to those defendants who, though knowing they have waived trial by jury, are under the mistaken impression that some kind of trial will follow. Illinois has recently adopted similar language. Illinois Supreme Court Rule 402(a)(4) (1970), Ill.Rev.Stat.1973, ch. 110A, § 402(a)(4). In explaining to a defendant that he waives his right to trial, the judge may want to explain some of the aspects of trial such as the right to confront witnesses, to subpoena witnesses, to testify in his own behalf, or, if he chooses, not to testify. What is required, in this respect, to conform to *Boykin* is left to future case-law development.

Subdivision (d) retains the requirement that the court determine that a plea of guilty or nolo contendere is voluntary before accepting it. It adds the requirement that the court also inquire whether the defendant's willingness to plead guilty or nolo contendere results from prior plea discussions between the attorney for the government and the defendant or his attorney. See *Santobello v. New York*, 404 U.S. 257, 261-262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971): "The plea must, of course, be voluntary

and knowing and if it was induced by promises, the essence of those promises must in some way be made known." Subdivisions (d) and (e) afford the court adequate basis for rejecting an improper plea agreement induced by threats or inappropriate promises.

The new rule specifies that the court personally address the defendant in determining the voluntariness of the plea.

By personally interrogating the defendant, not only will the judge be better able to ascertain the plea's voluntariness, but he will also develop a more complete record to support his determination in a subsequent postconviction attack. * * * Both of these goals are undermined in proportion to the degree the district judge resorts to "assumptions" not based upon recorded responses to his inquiries. *McCarthy v. United States*, 394 U.S. 459, 466, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

Subdivision (e) provides a plea agreement procedure. In doing so it gives recognition to the propriety of plea discussions and plea agreements provided that they are disclosed in open court and subject to acceptance or rejection by the trial judge.

Although reliable statistical information is limited, one recent estimate indicated that guilty pleas account for the disposition of as many as 95% of all criminal cases. ABA Standards Relating to Pleas of Guilty, pp. 1-2 (Approved Draft, 1968). A substantial number of these are the result of plea discussions. The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 9 (1967); D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial 3 (1966); L. Weinreb, Criminal Process 437 (1969); Note, Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, 112 U.Pa.L.Rev. 865 (1964).

There is increasing acknowledgment of both the inevitability and the propriety of plea agreements. See, e.g., ABA Standards Relating to Pleas of Guilty § 3.1 (Approved Draft, 1968); Illinois Supreme Court Rule 402 (1970), Ill.Rev.Stat.1973, ch. 110A, § 402.

In *Brady v. United States*, 397 U.S. 742, 752-753, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the court said:

Of course, that the prevalence of guilty pleas is explainable does not necessarily validate those pleas or the system which produces them. But we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary.

In *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), the court said:

The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged.

Administratively, the criminal justice system has come to depend upon pleas of guilty and, hence, upon plea discussions. See, e.g., President's Commission on Law Enforcement and Administration of Justice, Task Force Report. The Courts 9 (1967); Note, Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, 112 U.Pa.L.Rev. 865 (1964). But expediency is not the basis for recognizing the propriety of a plea agreement practice. Properly implemented, a plea agreement procedure is consistent with both effective and just administration of the criminal law. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427. This is the conclusion reached in the ABA Standards Relating to Pleas of Guilty § 1.8 (Approved Draft, 1968); the ABA Standards Relating to The Prosecution Function and The Defense Function pp. 243-253 (Approved Draft, 1971); and the ABA Standards Relating to the Function of the Trial Judge, § 4.1 (App.Draft, 1972). The Supreme Court of California recently recognized the propriety of plea bargaining. See People v. West, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970). A plea agreement procedure has recently been decided in the District of Columbia Court of General Sessions upon the recommendation of the United States Attorney. See 51 F.R.D. 109 (1971).

ADD.9

Where the defendant by his plea aids in insuring prompt and certain application of correctional measures, the proper ends of the criminal justice system are furthered because swift and certain punishment serves the ends of both general deterrence and the rehabilitation of the individual defendant. Cf. Note, The Influence of the Defendant's Plea on Judicial Determination of Sentence, 66 Yale L.J. 204, 211 (1956). Where the defendant has acknowledged his guilt and shown a willingness to assume responsibility for his conduct, it has been thought proper to recognize this in sentencing. See also ALI, Model Penal Code § 7.01 (P.O.D.1962); NPPA Guides for Sentencing (1957). Granting a charge reduction in return for a plea of guilty may give the sentencing judge needed discretion, particularly where the facts of a case do not warrant the harsh consequences of a long mandatory sentence or collateral consequences which are unduly severe. A plea of guilty avoids the necessity of a public trial and may protect the innocent victim of a crime against the trauma of direct and cross-examination.

Finally, a plea agreement may also contribute to the successful prosecution of other more serious offenders. See D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial, chs. 2 and 3 (1966); Note, Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 881 (1964).

Where plea discussions and agreements are viewed as proper, it is generally agreed that it is preferable that the fact of the plea agreement be disclosed in open court and its propriety be reviewed by the trial judge.

We have previously recognized plea bargaining as an ineradicable fact. Failure to recognize it tends not to destroy it but to drive it underground. We reiterate what we have said before: that when plea bargaining occurs it ought to be spread on the record [The Bench Book prepared by the Federal Judicial Center for use by United States District Judges now suggests that the defendant be asked by the court "if he believes there is any understanding or if any predictions have been made to him concerning the sentence he will receive." Bench Book for United States District Judges, Federal Judicial Center (1969) at 1.05.3.] and publicly disclosed. United States v. Williams, 407 F.2d 940 (4th Cir.1969). * * * In the future we think that the district judges should not only make the general inquiry under Rule 11 as to whether the plea of guilty has been coerced or induced by promises, but should specifically inquire of counsel whether plea bargaining has occurred. Logically the general inquiry should elicit information about plea bargaining, but it seldom has in the past. Raines v. United, 423 F.2d 526, 530 (4th Cir.1970).

In the past, plea discussions and agreements have occurred in an informal and largely invisible manner. Enker, Perspectives on Plea Bargaining, in President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 108, 115 (1967). There has often been a ritual of denial that any promises have been made, a ritual in which judges, prosecutors, and defense counsel have participated. ABA Standards Relating to Pleas of Guilty § 3.1, Commentary at 60-69 (Approved Draft 1968); Task Force Report: The Courts 9. Consequently, there has been a lack of effective judicial review of the propriety of the agreements, thus increasing the risk of real or apparent unfairness. See ABA Standards Relating to Pleas of Guilty § 3.1, Commentary at 60 et seq.; Task Force Report: The Courts 9-13.

The procedure described in subdivision (e) is designed to prevent abuse of plea discussions and agreements by providing appropriate and adequate safeguards.

Subdivision (e)(1) specifies that the "attorney for the government and the attorney for the defendant or the defendant when acting pro se may" participate in plea discussions. The inclusion of "the defendant when acting pro se" is intended to reflect the fact that there are situations in which a defendant insists upon representing himself. It may be desirable that an attorney for the government not enter plea discussions with a defendant personally. If necessary, counsel can be appointed for purposes of plea discussions. (Subdivision (d) makes it mandatory that the court inquire of the defendant whether his plea is the result of plea discussions between him and the attorney for the government. This is intended to enable the court to reject an agreement reached by an unrepresented defendant unless the court is satisfied that acceptance of the agreement adequately protects the rights of the defendant and the interests of justice.) This is substantially the position of the ABA Standards Relating to Pleas of Guilty § 3.1(a), Commentary at 65-66 (Approved Draft, 1968). Apparently, it is the practice of most prosecuting attorneys to enter plea discussions only with defendant's counsel. Note, Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 904 (1964). Discussions without benefit of counsel increase the likelihood that such discussions

ADD-10

may be unfair. Some courts have indicated that plea discussions in the absence of defendant's attorney may be constitutionally prohibited. See *Anderson v. North Carolina*, 221 F.Supp. 930, 935 (W.D.N.C.1963); *Shape v. Sigler*, 230 F.Supp. 601, 606 (D.Neb.1964).

Subdivision (e)(1) is intended to make clear that there are four possible concessions that may be made in a plea agreement. First, the charge may be reduced to a lesser or related offense. Second, the attorney for the government may promise to move for dismissal of other charges. Third, the attorney for the government may agree to recommend or not oppose the imposition of a particular sentence. Fourth, the attorneys for the government and the defense may agree that a given sentence is an appropriate disposition of the case. This is made explicit in subdivision (e)(2) where reference is made to an agreement made "in the expectation that a specific sentence will be imposed." See Note, Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 898 (1964).

Subdivision (e)(1) prohibits the court from participating in plea discussions. This is the position of the ABA Standards Relating to Pleas of Guilty § 3.3(a) (Approved Draft, 1968).

It has been stated that it is common practice for a judge to participate in plea discussions. See D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial 32-52, 78-104 (1966); Note, Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 891, 905 (1964).

There are valid reasons for a judge to avoid involvement in plea discussions. It might lead the defendant to believe that he would not receive a fair trial, were there a trial before the same judge. The risk of not going along with the disposition apparently desired by the judge might induce the defendant to plead guilty, even if innocent. Such involvement makes it difficult for a judge to objectively assess the voluntariness of the plea. See ABA Standards Relating to Pleas of Guilty § 3.3(a), Commentary at 72-74 (Approved Draft, 1968); Note, Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 891-892 (1964); Comment, Official Inducements to Plead Guilty: Suggested Morals for a Marketplace, 32 U.Chi.L.Rev. 167, 180-183 (1964); Informal Opinion No. 779 ABA Professional Ethics Committee ("A judge should not be a party to advance arrangements for the determination of sentence, whether as a result of a guilty plea or a finding of guilt based on proof."), 51 A.B.A.J. 444 (1965). As has been recently pointed out:

The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. *United States ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244, 254 (S.D.N.Y.1966).

On the other hand, one commentator has taken the position that the judge may be involved in discussions either after the agreement is reached or to help elicit facts and an agreement. Enker, Perspectives on Plea Bargaining, in President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 108, 117-118 (1967).

The amendment makes clear that the judge should not participate in plea discussions leading to a plea agreement. It is contemplated that the judge may participate in such discussions as may occur when the plea agreement is disclosed in open court. This is the position of the recently adopted Illinois Supreme Court Rule 402(d)(1) (1970), Ill.Rev.Stat.1973, ch. 110A, § 402(d)(1). As to what may constitute "participation," contrast People v. Earegood, 12 Mich.App. 256, 268-269, 162 N.W.2d 802, 809-810 (1968), with Kruse v. State, 47 Wis.2d 460, 177 N.W.2d 322 (1970).

Subdivision (e)(2) provides that the judge shall require the disclosure of any plea agreement in open court. In People v. West, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970), the court said:

[T]he basis of the bargain should be disclosed to the court and incorporated in the record. * * *

Without limiting that court to those we set forth, we note four possible methods of incorporation: (1) the bargain could be stated orally and recorded by the court reporter, whose notes then must be preserved or transcribed; (2) the bargain could be set forth by the clerk in the minutes of the court; (3) the parties could file a written stipulation stating the terms of the bargain; (4) finally, counsel or the court itself may find it useful to prepare and utilize forms for the recordation of plea bargains. 91 Cal.Rptr. 393, 394, 477 P.2d at 417, 418.

The District of Columbia Court of General Sessions is using a "Sentence-Recommendation Agreement" form.

Upon notice of the plea agreement, the court is given the option to accept or reject the agreement or defer its decision until receipt of the presentence report.

The judge may, and often should, defer his decision until he examines the presentence report. This is made possible by rule 32 which allows a judge, with the defendant's consent, to inspect a presentence report to determine whether a plea agreement should be accepted. For a discussion of the use of conditional plea acceptance, see ABA Standards Relating to Pleas of Guilty § 3.3(b), Commentary at 74-76, and Supplement, Proposed Revisions § 3.3(b) at 2-3 (Approved Draft, 1968); Illinois Supreme Court Rule 402(d)(2) (1970), Ill.Rev.Stat.1973, ch. 110A, § 402(d)(2).

The plea agreement procedure does not attempt to define criteria for the acceptance or rejection of a plea agreement. Such a decision is left to the discretion of the individual trial judge.

Subdivision (e)(3) makes it mandatory, if the court decides to accept the plea agreement, that it inform the defendant that it will embody in the judgment and sentence the disposition provided in the plea agreement, or one more favorable to the defendant. This serves the purpose of informing the defendant immediately that the agreement will be implemented.

Subdivision (e)(4) requires the court, if it rejects the plea agreement, to inform the defendant of this fact and to advise the defendant personally, in open court, that the court is not bound by the plea agreement. The defendant must be afforded an opportunity to withdraw his plea and must be advised that if he persists in his guilty plea or plea of nolo contendere, the disposition of the case may be less favorable to him than that contemplated by the plea agreement. That the defendant should have the opportunity to withdraw his plea if the court rejects the plea agreement is the position taken in ABA Standards Relating to Pleas of Guilty, Supplement, Proposed Revisions § 2.1(a)(ii)(5) (Approved Draft, 1968). Such a rule has been adopted in Illinois. Illinois Supreme Court Rule 402(d)(2) (1970), Ill.Rev.Stat.1973, ch. 110A, § 402(d)(2).

If the court rejects the plea agreement and affords the defendant the opportunity to withdraw the plea, the court is not precluded from accepting a guilty plea from the same defendant at a later time, when such plea conforms to the requirements of rule 11.

Subdivision (e)(5) makes it mandatory that, except for good cause shown, the court be notified of the existence of a plea agreement at the arraignment or at another time prior to trial fixed by the court. Having a plea entered at this stage provides a reasonable time for the defendant to consult with counsel and for counsel to complete any plea discussions with the attorney for the government. ABA Standards Relating to Pleas of Guilty § 1.3 (Approved Draft, 1968). The objective of the provision is to make clear that the court has authority to require a plea agreement to be disclosed sufficiently in advance of trial so as not to interfere with the efficient scheduling of criminal cases.

Subdivision (e)(6) is taken from rule 410, Rules of Evidence for United States Courts and Magistrates (Nov.1971). See Advisory Committee Note thereto. See also the ABA Standards Relating to Pleas of Guilty § 2.2 (Approved Draft, 1968); Illinois Supreme Court Rule 402(f) (1970), Ill.Rev.Stat.1973, ch. 110A, § 402(f).

ADD 12

Subdivision (f) retains the requirement of old rule 11 that the court should not enter judgment upon a plea of guilty without making such an inquiry as will satisfy it that there is a factual basis for the plea. The draft does not specify that any particular type of inquiry be made. See *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971): "Fed.Rule Crim.Proc. 11, governing pleas in federal courts, now makes clear that the sentencing judge must develop, **on the record,** the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge." An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case. This is the position of the ABA Standards Relating to Pleas of Guilty § 1.6 (Approved Draft, 1968). Where inquiry is made of the defendant himself it may be desirable practice to place the defendant under oath. With regard to a determination that there is a factual basis for a plea of guilty to a "lesser or related offense," compare ABA Standards Relating to Pleas of Guilty § 3.1(b)(ii), Commentary at 67-68 (Approved Draft, 1968), with ALI, Model Penal Code § 1.07(5) (P.O.D.1962). The rule does not speak directly to the issue of whether a judge may accept a plea of guilty where there is a factual basis for the plea but the defendant asserts his innocence. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The procedure in such case would seem to be to deal with this as a plea of nolo contendere, the acceptance of which would depend upon the judge's decision as to whether acceptance of the plea is consistent with "the interest of the public in the effective administration of justice" [new rule 11(b) ]. The defendant who asserts his innocence while pleading guilty or nolo contendere is often difficult to deal with in a correctional setting, and it may therefore be preferable to resolve the issue of guilt or innocence at the trial stage rather than leaving that issue unresolved, thus complicating subsequent correctional decisions. The rule is intended to make clear that a judge may reject a plea of nolo contendere and require the defendant either to plead not guilty or to plead guilty under circumstances in which the judge is able to determine that the defendant is in fact guilty of the crime to which he is pleading guilty.

Subdivision (g) requires that a verbatim record be kept of the proceedings. If there is a plea of guilty or nolo contendere, the record must include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea and the plea agreement, and the inquiry into the accuracy of the plea. Such a record is important in the event of a postconviction attack. ABA Standards Relating to Pleas of Guilty § 1.7 (Approved Draft, 1968). A similar requirement was adopted in Illinois: Illinois Supreme Court Rule 402(e) (1970), Ill.Rev.Stat.1973, ch. 110A, § 402(e).

**1975 Enactment**

**A. Amendments Proposed by the Supreme Court.** Rule 11 of the Federal Rules of Criminal Procedure deals with pleas. The Supreme Court has proposed to amend this rule extensively.

Rule 11 provides that a defendant may plead guilty, not guilty, or nolo contendere. The Supreme Court's amendments to Rule 11(b) provide that a nolo contendere plea "shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice."

The Supreme Court amendments to Rule 11(c) spell out the advice that the court must give to the defendant before accepting the defendant's plea of guilty or nolo contendere. The Supreme Court amendments to Rule 11(d) set forth the steps that the court must take to insure that a guilty or nolo contendere plea has been voluntarily made.

The Supreme Court amendments to Rule 11(e) establish a plea agreement procedure. This procedure permits the parties to discuss disposing of a case without a trial and sets forth the type of agreements that the parties can reach concerning the disposition of the case. The procedure is not mandatory; a court is free not to permit the parties to present plea agreements to it.

The Supreme Court amendments to Rule 11(f) require that the court, before entering judgment upon a plea of guilty, satisfy itself that "there is a factual basis for the plea." The Supreme Court amendments to Rule 11(g) require that a verbatim record be kept of the proceedings at which the defendant enters a plea.

ADD13

**B. Committee Action.** The proposed amendments to Rule 11, particularly those relating to the plea negotiating procedure, have generated much comment and criticism. No observer is entirely happy that our criminal justice system must rely to the extent it does on negotiated dispositions of cases. However, crowded court dockets make plea negotiating a fact that the Federal Rules of Criminal Procedure should contend with. The Committee accepts the basic structure and provisions of Rule 11(e).

Rule 11(e) as proposed permits each federal court to decide for itself the extent to which it will permit plea negotiations to be carried on within its own jurisdiction. No court is compelled to permit any plea negotiations at all. Proposed Rule 11(e) regulates plea negotiations and agreements if, and to the extent that, the court permits such negotiations and agreements. [Proposed Rule 11(e) has been criticized by some federal judges who read it to mandate the court to permit plea negotiations and the reaching of plea agreements. The Advisory Committee stressed during its testimony that the rule does not mandate that a court permit any form of plea agreement to be presented to it. See, e.g., the remarks of United States Circuit Judge William H. Webster in Hearings II, at 196. See also the exchange of correspondence between Judge Webster and United States District Judge Frank A. Kaufman in Hearings II, at 289-90.]

