ORAL ARGUMENT NOT YET SCHEDULED

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 24-3019**

---

**UNITED STATES OF AMERICA,**
*Plaintiff-Appellee,*

**v.**

**CHARLES EDWARD LITTLEJOHN,**
*Defendant-Appellant.*

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**REPLY BRIEF FOR APPELLANT**

---

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

MATTHEW L. FARLEY
CELIA GOETZL
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500

District Court
Cr. No. 23-343 (ACR)

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................i

TABLE OF AUTHORITIES.......................................................... iii

SUMMARY OF ARGUMENT...........................................................1

ARGUMENT .....................................................................................2

     I.     THE DISTRICT COURT ERRED PROCEDURALLY.........................2

         A.    The District Court Predetermined Off The Record The Statutory Maximum Sentence It Imposed.......................................................2

         B.    The District Court's Main Conclusions Were Clearly Erroneous And Improperly Influenced By Members Of Congress....................5

             1.   *The District Court's Conclusion That Mr. Littlejohn Harmed the "Office of the President" and "Attacked Constitutional Democracy" Was Clearly Erroneous.*..........................................5

             2.   *The District Court's Conclusion That Mr. Littlejohn's Offense Was On Par With Crimes Committed At The Capitol On January 6 Was Clearly Erroneous.* ...........................................................9

             3.   *The Improper Extra-Judicial Views Of Members Of Congress Were Inherently Influential.*..........................................................9

         C.    The District Court Failed To Adequately Explain Its Drastic Leap From 18 To 60 Months. .................................................................15

     II.    MR. LITTLEJOHN'S SENTENCE WAS SUBSTANTIVELY UNREASONABLE. ...........................................................................19

         A.    The Inadequately Explained 60-Month Statutory Maximum Sentence Was Substantively Unreasonable.....................................19

         B.    The Statutory Maximum Sentence Created An Unwarranted Sentencing Disparity........................................................................24

         C.    The Statutory Maximum Penalty Was Far Greater Than Necessary For Mr. Littlejohn. .........................................................................26

   III.   THE APPEARANCE OF BIAS REQUIRES REMAND TO A
          DIFFERENT JUDGE FOR RESENTENCING. ..................................28

CONCLUSION ...........................................................................................30

CERTIFICATE OF COMPLIANCE .......................................................31

# TABLE OF AUTHORITIES

## CASES

*Pepper v. United States*, 562 U.S. 476 (2011) .......................................................11

*Rita v. United States*, 551 U.S. 338 (2007) ............................................................17

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020) ............................................. 5-6

*United States v. Abney*, 957 F.3d 241 (D.C. Cir. 2020)......................................5, 10

*United States v. Akhigbe*, 642 F.3d 1078 (D.C. Cir. 2011) ........................ 15-16, 18

*United States v. Alford*, 89 F.4th 943 (D.C. Cir. 2024) .........................................25

*United States v. Barker*, 771 F.2d 1362 (9th Cir. 1985)....................................23, 26

*United States v. Brown*, 892 F.3d 385 (D.C. Cir. 2018)................................... 16-17

*United States v. Brown*, 381 U.S. 437 (1965) ................................................. 12-13

*United States v. Covert*, 45 F. App'x 100 (3d Cir. 2002) ................................. 14-15

*United States v. Daigle*, 63 F.3d 346 (5th Cir. 1997)................................................3

*United States v. Daniels*, 446 F.2d 967 (6th Cir. 1971) ..........................................26

*United States v. Fogel*, 829 F.2d 77 (D.C. Cir. 1987) ....................................... 13-14

*United States v. Guevara-Lopez*, No. 24-2045, 2025 WL 2203620
  (10th Cir. Aug. 4, 2025) .................................................................................19, 26

*United States v. Hall*, 610 F.3d 727 (D.C. Cir. 2010) ............................................16

*United States v. Hartford*, 489 F.2d 652 (5th Cir. 1974).........................................26

*United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017) ..............................................27

*United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022) .............................. 20-21

*United States v. Mattea*, 895 F.3d 762 (D.C. Cir. 2018) .........................................25

*United States v. Muzio*, 966 F.3d 61 (2d Cir. 2020) .................................................27

*United States v. Otunyo*, 63 F.4th 948 (D.C. Cir. 2023)..........................................25

*United States v. Robinson*, 587 F.3d 1122 (D.C. Cir. 2009) .....................................3

*United States v. Short*, 597 F.2d 1122 (8th Cir. 1979) ..................................... 13-14

*United States v. Sterkaj*, 1138 F.4th 95, 103 (2d Cir. 2025)...................................29

## STATUTES, RULES & GUIDELINES

Fed. R. Crim. P. 11(c)(5) ...........................................................................................2

Fed. R. Crim. P. 51(a) ..............................................................................................10

18 U.S.C. § 3553(a) ............................................ 4, 11, 16-17, 20, 26

18 U.S.C. § 3661 ........................................................................................... 11-12

26 U.S.C. § 6103(n) .................................................................................................16

26 U.S.C. § 7213(a)(1)..............................................................................................16

U.S.S.G. § 2H3.1 cmt. n.5(B) ..................................................................................17

U.S.S.G. § 3A1.2.......................................................................................................21

