# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 4, 2025          Decided July 17, 2026

No. 24-3019

UNITED STATES OF AMERICA,
APPELLEE

v.

CHARLES EDWARD LITTLEJOHN,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-cr-00343-1)

———

*Celia Goetzl*, Assistant Federal Public Defender, Office of the Federal Public Defender, argued the cause for appellant. With her on the briefs were *A. J. Kramer*, Federal Public Defender, and *Matthew L. Farley*, Assistant Federal Public Defender. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*William C. Winn*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the briefs was *Edward P. Sullivan*, Acting Chief. *Chrisellen R. Kolb*, Assistant U.S. Attorney, entered an appearance.

2

Before: RAO and WALKER, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

To influence a presidential election, Charles Littlejohn unlawfully leaked the tax records of the President of the United States. He also unlawfully leaked the tax records of about 7,600 wealthy Americans in an attempt to build support for raising their taxes.

The district court sentenced Littlejohn to five years in prison.

Because that sentence was reasonable, we affirm.

## I. Facts

In 2017, Charles Littlejohn obtained a job as a consultant to the Internal Revenue Service so that he could steal and leak the tax returns of President Donald Trump. He says he "felt that the American people should have the opportunity to see the tax returns of the sitting president before they decided on how they were going to vote." A 191.

Once on the job, Littlejohn searched an IRS database using generalized parameters to collect the President's tax return and return information without triggering detection.[1] He then put the data on a private website to avoid protocols designed to detect downloads to more conventional methods of storage.

---

[1] Return information is taxpayer-identifying or tax-related data held by the IRS in connection with a return or potential tax liability.

3

After that, he transferred the data to a personal computer and stored it in multiple places, including on an Apple iPod.[2]

Two years into his elaborate scheme, in 2019, Littlejohn gave President Trump's tax return and return information to a reporter for the *New York Times*. He then helped the reporter analyze the data and leaked more tax returns and return information to supplement his original leak. Finally, just weeks before the 2020 presidential election, the *New York Times* began publishing articles based on what Littlejohn had stolen.

That was, however, only one of Littlejohn's grand plans. He says he "also felt that taxpayers as a whole deserved to know just how easy it was for the wealthiest among us to avoid paying into our system." A 191–92. So he used his "skills to systematically violate the privacy of thousands of innocent people" by stealing the tax returns and return information of about 600 entities and about 7,600 of the wealthiest Americans. *Id.* He then leaked what he stole to *ProPublica*, which used data regarding at least 152 of his victims in about 50 articles.

As a result of Littlejohn's crime, his victims lost business. They were disparaged countless times. And their families were physically threatened. *See* A 199–201 (letters on behalf of victims who described "great distress" to "me and my family"; "reputational damage"; "economic impact"; "patently false assertions about the tax payer's tax compliance"; personal "threat[s]" to "our family"; "disparage[ment] countless times"; "lost business"; "reputational damage"; putting "our family's safety" in "jeopard[y]"; "very real threats"; "mental, emotional, and reputational consequences").

---

[2] Yes, iPod, not iPad.

4

To this day, *ProPublica* is sitting on the private, as-yet-unpublished data of other taxpayers stolen by Littlejohn. But those taxpayers continue to fear that *ProPublica* will publish their data in the future.

To cover his tracks, Littlejohn destroyed the virtual machines he used to facilitate his crime, "in one case just minutes after stealing a data set." A 32. He also "promptly contacted the domain registration service to cancel the private website's domain registration" after he finished using it. *Id.* And he deleted almost all the files in his profile on his IRS laptop before returning it. *Id.*

In 2023, the Government and Littlejohn notified the district court that he intended to plead guilty to one count of disclosing without authorization tax returns and return information in violation of 26 U.S.C. § 7213(a)(1).