Proposed Rule 11(e) contemplates 4 different types of plea agreements. First, the defendant can plead guilty or nolo contendere in return for the prosecutor's reducing the charge to a less serious offense. Second, the defendant can plead guilty or nolo contendere in return for the prosecutor dropping, or not bringing, a charge or charges relating to other offenses. Third, the defendant can plead guilty or nolo contendere in return for the prosecutor's recommending a sentence. Fourth, the defendant and prosecutor can agree that a particular sentence is the appropriate disposition of the case. [It is apparent, though not explicitly stated, that Rule 11(e) contemplates that the plea agreement may bind the defendant to do more than just plead guilty or nolo contendere. For example, the plea agreement may bind the defendant to cooperate with the prosecution in a different investigation. The Committee intends by its approval of Rule 11(e) to permit the parties to agree on such terms in a plea agreement.]

The Committee added language in subdivisions (e)(2) and (e)(4) to permit a plea agreement to be disclosed to the court, or rejected by it, in camera. There must be a showing of good cause before the court can conduct such proceedings in camera. The language does not address itself to whether the showing of good cause may be made in open court or in camera. That issue is left for the courts to resolve on a case-by-case basis. These changes in subdivisions (e)(2) and (e)(4) will permit a fair trial when there is substantial media interest in a case and the court is rejecting a plea agreement.

The Committee added an exception to subdivision (e)(6). That subdivision provides:

Evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

The Committee's exception permits the use of such evidence in a perjury or false statement prosecution where the plea, offer, or related statement was made by the defendant on the record, under oath and in the presence of counsel. The Committee recognizes that even this limited exception may discourage defendants from being completely candid and open during plea negotiations and may even result in discouraging the reaching of plea agreements. However, the Committee believes that, on balance, it is more important to protect the integrity of the judicial process from willful deceit and untruthfulness. [The Committee does not intend its language to be construed as mandating or encouraging the swearing-in of the defendant during proceedings in connection with the disclosure and acceptance or rejection of a plea agreement.]

The Committee recast the language of Rule 11(c), which deals with the advice given to a defendant before the court can accept his plea of guilty or nolo contendere. The Committee acted in part because it believed that the warnings given to the defendant ought to include those that Boykin v. Alabama, 395 U.S. 238 (1969), said were constitutionally required. In addition, and as a result of its change in subdivision (e)(6), the Committee thought it only fair that the defendant be warned that his plea of guilty (later withdrawn) or nolo contendere, or his offer of either plea, or his statements made in connection with such pleas

or offers, could later be used against him in a perjury trial if made under oath, on the record, and in the presence of counsel. House Report No. 94-247.

**Note to Subdivision (c).** Rule 11(c) enumerates certain things that a judge must tell a defendant before the judge can accept that defendant's plea of guilty or nolo contendere. The House version expands upon the list originally proposed by the Supreme Court. The Senate version adopts the Supreme Court's proposal.

The Conference adopts the House provision.

**Note to Subdivision (e)(1).** Rule 11(e)(1) outlines some general considerations concerning the plea agreement procedure. The Senate version makes nonsubstantive change in the House version.

The Conference adopts the Senate provision.

**Note to Subdivision (e)(6).** Rule 11(e)(6) deals with the use of statements made in connection with plea agreements. The House version permits a limited use of pleas of guilty, later withdrawn, or nolo contendere, offers of such pleas, and statements made in connection with such pleas or offers. Such evidence can be used in a perjury or false statement prosecution if the plea, offer, or related statement was made under oath, on the record, and in the presence of counsel. The Senate version permits evidence of voluntary and reliable statements made in court on the record to be used for the purpose of impeaching the credibility of the declarant or in a perjury or false statement prosecution.

The Conference adopts the House version with changes. The Conference agrees that neither a plea nor the offer of a plea ought to be admissible for any purpose. The Conference-adopted provision, therefore, like the Senate provision, permits only the use of statements made in connection with a plea of guilty, later withdrawn, or a plea of nolo contendere, or in connection with an offer of a guilty or nolo contendere plea. House Report No. 94-414.

**1979 Amendments**

**Note to Subdivision (e)(2).** The amendment to rule 11(e) (2) is intended to clarify the circumstances in which the court may accept or reject a plea agreement, with the consequences specified in subdivision (e) (3) and (4). The present language has been the cause of some confusion and has led to results which are not entirely consistent. *Compare United States v. Sarubbi*, 416 F.Supp. 633 (D.N.J.1976); with *United States v. Hull*, 413 F.Supp. 145 (E.D.Tenn.1976).

Rule 11(e) (1) specifies three types of plea agreements, namely, those in which the attorney for the government might

**(A)** move for dismissal of other charges; or

**(B)** make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

**(C)** agree that a specific sentence is the appropriate disposition of the case.

A (B) type of plea agreement is clearly of a different order than the other two, for an agreement to recommend or not to oppose is discharged when the prosecutor performs as he agreed to do. By comparison, critical to a type (A) or (C) agreement is that the defendant receive the contemplated charge dismissal or agreed-to sentence. Consequently, there must ultimately be an acceptance or rejection by the court of a type (A) or (C) agreement so that it may be determined whether the defendant shall receive the bargained-for concessions or shall instead be afforded an opportunity to withdraw his plea. But this is not so as to a type (B) agreement; there is no "disposition provided for" in such a plea agreement so as to make the acceptance provisions of subdivision (e)(3) applicable, nor is there a need for rejection with opportunity for withdrawal under subdivision (e)(4) in light

of the fact that the defendant knew the nonbinding character of the recommendation or request. *United States v. Henderson*, 565 F.2d 1119 (9th Cir. 1977); *United States v. Savage*, 561 F.2d 554 (4th Cir. 1977).

Because a type (B) agreement is distinguishable from the others in that it involves only a recommendation or request not binding upon the court, it is important that the defendant be aware that this is the nature of the agreement into which he has entered. The procedure contemplated by the last sentence of amended subdivision (e) (2) will establish for the record that there is such awareness. This provision conforms to ABA Standards Relating to Pleas of Guilty § 1.5 (Approved Draft, 1968), which provides that "the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court."

Sometimes a plea agreement will be partially but not entirely of the (B) type, as where a defendant, charged with counts 1, 2, and 3, enters into an agreement with the attorney for the government wherein it is agreed that if defendant pleads guilty to count 1, the prosecutor will recommend a certain sentence as to that count and will move for dismissal of counts 2 and 3. In such a case, the court must take particular care to ensure that the defendant understands which components of the agreement involve only a (B) type recommendation and which do not. In the above illustration, that part of the agreement which contemplates the dismissal of counts 2 and 3 is an (A) type agreement, and thus under rule 11(e) the court must either accept the agreement to dismiss these counts or else reject it and allow the defendant to withdraw his plea. If rejected, the defendant must be allowed to withdraw the plea on count 1 even if the type (B) promise to recommend a certain sentence on that count is kept, for a multi-faceted plea agreement is nonetheless a single agreement. On the other hand, if counts 2 and 3 are dismissed and the sentence recommendation is made, then the defendant is not entitled to withdraw his plea even if the sentence recommendation is not accepted by the court, for the defendant received all he was entitled to under the various components of the plea agreement.

**Note to Subdivision (e)(6).** The major objective of the amendment to rule 11(e)(6) is to describe more precisely, consistent with the original purpose of the provision, what evidence relating to pleas or plea discussions is inadmissible. The present language is susceptible to interpretation which would make it applicable to a wide variety of statements made under various circumstances other than within the context of those plea discussions authorized by rule 11(e) and intended to be protected by subdivision (e) (6) of the rule. See *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977), discussed herein.

Fed.R.Ev. 410, as originally adopted by Pub.L. 93-595, provided in part that "evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer." (This rule was adopted with the proviso that it "shall be superseded by any amendment to the Federal Rules of Criminal Procedure which is inconsistent with this rule.") As the Advisory Committee Note explained: "Exclusion of offers to plead guilty or nolo has as its purpose the promotion of disposition of criminal cases by compromise." The amendment of Fed.R.Crim.P. 11, transmitted to Congress by the Supreme Court in April 1974, contained a subdivision (e) (6) essentially identical to the rule 410 language quoted above, as a part of a substantial revision of rule 11. The most significant feature of this revision was the express recognition given to the fact that the "attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching" a plea agreement. Subdivision (e) (6) was intended to encourage such discussions. As noted in H.R.Rep. No. 94-247, 94th Cong., 1st Sess. 7 (1975), the purpose of subdivision (e) (6) is to not "discourage defendants from being completely candid and open during plea negotiations." Similarly, H.R.Rep. No. 94-414, 94th Cong., 1st Sess. 10 (1975), states that "Rule 11e(6) deals with the use of statements made in connection with plea agreements." (Rule 11(e) (6) was thereafter enacted, with the addition of the proviso allowing use of statements in a prosecution for perjury, and with the qualification that the inadmissible statements must also be "relevant to" the inadmissible pleas or offers. Pub.L. 94-64; Fed.R.Ev. 410 was then amended to conform. form. Pub.L. 94-149.)

While this history shows that the purpose of Fed.R.Ev. 410 and Fed.R.Crim.P. 11(e) (6) is to permit the unrestrained candor which produces effective plea discussions between the "attorney for the government and the attorney for the defendant or the defendant when acting pro se," given visibility and sanction in rule 11(e), a literal reading of the language of these two rules

could reasonably lead to the conclusion that a broader rule of inadmissibility obtains. That is, because "statements" are generally inadmissible if "made in connection with, and relevant to" an "offer to plead guilty," it might be thought that an otherwise voluntary admission to law enforcement officials is rendered inadmissible merely because it was made in the hope of obtaining leniency by a plea. Some decisions interpreting rule 11(e)(6) point in this direction. See *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977) (defendant in custody of two postal inspectors during continuance of removal hearing instigated conversation with them and at some point said he would plead guilty to armed robbery if the murder charge was dropped; one inspector stated they were not "in position" to make any deals in this regard; held, defendant's statement inadmissible under rule 11(e) (6) because the defendant "made the statements during the course of a conversation in which he sought concessions from the government in return for a guilty plea"); *United States v. Brooks*, 536 F.2d 1137 (6th Cir. 1976) (defendant telephoned postal inspector and offered to plead guilty if he got 2-year maximum; statement inadmissible).

The amendment makes inadmissible statements made "in the course of any proceedings under this rule regarding" either a plea of guilty later withdrawn or a plea of nolo contendere, and also statements "made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." It is not limited to statements by the defendant himself, and thus would cover statements by defense counsel regarding defendant's incriminating admissions to him. It thus fully protects the plea discussion process authorized by rule 11 without attempting to deal with confrontations between suspects and law enforcement agents, which involve problems of quite different dimensions. See, e.g., ALI Model Code of Pre-Arraignment Procedure, art. 140 and § 150.2(8) (Proposed Official Draft, 1975) (latter section requires exclusion if "a law enforcement officer induces any person to make a statement by promising leniency"). This change, it must be emphasized, does not compel the conclusion that statements made to law enforcement agents, especially when the agents purport to have authority to bargain, are inevitably admissible. Rather, the point is that such cases are not covered by the per se rule of 11(e) (6) and thus must be resolved by that body of law dealing with police interrogations.

If there has been a plea of guilty later withdrawn or a plea of nolo contendere, subdivision (e) (6) (C) makes inadmissible statements made "in the course of any proceedings under this rule" regarding such pleas. This includes, for example, admissions by the defendant when he makes his plea in court pursuant to rule 11 and also admissions made to provide the factual basis pursuant to subdivision (f). However, subdivision (e) (6) (C) is not limited to statements made in court. If the court were to defer its decision on a plea agreement pending examination of the presentence report, as authorized by subdivision (e) (2), statements made to the probation officer in connection with the preparation of that report would come within this provision.

This amendment is fully consistent with all recent and major law reform efforts on this subject. ALI Model Code of Pre-Arraignment Procedure § 350.7 (Proposed Official Draft, 1975), and ABA Standards Relating to Pleas of Guilty § 3.4 (Approved Draft, 1968) both provide:

> Unless the defendant subsequently enters a plea of guilty or nolo contendere which is not withdrawn, the fact that the defendant or his counsel and the prosecuting attorney engaged in plea discussions or made a plea agreement should not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings.

The Commentary to the latter states:

> The above standard is limited to discussions and agreements with the prosecuting attorney. Sometimes defendants will indicate to the police their willingness to bargain, and in such instances these statements are sometimes admitted in court against the defendant. *State v. Christian*, 245 S.W.2d 895 (Mo.1952). If the police initiate this kind of discussion, this may have some bearing on the admissibility of the defendant's statement. However, the policy considerations relevant to this issue are better dealt with in the context of standards governing in-custody interrogation by the police.

Similarly, Unif.R.Crim.P. 441(d) (Approved Draft, 1974), provides that except under limited circumstances "no discussion between the parties or statement by the defendant or his lawyer under this Rule," i.e., the rule providing "the parties may meet to

ADD. 17

discuss the possibility of pretrial diversion * * * or of a plea agreement," are admissible. The amendment is likewise consistent with the typical state provision on this subject; see, e.g., Ill.S.Ct. Rule 402(f).

The language of the amendment identifies with more precision than the present language the necessary relationship between the statements and the plea or discussion. See the dispute between the majority and concurring opinions in *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977), concerning the meanings and effect of the phrases "connection to" and "relevant to" in the present rule. Moreover, by relating the statements to "plea discussions" rather than "an offer to plead," the amendment ensures "that even an attempt to open plea bargaining [is] covered under the same rule of inadmissibility." *United States v. Brooks*, 536 F.2d 1137 (6th Cir. 1976).

The last sentence of Rule 11(e) (6) is amended to provide a second exception to the general rule of nonadmissibility of the described statements. Under the amendment, such a statement is also admissible "in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it." This change is necessary so that, when evidence of statements made in the course of or as a consequence of a certain plea or plea discussions are introduced under circumstances not prohibited by this rule (e.g., not "against" the person who made the plea), other statements relating to the same plea or plea discussions may also be admitted when relevant to the matter at issue. For example, if a defendant upon a motion to dismiss a prosecution on some ground were able to admit certain statements made in aborted plea discussions in his favor, then other relevant statements made in the same plea discussions should be admissible against the defendant in the interest of determining the truth of the matter at issue. The language of the amendment follows closely that in Fed.R.Evid. 106, as the considerations involved are very similar.

The phrase "in any civil or criminal proceeding" has been moved from its present position, following the word "against," for purposes of clarity. An ambiguity presently exists because the word "against" may be read as referring either to the kind of proceeding in which the evidence is offered or the purpose for which it is offered. The change makes it clear that the latter construction is correct. No change is intended with respect to provisions making evidence rules inapplicable in certain situations. See, e.g., Fed.R.Evid. 104(a) and 1101(d).

Unlike ABA Standards Relating to Pleas of Guilty § 3.4 (Approved Draft, 1968), and ALI Model Code of Pre-Arraignment Procedure § 350.7 (Proposed Official Draft, 1975), rule 11(e) (6) does not also provide that the described evidence is inadmissible "in favor of" the defendant. This is not intended to suggest, however, that such evidence will inevitably be admissible in the defendant's favor. Specifically, no disapproval is intended of such decisions as *United States v. Verdoorn*, 528 F.2d 103 (8th Cir. 1976), holding that the trial judge properly refused to permit the defendants to put into evidence at their trial the fact the prosecution had attempted to plea bargain with them, as "meaningful dialogue between the parties would, as a practical matter, be impossible if either party had to assume the risk that plea offers would be admissible in evidence."

**1982 Amendments**

**Subdivision (c)(1).** Subdivision (c)(1) has been amended by specifying "the effect of any special parole term" as one of the matters about which a defendant who has tendered a plea of guilty or nolo contendere is to be advised by the court. This amendment does not make any change in the law, as the courts are in agreement that such advice is presently required by Rule 11. See, e.g., *Moore v. United States*, 592 F.2d 753 (4th Cir. 1979); *United States v. Eaton*, 579 F.2d 1181 (10th Cir. 1978); *Richardson v. United States*, 577 F.2d 447 (8th Cir. 1978); *United States v. Del Prete*, 567 F.2d 928 (9th Cir. 1978); *United States v. Watson*, 548 F.2d 1058 (D.C.Cir.1977); *United States v. Crusco*, 536 F.2d 21 (2d Cir.1976); *United States v. Yazbeck*, 524 F.2d 641 (1st Cir. 1975); *United States v. Wolak*, 510 F.2d 164 (6th Cir. 1975). In *United States v. Timmreck*, 441 U.S. 780 (1979), 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), the Supreme Court assumed that the judge's failure in that case to describe the mandatory special parole term constituted "a failure to comply with the formal requirements of the Rule."

The purpose of the amendment is to draw more specific attention to the fact that advice concerning special parole terms is a necessary part of Rule 11 procedure. As noted in *Moore v. United States*, supra:

ADD.18

Special parole is a significant penalty. * * * Unlike ordinary parole, which does not involve supervision beyond the original prison term set by the court and the violation of which cannot lead to confinement beyond that sentence, special parole increases the possible period of confinement. It entails the possibility that a defendant may have to serve his original sentence plus a substantial additional period, without credit for time spent on parole. Explanation of special parole in open court is therefore essential to comply with the Rule's mandate that the defendant be informed of "the maximum possible penalty provided by law."

As the aforecited cases indicate, in the absence of specification of the requirement in the rule it has sometimes happened that such advice has been inadvertently omitted from Rule 11 warnings.

The amendment does not attempt to enumerate all of the characteristics of the special parole term which the judge ought to bring to the defendant's attention. Some flexibility in this respect must be preserved although it is well to note that the unique characteristics of this kind of parole are such that they may not be readily perceived by laymen. *Moore v. United States supra*, recommends that in an appropriate case the judge inform the defendant and determine that he understands the following:

**(1)** that a special parole term will be added to any prison sentence he receives;

**(2)** the minimum length of the special parole term that must be imposed and the absence of a statutory maximum;

**(3)** that special parole is entirely different from--and in addition to--ordinary parole; and

**(4)** that if the special parole is violated, the defendant can be returned to prison for the remainder of his sentence and the full length of his special parole term.

The amendment should not be read as meaning that a failure to comply with this particular requirement will inevitably entitle the defendant to relief. See *United States v. Timmreck, supra*. Likewise, the amendment makes no change in the existing law to the effect that many aspects of traditional parole need not be communicated to the defendant by the trial judge under the umbrella of Rule 11. For example, a defendant need not be advised of all conceivable consequences such as when he may be considered for parole or that, if he violates his parole, he will again be imprisoned.

*Bunker v. Wise*, 550 F.2d 1155, 1158 (9th Cir. 1977).

**Subdivision (c)(4).** The amendment to subdivision (c)(4) is intended to overcome the present conflict between the introductory language of subdivision (c), which contemplates the advice being given "[b]efore accepting a plea of guilty or nolo contendere," and thus presumably after the plea has been tendered, and the "if he pleads" language of subdivision (c)(4) which suggests the plea has not been tendered.