U.S.S.G. § 3B1.3 .......................................................................................................16

# ADDITIONAL AUTHORITIES

The Federalist No. 51 (James Madison) .................................................................13

The Federalist No. 78 (Alexander Hamilton) .........................................................13

# SUMMARY OF ARGUMENT

Mr. Littlejohn's sentence was both procedurally and substantively unreasonable. Contrary to the government's arguments, the district court did not adequately explain—and could not justify on this record—a sentence *over three times the high end* of an enhanced Guidelines range already accounting for the number of victims and harm to their privacy. The government does not rebut that Mr. Littlejohn simply did not "attack constitutional democracy" or "threaten open season on our highest elected officials" by disclosing personal tax records to investigative reporters. Nor does the government address that Mr. Littlejohn's background, the harm caused, the need to generally deter ideological crimes, and the length of time could not bear the weight of the district court's substantial variance from 18 to 60 months. The government's attempt to defend the district court's judgment glosses over plainly improper and highly irregular off-the-record events, including a letter sent to chambers by members of Congress that, in violation of separation of powers principles, influenced the court to impose the harshest sentence possible. The district court's errors and the need to avoid the appearance of bias compel resentencing before a different district court judge.

# **ARGUMENT**

## I.     THE DISTRICT COURT ERRED PROCEDURALLY.

### A.     The District Court Predetermined Off The Record The Statutory Maximum Sentence It Imposed.

The off-the-record proceedings in this case demonstrate the district court predetermined to impose the statutory maximum sentence. The government ignores the impropriety and significance of the substantive off-the-record events. Contrary to the government's assertion, the meetings in camera were not "permissibl[e]" under Federal Rule of Criminal Procedure 11(c)(5), Gov't Br. ("GB") 29 n.8, 61, because the court provided no cause to hold any hearing in camera and lacked authority to forego recording the proceedings it held.[1] Obscuring from public view its initial views of the sentence it deemed appropriate was not proper and shows the court's predetermination.

Indeed, the government concedes that if the court "applied pre-plea pressure," it "might have cast doubt on whether the court acted impartially." GB:30. Yet, according to the government, the off-the-record proceedings made no difference because plea negotiations had concluded and the court's "skepticism regarding the

---

[1] Rule 11(c)(5) does not authorize courts to hold unrecorded proceedings to "debate[] whether to reject" a plea. GB:61. Instead, the rule proscribes information a court must provide "*on the record and in open court* (or, *for good cause*, in camera)" if it rejects a certain type of plea agreement. Fed. R. Crim. P. 11(c)(5) (emphasis added).

2

agreement" showed "the judicial function of weighing whether to reject that agreement" rather than coercing a plea.  GB:29 (citing *United States v. Robinson*, 587 F.3d 1122, 1127 (D.C. Cir. 2009)).  Certainly, deciding whether to accept a plea is a proper district court function, but *Robinson* involved statements the district court made at a plea hearing in open court in the defendants' presence.  587 F.3d at 1127.  There were, therefore, no implications arising from an off-the-record meeting outside the defendant's presence, as here, where Mr. Littlejohn had not yet appeared or plead guilty in open court.[2]

Additionally, in *Robinson*, the district court's statements "were not partial to one party," 587 F.3d at 1127, whereas, here, the court's statements were clearly partial to the prosecution, *see* A277 (asking "whether there would be a separate, future case with additional charges and, if not, why not" and assuming "the Government would have brought multiple charges carrying a much higher possible sentence").  Notably, the court "ended the meeting by suggesting that Defense counsel convey to her client the Court's [strong, negative] views of his conduct."  A278.

---

[2] *Cf. United States v. Daigle*, 63 F.3d 346, 347-48 (5th Cir. 1997) (off-the-record discussion in chambers, before accepted plea agreement was discussed in open court, violated Rule 11 because judge must "remove him or herself from[] any discussion of a plea agreement that has not yet been agreed to by the parties *in open court*") (some emphasis omitted).

Mr. Littlejohn's decision to plead guilty necessarily was impacted by the court's indication behind closed doors that it wanted to sentence him above the statutory maximum for his offense. Although it was unsettled whether the court would ultimately accept the plea agreement, it was clear that the court wished to sentence Mr. Littlejohn to at least the statutory maximum regardless of his history and characteristics or any other § 3553(a) factors still to be presented at sentencing. The government minimizes this logical inference.

The government also minimizes the significance of the district court's off-the-record "*per se* unreasonableness" email by suggesting that it was "prompted" by the government's sentencing memorandum requesting the statutory maximum. GB:30. But the district court first suggested that extreme sentence before any recorded hearing was held. A276-78. Regardless, the government does not, and cannot, explain why a question from the court "aimed to allow the parties to 'conduct … legal research' before sentencing," GB:30, should have been kept off the record. That the district court did not make its inquiry on the docket is evidence, in and of itself, that the court sought justification for a predetermined statutory maximum sentence. Notwithstanding the court's claim that it "ha[d] not made a sentencing decision" and would "of course hear all argument on the appropriate sentence," A324, the reconstructed record shows the contrary.