A day before Littlejohn's plea hearing, the district court held an off-the-record meeting in chambers with counsel for the Government and Littlejohn. The court said it was "perplexed" by the Government's decision not to charge Littlejohn with "multiple charges carrying a much higher possible sentence." A 277. Littlejohn's counsel did not object to anything about the meeting.

After Littlejohn pleaded guilty, the Government filed a memorandum arguing for the maximum sentence — five years in prison. In response, the district court emailed counsel for the Government and Littlejohn, again without objection, to request that they prepare to address whether it is "*per se* unreasonable to impose a sentence of a maximum term, outside the guidelines, to a defendant that pled guilty, cooperated with the Government, and accepts responsibility." A 324. The court said it had "not made a sentencing decision and will of course hear all argument on the appropriate sentence, including the

5

appropriate impact of Mr. Littlejohn's cooperation and acceptance of responsibility." *Id.*

In 2024, at the start of Littlejohn's sentencing hearing, the district court told him, "I know that this may well be the worst morning of your life or one of them. And I want you to know that I know that and I'm sympathetic to it." The court added:

> I wish more than you can possibly know that we were meeting under different circumstances, because I have read the 29 letters from your friends and family. And they uniformly speak to a person of immense intelligence, deep caring, and unwavering loyalty. And I think anyone who has read those letters knows that to call you a friend is a privilege.

A 143.

The court then continued to address Littlejohn directly and said, "I want you to know that I have studied and thought and struggled deeply about your sentence. And there have been very few days since I took your plea that I have not thought about your sentence in some way." A 144. The court circled back to its belief that Littlejohn had "repeatedly answered the call to help others" and added that his "actions were guided, however misguided the thought was, by a genuine belief of doing the right thing." A 144–45. But the court also said that, "whatever the motivation," Littlejohn had "target[ed] the sitting President of the United States," which "was an attack on our constitutional democracy." A 145. So the court intended to impose a sentence "with a firmness of purpose that such an attack demands." *Id.*

From there, the court turned to a "housekeeping matter." *Id.* Littlejohn had requested that the court not consider a letter sent to the court by members of Congress. Urging a five-year

6

sentence, the letter writers included no "new information not already available." A 146. But regardless, the court said it would not "base any part of its sentencing decision" on the letter. *Id.*; *see also id.* (court saying the letter would have "zero impact on [its] decision").

The court then confirmed that no party objected to the presentence report, accepted Littlejohn's concession that the court should apply an upward departure to account for Littlejohn's disclosure of the "tax return information of a substantial number of individuals," calculated his Sentencing Guidelines range at one year to one-and-a-half years in prison, discussed letters by Littlejohn's victims about the effects of his offense, and heard arguments from each party's attorneys. *See* A 153 (quoting U.S.S.G. § 2H3.1, Application Note 5, for the upward departure). The court asked many questions of both attorneys. It then listened to Littlejohn's allocution.

Finally, the court sentenced Littlejohn to five years in prison and three years of supervised release (including 300 hours of community service) and ordered him to pay the maximum statutory fine of $5,000 and special assessment of $100. It discussed each sentencing factor that must be considered under 18 U.S.C. § 3553(a) and explained that it was varying upward beyond the Guidelines range to the statutory maximum because Littlejohn had specifically targeted the President and numerous other wealthy taxpayers, because he had intentionally used his technical skills to carry out an elaborate multi-year scheme, and because the harm from his crime had not yet ended for the thousands of victims who feared future *ProPublica* articles with new disclosures about their private financial affairs.

Littlejohn appealed his sentence.

**II. Standard of Review**

7

We review the district court's factual findings for clear error. *United States v. Miller*, 35 F.4th 807, 814 & n.8 (D.C. Cir. 2022). We review Littlejohn's preserved procedural objections for abuse of discretion and unpreserved procedural objections for plain error. *United States v. Flores*, 912 F.3d 613, 618 (D.C. Cir. 2019). And we review the substantive reasonableness of his sentence for abuse of discretion. *United States v. Fry*, 851 F.3d 1329, 1333 (D.C. Cir. 2017) (cleaned up).