As noted by Judge Doyle in *United States v. Sinagub*, 468 F.Supp. 353 (W.D.Wis.1979):

Taken literally, this wording of subsection (4) of 11(c) suggests that before eliciting any plea at an arraignment, the court is required to insure that a defendant understands that if he or she pleads guilty or nolo contendere, the defendant will be waiving the right to trial. Under subsection (3) of 11(c), however, there is no requirement that at this pre-plea stage, the court must insure that the defendant understands that he or she enjoys the right to a trial and, at trial, the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself. It would be incongruous to require that at the pre-plea stage the court insure that the defendant understands that if he enters a plea of guilty or nolo contendere he will be waiving a right, the existence and nature of which need not be explained until after such a plea has been entered. I conclude that the insertion of the words "that if he pleads guilty or nolo contendere," as they appear in subsection (4) of 11(c), was an accident of draftsmanship which occurred in the course of Congressional rewriting of 11(c) as it has been approved by the Supreme Court. Those words are to be construed consistently

with the words "Before accepting a plea of guilty or nolo contendere," as they appear in the opening language of 11(c), and consistently with the omission of the words "that if he pleads" from subsections (1), (2), and (3) of 11(c). That is, as they appear in subsection (4) of 11(c), the words, "that if he pleads guilty or nolo contendere" should be construed to mean "that if his plea of guilty or nolo contendere is accepted by the court."

Although this is a very logical interpretation of the present language, the amendment will avoid the necessity to engage in such analysis in order to determine the true meaning of subdivision (c) (4).

**Subdivision (c)(5).** Subdivision (c)(5), in its present form, may easily be read as contemplating that in every case in which a plea of guilty or nolo contendere is tendered, warnings must be given about the possible use of defendant's statements, obtained under oath, on the record and in the presence of counsel, in a later prosecution for perjury or false statement. The language has prompted some courts to reach the remarkable result that a defendant who pleads guilty or nolo contendere without receiving those warnings must be allowed to overturn his plea on appeal even though he was never questioned under oath, on the record, in the presence of counsel about the offense to which he pleaded. *United States v. Artis, No. 78-5012* (4th Cir. March 12, 1979); *United States v. Boone*, 543 F.2d 1090 (4th Cir. 1976). Compare *United States v. Michaelson*, 552 F.2d 472 (2d Cir. 1977) (failure to give subdivision (c) (5) warnings not a basis for reversal, "at least when, as here, defendant was not put under oath before questioning about his guilty plea"). The present language of subdivision (c) (5) may also have contributed to the conclusion, not otherwise supported by the rule, that "Rule 11 requires that the defendant be under oath for the entirety of the proceedings" conducted pursuant to that rule and that failure to place the defendant under oath would itself make necessary overturning the plea on appeal. *United States v. Aldridge*, 553 F.2d 922 (5th Cir. 1977).

When questioning of the kind described in subdivision (c) (5) is not contemplated by the judge who is receiving the plea, no purpose is served by giving the (c) (5) warnings, which in such circumstances can only confuse the defendant and detract from the force of the other warnings required by Rule 11. As correctly noted in *United States v. Sinagub, supra*,

subsection (5) of section (c) of Rule 11 is qualitatively distinct from the other sections of the Rule. It does not go to whether the plea is knowingly or voluntarily made, nor to whether the plea should be accepted and judgment entered. Rather, it does go to the possible consequences of an event which may or may not occur during the course of the arraignment hearing itself, namely, the administration of an oath to the defendant. Whether this event is to occur is wholly within the control of the presiding judge. If the event is not to occur it is pointless to inform the defendant of its consequences. If a presiding judge intends that an oath not be administered to a defendant during an arraignment hearing, but alters that intention at some point, only then would the need arise to inform the defendant of the possible consequences of the administration of the oath.

The amendment to subdivision (c) (5) is intended to make it clear that this is the case.

The amendment limits the circumstances in which the warnings must be given, but does not change the fact as noted in Sinagub that these warnings are "qualitatively distinct" from the other advice required by Rule 11(c). This being the case, a failure to give the subdivision (c) (5) warnings even when the defendant was questioned under oath, on the record and in the presence of counsel would in no way affect the validity of the defendant's plea. Rather, this failure bears upon the admissibility of defendant's answers pursuant to subdivision (e) (6) in a later prosecution for perjury or false statement.

## 1983 Amendments

**Rule 11(a).** There are many defenses, objections and requests which a defendant must ordinarily raise by pretrial motion. See, e.g., 18 U.S.C. § 3162(a)(2); Fed.R.Crim.P. 12(b). Should that motion be denied, interlocutory appeal of the ruling by the defendant is seldom permitted. See *United States v. MacDonald*, 435 U.S. 850 (1978) (defendant may not appeal denial of his motion to dismiss based upon Sixth Amendment speedy trial grounds); *DiBella v. United States*, 369 U.S. 121 (1962) (defendant may not appeal denial of pretrial motion to suppress evidence); compare *Abney v. United States*, 431 U.S. 651 (1977)

ADD-20

(interlocutory appeal of denial of motion to dismiss on double jeopardy grounds permissible). Moreover, should the defendant thereafter plead guilty or nolo contendere, this will usually foreclose later appeal with respect to denial of the pretrial motion. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, (1973). Though a nolo plea differs from a guilty plea in other respects, it is clear that it also constitutes a waiver of all nonjurisdictional defects in a manner equivalent to a guilty plea. *Lott v. United States*, 367 U.S. 421 (1961).

As a consequence, a defendant who has lost one or more pretrial motions will often go through an entire trial simply to preserve the pretrial issues for later appellate review. This results in a waste of prosecutorial and judicial resources, and causes delay in the trial of other cases, contrary to the objectives underlying the Speedy Trial Act of 1974, 18 U.S.C. § 3161 et seq. These unfortunate consequences may be avoided by the conditional plea device expressly authorized by new subdivision (a)(2).

The development of procedures to avoid the necessity for trials which are undertaken for the sole purpose of preserving pretrial objections has been consistently favored by the commentators. See ABA Standards Relating to the Administration of Criminal Justice, standard 21-1.3(c) (2d ed. 1978); Model Code of Pre-Arraignment Procedure § SS 290.1(4)(b) (1975); Uniform Rules of Criminal Procedure, rule 444(d) (Approved Draft, 1974); 1 C. Wright, Federal Practice and Procedure--Criminal § 175 (1969); 3 W. LaFave, Search and Seizure § 11.1 (1978). The Supreme Court has characterized the New York practice, whereby appeals from suppression motions may be appealed notwithstanding a guilty plea, as a "commendable effort to relieve the problem of congested trial calendars in a manner that does not diminish the opportunity for the assertion of rights guaranteed by the Constitution." *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975). That Court has never discussed conditional pleas as such, but has permitted without comment a federal appeal on issues preserved by a conditional plea. *Jaben v. United States*, 381 U.S. 214 (1965).

In the absence of specific authorization by statute or rule for a conditional plea, the circuits have divided on the permissibility of the practice. Two circuits have actually approved the entry of conditional pleas, *United States v. Burke*, 517 F.2d 377 (2d Cir.1975); *United States v. Moskow*, 588 F.2d 882 (3d Cir.1978); and two others have praised the conditional plea concept, *United States v. Clark*, 459 F.2d 977 (8th Cir.1972); *United States v. Dorsey*, 449 F.2d 1104 (D.C.Cir.1971). Three circuits have expressed the view that a conditional plea is logically inconsistent and thus improper, *United States v. Brown*, 499 F.2d 829 (7th Cir.1974); *United States v. Sepe*, 472 F.2d 784, aff'd en banc, 486 F.2d 1044 (5th Cir.1973); *United States v. Cox*, 464 F.2d 937 (6th Cir.1972); three others have determined only that conditional pleas are not now authorized in the federal system, *United States v. Benson*, 579 F.2d 508 (9th Cir.1978); *United States v. Nooner*, 565 F.2d 633 (10th Cir.1977); *United States v. Matthews*, 472 F.2d 1173 (4th Cir.1973); while one circuit has reserved judgment on the issue, *United States v. Warwar*, 478 F.2d 1183 (1st Cir.1973). (At the state level, a few jurisdictions by statute allow appeal from denial of a motion to suppress notwithstanding a subsequent guilty plea, Cal.Penal Code § 1538.5(m); N.Y.Crim.Proc.Law § 710.20(1); Wis.Stat.Ann. § 971.31(10), but in the absence of such a provision the state courts are also in disagreement as to whether a conditional plea is permissible; see cases collected in Comment, 26 U.C.L.A.L.Rev. 360, 373 (1978).)

The conditional plea procedure provided for in subdivision (a)(2) will, as previously noted, serve to conserve prosecutorial and judicial resources and advance speedy trial objectives. It will also produce much needed uniformity in the federal system on this matter; see *United States v. Clark, supra*, noting the split of authority and urging resolution by statute or rule. Also, the availability of a conditional plea under specified circumstances will aid in clarifying the fact that traditional, unqualified pleas do constitute a waiver of nonjurisdictional defects. See *United States v. Nooner, supra* (defendant sought appellate review of denial of pretrial suppression motion, despite his prior unqualified guilty plea, claiming the Second Circuit conditional plea practice led him to believe a guilty plea did not bar appeal of pretrial issues).

The obvious advantages of the conditional plea procedure authorized by subdivision (a)(2) are not outweighed by any significant or compelling disadvantages. As noted in Comment, supra, at 375: "Four major arguments have been raised by courts disapproving of conditioned pleas. The objections are that the procedure encourages a flood of appellate litigation, militates

against achieving finality in the criminal process, reduces effectiveness of appellate review due to the lack of a full trial record, and forces decision on constitutional questions that could otherwise be avoided by invoking the harmless error doctrine." But, as concluded therein, those "arguments do not withstand close analysis." Ibid.

As for the first of those arguments, experience in states which have permitted appeals of suppression motions notwithstanding a subsequent plea of guilty is most relevant, as conditional pleas are likely to be most common when the objective is to appeal that kind of pretrial ruling. That experience has shown that the number of appeals has not increased substantially. See Comment, 9 Hous.L.Rev. 305, 315-19 (1971). The minimal added burden at the appellate level is certainly a small price to pay for avoiding otherwise unnecessary trials.

As for the objection that conditional pleas conflict with the government's interest in achieving finality, it is likewise without force. While it is true that the conditional plea does not have the complete finality of the traditional plea of guilty or nolo contendere because "the essence of the agreement is that the legal guilt of the defendant exists only if the prosecution's case" survives on appeal, the plea

> continues to serve a partial state interest in finality, however, by establishing admission of the defendant's factual guilt. The defendant stands guilty and the proceedings come to an end if the reserved issue is ultimately decided in the government's favor.

Comment, 26 U.C.L.A.L.Rev. 360, 378 (1978).

The claim that the lack of a full trial record precludes effective appellate review may on occasion be relevant. Cf. *United States v. MacDonald*, supra (holding interlocutory appeal not available for denial of defendant's pretrial motion to dismiss on speedy trial grounds, and noting that "most speedy trial claims * * * are best considered only after the relevant facts have been developed at trial"). However, most of the objections which would likely be raised by pretrial motion and preserved for appellate review by a conditional plea are subject to appellate resolution without a trial record. Certainly this is true as to the very common motion to suppress evidence, as is indicated by the fact that appellate courts presently decide such issues upon interlocutory appeal by the government.

With respect to the objection that conditional pleas circumvent application of the harmless error doctrine, it must be acknowledged that "[a]bsent a full trial record, containing all the government's evidence against the defendant, invocation of the harmless error rule is arguably impossible." Comment, supra, at 380. But, the harmless error standard with respect to constitutional objections is sufficiently high, see *Chapman v. California*, 386 U.S. 18 (1967), that relatively few appellate decisions result in affirmance upon that basis. Thus it will only rarely be true that the conditional plea device will cause an appellate court to consider constitutional questions which could otherwise have been avoided by invocation of the doctrine of harmless error.

To the extent that these or related objections would otherwise have some substance, they are overcome by the provision in Rule 11(a)(2) that the defendant may enter a conditional plea only "with the approval of the court and the consent of the government." (In this respect, the rule adopts the practice now found in the Second Circuit.) The requirement of approval by the court is most appropriate, as it ensures, for example, that the defendant is not allowed to take an appeal on a matter which can only be fully developed by proceeding to trial; cf. *United States v. MacDonald*, supra. As for consent by the government, it will ensure that conditional pleas will be allowed only when the decision of the court of appeals will dispose of the case either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence. Absent such circumstances, the conditional plea might only serve to postpone the trial and require the government to try the case after substantial delay, during which time witnesses may be lost, memories dimmed, and the offense grown so stale as to lose jury appeal. The government is in a unique position to determine whether the matter at issue would be case-dispositive, and, as a party to the litigation, should have an absolute right to refuse to consent to potentially prejudicial delay. Although it was suggested in *United States v. Moskow*, supra, that the government should have no right to prevent the entry of a conditional

ADD-22

plea because a defendant has no comparable right to block government appeal of a pretrial ruling pursuant to 18 U.S.C. § 3731, that analogy is unconvincing. That statute requires the government to certify that the appeal is not taken for purposes of delay. Moreover, where the pretrial ruling is case-dispositive, § 3731 is the only mechanism by which the government can obtain appellate review, but a defendant may always obtain review by pleading not guilty.

Unlike the state statutes cited earlier, Rule 11(a)(2) is not limited to instances in which the pretrial ruling the defendant wishes to appeal was in response to defendant's motion to suppress evidence. Though it may be true that the conditional plea device will be most commonly employed as to such rulings, the objectives of the rule are well served by extending it to other pretrial rulings as well. See, e.g., ABA Standards, supra (declaring the New York provision "should be enlarged to include other pretrial defenses"); Uniform Rules of Criminal Procedure, rule 44(d) (Approved Draft, 1974) ("any pretrial motion which, if granted, would be dispositive of the case").

The requirement that the conditional plea be made by the defendant "reserving in writing the right to appeal from the adverse determination of any specified pretrial motion," though extending beyond the Second Circuit practice, will ensure careful attention to any conditional plea. It will document that a particular plea was in fact conditional, and will identify precisely what pretrial issues have been preserved for appellate review. By requiring this added step, it will be possible to avoid entry of a conditional plea without the considered acquiescence of the government (see *United States v. Burke*, supra, holding that failure of the government to object to entry of a conditional plea constituted consent) and post-plea claims by the defendant that his plea should be deemed conditional merely because it occurred after denial of his pretrial motions (see *United States v. Nooner*, supra).

It must be emphasized that the *only* avenue of review of the specified pretrial ruling permitted under a rule 11(a)(2) conditional plea is an appeal, which must be brought in compliance with Fed.R.App.P. 4(b). Relief via 28 U.S.C. § 2255 is not available for this purpose.

The Supreme Court has held that certain kinds of constitutional objections may be raised after a plea of guilty. *Menna v. New York*, 423 U.S. 61 (1975) (double jeopardy violation); *Blackledge v. Perry*, 417 U.S. 21 (1974) (due process violation by charge enhancement following defendant's exercise of right to trial de novo). Subdivision 11(a)(2) has no application to such situations, and should not be interpreted as either broadening or narrowing the Menna-Blackledge doctrine or as establishing procedures for its application.

**Rule 11(h).** Subdivision (h) makes clear that the harmless error rule of Rule 52(a) is applicable to Rule 11. The provision does not, however, attempt to define the meaning of "harmless error," which is left to the case law. Prior to the amendments which took effect on Dec. 1, 1975, Rule 11 was very brief; it consisted of but four sentences. The 1975 amendments increased significantly the procedures which must be undertaken when a defendant tenders a plea of guilty or nolo contendere, but this change was warranted by the "two principal objectives" then identified in the Advisory Committee Note: (1) ensuring that the defendant has made an informed plea; and (2) ensuring that plea agreements are brought out into the open in court. An inevitable consequence of the 1975 amendments was some increase in the risk that a trial judge, in a particular case, might inadvertently deviate to some degree from the procedure which a very literal reading of Rule 11 would appear to require.

This being so, it became more apparent than ever that Rule 11 should not be given such a crabbed interpretation that ceremony was exalted over substance. As stated in *United States v. Scarf*, 551 F.2d 1124 (8th Cir.1977), concerning amended Rule 11: "It is a salutary rule, and district courts are required to act in substantial compliance with it although * * * ritualistic compliance is not required." As similarly pointed out in *United States v. Saft*, 558 F.2d 1073 (2d Cir.1977),

the Rule does not say that compliance can be achieved only by reading the specified items *in haec verba*. Congress meant to strip district judges of freedom to decide *what* they must explain to a defendant who wishes to plead guilty, not to tell them precisely *how* to perform this important task in the great variety of cases that would come before them. While a judge who contents himself with literal application of the Rule will hardly be reversed, it cannot be supposed that Congress preferred this to a more meaningful explanation, provided that all the specified elements were covered.

ADD-23

Two important points logically flow from these sound observations. One concerns the matter of construing Rule 11: it is not to be read as requiring a litany or other ritual which can be carried out only by word-for-word adherence to a set "script." The other, specifically addressed in new subdivision (h), is that even when it may be concluded Rule 11 has not been complied with in all respects, it does not inevitably follow that the defendant's plea of guilty or nolo contendere is invalid and subject to being overturned by any remedial device then available to the defendant.

Notwithstanding the declaration in Rule 52(a) that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded," there has existed for some years considerable disagreement concerning the applicability of the harmless error doctrine to Rule 11 violations. In large part, this is attributable to uncertainty as to the continued vitality and the reach of *McCarthy v. United States*, 394 U.S. 459 (1969). In *McCarthy*, involving a direct appeal from a plea of guilty because of noncompliance with Rule 11, the Court concluded

> that prejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards, which are designed to facilitate a more accurate determination of the voluntariness of his plea. Our holding [is] that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew * * *.

*McCarthy* has been most frequently relied upon in cases where, as in that case, the defendant sought relief because of a Rule 11 violation by the avenue of direct appeal. It has been held that in such circumstances a defendant's conviction must be reversed whenever the "district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11," *United States v. Boone*, 543 F.2d 1090 (4th Cir.1976), and that in this context any reliance by the government on the Rule 52(a) harmless error concept "must be rejected." *United States v. Journet*, 544 F.2d 633 (2d Cir.1976). On the other hand, decisions are to be found taking a harmless error approach on direct appeal where it appeared the nature and extent of the deviation from Rule 11 was such that it could not have had any impact on the defendant's decision to plead or the fairness in now holding him to his plea. *United States v. Peters*, No. 77-1700 (4th Cir., Dec. 22, 1978) (where judge failed to comply fully with Rule 11(c)(1), in that defendant not correctly advised of maximum years of special parole term but was told it is at least 3 years, and defendant thereafter sentenced to 15 years plus 3-year special parole term, government's motion for summary affirmance granted, as "the error was harmless"); *United States v. Coronado*, 554 F.2d 166 (5th Cir.1977) (court first holds that charge of conspiracy requires some explanation of what conspiracy means to comply with Rule 11(c)(1), but then finds no reversible error "because the rule 11 proceeding on its face discloses, despite the trial court's failure sufficiently to make the required explication of the charges, that Coronado understood them").