Ultimately, although the court "never stated that his conduct warranted a particular sentence or that it had closed its mind as to what sentence Littlejohn deserved," GB:28, the district court's closed-door off-the-record conferences and substantive off-the-record emails, A276-78, A292, A295, A302, A310, A323-24, as well as its fixation on additional speculative uncharged crimes, A277-78, A158-65, show that the court did not approach Mr. Littlejohn with a "clean slate and an open mind." *United States v. Abney*, 957 F.3d 241, 254 (D.C. Cir. 2020). Holding proceedings off the record and predetermining the sentence was plain procedural error that affected Mr. Littlejohn's substantial rights and this Court should correct.

## B.    The District Court's Main Conclusions Were Clearly Erroneous And Improperly Influenced By Members Of Congress.

### 1.    The District Court's Conclusion That Mr. Littlejohn Harmed the "Office of the President" and "Attacked Constitutional Democracy" Was Clearly Erroneous.

The "Office of the President" and "constitutional democracy" were in no way harmed or "attacked" by Mr. Littlejohn's actions. The government argues that the district court "reasonably found" that Mr. Littlejohn targeted "the Presidency itself" because "efforts to disclose President Trump's tax returns implicated the 'close connection between the Office of the President and its occupant.'" GB:34 (quoting *Trump v. Mazars USA, LLP*, 591 U.S. 848, 868 (2020)). The government further argues that the court's finding that Mr. Littlejohn "attacked" constitutional

democracy was appropriate because "[t]he President 'alone composes a branch of' the constitutional democracy established in the Constitution" and "[b]y targeting a sitting President … Littlejohn took aim at a coequal branch of the federal government and the United States' constitutional democracy." GB:35 (quoting *Mazars*, 591 U.S. at 868). The government is wrong, and its reliance on *Mazars* is misplaced.

In fact, *Mazars* illuminates why this case has nothing to do with the Office of the President and constitutional democracy. *Mazars* addressed a conflict between two coequal branches of government—Congress and the President—which raised a clear separation of powers issue. 591 U.S. at 866 ("congressional subpoenas for the President's information unavoidably pit the political branches against one another"). The Court highlighted the difference between Congress's versus a private party's request for the President's personal information in explaining why Congress's constitutional relationship with the President was necessary to its analysis. *Id*. at 854. Because *Mazars* dealt with a conflict between Congress and the President, who "have an ongoing institutional relationship as the 'opposite and rival' political branches established by the Constitution," the Court found that democratic institutional interests were implicated. *Id*. at 866 (citation omitted).

Here, no such interests were at stake. Where a private citizen has a personal complaint against the President in his personal capacity and violates his privacy, the "Presidency" and "constitutional democracy" are simply not implicated. By disclosing Donald Trump's personal tax records to an investigative reporter, Mr. Littlejohn did not challenge or impact the broader institution of the Presidency or any institutional or constitutionally authorized practice.

Nevertheless, the government argues that there was ample basis in the record to find that Mr. Littlejohn "targeted" Trump because he was the President and not because he was a presidential candidate who had not released his tax records. GB:35. The government's view of the record makes no sense. Mr. Littlejohn "set his plan into motion," *id.*, only after the 2016 election because that was when Trump did not disclose his taxes. That then-President Trump would be a candidate in the next "far-off 2020 presidential election," *id.*, was a foregone conclusion. And that Mr. Littlejohn held a negative view of President Trump does not support a finding that he targeted President Trump because he was the President rather than because he was a presidential candidate who did not disclose his tax returns. Simply put, nothing about Mr. Littlejohn's conduct targeted the President in his official capacity.

The government also argues that the district court did not clearly err in finding Mr. Littlejohn's intent malicious because he hoped to elicit news articles that could

7

"alter American politics." GB:36-37. But seeking to "alter American politics" is not the same as seeking to harm the President, even if the President is affected by certain conduct. And even if Mr. Littlejohn released tax records to embarrass wealthy taxpayers, including the President—which he did not do—the government fails to explain how this act attacked democracy or damaged the Presidency. It did not.

Lastly, the government argues that the district court "did not equate Littlejohn's crime with violent crimes" because it never said that his "crime rested on all fours with those crimes or that he threatened or used violence." GB:37-38. But the district court compared Mr. Littlejohn's crime to "a rise in political violence—*e.g.*, 'credible death threats' towards lawmakers, 'bomb threats' directed at 'state capitols,' and fentanyl-bearing letters sent to election officials." *Id*. The district court's mistaken belief that Mr. Littlejohn's nonviolent unauthorized disclosure crime was similarly "harmful to democracy" placed it in the same category and was clearly erroneous.

In sum, it was clearly erroneous to find that Mr. Littlejohn's cautious disclosure of tax information to investigative reporters represented "open season on our elected officials" and foretold a new era of lawlessness in our society. A181, A194, A197-98, A205, A217.

### 2. The District Court's Conclusion That Mr. Littlejohn's Offense Was On Par With Crimes Committed At The Capitol On January 6 Was Clearly Erroneous.