## III. Analysis

Littlejohn's sentence was not unreasonable.

### A. Littlejohn's Sentence Was Procedurally Reasonable

We find no merit in Littlejohn's arguments that the district court (1) predetermined his sentence, (2) relied on clearly erroneous factual findings, (3) impermissibly considered a letter sent by some members of Congress, and (4) did not provide an adequate explanation for the court's upward variance.

### 1. The Court Did Not Predetermine His Sentence

Littlejohn has not shown that the district court predetermined his sentence. Rather, the record reflects that the court approached its decision with an "open mind." *United States v. Abney*, 957 F.3d 241, 254 (D.C. Cir. 2020). At the sentencing hearing, the court expressed sympathy for Littlejohn and discussed "the 29 letters from [his] friends and family" that "uniformly [spoke] to a person of immense intelligence, deep caring, and unwavering loyalty." A 143. The court later said it had "studied and thought and struggled deeply about [Littlejohn's] sentence," even revealing that there had "been very few days since [his] plea that [the court had]

8

not thought about [his] sentence in some way." A 144. And throughout the hearing, the court showed it "was listening to what [the parties] were saying," *United States v. Pyles*, 862 F.3d 82, 92 (D.C. Cir. 2017), by asking probing questions that would have been unnecessary if the sentence had been predetermined.

It is true that the court expressed "strong feelings" about Littlejohn's crime and likely arrived at the sentencing hearing with a "preliminary idea" about an appropriate punishment. But that is neither unusual nor untoward, especially when the court's words and actions indicated a "mind[] open to new facts, new arguments, and new choices." Appellee's Br. 26 (cleaned up).

Littlejohn's evidence to the contrary is weak.

First, he notes that the district court repeatedly pressed the Government about why it brought only one felony charge against him when far more charges were possible. But that is hardly evidence of a predetermined sentence. When the district court asked about the charging decision before the plea hearing, the district court was likely weighing the reasons for and against accepting the plea bargain (which is a judicial responsibility). Fed. R. Crim. P. 11(c)(3)(A). Then, when the court asked about it again at sentencing, the court was likely giving the Government an "opportunity to make it clear to the public" why Littlejohn didn't face more charges.[3] A 161.

---

[3] Littlejohn complains that at sentencing the district court said it was asking these questions "to help" the Government. Appellant's Br. 13. But it's likely the court was only trying "to help" the Government inform the public about the reasons for the lenient charging decision in this high-profile case. A 160–62. In any event, judges are not required to ask only hostile questions at a sentencing

9

Second, Littlejohn notes that the district court twice communicated with counsel off the record.  Without objection, the court held a meeting in chambers with counsel for each party about the Government's charging decision a day before Littlejohn's plea hearing.  Then, again without objection, the court emailed counsel for each party shortly before the sentencing hearing to say the court was "interested to hear" their "views" about whether it is "*per se* unreasonable to impose a sentence of a maximum term, outside the guidelines, to a defendant that pled guilty, cooperated with the Government, and accepts responsibility."  A 324.

We think those communications should have been on the record.  But they are not evidence of a predetermined sentence.  In fact, they included comments and questions that indicated indecision.  Exhibit A: At the in-chambers meeting, the court said that it believed "Littlejohn's cooperation sounded