But this conflict has not been limited to cases involving nothing more than a direct appeal following defendant's plea. For example, another type of case is that in which the defendant has based a post-sentence motion to withdraw his plea on a Rule 11 violation. Rule 32(d) says that such a motion may be granted "to correct manifest injustice," and some courts have relied upon this latter provision in holding that post-sentence plea withdrawal need not be permitted merely because Rule 11 was not fully complied with and that instead the district court should hold an evidentiary hearing to determine "whether manifest injustice will result if the conviction based on the guilty plea is permitted to stand." *United States v. Scarf*, 551 F.2d 1124 (8th Cir.1977). Others, however, have held that *McCarthy* applies and prevails over the language of Rule 32(d), so that "a failure to scrupulously comply with Rule 11 will invalidate a plea without a showing of manifest injustice." *United States v. Cantor*, 469 F.2d 435 (3d Cir.1972).

Disagreement has also existed in the context of collateral attack upon pleas pursuant to 28 U.S.C. § 2255. On the one hand, it has been concluded that "[n]ot every violation of Rule 11 requires that the plea be set aside" in a § 2255 proceeding, and that "a guilty plea will be set aside on collateral attack only where to not do so would result in a miscarriage of justice, or where there exists exceptional circumstances justifying such relief." *Evers v. United States*, 579 F.2d 71 (10th Cir.1978). The contrary view was that McCarthy governed in § 2255 proceedings because "the Supreme Court hinted at no exceptions to its policy of strict enforcement of Rule 11." *Timmreck v. United States*, 577 F.2d 377 (6th Cir.1978). But a unanimous Supreme Court resolved

ADD-24

this conflict in *United States v. Timmreck*, 441 U.S. 780 (1979), where the Court concluded that the reasoning of *Hill v. United States*, 368 U.S. 424 (1962) (ruling a collateral attack could not be predicated on a violation of Rule 32(a))

is equally applicable to a formal violation of Rule 11. * * *

Indeed, if anything, this case may be a stronger one for foreclosing collateral relief than the Hill case. For the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.

"Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea."

This interest in finality is strongest in the collateral attack context the Court was dealing with in *Timmreck*, which explains why the Court there adopted the *Hill* requirement that in a § 2255 proceeding the rule violation must amount to "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." The interest in finality of guilty pleas described in *Timmreck* is of somewhat lesser weight when a direct appeal is involved (so that the *Hill* standard is obviously inappropriate in that setting), but yet is sufficiently compelling to make unsound the proposition that reversal is required even where it is apparent that the Rule 11 violation was of the harmless error variety.

Though the *McCarthy* per se rule may have been justified at the time and in the circumstances which obtained when the plea in that case was taken, this is no longer the case. For one thing, it is important to recall that *McCarthy* dealt only with the much simpler pre-1975 version of Rule 11, which required only a brief procedure during which the chances of a minor, insignificant and inadvertent deviation were relatively slight. This means that the chances of a *truly* harmless error (which was not involved in *McCarthy* in any event, as the judge made *no* inquiry into the defendant's understanding of the nature of the charge, and the government had presented only the extreme argument that a court "could properly assume that petitioner was entering that plea with a complete understanding of the charge against him" merely from the fact he had stated he desired to plead guilty) are much greater under present Rule 11 than under the version before the Court in *McCarthy*. It also means that the more elaborate and lengthy procedures of present Rule 11, again as compared with the version applied in *McCarthy*, make it more apparent than ever that a guilty plea is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim," but rather " 'a grave and solemn act,' which is 'accepted only with care and discernment.' " *United States v. Barker*, 514 F.2d 208 (D.C.Cir.1975), quoting from *Brady v. United States*, 397 U.S. 742 (1970). A plea of that character should not be overturned, even on direct appeal, when there has been a minor and technical violation of Rule 11 which amounts to harmless error.

Secondly, while *McCarthy* involved a situation in which the defendant's plea of guilty was before the court of appeals on direct appeal, the Supreme Court appears to have been primarily concerned with § 2255-type cases, for the Court referred exclusively to cases of that kind in the course of concluding that a per se rule was justified as to Rule 11 violations because of "the difficulty of achieving [rule 11's] purposes through a post-conviction voluntariness hearing." But that reasoning has now been substantially undercut by *United States v. Timmreck*, supra, for the Court there concluded § 2255 relief "is not available when all that is shown is a failure to comply with the formal requirements of the Rule," at least absent "other aggravating circumstances," which presumably could often only be developed in the course of a later evidentiary hearing.

Although all of the aforementioned considerations support the policy expressed in new subdivision (h), the Advisory Committee does wish to emphasize two important cautionary notes. The first is that subdivision (h) should *not* be read as supporting extreme or speculative harmless error claims or as, in effect, nullifying important Rule 11 safeguards. There would *not* be harmless error under subdivision (h) where, for example, as in *McCarthy*, there had been absolutely no inquiry by the judge into defendant's understanding of the nature of the charge and the harmless error claim of the government rests upon nothing more than the assertion that it may be "assumed" defendant possessed such understanding merely because he expressed a desire to plead

ADD-25

guilty. Likewise, it would *not* be harmless error if the trial judge totally abdicated to the prosecutor the responsibility for giving to the defendant the various Rule 11 warnings, as this "results in the creation of an atmosphere of subtle coercion that clearly contravenes the policy behind Rule 11." *United States v. Crook*, 526 F.2d 708 (5th Cir.1976).

Indeed, it is fair to say that the kinds of Rule 11 violations which might be found to constitute harmless error upon direct appeal are fairly limited, as in such instances the matter "must be resolved solely on the basis of the Rule 11 transcript" and the other portions (e.g., sentencing hearing) of the limited record made in such cases. *United States v. Coronado*, supra. Illustrative are: where the judge's compliance with subdivision (c)(1) was not absolutely complete, in that some essential element of the crime was not mentioned, but the defendant's responses clearly indicate his awareness of that element, see *United States v. Coronado*, supra; where the judge's compliance with subdivision (c)(2) was erroneous in part in that the judge understated the maximum penalty somewhat, but the penalty actually imposed did not exceed that indicated in the warnings, see *United States v. Peters*, supra; and where the judge completely failed to comply with subdivision (c)(5), which of course has no bearing on the validity of the plea itself, cf. *United States v. Sinagub*, supra.

The second cautionary note is that subdivision (h) should *not* be read as an invitation to trial judges to take a more casual approach to Rule 11 proceedings. It is still true, as the Supreme Court pointed out in *McCarthy*, that thoughtful and careful compliance with Rule 11 best serves the cause of fair and efficient administration of criminal justice, as it

> will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

Subdivision (h) makes *no change* in the responsibilities of the judge at Rule 11 proceedings, but instead merely rejects the extreme sanction of automatic reversal.

It must also be emphasized that a harmless error provision has been added to Rule 11 because some courts have read *McCarthy* as meaning that the general harmless error provision in Rule 52(a) cannot be utilized with respect to Rule 11 proceedings. Thus, the addition of subdivision (h) should *not* be read as suggesting that Rule 52(a) does not apply in other circumstances because of the absence of a provision comparable to subdivision (h) attached to other rules.

**1985 Amendments**

**Subd. (c)(1).** Section 5 of the Victim and Witness Protection Act of 1982, Pub.L. No. 97-291, 96 Stat. 1248 (1982), adds 18 U.S.C. § 3579, providing that when sentencing a defendant convicted of a Title 18 offense or of violating various subsections of the Federal Aviation Act of 1958, the court "may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense." Under this law restitution is favored; if the court "does not order restitution, or orders only partial restitution, ... the court shall state on the record the reasons therefor." Because this restitution is deemed an aspect of the defendant's sentence, S.Rept. No. 97-532, 97th Cong., 2d Sess., 30-33 (1982), it is a matter about which a defendant tendering a plea of guilty or nolo contendere should be advised.

Because this new legislation contemplates that the amount of the restitution to be ordered will be ascertained later in the sentencing process, this amendment to Rule 11(c)(1) merely requires that the defendant be told of the court's power to order restitution. The exact amount or upper limit cannot and need not be stated at the time of the plea. Failure of a court to advise a defendant of the possibility of a restitution order would constitute harmless error under subdivision (h) if no restitution were thereafter ordered.

**1987 Amendments**

ADD 26

The amendments are technical. No substantive change is intended.

**1989 Amendments**

The Committee believes that a technical change, adding the words "or supervised release," is necessary to recognize that defendants sentenced under the guideline approach will be concerned about supervised release rather than special parole. See 18 U.S.C. 3583, and 3624(e). The words "special parole" are left in the rule, since the district courts continue to handle pre-guideline cases.

The amendment mandates that the district court inform a defendant that the court is required to consider any applicable guidelines but may depart from them under some circumstances. This requirement assures that the existence of guidelines will be known to a defendant before a plea of guilty or nolo contendere is accepted. Since it will be impracticable, if not impossible, to know which guidelines will be relevant prior to the formulation of a presentence report and resolution of disputed facts, the amendment does not require the court to specify which guidelines will be important or which grounds for departure might prove to be significant. The advice that the court is required to give cannot guarantee that a defendant who pleads guilty will not later claim a lack of understanding as to the importance of guidelines at the time of the plea. No advice is likely to serve as a complete protection against post-plea claims of ignorance or confusion. By giving the advice, the court places the defendant and defense counsel on notice of the importance that guidelines may play in sentencing and of the possibility of a departure from those guidelines. A defendant represented by competent counsel will be in a position to enter an intelligent plea.

The amended rule does not limit the district court's discretion to engage in a more extended colloquy with the defendant in order to impart additional information about sentencing guidelines or to inquire into the defendant's knowledge concerning guidelines. The amended rule sets forth only the minimum advice that must be provided to the defendant by the court.

**1999 Amendments**

**Subdivision (a).** The amendment deletes use of the term "corporation" and substitutes in its place the term "organization," with a reference to the definition of that term in 18 U.S.C. § 18.

**Subdivision (c)(6).** Rule 11(c) has been amended specifically to reflect the increasing practice of including provisions in plea agreements which require the defendant to waive certain appellate rights. The increased use of such provisions is due in part to the increasing number of direct appeals and collateral reviews challenging sentencing decisions. Given the increased use of such provisions, the Committee believed it was important to insure that first, a complete record exists regarding any waiver provisions, and second, that the waiver was voluntarily and knowingly made by the defendant. Although a number of federal courts have approved the ability of a defendant to enter into such waiver agreements, the Committee takes no position on the underlying validity of such waivers.

**Subdivision (e).** Amendments have been made to Rule 11(e)(1)(B) and (C) to reflect the impact of the Sentencing Guidelines on guilty pleas. Although Rule 11 is generally silent on the subject, it has become clear that the courts have struggled with the subject of guideline sentencing vis a vis plea agreements, entry and timing of guilty pleas, and the ability of the defendant to withdraw a plea of guilty. The amendments are intended to address two specific issues.

First, both subdivisions (e)(1)(B) and (e)(1)(C) have been amended to recognize that a plea agreement may specifically address not only what amounts to an appropriate sentence, but also a sentencing guideline, a sentencing factor, or a policy statement accompanying a sentencing guideline or factor. Under an (e)(1)(B) agreement, the government, as before, simply agrees to make a recommendation to the court, or agrees not to oppose a defense request concerning a particular sentence or consideration of a sentencing guideline, factor, or policy statement. The amendment makes it clear that this type of agreement is not binding on the court. Second, under an (e)(1)(C) agreement, the government and defense have actually agreed on what amounts to an appropriate sentence or have agreed to one of the specified components. The amendment also makes it clear that this agreement

is binding on the court once the court accepts it. As is the situation under the current Rule, the court retains absolute discretion whether to accept a plea agreement.

**GAP Report--Rule 11.**

The Committee made no changes to the published draft amendments to Rule 11. But it did add language to the Committee Note which reflects the view that the amendment is not intended to signal its approval of the underlying practice of including waiver provisions in pretrial agreements.

**2002 Amendments**

The language of Rule 11 has been amended and reorganized as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only, except as noted below.

Amended Rule 11(b)(1) requires the court to apprise the defendant of his or her rights before accepting a plea of guilty or nolo contendere. The Committee determined to expand upon the incomplete listing in the current rule of the elements of the "maximum possible penalty" and any "mandatory minimum" penalty to include advice as to the maximum or minimum term of imprisonment, forfeiture, fine, and special assessment, in addition to the two types of maximum and minimum penalties presently enumerated: restitution and supervised release. The outmoded reference to a term of "special parole" has been eliminated.

Amended Rule 11(b)(2), formerly Rule 11(d), covers the issue of determining that the plea is voluntary, and not the result of force, threats, or promises (other than those in a plea agreement). The reference to an inquiry in current Rule 11(d) whether the plea has resulted from plea discussions with the government has been deleted. That reference, which was often a source of confusion to defendants who were clearly pleading guilty as part of a plea agreement with the government, was considered unnecessary.

Rule 11(c)(1)(A) includes a change, which recognizes a common type of plea agreement--that the government will "not bring" other charges.

The Committee considered whether to address the practice in some courts of using judges to facilitate plea agreements. The current rule states that "the court shall not participate in any discussions between the parties concerning such plea agreement." Some courts apparently believe that that language acts as a limitation only upon the judge taking the defendant's plea and thus permits other judges to serve as facilitators for reaching a plea agreement between the government and the defendant. *See, e.g.*, *United States v. Torres*, 999 F.2d 376, 378 (9th Cir. 1993) (noting practice and concluding that presiding judge had not participated in a plea agreement that had resulted from discussions involving another judge). The Committee decided to leave the Rule as it is with the understanding that doing so was in no way intended either to approve or disapprove the existing law interpreting that provision.

Amended Rules 11(c)(3) to (5) address the topics of consideration, acceptance, and rejection of a plea agreement. The amendments are not intended to make any change in practice. The topics are discussed separately because in the past there has been some question about the possible interplay between the court's consideration of the guilty plea in conjunction with a plea agreement and sentencing and the ability of the defendant to withdraw a plea. *See United States v. Hyde*, 520 U.S. 670 (1997) (holding that plea and plea agreement need not be accepted or rejected as a single unit; "guilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time."). Similarly, the Committee decided to more clearly spell out in Rule 11(d) and 11(e) the ability of the defendant to withdraw a plea. *See United States v. Hyde, supra.*

Amended Rule 11(e) is a new provision, taken from current Rule 32(e), that addresses the finality of a guilty or nolo contendere plea after the court imposes sentence. The provision makes it clear that it is not possible for a defendant to withdraw a plea after sentence is imposed.

The reference to a "motion under 28 U.S.C. § 2255" has been changed to the broader term "collateral attack" to recognize that in some instances a court may grant collateral relief under provisions other than § 2255. *See United States v. Jeffers*, 234 F.3d 277 (5th Cir. 2000) (petition under § 2241 may be appropriate where remedy under § 2255 is ineffective or inadequate).

Currently, Rule 11(e)(5) requires that unless good cause is shown, the parties are to give pretrial notice to the court that a plea agreement exists. That provision has been deleted. First, the Committee believed that although the provision was originally drafted to assist judges, under current practice few counsel would risk the consequences in the ordinary case of not informing the court that an agreement exists. Secondly, the Committee was concerned that there might be rare cases where the parties might agree that informing the court of the existence of an agreement might endanger a defendant or compromise an ongoing investigation in a related case. In the end, the Committee believed that, on balance, it would be preferable to remove the provision and reduce the risk of pretrial disclosure.

Finally, revised Rule 11(f), which addresses the issue of admissibility or inadmissibility of pleas and statements made during the plea inquiry, cross references Federal Rule of Evidence 410.

**2007 Amendments**

**Subdivision (b)(1)(M).** The amendment conforms Rule 11 to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). *Booker* held that the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), violates the Sixth Amendment right to jury trial. With this provision severed and excised, the Court held, the Sentencing Reform Act "makes the Guidelines effectively advisory," and "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004) but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp. 2004)." *Id*. at 245-46. Rule 11(b)(M) incorporates this analysis into the information provided to the defendant at the time of a plea of guilty or nolo contendere.

**2013 Amendments**

**Subdivision (b)(1)(O).** The amendment requires the court to include a general statement that there may be immigration consequences of conviction in the advice provided to the defendant before the court accepts a plea of guilty or nolo contendere.

For a defendant who is not a citizen of the United States, a criminal conviction may lead to removal, exclusion, and the inability to become a citizen. In *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), the Supreme Court held that a defense attorney's failure to advise the defendant concerning the risk of deportation fell below the objective standard of reasonable professional assistance guaranteed by the Sixth Amendment.

The amendment mandates a generic warning, not specific advice concerning the defendant's individual situation. Judges in many districts already include a warning about immigration consequences in the plea colloquy, and the amendment adopts this practice as good policy. The Committee concluded that the most effective and efficient method of conveying this information is to provide it to every defendant, without attempting to determine the defendant's citizenship.

**Changes Made After Publication and Comment**

The Committee Note was revised to make it clear that the court is to give a general statement that there may be immigration consequences, not specific advice concerning a defendant's individual situation.

Notes of Decisions (4113)

Fed. Rules Cr. Proc. Rule 11, 18 U.S.C.A., FRCRP Rule 11
Including Amendments Received Through 7-1-2025

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
    Federal Rules of Criminal Procedure for the United States District Courts (Refs & Annos)
        Title VII. Post-Conviction Procedures

Federal Rules of Criminal Procedure, Rule 32

Rule 32. Sentencing and Judgment

Currentness

**(a) [Reserved.]**

**(b) Time of Sentencing.**

  **(1) In General.** The court must impose sentence without unnecessary delay.

  **(2) Changing Time Limits.** The court may, for good cause, change any time limits prescribed in this rule.

**(c) Presentence Investigation.**

  **(1) Required Investigation.**

    **(A) In General.** The probation officer must conduct a presentence investigation and submit a report to the court before it imposes sentence unless:

      **(i)** 18 U.S.C. § 3593(c) or another statute requires otherwise; or

      **(ii)** the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record.

    **(B) Restitution.** If the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution.

  **(2) Interviewing the Defendant.** The probation officer who interviews a defendant as part of a presentence investigation must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview.