The government does not contest that the district court relied on the events of January 6 in sentencing Mr. Littlejohn. The government argues, however, that the district court permissibly viewed Mr. Littlejohn's actions as worse than that of certain January 6th "misdemeanants." GB:55-56. The government overlooks that the court's comparison was not limited to misdemeanants. From the start, the court "compared Mr. Littlejohn's plea offer to those of defendants in the January 6 cases who faced multiple counts and potentially years in prison." A277. For the reasons discussed in Mr. Littlejohn's opening brief ("OB"), at 32-34, January 6 provided no justification for an upward variance in his case, and the district court's false equivalency between the January 6 defendants and Mr. Littlejohn shows that it incorrectly assessed the nature and seriousness of Mr. Littlejohn's crime.

### 3. The Improper Extra-Judicial Views Of Members Of Congress Were Inherently Influential.

The government argues that Mr. Littlejohn forfeited his claim that the district court relied on the congressional Committee's letter to craft his sentence by failing to object at sentencing. GB:38. But the district court recognized that "Mr. Littlejohn's counsel objected to the Court's consideration of this letter and any similar letters, because the members are neither parties in the case nor victims."

9

A145.[3]  Directly addressing and overruling that objection, the court held that it could consider the letter.  A145-46.  Then, the court disclaimed its prior admission that it "carefully consider[ed]" the letter and stated, "for the avoidance of any doubt, the Court has not and will not base any part of its sentencing decision on the January 23rd, 2024 letter."  A146.  Mr. Littlejohn had no obligation to repeat his objection.  Fed. R. Crim. P. 51(a); *Abney*, 957 F.3d at 248.

Furthermore, the district court's disavowal was too late.  The significance of the letter's signatories and the way it reached the court had already influenced the court's decision.  As the court admitted, upon receipt, it "told the signatories that I was carefully considering the information and thanking them for their time." A145.[4] The court also explained that the letter prompted it to "rewatch[]" a "Ways and Means episode of the West Wing."  A146.  Thus, by the court's own admission, the letter had some influence, as it prompted the court to independent action.

---

[3]  Counsel for Mr. Littlejohn also argued that there was no authority for the court's "consideration of advocacy and/or information submitted outside of the judicial record" and "[i]t is improper for a third party to try to influence the Court in this way—especially where the third party is an entirely partisan group from the legislative branch…." A301.  Counsel further argued, "[t]he media and political interest in this case do not give license to Members of Congress, or any other third party, to try to improperly insert their political agenda into the sentencing process." A301.

[4]  The district court did not docket the letter and make it part of the record, A004-05, which implies that it was not properly before the court.

The government argues that the district court's reliance on the letter at sentencing was not prejudicial because the letter did not "introduce[] unreliable information" and Mr. Littlejohn had "the chance to contest information therein." GB:38-39. It further argues that nothing "prohibited the district court from relying on sentencing materials from a non-victim third party" because "the court's sentencing inquiry is 'largely unlimited' as to the sources from which information may come, *Pepper* [*v. United States*], 562 U.S. [476,] [] 489 [(2011)]," and there is "no unique limitation on the ability of Congress or its members to provide information to a district court." GB:40.

The government is mistaken. First, *Pepper* provides no authority for the district court's reliance on an official letter from the legislative branch that contains no information whatsoever about the individual being sentenced and, instead, advocates for the harshest possible sentence. As opposed to the post-sentencing information at issue in *Pepper*, the House Ways and Means Committee's views of the appropriate sentence for a specific individual were irrelevant to any of "the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing." *Pepper*, 562 U.S. at 491. While 18 U.S.C. § 3661, on which *Pepper* relies, authorizes consideration of "any information concerning the background, character, and conduct *of a person convicted of an offense*," (emphasis added), the

Committee's letter contained no information—reliable or otherwise—about Mr. Littlejohn.

More problematically, the letter exerted pressure on the court from a separate, coequal branch of government, raising a clear separation of powers issue. Congress is not a "non-victim third party," GB:40, in all criminal cases, and it has no business injecting politics into an individual's criminal sentence. The government cites no case where members of Congress collectively, acting in an official capacity, have requested a specific sentence in an individual criminal case, and for good reason. It is not the role of members of Congress to use their official positions to influence judges' decision-making in individual cases. The Committee's letter was not sent pursuant to an enumerated power of Congress or for any official legislative purpose. A297-300. Separation of powers principles dictate that members of Congress have no official business requesting an outcome in an individual criminal case to which Congress is not a party.

The government dismisses these principles, arguing that the letter was not a law that inflicted punishment. GB:40 (citing *United States v. Brown*, 381 U.S. 437, 443-46 (1965)). That the letter was not an actual Bill of Attainder, however, does not mean that it did not resemble one. The Constitution authorizes Congress to promulgate and amend laws to increase punishment for all individuals who commit

certain crimes, but it does not authorize Congress to pressure a court to mete out maximum punishment on a certain individual, because that erodes judicial independence. *See Brown*, 381 U.S. at 446 ("It is the peculiar province of the legislature to prescribe general rules for the government of society; the application of those rules to individuals in society would seem to be the duty of other departments.") (citation omitted). Contrary to the government's assertion, and the district court's ruling, separation of powers principles prohibited the district court from accepting and considering the Committee's sentencing request.[5]