hearing — or at an appellate argument, for that matter.  *See* Oral Arg. Tr. at 7*, Ransom v. FIA Card Services, N.A.*, 562 U.S. 61 (2011) (No. 09-907) (Justice Scalia: **"I'm trying to help you."**); Oral Arg. Tr. at 13*, United States v. Tinklenberg*, 563 U.S. 647 (2011) (No. 09-1498) (Justice Scalia: **"I'm trying to help you."**); Oral Arg. Tr. at 21, *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023) (Nos. 21-1326 & 22-111) (Justice Sotomayor: **"I've never heard an attorney fighting people trying to help him."**; Justice Gorsuch: **"It happens all the time here."**); Oral Arg. Tr. at 10, *Seven County Infrastructure Coalition v. Eagle County*, 605 U.S. 168 (2025) (No. 23-975) (Justice Sotomayor: **"I was trying to help you."**); Oral Arg. Tr. at 34, *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012) (No. 10-1016) (Justice Sotomayor: **"I thought Justice Alito was trying to help you."**; Justice Breyer: **"He was."**); Oral Arg. Tr. at 41, *Martel v. Clair*, 565 U.S. 648 (2012) (No. 10-1265) (Chief Justice Roberts: **"No.  I'm trying to help you."**); Oral Arg. Tr. at 38, *White v. Woodall*, 572 U.S. 415 (2014) (No. 12-794) (Justice Scalia regarding Justice Breyer: **"He's trying to help you, counsel."**).

10

significant" and that it wanted "to hear the full details at sentencing" — an unlikely desire if the court had already made up its mind to impose the maximum sentence. A 278. Exhibit B: In the email, the court said that it had "not made a sentencing decision" and that it wanted to "hear all argument on the appropriate sentence, including the appropriate impact of . . . Littlejohn's cooperation and acceptance of responsibility." A 324. If anything, the email's main request — for informed arguments about whether the Government's request for a maximum sentence was "*per se* unreasonable" — is evidence that the court had doubts about the Government's position and was considering reasons to reject it.

## 2. The Court Did Not Rely On Clearly Erroneous Factual Findings

Littlejohn argues that the district court based his "sentence on its mistaken belief that his crime was politically motivated, 'targeted' a sitting President, 'attacked' constitutional democracy, and was intended to cause harm to thousands of individuals whose tax records he disclosed to investigative reporters." Appellant's Br. 25–26. But those four findings were not clearly erroneous. First, his crime *was* politically motivated, at least in part because one of his motives was to change tax policy by (in Littlejohn's words) showing "just how easy it was for the wealthiest among us to avoid paying into our system." A 192. Second, his crime *was* an attack on a sitting president because he wanted to inform voters about (in his words) "the tax returns of *the sitting president* before they decided on how they were going to vote." A 191 (emphasis added).[4] Third, his crime *was* an attack on our constitutional

---

[4] Littlejohn argues that he targeted President Trump because the President was a candidate in an election, not because he was the President. But even if that mattered in this context, the President was *not* an announced candidate for office in 2017 when Littlejohn

11

democracy because his goal was to influence an election through illegal activity and because (in his words) his crime "undermined the fragile faith that we place in the impartiality of our government institutions." A 192.[5] And fourth, his crime *was* intended to harm thousands of taxpayers because (again in his words) he "systematically violate[d] the privacy of thousands of innocent people." A 192.

### 3. The Court Did Not Impermissibly Consider The Letter Written By 25 Members Of Congress

Littlejohn faults the district court for considering a letter written by 25 members of Congress requesting the maximum sentence. But the district court said it did not "base any part of its sentencing decision" on the letter. A 146; *see also id.* ("zero impact on . . . my decision"). And in any event, the letter was not prejudicial because it contained no "new information not already available and indisputably properly before [the court] in the record." *Id.*

### 4. The Court Adequately Explained Its Upward Variance

---

launched his multi-year scheme. And to the extent Littlejohn intended to influence a future election he *expected* the President to enter, that is further proof that the district court did not err in finding that Littlejohn's crime was a politically-motivated attack on our democracy.

[5] Littlejohn suggests that the court said his crime was as serious as violent threats against public officials. That is not correct. Rather, the district court (correctly) noted that his crime and those threats are crimes that harm our democracy by targeting people for their public service. *See* A 198–99. And though the court noted that it had recently sentenced January 6 misdemeanants to lighter sentences than Littlejohn's, *see* A 216, that's because felonies are by definition more serious crimes than misdemeanors.