**(d) Presentence Report.**

  **(1) Applying the Advisory Sentencing Guidelines.** The presentence report must:

ADD-31

**(A)** identify all applicable guidelines and policy statements of the Sentencing Commission;

**(B)** calculate the defendant's offense level and criminal history category;

**(C)** state the resulting sentencing range and kinds of sentences available;

**(D)** identify any factor relevant to:

    **(i)** the appropriate kind of sentence, or

    **(ii)** the appropriate sentence within the applicable sentencing range; and

**(E)** identify any basis for departing from the applicable sentencing range.

**(2) Additional Information**. The presentence report must also contain the following:

**(A)** the defendant's history and characteristics, including:

    **(i)** any prior criminal record;

    **(ii)** the defendant's financial condition; and

    **(iii)** any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

**(B)** information that assesses any financial, social, psychological, and medical impact on any victim;

**(C)** when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

**(D)** when the law provides for restitution, information sufficient for a restitution order;

**(E)** if the court orders a study under 18 U.S.C. § 3552(b), any resulting report and recommendation;

**(F)** a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

ADD-32

**(G)** any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

**(3) Exclusions.** The presentence report must exclude the following:

**(A)** any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program;

**(B)** any sources of information obtained upon a promise of confidentiality; and

**(C)** any other information that, if disclosed, might result in physical or other harm to the defendant or others.

**(e) Disclosing the Report and Recommendation.**

**(1) Time to Disclose.** Unless the defendant has consented in writing, the probation officer must not submit a presentence report to the court or disclose its contents to anyone until the defendant has pleaded guilty or nolo contendere, or has been found guilty.

**(2) Minimum Required Notice.** The probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period.

**(3) Sentence Recommendation.** By local rule or by order in a case, the court may direct the probation officer not to disclose to anyone other than the court the officer's recommendation on the sentence.

**(f) Objecting to the Report.**

**(1) Time to Object.** Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report.

**(2) Serving Objections.** An objecting party must provide a copy of its objections to the opposing party and to the probation officer.

**(3) Action on Objections.** After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate.

**(g) Submitting the Report.** At least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them.

ADD-33

**(h) Notice of Possible Departure from Sentencing Guidelines.** Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

**(i) Sentencing.**

**(1) In General.** At sentencing, the court:

**(A)** must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report;

**(B)** must give to the defendant and an attorney for the government a written summary of--or summarize in camera--any information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information;

**(C)** must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence; and

**(D)** may, for good cause, allow a party to make a new objection at any time before sentence is imposed.

**(2) Introducing Evidence; Producing a Statement.** The court may permit the parties to introduce evidence on the objections. If a witness testifies at sentencing, Rule 26.2(a)-(d) and (f) applies. If a party fails to comply with a Rule 26.2 order to produce a witness's statement, the court must not consider that witness's testimony.

**(3) Court Determinations.** At sentencing, the court:

**(A)** may accept any undisputed portion of the presentence report as a finding of fact;

**(B)** must--for any disputed portion of the presentence report or other controverted matter--rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and

**(C)** must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons.

**(4) Opportunity to Speak.**

**(A) By a Party.** Before imposing sentence, the court must:

ADD-34

**(i)** provide the defendant's attorney an opportunity to speak on the defendant's behalf;

**(ii)** address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and

**(iii)** provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

**(B) By a Victim.** Before imposing sentence, the court must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard.

**(C) In Camera Proceedings.** Upon a party's motion and for good cause, the court may hear in camera any statement made under Rule 32(i)(4).

**(j) Defendant's Right to Appeal.**

**(1) Advice of a Right to Appeal.**

**(A) Appealing a Conviction.** If the defendant pleaded not guilty and was convicted, after sentencing the court must advise the defendant of the right to appeal the conviction.

**(B) Appealing a Sentence.** After sentencing--regardless of the defendant's plea--the court must advise the defendant of any right to appeal the sentence.

**(C) Appeal Costs.** The court must advise a defendant who is unable to pay appeal costs of the right to ask for permission to appeal in forma pauperis.

**(2) Clerk's Filing of Notice.** If the defendant so requests, the clerk must immediately prepare and file a notice of appeal on the defendant's behalf.

**(k) Judgment.**

**(1) In General.** In the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence. If the defendant is found not guilty or is otherwise entitled to be discharged, the court must so order. The judge must sign the judgment, and the clerk must enter it.

**(2) Criminal Forfeiture.** Forfeiture procedures are governed by Rule 32.2.

**CREDIT(S)**

(As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 24, 1972, eff. Oct. 1, 1972; Apr. 22, 1974, eff. Dec. 1, 1975; July 31, 1975, Pub.L. 94-64, § 3(31)-(34), 89 Stat. 376; Apr. 30, 1979, eff. Aug. 1, 1979, Dec. 1, 1980; Oct. 12, 1982, Pub.L. 97-291, § 3, 96 Stat. 1249; Apr. 28, 1983, eff. Aug. 1, 1983; Oct. 12, 1984, Pub.L. 98-473, Title II, § 215(a), 98 Stat. 2014; Nov. 10, 1986, Pub.L. 99-646, § 25(a), 100 Stat. 3597; Mar. 9, 1987, eff. Aug. 1, 1987; Apr. 25, 1989, eff. Dec. 1, 1989; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 29, 1994, eff. Dec. 1, 1994; Sept. 13, 1994, Pub.L. 103-322, Title XXIII, § 230101(b), 108 Stat. 2078; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 24, 1996, Pub.L. 104-132, Title II, § 207(a), 110 Stat. 1236; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 26, 2011, eff. Dec. 1, 2011.)

## RULE APPLICABLE TO OFFENSES COMMITTED PRIOR TO NOV. 1, 1987

This rule as in effect prior to amendment by Pub.L. 98-473 read as follows:

**"Rule 32. Sentence and Judgment**

**"(a) Sentence.**

**"(1) Imposition of Sentence.** Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall

**"(A)** determine that the defendant and the defendant's counsel have had the opportunity to read and discuss the presentence investigation report made available pursuant to subdivision (c)(3)(A) or summary thereof made available pursuant to subdivision (c)(3)(B);

**"(B)** afford counsel an opportunity to speak on behalf of the defendant; and

**"(C)** address the defendant personally and ask the defendant if the defendant wishes to make a statement in the defendant's own behalf and to present any information in mitigation of punishment.

The attorney for the government shall have an equivalent opportunity to speak to the court.

**"(2) Notification of Right to Appeal.** After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of the defendant's right to appeal, and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis. There shall be no duty on the court to advise the defendant of any right of appeal after sentence is imposed following a plea of guilty or nolo contendere. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant.

**"(b) Judgment.**

**"(1) In General.** A judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly. The judgment shall be signed by the judge and entered by the clerk.

**"(2) Criminal Forfeiture.** When a verdict contains a finding of property subject to a criminal forfeiture, the judgment of criminal forfeiture shall authorize the Attorney General to seize the interest or property subject to forfeiture, fixing such terms and conditions as the court shall deem proper.

**"(c) Presentence Investigation.**

ADD-36

"**(1) When Made.** The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission of the court, the defendant waives a presentence investigation and report, or the court finds that there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record.

"The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except that a judge may, with the written consent of the defendant, inspect a presentence report at any time.

"**(2) Report.** The presentence report shall contain--
    "**(A)** any prior criminal record of the defendant;

    "**(B)** a statement of the circumstances of the commission of the offense and circumstances affecting the defendant's behavior;

    "**(C)** information concerning any harm, including financial, social, psychological, and physical harm, done to or loss suffered by any victim of the offense; and

    "**(D)** any other information that may aid the court in sentencing, including the restitution needs of any victim of the offense.


"**(3) Disclosure.**
    "**(A)** At a reasonable time before imposing sentence the court shall permit the defendant and the defendant's counsel to read the report of the presentence investigation exclusive of any recommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opinions which, if disclosed, might seriously disrupt a program of rehabilitation; or sources of information obtained upon a promise of confidentiality; or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons. The court shall afford the defendant and the defendant's counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

    "**(B)** If the court is of the view that there is information in the presentence report which should not be disclosed under subdivision (c)(3)(A) of this rule, the court in lieu of making the report or part thereof available shall state orally or in writing a summary of the factual information contained therein to be relied on in determining sentence, and shall give the defendant and the defendant's counsel an opportunity to comment thereon. The statement may be made to the parties in camera.

    "**(C)** Any material which may be disclosed to the defendant and the defendant's counsel shall be disclosed to the attorney for the government.

    "**(D)** If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

    "**(E)** Any copies of the presentence investigation report made available to the defendant and the defendant's counsel and the attorney for the government shall be returned to the probation officer immediately following the imposition of sentence or the granting of probation, unless the court, in its discretion otherwise directs.

**"(F)** The reports of studies and recommendations contained therein made by the Director of the Bureau of Prisons or the Parole Commission pursuant to 18 U.S.C. §§ 4205(c), 4252, 5010(e), or 5037(c) shall be considered a presentence investigation within the meaning of subdivision (c)(3) of this rule.

**"(d) Plea Withdrawal.** If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c), the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

**"(e) Probation.** After conviction of an offense not punishable by death or by life imprisonment, the defendant may be placed on probation if permitted by law.

**"(f) [Revocation of Probation.]** (Abrogated Apr. 30, 1979, eff. Dec. 1, 1980)."

For applicability of sentencing provisions to offenses, see Effective Date and Savings Provisions, etc., note, section 235 of Pub.L. 98–473, as amended, set out under section 3551 of Title 18, Crimes and Criminal Procedure.

## ADVISORY COMMITTEE NOTES
### 1944 Adoption

**Note to Subdivision (a).** This rule is substantially a restatement of existing procedure. Rule I of the Criminal Appeals Rules of 1933, 292 U.S. 661 [18 U.S.C. formerly following § 688]. See Rule 43 relating to the presence of the defendant.

**Note to Subdivision (b).** This rule is substantially a restatement of existing procedure. Rule I of the Criminal Appeals Rules of 1933, 292 U.S. 661 [18 U.S.C. formerly following § 688].

**Note to Subdivision (c).** The purpose of this provision is to encourage and broaden the use of presentence investigations, which are nor being utilized to good advantage in many cases. See, "The Presentence Investigation" published by Administrative Office of the United States Courts, Division of Probation.

**Note to Subdivision (d).** This rule modifies existing practice by abrogating the ten-day limitation on a motion for leave to withdraw a plea of guilty. See rule II(4) of the Criminal Appeals Rules of 1933, 292 U.S. 661 [18 U.S.C. formerly following § 688].

**Note to Subdivision (e).** See 18 U.S.C. former § 724 et seq. [now § 3651 et seq.].

### 1966 Amendments

**Subdivision (a)(1).**--The amendment writes into the rule the holding of the Supreme Court that the court before imposing sentence must afford an opportunity to the defendant personally to speak in his own behalf. See *Green v. United States,* 365 U.S. 301 (1961); *Hill v. United States,* 368 U.S. 424 (1962). The amendment also provides an opportunity for counsel to speak on behalf of the defendant.

**Subdivision (a)(2).**--This amendment is a substantial revision and a relocation of the provision originally found in Rule 37(a)(2): "When a court after trial imposes sentence upon a defendant not represented by counsel, the defendant shall be advised of his right to appeal and if he so requests, the clerk shall prepare and file forthwith a notice of appeal on behalf of the defendant."

ADD-38

The court is required to advise the defendant of his right to appeal in all cases which have gone to trial after plea of not guilty because situations arise in which a defendant represented by counsel at the trial is not adequately advised by such counsel of his right to appeal. Trial counsel may not regard his responsibility as extending beyond the time of imposition of sentence. The defendant may be removed from the courtroom immediately upon sentence and held in custody under circumstances which make it difficult for counsel to advise him. See, e.g., *Hodges v. United States, 368 U.S. 139 (1961)*. Because indigent defendants are most likely to be without effective assistance of counsel at this point in the proceedings, it is also provided that defendants be notified of the right of a person without funds to apply for leave to appeal in forma pauperis. The provision is added here because this rule seems the most appropriate place to set forth a procedure to be followed by the court at the time of sentencing.

**Subdivision (c)(2).**--It is not a denial of due process of law for a court in sentencing to rely on a report of a presentence investigation without disclosing such report to the defendant or giving him an opportunity to rebut it. *Williams v. New York, 337 U.S. 241 (1949)*; *Williams v. Oklahoma, 358 U.S. 576 (1959)*. However, the question whether as a matter of policy the defendant should be accorded some opportunity to see and refute allegations made in such reports has been the subject of heated controversy. For arguments favoring disclosure, see Tappan, Crime, Justice, and Correction, 558 (1960); Model Penal Code, 54-55 (Tent. Draft No. 2, 1954); Thomsen, Confidentiality of the Presentence Report: A Middle Position, 28 Fed.Prob., March 1964, p. 8; Wyzanski, A. Trial Judge's Freedom and Responsibility, 65 Harv.L.Rev. 1281, 1291-2 (1952); Note, Employment of Social Investigation Reports in Criminal and Juvenile Proceedings, 58 Colum.L.Rev. 702 (1958); cf. Kadish, The Advocate and the Expert: Counsel in the Peno-Correctional Process, 45 Minn.L.Rev. 803, 806, (1961). For arguments opposing disclosure, see Barnett and Gronewold, Confidentiality of the Presentence Report, 26 Fed.Prob. March 1962, p. 26; Judicial Conference Committee on Administration of the Probation System, Judicial Opinion on Proposed Change in Rule 32(c) of the Federal Rules of Criminal Procedure--a Survey (1964); Keve, The Probation Officer Investigates, 6-15 (1960); Parsons, The Presentence Investigation Report Must be Preserved as a Confidential Document, 28 Fed.Prob. March 1964, p. 3; Sharp, The Confidential Nature of Presentence Reports, 5 Cath.U.L.Rev. 127 (1955); Wilson, A New Arena is Emerging to Test the Confidentiality of Presentence Reports, 25 Fed.Prob.Dec.1961, p. 6; Federal Judge's Views on Probation Practices, 24 Fed.Prob. March 1960, p. 10.

In a few jurisdictions the defendant is given a right of access to the presentence report. In England and California a copy of the report is given to the defendant in every case. English Criminal Justice Act of 1948, 11 & 12 Geo. 6, c. 58, § 43; Cal.Pen.C. § 1203. In Alabama the defendant has a right to inspect the report. Ala.Code, Title 42, § 23. In Ohio and Virginia the probation officer reports in open court and the defendant is given the right to examine him on his report. Ohio Rev.Code, § 2947.06; Va.Code, § 53-278.1. The Minnesota Criminal Code of 1963, § 609.115(4), provides that any presentence report "shall be open for inspection by the prosecuting attorney and the defendant's attorney prior to sentence and on the request of either of them a summary hearing in chambers shall be held on any matter brought in issue, but confidential sources of information shall not be disclosed unless the court otherwise directs." Cf. Model Penal Code § 7.07(5) (P.O.D. 1962): "Before imposing sentence, the Court shall advise the defendant or his counsel of the factual contents and the conclusions of any presentence investigation or psychiatric examination and afford fair opportunity, if the defendant so requests, to controvert them. The sources of confidential information need not, however, be disclosed."

Practice in the federal courts is mixed, with a substantial minority of judges permitting disclosure while most deny it. See the recent survey prepared for the Judicial Conference of the District of Columbia by the Junior Bar Section of the Bar Association of the District of Columbia, reported in Conference Papers on Discovery in Federal Criminal Cases, 33 F.R.D. 101, 125-127 (1963). See also Gronewold, Presentence Investigation Practices in the Federal Probation System, Fed.Prob. Sept.1958, pp. 27, 31. For divergent judicial opinions see *Smith v. United States, 223 F.2d 750, 754 (5th Cir.1955)* (supporting disclosure); *United States v. Durham, 181 F.Supp. 503 (D.D.C.1960)* (supporting secrecy).

Substantial objections to compelling disclosure in every case have been advanced by federal judges, including many who in practice often disclose all or parts of presentence reports. See Judicial Conference Committee on the Administration of the Probation System, Judicial Opinion on Proposed Change in Rule 32(c) of the Federal Rules of Criminal Procedure--A Survey (1964). Hence, the amendment goes no further than to make it clear that courts may disclose all or part of the presentence

report to the defendant or to his counsel. It is hoped that courts will make increasing use of their discretion to disclose so that defendants generally may be given full opportunity to rebut or explain facts in presentence reports which will be material factors in determining sentences. For a description of such a practice in one district, see Thomsen, Confidentiality of the Presentence Report: A Middle Position, 28 Fed.Prob., March 1964, p. 8.

It is also provided that any material disclosed to the defendant or his counsel shall be disclosed to the attorney for the government. Such disclosure will permit the government to participate in the resolution of any factual questions raised by the defendant.

**Subdivision (f).**--This new subdivision writes into the rule the procedure which the cases have derived from the provision in 18 U.S.C. § 3653 that a person arrested for violation of probation "shall be taken before the court" and that thereupon the court may revoke the probation. See *Escoe v. Zerbst,* 295 U.S. 490 (1935); *Brown v. United States,* 236 F.2d 253 (9th Cir. 1956) certiorari denied 356 U.S. 922 (1958). Compare Model Penal Code § 301.4 (P.O.D.1962); Hink, The Application of Constitutional Standards of Protection to Probation, 29 U.Chi.L.Rev. 483 (1962).

### 1972 Amendments

Subdivision (b)(2) is new. It is intended to provide procedural implementation of the recently enacted criminal forfeiture provisions of the Organized Crime Control Act of 1970, Title IX, § 1963, and the Comprehensive Drug Abuse Prevention and Control Act of 1970, Title II, § 408(a)(2).

18 U.S.C. § 1963(c) provides for property seizure and disposition. In part it states:

(c) Upon conviction of a person under this section, the court shall authorize the Attorney General to seize all property or other interest declared forfeited under this section upon such terms and conditions as the court shall deem proper.

Although not specifically provided for in the Comprehensive Drug Abuse Prevention and Control Act of 1970, the provision of Title II, § 408(a)(2) forfeiting "profits" or "interest" will need to be implemented procedurally, and therefore new rule 32(b)(2) will be applicable also to that legislation.

For a brief discussion of the procedural implications of a criminal forfeiture, see Advisory Committee Note to rule 7(c)(2).

### 1974 Amendments

Subdivision (a)(1) is amended by deleting the reference to commitment or release pending sentencing. This issue is dealt with explicitly in the proposed revision of rule 46(c).

Subdivision (a)(2) is amended to make clear that there is no duty on the court to advise the defendant of the right to appeal after sentence is imposed following a plea of guilty or nolo contendere.

To require the court to advise the defendant of a right to appeal after a plea of guilty, accepted pursuant to the increasingly stringent requirements of rule 11, is likely to be confusing to the defendant. See American Bar Association, Standards Relating to Criminal Appeals § 2.1(b) (Approved Draft, 1970), limiting the court's duty to advise to "contested cases."

The Advisory Committee is of the opinion that such advice, following a sentence imposed after a plea of guilty, will merely tend to build false hopes and encourage frivolous appeals, with the attendant expense to the defendant or the taxpayers.

Former rule 32(a)(2) imposes a duty only upon conviction after "trial on a plea of not guilty." The few federal cases dealing with the question have interpreted rule 32(a)(2) to say that the court has no duty to advise defendant of his right to appeal after

conviction following a guilty plea. Burton v. United States, 307 F.Supp. 448, 450 (D.Ariz.1970); Alaway v. United States, 280 F.Supp. 326, 336 (C.D.Calif.1968); Crow v. United States, 397 F.2d 284, 285 (10th Cir. 1968).