Citing *United States v. Fogel*, 829 F.2d 77, 90-91 (D.C. Cir. 1987), and *United States v. Short*, 597 F.2d 1122, 1124 (8th Cir. 1979), the government argues that there is no reason to doubt the district court's disclaimer that its sentencing decision was not based on the Committee's letter because "nothing postdating the court's announcement suggests that its disclaimer was insincere." GB:39. As discussed above, the court's disclaimer came too late. First, it was contradicted by the court's own statements and actions, *e.g.*, its response to receiving the letter, its failure to docket the letter, and its ruling that it could in fact consider the letter. Second, *Fogel*

---

[5] *See also* The Federalist No. 78 (Alexander Hamilton) ("[T]here is no liberty, if the power of judging be not separated from the legislative and executive powers.") (citation omitted); The Federalist No. 51 (James Madison) (judiciary must have "constitutional means and personal motives to resist encroachments" of the other branches).

and *Short* are both inapposite. In *Fogel*, the district court "explicitly stated that it 'had paid very little attention'" to the contested information, 829 F.2d at 91, whereas here, the district court explicitly stated that it would give the letter due consideration. Similarly, in *Short*, "[t]he district judge made it clear in commenting on the letter" that "it was not the function of [the third party] to interfere." 597 F.2d at 1124. By contrast, here, the district court thanked the Committee members for their "unique perspective," asked for additional information, and ruled it acceptable to consider their input. A295, A145-46.

Notably, by writing to the district court about Mr. Littlejohn, the Committee also endorsed the false idea that Mr. Littlejohn's conduct undermined constitutional democracy and involved a Congressional interest to be vindicated. Despite the absence of evidence for any such conclusion, the district court adopted it as the main reason for its sentence. In this sense, the letter perpetuated erroneous conclusions about the nature of Mr. Littlejohn's crime and inescapably influenced the district court's choice of sentence. In fact, the court ultimately imposed the sentence that the Congress members requested, establishing prima facially that the letter prejudiced Mr. Littlejohn. *Cf. United States v. Covert*, 45 F. App'x 100, 102 (3d Cir. 2002) (finding the district court "did not surrender its own independent discretion in determining the sentence" because people "wrote letters … ask[ing] the court to

14

impose the maximum sentence allowable" and "[t]he defendant's sentence was substantially less than" that).

The pressure and prejudice inherent in the sentencing letter sent directly to chambers off-the-record by members of the legislative branch acting in their official capacities rendered Mr. Littlejohn's sentence procedurally unreasonable and requires remand for resentencing before a different judge. *See infra* Part III.

## C. The District Court Failed To Adequately Explain Its Drastic Leap From 18 To 60 Months.

The government contends that the district court justified its upward variance by citing Mr. Littlejohn's background, intent, possible future harm, general deterrence needs, and "multi-year scheme." GB:42-43. But these are red herrings: the Guidelines already accounted for these factors, and the court failed to explain why they justified a 60-month sentence rather than some lesser term. While the government claims that the court needed not tie its reasoning to the specific 42-month upward variance, GB:44, the government misunderstands the requirement: a sentencing court must justify both the decision to vary and the magnitude of the variance. *See United States v. Akhigbe*, 642 F.3d 1078, 1086 (D.C. Cir. 2011) (finding plain procedural error where, "[r]eviewing the sentencing proceedings as a whole," the district court "never explained why those [sentencing] factors justified Akhigbe's particular sentence"); *United States v. Hall*, 610 F.3d 727, 745 (D.C. Cir.

2010) (finding plain error because "court did not explain why, in view of the factors in 18 U.S.C. § 3553(a)," a 188-month sentence "was necessary, much less why the lower sentence that Hall requested would be insufficient").

The Guidelines range already accounted for Mr. Littlejohn's "background and training in protecting taxpayer privacy." GB:42. This factor was necessarily part of the crime itself because the statute prohibits disclosure of tax return information by "any officer or employee of the United States or any person described in section 6103(n)." 26 U.S.C. § 7213(a)(1). Only individuals with Mr. Littlejohn's training and experience could access tax records to disclose them. In addition, Mr. Littlejohn received a two-level role enhancement for abusing a position of trust and using a special skill to commit the offense under U.S.S.G. § 3B1.3. A150; SA113-14. Because Mr. Littlejohn's training and experience were reflected in the Guidelines offense level calculated for the crime, the same rationale could not also be a basis for an upward variance. *United States v. Brown*, 892 F.3d 385, 405 (D.C. Cir. 2018).

The district court's rationale of future possible harm to victims similarly was already encompassed in the calculated Guidelines range with the four-level upward departure imposed, which accounted for both significant non-monetary harm already "caused" and the "risk[]" of substantial non-monetary harm. U.S.S.G. § 2H3.1 cmt. n.5(B). Significantly, "[t]o justify an upward variance, the district court had to

differentiate [Mr. Littlejohn] from other defendants *within the same heightened Guidelines range*, not just other defendants convicted of the same crime." *Brown*, 892 F.3d at 406 (emphasis added). The district court did not do so here.

The Guidelines also already accounted for the need to generally deter government workers. *See Rita v. United States*, 551 U.S. 338, 347-49 (2007) (explaining the Guidelines are designed to satisfy § 3553(a) objectives, including the need for general deterrence).