12

The district court adequately explained Littlejohn's above-Guidelines sentence by giving "specific and legitimate grounds for exceeding the Guidelines." *United States v. Brown*, 857 F.3d 403, 407 (D.C. Cir. 2017).

Appreciation of that explanation's adequacy requires a brief primer on the difference between a departure and a variance. In federal sentencing, an upward departure increases a defendant's Sentencing Guidelines range, based on factors enumerated in the Guidelines. In contrast, an upward variance increases a defendant's sentence beyond the Guidelines range, based on the factors that 18 U.S.C. § 3553(a) requires a district court to consider.

Here, the district court said it departed upward because Littlejohn's disclosures involved the "tax return information of a substantial number of individuals" and because "[t]he offense . . . caused or risked substantial non-monetary harm" and "resulted in a substantial invasion of privacy." A 153 (quoting U.S.S.G. § 2H3.1, Application Note 5 (U.S. Sent'g Comm'n 2023)). That put the low end of Littlejohn's Guidelines range at one year, and it put the high end of that range at one-and-a-half years. The court then varied upward beyond that range to a sentence of five years.

In an extremely lengthy explanation of its sentence at a hearing that lasted two hours, the district court gave multiple good reasons for the upward variance. One reason was the intentional targeting of a sitting President. Another reason was the intentional targeting of Littlejohn's other victims. Another reason was the elaborate nature of Littlejohn's multi-year scheme. And yet another reason was the ongoing harm to victims who did not know (and still do not know) when the next *ProPublica* article will drop, possibly hurting their businesses,

13

harming their reputations, and jeopardizing their physical safety.

The court's upward departure did not account for those aggravating factors because even in their absence, the court could have still applied the upward departure for disclosing the "tax return information of a substantial number of individuals." A 153. So there is nothing to Littlejohn's argument that the "court varied upward for the same reasons it had already departed upward." Appellant's Br. 39 (emphasis removed).

**B. Littlejohn's Sentence Was Substantively Reasonable**

The district court did not abuse its discretion when it understood the statutorily mandated sentencing factors in 18 U.S.C. § 3553(a) to require a five-year sentence. *See United States v. Williamson*, 903 F.3d 124, 136 (D.C. Cir. 2018) ("In considering a defendant's challenge to the substantive reasonableness of a sentence, we ask the following question: In light of the facts and circumstances of the offense and offender, is the sentence so unreasonably high or unreasonably low as to constitute an abuse of discretion by the district court?" (cleaned up)).

First, a district court must consider the offense's "nature and circumstances." 18 U.S.C. § 3553(a)(1). Here, the offense was far more serious than most unlawful disclosures of tax records. Littlejohn "target[ed] the office of the President of the United States," which meant he "target[ed] democracy." A 179–80. Plus, he launched "an intolerable attack on the personal lives of thousands of Americans" on a scale "unparalleled in the IRS's history." A 199. And "because Mr. Littlejohn unlawfully disclosed the tax return information of thousands more individuals" than the 152 victims whose information has already been published, more "individuals' information could be published in the future. In other words,

14

the scope of the harm is not necessarily done or even known." A 201.

Second, a district court must consider a defendant's "history and characteristics." 18 U.S.C. § 3553(a)(1). Here, some of Littlejohn's characteristics supported a "significant upward variance" because "[a]s a sophisticated consultant, he received regular training over several years on how to protect taxpayers and the criminal consequences of inspecting or disclosing" their data. A 203–04. So he "knew what he was doing. He knew it was wrong. And, given his experience, he well knew . . . the harm that would result to the taxpayers." A 204.