Prior to the 1966 amendment of rule 32, the court's duty was even more limited. At that time [rule 37(a)(2) ] the court's duty to advise was limited to those situations in which sentence was imposed after trial upon a not guilty plea of a defendant not represented by counsel. 8A J. Moore, Federal Practice ¶32.01[3] (2d ed. Cipes 1969); C. Wright, Federal Practice and Procedure: Criminal § 528 (1969); 5 L. Orfield, Criminal Procedure Under the Federal Rules § 32:11 (1967).

With respect to appeals in forma pauperis, see appellate rule 24.

Subdivision (c)(1) makes clear that a presentence report is required except when the court otherwise directs for reasons stated of record. The requirement of reasons on the record for not having a presentence report is intended to make clear that such a report ought to be routinely required except in cases where there is a reason for not doing so. The presentence report is of great value for correctional purposes and will serve as a valuable aid in reviewing sentences to the extent that sentence review may be authorized by future rule change. For an analysis of the current rule as it relates to the situation in which a presentence investigation is required, see C. Wright, Federal Practice and Procedure: Criminal § 522 (1969); 8A J. Moore, Federal Practice ¶32.03[1] (2d ed. Cipes 1969).

Subdivision (c)(1) is also changed to permit the judge, after obtaining defendant's consent, to see the presentence report in order to decide whether to accept a plea agreement, and also to expedite the imposition of sentence in a case in which the defendant has indicated that he may plead guilty or nolo contendere.

Former subdivision (c)(1) provides that "The report shall not be submitted to the court * * * unless the defendant has pleaded guilty * * *." This precludes a judge from seeing a presentence report prior to the acceptance of the plea of guilty. L. Orfield, Criminal Procedure Under the Federal Rules § 32:35 (1967); 8A J. Moore, Federal Practice ¶32.03[2], p. 32-22 (2d ed. Cipes 1969); C. Wright, Federal Practice and Procedure: Criminal § 523, p. 392 (1969); Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969).

Because many plea agreements will deal with the sentence to be imposed, it will be important, under rule 11, for the judge to have access to sentencing information as a basis for deciding whether the plea agreement is an appropriate one.

It has been suggested that the problem be dealt with by allowing the judge to indicate approval of the plea agreement subject to the condition that the information in the presentence report is consistent with what he has been told about the case by counsel. See American Bar Association, Standards Relating to Pleas of Guilty § 3.3 (Approved Draft, 1963); President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 136 (1967).

Allowing the judge to see the presentence report prior to his decision as to whether to accept the plea agreement is, in the view of the Advisory Committee, preferable to a conditional acceptance of the plea. See Enker, Perspectives on Plea Bargaining, Appendix A of President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts at 117 (1967). It enables the judge to have all of the information available to him at the time he is called upon to decide whether or not to accept the plea of guilty and thus avoids the necessity of a subsequent appearance whenever the information is such that the judge decides to reject the plea agreement.

There is presently authority to have a presentence report *prepared* prior to the acceptance of the plea of guilty. In *Gregg v. United States,* 394 U.S. 489, 491, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969), the court said that the "language [of rule 32] clearly permits the preparation of a presentence report before guilty plea or conviction 3 * * *." In footnote 3 the court said:

The history of the rule confirms this interpretation. The first Preliminary Draft of the rule would have required the consent of the defendant or his attorney to commence the investigation before the determination of guilt. Advisory Committee on

ADD-41

Rules of Criminal Procedure, Fed.Rules Crim.Proc., Preliminary Draft 130, 133 (1943). The Second Preliminary Draft omitted this requirement and imposed no limitation on the time when the report could be made and submitted to the court. Advisory Committee on Rules of Criminal Procedure, Fed.Rules Crim.Proc., Second Preliminary Draft 126-128 (1944). The third and final draft, which was adopted as Rule 32, was evidently a compromise between those who opposed any time limitation, and those who preferred that the entire investigation be conducted after determination of guilt. See 5 L. Orfield, Criminal Procedure Under the Federal Rules § 32.2 (1967).

Where the judge rejects the plea agreement after seeing the presentence report, he should be free to recuse himself from later presiding over the trial of the case. This is left to the discretion of the judge. There are instances involving prior convictions where a judge may have seen a presentence report, yet can properly try a case on a plea of not guilty. *Webster v. United States,* *330 F.Supp. 1080 (E.D.Va.1971).* Unlike the situation in *Gregg v. United States*, subdivision (e)(3) provides for disclosure of the presentence report to the defendant, and this will enable counsel to know whether the information thus made available to the judge is likely to be prejudicial. Presently trial judges who decide pretrial motions to suppress illegally obtained evidence are not, for that reason alone, precluded from presiding at a later trial.

Subdivision (c)(3)(A) requires disclosure of presentence information to the defense, exclusive of any recommendation of sentence. The court is required to disclose the report to defendant or his counsel unless the court is of the opinion that disclosure would seriously interfere with rehabilitation, compromise confidentiality, or create risk of harm to the defendant or others.

Any recommendation as to sentence should not be disclosed as it may impair the effectiveness of the probation officer if the defendant is under supervision on probation or parole.

The issue of disclosure of presentence information to the defense has been the subject of recommendations from the Advisory Committee in 1944, 1962, 1964, and 1966. The history is dealt with in considerable detail in C. Wright, Federal Practice and Procedure: Criminal § 524 (1969), and 8A J. Moore, Federal Practice ¶32.03[4] (2d ed. Cipes 1969).

In recent years, three prestigious organizations have recommended that the report be disclosed to the defense. See American Bar Association, Standards Relating to Sentencing Alternatives and Procedures § 4.4 (Approved Draft, 1968); American Law Institute, Model Penal Code § 7.07(5) (P.O.D.1962); National Council on Crime and Delinquency, Model Sentencing Act § 4 (1963). This is also the recommendation of the President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society (1967) at p. 145:

In the absence of compelling reasons for nondisclosure of special information, the defendant and his counsel should be permitted to examine the entire presentence report.

The arguments for and against disclosure are well known and are effectively set forth in American Bar Association Standards Relating to Sentencing Alternatives and Procedures, § 4.4 Commentary at pp. 214 to 225 (Approved Draft, 1968). See also Lehrich, The Use and Disclosure of Presentence Reports in the United States, 47 F.R.D. 225 (1969).

A careful account of existing practices in Detroit, Michigan and Milwaukee, Wisconsin is found in R. Dawson, Sentencing (1969).

Most members of the federal judiciary have, in the past, opposed compulsory disclosure. See the view of District Judge Edwin M. Stanley, American Bar Association Standards Relating to Sentencing Alternatives and Procedures, Appendix A. (Appendix A also contains the results of a survey of all federal judges showing that the clear majority opposed disclosure.)

The Advisory Committee is of the view that accuracy of sentencing information is important not only to the defendant but also to effective correctional treatment of a convicted offender. The best way of insuring accuracy is disclosure with an opportunity for the defendant and counsel to point out to the court information thought by the defense to be inaccurate, incomplete, or otherwise

ADD-42

misleading. Experience in jurisdictions which require disclosure does not lend support to the argument that disclosure will result in less complete presentence reports or the argument that sentencing procedures will become unnecessarily protracted. It is not intended that the probation officer would be subjected to any rigorous examination by defense counsel, or that he will even be sworn to testify. The proceedings may be very informal in nature unless the court orders a full hearing.

Subdivision (c)(3)(B) provides for situations in which the sentencing judge believes that disclosure should not be made under the criteria set forth in subdivision (c)(3)(A). He may disclose only a summary of that factual information "to be relied on in determining sentence." This is similar to the proposal of the American Bar Association Standards Relating to Sentencing Alternatives and Procedures § 4.4(b) and Commentary at pp. 216 to 224.

Subdivision (c)(3)(D) provides for the return of disclosed presentence reports to insure that they do not become available to unauthorized persons. See National Council on Crime and Delinquency, Model Sentencing Act § 4 (1963): "Such reports shall be part of the record but shall be sealed and opened only on order of the court."

Subdivision (c)(3)(E) makes clear that diagnostic studies under 18 U.S.C. §§ 4208(b), 5010(c), or 5034 are covered by this rule and also that 18 U.S.C. § 4252 is included within the disclosure provisions of subdivision (c). Section 4252 provides for the presentence examination of an "eligible offender" who is believed to be an addict to determine whether "he is an addict and is likely to be rehabilitated through treatment."

Both the Organized Crime Control Act of 1970 [§ 3775(b) ] and the Comprehensive Drug Abuse Prevention and Control Act of 1970 [§ 409(b) ] have special provisions for presentence investigation in the implementation of the dangerous special offender provision. It is, however, unnecessary to incorporate them by reference in rule 32 because each contains a specific provision requiring disclosure of the presentence report. The judge does have authority to withhold some information "in extraordinary cases" provided notice is given the parties and the court's reasons for withholding information are made part of the record.

Subdivision (e) is amended to clarify the meaning.

**1975 Enactment**

A. Amendments Proposed by the Supreme Court

Rule 32 of the Federal Rules of Criminal Procedure deals with sentencing matters.

Proposed subdivision (a)(2) provides that the court is not duty bound to advise the defendant of a right to appeal when the sentence is imposed following a plea of guilty or nolo contendere.

Proposed subdivision (e) provides that the probation service must make a presentence investigation and report unless the court orders otherwise "for reasons stated on the record." The presentence report will not be submitted to the court until after the defendant pleads nolo contendere or guilty, or is found guilty, unless the defendant consents in writing. Upon the defendant's request, the court must permit the defendant to read the presentence report, except for the recommendation as to sentence. However, the court may decline to let the defendant read the report if it contains (a) diagnostic opinion that might seriously disrupt a rehabilitation program, (b) sources of information obtained upon a promise of confidentiality, or (c) any other information that, if disclosed, might result in harm to the defendant or other persons. The court must give the defendant an opportunity to comment upon the presentence report. If the court decides that the defendant should not see the report, then it must provide the defendant, orally or in writing, a summary of the factual information in the report upon which it is relying in determining sentence. No party may keep the report or make copies of it.

B. Committee Action

ADD-43

The Committee added language to subdivision (a)(1) to provide that the attorney for the government may speak to the court at the time of sentencing. The language does not require that the attorney for the government speak but permits him to do so if he wishes.

The Committee recast the language of subdivision (c)(1), which defines when presentence reports must be obtained. The Committee's provision makes it more difficult to dispense with a presentence report. It requires that a presentence report be made unless (a) the defendant waives it, or (b) the court finds that the record contains sufficient information to enable the meaningful exercise of sentencing discretion and explains this finding on the record. The Committee believes that presentence reports are important aids to sentencing and should not be dispensed with easily.

The Committee added language to subdivision (c)(3)(A) that permits a defendant to offer testimony or information to rebut alleged factual inaccuracies in the presentence report. Since the presentence report is to be used by the court in imposing sentence and since the consequence of any significant inaccuracy can be very serious to the defendant, the Committee believes that it is essential that the presentence report be completely accurate in every material respect. The Committee's addition to subdivision (c)(3)(A) will help insure the accuracy of the presentence report.

The Committee added language to subdivision (c)(3)(D) that gives the court the discretion to permit either the prosecutor or the defense counsel to retain a copy of the presentence report. There may be situations when it would be appropriate for either or both of the parties to retain the presentence report. The Committee believes that the rule should give the court the discretion in such situations to permit the parties to retain their copies. House Report No. 94-247.

### 1979 Amendments

**Rule 32(c)(3)(E).** The amendment to rule 32(c) (3) (E) is necessary in light of recent changes in the applicable statutes.

**Rule 32(f).** This subdivision is abrogated. The subject matter is now dealt with in greater detail in proposed new rule 32.1.

### 1983 Amendments

**Rule 32(a)(1).** Subdivision (a)(1) has been amended so as to impose upon the sentencing court the additional obligation of determining that the defendant and his counsel have had an opportunity to read the presentence investigation report or summary thereof. This change is consistent with the amendment of subdivision (c)(3), discussed below, providing for disclosure of the report (or, in the circumstances indicated, a summary thereof) to *both* defendant *and* his counsel *without request*. This amendment is also consistent with the findings of a recent empirical study that under present rule 32 meaningful disclosure is often lacking and "that some form of judicial prodding is necessary to achieve full disclosure." Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv.L.Rev. 1613, 1651 (1980):

> The defendant's interest in an accurate and reliable presentence report does not cease with the imposition of sentence. Rather, these interests are implicated at later stages in the correctional process by the continued use of the presentence report as a basic source of information in the handling of the defendant. If the defendant is incarcerated, the presentence report accompanies him to the correctional institution and provides background information for the Bureau of Prisons' classification summary, which, in turn, determines the defendant's classification within the facility, his ability to obtain furloughs, and the choice of treatment programs. The presentence report also plays a crucial role during parole determination. Section 4207 of the Parole Commission and Reorganization Act directs the parole hearing examiner to consider, if available, the presentence report as well as other records concerning the prisoner. In addition to its general use as background at the parole hearing, the presentence report serves as the primary source of information for calculating the inmate's parole guideline score.

ADD-44

Though it is thus important that the defendant be aware *now* of all these potential uses, the Advisory Committee has considered but not adopted a requirement that the trial judge specifically advise the defendant of these matters. The Committee believes that this additional burden should not be placed upon the trial judge, and that the problem is best dealt with by a form attached to the presentence report, to be signed by the defendant, advising of these potential uses of the report. This suggestion has been forwarded to the Probation Committee of the Judicial Conference.

**Rule 32(c)(3)(A), (B) & (C).** Three important changes are made in subdivision (c)(3): disclosure of the presentence report is no longer limited to those situations in which a request is made; disclosure is now provided to both defendant and his counsel; and disclosure is now required a reasonable time before sentencing. These changes have been prompted by findings in a recent empirical study that the extent and nature of disclosure of the presentence investigation report in federal courts under current rule 32 is insufficient to ensure accuracy of sentencing information. In 14 districts, disclosure is made only on request, and such requests are received in fewer than 50% of the cases. Forty-two of 92 probation offices do not provide automatic notice to defendant or counsel of the availability of the report; in 18 districts, a majority of the judges do not provide any notice of the availability of the report, and in 20 districts such notice is given only on the day of sentencing. In 28 districts, the report itself is not disclosed until the day of sentencing in a majority of cases. Thirty-one courts generally disclose the report only to counsel and not to the defendant, unless the defendant makes a specific request. Only 13 districts disclose the presentence report to both defendant and counsel prior to the day of sentencing in 90% or more of the cases. Fennell & Hall, supra, at 1640-49.

These findings make it clear that rule 32 in its present form is failing to fulfill its purpose. Unless disclosure is made sufficiently in advance of sentencing to permit the assertion and resolution of claims of inaccuracy prior to the sentencing hearing, the submission of additional information by the defendant when appropriate, and informed comment on the presentence report, the purpose of promoting accuracy by permitting the defendant to contest erroneous information is defeated. Similarly, if the report is not made available to the defendant and his counsel in a timely fashion, and if disclosure is only made on request, their opportunity to review the report may be inadequate. Finally, the failure to disclose the report to the defendant, or to require counsel to review the report with the defendant, significantly reduces the likelihood that false statements will be discovered, as much of the content of the presentence report will ordinarily be outside the knowledge of counsel.

The additional change to subdivision (c)(3)(C) is intended to make it clear that the government's right to disclosure does not depend upon whether the defendant elects to exercise his right to disclosure.

**Rule 32(c)(3)(D).** Subdivision (c)(3)(D) is entirely new. It requires the sentencing court, as to each matter controverted, either to make a finding as to the accuracy of the challenged factual proposition or to determine that no reliance will be placed on that proposition at the time of sentencing. This new provision also requires that a record of this action accompany any copy of the report later made available to the Bureau of Prisons or Parole Commission.

As noted above, the Bureau of Prisons and the Parole Commission make substantial use of the presentence investigation report. Under current practice, this can result in reliance upon assertions of fact in the report in the making of critical determinations relating to custody or parole. For example, it is possible that the Bureau or Commission, in the course of reaching a decision on such matters as institution assignment, eligibility for programs, or computation of salient factors, will place great reliance upon factual assertions in the report which are in fact untrue and which remained unchallenged at the time of sentencing because defendant or his counsel deemed the error unimportant in the sentencing context (e.g., where the sentence was expected to conform to an earlier plea agreement, or where the judge said he would disregard certain controverted matter in setting the sentence).

The first sentence of new subdivision (3)(c)(D) is intended to ensure that a record is made as to exactly what resolution occurred as to controverted matter. The second sentence is intended to ensure that this record comes to the attention of the Bureau or Commission when these agencies utilize the presentence investigation report. In current practice, "less than one-fourth of the district courts (twenty of ninety-two) communicate to the correctional agencies the defendant's challenges to information in the presentence report and the resolution of these challenges." Fennell & Hall, supra, at 1680.

New subdivision (c)(3)(D) does not impose an onerous burden. It does not even require the preparation of a transcript. As is now the practice in some courts, these findings and determinations can be simply entered onto a form which is then appended to the report.

**Rule 32(c)(3)(E) & (F).** Former subdivisions (c)(3)(D) and (E) have been renumbered as (c)(3)(E) and (F). The only change in the former, necessitated because disclosure is now to defendant and his counsel.

The issue of access to the presentence report at the institution was discussed by the Advisory Committee, but no action was taken on that matter because it was believed to be beyond the scope of the rule-making power. Rule 32 in its present form does not speak to this issue, and thus the Bureau of Prisons and the Parole Commission are free to make provision for disclosure to inmates and their counsel.

**Rule 32(d).** The amendment to Rule 32(d) is intended to clarify (i) the standard applicable to plea withdrawal under this rule, and (ii) the circumstances under which the appropriate avenue of relief is other than a withdrawal motion under this rule. Both of these matters have been the source of considerable confusion under the present rule. In its present form, the rule declares that a motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed, but then states the standard for permitting withdrawal after sentence. In fact, "there is no limitation upon the time within which relief thereunder may, after sentencing, be sought." *United States v. Watson,* 548 F.2d 1058 (D.C.Cir.1977). It has been critically stated that "the Rule offers little guidance as to the applicable standard for a pre-sentence withdrawal of plea," *United States v. Michaelson,* 552 F.2d 472 (2d Cir.1977), and that as a result "the contours of [the presentence] standard are not easily defined." *Bruce v. United States,* 379 F.2d 113 (D.C.Cir.1967).

By replacing the "manifest injustice" standard with a requirement that, in cases to which it applied, the defendant must (unless taking a direct appeal) proceed under 28 U.S.C. § 2255, the amendment avoids language which has been a cause of unnecessary confusion. Under the amendment, a defendant who proceeds too late to come under the more generous "fair and just reason" standard must seek relief under § 2255, meaning the applicable standard is that stated in *Hill v. United States,* 368 U.S. 424 (1962): "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."