The district court failed to explain how the length of conduct justified a degree of upward variance to the statutory maximum sentence. The time it took for Mr. Littlejohn to commit the crime did not cause a greater degree of harm or implicate some § 3553(a) factor requiring a longer sentence. As discussed below, this factor, even in conjunction with others, could not bear the weight the court placed on it.

In the end, the government glosses over the district court's primary rationale for its extreme upward variance—its repeated yet clearly erroneous conclusion that the nature of this tax disclosure offense was "an intolerable attack on our constitutional democracy by declaring open season on the private lives of our highest elected officials." A197. *See also* A145 ("what you did … was an attack on our constitutional democracy" and "I have to punish it with a firmness of purpose that such an attack demands"); A179 ("targeting our constitutional system of government

…. deserves a maximum punishment and requires a maximum punishment"); A198-99 (discussing harm to "presidency" and "democracy," stating that "the judiciary must be an unbreakable bulwark against politically-minded actors targeted [sic] *or threatening* elected officials," and concluding that "target[ing] democracy … alone would require a substantial upward variance" for "the nature and circumstances of the offense") (emphasis added).

Thus, the district court's primary rationale for departing upward *three-and-a-half years* above the high end of an already enhanced Guidelines range of *one-and-a-half years* was a fundamental misunderstanding of the nature and circumstances of the offense. *Compare Akhigbe*, 642 F.3d at 1086 (finding plain procedural error where the court "[d]evot[ed] most of its discussion at sentencing to its views about the severity of [the] offense" and "commented generally and somewhat hyperbolically about the negative consequences of [the offense]").

Without an adequate explanation for the extreme degree of the variance, the district court's choice of the statutory maximum was an abuse of discretion, and Mr. Littlejohn is entitled to resentencing.

## II. MR. LITTLEJOHN'S SENTENCE WAS SUBSTANTIVELY UNREASONABLE.

### A. The Inadequately Explained 60-Month Statutory Maximum Sentence Was Substantively Unreasonable.

Again disregarding that the district court relied primarily on a clearly erroneous finding that Mr. Littlejohn "attacked constitutional democracy," the government argues that a statutory maximum sentence was substantively reasonable for other reasons discussed above, namely, Mr. Littlejohn's background, the harm he caused, the need to deter "ideologically driven" government workers, and the "multi-year scheme." GB:47-50.

Again, as a threshold matter, because the district court's view of the offense as "an intolerable attack on our constitutional democracy," A197, was clearly erroneous, *supra* Part I.B.1, it was not a valid basis for an upward variance, especially not to the degree it factored in here. This error alone rendered Mr. Littlejohn's sentence substantively unreasonable and requires remand for resentencing. *See United States v. Guevara-Lopez*, No. 24-2045, 2025 WL 2203620, at *11 (10th Cir. Aug. 4, 2025) ("[W]here we have a significant upward variance, supported by only a few facts, the inaccuracy of even one fact may tip the scale, rendering the justification for that variance unreasonable.").

In addition, by resting on other factors the district court mentioned to justify Mr. Littlejohn's sentence, the government misses the point. Even if the court articulated some other factors weighing in favor of an upward variance, these other factors could not bear the weight of such a substantial variance—from 18 months to more than *triple* that amount for a 60-month sentence.

The government's attempt to distinguish *United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022), is particularly unavailing. GB:51. In *Khatallah*, this Court explained that discounting one factor—acquitted conduct—would permit only some of the downward variance the district court granted, and there was not otherwise a basis for its significant further downward variance. *Khatallah* is the logical inverse of this case: just as the district court in *Khatallah* never explained why the sentence it chose was sufficient after it decided the Guidelines range was greater than necessary, the district court here did not explain why the sentence it chose was not greater than necessary after it decided that the Guidelines range was not sufficient. As in *Khatallah*, "[t]he ensuing 'unexplained variance was a substantively unreasonable' one, and the Section 3553(a) factors 'supported' a guidelines sentence or were 'a mixed bag.'" GB:51 (quoting *Khatallah*, 41 F.4th at 649).

Here, like in *Khatallah*, one factor—"targeting the President"—could get the district court only so far. Even if Mr. Littlejohn's violation of President Trump's

privacy warranted some upward variance because of his official status, GB:50, the Guidelines inform the amount of variance appropriate for such a factor.[6] Indeed, the government realizes that an official-victim adjustment was worth at most three levels, but argues that "[t]he ensuing guidelines range would only have decreased the size of the upward variance that Littlejohn now challenges." GB:50. Assuming *arguendo* a comparable upward variance would have been justified, the other justifications the court gave to get up to 60 months still did not support the additional *33-to-39-month* increase to the statutory maximum.[7]

Here, just as in *Khatallah*, each of the government's asserted "compelling justifications" for the district court's upward variance, GB:47-48, either supported a guidelines sentence or were a mixed bag.

Specifically, Mr. Littlejohn's personal history and characteristics, including his "background and training," overwhelmingly supported a below-Guidelines sentence. He had no criminal history and a lifelong dedication to public service. As

---

[6] According to the Guidelines, if the victim was a "government officer" and "the offense was motivated by such status"—which is debatable here—then three levels are added under U.S.S.G. § 3A1.2.