Admittedly, Littlejohn had no criminal record, accepted responsibility, cooperated with the Government, and appeared to be "a devoted friend, son, brother, and partner who goes out of his way to help others during their moments in need." A 201–02. But the district court did not need to justify Littlejohn's statutory maximum on the basis that he was "the worst of the worst." Appellant's Br. 43. "All statutory maximums eliminate room for distinctions with respect to all individuals who deserve sentences higher than the maximum." *United States v. Johnson*, 934 F.3d 498, 501 (6th Cir. 2019) (emphasis removed).

Third, a district court must consider the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law," "to provide just punishment for the offense," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). Here, Littlejohn "made a series of calculated decisions, over two to three years, to willfully violate the law. Most stunning, Mr. Littlejohn has admitted that he sought to work as an IRS consultant with the hope and expectation of accessing and disclosing then

15

President Trump's tax information." A 204. It was therefore reasonable for the district court to conclude that only the statutory maximum would sufficiently "deter government officials and contractors from making those same deliberate decisions to take the law into their own hands." *Id.*

Fourth, a district court must consider the need "to protect the public from further crimes of the defendant" and to provide "correctional treatment in the most effective manner." *Id.* Here, the district court said those two factors "weigh against an upward variance." A 205. But for the reasons already explained — including Littlejohn's intentional targeting of the President and of thousands more victims, the calculated and sophisticated nature of his criminal scheme, and the ongoing harm to his victims — it was not unreasonable for the district court to view his crime's "mitigating circumstances as significantly outweighed by the other purposes of the sentence." *Id.*

Fifth, a district court must consider "the kinds of sentences available," the Guidelines, and "any pertinent policy statement" by the Sentencing Commission. 18 U.S.C. § 3553(a)(3)–(5). Here, Littlejohn has identified nothing in the record to suggest that the district court failed to consider a different kind of sentence, the properly calculated Guidelines range, or a pertinent policy statement.

Sixth and finally, a district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Here, however, the district court did not find — and Littlejohn could not identify — a case with "similar conduct." *Id.*

Littlejohn tried to do so. His counsel cited twenty-seven cases — almost all with incarceration sentences shorter than

16

Littlejohn's — and argued that those cases were proper comparators. They were not, however, sufficiently similar. Of the cases counsel cited, only nine involved charges under 26 U.S.C. § 7213, the statute of conviction here.[6]    Most, if not all, involved fewer records and fewer victims.[7] Some involved defendants who suffered from mental illness or assisted the Government more than Littlejohn did — mitigating factors not present here.[8]    All of them involved materially different circumstances.  And none disclosed the tax information of a sitting President of the United States.

**IV.**

Littlejohn's sentence was procedurally reasonable.  And it was substantively reasonable.  So we affirm.

*So ordered.*

---

[6] *See United States v. Richey*, 924 F.2d 857 (9th Cir. 1991); *United States v. Moore*, No. 90-20286 (W.D. Tenn. 1993); *United States v. Verburg*,    No.    3-341    (D.    Utah    2003); *United  States  v.  Herndon*,  No.  4-171  (W.D.  Tex.  2005); *United  States  v.  Johnson*,  No.  7-309  (E.D.  Pa.  2007); *United  States  v.  Lerner*,  No.  12-952  (S.D.N.Y.  2013); *United  States  v.  Lewis*,  No.  12-263  (E.D.  Cal.  2013); *United States v. Flowers*, No. 12-323 (E.D. Pa. 2013); *United States v. Washington*, No. 15-7 (N.D. Ohio 2016).
[7] *See, e.g., United States v. Herndon*, No. 4-171 (W.D. Tex. 2005); *United States v. Johnson*, No. 7-309 (E.D. Pa. 2007); *United States v. Washington*, No. 15-7 (N.D. Ohio 2016); *Richey*, 924 F.2d at 858.
[8] *See United States v. Edwards*, No. 19-64 (S.D.N.Y. 2021); *United States v. Patel*, No. 19-81 (D.D.C. 2024); *United States v. Edwards, et al.*, No. 20-66 (D.D.C. 2024).