Some authority is to be found to the effect that the rule 32(d) "manifest injustice" standard is indistinguishable from the § 2255 standard. In *United States v. Hamilton,* 553 F.2d 63 (10th Cir.1977), for example, the court, after first concluding defendant was not entitled to relief under the § 2255 "miscarriage of justice" test, then held that "[n]othing is to be gained by the invocation of Rule 32(d)" and its "manifest injustice" standard. Some courts, however, have indicated that the rule 32(d) standard provides a somewhat broader basis for relief than § 2255. *United States v. Dabdoub-Diaz,* 599 F.2d 96 (5th Cir.1979); *United States v. Watson,* 548 F.2d 1058 (D.C.Cir.1977); *Meyer v. United States,* 424 F.2d 1181 (8th Cir.1970); *United States v. Kent,* 397 F.2d 446 (7th Cir.1968). It is noteworthy, however, that in Dabdoub-Diaz, Meyer and Kent the defendant did not prevail under either § 2255 or Rule 32(d), and that in Watson, though the § 2255 case was remanded for consideration as a 32(d) motion, defendant's complaint (that he was not advised of the special parole term, though the sentence he received did not exceed that he was warned about by the court) was one as to which relief had been denied even upon direct appeal from the conviction. *United States v. Peters,* No. 77-1700 (4th Cir. Dec. 22, 1978).

Indeed, it may more generally be said that the results in § 2255 and 32(d) guilty plea cases have been for the most part the same. Relief has often been granted or recognized as available via either of these routes for essentially the same reasons: that there exists a complete constitutional bar to conviction on the offense charged, *Brooks v. United States,* 424 F.2d 425 (5th Cir.1970) (§ 2255), *United States v. Bluso,* 519 F.2d 473 (4th Cir.1975) (Rule 32); that the defendant was incompetent at the time of his plea. *United States v. Masthers,* 539 F.2d 721 (D.C.Cir.1976) (§ 2255), *Kienlen v. United States,* 379 F.2d 20 (10th Cir.1967) (Rule 32); and that the bargain the prosecutor made with defendant was not kept, *Walters v. Harris,* 460 F.2d 988 (4th Cir.1972) (§ 2255), *United States v. Hawthorne,* 502 F.2d 1183 (3rd Cir.1974) (Rule 32). Perhaps even more significant is the fact that

relief has often been denied under like circumstances whichever of the two procedures was used: a mere technical violation of Rule 11, *United States v. Timmreck,* 441 U.S. 780 (1979) (§ 2255), *United States v. Saft,* 558 F.2d 1073 (2d Cir.1977) (Rule 32); the mere fact defendants expected a lower sentence, *United States v. White,* 572 F.2d 1007 (4th Cir.1978) (§ 2255), *Masciola v. United States,* 469 F.2d 1057 (3rd Cir.1972) (Rule 32); or mere familial coercion, *Wojtowicz v. United States,* 550 F.2d 786 (2d Cir.1977) (§ 2255), *United States v. Bartoli,* 572 F.2d 188 (8th Cir.1978) (Rule 32).

The one clear instance in which a Rule 32(d) attack might prevail when a § 2255 challenge would not is present in those circuits which have reached the questionable result that post-sentence relief under 32(d) is available not merely upon a showing of a "manifest injustice" but also for any deviation from literal compliance with Rule 11. *United States v. Cantor,* 469 F.2d 435 (3d Cir.1972). See Advisory Committee Note to Rule 11(h), noting the unsoundness of that position.

The change in Rule 32(d), therefore, is at best a minor one in terms of how post-sentence motions to withdraw pleas will be decided. It avoids the confusion which now obtains as to whether a § 2255 petition must be assumed to also be a 32(d) motion and, if so, whether this bears significantly upon how the matter should be decided. See, e.g., *United States v. Watson,* supra. It also avoids the present undesirable situation in which the mere selection of one of two highly similar avenues of relief, rule 32(d) or § 2255, may have significant procedural consequences, such as whether the government can take an appeal from the district court's adverse ruling (possible under § 2255 only). Moreover, because § 2255 and Rule 32(d) are properly characterized as the "two principal procedures for collateral attack of a federal plea conviction," Borman, The Hidden Right to Direct Appeal From a Federal Conviction, 64 Cornell L.Rev. 319, 327 (1979), this amendment is also in keeping with the proposition underlying the Supreme Court's decision in *United States v. Timmreck,* supra, namely, that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." The amendment is likewise consistent with ALI Code of Pre-Arraignment Procedure § 350.9 (1975) ("Allegations of noncompliance with the procedures provided in Article 350 shall not be a basis for review of a conviction after the appeal period for such conviction has expired, unless such review is required by the Constitution of the United States or of this State or otherwise by the law of this State other than Article 350"); ABA Standards Relating to the Administration of Criminal Justice § 14-2.1 (2d ed. 1978) (using "manifest injustice" standard, but listing six specific illustrations each of which would be basis for relief under § 2255); Unif.R.Crim.P. 444(e) (Approved Draft, 1974) (using "interest of justice" test, but listing five specific illustrations each of which would be basis for relief under § 2255).

The first sentence of the amended rule incorporates the "fair and just" standard which the federal courts, relying upon dictum in *Kercheval v. United States,* 274 U.S. 220 (1927), have consistently applied to presentence motions. See, e.g., *United States v. Strauss,* 563 F.2d 127 (4th Cir.1977); *United States v. Bradin,* 535 F.2d 1039 (8th Cir.1976); *United States v. Barker,* 514 F.2d 208 (D.C.Cir.1975). Under the rule as amended, it is made clear that the defendant has the burden of showing a "fair and just" reason for withdrawal of the plea. This is consistent with the prevailing view, which is that "the defendant has the burden of satisfying the trial judge that there are valid grounds for withdrawal," see *United States v. Michaelson,* supra, and cases cited therein. (Illustrative of a reason which would meet this test but would likely fall short of the § 2255 test is where the defendant now wants to pursue a certain defense which he for good reason did not put forward earlier, *United States v. Barker,* supra.)

Although "the terms 'fair and just' lack any pretense of scientific exactness," *United States v. Barker,* supra, guidelines have emerged in the appellate cases for applying this standard. Whether the movant has asserted his legal innocence is an important factor to be weighed, *United States v. Joslin,* 434 F.2d 526 (D.C.Cir.1970), as is the reason why the defenses were not put forward at the time of original pleading. *United States v. Needles,* 472 F.2d 652 (2d Cir.1973). The amount of time which has passed between the plea and the motion must also be taken into account.

A swift change of heart is itself strong indication that the plea was entered in haste and confusion * * *. By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.

*United States v. Barker,* supra.

If the defendant establishes such a reason, it is then appropriate to consider whether the government would be prejudiced by withdrawal of the plea. Substantial prejudice may be present for a variety of reasons. See *United States v. Jerry,* 487 F.2d 600 (3d Cir.1973) (physical evidence had been discarded); *United States v. Vasquez-Velasco,* 471 F.2d 294 (9th Cir.1973) (death of chief government witness); *United States v. Lombardozzi,* 436 F.2d 878 (2d Cir.1971) (other defendants with whom defendant had been joined for trial had already been tried in a lengthy trial); *Farnsworth v. Sanford,* 115 F.2d 375 (5th Cir.1940) (prosecution had dismissed 52 witnesses who had come from all over the country and from overseas bases).

There is currently some disparity in the manner in which presentence motions to withdraw a guilty plea are dealt with. Some courts proceed as if any desire to withdraw the plea before sentence is "fair and just" so long as the government fails to establish that it would be prejudiced by the withdrawal. Illustrative is *United States v. Savage,* 561 F.2d 554 (4th Cir.1977), where the defendant pleaded guilty pursuant to a plea agreement that the government would recommend a sentence of 5 years. At the sentencing hearing, the trial judge indicated his unwillingness to follow the government's recommendation, so the defendant moved to withdraw his plea. That motion was denied. On appeal, the court held that there had been no violation of Rule 11, in that refusal to accept the government's recommendation does not constitute a rejection of the plea agreement. But the court then proceeded to hold that absent any showing of prejudice by the government, "the defendant should be allowed to withdraw his plea"; only upon such a showing by the government must the court "weigh the defendant's reasons for seeking to withdraw his plea against the prejudice which the government will suffer." The other view is that there is no occasion to inquire into the matter of prejudice unless the defendant first shows a good reason for being allowed to withdraw his plea. As stated in *United States v. Saft,* 558 F.2d 1073 (2d Cir.1977): "The Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a guilty plea, although such prejudice may be considered by the district court in exercising its discretion." The second sentence of the amended rule, by requiring that the defendant show a "fair and just" reason, adopts the *Saft* position and rejects that taken in Savage.

The *Savage* position, as later articulated in *United States v. Strauss,* supra, is that the "sounder view, supported by both the language of the rule and by the reasons for it, would be to allow withdrawal of the plea prior to sentencing unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." (Quoting 2 C. Wright, Federal Practice and Procedure § 538, at 474-75 (1969).) Although that position may once have been sound, this is no longer the case in light of the recent revisions of Rule 11. Rule 11 now provides for the placing of plea agreements on the record, for full inquiry into the voluntariness of the plea, for detailed advice to the defendant concerning his rights and the consequences of his plea and a determination that the defendant understands these matters, and for a determination of the accuracy of the plea. Given the great care with which pleas are taken under this revised Rule 11, there is no reason to view pleas so taken as merely "tentative," subject to withdrawal before sentence whenever the government cannot establish prejudice.

Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but "a grave and solemn act," which is "accepted only with care and discernment."

*United States v. Barker,* supra, quoting from *Brady v. United States,* 397 U.S. 742 (1970).

The facts of the *Savage* case reflect the wisdom of this position. In *Savage,* the defendant had entered into a plea agreement whereby he agreed to plead guilty in exchange for the government's promise to recommend a sentence of 5 years, which the defendant knew was not binding on the court. Yet, under the approach taken in *Savage,* the defendant remains free to renege on his plea bargain, notwithstanding full compliance therewith by the attorney for the government, if it later appears to him from the presentence report or the comments of the trial judge or any other source that the court will not follow the government's recommendation. Having bargained for a recommendation pursuant to Rule 11(e)(1)(B), the defendant should not be entitled, in effect, to unilaterally convert the plea agreement into a Rule 11(e)(1)(C) type of agreement (i.e., one with a guarantee of a specific sentence which, if not given, permits withdrawal of the plea).

The first sentence of subdivision (d) provides that the motion, to be judged under the more liberal "fair and just reason" test, must have been made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c). The latter of these has been added to the rule to make it clear that the lesser standard also governs prior to the second stage of sentencing when the judge, pursuant to that statute, has committed the defendant to the custody of the Attorney General for study pending final disposition. Several circuits have left this issue open, e.g., *United States v. McCoy,* 477 F.2d 550 (5th Cir.1973); *Callaway v. United States,* 367 F.2d 140 (10th Cir.1966); while some have held that a withdrawal motion filed between tentative and final sentencing should be judged against the presentence standard, *United States v. Barker,* 514 F.2d 208 (D.C.Cir.1975); *United States v. Thomas,* 415 F.2d 1216 (9th Cir.1969).

Inclusion of the § 4205(c) situation under the presentence standard is appropriate. As explained in *Barker*:

Two reasons of policy have been advanced to explain the near-presumption which Rule 32(d) erects against post-sentence withdrawal motions. The first is that post-sentence withdrawal subverts the "stability" of "final judgments." * * * The second reason is that the post-sentence withdrawal motion often constitutes a veiled attack on the judge's sentencing decision; to grant such motions in lenient fashion might undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentence process.

* * * Concern for the "stability of final judgments" has little application to withdrawal motions filed between tentative and final sentencing under Section 4208(b) [now 4205(c) ]. The point at which a defendant's judgment of conviction becomes "final" for purposes of appeal--whether at tentative or at final sentencing--is wholly within the defendant's discretion. * * * Concern for the integrity of the sentencing process is, however, another matter. The major point, in our view, is that tentative sentencing under Section 4208(b) [now 4205(c) ] leaves the defendant ignorant of his final sentence. He will therefore be unlikely to use a withdrawal motion as an oblique attack on the judge's sentencing policy. The relative leniency of the "fair and just" standard is consequently not out of place.

## 1987 Amendments

The amendments are technical. No substantive change is intended.

## 1989 Amendments

The amendment to subdivision (a)(1) is intended to clarify that the court is expected to proceed without unnecessary delay, and that it may be necessary to delay sentencing when an applicable sentencing factor cannot be resolved at the time set for sentencing. Often, the factor will relate to a defendant's agreement to cooperate with the government. But, other factors may be capable of resolution if the court delays sentencing while additional information is generated. As currently written, the rule might imply that a delay requested by one party or suggested by the Court *sua sponte* might be unreasonable. The amendment rids the rule of any such implication and provides the sentencing court with desirable discretion to assure that relevant factors are considered and accurately resolved. In exercising this discretion, the court retains under the amendment the authority to refuse to delay sentencing when a delay is inappropriate under the circumstances.

In amending subdivision (c)(1), the Committee conformed the rule to the current practice in some courts: i.e., to permit the defendant and the prosecutor to see a presentence report prior to a plea of guilty if the court, with the written consent of the defendant, receives the report at that time. The amendment permits, but does not require, disclosure of the report with the written consent of the defendant.

The amendment to change the "reasonable time" language in subdivision (c)(3)(A) to at least 10 days prior to sentencing, unless the defendant waives the minimum period, conforms the rule to 18 U.S.C. 3552(d). Nothing in the statue [sic] or the rule prohibits a court from requiring disclosure at an earlier time before sentencing. The inclusion of a specific waiver provision

ADD-49

is intended to conform the rule to the statute and is not intended to suggest that waiver of other rights is precluded when no specific waiver provision is set forth in a rule or portion thereof.

The language requiring the court to provide the defendant and defense counsel with a copy of the presentence report complements the abrogation of subdivision (E), which had required the defense to return the probation report. Because a defendant or the government may seek to appeal a sentence, an option that is permitted under some circumstances, there will be cases in which the defendant has a need for the presentence report during the preparation of, or the response to, an appeal. This is one reason why the Committee decided that the defendant should not be required to return the nonconfidential portions of the presentence report that have been disclosed. Another reason is that district courts may find it desirable to adopt portions of the presentence report when making findings of fact under the guidelines. They would be inhibited unnecessarily from relying on careful, accurate presentence reports if such reports could not be retained by defendants. A third reason why defendant should be able to retain the reports disclosed to them is that the Supreme Court's decision in *United States Department of Justice v. Julian*, 486 U.S. 1 (1988), 108 S.Ct. 1606 (1988), suggests that defendants will routinely be able to secure their reports through Freedom of Information Act suits. No public interest is served by continuing to require the return of reports, and unnecessary FOIA litigation should be avoided as a result of the amendment to Rule 32.

The amended rule does not direct whether the defendant or the defendant's lawyer should retain the presentence report. In exceptional cases where retention of a report in a local detention facility might pose a danger to persons housed there, the district judge may direct that the defendant not personally retain a copy of the report until the defendant has been transferred to the facility where the sentence will be served.

Because the parties need not return the presentence report to the probation officer, the Solicitor General should be able to review the report in deciding whether to permit the United States to appeal a sentence under the Sentencing Reform Act of 1984, 18. U.S.C. § 3551 et seq.

Although the Committee was concerned about the potential unfairness of having confidential or diagnostic material included in presentence reports but not disclosed to a defendant who might be adversely affected by such material, it decided not to recommend at this time a change in the rule which would require complete disclosure. Some diagnostic material might be particularly useful when a court imposes probation, and might well be harmful to the defendant if disclosed. Moreover, some of this material might assist correctional officials in prescribing treatment programs for an incarcerated defendant. Information provided by confidential sources and information posing a possible threat of harm to third parties was particularly troubling to the Committee, since this information is often extremely negative and thus potentially harmful to a defendant. The Committee concluded, however, that it was preferable to permit the probation officer to include this information in a report so that the sentencing court may determine whether is [it] ought to be disclosed to the defendant. If the court determines that it should not be disclosed, it will have to decide whether to summarize the contents of the information or to hold that no finding as to the undisclosed information will be made because such information will not be taken into account in sentencing. Substantial due process problems may arise if a court attempts to summarize information in a presentence report, the defendant challenges the information, and the court attempts to make a finding as to the accuracy of the information without disclosing to the defendant the source of the information or the details placed before the court. In deciding not to require disclosure of everything in a presentence report, the Committee made no judgment that findings could validly be made based upon nondisclosed information.

Finally, portions of the rule were gender-neutralized.

### 1991 Amendments

The amendments are technical. No substantive changes are intended.

### 1993 Amendments

ADD-50

The original subdivision (e) has been deleted due to statutory changes affecting the authority of a court to grant probation. See 18 U.S.C. 3561(a). Its replacement is one of a number of contemporaneous amendments extending Rule 26.2 to hearings and proceedings other than the trial itself. The amendment to Rule 32 specifically codifies the result in cases such as *United States v. Rosa,* 891 F.2d 1074 (3d Cir.1989). In that case the defendant pleaded guilty to a drug offense. During sentencing the defendant unsuccessfully attempted to obtain Jencks Act materials relating to a co-accused who testified as a government witness at sentencing. In concluding that the trial court erred in not ordering the government to produce its witness's statement, the court stated:

We believe the sentence imposed on a defendant is the most critical stage of criminal proceedings, and is, in effect, the "bottom-line" for the defendant, particularly where the defendant has pled guilty. This being so, we can perceive no purpose in denying the defendant the ability to effectively cross-examine a government witness where such testimony may, if accepted, add substantially to the defendant's sentence. In such a setting, we believe that the rationale of *Jencks v. United States ...* and the purpose of the Jencks Act would be disserved if the government at such a grave stage of a criminal proceeding could deprive the accused of material valuable not only to the defense but to his very liberty. Id. at 1079.

The court added that the defendant had not been sentenced under the new Sentencing Guidelines and that its decision could take on greater importance under those rules. Under Guideline sentencing, said the court, the trial judge has less discretion to moderate a sentence and is required to impose a sentence based upon specific factual findings which need not be established beyond a reasonable doubt. Id. at n. 3.

Although the *Rosa* decision decided only the issue of access by the defendant to Jencks material, the amendment parallels Rules 26.2 (applying Jencks Act to trial) and 12(i) (applying Jencks Act to suppression hearing) in that both the defense and the prosecution are entitled to Jencks material.

Production of a statement is triggered by the witness's oral testimony. The sanction provision rests on the assumption that the proponent of the witness's testimony has deliberately elected to withhold relevant material.