[7] For the sake of argument, adding a three-level enhancement to the four-level upward departure the district court imposed for the numerous victims and substantial harm, Mr. Littlejohn's final offense level would have been 16 and his Guidelines range would have been 21 to 27 months.

the district court recognized, Mr. Littlejohn was a person of "deep caring, and unwavering loyalty" "who has repeatedly answered the call to help others and … whose actions were guided, however misguided the thought was, by a genuine belief of doing the right thing." A143-44. Mr. Littlejohn's job training and experience, which were part of the crime and covered by the role enhancement, *supra* Part I.C, could not outweigh the overwhelmingly mitigating aspects of his personal history and characteristics.

The "greater-than-usual harm," GB:47, 49, was accounted for in the court's four-level upward departure and, therefore, supported a sentence within the resulting 12-to-18-month range.

There was no reason why the maximum sentence of incarceration, as opposed to any lower sentence, was required to deter government workers from committing ideological crimes. The Guidelines range already encompassed the need for general deterrence. *See supra* Part I.C. Also, as Mr. Littlejohn explained at sentencing, government studies show that for potential government leakers, "the impact is getting caught" and "going to prison" and "all of the other things that come with that," rather than the length of imprisonment imposed. A183-84. Additionally, "[t]he extent and nature of the media coverage" in this case "already sent a strong and very public message of [general] deterrence." A119–20. Any perceived need to

deter individuals from "taking the law into their own hands" or from "put[ting] [their] personal political beliefs above the law," A204-05, did not support a statutory maximum sentence. *See United States v. Barker*, 771 F.2d 1362, 1368-69 (9th Cir. 1985) ("Central to our system of values and implicit in the requirement of individualized sentencing is the categorical imperative that no person may be used merely as an instrument of social policy, that human beings are to be treated not simply as a means to a social end like deterrence, but also—and always—as ends in themselves.").

The "multi-year" nature of the offense and planning involved was a "mixed bag." While time and careful planning may have rendered the conduct more culpable, it also reflected Mr. Littlejohn's effort to safeguard the disclosed information and ensure that it was used for only journalistic purposes serving the public interest. Indeed, no individual's tax returns were actually publicly disclosed. In that sense, the time and thought that Mr. Littlejohn put into the offense was not purely aggravating—it was also mitigating.

Moreover, as the district court itself recognized, Mr. Littlejohn's acceptance of responsibility, cooperation, and sincere remorse had to be worth something. The court's "*per se* unreasonableness" email acknowledged the substantive unreasonableness of "impos[ing] a sentence of a maximum term, outside the

23

guidelines, to a defendant that pled guilty, cooperated with the Government, and accepts responsibility." A324. At sentencing, the court likewise acknowledged that "typically a sentencing judge takes those factors into account in reducing a sentence[,]" A159, and asked, "How can I vary upwards without taking into account he cooperated and give him something for that?," A164. The court thus sought to identify additional charges carrying higher penalties that Mr. Littlejohn could have faced to assure itself that his statutory maximum sentence reflected those mitigating factors. *See* A160 (stating it was "trying to figure out" "if the fact [of] his cooperation" was reflected in his plea agreement); A164 ("My question is, how can I upward vary to 60 months if he's cooperated, and you're giving me literally nothing else to say that he got a benefit already."). Even though the court never got an answer to its question, it nevertheless imposed the statutory maximum. Thus, by its own terms, the court recognized that a statutory maximum sentence was substantively unreasonable.

In the end, the district court abused its discretion in imposing a sentence far higher than could be justified on this record.

### B. The Statutory Maximum Sentence Created An Unwarranted Sentencing Disparity.

The government argues that the district court reasonably concluded that Mr. Littlejohn's crime was factually distinguishable from all other cases. GB:51-54.

24

However, the government disregards the district court's fundamental misunderstanding of the role of the Guidelines, which is evident from the cases the government cites. In each case, this Court found the district court did not abuse its discretion in imposing a *within-Guidelines* sentence. *See United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024) (finding no abuse of discretion for sentence within Guidelines range); *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (same); *United States v. Mattea*, 895 F.3d 762, 769 (D.C. Cir. 2018) (same). The Court emphasized that "the Guidelines are designed precisely to prevent disparity" and "the best way to curtail unwarranted disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *Alford*, 89 F.4th at 954 (quoting *Otunyo*, 63 F.4th at 960) (cleaned up).

Here, the district court sentenced nowhere near the recommended Guidelines range. Thus, the court did not merely create "some degree" of disparity. GB:52 (quoting *Alford*, 89 F.4th at 954). Rather, disregarding the Guidelines, the court created a drastic, unwarranted disparity between Mr. Littlejohn's sentence and the sentence of others with no prior criminal history who unlawfully disclosed protected information. In this regard, the district court abused its discretion.

### C. The Statutory Maximum Penalty Was Far Greater Than Necessary For Mr. Littlejohn.

Mr. Littlejohn agrees that a sentencing court may impose a statutory maximum sentence where Section 3553(a) factors point in different ways. GB:57-58. However, where, as here, there is substantial mitigation, there remains an "implied legislative will to impose a lesser sentence" than the statutory maximum. *United States v. Daniels*, 446 F.2d 967, 972 (6th Cir. 1971). *See also Guevara-Lopez*, 2025 WL 2203620, at *10 n.9 (statutory maximum sentence means "offense conduct should reflect the worst conduct that Congress sought to punish" for crime of conviction).