**1994 Amendments**

The amendments to Rule 32 are intended to accomplish two primary objectives. First, the amendments incorporate elements of a "Model Local Rule for Guideline Sentencing" which was proposed by the Judicial Conference Committee on Probation Administration in 1987. That model rule and the accompanying report were prepared to assist trial judges in implementing guideline sentencing mandated by the Sentencing Reform Act of 1984. *See* Committee on the Admin. of the Probation Sys., Judicial Conference of the U.S., Recommended Procedures for Guideline Sentencing and Commentary: Model Local Rule for Guideline Sentencing, Reprinted in T. Hutchinson & D. Yellen, *Federal Sentencing Law and Practice,* app. 8, at 431 (1989). It was anticipated that sentencing hearings would become more complex due to the new fact finding requirements imposed by guideline sentencing methodology. *See* U.S.S.G. § 6A1.2. Accordingly, the model rule focused on preparation of the presentence report as a means of identifying and narrowing the issues to be decided at the sentencing hearing.

Second, in the process of effecting those amendments, the rule was reorganized. Over time, numerous amendments to the rule had created a sort of hodgepodge; the reorganization represents as attempt to reflect as appropriate sequential order in the sentencing procedures.

**Subdivision (a).** Subdivision (a) retains the general mandate that sentence be imposed without unnecessary delay thereby permitting the court to regulate the time to be allowed for the probation officer to complete the presentence investigation and submit the report. The only requirement is that sufficient time be allowed for completion of the process prescribed by subdivision (b)(6) unless the time periods established in the subdivision are shortened or lengthened by the court for good cause. Such limits are not intended to create any new substantive right for the defendant or the Government which would entitle either to relief if a time limit prescribed in the rule is not kept.

ADD-51

The remainder of subdivision (a), which addressed the sentencing hearing, is now located in subdivision (c).

**Subdivision (b).** Subdivision (b) (formerly subdivision (c)), which addresses the presentence investigation, has been modified in several respects.

First, subdivision (b)(2) is a new provision which provides that, on request, defense counsel is entitled to notice and a reasonable opportunity to be present at any interview of the defendant conducted by the probation officer. Although the courts have not held that presentence interviews are a critical stage of the trial for purposes of the Sixth Amendment right to counsel, the amendment reflects case law which has indicated that requests for counsel to be present should be honored. *See,* e.g., *United States v. Herrera-Figueroa,* 918 F.2d 1430, 1437 (9th Cir. 1990)(court relied on its supervisory power to hold that probation officers must honor request for counsel's presence); *United States v. Tisdale,* 952 F.2d 934, 940 (6th Cir. 1992)(court agreed with rule requiring probation officers to honor defendant's request for attorney or request from attorney not to interview defendant in absence of counsel). The Committee believes that permitting counsel to be present during such interviews may avoid unnecessary misunderstandings between the probation officer and the defendant. The rule does not further define the term "interview." The Committee intended for the provision to apply to any communication initiated by the probation officer where he or she is asking the defendant to provide information which will be used in preparation of the presentence investigation. Spontaneous or unplanned encounters between the defendant and the probation officer would normally not fall within the purview of the rule. The Committee also believed that the burden should rest on defense counsel, having received notice, to respond as promptly as possible to enable timely completion of the presentence report.

Subdivision (b)(6), formerly (c)(3), includes several changes which recognize the key role the presentence report is playing under guideline sentencing. The major thrust of these changes is to address the problem of resolving objections by the parties to the probation officer's presentence report. Subdivision (b)(6)(A) now provides that the probation officer must present the presentence report to the parties not later than 35 days before the sentencing hearing (rather than 10 days before imposition of the sentence) in order to provide some additional time to the parties and the probation officer to attempt to resolve objections to the report. There has been a slight change in the practice of deleting from the copy of the report given to the parties certain information specified in (b)(6)(A). Under that new provision (changing former subdivision (c)(3)(A)), the court has the discretion (in an individual case or in accordance with a local rule) to direct the probation officer to withhold any final recommendation concerning the sentence. Otherwise, the recommendation, if any, is subject to disclosure. The prior practice of not disclosing confidential information, or other information which might result in harm to the defendant or other persons, is retained in (b)(5).

New subdivisions (b)(6)(B), (C), and (D) now provide explicit deadlines and guidance on resolving disputes about the contents of the presentence report. The amendments are intended to provide early resolution of such disputes by (1) requiring the parties to provide the probation officer with a written list of objections to the report with in 14 days of receiving the report; (2) permitting the probation officer to meet with the defendant, the defendant's counsel, and the attorney for the Government to discuss objections to the report, conduct and additional investigation, and to make revisions to the report as deemed appropriate; (3) requiring the probation officer to submit the report to the court and the parties not later that 7 days before the sentencing hearing, noting any unresolved disputes; and (4) permitting the court to treat the report as its findings of fact, except for the parties' unresolved objections. Although the rule does not explicitly address the question of whether counsel's objections to the report are to be filed with the court, there is nothing in the rule which would prohibit a court from requiring the parties to file their original objections or have them included as an addendum to the presentence report.

This procedure, which generally mirrors the approach in the Model Local Rule for Guideline Sentencing, supra, is intended to maximize judicial economy by providing for more orderly sentencing hearings while also providing fair opportunity for both parties to review, object to, and comment upon, the probation officer's report in advance of the sentencing hearing. Under the amendment, the parties would still be free at the sentencing hearing to comment on the presentence report, and in the discretion of the court, to introduce evidence concerning their objections to the report.

**Subdivision (c).** Subdivision (c) addresses the imposition of sentence and makes no major changes in current practice. The provision consists largely of material formerly located in subdivision (a). Language formerly in (a)(1) referring to the court's disclosure to the parties of the probation officer's determination of the sentencing classifications and sentencing guideline range is now located in subdivisions (b)(4)(B) and (c)(1). Likewise, the brief reference in former (a)(1) to the ability of the parties to comment on the probation officer's determination of sentencing classifications and sentencing guideline range is now located in (c)(1) and (c)(3).

Subdivision (c)(1) is not intended to require that resolution of objections and imposition of the sentence occur at the same time or during the same hearing. It requires only that the court rule on any objections before sentence is imposed. In considering objections during the sentencing hearing, the court may in its discretion, permit the parties to introduce evidence. The rule speaks in terms of the court's discretion, but the Sentencing Guidelines specifically provide that the court must provide the parties with a reasonable opportunity to offer information concerning a sentencing factor reasonably in dispute. See U.S.S.G. § 6A1.3(a). Thus, it may be an issue of discretion not to permit the introduction of additional evidence. Although the rules of evidence do not apply to sentencing proceedings, *see* Fed. R. Evid. 1101(d)(3), the court clearly has discretion in determining the mode, timing, and extent of the evidence offered. *See, e.g., United States v. Zuleta-Alvarez,* 922 F.2d 33, 36 (1st Cir. 1990)(trial court did not err in denying defendant's late request to introduce rebuttal evidence by way of cross-examination).

Subdivision (c)(1) (formerly subdivision (c)(3)(D)) indicates that the court need not resolve controverted matters which will "not be taken into account in, or will not affect, sentencing." the words "will not affect" did not exist in the former provision but were added in the revision in recognition that there might be situations, due to overlaps in the sentencing ranges, where a controverted matter would not alter the sentence even if the sentencing range were changed.

The provision for disclosure of a witness' statements, which was recently proposed as an amendment to Rule 32 as new subdivision (e), is now located in subdivisions (c)(2).

Subdivision (c)(3) includes minor changes. First, if the court intends to rely on information otherwise excluded from the presentence report under subdivision (b)(5), that information is to be summarized in writing and submitted to the defendant and the defendant's counsel. Under the former provision in (c)(3)(A), such information could be summarized orally. Once the information is presented, the defendant and the defendant's counsel are to be given a reasonable opportunity to comment; in appropriate cases, that may require a continuance of the sentencing proceedings.

Subdivision (c)(5), concerning notification of the right to appeal, was formerly included in subdivision (a)(2). Although the provision has been rewritten, the Committee intends no substantive change in practice. That is, the court may, but is not required to, advise a defendant who has entered a guilty plea, nolo contendere plea or a conditional guilty plea of any right to appeal (such as an appeal challenging jurisdiction). However, the duty to advise the defendant in such cases extends only to advice on the right to appeal any sentence imposed.

**Subdivision (d).** Subdivision (d), dealing with entry of the court's judgement, is former subdivision (b).

**Subdivision (e).** Subdivision (e), which addresses the topic of withdrawing pleas, was formerly subdivision (d). Both provisions remain the same except for minor stylistic changes.

Under present practice, the court may permit, but is not required to hear, victim allocution before imposing sentence. The Committee considered, but rejected, a provision which would have required the court to hear victim allocution at sentencing.

**1996 Amendments**

ADD-53

**Subdivision (d)(2).** A provision for including a verdict of criminal forfeiture as a part of the sentence was added in 1972 to Rule 32. Since then, the rule has been interpreted to mean that any forfeiture order is a part of the judgment of conviction and cannot be entered before sentencing. *See, e.g., United States v. Alexander,* 772 F.Supp. 440 (D.Minn.1990).

Delaying forfeiture proceedings, however, can pose real problems, especially in light of the implementation of the Sentencing Reform Act in 1987 and the resulting delays between verdict and sentencing in complex cases. First, the government's statutory right to discover the location of property subject to forfeiture is triggered by entry of an order of forfeiture. *See* 18 U.S.C. § 1963(k) and 21 U.S.C. § 853(m). If that order is delayed until sentencing, valuable time may be lost in locating assets which may have become unavailable or unusable. Second, third persons with an interest in the property subject to forfeiture must also wait to petition the court to begin ancillary proceedings until the forfeiture order has been entered. *See* 18 U.S.C. § 1963(l) and 21 U.S.C. § 853(m). And third, because the government cannot actually seize the property until an order of forfeiture is entered, it may be necessary for the court to enter restraining orders to maintain the status quo.

The amendment to Rule 32 is intended to address these concerns by specifically recognizing the authority of the court to enter a preliminary forfeiture order before sentencing. Entry of an order of forfeiture before sentencing rests within the discretion of the court, which may take into account anticipated delays in sentencing, the nature of the property, and the interests of the defendant, the government, and third persons.

The amendment permits the court to enter its order of forfeiture at any time before sentencing. Before entering the order of forfeiture, however, the court must provide notice to the defendant and a reasonable opportunity to be heard on the question of timing and form of any order of forfeiture.

The rule specifies that the order, which must ultimately be made a part of the sentence and included in the judgment, must contain authorization for the Attorney General to seize the property in question and to conduct appropriate discovery and to begin any necessary ancillary proceedings to protect third parties who have an interest in the property.

## 2000 Amendments

The rule is amended to reflect the creation of new Rule 32.2, which now governs criminal forfeiture procedures.

## 2002 Amendments

The language of Rule 32 has been amended as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only, except as noted below.

The rule has been completely reorganized to make it easier to follow and apply. For example, the definitions in the rule have been moved to the first section and the sequencing of the sections generally follows the procedure for presentencing and sentencing procedures.

Revised Rule 32(a) contains definitions that currently appear in Rule 32(f). One substantive change was made in Rule 32(a)(2). The Committee expanded the definition of victims of crimes of violence or sexual abuse to include victims of child pornography under 18 U.S.C. §§ 2251-2257 (child pornography and related offenses). The Committee considered those victims to be similar to victims of sexual offenses under 18 U.S.C. §§ 2241-2248, who already possess that right.

Revised Rule 32(d) has been amended to more clearly set out the contents of the presentence report concerning the application of the Sentencing Guidelines.

Current Rule 32(e), which addresses the ability of a defendant to withdraw a guilty plea, has been moved to Rule 11(e).

ADD-54

Rule 32(h) is a new provision that reflects *Burns v. United States*, 501 U.S. 129, 138-39 (1991). In *Burns*, the Court held that, before a sentencing court could depart upward on a ground not previously identified in the presentence report as a ground for departure, Rule 32 requires the court to give the parties reasonable notice that it is contemplating such a ruling and to identify the specific ground for the departure. The Court also indicated that because the procedural entitlements in Rule 32 apply equally to both parties, it was equally appropriate to frame the issue as whether notice is required before the sentencing court departs either upward or downward. *Id.* at 135, n.4.

Revised Rule 32(i)(3) addresses changes to current Rule 32(c)(1). Under the current rule, the court is required to "rule on any unresolved objections to the presentence report." The rule does not specify, however, whether that provision should be read literally to mean every objection that might have been made to the report or only on those objections that might in some way actually affect the sentence. The Committee believed that a broad reading of the current rule might place an unreasonable burden on the court without providing any real benefit to the sentencing process. Revised Rule 32(i)(3) narrows the requirement for court findings to those instances when the objection addresses a "controverted matter." If the objection satisfies that criterion, the court must either make a finding on the objection or decide that a finding is not required because the matter will not affect sentencing or that the matter will not be considered at all in sentencing.

Revised Rule 32(i)(4)(B) provides for the right of certain victims to address the court during sentencing. As noted, *supra*, revised Rule 32(a)(2) expands the definition of victims to include victims of crimes under 18 U.S.C. §§ 2251-57 (child pornography and related offenses). Thus, they too will now be permitted to address the court.

Revised Rule 32(i)(1)(B) is intended to clarify language that currently exists in Rule 32(h)(3), that the court must inform both parties that the court will rely on information not in the presentence report and provide them with an opportunity to comment on the information.

Rule 32(i)(4)(C) includes a change concerning who may request an in camera proceeding. Under current Rule 32(c)(4), the parties must file a joint motion for an in camera proceeding to hear the statements by defense counsel, the defendant, the attorney for the government, or any victim. Under the revised rule, any party may move (for good cause) that the court hear in camera any statement--by a party or a victim--made under revised Rule 32(i)(4).

Finally, the Committee considered, but did not adopt, an amendment that would have required the court to rule on any "unresolved objection to a material matter" in the presentence report, whether or not the court will consider it in imposing an appropriate sentence. The amendment was considered because an unresolved objection that has no impact on determining a sentence under the Sentencing Guidelines may affect other important post-sentencing decisions. For example, the Bureau of Prisons consults the presentence report in deciding where a defendant will actually serve his or her sentence of confinement. *See A Judicial Guide to the Federal Bureau of Prisons*, 11 (United States Department of Justice, Federal Bureau of Prisons 1995) (noting that the "Bureau relies primarily on the Presentence Investigator Report ..."). And as some courts have recognized, Rule 32 was intended to guard against adverse consequences of a statement in the presentence report that the court may have been found to be false. *United States v. Velasquez*, 748 F.2d 972, 974 (8th Cir. 1984) (rule designed to protect against evil that false allegation that defendant was notorious alien smuggler would affect defendant for years to come); *see also United States v. Brown*, 715 F.2d 387, 389 n.2 (5th Cir. 1983) (sentencing report affects "place of incarceration, chances for parole, and relationships with social service and correctional agencies after release from prison").

To avoid unduly burdening the court, the Committee elected not to require resolution of objections that go only to service of sentence. However, because of the presentence report's critical role in post-sentence administration, counsel may wish to point out to the court those matters that are typically considered by the Bureau of Prisons in designating the place of confinement. For example, the Bureau considers:

the type of offense, the length of sentence, the defendant's age, the defendant's release residence, the need for medical or other special treatment, and any placement recommendation made by the court.

*A Judicial Guide to the Federal Bureau of Prisons, supra*, at 11. Further, a question as to whether or not the defendant has a "drug problem" could have an impact on whether the defendant would be eligible for prison drug abuse treatment programs. 18 U.S.C. § 3621(e) (Substance abuse treatment).

If counsel objects to material in the presentence report that could affect the defendant's service of sentence, the court may resolve the objection, but is not required to do so.

**2007 Amendments**

**Subdivision (d).** The amendment conforms Rule 32(d) to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). *Booker* held that the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), violates the Sixth Amendment right to jury trial. With this provision severed and excised, the Court held, the Sentencing Reform Act "makes the Guidelines effectively advisory," and "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004) but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp.2004)." *Id.* at 245-46. Amended subdivision (d)(2)(F) makes clear that the court can instruct the probation office to gather and include in the presentence report any information relevant to the factors articulated in § 3553(a). The rule contemplates that a request can be made either by the court as a whole requiring information affecting all cases or a class of cases, or by an individual judge in a particular case.

**2008 Amendments**

**Subdivision (a).** The Crime Victims' Rights Act, codified as 18 U.S.C. § 3771(e), adopted a new definition of the term "crime victim." The new statutory definition has been incorporated in an amendment to Rule 1, which supersedes the provisions that have been deleted here.

**Subdivision (c)(1).** This amendment implements the victim's statutory right under the Crime Victims' Rights Act to "full and timely restitution as provided in law." *See* 18 U.S.C. § 3771(a)(6). Whenever the law permits restitution, the presentence investigation report should contain information permitting the court to determine whether restitution is appropriate.

**Subdivision (d)(2)(B).** This amendment implements the Crime Victims' Rights Act, codified at 18 U.S.C. § 3771. The amendment makes it clear that victim impact information should be treated in the same way as other information contained in the presentence report. It deletes language requiring victim impact information to be "verified" and "stated in a nonargumentative style" because that language does not appear in the other subparagraphs of Rule 32(d)(2).

**Subdivision (i)(4).** The deleted language, referring only to victims of crimes of violence or sexual abuse, has been superseded by the Crime Victims' Rights Act, 18 U.S.C. § 3771(e). The act defines the term "crime victim" without limiting it to certain crimes, and provides that crime victims, so defined, have a right to be reasonably heard at all public court proceedings regarding sentencing. A companion amendment to Rule 1(b) adopts the statutory definition as the definition of the term "victim" for purposes of the Federal Rules of Criminal Procedure, and explains who may raise the rights of a victim, so the language in this subdivision is no longer needed.

Subdivision (i)(4) has also been amended to incorporate the statutory language of the Crime Victims' Rights Act, which provides that victims have the right "to be reasonably heard" in judicial proceedings regarding sentencing. *See* 18 U.S.C. § 3771(a)(4). The amended rule provides that the judge must speak to any victim present in the courtroom at sentencing. Absent unusual circumstances, any victim who is present should be allowed a reasonable opportunity to speak directly to the judge.

**2009 Amendments**

ADD-56

**Subdivision (d)(2)(G)**. Rule 32.2(a) requires that the indictment or information provide notice to the defendant of the government's intent to seek forfeiture as part of the sentence. The amendment provides that the same notice be provided as part of the presentence report to the court. This will ensure timely consideration of the issues concerning forfeiture as part of the sentencing process.

**2011 Amendments**

**Subdivision (d)(2).** This technical and conforming amendment reorders two subparagraphs describing the information that may be included in the presentence report so that the provision authorizing the inclusion of any other information the court requires appears at the end of the paragraph. It also rephrases renumbered subdivision (d)(2)(F) for stylistic purposes.

Notes of Decisions (1944)

Fed. Rules Cr. Proc. Rule 32, 18 U.S.C.A., FRCRP Rule 32
Including Amendments Received Through 7-1-2025

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

ADD-57

**CERTIFICATE OF SERVICE**

I certify that, on July 9, 2025, I served an electronic copy of this Appellee's Brief for the United States on all litigants via the Court's ECF system. I certify that all participants in the case are registered ECF users and that service will be accomplished through the ECF system.

/s/ W. Connor Winn
W. Connor Winn