The government attempts to distinguish *Daniels*, arguing it concerned only "where a district court wrongly and mechanically imposed a statutory-maximum term on every person who committed a given crime." GB:58. But mechanical imposition was only part of the *Daniels* holding. The court also vacated the statutory maximum because the defendant did not deserve such an extreme sentence when compared to more culpable perpetrators. 446 F.2d at 972. *United States v. Barker*, 771 F.2d 1362 (9th Cir. 1985), and *United States v. Hartford*, 489 F.2d 652 (5th Cir. 1974), applied *Daniels* in holding that it was substantively unreasonable to sentence defendants to the statutory maximum when their conduct was less culpable than other offenders.

The government also misinterprets *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017). Contrary to the government's assertion, *Jenkins* did not find the sentence an abuse of discretion "because it punished the defendant as if he had produced or distributed child pornography or physically abused a child instead of transporting his personal collection of that material." GB:59 (citing *Jenkins*, 854 F.3d at 190-91; *United States v. Muzio*, 966 F.3d 61, 64-65 (2d Cir. 2020)). *Jenkins* found the statutory maximum sentence an abuse of discretion because such a sentence should be reserved for those who commit more culpable conduct. 854 F.3d at 190. *Accord Muzio*, 966 F.3d at 64-65 (explaining how Jenkins should not have received the worst of the worst sentence because he was not the most culpable kind of offender).

The government argues that Mr. Littlejohn's sentence was substantively reasonable because of "the extensive and unusual harm that [he] caused, his background, and the need to punish [him] and deter other similarly situated individuals." GB:59. The government ignores, however, every fact in mitigation of Mr. Littlejohn and his conduct. Mr. Littlejohn acted out of a powerful, if admittedly misguided, desire to make positive change in the world. Unlike other offenders of the same offense, he did not act maliciously or for personal gain. OB:55 (citing cases). Indeed, the district court described him as a "fundamentally good, caring person." A202. Moreover, Mr. Littlejohn accepted full responsibility, debriefed

27

with the government extensively, and expressed sincere remorse.  Mr. Littlejohn's sentence does not reflect any of that.  It is therefore substantively unreasonable.

## III. THE APPEARANCE OF BIAS REQUIRES REMAND TO A DIFFERENT JUDGE FOR RESENTENCING.

The government argues that reassignment for resentencing is unwarranted because the judge merely "expressed opinions about [the] defendant's conduct based on what she learned during his case," a new judge would cause waste and duplication, "nothing about the district court's strong views and findings … calls its partiality into question," and "the court followed proper procedures when it took Littlejohn's plea and sentenced him."  GB:60.  In so arguing, the government claims that the off-the-record in camera conferences were permissible and the court was not influenced by improper off-the-record political pressure.  GB:61.  The government also argues that "the court [did not] have a closed mind about this case or misapprehend the facts—let alone in a way that would prevent it from holding a fair resentencing."  *Id*.

The government is mistaken for reasons discussed above.  *See, e.g., supra* Part I.A (off-the-record conferences were improper); Part I.B.3 (off-the-record Congressional letter improperly influenced the court).  Moreover, the court displayed an appearance of bias by "trying to help" the government at sentencing.

28

A160-62.  The court's express statements at sentencing that it was "trying to help" the government vitiated any outward appearance of a fair sentencing.[8]

The Court's "decision to remand for resentencing by a different judge [need] not reflect any lack of confidence in the ability of the sentencing judge to conduct an appropriate resentencing," but the Court should not "ignore the appearance-of-justice concerns before us here." *United States v. Sterkaj*, 1138 F.4th 95, 103 (2d Cir. 2025).  Therefore, even if the district court could properly set aside its previously expressed views and neutralize the inescapable influence exerted by the congressional Committee, concerns for the appearance of justice require remand for resentencing before a different district court judge.  By holding off-the-record meetings and failing to publicly docket substantive matters in this case, as well as "trying to help" the government at sentencing, the court displayed an appearance of bias that infected the proceedings.  As a result, an objective observer would reasonably question the judge's impartiality and the fairness of the proceedings.  Accordingly, remand for resentencing before a different district court judge is necessary.

_____

[8] The government brushes off these prejudicial statements, claiming that they merely "reflected an effort to have the government" explain publicly its charging decision. GB:31.  The government's interpretation is untenable.  A judge who openly states that she is "trying to help" the government displays an appearance of bias that cannot satisfy due process's judicial neutrality requirement.

29

## **CONCLUSION**

For the foregoing reasons, Mr. Littlejohn respectfully requests that this Court

vacate his sentence and remand the case for resentencing before a different district

court judge.

Respectfully submitted,

A.J. KRAMER
Federal Public Defender


_____/s/_____
Matthew L. Farley
Celia Goetzl
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Reply Brief for Appellant was prepared in Times New Roman 14-point proportionally spaced font and contains 6,469 words in compliance with the type-volume limitations of Fed. R. App. P. 32(a)(7).

_____/s/_____

Celia Goetzl
Assistant Federal Public Defender